# Appendix

2023 WL 5733164
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Donald FREED,
Plaintiff-Appellant/Cross-Appellee,
v.
Michelle THOMAS, Defendant-Appellee,
County of Gratiot, Michigan,
Defendant-Appellee/Cross-Appellant,
Michigan Department of Attorney
General, Intervenor-Appellee.

Nos. 21-1248/1288/1339
|
Argued: August 1, 2023
|
Decided and Filed: September 6, 2023

**Synopsis**
**Background:** Property owner brought 1983 action against county and county treasurer in her individual capacity, asserting a taking in violation of Fifth Amendment and an excessive fine in violation of Eighth Amendment after county foreclosed on property for unpaid taxes and, after selling property at auction, retained the entire proceeds. The United States District Court for the Eastern District of Michigan, No. 1:17-cv-13519, Bernard A. Friedman, Senior District Judge, 2018 WL 5831013, dismissed for lack of subject matter jurisdiction. Owner appealed. The Court of Appeals, 976 F.3d 729, reversed and remanded. On remand, the District Court granted summary judgment to owner on takings claim but declined to award amount of damages sought by owner, and it also held that claims against county treasurer were barred by qualified immunity. Owner appealed and county cross-appealed.

**Holdings:** The Court of Appeals, Siler, Circuit Judge, held that:

under Fifth Amendment's takings clause, compensation which county was required to make to owner was not required to include the difference between property's asserted value and the amount that it actually sold for at auction;

foreclosure was not an excessive fine in violation of Eighth Amendment even if sale at auction destroyed taxpayer's equity far in excess of tax delinquency;

treasurer's conduct did not violate clearly established law, and thus treasurer had qualified immunity to owner's takings claim; and

county's policy of prohibiting the refunding of surplus proceeds to property owners following foreclosure sale of properties for unpaid taxes had direct causal link to the unconstitutional taking, and thus county could be subject to liability under 1983.

Affirmed.

Appeal from the United States District Court for the Eastern District of Michigan at Bay City. No. 1:17-cv-13519 Bernard A. Friedman, District Judge.

**Attorneys and Law Firms**

ARGUED: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae. ON BRIEF: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae.

Before: SILER, GIBBONS, and LARSEN, Circuit Judges.

**OPINION**

SILER, Circuit Judge.

**\*1** Although Plaintiff Donald Freed prevailed on his Fifth Amendment claim before the district court, he appeals because the district court declined to award him the fair market value of his property minus his debt. Freed argues that the district court erred by (1) violating his Fifth or Eighth Amendment rights by awarding him the difference between the foreclosure sale and his debt instead of the fair market value of his property; (2) granting qualified immunity to Michelle Thomas, Gratiot County's ("the County") treasurer; and (3) denying without prejudice his motion for attorney's fees. The County cross-appeals, arguing that the district court improperly held it liable for Freed's 42 U.S.C. § 1983 claims. We affirm.

### I.

After Freed fell behind approximately $1,100 on his property taxes, Thomas, acting on behalf of the County and pursuant to Michigan's General Property Tax Act (GPTA), foreclosed on Freed's property and sold it at a public auction for $42,000. The County retained the entire proceeds. Freed sued the County and Thomas under § 1983, alleging (1) an unconstitutional taking under the Fifth and Fourteenth Amendments by state and local officials; and (2) an unconstitutional excessive fine under the Eighth Amendment. The district court, applying *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017), dismissed Freed's complaint for lack of subject matter jurisdiction, finding that the Tax Injunction Act (TIA) and principles of comity prevented it from hearing the case.

We reversed and remanded. *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), *reh'g en banc denied* (Nov. 4, 2020). We held that (1) the TIA did "not preclude the exercise of federal jurisdiction ... because Freed is not attempting to enjoin Michigan's assessment, levy, or collection of a state tax"; (2) the doctrine of comity did not prevent this suit from proceeding "because Freed is not challenging the validity of Michigan's tax procedures"; and (3) we were not bound by *Wayside Church* because the opinion's discussion of the TIA and comity issues was "simply persuasive dictum." *Id.* at 734, 737–38, 740. We also noted that the Supreme Court overruled *Wayside Church*'s subject matter jurisdiction analysis when it held "that a property owner may bring a takings claim in federal court under § 1983 upon the taking of his property without just compensation by a local government." *Id.* at 733–34 (quoting *Knick v. Township of*

*Scott*, ––– U.S. ––––, 139 S. Ct. 2162, 2179, 204 L.Ed.2d 558 (2019)) (alterations in original).

On remand, the district court granted summary judgment in favor of Freed on his Fifth Amendment claim and denied summary judgment on his Eighth Amendment claim. It rejected Freed's argument that he was entitled to the fair market value of his property, minus his debt, and instead held that Freed was "owed just compensation in the amount of the difference between the foreclosure sale and his debt, plus interest on this amount from the date of the foreclosure sale." This meant that Freed was owed about $40,900 plus interest—approximately $56,800 less than he was seeking. The court also held that Freed's claims against Thomas were barred by qualified immunity.

**\*2** Freed appealed, and the County cross-appealed. Freed also filed a motion for attorney's fees following the entry of judgment, which the district court denied without prejudice under Federal Rule of Civil Procedure 54(d)(2)(B). It noted that "it would be premature to decide plaintiff's motion" pending the appeal and ordered the period for filing a motion for attorney's fees be extended until fourteen days after the appeal mandate is issued. Freed appealed the denial of his attorney's fees motion.

### II.

We review a district court's grant of summary judgment de novo. *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021).

### A.

#### 1.

Freed first argues that the district court should have awarded him the fair market value of his property pursuant to either the Fifth or the Eighth Amendment.

#### a.

The Supreme Court recently resolved a case with similar facts. Hennepin County, Minnesota, sold the delinquent

taxpayer's house for $40,000 to satisfy a $15,000 tax bill and kept the remaining $25,000. *Tyler v. Hennepin County*, 598 U.S. 631, 634, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023). The district court there dismissed for failure to state a claim, and the Eighth Circuit affirmed. *Id.* at 636, 143 S.Ct. 1369. The Supreme Court unanimously reversed, affirming "the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642, 143 S.Ct. 1369.

Here, the district court held at the motion for summary judgment stage that Freed's Fifth Amendment rights were violated, and it held that Freed was owed the difference between the foreclosure sale amount and his debt, plus interest. This holding squares with *Tyler*. Freed asserts though that he is entitled to an additional $56,800 because the purported fair market value of the property was $98,800 and the property sold for only $42,000. However, neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property. *Cf. United States v. Davis*, 815 F.3d 253, 260 (6th Cir. 2016) (holding that the government does not violate the Fifth Amendment by selling a property at a public auction, even if the property sells for less than its fair market value). Furthermore, the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure.[1] *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548–49, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

[1] Freed stated at oral argument that although the property was sold at a public auction, the procedures used by the county restricted who could bid on the property and in what manner, and this caused the property to sell for less than it was worth. But Freed did not make this argument before the district court or in his opening brief, and it is therefore waived. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016) ("Arguments not raised in a party's opening brief are deemed waived.").

The Michigan Supreme Court, in addressing this exact issue, held that awarding the fair market value of a property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property *taken*" and would "not only ... take money away from the public" but would also allow plaintiffs to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434, 465–66 (2020). Freed is entitled to the amount of the sale above his debt and no more. *See Hall v. Meisner*, 51 F.4th 185, 194 (6th Cir. 2022) (explaining the longstanding principle that following a public sale, a debtor is "entitled

to any surplus proceeds from the sale, which represented the value of the equitable title thus extinguished" (citing *Resol. Tr. Corp.*, 511 U.S. at 541, 114 S.Ct. 1757)). This is precisely what the district court held, and Freed's Fifth Amendment takings argument is therefore meritless.

**b.**

**\*3** Freed's Eighth Amendment argument fares no better. He argues that Defendants "destroyed" his "equity far in excess of the tax delinquency" in violation of the Eighth Amendment.

The Eighth Amendment protects "against excessive fines" and "guards against abuses of the government's punitive or criminal-law-enforcement authority." *Timbs v. Indiana*, —— U.S. ——, 139 S. Ct. 682, 686, 203 L.Ed.2d 11 (2019). However, in *Hall*, we affirmed the district court's dismissal of the plaintiffs' Eighth Amendment Excessive Fines claim on the ground that the GPTA is not punitive. *See Hall*, 51 F.4th at 196–97 (adopting district court's reasoning as the panel's own); *Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at \*14 (E.D. Mich. May 21, 2021) (concluding that the GPTA is not punitive); *see also Rafaeli*, 952 N.W.2d at 447 (holding that the GPTA "is not punitive in nature" because "its aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes"). The Supreme Court did not reach the merits of the Eighth Amendment claim in *Tyler*. *See* 598 U.S. at 647–48, 143 S.Ct. 1369. *But see id.* at 648–50, 143 S.Ct. 1369 (Gorsuch, J., concurring). Accordingly, our holding in *Hall* remains binding. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A prior published decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)). Therefore, Freed's arguments that he is owed the fair market value of the property under either the Fifth Amendment or the Eighth Amendment fail, and we affirm.

**2.**

The district court granted qualified immunity to Thomas in her individual capacity because it found that she "did

**Freed v. Thomas, --- F.4th ---- (2023)**

not violate a right that was clearly established at the time of defendant's alleged misconduct.[2] To overcome Thomas's claim of qualified immunity, Freed must show that (1) the officials violated one of his constitutional rights and (2) that right was clearly established. *Howell v. NaphCare, Inc.*, 67 F.4th 302, 317 (6th Cir. 2023) (citation omitted). The clearly established prong is the only one at issue here. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 317–18 (citation omitted).

[2] The district court also granted qualified immunity to Thomas in her official capacity because "the claims against defendant Thomas" are "duplicative of those against the county."

At the time the lawsuit was filed, the contested provisions of the GPTA had been enforced as written for nearly two decades, and "state statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared. *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944). The Michigan Supreme Court held that Michigan's retention of surplus proceeds was an unconstitutional taking several years *after* Freed filed this lawsuit. *See Rafaeli*, 952 N.W.2d at 466. And the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated. *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).

**\*4** The only support on which Freed relies to argue that Thomas's conduct violated a clearly established right is *United States v. Lawton*, 110 U.S. 146, 3 S.Ct. 545, 28 L.Ed. 100 (1884). However, *Lawton* pertained to a statute requiring that surplus proceeds from a tax sale "be paid to the owner of the property. *United States v. Taylor*, 104 U.S. 216, 218, 26 L.Ed. 721 (1881). The GPTA, on the other hand, did not provide that surplus proceeds would be returned to the owner. *Rafaeli*, 952 N.W.2d at 452–53. Freed has failed to demonstrate that *Lawton*, which was premised on a statutory right to recover surplus proceeds, sufficiently put Thomas on notice that her administration of the GPTA was unconstitutional.[3] Therefore, the district court did not err by granting qualified immunity to Thomas, and we affirm.

[3] Although *Lawton* notes that withholding surplus from an owner when the owner is statutorily entitled to it would violate the Fifth Amendment, the Court held that "this case was governed by the rulings of this court in *U.S. v. Taylor*. 110 U.S. at 149, 3 S.Ct. 545. In *Taylor*, the Supreme Court held that the appellee was entitled to

surplus proceeds because the government statutorily required it, not because it would be unconstitutional to withhold the surplus proceeds. 104 U.S. at 218, 222. And Freed cannot rely on the Supreme Court's recent opinion in *Tyler* for qualified immunity purposes because the events in this case occurred well before *Tyler* was decided. *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.").

**3.**

Following the district court's opinion and order holding that Freed's Fifth Amendment rights had been violated, Freed filed a motion for attorney's fees which the court denied without prejudice. Freed argues that the court "should have rendered" a timely and normal decision on the motion.

The court's order denying Freed's attorney's fees motion, however, is not appealable because it is "not a final decision" under 28 U.S.C. § 1291. *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1104, 1107 (6th Cir. 2019) (holding that a district court's order on attorney's fees made "where the post-judgment proceedings are ongoing," is not a final, appealable order). We therefore dismiss Freed's attorney's fees appeal for lack of jurisdiction.[4]

[4] Freed also asks us to remand this matter to the district court with instructions to enter judgment against the state because the district court failed to explicitly name Michigan as a party in the judgment. Michigan joined this case solely for the purpose of defending the constitutionality of the statute and participated in all stages of the litigation; the district court correctly permitted intervention, pursuant to 28 U.S.C. § 2403(b), which provides that "[t]he State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party *as to court costs* to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." (emphasis added). And the district court did not err by omitting Michigan from the judgment. *See Tennessee v. Garner*, 471 U.S. 1, 22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("The State is a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability.").

**B.**

In its cross-appeal, the County argues that the district court erred in holding that it was liable for Freed s constitutional claims under 1983 pursuant to *Monell v. Department of Social Services*, 436 .S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In municipal liability cases under 1983, the question is whether there is a direct causal lin between a municipal or county policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 .S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**\*5** The policy at issue here is the prohibition on refunding surplus proceeds to property owners under MCL 211.78, which Defendants ac nowledge was unconstitutional. That leaves the question of whether the County was responsible for the constitutional violation.

The County argues that it was merely following a state statute when it foreclosed on Freed s home and thus it cannot be said that the County had a custom or policy that led to the unconstitutional ta ing. We disagree. The statute here provides that foreclosure of forfeited property by a county is voluntary. MCL 211.78(6).

And as the district court correctly points out, the County, through its treasurer, repeatedly chose to act as the foreclosing governmental unit and ... retained the proceeds of Freed s foreclosure sale. The County s decision to voluntarily and repeatedly serve as the foreclosing governmental unit and retain the proceeds was a policy decision with a direct causal lin to the constitutional violation in this case. *Harris*, 489 .S. at 385, 109 S.Ct. 1197; *see also DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999) (finding municipal liability where a state statute authori ed but did not require a city to ta e a certain action); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (recogni ing that a municipality may be sub ect to *Monell* liability where it ma es a deliberate choice beyond what a statute requires). We hold that the district court did not err in finding the County liable.

**AFFIRMED**.

**All Citations**

--- F.4th ----, 2023 WL 5733164

End of Document        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

re Tomase , ot Re orted .R. (20 4)

---

2014 WL 4322404
Only the Westlaw citation is currently available.
United States an ruptcy Court, D. Massachusetts.

In re oyce TOMASELLI, Debtor.

No. 14 10736 NF.
|
Signed Aug. 29, 2014.

**Attorneys and Law Firms**

evin W. Lawless, Newburyport, MA, for Debtor.

## MEMORAND M

OAN N. FEENE , nited States Ban ruptcy udge.

**\*1** Whereas, oyce Tomaselli (the Debtor ) filed a voluntary Chapter 7 petition on February 27, 2014; and

Whereas, the Debtor filed an Application for Waiver of Chapter 7 Filing Fee disclosing that her monthly income was 600; and

Whereas, ohn Aquino was appointed Chapter 7 Trustee; and

Whereas, the Debtor filed Schedules and a Statement of Financial Affairs on February 27, 2014; and

Whereas, on Schedule A–Real Property, the Debtor listed a co-ownership interest in property located at 113–115 North End Boulevard, Salisbury, MA 01952 (the Property ), which she valued at 499,000.00, sub ect to a secured claim in the sum of 251,680.00; and

Whereas, the Debtor owns the Property as a oint tenant with the right of survivorship with her sister, Gracemarie Tomaselli, who also is a Chapter 7 debtor in Case No. 13–15744– NF; and

Whereas, in addition to the Property, the Debtor listed on Schedule A a distressed, uninhabited property located at 125 averhill Street, Lawrence, Massachusetts, and

unimproved land in Roc land, Maine; and

Whereas, on Schedule B–Personal Property, the Debtor listed exempt assets and miscellaneous assets with minimal value, but she did not disclose any claims or defenses that she may have against the Town of Salisbury; and

Whereas, on Schedule on Schedule C–Property Claimed as Exempt, the Debtor claimed an exemption in the Property pursuant to 11 .S.C. 522(d)(1) in the sum of 132,000;[1] and

[1] The Chapter 7 Trustee filed a Limited Ob ection to the Debtor s original claim of exemption in the Property on Schedule C as the amount claimed by the Debtor exceeded the statutory exemption amount of 22, 975. The Debtor subsequently amended her claim of exemption in the Property claiming an exemption under 11 .S.C. 522(d)(1) in the sum of 22,975. On une 18, 2014, the Debtor withdrew her amended Schedule C, leaving the originally filed Schedule C in its place. On August 7, 2014, the Debtor filed another amended Schedule C, claiming a homestead under Mass. Gen. Laws Ch. 188, 1. On August 12, 2014, the Court determined that the Trustee s Ob ection was moot because the Debtor filed an amended Schedule C claiming a homestead exemption in property located in Lawrence, Massachusetts pursuant to Mass. Gen. Laws ch. 188, 1. On August 11, 2014, the Trustee filed an Ob ection to that claim of exemption, setting forth numerous reasons why his Ob ection to the Debtor s newly minted claim of exemption should be sustained, including her testimony under oath at the meeting of creditors that she intended to live at the Property. On August 20, 2014, the Court sustained the Trustee s Ob ection.

Whereas, on Schedule D–Creditors olding Secured Claims, despite the reference to secured claims on Schedule A, the Debtor did not list any creditors with claims secured by the Property; and

Whereas, on Schedule E–Creditors olding nsecured Priority Claims, the Debtor listed the Roc land Maine Tax Collector and the Town of Salisbury, Massachusetts as holding two claims, one for 1993–2000; ad valorem real estate tax and disputed betterment charges, disputed sewer user sic charges, dispute water charges and all related interest charges in the amount of 25,880.00 of which 21,336.00 was entitled to priority, and one for 1993–2000; ad valorem real estate tax and disputed betterment charges, disputed sewer user sic charges, disputed water charges and all related interest charges, in the amount of 225,800.00, of which 19,024.00 was

entitled to priority; and

Whereas, on Schedule F–Creditors olding nsecured Nonpriority Claims, the Debtor listed two law firms with claims for attorneys fees relating to a case pending in the Land Court, Department of the Massachusetts Trial Court, i.e., opelman and Paige, P.C. and Coppola and Coppola, as well as the Penobscot Bay Road Maintenance Association with a 400 claim for road maintenance; and

Whereas, on Schedule –Codebtors, the Debtor listed Gracemarie Tomaselli with respect to the creditors listed on Schedules E and F; and

Whereas, on her Statement of Financial Affairs, in response to question 4 regarding suits and administrative proceedings pending within one year preceding the filing, the Debtor listed a proceeding pending in the Land Court, captioned *Town of Salisbury v. Gracemarie R. Tomaselli and Joyce Tomaselli,* Case No. 06 TL 133120, which she described as a Tax Lien Case–Complaint to Foreclose Right of Redemption; and

**\*2** Whereas, the Debtor further described the proceeding as follows:

Debtor ordered to pay a disputed tax balance of 250,000 on or before September 30, 2013 or her right to redeem will be extinguished and Town of Salisbury may foreclose on property and Debtor would lose over 250,000 in equity in property;
and

Whereas, the Debtor disclosed three additional cases, including an adversary proceeding in the case of Gracemarie Tomaselli (Case No. 13–15744– NF); and

Whereas, except for Schedule C, the Debtor has never amended her Schedules or Statement of Financial Affairs; and

Whereas, on March 20, 2014, the Town of Salisbury filed a Motion for Relief from the Automatic Stay asserting that the Property has a current assessed valuation of 287,500 and see ing permission to continue a foreclosure proceeding affecting the Property pending in the Land Court;[2] and

[2]    The Court granted the Town of Salisbury relief from the automatic stay in Gracemarie Tomaselli s case on anuary 13, 2014.

Whereas, the Town of Salisbury attached to its Motion the doc et of proceedings in the Land Court, as well as copies

of documents filed by the parties in the Land Court proceeding, including a 21–page decision containing detailed findings of fact and an analysis of applicable law, *see Town of Salisbury v. Tomaselli,* No. 06 TL 133120(G P), 2013 WL 142831 (Mass.Land Ct. an.14, 2013), and an Order on Plaintiff s Motion for Finding and Legal Fees, and on Defendants Motion to Stri e, dated August 2, 2013, in which the Land Court stated:

If the Town elects not to file a request for a higher finding amount, the defendants may redeem by paying good funds in the amount of the 250,889.32 sic on or before Monday, September 30, 2013; if they do not timely redeem by ma ing that payment by that date, udgment will enter upon the request of the Town, forever barring the defendants right of redemption;
and

Whereas, implicit in the Land Court s ruling is a determination that the Town of Salisbury s betterment lien against the Property is valid; and

Whereas, on April 3, 2014, the Debtor filed an Opposition to the Motion for Relief from the Automatic Stay, asserting among other things, that the amount outstanding for taxes, betterment fees, sewer fees, statutory interest and fines claimed by the Town of 212,828.35 is grossly excessive, arbitrary, inaccurate, invalid and without any logical or ustifiable factual foundation; and

Whereas, on April 15, 2014, the Debtor filed an Amended Opposition reiterating the above ob ection; and

Whereas, on April 16, 2014, the Court conducted a hearing on the Motion for Relief from the Automatic Stay and the Debtor s Opposition, ordered the parties to submit supplemental papers by April 28, 2014 and continued the hearing to April 30, 2014; and

Whereas, the parties complied with the Court s order and supplemented the record; and

Whereas, on April 29, 2014, the Court ordered the Chapter 7 Trustee to personally appear at the April 30, 2014 hearing to report the results of his investigation of the Debtor s assets; and

**\*3** Whereas, on April 30, 2014, the Court entered the following order:

T he Court directs both parties to file by May 7, 2014 at 4:30 p.m. all documents they rely on in support of their respective positions and to serve them on the Chapter 7 Trustee. In addition, the parties shall brief

the issue of the effect of 11 .S.C. 108(b) on the debtor s interest in the Salisbury property in light of the Land Court s order. A continued hearing shall be held on une 11, 2014 at 1:30 p.m.;

and

Whereas, on une 11, 2014, the Court continued the hearing on the Town of Salisbury s Motion to une 25, 2014 and, thereafter, until August 12, 2014 to afford the Chapter 7 Trustee an opportunity to review the voluminous submissions and determine his position with respect to the merits of the lift stay motion; and

Whereas, at the August 12, 2014 hearing the Court too the lift stay motion under advisement; and

Whereas, the Trustee has not filed an ob ection to the Motion for Relief from Stay or contested the validity of the betterment lien; and

Whereas, in *In re Tomaselli,* Case No. 13–15744– NF, Slip op. at 4 (Ban r.D.Mass. an. 13, 2014), the ban ruptcy case filed by the Debtor s sister, Gracemarie Tomaselli, the Court set forth litigation involving the Debtor and her sister which has generated published decisions, including but not limited to, the following:

*Tomaselli v. Town of Salisbury,* 439 Mass. 1107, 790 N.E.2d 1090 (Mass.2003), *denying appeal from Town of Salisbury v. Tomaselli,* 57 Mass.App.Ct. 1116, 786 N.E.2d 437 (Mass.App.Ct.2003)(affirming directed verdict in favor of the Town of Salisbury regarding an action arising from the termination of an alcoholic beverage license for a restaurant operated by the Debtor and her sister at the Property);

*Tomaselli v. Board of Assessors of Salisbury,* 455 Mass. 1102, 914 N.E.2d 331 (2009), *denying appeal from Tomaselli v. Board of Assessors of Salisbury,* 74 Mass.App.Ct. 1104, 903 N.E.2d 1144 (Mass.App.Ct.2009) (affirming a decision of the Appellate Tax Board, which dismissed the Debtor s appeal regarding betterment assessments);

*Tomaselli v. Beaulieu,* No. 08–10666, 2010 WL 1460261 (D. Mass. April 1, 2010) (adopting Report and Recommendation of Magistrate Dein, No. 08–10666, 2010 WL 1460259 (D.Mass. Mar.10, 2010) (holding counsel to the Town of Salisbury, opelman and Paige, P.C. and two of its attorneys, were entitled to absolute immunity to law suit in action removed from the Essex Superior Court);

*Tomaselli v. Beaulieu,* No. 08–10666, 2010 WL 2105347 (D.Mass. May 7, 2010, 2010) (adopting

Report and Recommendation of Magistrate Dein, No. 08–10666 (holding counsel who represented the Town of Salisbury in the Land Court proceeding, Coppola and Coppola and two of its attorneys, were entitled to absolute immunity to law suit in action removed from the Essex Superior Court);

*Tomaselli v. Beaulieu,* 967 F.Supp.2d 423, 2013 WL 4780085, (D.Mass. August 30, 2013)(overruling the Tomasellis s ob ections to the Magistrate udge s Report and Recommendation and sustaining the Defendants ob ection to the Report and Recommendation which contained a recommendation that the Tomasellis state claims not be decided on the merits and dismissing the Tomasellis complaint in its entirety with pre udice);

**\*4** Slip op. at 4; and

Whereas, in *Tomaselli v. Beaulieu,* the District Court stated:

Given the age of the underlying dispute, the effort expended in litigating it by all parties and the court, and the fact that the Magistrate udge did address the merits of the state law claims, it is appropriate that the court exercise its discretion to reach a final udgment on the entire dispute. Moreover, this court is in full agreement with the recommendations pertaining to the merits of the state claims. Accordingly, the motion to dismiss the complaint is allowed as to all claims contained therein.

*Tomaselli v. Beaulieu,* 967 F.Supp.2d 423, 432–33 (D.Mass.2013); and

Whereas, the Debtor disclosed only some of those actions in her ban ruptcy filings; and

Whereas, the nited States Magistrate udge, whose Report and Recommendation was adopted by the District Court on August 30, 2013, *see Tomaselli v. Beaulieu,* 967 F.Supp.2d 423 (D.Mass.2013), set forth, in detail, the history of the long-running dispute between the plaintiffs, Gracemarie Tomaselli and oyce Tomaselli, and the Town of Salisbury, Massachusetts, relating to a sewer betterment assessment that was imposed by the Town in 1992 and the manner in which the Town calculated the related sewer user fees, *Id.* at 433 (footnote omitted), as well as the claims asserted by the Debtor and her sister, which were dismissed, namely,

claims pursuant to 42 .S.C. 1983 alleging violations of their First, Fifth and Fourteenth Amendment due process and equal protection rights and their comparable rights under the Massachusetts Declaration of Rights (Counts I–V), claims of unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch.

93A (Counts VI and VII), claims that the defendants engaged in or conspired to enter into a criminal enterprise in violation of the Rac eteer Influence and Corrupt Organi ation Act ( RICO ), 18 .S.C. 1961 (Counts VIII and IX), and a claim of conspiracy to commit and the commission of conversion, defamation, intentional infliction of emotional distress, abuse of process, invasion of privacy, intentional interference with advantageous business relations, misrepresentation and negligent misrepresentation (Count X),

*Id.* and

Whereas, the Court ta es udicial notice of the history of litigation between the Debtor and the Town of Salisbury set forth in *Tomaselli v. Beaulieu,* 967 F.Supp.2d 423 (D.Mass.2013); and

Whereas, in the case of Gracemarie Tomaselli, the Chapter 7 Trustee abandoned the debtor s interest in the Property; and

Whereas, in *Grella v. Salem Five Cent Savs. Bank,* 42 F.3d 26 (1st Cir.1994), the First Circuit stated:

 T he hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the ban ruptcy court s action to be quic .... *see* 11 .S.C. 362(e). Section 362(e) provides that a ban ruptcy court must hold a preliminary hearing on a motion to lift the stay within thirty days from the date the motion is filed, or the stay will be considered lifted. A final hearing must be commenced within thirty days after the preliminary hearing. *S ee* 11 .S.C. 362(e).

**\*5** The limited grounds set forth in the statutory language, read in the context of the overall scheme of 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full ad udication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate.

*Grella,* 42 F.3d at 31–32 (case citations omitted); and

Now, therefore, based upon its review of the record of proceedings in the Land Court, and the absence of an ob ection filed by the Chapter 7 Trustee, as well as the decisions issued by other state and federal courts, the Court concludes that the Town of Salisbury has stated a colorable claim to relief and has established cause within the meaning of 11 .S.C. 362(d)(1) for relief from the automatic stay to proceed with its foreclosure of the Debtor s right of redemption with respect to the

Property which has been ta en for nonpayment of taxes, municipal charges and assessments. *See Town of Salisbury v. Tomaselli,* No. 06–TL 133120, 2013 WL 142831 (Land Court an. 14, 2014). Thus, the Court grants it relief from the automatic stay to proceed with the action pending in the Land Court.

A party is entitled to relief under 362(d)(1) for cause, which includes lac of adequate protection. *See* 11 .S.C. 362(d)(1). nder 11 .S.C. 362(g), in any hearing under subsection (d) or (e) of this section concerning relief from the stay (1) the party requesting such relief has the burden of proof on the issue of the debtor s equity in property; and (2) the party opposing such relief has the burden of proof on all other issues. 11 .S.C. 362(g).

The Property is a vacant building that has no water or sewer service. The Land Court entered an order providing that the Debtor and Gracemarie Tomaselli could redeem the Property with a payment of 212,828.35 with interest allowed by statute from the date of the court s finding to the date of payment. *See Town of Salisbury v. Tomaselli,* No. 06–TL 133120, 2013 WL 142831 (Land Court an. 14, 2014). In so doing, it stated:

Our Supreme udicial Court has, however, recogni ed a limited exception to this otherwise firm principle. In *Norwood v. Norwood Civic Ass'n,* the court found that the remedy provided for in G.L. c. 60, 98, may in certain limited circumstances be asserted as a defense to foreclosure proceedings under G.L. c. 60, 65. 340 Mass. 518, 524, 165 N.E.2d 124 (1960). nder the exception outlined in *Norwood,* a party who has not paid the tax up front, and who has not already commenced a separate action under G.L. c. 60, 98, may respond to foreclosure proceedings brought by the municipality by raising the defense, in order to avoid circuity of action. *Id.* If the party is able to establish facts demonstrating that the tax on which the foreclosure proceeding rests is wholly void, the tax is treated as eliminated from the tax title account, and the action for foreclosure of the resultant tax ta ing by definition cannot proceed. *Id.*

\* This udicially created exception, however, is painfully narrow, and strictly applied. It only is available in an instance where the illegality or void nature of the assessment is entire, and so renders the underlying tax wholly void. The Norwood exception was applied in that case where it was asserted that the real estate involved was unlawfully taxed because it was by statute fully exempt from taxation. The Norwood exception to the need to bring a separate and timely Superior Court action under section 98 does not exist where some of the tax amounts underlying the

foreclosure are due, and others not. In addition, on similar reasoning, the exception is available only w here a taxpayer owns in the town no real estate sub ect to taxation.... *Id.* at 523, 340 Mass. 518, 165 N.E.2d 124. For if there is some real estate lawfully taxed to some degree in the municipality, the Land Court foreclosure proceeding cannot be used to ad udicate the validity or the amount of less than all the taxes due to the town. If the party assessed owns any taxable real estate in the municipality, or if any part of the tax assessed is legally due, the rule is that the claimed illegal tax is to be treated as merely excessive; the exclusive remedy for an excessive tax is abatement under G.L. c. 59, 59. *Sears, Roebuck and Co. v. Somerville,* 363 Mass. 756, 757–58, 298 N.E.2d 693 (1973); *Norwood,* 340 Mass. at 523, 165 N.E.2d 124; *Harron Communications Corp. v. Bourne,* 40 Mass.App.Ct. 83, 87, 661 N.E.2d 667 (1996). It is immaterial whether there has been ... the calculation of the tax upon a wrong or an inapplicable principle, or other invalidity, the statute afford ample means for obtaining relief and securing ustice by a complaint for abatement. *Sears, Roebuck and Co.,* 363 Mass. at 757–758, n. 3, 298 N.E.2d 693.

*Town of Salisbury v. Tomasellis,* 2013 WL 142831 at 7.[3]

[3]  In *Tomaselli v. Bd. of Assessors of Salisbury,* 74 Mass.App.Ct. 1104 (2009), *review denied,* 455 Mass. 1102, 914 N.E.2d 331 (2009), the Massachusetts Appellate Court affirmed the determination of the Appellate Tax Board denying the Debtor and her sister relief from betterment assessments and sewer user charges imposed upon them by the Town of Salisbury. The court re ected the Property owners argument that the board should not have dismissed their appeal with respect to the betterment assessments, that the board erroneously decided their sewer user appeal, and that the board committed due process violations. The Appellate Court stated:

The appellate route from the refusal to abate a betterment assessment is to the Superior Court pursuant to G.L. c. 80, 7, or, pursuant to 10, to the county commissioners. Neither c. 80, nor G.L.c. 58A, 6, which establish the board s urisdiction, confers urisdiction upon the board over betterment assessments.

The Tomasellis characteri ation of the betterment assessments as an illegal tax does not affect this analysis. To the extent that the Tomasellis are attempting to assert illegality as a defense to the assessment, the board s overall lac of urisdiction over betterment assessments precludes consideration of the issue. To the extent that the Tomasellis are attempting to assert a separate claim, the remedy for assessment of an illegal tax is through an action at law pursuant to G.L. c. 60, 98, and is sub ect to the requirements set forth in that section.

The town appears to concede on appeal that the Tomasellis application for abatement and ensuing appeal of the sewer user charge were timely. Appellees brief at 31 n. 3. owever, the Tomasellis arguments fail on their merits.

There was substantial evidence to support the conclusion that the 280.60 sewer usage charge in question was assessed correctly. The Tomasellis did not demonstrate that the method used by the town to calculate the charge was unlawful.

74 Mass.App.Ct. at 1104 (footnotes omitted).

The Debtor referenced a bro er s comparative mar et analysis indicating potential equity in the Property but did not offer adequate protection payments or any evidence that the vacant Property is insured or maintained in a good state of repair. In opposing the Motion, she relies solely on the alleged illegality of the Town s betterment lien on the Property. As noted above, the Debtor has raised this argument before, and it has been uniformly re ected by all of the courts in which she raised it.

Section 362(g)(2) of the Ban ruptcy Code places the burden on the debtor of proving the absence of cause, and cause includes lac of adequate protection. The Court finds that the Debtor did not prove the absence of cause, as she continues to rely on the illegality of the Town s betterment assessment and failure to comply with statutory requirements, issues which have been addressed in numerous prior court actions, including the Land Court.

In addition, the Debtor did not establish her standing to contest the Town of Salisbury s Motion for Relief from Stay. She no longer claims an exemption in the Property and has failed to argue or establish that her Chapter 7 case will li ely yield a surplus entitling her to a distribution after payment of all allowed claims in full. *See generally Kowal v. Malkemus In re Thompson ,* 965 F.2d 1136 (1st Cir.1992); *In re Cho uette,* 290 B.R. 183 (Ban r.D.Mass.2002). Moreover, the claims asserted by the Debtor as a defense to the Motion for Relief from the Automatic Stay mirror those asserted by Gracemarie Tomaselli in her earlier ban ruptcy case where the Court granted relief from the automatic stay despite claims that the Debtor and her sister have asserted in state and federal courts spanning many years. The Debtor has failed to advance any persuasive legal or factual authority for the Court to find that the Town of Salisbury has not set forth a colorable claim to relief or that its lien is invalid as a result of a successful action at law under Mass. Gen. Laws ch. 60, 98.

*  Significantly, the Trustee failed to ob ect to the lift stay motion, signaling his li ely intention not to mar et

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  5

re Tomase , ot Re orted .R. (20 4)

and sell or otherwise administer the Property such that it will be deemed abandoned upon the closing of the case. The Debtor originally claimed her interest in the Property as totally exempt on Schedule C, although her initial claim of exemption exceeded the statutory amount. The Debtor has attempted to amend her exemptions to claim the Lawrence property as her homestead. The Court, however, has sustained the Trustee s Ob ection to the validity of her claimed exemption in the distressed real estate in Lawrence, Massachusetts. Moreover, any claims and defenses that the Debtor may have against the Town of Salisbury now belong to the Trustee and the Debtor s ban ruptcy estate, although they were not disclosed on Schedule B. Accordingly, to the extent that the Debtor continues to maintain that the actions of the Town of Salisbury over the past twenty plus years have been wrongful, those claims belong to the Trustee until such time as the Trustee indicates an intention to abandon them.

Not only has the Town of Salisbury stated a colorable claim for relief, the elements required for abstention also are present here. *See generally* 11 .S.C. 1334(c)(1). In view of the protracted litigation in state and federal courts and the Trustee s failure to ob ect to the Motion for Relief from the Automatic Stay, the Land Court (or any other state court) is better positioned to resolve the remaining issues, if any, involving the Debtor s rights with respect to the Property. Indeed, this Court is not the appropriate forum for the Debtor to raise speciali ed state law issues involving betterment liens and tax liens that have been the sub ect of prior rulings in other courts.

For those reasons, the Court shall enter an order granting the Motion for Relief from the Automatic Stay filed by the Town of Salisbury and overruling the Debtor s Opposition.

**All Citations**

Not Reported in B.R., 2014 WL 4322404

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

[PROPOSED] ORDER GRANTING TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSITION TO APPOINTMENT OF A BANKRUPTCY TRUSTEE

Before the Court is the Motion for Relief from Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee (the "Motion") filed by the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action.  For the reasons set forth in the Motion, the Motion is hereby GRANTED and the Court ORDERS that the automatic stay under 11 U.S.C. § 362(a) is lifted, to the extent it applies, as to the cases of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action") and Westborough SPE, LLC v. Town of Westborough, et al. (D. Mass. No. 4:23-cv-12017-MRG) (the "Civil Action").  Moreover, the Court declines the Debtor's request to appoint an interim bankruptcy trustee pursuant to 11 U.S.C. § 303(g) with respect to the disposition of the real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"), as the Property is not part of the Debtor's bankruptcy estate for the reasons set forth in the Motion and disposition of the Property will be more appropriately addressed by the Massachusetts Land Court in the Tax Foreclosure Action.

IT IS SO ORDERED.

Date: _____

_____
(                        , U.S. Bankruptcy Judge)

883509/WBOR/0042

1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

LIST OF EXHIBITS

Pursuant to Rule 5 of Appendix 8 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Massachusetts, the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby lists the exhibits that are filed separately in conjunction with the Town's Motion for Relief from Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee:

| Exhibit | Description | No. of Pages |
|---------|-------------|--------------|
| A | MA Certificate of Withdrawal | 2 |
| B | DE Administrative Dissolution | 1 |
| C | 2018 ATM Results | 31 |
| D | Instrument of Taking | 1 |
| E | Reciprocal Agreement | 41 |
| F | Tax Foreclosure Complaint | 2 |
| G | Tax Foreclosure Judgment | 1 |
| H | Application for Registration | 4 |
| I | Motion to Vacate | 12 |
| J | Land Court Docket | 10 |
| K | Civil Action Complaint | 34 |
| L | Civil Action Suggestion | 2 |

883944/WBOR/0042

375

# Exhibit A

NOV. 20. 2007 3:20PM    MA SOC Filing Number: 200701080710   Date: 11/20/2007 3:19 PM    NO. 7795    P. 2
CSC161752531B9

## CERTIFICATE OF WITHDRAWAL
## OF A FOREIGN LIMITED LIABILITY COMPANY

(Under Section 53 of the Massachusetts Limited Liability Company Act)

To the State Secretary
Commonwealth of Massachusetts

Federal Employer
Identification Number
94-3286768

It is hereby certified that:

1. The name of the limited liability company (the "company") is Westborough SPE LLC.

2. The jurisdiction where the company was organized is Delaware.

3. The address of the principal office of the company, wherever located, is 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

4. The name and the business address of the registered agent of the company in the Commonwealth of Massachusetts is 84 State Street Boston MA 02109.

5. The company is withdrawing because it is not doing business in the Commonwealth of Massachusetts.

6. All fees and taxes owed by the company have been paid or provided for.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, the undersigned does hereby affirm and swear, that to the undersigned's knowledge and belief the foregoing statements are true as of this 19th day of November 2007.

_____
Dyann Blaine, Authorized Person

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

November 20, 2007 3:19 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

232335-1-0

# Exhibit B

State Of Delaware

# State Of Delaware

## Entity Details

11/21/2022  12:18:17AM

| | | | |
|---|---|---|---|
| File Number: | 2811561 | Incorporation Date / Formation Date: | 10/22/1997 |
| Entity Name: | WESTBOROUGH SPE LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |
| Status: | Cancelled, Failure to Pay Tax | Status Date: | 6/1/2014 |

### Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 251 LITTLE FALLS DRIVE | | |
| City: | WILMINGTON | Country: | |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5401 | | |

### Tax Information

| | | | |
|---|---|---|---|
| Last AnnualReport Filed: | 0 | Tax Due: | $ 1593 |
| Annual Tax Assessment: | $250 | Total Authorized Shares: | |

### Filing History (Last 5 Filings)

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | L.P./L.L.C. Restoration | 3 | 7/13/1999 | 9:00 AM | 7/13/1999 |
| 2 | LLC | 1 | 10/22/1997 | 9:00 AM | 10/22/1997 |

380

# Exhibit C

# ANNUAL TOWN MEETING
## MARCH 17, 2 1
### The To    o  West  oro  gh

Pledge of Allegiance.

1:02 pm        Mr. John Arnold, Moderator, declared the meeting in session.

*Narrative:*

"I am John Arnold, our elected Moderator. I hereby call to order the 2018 Annual Town Meeting.  I want to thank everyone for coming today.  We need four things in order to have a Town Meeting. 1) a Moderator, I'm John E. Arnold of 251 West Main St.   2) our elected Town Clerk, Wendy Mickel   3) a signed Warrant posted with a return of service dated February 28, 2018   and 4)  a quorum.  Our bylaws state that this being our Annual Town Meeting, no quorum is necessary, therefore I declare the meeting in session.

"Before us, we have the Board of Selectmen, our executive branch of government, and various Department heads, Town Counsel, The Planning Board, the DPW, and our Police    Fire Chiefs.  At the table up front, to the right we have the Advisory Finance Committee, appointed by me, a group of 9 citi ens, who report and recommend to this legislative body, and this Town Meeting.  They review and report on all the warrant articles.

Please be sure to pick up The AFC booklet that is available  ust beyond check-in and any other information from different boards and committees on the table as well.  Printing is not free, so please take one copy to keep for the entire meeting.

I'd like to thank Mark Stockman, Steve Masciarelli and Westborough T    for their technology services.    The Women's Club has their table of snacks and drinks available. Also, there is babysitting available.  If you need to come and go during the meeting please do so quietly as there are rules about disrupting the meeting.  It is required that if you leave the premises/lobby check-in area, you must turn in your voting device. You are allowed to leave and return but, you cannot take the device with you. You will be issued a new one when you return to the meeting.

As my first duty, Our Town Bylaws require me, to nominate a Deputy Moderator who will preside if I am unable to serve or if we need to use additional rooms.  I will nominate and recommend former Moderator, Joseph Harrington, 4 Jefferson Rd. who has been briefed and is ready to serve as the Deputy Moderator.  It is the meeting who will decide by vote who will serve as Deputy Moderator.  I only nominate.

This will be our first chance to try out the electronic voting devices.  Every voter should have a device if you are a voter. It should be already turned on with some numbers on it.  For any motions when we take a vote, pressing number 1 on the device is a vote of YES, (you are in favor of the motion)  and pressing number 2 on the device is a vote of NO (that you oppose the motion).  When voting begins the green light goes on for a voting time of 15 seconds  after 15 seconds, voting ends.  It takes a few seconds to register on the screen that the Town Clerk and I share and we will agree on the vote total on the screen and then I will read aloud.  If you accidentally press the wrong number all you have to do is press the correct number you want.  The last number you press is the vote that is accepted.

This would be the first chance to try out our devices  the Nomination of Joseph Harrington.  When I say voting begins, you may press 1 or 2.  Once your device says <u>received</u> the network system has received your vote. When the light goes off, voting has ended.

The vote for Mr. Harrington was: **114     a or a  d 2 o    osed**.  The nomination carries. Mr. Harrington is now our Deputy Moderator.

Mr. Harrington will you please stand and raise your right hand while I give The Oath of Office:  Mr. Harrington, do you solemnly swear that having been appointed Deputy Moderator, you will faithfully and impartially perform the duties of this office, so help you God    Mr. Harrington responded with a Yes.

I will hold off on the teller nominations as we have electronic voting.  I will do that if we for some reason do not have the electronic voting service.

It is now the time to act on the admission of non-voters to the town meeting floor.  The rules of town meeting are that any registered voter may attend and any registered voter may ask to speak, however, if a non-voter wishes to speak it needs town meeting approval.

I have not received any requests from non-voters to speak on specific articles for this Town Meeting.

I want to point out the Non- oter section in the balcony.  No one sitting in that section will be recogni ed.  If you are a voter and wish to speak then you must move from that section to be recogni ed.  There is also a section in the front for the Press.

Are there any first time voters   Any who have attended for 50 or more years.  Any for 25 or more.  Thank you all for your interest and attendance at this Town Meeting.

 I want to thank the Boy Scouts for providing the microphone service.  We have 2 standing microphones. You have the option to stand at a microphone or raise your hand and a Boy Scout will bring you a microphone.  I will try to pick those sitting if I am aware of you needing a microphone.

Finally, about the cell phones. I ask you to please put them on mute, vibrate or turn off.  Please take any calls to the lobby as not to disrupt the meeting.

I want to now do a quick review of the Rules of Town Meeting.  The rules relating to Town Meeting indicate we are taking votes on those who are present and voting.  That means that only registered voters who have checked-in with the Town Clerk's staff are eligible to vote.  When you leave the hall, you are no longer eligible to vote.  If you leave the room briefly, take your voting device with you, show it to the Town Clerk's staff.  If at any time you are going to leave the building, you must turn in your electronic device to the check-in tellers.  When you return, you will get another device. You personally are responsible for your handset.  It's very important if you leave you return the device.  You must be in the room when voting.

The rules are very simple.  You must raise your hand to speak and I will recogni e you.  Only one person at a time is allowed to speak.  For a person making a presentation, you are allowed to speak for no more than 10 minutes. For a voter who wishes to comment or speak to a motion, you are limited to no more than 2 minutes.  Each person is allowed to speak no more than two times on an article without the vote of town meeting, unless you are directed to answer a question.  Discussion and deliberations is limited to the topic in the motion.  If you have comments about other topics about town meeting there are other forums to speak to that. Please ask and I can direct you to the other forums. We are here today acting as the town's legislature, and our deliberations are by design focused on the items before us, however if at any time you have a question about Town Meeting you may rise and say Point of Order, state you question and I will help you as best as I can.

In the event of an Emergency, Emergency personnel are here to help and assist as needed. Please stay quiet and wait for instructions from Emergency personnel.  Emergency exits are in the rear of the room.  Please only use in an emergency.

**Art cle O e** was the election of town officers. 11 people ran for 9 positions. I ask anyone who ran to please stand and be thanked for serving.  We have two new Selectmen, which is unusual  Shelby Marshall    Syed Hashmi, I ask you both to stand.  Also, anyone whose term ended but you chose not to run again, please stand and be recogni ed for your service. From the elected boards and the townspeople of Westborough, we thank you for your service. And at this time I think it would be appropriate to introduce Westborough's new Police Chief.  Chief Jeffrey Lourie is down front  please stand as we welcome you.   I reali ed that I failed to introduce our Fire Chief when I was first Elected and a new moderator.  Here is our new Fire Chief, Chief Purcell.  Please stand.  And a special thank you to outgoing Selectmen  Den il Drewry and George Barrette and our newly retired Police Chief Al Gordon.  Thank you all for your service.

And now we move on to **Art cle 2**."

# COMMONWEALTH OF MASSACHUSETTS
## WORCESTER, SS

TO ANY CONSTABLE IN THE TOWN OF WESTBOROUGH, IN THE COUNTY OF WORCESTER, GREETINGS:

In the name of the Commonwealth of Massachusetts, you are directed to notify and warn the inhabitants of the Town of Westborough, qualified to vote in elections and town affairs, to meet in various precincts in Westborough on Tuesday, the 6th day of March, 2018 at 8:00 A.M. for the following purposes:

**ARTICLE 1   A     al To     Elect o   Board o  Select   e**
To bring in their votes for:

Two    (2)    Selectman (3 years)
One    (1)    Planning Board member (5 years)
One    (1)    School Committee members (3 years)
Three  (3)    Trustees of Public Library (3 years)
One    (1)    Trustees of Public Library (1 year)
One    (1)    Westborough Housing Authority (5 years)

Polls will be open from 8 A.M. to 8 P.M. in the following places:

Precincts l   5 Westborough High School, 90 West Main Street

And to act on the following articles at the ad ourned session of said meeting on March 17, 2018, at 1:00 P.M. in the Westborough High School Auditorium and Gymnasium on West Main Street.

The Town Manager's Statements printed in italics are not part of the formal articles of the warrant. They constitute additional information offered for the benefit of the voters, true and correct as of the time of posting of the warrant, but sub ect to change as called for.  They are not to be construed so as to broaden or limit the scope of the formal articles.

**ARTICLE 2  To     Re  orts Ad  sor  F   a  ce Co      ttee**
To see if the Town will vote to hear the reports of the several town officers and committees, and to dissolve any committees established by Town Meeting that have fulfilled their mission, or take any other action thereon.

*   an    auch,   dvisory   inance Committee - Motion     move that the town vote to receive the reports of the various officers and committees and that the report of the   dvisory   inance Committee be acted upon item by item under the various articles of the warrant*

**Vote**
**Yes  1 7**
**No  1**

The Moderator noted to "Please notice the 2017 Annual Report is dedicated to Polly Howard.  She served on the Advisory Finance Committee and many other boards and committees. Also, included with the dedication to Polly are those who have served our Town and recently passed away  a moment of silence, please."

Mr. Malloy, Town Manager gave the "State of the Town" presentation

**ARTICLE     F scal Year 2  19 O  erat  g B  dgets  Board o  Select   e**
To see what sums the Town will vote to raise and appropriate for the support of the several offices, departments, boards and commissions of the Town of Westborough for Fiscal Year 2019 beginning July 1, 2018, and ending June 30, 2019, or take any other action thereon.

*Town Mana  er s Statement   The Town bud  ets, includin  all e  penses are estimated to increase decrease as follows*

3

| | | | | M | M |
|---|---|---|---|---|---|
| | | | | | |
| *eneral* | , , | , , | , , | | |
| *ater* | , , | , , | , | | |
| Sewer | , , | , , | , | | |
| *astewater* | , , | , , | , | | |
| Country Club | , | , | , | | |
| | | | | | |
| Total | , , | , , | , , | | |

*Town Mana er s Statement*
*The motion for this article is a simple ma ority vote*

  *an   auch,   dvisory   inance Committee* - *Motion    move that the town vote to raise and appropriate such sums of money as may be necessary to defray the e penses of the several town departments for the ensuin  fiscal year and that each total read by the Moderator be considered a separate motion made for each of the line items ma in  up that total in the column mar ed          C  ec Bud et   further move that the total amount raised be reduced by the transfer from Country Club  etained  arnin s of    , and that the balance be raised and appropriated*

(1:43 pm)
**Vote  all l  e te  s  ot   est o ed Yes  17**
**No  11**
**Mot o  carr es**

   **est o    Treas rer/Collector   E   e ses**
**Yes  1 5**
**No  1**
**Mot o  carr es**

   **est o    I s ra ce  E   e ses**
**Yes  1 9**
**No  22**
**Mot o  carr es**

   **est o    F re De t/A    la ce  E   e ses**
**Yes  195**
**No  1**
**Mot o  carr es**

   **est o    Waste ater Treat  e t Pla t  E   e ses**
**Yes  197**
**No  15**
**Mot o  carr es.**

   **est o    West oro gh School De  t. B dget**

Dominic Capriole -  motion to amend the school budget to a reduction in the school budget of 1      50,765,755.

Mrs. Kung, moved the question
Yes  204
No  30
Debate has ended.

The Town Bylaw requires that a  ote to the amendment that is less than the higher amount  the rules are that we vote on the higher amount first.  If that fails, then we vote to the lesser.

**Vote  to the or g al  ot o   51,27 ,54**
**Yes  162**
**No  71**
**Mot o  carr es**

4

385

**ARTICLE 4  Reg larl Rec rr  g Art cles  To    Ma ager**
To see what action the Town may take on the following items, **A** through C**,** which may be voted as a block, or singly, or in any combination, but however voted, will be treated for accounting purposes as if each item were voted as a separate article:

**A. Reser e F  ds Ad sor F  a ce Co    ttee**  To see if the Town will vote to raise and appropriate the sum of Two Hundred Fifty Thousand Dollars (  250,000) or such other amount as the Town Meeting may approve, for the Finance Committee General Reserve Fund, transfer Fifty Thousand Dollars (  50,000), or such other amount as the Town Meeting may approve, from Water retained earnings for the Water Enterprise Reserve Fund, transfer Fifty Thousand Dollars (  50,000), or such other amount as the Town Meeting may approve, from Sewer retained earnings for the Sewer Enterprise Reserve Fund, and transfer Twenty Thousand Dollars (  20,000) from Country Club retained earnings for the Country Club Enterprise Reserve Fund, or such other amounts as the Town Meeting may approve, in accordance with Section 6 of Chapter 40 of the Massachusetts General Laws, or take any other action thereon.

*Town Mana  er s Statement   These accounts provide fundin  for unforeseen e  penses durin  the year throu  h various reserve funds  The motion for this article is a simple ma ority vote*

**B. Reco  str ct o  a d I   ro e e to To    Roads Cha ter 9    DPW**  To see if the Town will vote to transfer from available funds the sum of Seven Hundred Eighty Nine Thousand Six Hundred and Thirty Four Dollars (  789,634) or such other amount as the Town Meeting may approve, to construct, reconstruct, or improve the town roads, and further, to authori  e the Board of Selectmen to apply for and accept a grant in this full amount, more or less, which is to be the State's contribution and/or reimbursement under chapter 90 of the Massachusetts General Laws for work done under this article, or to take any other action thereon.

*Town Mana  er s Statement   This article allows the Town to borrow from itself thus avoidin  interest costs to pay the upfront costs under the Chapter    funds  which is a reimbursable pro  ram  from Mass    T for the purpose of repairin  town roads  The Town underta  es an annual study that establishes the Town needs to be spendin        million to maintain streets in Town  This means the Town is appro  imately       ,    short of fundin  necessary maintenance on town streets The motion for this article is a simple ma ority vote*

**C. Healthcare Re     rse  e t Acco  t  To    Ma ager**  To see if the Town will vote to raise and appropriate the sum of Twenty Thousand Dollars (  20,000) or such other amount as the Town Meeting may approve, to fund the Healthcare Reimbursement Account as agreed with the Town's Collective Bargaining Units, or take any other action thereon.

*Town Mana  er s Statement   This article funds the Town s   ealthcare  eimbursement  ccount by settin  aside an estimated amount  based on use throu  h  anuary  to allow the Town to meet its obli  ation to the Collective Bar  ainin    nits in e  chan  e for various health insurance plan desi  n chan  es  The Town funds the amount that was estimated to be used durin   the current fiscal year to replenish the fund  The motion for this article is a simple ma ority vote*

**D. Re Stoc   g Sa  dra Po  d  Sa  dra Po  d  Warde  s/Recreat o  De art  e t**  To see if the Town will vote to raise and appropriate the sum of Four Thousand Dollars (  4,000) or such other amount as the Town Meeting may approve, to re-stock Sandra Pond, or take any other action thereon.

*Town Mana  er s Statement   This article funds the fish re-stoc  in  at Sandra Pond as the Town has done in the past    or the past several years, this has been done with outside funds which no lon  er are able to fund the re-stoc  in   The motion for this article is a simple ma ority vote*

 *Syed   ashmi, Board of Selectmen - Motion    move that the Town vote to approve  rticle  , Sections   -  and that the Town vote to raise and appropriate the sum of     ,    , transfer and appropriate      ,    from  ater  etained  arnin  s, transfer and appropriate    ,    from Sewer  etained  arnin  s and transfer and appropriate    ,    from Country Club  etained  arnin  s for the purpose of  rticle    as printed in the warrant  transfer from available funds the sum of     ,    for the purpose of  rticle   B as printed in the warrant  raise and appropriate the sum of    ,    for the purpose of  rticle   C as printed in the warrant  and raise and appropriate the sum of   ,    for the purpose of  rticle    as printed in the warrant*

**Vote**
**Yes  1  7**

No 7
Mot o carr es

**ARTICLE 5 Ca tal I ro e e t Pla To Ma ager/Ca tal E e d t re Pla g Co ttee**

To see what action the Town may take on the following items, **A** through I**,** which may be voted as a block, or singly, or in any combination, but however voted, will be treated for accounting purposes as if each item were voted as a separate article:

**A. 2 Passe ger M B s Co c l o Ag g**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Eighty One Thousand Four Hundred Thirty Three Dollars ( 81,433) or such other amount as the Town Meeting may approve, for the purpose of replacing a 2006 mini-bus, or take any other action thereon.

*Town Mana er s Statement This article would fund the replacement of a mini bus for , The is unreliable and replacement parts have become difficult to obtain and the cost of maintenance and down time has increased This mini-bus has an estimated useful life of - years and is used to transport senior citi ens The motion for this article is a simple ma ority vote*

**B. DPW E e t P l c Wor s**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Two Hundred Fifty Thousand Dollars ( 250,000) or such other amount as Town Meeting may approve, for the purpose of replacing the 1986 Chevy C170 Catch Basin Cleaner and other DPW equipment, or take any other action thereon.

*Town Mana er s Statement This article would fund the replacement of year old catch basin cleaner that is unreliable and parts are difficult to obtain and the cost of maintenance and down time has increased This piece of e uipment is used to meet the Town s re uired compliance with P Stormwater e ulations related to maintainin catch basins for street draina e and has an estimated useful life of - years The motion for this article is a simple ma ority vote*

**C. F re De art e t A la ce F re**

To see if the Town will vote to transfer from Ambulance Reserved Receipts Account and appropriate the sum of One Hundred Eighty Thousand Dollars ( 180,000) and to transfer from Free Cash and appropriate the sum of Ninety Five Thousand Dollars ( 95,000) or such other amount as Town Meeting may approve, for the purpose of replacing an ambulance in the Fire Department, or take any other action thereon.

*Town Mana er s Statement This article would fund the planned recurrin pro ram to replace one of the Town s three ambulances every three years so that the oldest ambulance in the fleet is between - years old at the time of replacement mbulances have an e pected life span of years and as a piece of emer ency e uipment, the Town see s to ensure reliability The motion for this article is a simple ma ority vote*

**D. All Terra Veh cle F re**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Thirty One Thousand Dollars ( 31,000) or such other amount as Town Meeting may approve, for the purpose of purchasing an all terrain vehicle for the Fire Department, or take any other action thereon.

*Town Mana er s Statement This article would fund the addition of an all-terrain vehicle TV to the ire epartment that can be used off road on town trails to ensure that more e pensive ambulances are not used off road The Town has borrowed TV s from nei hborin communities several times over the past si months which has hi hli hted the need to have one ready and available in Town The motion for this article is a simple ma ority vote*

**E. Ca tal Sta l at o F d**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of One Hundred Thousand Dollars ( 100,000) or such other amount as Town Meeting may approve, to the Capital Stabili ation Fund, or take any other action thereon.

*Town Mana er s Statement This re uest is to fund the capital stabili ation fund which currently has a balance of , ast year, , was appropriated to help offset the costs associated with the replacement of escue This re uest would add , to the Capital Stabili ation und toward the purchase of the replacement of future lar e purchases The motion for this article is a simple ma ority vote*

6

**F. Pho e S ste  U grades MIS/GIS**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Four Thousand Eight Hundred Dollars ( 24,800) or such other amount as Town Meeting may approve, for the purpose of replacing the phone systems in the Public Works Department and Senior Center, or take any other action thereon.

*Town Mana er s Statement   The M S  S  epartment has the responsibility of overseein  all of the Town s phone systems  Most have been replaced over the years so that the  ire  epartment, Town  all, Police  epartment and  ibrary are all on the same phone system  The manufacturer of the  P  phone system went out of business in      The e pected return on investment  throu h the reduction of the number of lines needed throu h tollin  is    years  The motion for this article is a simple ma ority vote*

**G. Cr  ser Re lace e t Pol ce**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of One Hundred Fifteen Thousand Dollars ( 115,000) or such other amount as Town Meeting may approve, for the purpose of replacing two police cruisers, or take any other action thereon.

*Town Mana er s Statement   This article would fund the replacement of two police cruisers  Those bein  replaced have hi h milea e, many idlin  hours and those costin  the department the most to maintain  The department is on a re ular replacement schedule which includes the mobile data terminals and radar units  The life e pectancy of a police cruiser is five years  this article would replace the Town s two oldest cruisers  The motion for this article is a simple ma ority vote*

**H. Se  er Gr  der I stallat o  at P     Stat o  P  l c Wor  s**

To see if the Town will vote to transfer from Sewer Retained Earnings and appropriate the sum of Sixty Five Thousand Dollars ( 65,000) or such other amount as Town Meeting may approve, for the purpose of installing a grinder pump at the Longmeadow Pump Station, or take any other action thereon.

*Town Mana er s Statement   This article would fund the second of a multi-year plan to install  rinder pumps at various pump stations  Specifically, this appropriation would fund the installation of a  rinder pump at the  on meadow Pump Station     astewater  rinder Pumps can effectively precondition solids, includin  non-dispersible solids into smaller pieces that can pass throu h pumps without clo  in  or dama in  the pumps  The motion for this article is a simple ma ority vote*

**I. Re lace F re H dra ts P  l c Wor  s**

To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Thirty Thousand Dollars ( 30,000) or such other amount as Town Meeting may approve, for the purpose of replacing ten (10) fire hydrants in FY18, or take any other action thereon.

*Town Mana er s Statement   This article would fund the second year of a recurrin  pro ram to replace fire hydrants to replace anti uated hydrants in need of replacement  Parts for the older hydrants are difficult to obtain, newer hydrants open more easily and are more efficient  The motion for this article is a simple ma ority vote*

**J. Wea o s Re lace e t Pol ce**

To see if the Town will vote to transfer from Free Cash and appropriate the sum of Seventy One Thousand Five Hundred Dollars ( 71,500) or such other amount as Town Meeting may approve, for the purpose of replacing the police department's weapons, or take any other action thereon.

*Town Mana er s Statement   This article would fund the replacement of all of the police department s weapons  The department s patrol rifles are    years old and the hand uns will be    years old  Both are beyond the  -  year life span recommended by e perts for police department weapons  The motion for this article is a simple ma ority vote*

<u>*Bruce Tretter, Board of Selectman*</u> *- Motion*

*move that the Town vote to transfer from  ree Cash and appropriate*
*The sum of    ,    for the purposes of  rticle    transfer from  ree Cash and appropriate the sum of    ,    for the purposes of  rticle  B  transfer from  ree Cash and appropriate the sum of    ,    and transfer from  mbulance  eserved  eceipts the sum of    ,    for the purposes of  rticle  C  transfer from  ree Cash and appropriate the sum of    ,    for the purposes of  rticle    transfer from  ree Cash and appropriate the sum of    ,    to the Capital Stabili ation  und for the purpose of  rticle    transfer from  ree Cash and appropriate the sum of    ,    for the purposes of  rticle    transfer from  ree Cash and appropriate the sum of    ,    for the purpose of  rticle    transfer from Sewer  etained  arnin s and appropriate the sum of    ,    for the purpose of    transfer from  ater  etained  arnin s the sum of    ,    for the purpose of  rticle    and transfer from  ree Cash and appropriate the sum of    ,    to replace the weapons, and other e uipment for the purpose of  rticle    and further moved that the si e of the town s fleet*

7

*will increase by the purchase of one  TV*

**Vote**
**Yes  2 1**
**No  11**
**Mot o  carr es**

----------

  Point of Order   Ha el Nourse, 80 Nourse St.
  *move that article          of the Town  arrant concernin  the disposition of the Spurr  ouse be moved for discussion and action at this time, prior to  rticle*

  ote:
Yes   103
No  95
Motion fails a 2/3 vote not achieved.
----------

**ARTICLE 6  Te   s Co  rt/P c le Ball Co  rt   Reallocat o  o F   ds  Recreat o  De  t**
To see if the Town will vote to transfer from Article 13 of the 2017 Annual Town Meeting, Recreation Parking Lot at former State Hospital Property Article and appropriate the sum of Fifty Four Thousand Seven Hundred Thirty Five and 86/100 Dollars ( 54,735.86) or such other amount as Town Meeting may approve, for the purpose of installing surfacing for a new tennis court and pickle ball court on Lyman Street, or take any other action thereon.

*Town Mana  er s Statement   The par in   lots at the former state hospital property have been constructed and bids came in below the ori inal appropriation of    ,   which allows the  ecreation  epartment to surface a new tennis court that has been under construction and to surface a pic le ball court, which the Town has been receivin  re uests to provide a location for pic le ball  The motion for this article is a simple ma ority vote*

  *arl Storey,  ecreation Commission - Motion   move that the Town vote to transfer from  rticle of the         nnual Town Meetin  and appropriate    ,       for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes  176**
**No  17**
**Mot o  carr es.**

**ARTICLE 7  Aer al Fl  o  er  or Geogra  h cal I  or  at o  S ste    GIS  IT D rector**
To see if the Town will vote to transfer from free cash, water retained earnings or sewer retained earnings and appropriate the sum of Eighty Five Thousand Six Hundred Seventy Nine Dollars ( 85,679) or such other amount as Town Meeting may approve for the purpose of having an update to the 2009 orthophotographs that accompany the GIS, or take any other action thereon.

*Town Mana  er s Statement   This article would fund an update to the orthophotos used in con unction with the Town s  eo raphic  nformation System   S  that were last updated in      and      This data is used by various town departments as well as commercial businesses and developers  This article is a simple ma ority vote*

*Shelby Marshall, Board of Selectmen - Motion   move that the Town vote to transfer from  ree Cash and appropriate    ,    transfer from  ater  etained  arnin s and appropriate    ,    and transfer from Sewer  etained  arnin s and appropriate    ,   for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes  17**
**No  14**
**Mot o  carr es**

**ARTICLE    Co  tr  Cl  Stor  Shelter Re  lace e  t Co  tr  Cl  O erat g Co    ttee**
To see if the Town will vote to transfer from Country Club Retained Earnings and appropriate the sum

8

of Two Thousand Five Hundred Dollars ( 2,500) or such other amount as Town Meeting may approve, for the purpose of replacing the storm shelter at the Country Club, or take any other action thereon.

*Town Mana er s Statement The Country Club has a shelter on the olf course to protect olfers at the far end of the olf course that has deteriorated and needs to be replaced The funds for this pro ect are bein appropriated from the Country Club peratin Committee s unds and not the eneral und The motion for this article is a simple ma ority vote*

*e ter Blois, Country Club Committee - Motion*
*move that the Town vote to transfer from Country Club etained arnin s*
*and appropriate , for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes 166**
**No 16**
**Mot o Carr es.**

**ARTICLE 9 Co tr Cl Mo er Lease Co tr Cl O erat g Co ttee**
To see if the Town will vote to authori e the Country Club Operating Committee to lease purchase a Fairway Mower pursuant to MGL Chapter 44, Section 21C, or such other enabling statute, for a term of five (5) years and an annual amount not to exceed 13,500, or take any other action thereon.

*Town Mana er s Statement The Country Club peratin Committee needs to replace the mower used on the fairways at the olf course and is see in to lease purchase a new fairway mower The motion for this article re uires a ma ority vote*

*e ter Blois, CC -Motion*
*move that the Town vote to approve the lease purchase for a period of years in an amount not to e ceed , per year to be paid from the Country Club und for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes 166**
**No 16**
**2/ Vote Mot o Carr es**

**ARTICLE 1 DOR Cert cat o Re al at o Board o Assessors**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Five Thousand Dollars ( 25,000) or such other amount as Town Meeting may approve, for the purpose of funding the required Department of Revenue certification revaluation of the Town and subsequent interim valuation ad ustments, or take any other action thereon.

*Town Mana er s Statement This appropriation would fund the revaluation certification re uired by the epartment of evenue that the Board of ssessors needs to underta e every five years as well as interim valuation ad ustments The motion for this article is a simple ma ority vote*

*ei h mery, B S - Motion move that the Town vote to transfer from ree Cash and appropriate , for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes 16**
**No 12**
**Mot o Carr es.**

**ARTICLE 11 S c Lea e B Bac To Ma ager**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Two Thousand Five Hundred Dollars ( 2,500) or such other amount as Town Meeting may approve, for the purpose of paying a contractual sick leave buy back from an unanticipated retirement, or take any other action thereon.

*Town Mana er s Statement The Town s Personnel Policies and nion Contracts provide a ma imum payout for accumulated and unused sic leave at the time of retirement with a ma imum amount paid out of , urin the past year, there were two unanticipated retirements that would be funded by this article the amount sou ht is the difference*

9

*between what was anticipated and the total amount due   The motion for this article is a simple ma ority vote*

 an  ohnson, Board of Selectmen - Motion
  *move that the Town vote to transfer from   ree Cash and appropriate    ,     for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes  161**
**No  19**
**Mot o  Carr es**

**ARTICLE 12   Tree Pr      g   State Hos  tal  DPW D rector**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Twenty Five Thousand Twenty Dollars (  25,020) or such other amount as Town Meeting may approve, for the purpose of pruning approximately 90 trees on the former State Hospital property, or take any other action thereon.

*Town Mana er s Statement   This  rticle would fund prunin  a lar e number of trees on the portion of the State  ospital property that the Town will be retainin    Many of the trees have not been pruned in many years and are in dire need of bein  properly pruned  The motion for this article is a simple ma ority vote*

 ohn   alden, P     irector - Motion    *move that the Town vote to transfer from   ree Cash and appropriate    ,     for the purpose stated in the article as printed in the warrant*

Derek Saari, Conservation Comm. spoke to article

**Vote**
**Yes  169**
**No   1**
**Mot o  carr es.**

**ARTICLE 1    Tree Pr     g  Do   to      DPW D rector**
To see if the Town will vote to transfer from Free Cash and appropriate the sum of Eleven Thousand Twenty Five Dollars (  11,025) or such other amount as Town Meeting may approve, for the purpose of pruning approximately 35 trees in the downtown area, or take any other action thereon.

*Town Mana er s Statement   This  rticle would fund prunin  appro imately    trees in the downtown area   Many of the trees have not been pruned in many years and are in dire need of bein  properly pruned   The motion for this article is a simple ma ority vote*

 ohn   alden,  P  - Motion    *move that the Town vote to transfer from free cash and appropriate     ,     for the purpose stated in the article as printed in the warrant*

**Vote**
**Yes  16**
**No  14**
**Mot o  carr es.**

**ARTICLE 14  La  d Ac   s t o   O  e  S  ace Co      ttee**
To see if the Town will vote to raise and appropriate, transfer from available funds, including, without limitation, the Walkup Robinson Account, and/or borrow the sum of Four Hundred Fifty Thousand Dollars (  450,000) or such other amount as Town Meeting may approve for the purpose of acquiring the parcels of land located at 10    12 Mill Road and any and all costs incidental or related thereto, and further to authori e the Board of Selectmen to acquire said parcels by gift, purchase and/or eminent domain for open space purposes on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, with said parcels to be used for general municipal purposes,  or take any other action thereon.

*Town Mana er s Statement   This  rticle see s to provide authori ation for the Board of Selectmen to ac uire appro imately    acres of property ad acent to the Veterans  reedom Par  on behalf of the   pen Space Committee usin  funds in the  al up  obinson  und, which presently has a balance of   ,   ,     The motion for this article re uires a ma ority vote*

10

*Mar  Silverber  ,   pen Space  Motion*    Move that the Board of Selectmen is authori ed to ac uire, by purchase,  ift, eminent domain or otherwise, the parcels of land located at     and    Mill  oad,   estborou  h, M  , on such terms and conditions as the Board of Selectmen deems in the best interests of the Town  such land to be ac uired for general municipal *conservation and* active recreation purposes under the control of B  S that the Board of Selectmen is authori ed to e ecute any documents and enter into any a  reements associated with such ac uisition  that the sum of      ,    is hereby appropriated to be e pended at the direction of the Board of Selectmen to pay costs of ac uirin  said parcels, and for the payment of all costs incidental and related thereto  that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authori ed to borrow such amount under M    Chapter    or any other enablin  authority  that the repayment of the bonds shall be from the   al up  obinson   und and that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter   , Section    of the   eneral  aws, thereby reducin  the amount authori ed to be borrowed to pay such costs by a li  e amount  and that the Board of Selectmen is authori ed to e ecute any documents or a  reements or to ta  e any other action necessary to carry out this pro ect

  e uest to -   mend motion to delete the word   active   from the motion     C    B  S
  ote to amend motion:
Yes  16
No  148
Amendment defeated

  anet   nderson, Chauncy St      mend motion to add   and passive
  ote to amend motion:
Yes  150
No  23
Motion carries

*Paul   eor e,  obin  oad -   mend motion* to remove the lan ua e   eneral municipal  from the motion
  ote to amendment:
Yes  163
No  10
Amendment carries

  ames Tash ian,   est Main Street      mend motion to add after purposes and before under   and such uses which are permitted under the Walkup Robinson Trust Provisions

  ote to amend motion:
Yes  154
No  20
Motion carries

**A  e ded Mot o**
  Move that the Board of Selectmen is authori ed to ac uire, by purchase,  ift, eminent domain or otherwise, the parcels of land located at     and    Mill  oad,   estborou  h, Massachusetts, on such terms and conditions as the Board of Selectmen deems in the best interests of the Town  such land to be ac uired for conservation and passive and active recreation purposes such uses which are permitted under the   al up  obinson Trust Provisions under the control of the Board of Selectmen that the Board of Selectmen is authori ed to e ecute any documents and enter into any a  reements associated with such ac uisition  that the sum of     ,    is hereby appropriated to be e pended at the direction of the Board of Selectmen to pay costs of ac uirin  said parcels, and for the payment of all costs incidental and related thereto  that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authori ed to borrow such amount under  M    Chapter    or any other enablin  authority  that the repayment of the bonds shall be from the   al up  obinson   und and that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter   , Section    of the   eneral  aws, thereby reducin  the amount authori ed to be borrowed to pay such costs by a li  e amount  and that the Board of Selectmen is authori ed to e ecute any

11

*documents or a reements or to ta e any other action necessary to carry out this pro ect*

**Vote to a ot o th a e d e ts**
**Yes  157**
**No  2**
**Mot o  carr es, a 2/  ote ach e ed**

**ARTICLE 15  To  Se er S ste  DPW D rector/To  E g eer**
To see if the Town will vote to transfer and appropriate from sewer Retained Earnings and appropriate the sum of Two Million Dollars (  2,000,000), or such other amount as Town Meeting may approve, for the design for repair, replacement and upgrade of the Banyan and Cumberland Sewer Pump Stations, or take any other action thereon.

*Mana ers Statement   This article would provide fundin  from the Sewer  etained  arnin s  ccount for the desi n, biddin , and rehabilitation of the Banyan and Cumberland Sewer Pump Stations  The Town operates    sewer pump stations with life spans in the  -  year ran  before rehabilitation is recommended  These two stations are near    years old and Cumberland has a deteriorated wet well that is need of full replacement   t this time, the Town has nearly   million in the Sewer  etained  arnin s  ccount and can fund this up rade without borrowin  however, future pump station improvements of this ma nitude will li ely re uire the Town to borrow funds to underta e this wor   This  rticle re uires a simple ma ority vote*

 *ohn  alden, P  irector - Motion   move that the Town vote to transfer from Sewer  etained  arnin s and appropriate   ,  ,   for the purpose stated in the article as printed in the warrant*

Carl Balduf, Engineer spoke to the article.

**Vote**
**Yes  156**
**No**

**ARTICLE 16  Water Ca tal E   e t a d Pro ects  DPW D rector   Co ser at o O cer**
To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Fifty Nine Thousand (  59,000) dollars or such other amount as Town Meeting may approve, for the purpose of surveying and installing signage at the boundaries of the Andrews 1/1R, Andrews 2, Wilkinson, Chauncy 1, Chauncy 2 and the Indian Meadows well fields, and performing other related maintenance such as, but not limited to, removing vegetation that is interfering with the associated water supply utilities, cleaning debris from tributaries to reduce flooding and removing invasive vegetation at the Hopkinton Road well field, or take any other action thereon.

*Town Mana er s Statement- This  rticle would find the necessary maintenance and the survey of the Town s water supply boundaries and the installation of si na e indicatin  the boundary area  These are the last remainin  water supply boundaries that need to be surveyed  The maintenance will include clearin  debris from tributaries and the removal of dead, dyin , ha ardous, and invasive ve etation  The motion for this article is a simple ma ority*

 *ohn  alden, P  - Motion   move that the Town vote to transfer from  ater  etained  arnin s and appropriate   ,   for the purpose stated in the article as printed in the warrant*

 *ere  Saari spo e to article*

**Vote**
**Yes  156**
**No  1**
**Mot o  carr es.**

**ARTICLE 17  Water Ca tal E   e t a d Pro ects  DPW D rector   Co ser at o O cer**
To see if the Town will vote to transfer from Water Retained Earnings and appropriate the sum of Twenty One Thousand (  21,000) dollars or such other amount as Town Meeting may approve, for the purpose of performing necessary repairs and maintenance such as but not limited to, armoring the eroded stream banks, debris removal, vegetation removal, and rebuilding existing culvert headwalls on two

12

tributaries that feed Sandra Pond Reservoir, or take any other action thereon.

*Town Mana er s Statement   This  rticle would fund necessary repairs on two severely eroded tributaries that feed the Town s drin in  water supply  The motion for this article is a simple ma ority*

* ohn  alden,  P  - Motion   move that the Town vote to transfer from  ater  etained  arnin s and appropriate   ,   for the purpose stated in the article as printed in the warrant*

* ere  Saari spo  e to article*

**Vote**
**Yes  151**
**No  4**
**Mot o  carr es.**

Leigh Emery, Chairman of the Board of Selectmen - Motion to recess until 7pm tonight.
**Yes  1 2**
**No**

7      Meet g res   ed

**ARTICLE 1   A thor at o  a d A  ro r at o  to Ac  re/D s ose o  2 1 T r    e Road
 Board o  Select  e**
To see if the Town will vote to authori e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, a parcel of land with buildings and other improvements thereon located at 231 Turnpike Road and containing approximately 29.34 acres, for general municipal and/or economic revitali ation purposes, and to raise and appropriate, transfer from available funds, and/or borrow a sum of money to be expended at the direction of the Selectmen for the cost of acquiring said property and any and all costs incidental or related thereto  to authori e the Selectmen to apply for, accept and expend any grants from any source whatsoever that may be available to pay any portion of this pro ect, and to execute any and all documents and/or other instruments as may be necessary or convenient to accomplish the foregoing purposes, or take any other action thereon.

*Town Mana er s Statement   This article would authori e the Selectmen to ac uire the former  e al Cinema property on  oute   Turnpi e  oad  for the purposes of redevelopment and economic development   e al Cinemas, which leased the property, vacated the premises in late    , at the end of their   year lease and paid property ta es throu h  ovember Since no ta es have been paid on the property since and the ownership of the property is unclear, as the record owner was administratively dissolved in    , it is li ely that the Town will eventually ac uire the property throu h a ta ta in   The ac uisition of this property by the Town will be a proactive measure to ensure that the property does not become a bli ht to the nei hborhood in the meantime because of ne lect, vandalism and or e posure to the elements   ather, the Town intends to put the property to productive use and to contribute a ain to the Town s ta  revenue  The motion for this article re uires a   ma ority vote*

* an  ohnson, B  S - Motion   move that the Board of Selectmen is authori ed to ac uire, by purchase,  ift, eminent domain or otherwise, in fee simple, a parcel of land located at   Turnpi e  oad,  estborou h, M , as shown on the ta in  plan attached to the warrant for this town meetin and to be recorded herewith, includin  all buildin s and structures thereon and all privile es and appurtenances thereto belon in  thereon, consistin of appro imately   acres, for  eneral municipal and economic development purposes, and for all purposes and uses accessory thereto, and that the Board of Selectmen is authori ed to e ecute any documents and enter into any a reements associated with such ac uisition  that the sum of   ,   ,    is hereby appropriated to be e pended at the direction of the Board of Selectmen to pay costs of ac uirin  said property, and for the payment of all costs incidental and related thereto  that to meet such appropriation the Treasurer, with the approval of the Board of Selectmen is authori ed to borrow such amount under M    Chapter   or any other enablin  authority  that the Board of Selectmen is authori ed to apply for, accept and e pend any  rants from any source whatsoever that may be available to pay any portion of this pro ect, provided that the amount of the authori ed borrowin  shall be reduced by the amount of such aid received prior to the issuance of bonds or notes under this vote  that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied*

13

to the payment of costs approved by this vote in accordance with Chapter , Section of the eneral aws, thereby reducin the amount authori ed to be borrowed to pay such costs by a li e amount and that the Board of Selectmen is authori ed to ta e any other action necessary to carry out this pro ect

**Vote**
**Yes 129**
**No 1**
**Mot o carr es, a 2/ ote ach e ed**

**ARTICLE 19 L rar E a s o Des g L rar Board o Tr stees**
To see if the Town will vote to appropriate 490,000 for architectural and engineering services for the planning and design of the library expansion, including all costs incidental or related thereto to see whether to meet this appropriation, the Town will vote to borrow said sum under the provisions of Chapter 44 of the General Laws or any other enabling authority or take any other action thereon.

*Town Mana er s Statement The ibrary Board of Trustees is see in to renovate and e pand the library and has as ed to continue the desi n process throu h a , debt issuance This pro ect is e pected to be partially funded throu h a M State ibrary Construction rant estimated to be approved durin the Summer of with construction funds to be sou ht at the all Town Meetin , if approved by Town Meetin in , this debt authori ation will be reimbursable at the same rate The full estimated cost of this pro ect is appro imately million with million e pected from the State for the local share total of appro imately , , The motion for this article re uires a ma ority vote*

<u>*Maureen mbrosino, ibrary irector - Motion move to pass over the rticle*</u>

**Vote**
**Yes 1 7**
**No 2**
**Mot o carr es a 2/ ote ach e ed**

**ARTICLE 2 Ar stro g Mod lar Borro g Art cle A e d e t School De art e t**
To see if the Town will vote to increase the previously authori ed borrow amount under Article 20 at the 2017 Annual Town Meeting and said article as amended by Article 3 of the November 2017 Special Town Meeting, from 1.5 million to 4.15 million. This article allows the construction of four new classrooms at Armstrong School. The total amount includes 750,000 in State Fire Code upgrades necessary to bring the existing Armstrong school building up to current State Building Codes, and the cost to date incurred in designing, bidding a modular classroom approach for this facility or some other amount as may be voted by Town Meeting or take any other action thereon.

*Town Mana er s Statement This article see s to increase the borrowin authori ation for the demolition and replacement of the rmstron lementary modular units The ori inal article appropriated million dollars to replace the four modular in- ind with four new modular hen the cost came in above the anticipated cost, the School Buildin Committee sou ht an amendment at the Special Town Meetin in ovember to the ori inal article to e pand the use of the ori inal borrowin authority to include the desi n, biddin and construction of a new addition to the rmstron School The full cost at this time is estimated to be million to build on-site four new classrooms The motion for this rticle re uires a ma ority vote*

<u>*Steve oret, School Committee - Motion*</u> *move that the amount appropriated and authori ed to be borrowed for the demolition and replacement of the rmstron lementary modular units and the desi n, biddin and construction of a new addition to the rmstron School pursuant to the vote of the Town under rticle at the nnual Town Meetin , as amended by a vote of the Town under rticle of the ovember Special Town Meetin , is hereby increased from , , to a total amount of , , that up to , of the total amount appropriated and authori ed to be borrowed may be used to ma e ire Code re uired up rades to the e istin buildin that to meet this additional appropriation the Treasurer with the approval of the Board of Selectmen is authori ed to borrow an additional amount of , , for such purpose under Chapter of the eneral aws or any other enablin authority that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter , Section of the eneral aws, thereby reducin the amount authori ed to be borrowed to pay such costs by a li e amount and that the Board of Selectmen is*

14

395

*authori ed to ta e any other action necessary to carry out this pro ect*

**Vote**
**Yes  126**
**No   1**
**Mot o  carr es, a 2/   ote ach e ed.**

**ARTICLE 21  H gh School M lt Ca era Sec r t a d Card Read g S ste     th B  D rect o al A  l er BDA as ecessar  or F re a d Pol ce De art e t Rad o Co     cat o s M lt Ca era Sec r t S ste   School De art e t**

To see if the Town will vote to raise and appropriate, transfer from available funds or borrow four hundred and two thousand and five hundred dollars ( 402,500) or such other funds as may be authori ed by the Town Meeting for the purpose of designing, procuring and installing a Multi-Camera Security System at the High School, and all costs incidental and related thereto, or take any other action thereon.

*Town Mana er s Statement   The  rticle see s authority to borrow    ,     to desi n, procure and install a Multi-Camera Security System at the  i h School  The motion for this  rticle re uires a    ma ority vote*

*  ave Crandall, School Committee - Motion    move that    ,     is appropriated for the purpose of desi nin , procurin  and installin  a Multi-Camera Security System at the   i h School, and all costs incidental and related thereto  that to meet this appropriation the Treasurer with the approval of the Board of Selectmen is authori ed to borrow    ,    under    c ,      or any other enablin  authority  that any premium received by the Town upon the sale of any bonds or notes approved by this vote, less any such premium applied to the payment of the costs of issuance of such bonds or notes, may be applied to the payment of costs approved by this vote in accordance with Chapter   , Section     of the  eneral  aws, thereby reducin  the amount authori ed to be borrowed to pay such costs by a li e amount  and that the Board of Selectmen is authori ed to ta e any other action necessary to carry out this pro ect*

*  d Behn,   Thomas  ice  d    e uest to   mend Main Motion*
*that    ,     is appropriated and be transferred from* Free Cash *for the purpose of desi nin , procurin   and installin  a Multi-Camera Security System at the   i h School, and all costs incidental and related thereto*

*  e ter Blois,    ld   ourse - Motion to terminate debate*
  ote to terminate debate:
Yes  157
No  13
Debate terminated

  ote to amended motion (Mr. Behn):
Yes  84
No  86
Motion defeated.

**Vote to Ma    Mot o**
**Yes  152**
**No  25**
**Mot o  carr es, a 2/   ote ach e ed**

**ARTICLE 22  To     Charter Cha ge  MIS/GIS D rector to I  or at o  Tech olog  D rector  To   Ma ager**

To see if the Town will vote to authori e the Board of Selectmen to petition the General Court for special legislation as set forth below to amend the Town Charter to make editorial changes  provided however, that the General Court may make clerical or editorial changes of form only to the bill, unless the Board of Selectmen approves amendments to the bill before enactment by the General Court, and that the Board of Selectmen is authori ed to approve amendments which shall be within the scope of the general public ob ectives of the petition, or take any other action thereon:

**AN ACT RELATIVE TO THE CHARTER OF THE TOWN OF WESTBOROUGH**

15

A. MIS/GIS Director

Section 1 Notwithstanding the provisions of section 10 of chapter 43B of the General Laws, or of any other general or special law to the contrary, the charter of the Town of Westborough is hereby amended by amending Section 4-2(b)(iv) to change "MIS/GIS Director" to "Information Technology Director"

*Town Mana er s Statement urin the Board of Selectmen approved two position title chan es to brin these title more up-to-date ne was chan in M S S irector to nformation Technolo y irector and this position is listed specifically as one of the appointments of the Town Mana er To ma e the Charter consistent with the approved position description, the Town needs to amend the Charter as proposed above*

*Syed ashmi, B S - Motion move that the Town approve the article as printed in the warrant*
**Vote**
**Yes 14**
**No 6**
**Mot o carr es**

**ARTICLE 2 A e d Ge eral B la s, Art cle To Ma ager**
To see if the Town will vote to amend the General Bylaws, Article 8, Section 3 by removing the strikethrough language and inserting the underlined language as follows:

(A)     The Town Treasurer/Collector hereinafter referred to as the "Treasurer/Collector" shall annually and may periodically furnish to each department, board, or commission, hereinafter referred to as the "licensing authority", that issues licenses or permits including renewals and transfers, a list of any person, corporation, or business enterprise, hereinafter referred to as the "party", that has neglected or refused to pay any local taxes, fees, assessments, betterments or other municipal charges for not less than a twelve month period, and that such party has not filed in good faith a pending application for an abatement of such tax or a pending petition before the appellate tax board.

(B)     The licensing authority may deny, revoke, or suspend any license or permit, including renewals and transfers of any party whose name appears on said list furnished to the licensing authority from the Treasurer/Collector or with respect to any activity, event or other matter which is the sub ect of such license or permit and which activity, event or matter is carried out or exercised or is to be carried out or exercised on or about real estate owned by any party whose name appears on said list furnished to the licensing authority from the Treasurer/Collector provided however, that written notice is given to the party and the Treasurer/Collector, as required by applicable provisions of law, and the party is given a hearing, to be held no earlier than fourteen (14) days after said notice. Said list shall be prima facie evidence for denial, revocation or suspension of said license or permit to any party. The Treasurer/Collector shall have the right to intervene in any hearing conducted with respect to such license denial, revocation or suspension. Any findings made by the licensing authority with respect to such license denial, revocation or suspension shall be made only for the purpose of such proceeding and shall not be relevant to or introduced in any other proceeding at law, except for any appeal from such license denial, revocation or suspension. Any license or permit denied, suspended or revoked under this Bylaw shall not be reissued or renewed until the license authority receives a certificate issued by the Treasurer/Collector that the party is in good standing with respect to any and all local taxes, fees, assessments, betterments or other municipal charges, payable to the Town as of the date of issuance of said certificate.

(C)     Any party shall be given an opportunity to enter into a payment agreement, thereby allowing the licensing authority to issue a certificate indicating said limitations to the license or permit and the validity of said license shall be conditional upon the satisfactory compliance with said agreement. Failure to comply with said agreement shall be grounds for the suspension or revocation of said license or permit provided however, that the holder be given notice and a hearing as required by applicable provisions of law.

(D)     The Board of Selectmen may waive such denial, suspension or revocation if it finds there is no direct or indirect business interest by the property owner, its officers or stockholders, if any, or members of his immediate family, as defined in Section One of Chapter 262 of the Mass.

16

General Laws in the business or activity conducted in or on said property.

(E)     This Section shall not apply to the following license or permits:

| | | |
|---|---|---|
| (1) | Open Burning | (MGL Ch. 48, S13) |
| (2) | Bicycle Permits | (MGL Ch. 85, S11A) |
| (3) | Sale of Articles for Charitable Purposes | (MGL Ch. 101, S33) |
| (4) | Children Work Permits | (MGL Ch. 149, S69) |
| (5) | Clubs, Associations Dispensing Food or Beverage Licenses | (MGL Ch. 140, S21E) |
| (6) | Dog Licenses | (MGL Ch. 140, S137) |
| (7) | Fishing, Hunting, Trapping Licenses | (MGL Ch. 131, S12) |
| (8) | Marriage Licenses | (MGL Ch. 207, S28) |
| (9) | Theatrical Events, Public Exhibition Permits (ATM 1999) | (MGL Ch. 140, S181) |

Or to take any other action thereon.

*Town Mana er Statement   This   rticle would authori e the Treasurer to notify Town departments periodically prior to   rantin  licenses and permits to property owners that have outstandin  ta  or other bills and char es from the Town  Presently the Town can only withhold a permit or license if the property owner is more than     months behind in the ta es or char es and can only provide this list annually to various permit issuin  authorities  This statute was amended in       to allow  reater fle ibility by notifyin  Town departments more re ularly   The motion for this article is a simple ma ority vote*

<u>*Shelby Marshall, B  S - Motion*</u>     *move that the Town approve the article as printed in the warrant*

**Vote**
**Yes  1 5**
**No  6**
**Mot o  carr es**

**ARTICLE 24  A  e d Ge eral B la  s a d Acce ta ce o  the Stretch E  erg  Code  Board o  Select  e**
To see if the Town will vote to amend Article 63, Section 1 of the General Bylaws, by deleting the current Section 1    Building Code (Replaced by State Building Code) and replacing it with a new Section 1 entitled "Stretch Energy Code" as follows for the purpose of regulating the design and construction of buildings for the effective use of energy, pursuant to Appendix 115.AA of the Massachusetts Building Code, 780 CMR, the Stretch Energy Code, including future editions, amendments or modifications thereto, with an effective date of January 1, 2019, a copy of which is on file with the Town Clerk  or to take any other action thereon.

SECTION 1 - STRETCH ENERGY CODE

(A)     Definitions

International Energy Conservation Code (IECC)    The International Energy Conservation Code (IECC) is a building energy code created by the International Code Council. It is a model code adopted by many state and municipal governments in the United States for the establishment of minimum design and construction requirements for energy efficiency, and is updated on a three-year cycle. The baseline energy conservation requirements of the MA State Building Code are the IECC with Massachusetts amendments, as approved by the Board of Building Regulations and Standards.

Stretch Energy Code    Codified by the Board of Building Regulations and Standards as 780 CMR Appendix 115.AA of the Massachusetts building code, the Stretch Energy Code is an appendix to the Massachusetts building code, based on further amendments to the International Energy Conservation Code (IECC) to improve the energy efficiency of buildings built to this code.

(B)     Purpose

17

The purpose of 780 CMR 115.AA is to provide a more energy efficient alternative to the Base Energy Code applicable to the relevant sections of the building code for new buildings.

(C)    Applicability

This code applies to residential and commercial buildings. Buildings not included in this scope shall comply with 780 CMR 115.AA, as indicated.

(D)    Stretch Code

The Stretch Code, as codified by the Board of Building Regulations and Standards as 780 CMR Appendix 115.AA, including any future editions, amendments or modifications, is herein incorporated by reference into the Town of Westborough General Bylaws, Article 63.

The Stretch Code is enforceable by the inspector of buildings or building commissioner and effective as of January 1, 2019.

Or take any other action thereon.

*Town Mana er s Summary   The adoption of the Stretch   ner y Code is re uired for the Town to be eli ible and apply for the   reen Communities   ct  t would put in place additional ener y efficiency re uirements for both residential and commercial buildin   The motion for this   rticle re uires a simple ma ority vote*

 *ei h   mery, B   S - Motion    move that the Town vote to approve this article as printed in the warrant*

**Vote**
**Yes  147**
**No  5**
**Mot o   carr es.**

**ARTICLE 25   A   e d Ge eral B  la  s Plast c Bag Red  ct o   B la    To    Ma ager**
To see if the Town will vote to amend the General Bylaws, by adding the following new Article as follows:

**Art cle        Plast c Bag Red  ct o**

This bylaw shall be known as the Plastic Bag Reduction Bylaw.

Section 1       Purpose and Intent

The production and use of thin-film single-use plastic checkout bags have significant impacts on the environment, including, but not limited to contributing to the potential death of aquatic and land animals through ingestion and entanglement  contributing to pollution of the natural environment  creating a burden to solid waste collection and recycling facilities  clogging storm drainage systems  and requiring the use of millions of barrels of crude oil nationally for their manufacture. The purpose of this bylaw is to protect the Town's unique natural beauty and its water and natural resources by eliminating single-use plastic checkout bags that are distributed in the Town of Westborough and to promote the use of reusable bags.

Section 2       Definitions

"Checkout bag"    means a carryout bag provided by a store to a customer at the point of sale.  Checkout bags shall not include bags, whether plastic or not, in which loose produce or products are placed by the consumer to deliver such items to the point of sale or checkout area of the store.

"Grocery Store"    means a retail establishment where more than fifty percent (50  ) of the gross floor area is devoted to the sale of food products for home preparation and consumption, which typically also offers home care and personal care products.

"Retail Store"    means any business facility that sells goods directly to the consumer whether for or not for profit, including, but not limited to, retail stores, restaurants, pharmacies, convenience and grocery

18

stores, liquor stores, seasonal and temporary businesses.

"Reusable checkout bag" means a bag with handles that is specifically designed and manufactured for multiple reuse and is either polyester, polypropylene, cotton or other durable material, or durable plastic that is at least 4.0 Mils in thickness.

"Thin-film single -use plastic bags" are those bags typically with handles, constructed of high-density polyethylene (HDPE), low density polyethylene (LDPE), linear low density polyethylene (LLDPE), polyvinyl chloride (P C), polyethylene terephthalate ( PET), or polypropylene (other than woven and non -woven polypropylene fabric), if said film is less than 4.0 mils in thickness.

"Recyclable paper bag" means a paper bag that is 100 percent recyclable and contains at least 40 post consumer recycled content, and displays the words "recyclable" and "made from 40 post-consumer recycled content" in a visible manner on the outside of the bag.

Section 3     Use Regulations

(A)     Thin-film single-use plastic bags shall not be distributed, used, or sold for checkout or other purposes at any retail store or grocery store within the Town of Westborough.

(B)     If a grocery or retail store provides or sells checkout bags to customers, the bags must be one of the following (1) recyclable paper bags, or (2) reusable checkout bags.  The grocery or retail store may charge for said bags.

(C)     Thin-film plastic bags used to contain dry cleaning, newspapers, produce, meat, bulk foods, wet items and other similar merchandise, typically without handles, are still permissible.

Section 4     Effective Date

This bylaw shall take effect six (6) months following Town Meeting approval of the bylaw.  Upon application of the owner or the owner s representative, the Board of Selectmen or their designee may exempt a grocery retail store from the requirements of this section for a period of up to six (6) months upon a finding by the Board of Selectmen or their designee that (1) the requirements of this section would cause undue hardship  or (2) a grocery or retail store requires additional time in order to draw down an existing inventory of checkout bags.

Section 5     Enforcement

Enforcement of this bylaw shall be the responsibility of the Board of Selectmen or their designee. The Board of Selectmen or their designee shall determine the monitoring process to be followed, which may be limited to responding to citi en reports, incorporating the process into other town duties as appropriate.

Any grocery or retail store distributing plastic checkout bags in violation of this bylaw shall be sub ect to a noncriminal disposition fine as specified in Article 31 of the General Bylaws, Noncriminal Disposition of Certain  iolations of Bylaws and Rules and Regulations.  Any such fines shall be paid to the Town of Westborough.  No licenses shall be renewed for any establishment with outstanding violations under this section.

Section 6     Severability

If any provision of this bylaw is declared invalid or unenforceable the other provisions shall not be affected thereby.
And further to amend Article 31, Section 2(C) by adding violations to Article 33 as follows:

Article 33  iolation of the Plastic Bag Reduction Bylaw  first offense  written warning  2nd offense  50 per offense  3rd and subsequent offenses -  100 per offense.

Or to take any other action thereon.

19

*Town Mana er Statement   This   rticle would eliminate the use of plastic ba  s at chec  out in   rocery and retails stores  it does allow certain plastic ba  s, such as those used in produce bul  sales  The bylaw would allow the sale of recyclable paper ba  s and reusable ba  s  The bylaw allows a si  month timeframe for stores to comply and provides for penalties throu  h non-criminal disposition for violations  The motion for this article is a simple ma ority vote*

<u>*Bruce Tretter, B  S - Motion*</u>    *move that the Town vote to approve this article as printed in the  arrant  e cept where references to all Selectman in the article, be chan  ed as needed to Selectmen*

Motion to move the question and terminate debate
  ote:
Yes  135
No  10
Debate ended

<u>Dexter Blois, Old Nourse St - Motion</u> to amend -   50 per offense "and all thereafter."
  ote:
Yes  133
No  12
Amendment passes

**Vote  Ma   Mot o  as a  e ded**

**Yes  11**
**No**
**Mot o  carr es**

 Note:  Mr. Tretter announced the 20th Anniversary of WCLT and the Earth Day Cleanup to take place on Saturday, April 21st,  rain or shine 6:30am at Bellows Rd and West Meadow Pla  a   main clean up time 9:30am congregate at Bay State Commons distribute bags.  11:30-Noon, Pi  a for those who help.

**ARTICLE 26  A  e d  o   g B  la  s  Art cle 5  De   t o s Pla     g Board**
To see if the Town will amend its   oning Bylaws, Article 5 Definitions, by adding the following new definitions:

Floor Area Ratio (FAR):
The ratio of the sum of the gross floor area of all buildings on a lot to the total site area of the lot.

Gross Floor Area:
The sum, in square feet, of the hori  ontal areas of a building (or several buildings on the same lot) measured from the exterior face of the exterior walls, or from the center line of a party wall separating two buildings, including garages, basements, covered porches, and half stories. Floors where the headroom is greater than five feet, measured from the top of the floor  oists of the top story to the bottom of the roof rafters, is included in the measurement of gross floor area. Gross floor area does not include "crawl spaces" as defined by current building code  "attics"  and "open decks".  Where the text of this bylaw refers to the floor area, the term means gross floor area unless the term habitable floor area is used.

Or take any other action thereon.

*Town Mana  er s Summary   This   rticle see  s to add new definitions to clarify terms used currently in the  onin  bylaws yet which are not currently defined  The motion for this   rticle re  uires a      ma ority vote*

 *a el  ourse, Plannin  Board - Motion*    *move that the Town vote to approve this article as printed in the warrant*

**Vote**
**Yes  111**
**No  6**
**Mot o  carr es, 2/   ote ach e  ed**

**ARTICLE 27  A  e d  o    g B  la  s  Pre E  st  g, No  Co   or     g Uses or Str  ct  res  Pla     g Board**
To see if the Town of Westborough will vote to amend its   oning Bylaws by deleting Article 2 District

20

Regulations, Section 2410. PRE-E ISTING NONCONFORMING USES OR STRUCTURES
(E TENSIONS AND ALTERATIONS) in its entirety. And by inserting in its place the following new
language and subsections:

2410. PRE-E ISTING NONCONFORMING USES OR STRUCTURES (E TENSIONS) This section
shall not apply to billboards, signs and other advertising devices sub ect to the provisions of Section 29
through 33, inclusive, of Chapter 93 of Chapter 93D, General Laws.

The Board of Appeals, by Special Permit, may authori e lawfully pre-existing, non-conforming uses or
structures to be changed or altered provided that such extension, alteration or enlargement meets all the
following requirements:

2410.1 All the special permit guidelines of section 1330

2410.2 That it will not be substantially more detrimental or ob ectionable to the neighborhood than the
existing non-conforming structure or use to the neighborhood.

2411. Building construction and Special Permits. Construction or operations under a Building or Special
Permit obtained in conformity with this oning Bylaw or lawful amendments thereto, shall conform to
any subsequent amendments of the oning Bylaw unless the use or construction is commenced within a
period of not more than six (6) months after the issuance of such Permit, and in cases involving
construction, unless such construction is continued through to completion as continuously and
expeditiously as is reasonable.

2412. Non-conforming Single and Two Family Residential Structures. Non-conforming single and two
family residential structures may be reconstructed, extended, altered, or structurally changed upon a
determination by the oning Enforcement Officer that such proposed reconstruction, extension,
alteration, or change does not increase the non-conforming nature of said structure. The aggregate sum
of the gross floor area of all additions to a structure since the date when the structure became non-
conforming under the provisions of this subsection shall not be greater than 50 of the gross floor area
of the dwelling unit or one thousand (1000) square feet, whichever is smaller, unless a Special Permit is
issued by the oning Board of Appeals under Section 2410 allowing a larger gross floor area. The
following circumstances shall not be deemed to increase the non-conforming nature of said structure:

2412.1 Alteration to a structure which complies with all current setback, yard, building coverage, and
building height requirements but is located on a lot with insufficient area, where the alteration will also
comply with all of said current requirements.

2412.2 Alteration to a structure which complies with all current setback, yard, building coverage, and
building height requirements but is located on a lot with insufficient frontage, where the alteration will
also comply with all of said requirements.

2412.3 Alteration to a structure which encroaches upon one or more required yard or setback areas,
where the alteration will comply with all current setback, yard, building coverage and building height
requirements the provisions of this subsection shall apply regardless of whether the lot complies with
current area and frontage requirements.

2412.4 Alteration to the side, front or rear of a structure which encroaches upon a required yard or
setback area, where the alteration will not encroach upon such area to a distance greater than the existing
structure the provisions of this subsection shall apply regardless of whether the lot complies with the
current area and frontage requirements.

2413. Notwithstanding Section 2412, in the event that the oning Enforcement Officer determines that
the non-conforming nature of such structure would be increased by the proposed reconstruction,
extension, alteration, or change, the Board of Appeals may, by special permit, allow such reconstruction,
extension, alteration, or change where the proposed modification will not be substantially more
detrimental than the existing non-conforming structure to the neighborhood.

2414. Pre-Existing non-conforming use: Any increase in the area or extent of the non-conforming use of

21

a structure or land made by Special Permit from the Special Permit Granting Authority, is limited to a fifty percent (50 ) increase in the non-conforming floor area or land area at the time the use became non-conforming.

Or take any other action thereon.

*Town Mana er s Statement   This  rticle see s to a llow non-conformin  sin le and two family residential structures to be reconstructed, e tended, altered, or structurally chan ed up to    or ,  s uare feet by-ri ht upon a determination by the  onin  nforcement  fficer  Currently, any increase in s uare foota e for a non-conformin  structure or use re uires action by the  B  The property owner can still appeal to the  B  for increases  reater than    or ,  s uare feet  The amendment is a benefit to the property owner ma in  proposed modest additions a simpler and less e pensive process  The motion for this  rticle re uires a   ma ority vote*

<u>*Tim Paris, Plannin  Board - Motion*</u>   *move that the Town vote to approve this article as printed in the warrant*

**Vote
Yes  12
No  4
Mot o  carr es a 2/   ote ach e ed**

**ARTICLE 2  A e d o   g B la s  Garde  a d H gh R se A art e ts Pla    g Board**
To see if the Town will vote to amend its  oning Bylaws, Article 2 District Regulations, Section 2600 Dimensional Schedule, Subsection 2610 Use Category, by amending the Use Category Table for Garden Apartments (AA) and High-Rise Apartments (AB) by creating new requirements for affordable units as shown below in  **old**:

|  | USE CATEGORY | | | |
|---|---|---|---|---|
|  | Garden Apartment (AA) | High-Rise Apartment (AB) | Senior Living Overlay | All Other |
| Min. number of affordable unit ( ) | **2    r** | **2    r** | 20   (p) (r) | |

Or take any other action thereon.

*Town Mana er s Statement   This amendment is for multi-family residential pro ects  The    affordable re uirement is the Commonwealth s threshold for receivin  credit for all units in an affordable rental pro ect  The   re uirement can be reduced if the developer offers an alternative to the   provided that other affordable housin  contributions are offered and are deemed acceptable to the Town  This is the same provision adopted at the most recent Town Meetin  for a e restricted housin  in the Senior  ivin   verlay  istrict  The motion for this  rticle re uires a   ma ority vote*

*ootnotes  p  and  r  currently e ist in the  onin  Bylaws  These shall remain unchan ed and are shown below for informational purposes*

*p    nits that are to be desi nated affordable must comply with the re uirements of the Massachusetts  epartment of  ousin  and Community  evelopment or a successor a ency  Such units shall have deed restrictions re ardin  affordability which will continue in perpetuity and will allow the units to  count  as State reco ni ed affordable units  ll such affordable units shall be priced at levels affordable to individuals or families earnin  no more than    of  rea Median  ncome   M  as published by the State  S  epartment of  ousin  and  rban  evelopment*

*r   pplicants for affordable housin  pro ects shall be e pected to meet the    minimum number of affordable units provided herein  The Special Permit  rantin  uthority may, however, in its discretion decrease the minimum affordable housin  re uirement to no less than   provided that other affordable housin  contributions are made to the Town which the Special Permit  rantin  uthority deems sufficient to meet affordable housin  needs  Such alternative contributions may include, contributions to the Town s Senior  isabled Ta  elief und, creation of affordable housin  units elsewhere in Town, or other alternatives deemed suitable to the Special Permit  rantin  uthority*

<u>*Mar  Silverber , Plannin  Board - Motion*</u>   *move that the Town vote to approve this article as printed in the warrant*

22

**Vote**
**Yes  1  9**
**No  5**
**Mot o  carr es, 2/  ote ach e ed.**

**ARTICLE 29  A  e d o   g B la s  M lt Fa l Ho s g   H gh a  B s ess D str ct**
**Pla     g Board**

To see if the Town will vote to amend its  oning Bylaws, Article 4, Special Regulations, Section 5200, Multi-Family Housing in the Highway Business District (BA) by amending the third sentence in Section 5262 as follows (additions and deletions in bold):

Section 5262. AFFORDABLE HOUSING

All **lt  a  l** residential proposals made in the BA  one shall allocate a minimum of 20  of the total number of dwelling units ~~or o  ersh  co do       s or 1   o  the total d  ell g    ts  or re  tal a  art   e ts~~ as housing that is affordable to households earning 80  or less of median income for the Worcester Metropolitan Statistical Area as determined by the most recent calculation of the U.S. Department of Housing and Urban Development.

So that the new third sentence reads as follows:

All multi-family residential proposals made in the BA  one shall allocate a minimum of 20  of  the total number of dwelling units as housing that is affordable to households earning 80   or less of median income for the Worcester Metropolitan Statistical Area as determined by the most recent calculation of the U.S. Department of Housing and Urban Development.

And by adding the following paragraphs immediately at the end of Section 5262:

**The           o 2    o  the     ts that are to  e des g ated a  orda le    st co  l    th the re  re e ts o  the Massach setts De  art  e t o  Ho s g a d Co        t  De elo  e t or a s ccessor age c . S ch    ts shall ha e deed restr ct o s regard g a  orda l t   h ch  ll co t   e  er et t a d  ll allo  the    ts to  co t  as State recog ed a  orda le   ts. All s ch a  orda le   ts shall  e r ced at le els a  orda le to  d d als or  a  l es ear g o   ore tha    o Area Med a  I co e AMI  as   l shed    the State/US De  art  e t o Ho s g a d Ur a  De elo   e t HUD .**

**All   lt a  l res de t al  ro osals   der th s sect o  shall  e e ected to  eet the 2            er o a  orda le    ts  ro ded here . The S  ec al Per  t Gra t  g A thor t    a , ho  e er,   ts d scret o  decrease the          2   a  orda le ho s g re   re e t to  o less tha  1    ro ded that other a  orda le ho s g co tr    t o s are   ade to the To      h ch the S  ec al Per  t Gra t  g A thor t  dee s s   c e t to  eet a  orda le ho s g  eeds. S ch alter at e co tr   t o s   a   cl de, co tr   t o s to the To  s Se  or/D sa led Ta  Rel e F  d, creat o  o  a  orda le ho s g   ts else  here    To  , or other alter at es dee ed s  ta le to the S  ec al Per  t Gra t  g A thor t .**

Or take any other action thereon.

*Town Mana  er s Statement   This   rticle amend the  onin  Bylaws for multi-family residential pro ects in the  i hway Business  istrict B    The       affordable re  uirement is the Commonwealth s threshold for receivin  credit for all units in an affordable rental pro ect The      re  uirement can be reduced if the developer offers an alternative to the       provided that other affordable housin   contributions are offered and are deemed acceptable to the Town  This is the same provision adopted at our most recent Town Meetin  for a  e restricted housin  in the Senior  ivin    verlay   istrict The motion for this   rticle re  uires a    ma ority vote*

<u>*Mar  Silverber  , Plannin  Board - Motion*</u>  *move that the Town vote to approve this article as printed in the warrant*

23

**Vote**
**Yes  1**
**No  6**
**Mot o  carr es 2/  ote ach e ed**


**ARTICLE      A  e  d   o    g B  la  s  Do  to     Pla      g O  erla  D str ct   A   orda  le Ho  s  g Pla     g Board**

To see if the Town will vote to amend its  oning Bylaws, Article 4, Special Regulations, Section 4900, Downtown Planning Overlay District (DPOD) by creating a new Section 4955 as follows:

Section 4955.  AFFORDABLE HOUSING

Mixed-use pro ects proposed in the Downtown Planning Overlay District shall be required to provide an affordable housing component for all pro ects containing a residential component. A minimum of 20 of the residential units shall be designated affordable and shall comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recogni ed affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80   of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).

Mixed-use pro ects containing residential components shall be expected to meet the 20    minimum number of affordable units provided herein.  The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20    affordable housing requirement to no less than 10    provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs.  Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.

Or take any other action thereon.

*Town Mana er s Statement   This   rticle amends the  onin  Bylaw for mi ed-use residential pro ects in the   owntown Plannin    verlay  istrict  P    The        affordable re  uirement is the Commonwealth s threshold for receivin  credit for all units in an affordable pro ect  The       re  uirement can be reduced if the developer offers an alternative to the provided that other affordable housin   contributions are offered and are deemed acceptable to the Town  This is the same provision adopted at our most recent Town Meetin  for a e restricted housin  in the Senior  ivin    verlay  istrict  The motion for this   rticle re  uires a     ma ority vote*

*<u>Mar  Silverber , Plannin  Board - Motion</u>     move that the Town vote to approve this article as printed in the warrant*

**Vote**
**Yes  1 4**
**No  6**
**Mot o  carr es 2/  ote ach e ed.**

**ARTICLE  1 A  e  d   o    g B  la  s  Gate a  2 D str ct    o    g A  e  d  e  t Pla     g Board**

To see if the Town will vote to amend its  oning Bylaws, Article 4, Special Regulations, Section 5100, Gateway 2 District by creating a new Section 5153 as follows:

Section 5153. AFFORDABLE HOUSING

Proposals in the Gateway 2 District that contain a multi-family residential component shall be required to provide an affordable housing percentage.  A minimum of 20    of the residential units shall be designated affordable and shall comply with the requirements of the Massachusetts Department of Housing and Community Development or a successor agency. Such units shall have deed restrictions regarding affordability which will continue in perpetuity and will allow the units to "count" as State recogni ed affordable units. All such affordable units shall be priced at levels affordable to individuals or families earning no more than 80    of Area Median Income (AMI) as published by the State/US Department of Housing and Urban Development (HUD).

24

Pro ects containing multi-family residential components shall be expected to meet the 20 minimum number of affordable units provided herein. The Special Permit Granting Authority may, however, in its discretion decrease the minimum 20 affordable housing requirement to no less than 10 provided that other affordable housing contributions are made to the Town which the Special Permit Granting Authority deems sufficient to meet affordable housing needs. Such alternative contributions may include, contributions to the Town's Senior/Disabled Tax Relief Fund, creation of affordable housing units elsewhere in Town, or other alternatives deemed suitable to the Special Permit Granting Authority.

Or take any other action thereon.

*Town Mana er s Statement   This rticle amends the  onin  Bylaws for multi-family residential pro ects in the  ateway  istrict    The     affordable re uirement is the Commonwealth s threshold for receivin  credit for all units in an affordable rental pro ect  The     re uirement can be reduced if the developer offers an alternative to the     provided that other affordable housin  contributions are offered and are deemed acceptable to the Town  This is the same provision adopted at our most recent Town Meetin  for a e restricted housin  in the Senior ivin  verlay  istrict  The motion for this  rticle re uires a    ma ority vote*

*Mar  Silverber , Plannin  Board - Motion    move that the Town vote to approve this article as printed in the warrant*

**Vote**
**Yes  1  2**
**No**
**Mot o  carr es 2/  ote ach e ed**

**ARTICLE  2  Ado t g Local E  ed ted Per  tt g, Cha ter 4 D  Pla     g Board**
To see if the Town will vote to accept the provisions of Chapter 43D of the Massachusetts General Laws as amended pursuant to Section 11 of Chapter 205 of the Acts of 2006, and to approve the filing of a formal proposal with the Interagency Permitting Board for the designation as a Priority Development Site for land at 800, 1200, 1300  1400 West Park Drive identified on the Assessor's Map 36 as Parcels 12, 12A, 12B  22  or take any other action thereon.

*Town Mana er s Statement   Chapter     was passed by the Commonwealth of Massachusetts in  u ust of     as an economic development tool  The desi nation of     is parcel site specific and a separate vote for each site must be ta en by Town Meetin     This vote is specific to the properties  oned  ndustrial  B  located at    ,    ,    est Par   rive  f accepted, the Town must a ree to issue a decision on all local permits within si  months of the filin  date  The permittin  authority does not have to  rant the permit, it simply must render a decision within     days  The desi nation places the site in a priority status for infrastructure improvement  rant pro rams available throu h the State  The State will also actively mar et the site throu h its business development a encies  The motion for this article is a simple ma ority vote*

*ames Ball, Plannin  Board - Motion    move that the Town vote to approve this article as printed in the warrant*

**Vote**
**Yes  111**
**No  1**
**Mot o  carr es, 2/  ote ach e ed**

**ARTICLE    Acce t G  t o  La  d Gra  ger Road  DPW D rector/To    E  g  eer**
To see if the Town will vote to accept, by gift and for general municipal purposes, a certain parcel of land off Granger Road identified  as Assessors Map 35, Parcel 30A  and shown as "Non-Buildable Lot 4625 SF  /-" on a plan of land entitled "Site layout Plan  aara Gardens, Westborough, Ma 01581", prepared by hs  t group inc., , a copy of which is on file with the office of the Town Clerk and recorded with the Worcester South Registry of Deeds in Plan Book 923, Plan 65, on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, or to take any other action thereon.

*Town Mana ers Statement   This article allows the Town to receive an appro imately     wide by     lon  piece of land that once was anticipated as a roadway connection between the recently created  aara  rive and  ran er  oad  The two roads do not connect, thereby ma in  the land  surplus  The Board of  ppeals reco ni ed this and re uired that the land be conveyed to the Town in an amendment to the  aara  rive Comprehensive Permit in      The motion for this article re uires a    vote*

25

*Carl Balduf, Town  n ineer - Motion*    move that the Town approve the article as printed in the warrant

**Vote**
**Yes  111**
**No  1**
**Mot o  carr es, 2/    ote ach e ed**

**ARTICLE  4  Road  a  Acce ta ce Beeto  Path  DPW D rector/To    E g eer**
To see if the Town will vote to accept Beeton Path as a public way, from its beginning at the sideline of Fisher Street at STA 0  00  /- to its end at STA 6  69  /-, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Road Acceptance Plan of Beeton Path in Westborough, Massachusetts", Scale 1"  40', prepared by Guerriere    Halnon Inc., dated January 9, 2018 (latest revision) and on file in the office of the Town Clerk, and further to authori e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, water and/or other  easements related thereto, and sub ect to a  10,000 maintenance bond being established and held under the supervision of the Planning Board, or take any other action thereon.

*Mana ers Statement - This article is one of the steps re uired to ma e Beeton Path a Public   ay This is a subdivision road created by conditional approval of the Plannin  Board off  isher Street about twenty years a o  The road was partially completed after it was approved and four of the si  lots developed  The owner has wor ed with the  n ineerin   ivision over the past year to complete remainin  items such as finish pavin  and is now ready to turn it over to the Town*

 *ohn  alden,  P    irector - Motion*    move that the Town approve the article as printed in the warrant

Carl Balduf, Town Engineer spoke to the article

**Vote**
**Yes  111**
**No  1**
**Mot o  carr es, 2/    ote ach e ed**

**ARTICLE  5  Road  a  Acce ta ce A   leseed Dr  e  DPW D rector/To    E g eer**
To see if the Town will vote to accept Appleseed Drive as a public way, from its beginning at the sideline of Harvest Way at STA 0  00  /- to its end at STA 20  64  /- at the sideline of Adams Street, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Acceptance Plan of Appleseed Drive in Westborough, Mass owned by: Casa Builders and Developers Corp. Sheet 5 of 5 Sheets, Hori ontal Scale 1"  40 Feet", prepared by Thompson-Liston Associates Inc., dated September 20, 2002 (latest revision) and on file in the office of the Town Clerk, and further to authori e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, and/or other easements related thereto, or take any other action thereon.

*Mana ers Statement - This roadway was accepted at Town Meetin  in       , however, various deeds were not furnished to the Town and the plans and deeds were not recorded at the   e istry of deeds to complete the acceptance process Statutory time limits do not allow these documents to be recorded lon  after the ori inal acceptance, therefore, the acceptance must be voted a ain  The motion for this article re uires a   rds vote*

 *ohn  alden,  P    irector - Motion*    move that the Town approve the article as printed in the warrant

Carl Balduf, Town Engineer spoke to article.

**Vote**
**Yes  1 7**
**No  2**
**Mot o  carr es, 2/    ote ach e ed**

**ARTICLE  6  Road  a  Acce ta ce Har est Wa   DPW D rector/To    E g eer**
To see if the Town will vote to accept Harvest Way as a public way, from its beginning at the sideline of

26

407

Nash Street at STA 0 00 /- to its end at STA 10 60 /-, as heretofore laid out by the Board of Selectmen and shown on a plan entitled "Acceptance Plan of Harvest Way in Westborough, Mass owned by: Casa Builders and Developers Corp., Hori ontal Scale 1" 40 Feet", prepared by Thompson-Liston Associates Inc., dated September 20, 2002 (latest revision) and on file in the office of the Town Clerk, and further to authori e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, the fee to or easement in said street for all purposes for which public ways are used in the Town of Westborough, and any drainage, utility, access, or other easements related thereto, or take any other action thereon.

*Mana ers Statement - Similar to ppleseed rive, this roadway was accepted at Town Meetin in , however, various deeds were not furnished to the Town and the plans and deeds were not recorded at the e istry of deeds to complete the acceptance process Statutory time limits do not allow these documents to be recorded lon after the ori inal acceptance, therefore, the acceptance must be voted a ain The motion for this article re uires a rds vote*

*ohn alden, P irector - Motion* move that the Town approve the article as printed in the warrant

**Vote**
**Yes 1 5**
**No 2**
**Mot o carr es, 2/ ote ach e ed**

**ARTICLE 7 West Ma Street H gh a /S de al Ease e ts DPW D rector/To E g eer**
To see if the Town will vote to authori e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain and on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, permanent and/or temporary easements for public way purposes, including, without limitation, for the purpose of constructing and/or reconstructing a public sidewalk, in, on and under the following parcels along the south side of West Main Street from Nourse Street to Kendall Drive:

| Map/Lot | Owner |
|---------|-------|
| 15-272 | Chi |
| 15-125A | Balasubramanian |
| 15-126 | Grattan-Richardson |
| 9-61A | Croft |
| 8-33 | Martin |
| 8-34 | Stedman |
| 8-35 | Masters |
| 8-36 | Swain |
| 8-37 | Aldrin |
| 8-38 | Bentley |
| 8-39 | Collins |
| 8-40 | Reardon |
| 8-41 | Arnold |
| 8-42 | Spiegel |
| 8-125 | Starr |
| 8-126 | Marks, Trustee |
| 8-127 | Milewski |
| 8-128 | Jernberg |
| 8-129 | Gonsalves |
| 8-130 | Smith |
| 8-131 | Salsman |
| 8-186 | Adams |
| 8-187 | Siegal |
| 8-188 | Barnes |
| 8-189 | Forryan |
| 8-190 | Giblin |
| 8-191 | Mattheson |
| 8-190 | Giblin |
| 8-219 | Chandler |

27

8-220          Arnold
8-221          Coffee
8-290A         Grady
8-290          Lord-Patterson
8-291          Welsh

Or take any other action relative thereto.

*Town Mana er s Statement   This article provides the authority for the Board of Selectmen to obtain easements alon  the south side of   est Main Street for the purposes of installin  a sidewal   The easements may be temporary for tyin  in driveways and ad ustin  landscapin  or permanent to accommodate handicap ramps, walls, or the sidewal  itself  The layout is fairly wide and it is anticipated that most of the wor  may be performed within Town ri ht of way  Pro ect fundin  will be throu  h the Chapter    pro ram   The motion for this article is a simple ma ority vote*

 *ohn  alden,  P      irector Motion     move that the Town approve the article as printed in the warrant*

*Mr  Balduf spo  e to the article*

**Vote**
**Yes  1**
**No  5**
**Mot o   carr es, 2/    ote ach e  ed**

**ARTICLE     Acce  ta ce o  Ut l t  Ease  e ts  Ro  te 9 to Wash  gto  Street    EMC Ca      s  DPW D rector**

To see if the Town will vote to authori  e the Board of Selectmen to acquire, by purchase, gift, and/or eminent domain, an easement for public utility purposes in, on and under the parcels shown on a set of plans entitled "Definitive Subdivision Southborough     Westborough, MA", prepared by Beals and Thomas recorded with the Worcester County Registry of Deeds in Plan Book 883, Plan 119 as (i) "Future 30' Wide Utility Easement 2,183_ S.F." on Sheet 3.3 of the Plan, (ii) "Utility Easement-2A 9,210_ S.F." shown as Detail E on Sheet 3.39 of the Plan ("Utility Easement-2A"), and (iii) a thirty-foot area along the Westborough/Southborough town line as shown on Sheet 3.3 of the Plan within the limits of Washington Street as shown on Sheet 3.3 of the Plan between Utility Easement-2A and "Utility Easement-2 99,510_ S.F.", on such terms and conditions as the Board of Selectmen deems in the best interests of the Town, or take any other action relative thereto.

*Town Mana er s Statement   The easements described in this article will allow a future e tension of   estboro s water system so that the e istin  main on   ashin ton Street may be e tended to   oute   and then looped bac  to   est Par    rive  The main e tension is a future re uirement of   MC s subdivision approval and will be constructed at their cost   t is the Town s best interest to accept these easements currently so that the ri hts are in place when   MC needs to do the wor  portion of the main has already been installed as part of the already constructed   ashin ton Street relocation  The motion for this article is a simple ma ority vote*

 *ohn   alden,  P  - Motion     move that the Town approve the article as printed in the warrant*
*Carl Balduf, Town  n ineer spo  e to the article*

**Vote**
**Yes  1  4**
**No  1**
**Mot o   carr es 2/    ote ach e  ed**

**ARTICLE  9  No   B  d  g Poll o   Ra s  g the Legal Age to P  rchase To  acco Prod  cts   Board o  Health**
To see if residents support the Board of Health amending their tobacco sales regulations to change the minimum legal sales age an individual must be before that individual can be sold tobacco products in Westborough from age 18 to age 21

*Town Mana er s Statement   The Board of   ealth has the le al authority to adopt these re ulations, but throu  h their discussions, they determined they wanted to obtain the opinion of Town Meetin  as a non-bindin  poll as an additional piece of data prior to ma in  a decision and settin  new re ulations*

28

*o Motion  e uired    on-Bindin  Poll*

**Vote**
**Yes  1 2**
**No  9**

**ARTICLE 4   Tra s er Re a   g Bala ce o    th A    ersar  Co    ttee G t F   d  Board o**
**Select  e**
To see if the Town will vote to transfer the remaining balance in the 300th Anniversary Committee Gift Account to the Westborough Spirit Committee Gift Account for the purpose of organi  e and lead an annual event, or take any other action thereon.

*Town Mana  er s Statement   The     th   nniversary Committee has appro imately    ,   remainin  in their  ift  ccount which under M    eneral  aws would be closed out to the   eneral  und  The     th   nniversary Committee, based upon the popularity of havin  events that brin  the community to  ether approached the Board of Selectmen with the concept of creatin  a permanent committee that would put on a premier event every year and this would be the seed money for that effort and allow the balance to be transferred to a new   estborou h Spirit Committee  ift  ccount instead of bein  closed out to the  eneral  und  The motion on this  rticle re uires a simple ma ority vote*

*Syed   ashmi, B  S - Motion    move that the Town vote to transfer the remainin  balance of    ,   from the     th   nniversary  ift  ccount to the   estborou h Spirit Committee  ift  ccount for the purposes of the  rticle as printed in the warrant*

**Vote**
**Yes  111**
**No  2**
**Mot o  carr es  a or t  ote.**

**ARTICLE 41  A thor at o   or the Board o  Select  e  to sell the S   rr Ho  se  Board o**
**Select  e**
To see if the Town will vote to authori  e the Board of Selectmen to sell, in accordance with all applicable Commonwealth of Massachusetts bidding laws, that property shown as 7 Parkman Street on a Plan entitled Spurr House   7 Parkman Street, Westborough MA, dated February 27, 2018, prepared by Westborough GIS, on file with the Town Clerk, said property being approximately 9,127 square feet, including any improvements, or take any other action thereon.

*Town Mana  er s Statement   The   all     Town Meetin  vote authori in  the Board of Selectmen to sell   Par man Street   the  Spurr  ouse  e pired   months after the Town Meetin  vote and the authority for the Selectmen to sell the property has e pired and the Selectmen have decided not to demolish the house as per the ori inal Town Meetin  vote, but to continue to have the property for sale  The motion for this article re uires a   rds vote*

*an  ohnson, B  S - Motion    move that the Town vote to authori  e the B  S to sell in accordance with all applicable Commonwealth of Massachusetts Biddin   aws, that the property shown as Par man Street on a plan entitled Spurr  ouse,   Par man Street,   estborou h, Massachusetts, dated  ebruary  ,   , prepared by   estborou h,  S, on file with the Town Cler , said property bein  appro imately  ,    s uare feet includin  improvements*

*urthermore, that the Town meetin  vote authori  es the Town Moderator to appoint a committee  to be named the Spurr  ouse Sale  dvisory Committee  and re uests that the B  S wor  with the Committee to assist and advise the B  S in the development of the sale process  i e ,    P  and to assist in showin  the property for sale*

*The town Meetin  vote shall provide for the followin*
*Provide authori ation to sell the property durin  a period of    months from the date of the Town Meetin  vote on this article*
*The Spurr  ouse Sale  dvisory Committee shall be made up of one member from the Plannin  Board, one member from the  dvisory  inance Committee, two members from the  ei  hborhood and one member at lar  e*
*The Spurr  ouse Sale  dvisory Committee shall report bac  to each Town Meetin  until a sale is complete or the authori ation to sell has e pired*
*The laws referred to earlier in the motion shall include Chap   B, Section   eal property disposition or ac uisition , specifically  , C and   therein*

29

*The Committee shall have a bud et of          these funds shall be transferred from   ree Cash to accomplish the purposes of this article*

Ha el Nourse - Motion to amend the main motion  a member of the Historical Commission be added to the list of members of the Spurr House Sale Advisory Committee
Amended motion to read as follows:

*The town Meetin   vote shall provide for the followin*
        *Provide authori ation to sell the property durin  a period of      months from the date of the Town Meetin   vote on this article*
        *The Spurr   ouse Sale   dvisory Committee shall be made up of one member from the Plannin Board, one member from the   dvisory   inance Committee, one member from the   istorical Commission, two members from the   ei  hborhood and one member at lar  e*
        *The Spurr   ouse Sale   dvisory Committee shall report bac  to each Town Meetin   until a sale is complete or the authori ation to sell has e  pired*
        *The laws referred to earlier in the motion shall include Chap     B, Section          eal property disposition or ac  uisition , specifically    , C and    therein*
        *The Committee shall have a bud  et of          these funds shall be transferred from   ree Cash to accomplish the purposes of this article*

   ote: to amend the main motion
Yes  98
No  17
Amendment carries

**Vote  to the a   e ded  a     ot o**
**Yes   9**
**No   21**
**Mot o  carr es   a or t    ote.**

**ARTICLE 42  Pet t o  ed Warra  t Art cle   S   rr Ho  se  B  Pet t o**
To see if the Town will vote to rescind the Application to demolish the Spurr House and create the Spurr House "Preparation and Sale Committee" (the Committee), to be made up of two Parkman Street neighborhood members, one member from the Planning Board, one member from the Finance Committee and one member to be appointed by the Town Moderator.  The Committee shall be empowered by the Town Meeting to execute the sale of the Spurr House on behalf of the Town.  The sale process shall be governed by and shall follow the requirements of Mass General Law Chapter 30B, section 16 and specifically subsections a, c and g therein.  The Committee shall have access to Town Counsel for the purpose of advising and recommending all documents required to complete the Sale process by the Committee on behalf of the Town.  Any RFP created by the Committee shall maintain to the town that portion of the Spurr House lot to be reserved to the Town as indicated on the surveyed plan and to allow the lot sale such that a legal residential lot shall remain.

The Committee shall be provided all prior materials collected and/or created in the prior sale process attempt for this property, including the property appraised value, property survey, deed description, property drawing and opinions of Town Counsel.  The Committee shall have free access to all town departments and resources to help accomplish the goal of the Committee which is to create an RFP, to properly bid and receive proposals to its RFP to sell the property, to properly notice the sale in local newspaper(s) and Central Register as required by MGL Chapter 30B, section 16 for disposal of real property.  The committee shall have a budget of   5,000 and therefore requires the town to raise and appropriate, transfer from available funds   5,000 to accomplish the purpose of this article or such other amount as may be voted by Town Meeting or take any action there on.

*Mr    oret, Motion      move that the Town vote to pass over this article*

**Vote**
**Yes  1 5**
**No  5**

30

412

| Mot o to ass o er |
| --- |
| Leigh Emery, BOS moves to dissolve the 2018 ATM. |
| **Vote** |
| **Yes   6** |
| **No  4** |
| 10:37 pm 2018 Annual Town meeting dissolved. |

Given under our hands the 27th day of February in the year Two Thousand and Eighteen.

ss/Den il Drewry, Chairman

ss/Leigh Emery,   ice Chairman

ss/George Barrette

ss/Ian Johnson

ss/Bruce Tretter

SELECTMEN OF WESTBOROUGH

Worcester, ss

I have this day served the within Warrant by posting up attested copies thereof at the Town Library Bulletin Board and Town Hall Bulletin Board in said Westborough and by mailing a copy thereof to the residence of the Town Moderator all on February 28, 2018.

ss/Constable of Westborough

Worcester, ss

Attest:
        ss/Wendy L. Mickel, Town Clerk

# Exhibit D

Bk: 59943 Pg: 371

This instrument must be filed for record or registration within 60 days from its date

STATE TAX FORM 301
Revised 3/2009

G.L. c. 60 §§53 and 54

### COMMONWEALTH OF MASSACHUSETTS
### TOWN OF WESTBOROUGH
### OFFICE OF THE COLLECTOR OF TAXES

I, Robert C. Haley, Collector of Taxes for the Town of Westborough, acting under General Laws Chapter 60, Sections 53 and 54, hereby take for the city/town the real property described below:

### DESCRIPTION OF PROPERTY

PROPERTY: Land and any building(s) thereon    CONTAINING: 29.336 AC (more or less)
LOCATION: 231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY: Worcester District Registry of Deeds Book 19369, Page 75

This land is taken because taxes, as defined in Chapter 60, Section 43, assessed on the property to Westborough SPE LLC for the fiscal year 2018 were not paid within 14 days after a demand for payment was made on Westborough SPE LLC on June 4, 2018. After notice of intention to take the land was given as required by law, they remain unpaid along with interest and incidental expenses and costs to the date of taking as follows:

| | |
|---|---|
| Fiscal Year 2018 Taxes Remaining Unpaid | $ 106,944.99 |
| Interest to Date of Taking | $ 12,673.18 |
| Incidental Expenses and Costs to Date of Taking | $ 10.00 |
| Total for which Land is Taken | $ 119,628.17 |

_____
Signature of Collector of Taxes
ROBERT C. HALEY
_____
Printed/Typed Name of Collector of Taxes

Executed as a sealed instrument on December 28, 2018

### COMMONWEALTH OF MASSACHUSETTS

Worcester District, ss                                      December 28, 2018

On this 28th day of December, 2018, before me, the undersigned notary public, personally appeared Robert C. Haley, proved to me through satisfactory evidence of identification, which were MA Drivers License, and personally known to me, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose, as Collector of Taxes for the City/Town of Westborough.

_____
Signature of Notary Public

My commission expires April 23, 2021

Deborah E. Ledoux
_____
Printed/Typed Name of Notary Public

DEBORAH E. LEDOUX
Notary Public
Commonwealth of Massachusetts
My Commission Expires

THIS FORM APPROVED BY THE COMMISSIONER OF REV

TEST WORC. Kathryn A. Toomey, Register

2019 00004568
Bk: 59943 Pg: 371
Page: 1 of 1  01/16/2019 02:16 PM WD

# Exhibit E

MSS/NRTHSIDE/COREA.7

**36661**

## DECLARATION OF RECIPROCAL COVENANTS, EASEMENTS AND RESTRICTIONS

THIS DECLARATION OF RECIPROCAL COVENANTS, EASEMENTS AND RESTRICTIONS is made this 9th day of April, 1997, by **LESLIE S. CAREY, as Trustee of Northside Realty Trust** under a Declaration of Trust dated January 14, 1994 recorded with the Worcester District Registry of Deeds in Book 15975, Page 213, having a mailing address at 55 New York Avenue, Framingham, Massachusetts 01701 (hereinafter referred to as "Grantor").

### PRELIMINARY RECITALS

A. Grantor is the owner of certain premises (the "Shopping Center Site") located on Boston-Worcester Turnpike and Milk Street in Westborough, Worcester County, Massachusetts, shown as Lot 1, Lot 2 and Lot 3 on a plan of land entitled "Compiled Plan of Land in Westborough, MA" dated July 14, 1995, with the latest revision date of February 15, 1996 prepared by Beals and Thomas, Inc., recorded with the Worcester District Registry of Deeds in Plan Book 706, Plan 56 (the "Plan"), and as shown on the Site Plan (defined below) attached hereto and made a part hereof as Exhibit B.

B. Grantor desires to provide for the joint development, operation and use of Lot 1, Lot 2 and Lot 3 as one integrated shopping center.

C. In order to provide for the integrated development, operation and use of Lot 1, Lot 2 and Lot 3, Grantor desires to provide for the benefit and burden, respectively, of Lot 1, Lot 2 and Lot 3, certain rights, easements, servitudes, charges, restrictions, and privileges, all as hereinafter provided.

NOW THEREFORE, the Grantor, for itself, its successors and assigns, declares that Lot 1, Lot 2 and Lot 3, are and shall be sold, conveyed, occupied and owned, subject to and with the benefit of the covenants, conditions, restrictions, easements, charges and liens hereafter set forth.

### ARTICLE I

### DEFINITIONS

### SECTION 1.1. TERMS DEFINED.

Whenever used in this Agreement the terms defined in this Article shall have the meanings ascribed to them in this Article:

(a) "Abutting Highways" shall mean Boston-Worcester Turnpike (Route 9) and Milk Street, and any other road, street, avenue, highway or other public way abutting the

*Return To Leslie S. Carey*
NEW ENGLAND MANAGEMENT
& REALTY CORP.
55 New York Avenue
Framingham, MA 01701

Shopping Center Site, or replacing in whole or in part said Boston-Worcester Turnpike or Milk Street.

(b)  "Agreement" shall mean this Declaration of Reciprocal Covenants, Easements and Restrictions.

(c)  "Common Areas" shall mean all portions of the Shopping Center Site shown on Exhibit A other than where buildings are located or are permitted to be located, and shall include parking areas, entrances and exits, roadways, walkways, sidewalks, traffic lanes, traffic signs, lighting fixture poles, landscaped areas, and other similar areas and facilities.

(d)  "Condemnation" or "Condemn" shall mean (i) taking or appropriation of any portion of the Shopping Center Site pursuant to an exercise of the power of eminent domain, and (ii) (but only with the consent of the owners of the Shopping Center Site) any conveyance in lieu of condemnation, or under threat thereof, to a grantee having the power of condemnation with respect to the property in question.

(e)  "Driveways" shall mean the areas shown and designated as such on Exhibit A.

(f)  "Easement Plan" shall mean the plan entitled "Utility Services Exhibit Plan" dated March 20, 1997, prepared by Beals and Thomas, Inc., a copy of which is attached hereto as Exhibit C, showing the location of the Shopping Center easements.

(g)  "Entrances and Exits" shall mean the portions of the on-site roadways of the Shopping Center Site immediately adjoining and connecting with Abutting Highways.

(h)  "Lot 1" shall mean that portion of the Shopping Center Site designated as Lot 1 on the Plan.

(i)  "Lot 1 Building" shall mean the building now or hereafter constructed on Lot 1 as shown on Exhibit A hereto and designated thereon as "Cinema Building".

(j)  "Lot 1 Owner" or "Owner of Lot 1" shall mean the Owner or Owners (legally and beneficially) of record, at the relevant time, of all or any portions of Lot 1.

(k)  "Lot 2" shall mean that portion of the Shopping Center Site designated as Lot 2 on the Plan.

(l)  "Lot 2 Building" shall mean the building now or hereafter on Lot 2 as shown on Exhibit A hereto and designated thereon as "Restaurant/Retail".

(m)  "Lot 2 Owner" or "Owner of Lot 2" shall mean the Owner or Owners (legally and beneficially) or record, at the relevant time, of all or any portions of Lot 2.

2

417

(n)    "Lot 3" shall mean that portion of the Shopping Center Site designated as Lot 3 on the Plan.

(o)    "Lot 3 Building" shall mean the building constructed on Lot 3 as shown on Exhibit A hereto and designated thereon as "Lot 3 Building".

(p)    "Lot 3 Owner" or "Owner of Lot 3" shall mean the Owner or Owners (legally and beneficially) or record, at the relevant time, of all or any portions of Lot 3.

(q)    "Common Sidewalk" shall mean the sidewalks (i) connecting the Reserve Parking Area to Milk Street and the parking area to the rear of the Lot 1 Building, (ii) connecting the parking area to the rear of Lot 1 to land now or formerly of Andrew J. Lane Company, and (iii) connecting the parking area on Lot 2 to the parking area on Lot 3, as more particularly shown on Exhibit A.

(r)    "Occupant" shall mean any person legally entitled to the use and occupancy of any improvement on the Shopping Center Site, whether a Party or a tenant, subtenant, licensee or concessionaire in the Shopping Center Site.

(s)    "Operator" shall mean the Owner of Lot 2 from time to time and any successor thereto designated in accordance with the provision of Section 3.1(H) below.

(t)    "Owner" shall mean the owner (legally or beneficially) of record of the fee simple interest in a Parcel or portion of a Parcel.

(u)    "Parcel", "Parcel(s)" or "Parcels" means Lot 1, Lot 2 and/or Lot 3, as the context may appropriately require.

(v)    "Party" and "Parties" means the Owner of Lot 1, the Owner of Lot 2, and the Owner of Lot 3 from time to time, and their successors and assigns, except that:

(A)    successors and assigns of less than a fee simple interest (such as tenants) are not Parties (unless covered by (B) below), and the predecessor or assignor that retains the fee simple title remains a Party;

(B)    a Party that retains possession of a Parcel under a mortgage remains a Party, and the mortgagee is not a Party unless it takes possession after a default under the mortgage, provided however, that a mortgagee which takes possession under a so-called conditional assignment of lease shall not be a Party; and

(C)    successors and assigns of less than all of a Parcel or of an undivided interest in a Parcel (such as joint tenants or tenants in common) are not Parties, and the predecessor or assignor remains a Party.

3

A Party ceases to have rights under this Agreement and shall no longer be a Party after it transfers its interest to an assign that qualifies as a Party. A former Party who has assigned or transferred its interest to a successor Party, is released from its obligations under this Agreement only after it (i) transfers its Parcel to a Person who qualifies as a Party; and (ii) pays all amounts and performs all obligations owed to the other Parties at the time of the transfer; (iii) notifies the other Parties of the transfer; and (iv) delivers to the other Parcel Owners an instrument in recordable form pursuant to which the transferee covenants to assume and carry out all of the covenants and obligations of the transferor under this Agreement. Until the transferring Party is so released from its obligations, both the transferring Party and the transferee Party are jointly and severally liable under this Agreement.

(w)    "Permits" shall mean a Special Permit dated December 6, 1995 issued by the Town of Westborough Planning Board and recorded with said Deeds in Book ___, Page ___ ; a Conditional Approval for Definitive Plan dated June 26, 1996 issued by the Town of Westborough Planning Board and recorded with said Deeds in Book ___, Page ___; and a variance issued by the Town of Westborough Board of Zoning Appeals dated October 6, 1996, notice of which is recorded with said Deeds in Book 18341, Page 191.

(x)    "Permittees" shall mean the officers, director, partners, employees, agents, contractors, subcontractors, customers, patrons, clients, visitors, licensees and invitees of an Occupant.

(y)    "Person(s)" shall mean an individual, partnership, firm, association, corporation, trust and any other form of legal entity, and the singular includes the plural.

(z)    "Plan" shall mean that certain subdivision plan entitled "Compiled Plan of Land in Westborough, MA" dated July 14, 1995 prepared by Beals and Thomas, Inc., a copy of which plan is attached hereto and made a part hereof as Exhibit B.

(aa)    "Protected Area" shall mean that portion of Lot 1 designated as "Protected Area" on Exhibit A.

(bb)    "Site Plan" shall mean that certain plan entitled "Stage Coach Plaza Westborough, Massachusetts" dated February 20, 1997, prepared for New England Management & Realty Corp. by Beals and Thomas, Inc., a copy of which is attached hereto as Exhibit A.

(cc)    "Shopping Center Site" shall mean Lot 1, Lot 2 and Lot 3.

(dd)    "Termination Date" shall have the meaning given to said term in this Agreement.

\* Instrument No. 36656
\*\* Instrument No. 36655

4

419

(ee)    "Utility Facilities" shall mean utility facilities (excluding laterals) now or hereafter installed in the Shopping Center Site, providing for water, gas, electricity, sanitary sewer, storm sewer, drainage, telephone or other utility service to the buildings and Common Areas from time to time located on the Shopping Center Site.

## SECTION 1.2.  ADDITIONS, REPLACEMENTS OR ALTERATIONS.

Any reference in any definition to any improvement whatsoever shall be deemed also to be a reference to any reconstruction, alteration or replacement thereof, unless the express language or context of such reference shall otherwise indicate.

## ARTICLE II

## GRANT OF EASEMENTS

### SECTION 2.1.   DEFINITIONS AND DOCUMENTATION.

This Article II sets forth the easements and the terms and conditions thereof which shall be binding upon each of the Parcels and the Owners, Occupants and Permittees thereof, and shall run with the land.

As used in this Article II, the word "in", in respect of an easement granted "in" a particular Parcel, shall be deemed to mean, as the context may require "in", "to" "on", "over", "through", "upon' "across", and/or "under".  As to the easements herein granted:

(A)    A particular easement in a Parcel shall bind and burden such Parcel which shall, for the purpose of this Article, be deemed to be the servient tenement;

(B)    The grant of a particular easement in favor of a Parcel shall benefit such Parcel which shall, for the purposes of this Article, be deemed to be the dominant tenement;

(C)    All easements granted in this Article II shall exist by virtue of this Agreement, without the necessity of confirmation by any other documents.  However, the Owner of a Parcel shall, as to any easement, at the request of the Owner of any other Parcel, upon the submission of an appropriate document in form and substance reasonably acceptable to the Owner(s), execute and acknowledge such a document memorializing the existence, or the extinguishment (in whole or in part), or the release in respect of all or any portion of any Parcel, as the case may be, of any easement, in accordance with the terms and provisions of this Agreement.

(D)    All easements hereby granted are, unless limited herein, irrevocable and shall have the duration herein specified.

5

### SECTION 2.2.    EASEMENTS.

(A)    **EASEMENTS FOR USE OF PARKING AREAS.**

(1)    The Owners, Occupants and Permittees of each Parcel are hereby granted easements to use the parking facilities and walkways in the Common Areas on the Shopping Center Site for the parking and passage of motor vehicles (so long as, with respect to trucks, there is no unreasonable interference with customer and employee parking), and passage by pedestrians.

(2)    The Owners, Occupants and Permittees of each Parcel are hereby granted easements to use those portions of the Lots adjacent to the parking facilities in the Common Areas on the Shopping Center Site designated by the Operator for the storage of snow and ice collected from the removal of snow from the common areas, provided that there is no unreasonable interference with customer and employee parking), the use of the buildings on the Lots and passage by pedestrians.

(3)    Except as otherwise provided in this Section, the easements provided in this Subsection (A) shall be for the joint, non-exclusive use of the Parcel Owners, the Occupants and others included as Permittees of any thereof.

(4)    The easements provided in this Subsection (A) are perpetual.

(5)    The aforesaid easements in the Common Areas on each Parcel for vehicle parking by the Occupants and Permittees of the Parcel(s) to which the easements is (are) appurtenant, are subject to the following limitations:

(a)    Occupants' employees may not use such parking easements on the other Parcel(s), unless any portion of the other Parcel has been designated an employee parking area by the Owner thereof;

(b)    Such parking easements may be used by a Permittee only as long as the Permittee is patronizing or otherwise has business with any of the Occupants of the Shopping Center Site; and

(c)    Lot 2 and Lot 3 may use the respective parking easements to satisfy parking requirements imposed by the Town of Westborough Zoning By-Law to the extent of the aggregate building area now shown on Exhibit A.  Without limiting the

6

foregoing, the Owners, Occupants and Permittees of Lot 2 are expressly granted the right and easement to use 15 of the parking spaces located on Lot 3 to satisfy the requirements of the Town of Westborough Zoning By-Law. At the request of the Lot 2 Owner, the Lot 3 Owner shall designate 15 specific parking spaces on Lot 3 for the exclusive use of the Owner, Occupants and Permittees of Lot 2.

(B) **EASEMENTS FOR ACCESS**.

(1) The Owners, Occupants and Permittees of each Parcel are hereby granted non-exclusive easements in the Driveways and sidewalks of the Common Areas on each Owner's Parcel for access to or from such Parcel by the Owner and the Occupants and Permittees of the Parcel to which such easement is appurtenant; and nonexclusive easements to use the roadways on the Common Areas and the Entrances and Exits on the Shopping Center Site to provide passage by motor vehicles (passenger and truck) and by pedestrians between each Parcel and between the Parcels and the Abutting Highways.

(2) The easements provided in this Subsection (B) shall be for the joint, non-exclusive use of the Parcel Owners, the Occupants and others included as Permittees of any thereof, except that loading docks located adjacent to any premises shall be for the exclusive use of the Occupant thereof and shall not be subject to the access easement granted hereunder.

(3) The easements provided in this Subsection (B) are perpetual.

(C) **EASEMENT FOR UTILITY FACILITIES**.

(1) The Owner of each Parcel is hereby granted the following easements in the other Parcels for Utility Facilities:

(a) easements for all pipe(s) comprising the Utility Facilities for the purpose of using, operating, maintaining, repairing, relocating, replacing or enlarging any of such Utility Facilities, subject to the provisions of Subparagraph (3) below. The term "pipe(s)", as used in this Subsection (C) shall mean "pipe(s)", and/or "line(s)", and/or "conduit(s)", and/or "wire(s)", and/or "cable(s)", and/or "other means of providing utility facilities", as the context may require.

7

(b)     easements for the purposes of installing therein in the future, other pipe(s) not part of the Utility Facilities, to provide gas, water, fire loops and hydrants therefor, electric power, other forms of energy, signal, telephone, sanitary sewer and storm sewer services, or any of them, to or from any present or future facilities and for the purpose of using, operating, maintaining, repairing, relocating, replacing or enlarging any or all of such pipe(s), to the extent required by the facilities from time to time on the Parcels, subject to the provisions of Subparagraph (3) below; and

(c)     easements for the purpose of installing pipe(s) to connect any and all of the pipe(s) comprising the Utility Facilities with any other facilities to the extent that the connection thereof is necessary to service such facility, and after any such connection, for the purpose of using, operating, maintaining, repairing, relocating, replacing or enlarging any or all of such pipe(s), subject to the provisions of Subparagraph (3) below.

(2)     For the purpose of exercising the rights granted in Subparagraph (1) above, each Parcel Owner, and its respective employees, agents and contractors, shall have the right to enter upon and use the other Parcel to such extent and as long as reasonably necessary to accomplish such purposes, subject to the provisions of Subparagraph (3) below.

(3)     The rights of any Parcel Owner to do any work under Subparagraph (1) above, to the extent that entry on another Parcel or work on pipe(s) which may be located across another Parcel are concerned shall be subject to the following conditions and requirements:

(a)     the location of the easement shall be subject to the reasonable approval of the Parcel Owner on whose Parcel the Utility Facilities are to be located;

(b)     not less than thirty (30) days prior written notice shall be given to the other Parcel Owner(s) that the Parcel Owner anticipates doing such work, together with notification of the proposed area of such work, and the anticipated date of start and completion of such work; but if the work involved is emergency repair work, only such advance notice, written or oral, as is reasonably practical, needs to be given;

(c)     after such work, the pipe(s) in question shall be underground and not beneath or reasonably close to any buildings on the

8

other Parcel, but this Subparagraph (c) shall not require the moving of any pipe(s) installed prior to the date of execution hereof, nor permit any such work, if, as the result thereof, any Person(s) utilizing the Utility Facilities to provide utilities to or from improvements owned by it would be required to relocate any connection between the Utility Facilities and such improvement in order for such Person to continue to be able to utilize the Utility Facilities therefor, or if its ability so to utilize the same is otherwise materially adversely affected unless all such Person(s) shall consent to such work or the Parcel Owner proposing such work shall agree (and place the money therefor in escrow, if reasonably required by such Person[s]) to pay all costs (direct or indirect) which will be incurred by such Person(s) as a consequence of the performance of the work by such Parcel Owner;

(d)   after the completion of such work, the Parcel Owner shall, at its own cost and expense, restore the portion of the other Parcel so used to as good condition as the same was in immediately prior to the commencement of such work; and

(e)   the Parcel Owner shall exercise best efforts to minimize interference with use and enjoyment the other of Parcel by the Owner(s) of such Parcel.

(4)   The easements granted pursuant to this Subsection C shall be located in the areas shown on the Easement Plan but, notwithstanding the foregoing, each Parcel Owner shall have the right to relocate any pipe(s) located on its parcel pursuant to an easement granted by this Subsection (c) within the applicable "Easement Relocation Area" shown on the Easement Plan if reasonably deemed by it to be necessary for the use and enjoyment of its parcel and if it complies with the conditions in Subparagraph (3) above.

(5)   The easements provided in this Subsection (C) are perpetual.

(D)   **EASEMENT FOR SELF-HELP.**

The Owner of each Parcel, its employees, agents and contractors, are hereby granted easements to enter upon the other Parcels for the purpose of performing any obligation which the other Parcel Owner is required to perform on the other Parcel, pursuant to the terms of this Agreement, but which such other Parcel Owner fails or refuses to perform and which the non-defaulting Parcel Owner has the right then so to perform under Section 7.2 hereof,

9

424

provided that the defaulting Parcel Owner is first served with notice and allowed the period of time set forth in Section 7.2 hereof to cure such default.

The Owner of each Parcel, its employees, agents and contractors, are hereby granted easements to enter upon the other Parcels for the purpose of performing any obligation which the Operator is required to perform pursuant to the terms of this Agreement, but which such Operator fails or refuses to perform and which the other Parcel Owners have the right then so to perform under Section 3.1(I) hereof.

In exercising the easements granted pursuant to this Subsection (D), the Parcel Owners shall use reasonable efforts to minimize any interference with or interruption of business conducted on the other Parcels.

The easements provided in this Subsection (D) are perpetual.

## SECTION 2.3. SIGNS.

(A)     Except as the parties may hereafter agree and as proved in Paragraph (B) below, no free standing signs shall be erected in the Shopping Center Site other than a pylon sign and a box sign at the locations shown therefor on Exhibit A hereto.

(B)     If at any time in the future, necessary approvals and permits are obtained for the construction of a pylon sign at the entrance to Lot 1 on Milk Street listing any tenants (as opposed to a sign merely identifying the Shopping Center Site), then the Owner of Lot 2 and the Owner of Lot 3 shall each have, as appurtenant to their Lot, for the use of the Occupants of Lot 2 and the Occupants of Lot 3, an easement to install illuminated panel signs on such pylon sign at positions thereon located beneath any panel sign(s) installed by any Occupant(s) of Lot 1.  Such signs shall be limited to identifying the Occupants of Lot 2 and Lot 3, and shall conform to all applicable rules, regulations and by-laws of the Town of Westborough. The panel signs erected on the pylon sign shall be maintained by the Occupants utilizing such signs at the sole cost and expense of such Occupants.

(C)     The Owner of Lot 1 and the Owner of Lot 3 shall each have, as appurtenant to their Lot, for the use of the Occupants of Lot 2 and the Occupants of Lot 3, an easement to install illuminated panel signs on the pylon sign at the entrance to Lot 3 on Boston-Worcester Turnpike (Route 9) at positions thereon located beneath the reader board installed by any Occupant(s) of Lot 1.  Such signs shall be limited to identifying the Occupants of Lot 2 and Lot 3, and shall conform to all applicable rules, regulations and by-laws of the Town of Westborough.  For so long as Lot 1 is used for a cinema, the Owner of Lot 1 shall have as appurtenant to Lot 1 for the use of the Occupants of Lot 1 an easement to use the reader board on such pylon sign for the designation of films showing in the Lot 1 Building and the owner of Lot 1 shall maintain such reader board at its sole cost and expense.

10

(D)    No exterior signs shall be erected or placed on any premises in the Shopping Center Site except non-flashing and non-moving signs which, in size and number, shall have a reasonable relationship to the premises to which they relate, and which comply with all local zoning and other applicable governmental requirements.  Neither the Parcel Owner nor any tenant or Occupant of the Shopping Center Site shall paint signs on or affix paper signs to any part of the exterior of the buildings in the Shopping Center, or in any windows.  All exterior signs shall be placed upon the marquee or against the parapet of each store.  Notwithstanding any of the foregoing provisions of this Section, any national or regional "chain store" tenant may have a reasonable number of signs designating its parcel pick-up stations(s) (if any) and non-moving, non-flashing signs on the exterior of its store of the same number, size, design and degree of illumination as are customarily utilized by it for a majority of its other stores of substantially the same size.  All Parcel Owners shall engage only the sign company or companies designated from time to time by the Operator for the erection and placement of signs in the Shopping Center or shall obtain the prior written approval of the Operator to use any other sign company or companies.

## SECTION 2.4.  AMENDMENT OF EASEMENTS.

Any of the easements, rights or licenses granted hereby may only be released, extinguished, amended, waived or modified by instrument in recordable form, executed by all of the Owners with the written consent of the holders of all mortgages encumbering the Parcels and recorded.

## SECTION 2.5.  CONTROL.

Each Party may, utilizing reasonable means, exclude unauthorized persons or prevent unauthorized acts in the Common Areas.  Each Party may restrict access to its Parcel on any one day that the Occupant(s) of the other Parcel are not open for business as necessary to prevent the acquisition of prescriptive rights by anyone, but shall notify the other Party of its planned closing and shall coordinate the closing with the other Party to minimize interference with the operation of the Shopping Center Site.

## ARTICLE III

## MAINTENANCE, MANAGEMENT AND OPERATION OF SHOPPING CENTER COMMON AREA AND COMMON UTILITY FACILITIES

### SECTION 3.1.      COMMON AREA OPERATION AND MAINTENANCE.

(A)    Commencing on the date that the first Occupant within the Shopping Center Site opens for business (the "Operation Commencement Date"), the Lot 2 Owner (for purposes of this Section 3.1 called the "Operator"), shall, until it shall be removed for cause, elect otherwise, in both cases in accordance with the provisions of Section I below, operate and maintain or cause to be operated and maintained the Common Area of the Shopping

11

Center Site in accordance with, and subject to, the terms and conditions of this Section 3.1. Such operation and maintenance of the Common Area shall include, but not be limited to:

(1)    Maintaining the surfaces of the driveways, entrances and exits, parking areas and common sidewalks in a level, smooth and evenly covered condition with the type of surfacing material originally installed or such substitute as shall in all respects be equal in quality, use, and durability;

(2)    Maintaining the bridge for the driveway connecting Lot 2 to Lot 3;

(3)    Maintaining the sewage pump station located on Lot 3 (unless and until the same shall be maintained by public authority);

(4)    Removing all papers, debris, and refuse and sweeping the Common Area to the extent reasonably necessary to keep the Common Area in a neat, clean, and orderly condition;

(5)    Placing, keeping in repair, and replacing any necessary directional signs, markers, and lines, and operating, keeping in repair, and replacing when necessary such artificial lighting facilities as shall be reasonably required (such lighting to be operated during those hours of darkness when any Occupant is conducting its business within the Shopping Center and until one (1) hour after closing of business; provided, however, that if illumination is required by any Occupant after ten (10) o'clock p.m., such Occupant shall pay for the cost of such illumination on a pro rata basis with any other Occupants also requesting such additional illumination, such pro rata basis to be in accordance with the square footage of the premises of such Occupants);

(6)    Maintaining all Utility Facilities used to provide services to more than one Lot (unless maintained by any public authority);

(7)    Paying any utility costs for which the Common Area may be separately metered if such is the case;

(6)    Maintaining all landscaped areas, making such replacements of shrubs, and other landscaping as is necessary, and keeping said areas at all times adequately weeded, mowed and watered, except for such of the same as shall be the responsibility of the Lot Owners pursuant to Section 3.3 hereof;

(8)    Maintaining the box and monument or pylon signs (other than the panels to be maintained by the Lot Owners) located within the Common Area as shown on Exhibit A in good order and condition;

12

427

(9) Snow and ice removal from and the sanding of driveways, parking areas, exits and entrances and Common Sidewalks;

(10) All costs incurred with respect to, and the perpetual maintenance of, the traffic signal at the intersection of Oak Street and the entrance to the Shopping Center, including, without limitation, any costs or obligations incurred by the Operator pursuant to any traffic signal maintenance agreement between the Operator and the Town of Westborough;

(11) Providing such off-site services as shall be required by the Permits or as otherwise shall be required by applicable public authority for the use of the Shopping Center Site as a whole, as opposed to such of the same as may be required by the particular use made of the Lots by the Owners, Occupants and Permittees thereof; and

(12) The employment of such personnel as is reasonably necessary to accomplish the foregoing and securing such insurance as is required in connection with such employment.

(B)     As a part of said operation, the Operator shall obtain and maintain general public liability insurance insuring the Operator and all Parcel Owners, Occupants and the holders of all mortgages encumbering the Parcels, as their respective interest may appear, provided that the Operator is notified in writing of such Occupants and mortgagees, against claims for personal injury, death, or property damage occurring in, upon, or about the Common Area.  The limits of liability of all such insurance shall not be less than Ten Million Dollars ($10,000,000.00) combined single limit for personal injury, death, and damage to property.  Such liability insurance policy shall be primary to any other liability policy carried by any Parcel Owner and shall include blanket contractual liability coverage for the liability assumed under Section 11.3 hereof.  All such insurance shall be maintained in force commencing upon the Operation Commencement Date.  The Parcel Owners may agree on higher limits of insurance consistent with standards for first class shopping centers. All of the insurance required to be maintained pursuant to this Subsection (B) shall be effected under valid and enforceable policies of insurance issued by insurers of recognized responsibility licensed to do business in the Commonwealth of Massachusetts and shall contain an agreement by such insurer to give at least ten (10) days prior written notice to the other Parcel Owners (and any other parties named as insureds therein) in the event of cancellation or material change in the coverage or amount of insurance so provided.  A certificate evidencing renewal or replacement of the policies required by this Subsection (B) shall be delivered to each Parcel Owner (and any other party named as an insured under the then existing policy) within ten (10) days after the Operation Commencement Date and thereafter a certificate evidencing the renewal or replacement of the policies required by this Subsection (B) shall be delivered to each Parcel Owner (and any other party named as an insured under the then existing policy) at least thirty (30) days prior to the expiration thereof.

13

(C)    The Operator shall, from time to time, but not more often than once each calendar month, send to each Parcel Owner a written statement of the total costs and expenses of operation and maintenance including, but not limited to, those items set forth in Subsections (A) and (B) hereof and any expenses allocated in accordance with Subsection (E) below (said statement to be accompanied by such bills, invoices, and other documentation as shall be necessary for proper analysis of such expenses).  The Operator shall also be entitled to a management fee of ten percent (10%) of the total of such costs for the preceding period. Within thirty (30) days after receipt of such statement, each Parcel Owner shall pay, or cause to be paid, to the Operator its pro rata share of the total amount of said costs and expenses as set forth in Subsection (D) below.  In the alternative, the Operator may elect to estimate the total costs and expenses of such maintenance and operation and the corresponding management fee on an annual basis and to render to each Parcel Owner a written statement of pro rata share of the same.  Until such estimate shall be revised or such method of estimation shall be terminated by the Operator, each Parcel Owner shall pay to the Operator 1/12 of its pro rata on the first day of each month thereafter.  At the end of the year chosen by the Operator for billing on an estimated basis, or at such earlier time as the Operator shall elect to cease billing on an estimated basis, Operator shall calculate the actual amount of such costs and expenses incurred during such period and refund any excess to the Parcel Owners or bill the Parcel Owners for their pro rata share of any deficiency and the Parcel Owners shall pay the Operator the same within thirty days after such bill.  Notwithstanding the foregoing, for so long as the Owner of Lot 2 is the Operator, the Operator shall be entitled to a minimum management fee of $41,872.00 per annum.  Immediately following any calendar year in which the management fee billed to the Parcel Owners in accordance with the foregoing shall be more than $41,872.00, the Parcel Owners shall thereupon pay to the Operator their pro rata share of the difference between the amount billed and $41,872.00.

(D)    In the event that the Operator reasonably shall determine that any item of work for which Operator is responsible will cost more than $25,000.00 in the aggregate, Operator may assess the Lot Owners for their proportionate share thereof prior to the commencement of such work by written notice of assessment to the Lot Owners.  Each Lot Owners share of such assessment shall be due and payable to the Operator within 15 days after the receipt of such notice of assessment.

(E)    The Common Area maintenance expense, including any assessment therefor, shall be prorated among the Parcel Owners as follows:

| | |
|---|---|
| Lot 1 | 57.6% |
| Lot 2 | 35.8% |
| Lot 3 | 6.6% |
| Total | 100% |

The foregoing percentages shall be each Parcel Owner's "proportionate share" of Common Area maintenance expense.

14

Notwithstanding the foregoing, certain of the costs and expenses of the operation and the maintenance of the Shopping Center shall be allocated to the various Parcel Owners as follows:

1. All of the costs of providing police details or traffic control measures required by the Permits or otherwise required on account of the operation of a theatre on Lot 1 will be allocated to the Lot 1 Owner.

2. The costs of maintaining those portions of the pylon sign identifying the theatre on Lot 1 and the films being exhibited in the Lot 1 building (as opposed to the structure of the same) will be allocated to the Lot 1 Owner. The costs of those portions of the pylon sign identifying the occupants of Lots 2 and 3 shall be allocated to the Owner of Lots 2 and 3. The Operator shall include any such changes in the written statements provided for in Subsection (c) above.

F. If any Parcel Owner shall fail to pay in a timely manner its pro rata share of the Common Area maintenance expenses, the same shall be deemed delinquent, and the amount thereof shall bear interest thereafter at the rate provided in Section 7.1 until paid. Any and all delinquent amounts with said interest shall be a lien and charge upon all of the property of such Parcel Owner in accordance with Section 7.3 hereof.

G. Nothing contained in this Section 3.1 shall affect the right of any Parcel Owner to assess its Occupant(s) for Common Area maintenance expenses and for such management fees as the owner deems appropriate, subject, however, to any limitations contained in its rental agreement(s) with any such Occupant(s).

H. The Operator shall indemnify, defend (if requested), and hold the other Parcel Owners harmless from all claims and losses, and all costs and expenses relating thereto (including reasonable attorney's fees) arising out of or from (a) any occurrence in the Common Area, unless the claim or loss results from the negligence of another Parcel Owner or the Occupants of such other Parcel Owner's Parcel, or (b) any failure by Operator to perform imposed on the Operator under this Agreement, or the breach of such obligation.

I. Notwithstanding any preceding provisions of this Section 3.1 which may be to the contrary, should the Owner of Lot 2 elect to resign as Operator by written notice to either one of the other Parcel Owners, the Parcel Owners shall, within thirty (30) days thereafter, proceed to reach an agreement among themselves as to who shall assume the duties, obligations rights, and remedies of the Operator set forth herein. In the event that such agreement has not been reached within said thirty (30) day period, then the Parcel Owners shall employ an independent party or entity as the new Operator to assume the rights and obligations provided for hereunder. Any agreement of the Parcel Owners hereunder shall require the agreement of the owners of not less than sixty percent (60%) of the proportionate share of the Common Area maintenance expense of the Shopping Center, based upon the ground floor area of the buildings on each Parcel Owner's Parcel.

15

In addition to the foregoing, the Parcel Owners shall have the right to remove the Operator "for cause" pursuant to the following provisions:

1. The Parcel Owner's owning not less than sixty percent (60%) of the proportionate share of the Common Area maintenance expense of the Shopping Center may remove the Operator upon thirty (30) days prior written notice; and

2. For so long as Lot 2 and Lot 3 are in common ownership, if the Lot 1 Owner, in its reasonable judgment, feels that Operator's maintenance and operation of the Common Areas does not meet the general shopping center standards prevailing in the market area in which the Shopping Center is located, the Lot 1 Owner shall notify Operator specifying the Lot 1 Owner's reasons. Operator shall have a period of sixty (60) days after receipt of the Lot 1 Owner's notice within which to attempt to cure the problems set forth in the Lot 1 Owner's notice. Prior to the end of the sixty (60) day period, Operator and the Lot 1 Owner agree to discuss the corrective actions taken by Operator. In the event, the Lot 1 Owner, in the Lot 1 Owner's reasonable judgment, still feels that Operator's maintenance and operation of the Common Areas does not meet general shopping center standards, the Lot 1 Owner shall have the right, upon not less than thirty (30) days prior written notice to Operator, to assume the maintenance obligations of Operator pursuant to this Agreement and the Lot 1 Owner must honor, pay and perform all outstanding maintenance contracts (of not more than one year in duration) that Operator had entered into in good faith, unless such maintenance contracts may be terminated without cost to the Operator.

J. In addition to the foregoing, except to the extent that any such failure is caused by any of the causes set forth in Section 7.5 hereof, if the Operator shall fail to perform its maintenance obligations hereunder or fail to provide the required insurance, then any other Parcel Owner may, upon ten (10) days' prior notice to the Operator, do so, and the curing Parcel Owner may then bill the Operator for the expense incurred. If immediate remedial action is necessary to protect the interest of a Parcel Owner in the Shopping Center Site or its Parcel, or to prevent the interruption or further interruption of the conduct of business on such Parcel Owner's Parcel or in the Shopping Center Site (including, without limitation, interruption which may result if snow is not removed promptly from the paved parking areas or if burned out or malfunctioning parking lot lighting is not promptly repaired), or to prevent injury to persons or damage to property, than a Parcel Owner may cure a default by the Operator without the requirement of the ten (10) day notice hereunder, but after oral or written notice to the Operator.

If the Operator shall not pay said bill within fifteen (15) days, the curing Parcel Owner shall have a lien on the property of the Operator for the amount of said bill, which amount shall bear interest at the rate set forth in Section 7.1 hereof until paid; provided, however, that such curing Parcel Owner shall also have the right to bill the other Parcel Owners for their pro rata shares of the costs incurred, and provided, further, that any such lien shall be subject to the provisions of Section 7.3 below. The foregoing shall not be construed as preventing the Operator from assessing the other Parcel Owners for their pro

16

rata share of the amounts reimbursed by the Operator to the curing Parcel Owner (except as to any amounts previously paid by the other Parcel Owners directly to the curing Parcel Owner pursuant to the foregoing); provided, however, that the Operator shall not be entitled to a management fee as to such amounts and shall not be entitled to reimbursement for any interest or collection costs paid by the Operator to the curing Parcel Owner.

K.    In the event that an Operator ceases to have an obligation to perform the duties described herein, said Operator shall cease to have any liability or responsibility for any acts, events, or circumstances occurring subsequent to and not as a result of its performance or non-performance of its duties while Operator.

L.    During any period of time when no person is obligated to maintain the entire Common Area, each Parcel Owner shall have the obligation to maintain its own Parcel in accordance with Subsection (A) above.

## SECTION 3.2.    LIABILITY INSURANCE.

Each Parcel Owner shall cause to be maintained general liability insurance against claims of bodily or personal injury and death and property damage occasioned by accident or other event occurring in or upon, or resulting from a condition existing upon, or arising from its Parcel, with limits of at least $10,000,000 (combined single limit).  Such liability insurance policy shall be primary to any other liability policy carried by any Parcel Owner and shall include blanket contractual liability coverage for the liability assumed under this Agreement.  All such insurance shall be maintained in force commencing upon the date of the execution of this Agreement.  The Parcel Owners may agree on higher limits of insurance consistent with standards for first class shopping centers.  All of the insurance required to be maintained pursuant to this Subsection (D) shall be effected under valid and enforceable policies of insurance issued by insurers of recognized responsibility licensed to do business in the Commonwealth of Massachusetts and shall contain an agreement by such insurer to give at least ten (10) days prior written notice to the other Parcel Owner (and any other parties named as insureds therein) in the event of cancellation or material change in the coverage or amount of insurance so provided.  A certificate evidencing renewal or replacement of the policies required by this Subsection (D) shall be delivered to each Parcel Owner (and any other party named as an insured under the then existing policy) within ten (10) days after the date of recording of this Agreement and thereafter a certificate evidencing the renewal or replacement of the policies required by this Subsection (D) shall be delivered to each Parcel Owner (and any other party named as an insured under the then existing policy) at least thirty (30) days prior to the expiration thereof.

## SECTION 3.3.    MAINTENANCE OF SHOPPING CENTER SITE.

Each Parcel Owner, at its sole cost and expense, shall maintain the exterior of the improvements (whether or not occupied) on its Parcel and unimproved areas in a clean and neat condition, including:

17

    (A)    **Sidewalks** - maintaining the sidewalks other than the common sidewalks;

    (B)    **Building Landscaping** - maintaining the landscaped areas; including mowing, weeding, watering, raking and fertilizing, and promptly replacing unrecoverable diseased or dead plantings;

    (C)    **Canopy, Gutters** - maintaining the canopy and the gutters and downspouts on the buildings; and

    (D)    **Rear Building and Canopy Lighting** - maintaining the rear building and canopy lighting in good working condition and replacing burned-out bulbs promptly.

**SECTION 3.4.**    **OPERATION OF SHOPPING CENTER SITE.**

Each Parcel Owner shall perform or cause to be performed the following obligations on its Parcel:

    (A)    **Trash** - pick up trash and debris daily in and empty trash receptacles and dumpsters serving the Parcel and keep them reasonably free of vermin;

    (B)    **Rear Building and Canopy Lighting** - light the rear building from dusk until at least 12:00 midnight each day of the week, and light the canopy lighting from dusk until at least 10:30 p.m. each day of the week; and

    (C)    **Sidewalk** - sweep the sidewalks, other than the common sidewalks, weekly and promptly remove snow and ice from the sidewalk.

**SECTION 3.5.**  **ADDITIONAL COVENANTS RESPECTING THE COMMON AREAS.**

The Parcel Owner of Lot 2, acting as the Operator, covenants and agrees to construct, or cause to be constructed, the Common Areas shown on Exhibit A, including, without limitation, the Common Sidewalk, the Driveways, the Entrances and Exits, and the Utility Facilities, which construction shall be substantially complete on or before June 15, 1997, subject to delay for causes set forth in Section 7.5 of this Agreement.

Each Parcel Owner covenants and agrees with respect to its Parcel, as follows:

(A)    It will not change, modify or alter the size or location of the Common Areas on its Parcel as shown on Exhibit A hereto, or change the configuration of, alter the location of or reduce the size of, or eliminate any of the parking spaces, driveways, accessways or Entrances and Exits located on its Parcel as shown on Exhibit A.

18

(B)     It will not use or permit the use of the Common Area(s) on its parcel for any purpose other than the parking and passage of vehicles and movement of pedestrian traffic, landscaping, directional and traffic control signals, and it will not construct or locate, or allow construction or location of, any fence, barricade, structure, building, or other obstruction which would interfere with the intended use thereof, or the free flow of traffic to, across or from the parking areas on its Parcel, except to the extent reasonably required for, or appropriate in connection with:

(1)     the proper exercise of the easements granted pursuant to Article II hereof, or any rights specifically granted to the Parcel Owners under this Agreement, and

(2)     the performance by each Parcel Owner of its maintenance obligations set forth in this Agreement.

(3)     the construction and maintenance of such perimeter fences and barricades as shall be required by public authority.

(C)     The Common Areas of the Parcels shall not be used for sales of advertising purposes or for the operation of amusement devices.

(D)     Each Parcel Owner shall use reasonable efforts to cause its Occupants to cause their employees to park their vehicles in any designated areas on their Parcels, provided that no portion of the Protected Area shall be designated for employee parking.

(E) There shall be no charge made for the use of the Common Areas in addition to the costs to be assessed to the Parcel Owners in accordance with the provisions of this Article IV.

## SECTION 3.6.    NO ENLARGEMENT.

There shall be no enlargement to any Parcel such that the Shopping Center Site is enlarged.

## SECTION 3.7.    ADDITIONAL COVENANTS RESPECTING BUILDINGS.

No Parcel Owner shall place or erect any structures or improvements on its Parcel except (i) the present and proposed buildings (in the locations therefor) shown on Exhibit A, containing at most, the amounts of ground floor area designated on Exhibit A; (ii) and additions to stores if and to the extent shown on Exhibit A and (iii) subject to the provisions of this Agreement, the Common Areas and Utility Facilities; provided, however, notwithstanding the foregoing, the operator and owner of Lot 2 and Lot 3 expressly reserve, and shall have, the right to enlarge the present and proposed buildings and to construct additional buildings on Lot 2 and Lot 3 respectively, as long as: (a) such buildings do not

19

materially interfere with the driveways, entrances or exits of the Shopping Center; and (b) the total ground floor area of buildings on Lot 2 or Lot 3, as the case may be, does not exceed the maximum amount of ground floor area permitted to be constructed on such Parcels pursuant to the Special Permit (referenced in the definition of Permits above).

No building or structure constructed in the Shopping Center Site shall contain a basement or floor space above the ground floor level except for mezzanines in the Lot 1 Building, provided that any such mezzanine located in Lot 1 Building shall be used solely for non-selling purposes. No covered or uncovered outdoor area shall be placed in the Shopping Center Site unless shown on Exhibit A or located within an area where building is permitted.

Each Parcel Owner agrees that all construction performed by it or on its behalf shall be done in a diligent, good, and workmanlike manner with the use of first class materials, and in accordance with all applicable building and zoning laws and all other laws, ordinances, orders, codes, rules, regulations and requirements of all federal, state, municipal, public and governmental agencies and governments.

### SECTION 3.8. RELEASE OF LIABILITY AND MUTUAL WAIVER OF SUBROGATION.

(A)    Each Parcel Owner (the "Releasing Party") hereby releases each of the other Parcel Owners (the "Released Party") from any liability which the Released Party would, but for this Section, have had to the Releasing Party during the term of this Agreement resulting from the occurrence of any casualty against which the Releasing Party carries insurance, or is required to carry insurance, which casualty may have resulted in whole or in part from any act or neglect of the Released Party, its servants, agents or employees, other than the willful act of the Released Party, its servants, agents or employees; and to the extent permitted by law, each Releasing Party will also release from all such liability any Person holding under the respective Released Party from any such liability to it, as if such Person were expressly a party to this Agreement with the Releasing Party.

(B)    All releases which are the subject of this Section 3.7 shall be effective (i) only for so long as and to the extent that policies (if any) insuring the interest of the Releasing Party hereunder, contain a clause providing in effect that such release will not vitiate or adversely affect such policy or the right of the insured to recover thereunder, and (ii) only for so long as and to the extent that such release is reciprocal as to the Releasing Party. Each Party shall obtain a clause as described in (i) above in each of its policies, if it is available, and if no additional premium is charged therefor. If a Releasing Party maintains insurance and is unable to obtain such a clause, or if a material additional premium is charged therefor, the Releasing Party shall promptly notify the Released Party whereupon the Releasing Party shall have

20

no obligation to obtain such a clause unless, in case a material additional premium is charged therefor, the Released Party agrees to pay the amount of the additional premium within ten (10) business days after notice to the Released Party of the applicability of this sentence and of the additional amount and thereafter promptly pays such amount.

### SECTION 3.9. CLEARING OF AREA.

If any Parcel Owner shall not be obligated to, and shall elect not to, repair, reconstruct, or replace all or any portion of any improvement on its Parcel damaged by fire or other casualty, such Parcel Owner shall, nevertheless, cause the portion of such improvement not so replaced, reconstructed, repaired or restored to be demolished in its entirety and replaced with paved parking facilities or landscaped area comparable to the paved parking facilities or landscaped area, as the case may be, then existing within the parking areas.

### SECTION 3.10. MECHANICS' LIENS.

If a mechanic's lien is filed against any Parcel in connection with any work or construction done on another Parcel, the Party permitting or causing the lien to be filed shall take prompt action to protect the Parcel upon which such lien has been filed and the Parcel Owner which owns such Parcel, such action to include removal of such lien if requested by the Parcel Owner of the Parcel upon which such lien has been filed, or if required by any Mortgagee, purchaser or lessee of such Parcel or a portion thereof.

### SECTION 3.11. EFFECT OF CONSTRUCTION ON SHOPPING CENTER SITE OPERATION.

Each Parcel Owner shall take reasonable necessary safety measures to protect the other Parcel Owner and its Occupants and Permittees from injury or damage by work or construction performed on its Parcel. Each Parcel Owner shall do its work and construction so that it does not unreasonably interfere with the Occupants and Permittees on the remainder of the Shopping Center Site and shall erect protective fences and other safeguards so that businesses on the other Parcel Owner's Parcels can continue operating during work and construction on its Parcel. Each Parcel Owner shall confine its construction activities to an area within a 10' radius of the building lines for the building(s) on its Parcel as shown on Exhibit A, and all materials and equipment used in such construction shall be stored solely within the boundaries of the Parcel on which such construction is being performed, provided that the Lot 1 Owner shall not store any materials or equipment south of the third row of parking on the southerly side of the Lot 1 Building. Each constructing Parcel Owner shall restore all areas it disturbs on any other Parcel Owner's Parcel to their condition prior to construction.

21

## ARTICLE IV

### EXCULPATION

No Parcel Owner, and no partner, shareholder, fiduciary or disclosed or undisclosed principal of any Parcel Owner and no officers, directors and stockholders of a Parcel Owner or on the part of the officers, directors and stockholders of any corporate successor in interest of a Parcel Owner or on the part of the members of any firm, partnership, or joint venture if any successor in interest be a firm, partnership, or joint venture (all, in this Article IV, being included in the meaning of the expression "Parcel Owner"), shall be under any personal liability with respect to any of the provisions of this Agreement, and if any Parcel Owner is in breach or default with respect to such Parcel Owner's obligations, or otherwise under this Agreement, the other Parcel Owner shall look solely to the interest of the defaulting Parcel Owner in its Parcel for the satisfaction of any monetary obligations of such defaulting party. It is expressly understood and agreed that each Parcel Owner's liability hereunder for monetary obligations shall in no event exceed such Parcel Owner's equity interest in its Parcel.

No provision of this Article shall be deemed to excuse any default or other breach on a Parcel Owner's part nor shall any right or remedy of any other Parcel Owner be thereby otherwise limited or derogated, including, without limitation, the right to injunctive or other equitable relief.

No provision of this Article shall operate to limit or derogate from each Parcel Owner's rights or remedies as to funds accruing from any eminent domain proceeding or the proceeds of any insurance (for which each Parcel Owner(s) shall remain personally liable) nor shall they render one Parcel Owner liable for the obligations or other liabilities of any other Parcel Owner to others.

Notwithstanding the foregoing, no provision of this Article shall be construed to affect the obligation of the Lot Owners to reimburse the Operator for the costs incurred by Operator in the performance of its obligations hereunder or to pay the Operator for the associated management fee as provided herein, which obligation shall remain the unlimited personal liability of each Parcel Owner.

## ARTICLE V

### REAL ESTATE TAXES, WATER AND SEWER RENTS AND OTHER CHARGES

### SECTION 5.1. COVENANT TO PAY.

Each Parcel Owner respectively covenants to pay, before any penalty may be added thereto for the non-payment thereof, with respect to its respective Parcel, all real estate taxes and assessments thereon, all water and sewer rents thereon, all utility charges for its Parcel,

22

437

all assessments hereafter made by governmental authorities for improvements on its Parcel, and all other liens, assessments, impositions, or other charges for the non-payment of which a lien could be imposed upon its Parcel (all of the foregoing being herein called a "Tax").

## SECTION 5.2. RIGHT TO CONTEST OR APPEAL.

Each Parcel Owner, respectively, shall have the right to contest the validity of the amount of any Tax levied against its Parcel by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such tax, pay same under protest, or take such other steps as it may deem appropriate; provided, however, such Parcel Owner shall take no action or defer payment beyond such period as shall cause or allow the institution of any foreclosure proceedings or similar action against its Parcel.

## ARTICLE VI

## CONDEMNATION/FIRE AND CASUALTY

### SECTION 6.1. RESTORATION.

If any portion of a Parcel is taken by Condemnation, this Agreement shall not be affected thereby, except that the portion of such Parcel so taken shall be relieved and released from the terms of this Agreement, and the Parcel Owner whose Parcel was subject to such Condemnation shall apply the proceeds of the Condemnation Award attributable thereto (subject to the prior rights, ff any, of the Mortgagee of such Parcel) and such additional funds as may be necessary, to the restoration of the remaining parking areas on its Parcel as near as possible to the condition which existed prior to the Condemnation.

### SECTION 6.2. WAIVER OF AWARD.

The provisions of this Article VI are intended to establish the rights as between the Parcel Owners in the event of a Condemnation and such provisions shall not limit, affect or prejudice the claims which may be asserted by the Parcel Owners against the Condemnor. The Condemnation Award in respect of Condemnation, whether before or after the Termination Date, shall, as between the Parcel Owners, belong to the Parcel Owner(s) of the Parcel(s) affected by such Condemnation; provided, however, that each Parcel Owner who enjoys any easement, right or interest created by this Agreement in a Parcel shall be entitled to make its own separate claim against the Condemnor for the value attributable to any such easement, right or interest to the extent that such easement no longer benefits the Parcels not so Condemned, provided that such claim shall not affect the claim of the Parcel Owner of the Parcel affected by such condemnation.

23

### SECTION 6.3. FIRE INSURANCE.

Each Parcel Owner agrees to maintain fire and extended coverage insurance in "all risk" form on the buildings located on its Parcel in the full amount of their replacement cost, subject to the maintenance of commercially reasonable and customary "deductibles" and co-insurance provisions.

### SECTION 6.4. DAMAGE.

(A)     If any building in the Shopping Center Site is damaged by fire or other casualty, the Parcel Owner on whose Parcel the building is located shall either promptly (i) repair or rebuild the building to at least its prior condition, or (ii) raze the building, fill in any excavation, pave or plant grass in the area affected by the damage, and perform such other work needed to put the area in a sightly condition.

(B)     If any parking area, driveway or other Common Area is damaged by fire or casualty, the Parcel Owner on whose Parcel such area is located shall either promptly (i) repair or rebuild the area to at least its prior condition, or (ii) perform such work needed to put the area in a sightly condition.

(C)     Notwithstanding the foregoing, the following provisions will apply to damage to the Lot 1 Building resulting from fire or other casualty:

1.     PARTIAL DAMAGE.  In case the Lot 1 Building shall be partially damaged, but not substantially damaged (as that term is hereinafter defined) by fire, by any hazard included within so-called extended coverage and all risk endorsements, or by casualty, the Lot 1 Owner shall forthwith proceed to repair such damage and restore the Lot 1 Building to substantially its condition at the time of such damage (subject, however, to zoning and building laws then in existence).

2.     SUBSTANTIAL DAMAGE.  In case the Lot 1 Building shall be substantially (as that term is hereinafter defined) damage or destroyed by fire or other casualty, the risk of which is covered by the Lot 1 Owner's Fire Insurance, the Lot 1 Owner shall, proceeding with all reasonable dispatch after such damage and the determination of the net amount of insurance proceeds available to the Lot 1 Owner, expend so much as may be necessary to, repair or rebuild the Lot 1 Building to substantially its condition at the time of such damage or destruction (subject, however, to building and zoning laws then in existence), but the Lot 1 Owner shall not be responsible for any delay which may result from any cause beyond its reasonable control.  so long as the Lot 1 Owner has maintained the insurance coverage required hereunder, should the net amount of insurance proceeds to insufficient to cover the cost of

24

restoration, the Lot 1 Owner shall not be responsible for any such insufficiency and shall not required to complete such restoration.

3.   SUBSTANTIAL DAMAGE AFTER DECEMBER 31, 2007. However, in case the Lot 1 Building shall be substantially damaged or destroyed by fire any hazard included within so-called extended coverage and all risk endorsements, or by casualty, on or after December 31, 2007, the Lot Owner shall have no obligation under this subparagraph to restore the Lot 1 Building.

4.   DEFINITION OF SUBSTANTIAL DAMAGE.  The terms "substantially damaged" and "substantial damage" as used in this paragraph shall have reference to damage of such character that the Lot 1 Building cannot reasonably be expected to be repaired or restored within one hundred twenty (120) days from the time that such repair or restoration work would be commenced.

## ARTICLE VII

## DEFAULT, SELF-HELP AND OTHER, REMEDIES

### SECTION 7.1.  COSTS.

Costs to perform an obligation shall be paid by the Parcel Owner obligated to perform.  If a Parcel Owner owes money to another Parcel Owner under this Agreement, the owed Parcel Owner shall submit a bill in reasonable detail to the owing Parcel Owner for its share.  The owing Parcel Owner shall pay the amount owed within thirty (30) days after receiving the bill, and the amounts not paid within the thirty (30) days shall bear interest of two percent (2%) a year over the "Prime Rate") (herein defined as the prime interest rate charged by large U.S. money center commercial banks as published Monday through Friday under "Money Rates" in The Wall Street Journal), but in no event above the maximum rate permitted by law.  Interest shall be calculated daily on the outstanding principal balance, and the interest rate shall change when the Prime Rate changes.  If The Wall Street Journal discontinues publishing the Prime Rate, the Parcel Owners shall agree on a substitute source for the Prime Rate.

### SECTION 7.2.  RIGHTS OF SELF-HELP.

If any Parcel Owner (hereinafter the "Defaulting Parcel Owner") fails to perform any of the provisions, covenants or conditions of this Agreement on its part to be performed (including, without limitation, the making of any payment to any other Party which the Defaulting Party has agreed herein to make or the payment of any real estate taxes or assessments) at the time and in the manner herein provided for the performance thereof, then any other Parcel Owner (hereinafter the "Non-Defaulting Parcel Owner") may give to the

25

BOOK 1874 PAGE 338

Defaulting Parcel Owner a notice (the "Default Notice") specifying the alleged default. The provisions of this Section 7.2 shall not apply to the failure of the Operator to perform its obligations under Section 3.1 hereof, which failure shall be governed by the provisions of Section 3.1(I).

In no event may a Parcel Owner terminate this Agreement if another Parcel Owner defaults. Any Parcel Owner may enjoin a Parcel Owner who defaults or who threatens to default, may enjoin an Occupant who violates or threatens to violate any term of this Agreement, and may seek any other available legal and equitable remedies for the default. A Parcel Owner may assess the costs of any suit or proceeding (including reasonable attorneys' fees) to prevent or remedy a default against the defaulting Parcel Owner or the violating Occupant. Any agreement which violates this Agreement shall be void as against this Agreement and may be set aside as it violates this Agreement on the petition of a Parcel Owner. Upon receipt of the Default Notice, the Defaulting Parcel Owner shall remedy the default, within the time period after the giving of the Default Notice as listed below:

| **OBLIGATION** | **TIME PERIOD** |
|---|---|
| granting utility easements | 60 days (then the requesting Parcel Owner has power of attorney to execute for the granting Parcel Owner) |
| initial construction of Common Areas | 60 days |
| restoring construction damage | 5 days |
| protecting during construction | 5 days |
| building maintenance | 60 days |
| remove trash from buildings | 3 days |
| rear building and canopy lights | 10 days |
| sidewalk sweeping | 7 days |
| removing ice and snow from sidewalks | 4 hours |
| paying real estate taxes and special assessments | any time after delinquency |

26

| | |
|---|---|
| paying other liens and charges against the Shopping Center Site | within five days before the foreclosure date |
| carrying insurance | 15 days |
| other obligations | 30 days |

A Defaulting Parcel Owner shall be in default ("Default") under this Agreement if, and only if, it shall fail to effect such remedial action within the time so limited. If the Defaulting Parcel Owner shall commence such remedial action within the applicable time but shall fail to complete the same within such time for reasons beyond its control, it shall not be deemed to be in default under this Agreement as long as it shall continue to use due diligence to complete such remedial action.

If a Defaulting Parcel Owner is in Default under this Agreement, the Non-Defaulting Parcel Owner may proceed to make payment or take such action as shall be necessary to remedy the Default for the account of the Defaulting Parcel Owner. Thereafter, on demand, the Defaulting Parcel Owner shall reimburse the Non-Defaulting Parcel Owner for the expenses (including counsel fees) incurred by the Non-Defaulting Parcel Owner in paying such sum or taking such action, together with all penalty sums reasonably required to be paid by it, if any, arising from such Default, with interest at the rate provided in Section 7.1. In the case of emergency and if the Defaulting Parcel Owner does not act in an expeditious manner, the Non-Defaulting Parcel Owner may exercise its rights hereunder without the necessity of written notice, as otherwise hereby required (but with telephonic notice, to the extent practicable).

At the time the Non-Defaulting Parcel Owner gives notice to the Defaulting Party as aforesaid, it shall also give notice of such default to all Mortgagee(s) holding a Mortgage(s) encumbering the Parcel owned by the Defaulting Parcel Owner of which the Non-Defaulting Parcel Owner has notice and such Mortgagee(s) shall have the right but not the obligation to cure such default, within the same period of time granted to the Defaulting Parcel Owner to so cure.

## SECTION 7.3. LIEN.

Any amount due under Section 7.2 from a Defaulting Parcel Owner to a Non-Defaulting Parcel Owner shall, upon recording of a notice of lien, thereafter be deemed to constitute a lien (the "Default Lien") against the Parcel of the Defaulting Parcel Owner.

The Defaulting Parcel Owner shall, at the request of the Non-Defaulting Parcel Owner, execute and acknowledge such instruments as the Non-Defaulting Parcel Owner deems necessary to confirm and record the existence of such Default Lien. Upon failure or refusal of the Defaulting Parcel Owner to execute and acknowledge any such instrument, the

27

442

Non-Defaulting Parcel Owner shall have full power of attorney with respect thereto. Upon the satisfaction of such obligations for which a notice of lien was recorded, the Non-- Defaulting Parcel Owner shall record an appropriate release of such notice of lien upon payment by the Defaulting Parcel Owner of the reasonable costs, including reasonable attorney's fees and filing fees, of preparing and recording such release.

### SECTION 7.4. REMEDIES CUMULATIVE.

Subject to any provision in this Agreement which states that a remedy is exclusive, any remedies herein specifically provided for are cumulative and shall be deemed additional to any and all other remedies to which a Parcel Owner may be entitled in law or in equity, and shall include the right of setoff and the right to restrain by injunction any violation or threatened violation by the other Parcel Owner(s) of any of the terms, covenants or conditions of this Agreement, and by decree, to compel performance of any such terms, covenants or conditions, it being agreed that the remedy at law for the breach of any such term, covenant or condition (except those, if any, requiring the payment of a liquidated sum) is not adequate.

### SECTION 7.5. FORCE MAJEURE.

Parcel Owners are excused from performing an obligation under this Agreement while delayed or prevented from performing that obligation by a cause not within its reasonable control (excluding financial inability to pay amounts due under this Agreement, but including breach of this Agreement by another Parcel Owner resulting in such delay or prevention), acts of God, fire, earthquake, flood, explosion, action of the elements,, war, invasion, insurrection, riot, mob violence, sabotage, inability to procure or general shortage of labor, equipment, facilities, materials, or supplies in the open market (if promptly ordered), failure of transportation, strikes, lockouts, action of labor unions, condemnation, requisition, and governmental prohibition or delay. To be excused under this Section 7.5, a delayed Parcel Owner shall notify the other Parcel Owners of such delay within five (5) days after the start of the delay.

### ARTICLE VIII

### NOTICES

### SECTION 8.1. PLACE AND MANNER OF NOTICE.

Every notice, demand, request, or other communication which any Parcel Owner is required or desires to give or make or communicate upon or to the other Parcel Owner, shall be in writing and shall be mailed by registered or certified mail, postage prepaid, return receipt requested to such address or addresses as the respective Parcel Owner shall at any time, or from time to time, designate by written notice to the other Parcel Owner(s) with a copy by registered or certified mail, postage prepaid, return receipt requested to the address

28

443

or addresses of the mortgagee(s) of such Parcel Owner of which the other Parcel Owner(s) are aware.

## SECTION 8.2. WHEN EFFECTIVE.

Any notice hereunder shall be deemed to have been received on the delivery date endorsed by the Postal Service on the return receipt, except that any notice which is (according to the terms of this Article) correctly addressed but which is returned by the Postal Service as undeliverable shall be deemed to have been received on the earliest date on which the Postal Service attempted delivery as indicated by Postal Service endorsement on the return receipt form.

## ARTICLE IX

## USE RESTRICTIONS

### SECTION 9.1. INTRODUCTION.

No Parcel or part of a Parcel may be used in violation of any restriction set forth in this Article IX, except as expressly provided as an exception to the restriction in this Article IX.

### SECTION 9.2. GENERAL.

In order to insure that the parking areas of the Shopping Center Site shall not be overburdened and to preserve the character of the Shopping Center Site as an active center of retail trade offering a variety of goods and services capable of attracting the widest possible spectrum of shoppers, neither Parcel Owner may, while the other Parcel shall be utilized substantially for retail purposes, use or suffer or permit the use of its Parcel for:

(A)   for the conduct of a business operation which regularly or with significant frequency sells merchandise of the types of qualifies now commonly known as "odd lot" , "close out", "clearance", "discontinued" , "cancellation", "second" , "factory reject", "sample", "floor model", "demonstrator", "obsolescent", "over-stock", "distressed", "bankruptcy", "fire sale" or "damaged"; or

(B)   for any purpose other than the conduct of a "retail business", so-called, which term shall mean the include mail-order catalog store operations of the Sears Roebuck and Montgomery Ward type, banks, finance company businesses, service and self-service dry cleaning and laundry businesses, shoe repair shops, barber shops, beauty shops, dance studios, health salons, and real estate brokerage, stock brokerage and insurance brokerage businesses, travel agencies, and private postal service businesses such as that operated by "mailboxes, Etc.", as well as ordinary retail businesses selling merchandise,

29

provided that the Lot 1 Building may be used for the operation of a movie theater; or

(C)   for a stand alone alcoholic beverage ("Bar") business of any kind; provided that any portion of Lots 2 and Lot 3 may be used for a Bar as part of a full service sit down restaurant;

(D)   for (a) a "carhop" or "carry-out" restaurant business without reasonably adequate inside seating facilities and which advertises that customers may consume food items while occupying vehicles parked on the parking areas of a Parcel; or (b) a banquet hall business which serves its guests on a special, catered basis as distinguished from a restaurant business open to the public at large on a random basis; or

(E)   for any "amusement operation," so-called, which term shall mean and include any activity consisting wholly or in substantial part of the furnishing of entertainment or amusement facilities, whether or not as a business or as a part or aspect of a business (including, without limitation, off-track betting parlors, "penny arcades," amusement games or devices (electronic or otherwise), strip-shows; and "discos", so-called), and live entertainment of any kind, provided that the foregoing shall not be construed to prohibit the operation of a movie theater in the Lot 1 Building or the use of amusement games or devices as a part thereof; or for a massage parlor, so-called or the business of the sale of so-called "adult" material such as, without limitation, magazines, books and photographs; or

(F)   for any business using a substantial amount of outdoor space in its regular operations, such as lumber yards, boat sales yards and the like; or

(G)   for any office or storage operations except: (a) office and storage operations which are a part of the conduct of a retail business in the shopping Center; and (b) professional offices.

(H)   the operation of a hotel, motel or tourist court; or

(I)   any automobile or truck sales, storage, service, fueling, washing or repair operation; or

(J)   for any propose or business which is noxious or unreasonably offensive because of the regular emission of noise, smoke, dust or odors.

30

445

## SECTION 9.3.    LOT 1.

Except as specifically provided in Exhibit D attached hereto and made a part hereof, Lot 1 may be used for (a) as a theater and public auditorium for use for telecasts, meetings, presentations of motion pictures, and other public presentations and entertainment as are generally shown in theaters; and (b) for other entertainment uses incidental to the primary use of the Lot 1 Building, including, without limitation, the incidental operation of video games and entertainment and vending machines; and (c) for the incidental retail preparation and sale of food, beverages and refreshments for consumption on the Lot 1 Building; provided, however, that no alcoholic beverages shall be sold unless Tenant at its own expense obtains all governmental licenses and permits required, and (d) for the incidental sale of promotional and related items such as records, audio and video tapes, compact discs, books, magazines, toys and novelties; provided, however, that not more than 200 square feet shall be devoted to such sales without Landlord's consent, which consent may be withheld in Landlord's sole and absolute discretion if such additional sales space would violate the exclusive use clauses of the leases of other tenants in the Shopping Center, and Lot 1 shall be occupied, owned and conveyed subject to the restrictions set forth in Exhibit D attached hereto.

## SECTION 9.4.    LOT 2.

Except as specifically provided in Exhibit D attached hereto and made a part hereof, Lot 2 may be used for the operation of a restaurant(s) or for any other lawful retail purposes, and Lot 2 shall be occupied, owned and conveyed subject to the restrictions set forth in Exhibit D attached hereto.

## SECTION 9.5.    LOT 3.

Except as specifically provided in Exhibit D attached hereto and made a part hereof, Lot 3 may be used for the operation of a restaurant(s) or for any other lawful retail purposes, and Lot 3 shall be occupied, owned and conveyed subject to the restrictions set forth in Exhibit D attached hereto.

## ARTICLE X

## TERMINATION

## SECTION 10.1.    TERMINATION DATE.

Except for the Parking Area Easements under Section 2.2(A), the Access Easements under Section 2.2(B), the Utility Easements under Section 2.2(C), and the Self Help Easements under Section 2.2(D), which are perpetual, and except for the restrictions set forth in Article IX of this Agreement which are governed by Section 10.2 hereof, this Agreement terminates on the Termination Date, which is the date, sixty (60) years from the date this

31

446

Agreement is recorded or any earlier date as agreed by all Parcel Owners, and shall continue thereafter for successive periods of ten (10) years, unless any Parcel Owner and the Mortgagee holding a mortgage(s) encumbering the Parcel of such Parcel Owner shall give notice to the other Parcel Owner, at least six (6) months prior to the expiration of the initial sixty (60) year period hereunder or any such ten (10) year extension period hereof, as the case may be, that this Agreement shall terminate as of the end of such initial period or extension period, as the case may be.

### SECTION 10.2. NOTICE OF EXTENSION OF RESTRICTIONS.

A notice of extension of the provisions of Article IX of this Agreement shall be recorded in the Worcester District Registry of Deeds prior to the expiration of thirty (30) years from the date of recording of this Agreement, and prior to the expiration of twenty (20) years from the date of recording of the first notice of extension hereunder, and thereafter prior to the expiration of the term of this Agreement. All such notice(s) of extension shall be in the form and contain the information required by M.G.L. c. 184, §27 (as the same may be from time to time amended) and shall be executed by all of the Parcel Owners.

### ARTICLE XI

### MISCELLANEOUS

### SECTION 11.1. NO WAIVER.

No waiver of any default by a Parcel Owner shall be implied from any omission by such Parcel Owner to take any action in respect to such default in the performance of any term, provision or covenant of this Agreement, nor shall such failure be deemed a waiver of any subsequent default in the performance of the same term, provision or covenants, or any other term, provision or covenant of this Agreement.

### SECTION 11.2. NO RELATIONSHIP OF PRINCIPAL AND AGENT.

Neither anything contained in this Agreement nor any act of the Parcel Owner(s) shall be deemed or construed by any Parcel Owner or by any third person to create the relationship of principal and agent, of partnership, of joint venture, or of any association between the Parcel Owners, nor shall anything contained in this Agreement or any act of the parties be construed to render either of the Parcel Owners liable for the debts or obligations of the other Parcel Owners, except as specifically provided herein.

### SECTION 11.3. INDEMNIFICATION AND MINIMUM INTERFERENCE.

Each Parcel Owner shall indemnify, defend (if requested), and hold the other harmless from all claims and losses, and all costs and expenses relating thereto (including

32

reasonable attorney's fees) connected with the use of its Parcel and the operations of the Occupants of its Parcel, unless the claim or loss results from the negligence of the other Parcel Owner or the Occupants of its Parcel. In addition, each Parcel Owner shall indemnify and hold the other harmless on account of any damage or injury caused by such Parcel Owner or by the Occupants of its Parcel as a result of exercising any of its rights or in performing any of its obligations hereunder, except to the extent that such other Parcel Owner or the Occupants of its Parcel shall have caused or contributed to any such damage or injury. Each Parcel Owner shall promptly notify the other Parcel Owner of any claim against the notifying Parcel Owner for which the notifying Parcel Owner intends to seek indemnification as provided herein. Each Parcel Owner further agrees that in exercising its rights hereunder it will do so in a manner so as to minimize the effect or interference with the rights of the other Parcel Owner in and to its Parcel. Each Parcel Owner before exercising any rights hereunder in any other Parcel shall first attempt to use its Parcel to accomplish the intended purpose provided such Parcel Owner can do so in a reasonable and financially practical manner.

### SECTION 11.4.  CAPTIONS.

The captions of the Articles and Sections of this Agreement are for convenience only and shall not be considered or referenced to in resolving questions of interpretation and construction.

### SECTION 11.5.  GOVERNING LAW.

This Agreement shall be construed, interpreted and applied in accordance with the laws of the Commonwealth of Massachusetts.

### SECTION 11.6.  AMENDMENT.

This Agreement may not be altered, modified, amended, renewed, extended or terminated unless by an instrument in writing duly executed by the parties then bound by this Agreement and the holders of all mortgages encumbering the Parcels.

### SECTION 11.7.  COUNTERPARTS.

Several copies of this Agreement shall be signed, and each shall be deemed an original.

### SECTION 11.8.  NO GIFT OR DEDICATION.

Nothing herein contained shall be deemed to be a gift or dedication of any portion of the Shopping Center Site to the general public or for any public purposes whatsoever, it being the intention of the Parties that this Agreement shall be strictly limited to and for the purposes herein expressed.

33

### SECTION 11.9.  COVENANTS RUN WITH THE LAND.

It is intended that the covenants and agreements set forth in this Agreement shall be construed as both covenants and conditions, and that they shall run with the land and be affirmatively enforceable against the Parcel Owners (but subject to the provisions of the exculpation clause set forth in Article IV above), the Parcels and any grantee, personal representative, heir, successor and assign thereof, and shall continue to be easements, servitudes, charges and encumbrances appertaining to and upon, and covenants benefiting, binding and running with the land, buildings and improvements now or later existing within the Shopping Center Site.

### SECTION 11.10.  APPROVALS.

No Parcel Owner may unreasonably withhold or delay its approval under this Agreement unless this Agreement expressly provides that its approval is discretionary. Unless a different time limit is expressly provided in this Agreement, a Parcel Owner's approval shall be given or withheld within thirty (30) days after it receives the item to be approved, or the item is deemed approved by that Parcel Owner.  If a time period shorter than thirty (30) days is provided, the shorter period shall be stated in the request for approval.  Failure to state the shorter time period means that a Parcel Owner has thirty (30) days to give or withhold its approval.

### SECTION 11.11.  TITLE.

This Agreement is superior to all liens and encumbrances on the Shopping Center Site except those title exceptions listed in Exhibit F, but the Parcel Owner's rights under Section 7.3 (regarding lien rights) are subordinate to any and all mortgages on any Parcel.  The Parcel Owners represent and warrant to each other that the title exceptions listed in Exhibit F do not interfere with or prevent the exercise of the rights and easements granted hereunder, and each Parcel Owner agrees, for the benefit of the other, not to enter into any modification of existing leases or new leases which will permit uses that violate the use restrictions referenced in Article IX hereof.

### SECTION 11.12.  ESTOPPEL CERTIFICATE.

At the request of any other Parcel Owner, each Parcel Owner shall certify to the requesting Parcel Owner's prospective mortgagee or prospective assignee or transferee, whether, to the certifying Parcel Owner's knowledge: (i) there is any default under the Agreement (and, ff any, describing the default); (ii) the Agreement has been assigned, modified or amended (and ff so, describing it); and (iii) the Agreement as of that date is in full force.  Such certification waives any claim of the certifying Parcel Owner based on facts contrary to those asserted in the certificate against any bona fide encumbrancer or purchaser for value to whom the certification was made, and who acted in reasonable reliance on the certificate and without knowledge of the contrary facts.

34

### SECTION 11.13. RIGHTS AND OBLIGATIONS OF SUCCESSOR AND ASSIGNS.

The rights in this Agreement are appurtenant to each Parcel and benefit each Person who qualifies as a Parcel Owner under this Agreement. The obligations in this Agreement are equitable servitudes on and covenants running with each Parcel and bind personally each Person who qualifies as a Party under this Agreement (and Article IX regarding use binds the Occupants of the Parcels), except as otherwise provided herein.

### SECTION 11.14. PARTIAL INVALIDITY.

If this Agreement is invalid or unenforceable in part or under certain circumstances, the rest of this Agreement and its application under other circumstances is valid and enforceable to the fullest extent permitted by law.

[END OF PAGE]

35

IN WITNESS WHEREOF, this instrument has been executed as a sealed instrument as of the day and year first above written.

TRUSTEES OF NORTHSIDE REALTY TRUST

Leslie S. Carey, as Trustee of
Northside Realty Trust and not
individually


COMMONWEALTH OF MASSACHUSETTS

Worcester , ss.                                                    April 7, 1997

Then personally appeared the above-named Leslie S. Carey, as Trustee of
Northside Realty Trust, as aforesaid, and acknowledged the foregoing instrument to be her
free act and deed, before me

Notary Public Marshall A. Gould
My Commission expires: 8-31-2001

36

451



GREY AREA is "Protected Area"



North Arrow

| Stage Coach Plaza | LOT−1 REA |
|---|---|
| Westborough, Massachusetts | EXHIBIT PLAN |
| **New England Management & Realty Corp.** | Scale: 1"= 200'    Date: FEBRUARY 20, 1997 |
| 55 New York Avenue Framingham, Massachusetts | File No.:  0045028M |

BEALS AND THOMAS, INC.



Stage Coach Plaza
Westborough, Massachusetts

New England Management
& Realty Corp.
55 New York Avenue
Framingham, Massachusetts

North Arrow

# LOT-2 & 3 REA EXHIBIT PLAN

Scale: 1"= 200'          Date: FEBRUARY 20, 1997

File No.:  0045028M

BEALS AND THOMAS, INC.



BOOK 18745 PAGE 352



UTILITY LEGEND:
STORM DRAIN
SEWER
WATER
ELECTRIC, TELEPHONE
& CABLE
GAS

HOYTS
CINEMA

LOT-1

MILK STREET

RETAIL/
RESTAURANT

LOT-2

LOT-2

LOT-3

PARCEL-4

RESTAURANT

BOSTON-WORCESTER TURNPIKE

North Arrow

**Stage Coach Plaza**
Westborough, Massachusetts

**New England Management
& Realty Corp.**
55 New York Avenue
Framingham, Massachusetts

# UTILITY SERVICES EXHIBIT PLAN

Scale: 1"= 250'          Date: MARCH 20, 1997

File No.:   0045028M

BEALS AND THOMAS, INC.

BOOK 18745 PAGE 353

mss\nrthside\restrict.2

## EXHIBIT D

### RESTRICTIONS

The following restrictions shall be applicable to Lot 1, Lot 2, and Lot 3:

1.      Recognizing that certain uses create extraordinary demands for the parking capacity at the Shopping Center, no portion of the Protected Area shall be operated as or for:  (i) a table service restaurant, (ii) any food service facility in excess of 3,500 square fee, or (iii) any facility utilizing an on-premises alcoholic beverage license.  In addition, Landlord shall not permit the operation of a bowling alley, pool hall, skating rink, video store, children's entertainment complex or facility or game room, adult entertainment facility (including, but not limited to an adult bookstore, video store, nude or semi-nude entertainment facility), health club, gym, aerobics or fitness studio in the Shopping Center, or permit the construction of any additional building in any portion of the Protected Area or any expansion of the Shopping Center within the Protected Area. The respective Owners agree  that all tenants of the Shopping Center shall be bound by the terms of this Section.

2.      No sales of merchandise of any kind and no carnivals or Shopping Center promotions shall be permitted in the parking areas of the Shopping Center.

The following restrictions shall be applicable to Lot 2 and Lot 3:

3.  No portion of Lot 2 or Lot 3 shall be used as a movie theater or for the staging of shows for profit.

4.      The Lot 2 Owner and Lot 3 Owner will not sell or permit to be sold popcorn in or from any premises (a) within any so-called food court (or the like) located in the Shopping Center, (b) fronting on the corridors and pathways leading between the Late Lighting Area and the Lot 1 Building, or (c) within two hundred (200) feet of any wall of the Lot 1 Building, or in or from any part of the sidewalks, parking areas, any mall areas, or other common areas of the Shopping Center, which prohibition shall not apply to the incidental sale thereof by the operator of any store or restaurant in the Shopping Center within such store or restaurant if and to the extent permitted by such store's or restaurant's occupancy agreement executed heretofore; and

ATTEST: WORC. Anthony J. Vigliotti, Register

456

# Exhibit F

# COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
### DEPARTMENT OF THE TRIAL COURT

19 JUL -8 PH 2:00

The undersigned hereby represent(s):

*that*    the land hereinafter described was taken on December 28, 2018 for non-payment of taxes by the Town of Westborough in the County of Worcester by instrument dated December 28, 2018 and recorded on January 16, 2019 at the Worcester District Registry of Deeds in Book 59943, Page 371.

*that*    more than six months from the date of said taking has elapsed and no redemption has been made;

*that*    the proceedings aforesaid have been conducted according to law;

*that*    the instruments were recorded or registered within sixty (60) days from the date of taking;

*that*    the assessed value of said land and building is $5,239,100.00;

*that*    said land is described as a certain parcel of land situated in the Town of Westborough, County of Worcester and said Commonwealth, bounded:

(Description must be same as in tax deed)

PROPERTY:    Land and any building(s) thereon      CONTAINING 29.336 AC (more or less)
LOCATION:    231 Turnpike Road
ASSESSORS:    32-48-0
REGISTRY:    Worcester District Registry of Deeds Book 19369, Page 75

*that*    the following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:

**Westborough SPE, LLC**

Wherefore your plaintiff(s) pray(s) that the rights of all persons entitled to redeem from said proceedings may be foreclosed: that said Court enter a judgment that the title of the plaintiff to said land under said proceedings is absolute and that all rights of redemption are barred; and for such other and further relief as may seem meet and proper to said Court.

Name   _____   Street   34 West Main Street _____
      Robert Haley, Treasurer/Collector    City or Town   Westborough, MA 01581 _____

On this __23nd__ day of ___May___, 2019 personally appeared before me the within named _Robert Haley_ known to me to be the signer of the foregoing complaint, and made oath that the statements therein contained so far as made of <u>his</u> own knowledge are true and so far as made upon information and belief that <u>his</u> believes them to be true.

Before me: (PRINT) Susan A. Bush _____
Notary Public: (SIGN) _____
My Commission Expires: 9-9-2022 _____

*(See over)



SUSAN A. BUSH
Notary Public
Commonwealth of Massachusetts
My Commission Expires September 9, 2022

458

No.

**Complaint To Foreclose**

**Tax Lien**

_____

*Examiner*

**LET JUDGMENT ISSUE**

_____

*Justice*

From the Office of

Dawn E. Bloom
Berenson & Bloom
116 Pleasant Street, Suite 340
Easthampton, MA 01027
BBO# 659839

LCP-5-8/88

NOTE:

*60 days after July 12, 1933
30 days before July 12, 1933

CAVEAT:

Notice of this complaint should be filed in the local registry upon the proper form (LCN2) as soon as complaint is entered in this office.

# Exhibit G

[SEAL] Case 23-40709 Doc 1268 Filed 08/28/26 Entered 08/23/26 17:25:00 Desc Exhibit Document Page 2 of 461 of 1000



| JUDGMENT IN TAX LIEN CASE | 19 TL 000768 | Commonwealth of Massachusetts Land Court Department of the Trial Court |
|---|---|---|

**CASE NAME**

2022 00008115
Bk: 66983 Pg: 53
Page: 1 of 1  01/21/2022 10:39 AM  WD

Town of Westborough
v.

, Plaintiff(s)

Westborough SPE, LLC

, Defendant(s)

After consideration by the Court, it is **ADJUDGED** and **ORDERED** that all rights of redemption are forever foreclosed and barred under the following instruments:

| Land Type | Instrument Date | Book Number | Page Number | Document Number | Certificate of Title Number |
|---|---|---|---|---|---|
| Recorded | 12/28/2018 | 59943 | 371 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

This Judgment must be recorded and/or registered by the Plaintiff in the appropriate Registry of Deeds and/or Registration District pursuant to G. L. c. 60, § 75.

By the Court: Deborah J. Patterson

Attest:

A TRUE COPY ATTEST:

Deborah J. Patterson
RECORDER

Deborah J. Patterson

DATE ENTERED: 01/05/2022

RECORDER: Deborah J. Patterson

063JUDTL (01-2020)    www.mass.gov/courts/landcourt    Printed: 01/05/2022 9:33:10 AM    Page 1 of 1

ATTEST: WORC. Kathryn A. Toomey, Register

# Exhibit H

# F

# The Commonwealth of Massachusetts
### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

## Foreign Limited Liability Company
## Application for Registration
(General Laws Chapter 156C, Section 48)

Federal Identification No.: 94-3286768

(1a) The exact name of the limited liability company:

## WESTBOROUGH SPE LLC

(1b) If different, the name under which it proposes to do business in the Commonwealth of Massachusetts:

(2) The jurisdiction* where the limited liability company was organized:

## Delaware

(3) The date of organization in that jurisdiction: 10/22/1997

(4) The general character of the business the limited liability company proposes to do in the Commonwealth:

Acquire, own, develop, construct, rehabilitate, improve, maintain, finance, manage, operate, lease, sell, convey, assign, mortgages and otherwise deal with real estate, and to own interests in businesses engaged in any of the foregoing, and to carry on any related lawful business, trade, purpose or activity.

(5) The business address of its principal office:

1241 Deer Park Ave, Suite 1 #1051
North Babylon, NY 11703

(6) The business address of its principal office in the Commonwealth, if any:

N/A

(7) The name and business address, if different from principal office location, of each manager:

Denise Edwards


Lolonyon Akouete

463

(8) The name and business address of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court:

| NAME | ADDRESS |
|---|---|
| Denise Edwards | 1241 Deer Park Ave, Suite 1 #1051 North Babylon, NY 11703 |
| Lolonyon Akouete | 1241 Deer Park Ave, Suite 1 #1051 North Babylon, NY 11703 |

(9) The name and street address of the resident agent in the Commonwealth:

Universal Registered Agents, Inc.          4 Central Street
Woburn, MA 01801

(10) The latest date of dissolution, if specified: _____

(11) Additional matters:

Signed by (the or from one authorized signature)

I **Ashton Villegas on behalf of Universal Registered Agents, Inc.**

resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. c156C § 48 (or attach resident agent's consent hereto).

* Attach a certificate of existence or good standing issued by an officer or agency properly authorized in home state.



# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-EIGHTH DAY OF NOVEMBER, A.D. 2022.

Jeffrey W. Bullock, Secretary of State

2811561 8300

SR# 20224104318

Authentication: 204939237

Date: 11-28-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

465

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

December 12, 2022 03:52 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

# Exhibit I

LAND COURT
COMMONWEALTH OF MASSACHUSETTS
2023 JAN -4 PM 2: 20

WORCESTER, ss.                                    LAND COURT
                                                  19 TL 000768

_____
                                    )
THE TOWN OF WESTBOROUGH,            )               │
                                    )
              Plaintiff,            )
                                    )
       v.                           )
                                    )
WESTBOROUGH SPE, LLC                )
                                    )
              Defendant.            )
_____)

## DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT

Defendant, Westborough SPE, LLC ("WSPE"), hereby moves this Honorable Court to vacate the judgment foreclosing WSPE's right of redemption dated January 5, 2022.

### I.    FACTS

Until January 5, 2022, WSPE was the record owner of property located at 231 Turnpike Road in Westborough, Massachusetts, Worcester County Registry of Deeds at Book 19369, Page 75 (the "Property"). *See* Exhibit 1, *Title Examination Report Prepared by Michael H. Delaney, Esq. (Jul. 10, 2019)*, at 1.

WSPE was formed as a Delaware limited liability company on October 22, 1997. *See* Exhibit 2. On October 29, 1997, WSPE subsequently registered in Massachusetts as a foreign limited liability company. *See* Exhibit 3. According to its annual reports, WSPE's sole business purpose was to serve as the owner the Property. *See* Exhibit 4, (the "Annual Reports") (all providing that WSPE's business purpose is to serve as "owner of a theatre in Westborough, Massachusetts").

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

From 1997 to 2017, WSPE leased the Property to Interstate Theatres Corporation for use as a movie theatre. *See* Exhibit 1, at 6.

Babcock & Brown Administrative Services, Inc. ("BBAS") served as manager of WSPE since WSPE's formation in 1997. Beginning in 1997, Frances Jan Blaustein Scholes ("Jan"), then-president of BBAS, was authorized to execute, acknowledge, deliver, and record any recordable instrument on behalf of WSPE purporting to affect an interest in real property. *See* Exhibit 2. According to Annual Reports filed with the Massachusetts Secretary of Commonwealth, Dyann Blaine ("Dyann") was also authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of WSPE. *See* Exhibit 4.

In 2004, Jan suffered her first major stroke, which left her physically and mentally incapable of properly executing her responsibilities as manager and real estate signatory for WSPE to their full extent. Thereafter, Jan reduced her responsibilities and eventually retired from BBAS in 2007. Upon Jan's retirement, Dyann took over Jan's roles and responsibilities for both BBAS and WSPE.

On November 20, 2007, Dyann filed a Certificate of Withdrawal in the Commonwealth of Massachusetts. *See* Exhibit 5. On April 24, 2008, Dyann Blaine also filed a Certificate of Withdrawal in the Commonwealth of Massachusetts for BBAS. *See* Exhibit 6, *Foreign Certificate of Withdrawal of BBAS.*

Babcock & Brown Limited ("BBL") went into liquidation in 2009. In a September 27, 2018 Annual Report to Creditors and Noteholders, Liquidator David Lombe addressed the Property and questions as to its ownership. *See* Exhibit 7, *Annual Report to Creditors and Noteholders of BBL*, at 3. The Liquidator states that after investigation and enquiries within the

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Babcock & Brown Group, he determined that BBAS "managed the property on behalf of a third party and the property is not owned by BBL."

On December 28, 2018, the Turnpike Road Property was taken by the Town of Westborough (the "Town") for non-payment of real estate taxes. *See* Exhibit 8, *Foreclosure Complaint by Town of Westborough* (the "Complaint"). On July 8, 2019, the Town filed the Complaint with the Massachusetts Land Court that is the basis of this lawsuit. The Complaint provides as follows:

> [T]he following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:

**Westborough SPE, LLC**

The Complaint does not list the address of Westborough SPE, LLC, nor does it identify Jan as a person who has an interest in the Property.

The title examination report as filed with this Court on August 26, 2019, lists the equity owner and lessee, respectively, as the parties entitled to notice:

> Westborough SPE, LLC
> c/o Babcock & Brown Administrative Services, Inc. MANAGER
> 2 Harrison St, 6th Floor
> San Francisco, CA 94105-0000
> ATT'N: Dyann Blaine and/or F. Jan Bluestein
>
> Interstate Theatres Corporation
> One Exeter Plaza
> Boston, MA 02116

According to the Court docket, notices of the foreclosure proceedings were sent on September 22, 2020. This included a notice to Jan at 151 E. 31st, Apt. 28B, New York, NY 10016. On October 21, 2020, proof of unsuccessful service was filed with this Court related to such notice. Although Jan once lived at that address, she moved out in 2015 and never returned. On April 8, 2021, another notice by certified mail was sent to Jan,

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

470

this time at a different address: 888 Avenue of the Americas, New York, NY 10001. This notice was also returned as unsuccessful and filed with the Court on May 4, 2021.

On September 7, 2021, a registered process server attempted to serve Jan "by leaving at the last and usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein, 34 Stern Lane, Atherton, California 94027 with a "Limited Assistance Representation (LAR) Document. Document placed at front gate with knowledge of male who answered electronic intercom." *See* Exhibit 9.

In 2006, Jan and her then-husband Myron Scholes ("Myron") purchased the property at 34 Stern Lane, Atherton, California 94027 (the "Stern Lane Property"), as joint owners. Jan and Myron lived together at the Stern Lane Property until 2013 when Myron filed for divorce, prompting Jan to move out of the Stern Lane Property and never return. On September 4, 2015, Jan and Myron, as joint owners, conveyed the Stern Lane Property to Myron individually pursuant to the terms of their divorce agreement.

On April 2, 2019, Jan's son Peter Blaustein ("Peter") filed a petition for appointment of himself as Jan's conservator and guardian with the Hawaii Third Circuit, Kona Division. *See* Exhibit 10, *Printable Docket Record for Jan's Conservatorship and Guardianship Proceeding*. On July 8, 2019, the Hawaii Third Circuit granted Peter's petition, finding that Jan "is an incapacitated person," that a "basis exist[s] for appointment of a conservator and guardian," and that Peter is qualified to serve in both capacities. (text for June 3, 2019 docket entry). Jan currently lives in an assisted living facility in New Mexico.

On January 5, 2022, this Court issued its final judgment of foreclosure in connection with the Town's tax taking of the Property.

On November 22, 2022, WSPE filed a Certificate of Revival in Delaware. *See* Exhibit 11, *WSPE Certificate of Revival - Delaware*. As of November 28, 2022, WSPE is duly formed and in good standing in Delaware. *See* Exhibit 12, *Delaware Good Standing of WSPE*. On December 12, 2022, WSPE filed an Application for Registration as Foreign Limited Liability Company in Massachusetts. *See* Exhibit 13, *Foreign LLC Application for Registration of WSPE*.

Shortly after reviving good standing status in Delaware and Massachusetts, WSPE filed a claim with the California Unclaimed Property Division ("CUPD") for approximately $1.2 million. *See* Exhibit 14. On December 14, 2022, the CUPD sent a reply letter to WSPE requesting additional information pursuant to the claim.

## II.     APPLICABLE LAW

Motions to vacate a decree of foreclosure must be commenced within one year of the final judgment. M.G.L. c. 60, sec. 69A. Such motions may be granted if the court "after 'careful consideration, finds that to do so is required to accomplish justice.'" *Tallage LLC v. Meaney*, 2015 WL 4207424 (2015) (quoting *Town of Sharon*, 18 Mass. App. Ct. at 542)). Tax redemption statutes "are remedial in nature and are therefore 'interpreted liberally in favor of a person seeking to recover his land.'" *City of Pittsfield v. Randall*, 63 Mass. App. Unpub. 1107 (2005) (quoting *Union Trust Co. v. Reed*, 213 Mass. 199, 201 (1912)). This Court has recognized that "'the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interests.'" *Tallage LLC*, 2015 WL 4207424. When the owner of the property pays the taxes, the statute has served its purpose.

Within the one-year period, courts may use their discretion to vacate a judgment for various reasons, including incapacity or mental illness. *Town of Sharon v. Kafka*, 18 Mass. App.

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Ct. 541, 543 (1984). In *Tallage LLC v. Meaney*, this Court vacated its foreclosure judgment after the property owners filed a motion to vacate within one year of the Court's foreclosure decree, but after the property had been sold to a third party. *See generally* 2015 WL 4207427 (June 26, 2015). After a fact-intensive inquiry, the Court concluded that the property owners (the Meaneys) were overwhelmed due to health issues in the family. The Court credited the Meaneys' claim that they acted promptly to resolve the overdue water and sewer bills once they were able to focus on the past-due notices. The Court acknowledged that notice was delivered to the property owners and that they should have been more attentive; however, the Court determined that "extraordinary circumstances"—including that the owners were "overwhelmed with Mrs. Meaney's and the children's health issues at the time the notices were sent"—"justif[ied] this Court's exercise of discretion to vacate the foreclosure."

This Court has vacated foreclosure judgments without a showing of "extraordinary circumstances" when property owners were properly notified of the foreclosure proceedings, the owners filed a motion to vacate the foreclosure in the one-year period following the foreclosure decree, and the town has not transferred the property to a third party. *See, e.g., City of Pittsfield v. Randall*, 63 Mass. App. Ct. 1107 at *2 (2005) (unpublished opinion) (affirming vacation of foreclosure judgement where defendant received proper notice and "made no real effort to redeem the property until one month after a default decree had entered," without explanation for delay).

If the property owner files its motion to vacate after the one-year anniversary of the final foreclosure decree, this Court's discretion to vacate the foreclosure is typically limited to situations in which the property owner has been deprived of due process. *See Town of Russell v. Barlow*, 2016 WL 3745960, at *13 (Mass. Land Ct. July 13, 2016) ("While courts are consistent

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

in applying the statutory deadline, strict application of the one-year limitation may be excused when there has been a denial of due process.").

In *Jones v. Flowers*, the U.S. Supreme Court addressed a situation in which a property owner filed a motion to vacate after the town sold the property to a third party and after the time limit for post-sale redemption had passed. *See* 547 U.S. 220, 224 (2006). Even though the town published notice of the foreclosure sale in a local newspaper, the town attempted to serve the property owner by two separate certified mail letters sent to the address of the foreclosed property, and the property owner's ex-wife continued to live at the property at the time the certified mail envelopes were returned to the town unclaimed, the Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." The Court declined to prescribe the specific steps that the town should have taken to satisfy the property owner's due process rights, but determined that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals."

## III.   ANALYSIS

As cases such as *Tallage LLC v. Meaney* and *City of Pittsfield v. Randall* demonstrate, courts have broad discretion to vacate a foreclosure decree when a motion to vacate is filed within one year of the judgement. As cases such as *Town of Russell v. Barlow* explain, the courts' discretion to vacate a foreclosure decree after one year is typically limited to instances of due process violations. In the instant case, WSPE files the motion to vacate within the one-year period, and Jan's strokes which significantly affected her physical and mental abilities should, in themselves, support the Court's exercise of discretion to grant the Motion to Vacate.

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

In addition to Jan's serious health issues, there is also a due process violation in this case because Jan was never properly served with notice of the foreclosure proceedings. After receiving two notices of unsuccessful service via U.S. certified mail, the Town should have, pursuant to *Jones v. Flowers*, taken additional steps to confirm Jan's correct physical address before "serving" notice on a male individual who lived at Jan's former residence six years after Jan deeded this property to her ex-husband pursuant to a divorce, especially when the deed and the divorce proceedings are public records that are easily accessible online.

The combination of WSPE's timely filing within the one-year period, Jan's serious health issues, and the due process violation related to improper service provides ample support for the Land Court's exercise of discretion to vacate the foreclosure decree.

## A. **Discretionary Factors**

We respectfully ask the Court to consider the incidence of Jan's strokes, which left her physically and mentally incapacitated, as an extraordinary circumstance that significantly interfered with Jan's ability to focus on the past-due tax notices. Like the property owner in *Tallage LLC v. Meaney*, 2015 WL 4207427, Jan's serious health issues interfered with her ability to devote the necessary time or attention to addressing the past due taxes at the time these notices became due and during the initial foreclosure proceedings. On the date the Complaint was filed with this Court (July 8, 2019), Jan's son Peter Blaustein was appointed her conservator and guardian. Like the Meaneys, Jan took prompt action to respond to the foreclosure proceedings as soon as she was ready and able to do so. Once Jan was informed of the proceedings and the opportunity to reclaim the Property on behalf of WSPE, she took action to connect with those who were in a position to assist WSPE. Within the past two months, WSPE restored its "good standing" statuses in Delaware and Massachusetts, filed a claim for $1.2 million currently held

by the California Unclaimed Property Division ("CUPD"), and retained counsel to prepare this Motion to Vacate and other pleadings. WSPE reasonably anticipates that this $1.2 million will be more than enough to pay the past-due taxes, utility charges, and other fees required to properly exercise its right of redemption. WSPE is diligently pursuing the claim with the CUPD and anticipates that the CUPD will release these funds to WSPE within the next 90 days (on or before April 1, 2023).

Because the Property has not yet been transferred to a third party, only the Town and WSPE's interests should be considered as the Court weighs the various factors at issue in this case. As courts have indicated, tax redemption statutes should be interpreted in favor of the party seeking to recover the property. It is in WSPE's best interest to restore their title to the Property, and it is in the Town's best interest to receive full payment of the past-due taxes and fees that gave rise to these foreclosure proceedings in the first place.

## B. Due Process Violation

In addition to the discretionary factors discussed in **Section III.A**, above, there is also a due process violation in this case because the Town never properly served Jan with notice of the foreclosure proceedings. As was the case in *Jones v. Flowers*, two U.S. certified mail packages (with two different New York addresses) intended to notify Jan of the proceedings were returned "undeliverable." The undelivered certified mail packages did not constitute sufficient service, as the Court docket indicates "unsuccessful service" for each package. The Town then hired a process server to attempt to serve Jan at a third address, 34 Stern Lane in Atherton, California, which the process server represented to be Jan's "last known address."

The process server indicated he left the notice at the front gate of 34 Stern Lane, with knowledge of a man who was heard over the intercom. Because Jan is not a man, the process

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

server's indication of "service" based on a male presence at the address should have informed the town that proper service was not made, and the Town should have taken additional steps to determine if this was Jan's residence considering the new information. We respectfully request this Court to take judicial notice that Jan's divorce from her ex-husband, Myron,[1] and the 2015 deed of the 34 Stern Lane property from Myron and Jan as joint owners to Myron individually are matters of public record.[2] If the Town had taken the next reasonable steps to attempt to confirm Jan's presence at the 34 Stern Lane property, the information would have revealed that (a) Jan no longer lived at the address, (b) Jan deeded her interest in the property to Myron approximately 6 years earlier, and (c) the only individual that the process server actually "served" was Myron.

After the certified mail notices were returned undelivered in *Jones v. Flowers,* the U.S. Supreme Court determined that this was insufficient notice, but declined to prescribe the specific steps that a town should take to satisfy a property owner's due process rights. Instead, the Court provided that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *See* 547 U.S. 220, 234 (2006). *Jones v. Flowers* is a residential foreclosure case in which the town attempted to serve the property owner at the exact property address that was the subject of the foreclosure—in that case, the town was found to have violated the property owner's due process rights by failing to take additional steps to determine his address after serving notice on the owner's daughter who was living in the property. In a commercial foreclosure case such as this, the Town should be held to the same (if not a higher) standard of due diligence in determining a proper service address for the property owner or

---

[1] The record of the divorce is accessible on the San Mateo Superior Court website, at https://odyportal-ext.sanmateocourt.org/Portal-External/Home/Dashboard/29 (insert "Scholes, Frances" into the search bar).
[2] The 2015 deed is accessible on the San Mateo County Clerk – Recorder Online Index, at https://apps.smcacre.org/recorderworks/ (insert "Scholes" into the Name search box).

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

representative thereof. Because the individual sought to be served in a foreclosure of abandoned commercial property is always going to reside at an address different then the property subject to the foreclosure proceedings, the Town must exercise some level of due diligence to determine the address of the property owner or the property owner's representative. While the town took some steps to locate Jan by identifying one of her former residential addresses (34 Stern Lane in Atherton), they should have conducted a more logical and diligent effort to locate Jan's current mailing address.

The Town should not be able to meet its standard of due diligence under *Jones v. Flowers* by simply picking multiple addresses that were connected to Jan at some distant point in the past without any indication that Jan was actually residing at any of these addresses. Delivering notice of the foreclosure proceedings to an unknown, unidentified, and unseen male at the Stern Lane Property was no more likely to apprise Jan of the proceedings than if notice were left at a random location. Accordingly, Jan was never properly served with notice of the foreclosure proceedings, which constitutes a due process violation pursuant to *Jones v. Flowers*.

## IV. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Defendant Westborough SPE LLC respectfully moves the Court to vacate the judgment entered against them, allow them to pay outstanding taxes and fees on the Property, and exercise its right to redeem the Property.

Respectfully submitted,

WESTBOROUGH SPE,

LLC By its manager,

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
loloact2@gmail.com
(443) 447-3276

Dated:  January 4, 2023

# Exhibit J

## 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.

- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
-
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
-
-

### Property Information

Turnpike Road
Westborough
RECORD

| All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition |

### Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL  33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA  01040
- Phone Number
- (413)322-8318

**More Party Information**

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA  02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code
- 695421

- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA  02109
- Phone Number
- (617)909-4511

**More Party Information**

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

Party Attorney

**More Party Information**

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

Party Attorney

**More Party Information**

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

Party Attorney

**More Party Information**

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

Party Attorney

**More Party Information**

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

Party Attorney

**More Party Information**

**Interstate Theaters Corporation**
- Defendant

Party Attorney

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|------|---------|----------|------|-------------|--------|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|-------------|-------------|-------------|--------------|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |

| <u>Docket<br>Date</u> | *Docket Text* | <u>Amount<br>Owed</u> | *Image<br>Avail.* |
|---|---|---|---|
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020  Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted:  Motion scheduled on:<br>          06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff intends to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued.  Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 11/16/2020. | | |
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN   37920<br>Tracking Number: 71901706197000959805 | $59.75 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
|  | Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA   02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA   94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA   94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY   10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 |  |  |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 |  |
| 10/01/2020 | Successful Service<br>Method     : Certified Mail<br>Issued     : 09/22/2020<br>Service    : Service<br>Served     : 09/26/2020<br>Return     : 09/30/2020<br>On         : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason     : Successful<br>Comment   :<br>Tracking #: 71901706197000959829 |  | Image |
| 10/01/2020 | Successful Service<br>Method     : Certified Mail<br>Issued     : 09/22/2020<br>Service    : Service<br>Served     : 09/28/2020<br>Return     : 09/30/2020<br>On         : Interstate Theaters Corporation<br>Signed By :<br>Reason     : Successful<br>Comment   :<br>Tracking #: 71901706197000959812 |  | Image |
| 10/01/2020 | Successful Service<br>Method     : Certified Mail<br>Issued     : 09/22/2020<br>Service    : Service<br>Served     : 09/28/2020<br>Return     : 10/01/2020<br>On         : Interstate Theaters Corporation<br>Signed By :<br>Reason     : Successful<br>Comment   :<br>Tracking #: 71901706197000959805 |  | Image |
| 10/06/2020 | Tear Sheet Received. |  |  |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/30/2020<br>Return : 10/02/2020<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued. Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY 10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 04/08/2021<br>Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | Image |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service | $11.96 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br> Method : Certified Mail<br> Issued : 06/10/2021<br> Service : Service<br> Served :<br> Return : 09/21/2021<br> On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br> Signed By :<br> Reason : Unsuccessful<br> Comment : no such number<br> Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023 Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023 Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on: 01/19/2023 10:00 AM Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/09/2023  Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on: 02/09/2023 02:00 PM Has been: Rescheduled to February 23, 2023 at 2:00pm Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted. Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/23/2023  Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on: 02/23/2023 02:00 PM Has been: Rescheduled Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm. Judge: Kelley, Ellen M. | | |
| 02/23/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 03/23/2023  Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed  by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Conervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on: 03/23/2023 02:00 PM Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled Judge: Speicher, Hon. Howard P. Events: Date: 05/16/2023  Time: 10:15 AM Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | Image |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintiff'f (First) Request for Production of Documents,filed | | |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023 Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/17/2023 02:00 PM<br>Has been: Rescheduled For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023 Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | Image |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |
| 08/31/2023 | Notice of Docket Entry:<br>Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter.<br>Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>08/31/2023 02:00 PM<br>Has been: Not held per request of the defendant.<br>Hon. Howard P. Speicher, Presiding | | |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- ## Money on Deposit

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- Money Distributed by Court

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

# Exhibit K

Case 1:23-cv-12017 Document 3-2 Entered 08/23/23 17:45:03 Desc Main
Document Page 492 of 1000

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MASSACHUSETTS

--------------------------------X

**WESTBOROUGH SPE LLC**, a Delaware   :      Civil Action #:
limited liability company,

                 :      _____

           *Plaintiff.*        :

               v.          :

**TOWN OF WESTBOROUGH**, *a*    :
*municipal corporation of The*
*Commonwealth of Massachusetts*;    :
**SHELBY MARSHALL**, *individually*
*and in the official capacity as Select*    :
*Board Member*; **IAN JOHNSON**,
*individually and in the official capacity*    :
*as Select Board Member*; **ALLEN**
**EDINBERG**, *individually and in the*    :
*official capacity as Select Board*
*Member*; **SEAN KEOGH**, *individually*    :
*and in the official capacity as Select*
*Board Chair*; **PATRICK WELCH**,    :
*individually and in the official capacity*
*as Select Board Vice-Chair*; **PETER**    :
**BLAUSTEIN**, *individually,*

                 :

           Defendants.     :      **JURY TRIAL DEMANDED**

--------------------------------X


## <u>VERIFIED COMPLAINT FOR DECLARATORY AND OTHER RELIEF</u>

Plaintiff Westborough SPE LLC ("**Plaintiff**") brings this Verified Complaint for

declaratory and other relief, including under 42 U.S.C. §1983, and alleges, on knowledge as to its

own actions, and otherwise upon information and belief:

## 1. PRELIMINARY STATEMENT

1. This civil action seeks to vindicate Plaintiff's constitutional and common law rights and hold responsible municipal defendants and co-conspirators accountable for their unlawful actions that deprived Plaintiff of 100% of its commercial real property located at 231 Turnpike Road, Westborough, Massachusetts ("**Locus**").

2. This lawsuit also seeks declaratory relief as to the constitutionality of M.G.L. c. 60, §§28 and 64, and actions of the Massachusetts Land Court vis-à-vis the tax title foreclosure process as applied to the Plaintiff.

3. Massachusetts tax deeds fail federal and Massachusetts due process scrutiny for two reasons. First, they allow municipalities like the Town of Westborough to keep property that is far beyond the amount for which they have a claim in violation of the Supreme Court's holding in *Tyler v. Hennepin Cty. Minnesota*, 598 U.S. 631 (2023). Second, they allow a municipality to take title from the taxpayer without providing a pre-seizure hearing. Neither problem is acceptable under constitutional analysis.

4. This case arises out of an actual case and controversy. The Town of Westborough, Massachusetts ("**Town of Westborough**") seized Plaintiff's commercial real property having an approximate fair market value of $5,235,000.00 ($9,264,800.00 assessed value) as payment for tax debt of $119,628.17 in 2018, without a hearing, in a tax foreclosure process saddled with constitutional due process violations.

5. The Town of Westborough violated the Takings Clause of the United States Constitution when it took the Plaintiff's real property without compensation, and a property owner may bring a Fifth Amendment claim under §1983 at such time. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2164 (2019) citing *Jacobs v. United States*, 290 U.S. 13 (1933).

2

6.      In *Wayside Church v. Van Buren S.*, 847 F.3d 812, 823 (6th Cir. 2017), Justice Kethledge stated in his dissent: "In this case the defendant Van Buren County took property worth $206,000 to satisfy a $16,750 debt, and then refused to refund any of the difference. In some legal precincts that sort of behavior is called theft." A footnote in *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 453 n.4 (2020), framed the constitutional issue this way:

> Several of our sister States have determined that excess value from a tax taking must be made available to the taxpayer as a matter of constitutional law. *See*, *e.g.*, *Thomas Tool Servs., Inc. v. Croydon*, 145 N.H. 218, 220 (2000) (tax lien procedure resulting in equity windfall to purchaser of tax deed violated takings clause of New Hampshire Constitution); *Bogie v. Barnet*, 129 Vt. 46, 55 (1970) (retention of excess value by town amounts to unlawful taking for public use without compensation contrary to Vermont Constitution).

> In *Kelly v. Boston*, 348 Mass. 385, 388 (1965), [the Supreme Judicial Court ("SJC")] considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality. The parties in that case did not raise any constitutional challenge, and [the SJC] did not address the constitutionality of the statutory scheme.

7.      As acknowledged in the quotation above from *Tallage Lincoln, LLC v. Williams*, *supra*, at least two other New England states have recognized that the tax lien and foreclosure process still used in Massachusetts is an unconstitutional taking of private property. Vermont led the way in *Bogie v. Town of Barnet*, 129 Vt. 46, 55, 270 A.2d 898 (1970). The Vermont Constitution, Chapter 1, Article 2, requires that "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." The court in *Bogie v. Barnet* held as follows (129 Vt. at 49, 270 A.2d at 900):

> A policy which encouraged municipal governments to promote situations where it was authorized to acquire the property of its own taxpayers at unconscionable discounts, to the enrichment of the town treasury or enlargement of its land holdings, is fraught with danger and we find not contemplated by the legislative enactment.

8.      The Supreme Court recognized the unconstitutionality of equity theft as far back as the 1800s in *United States v. Lawton*, 110 U.S. 146, (1884), when it said, in connection with a similar direct bidding-off by the United States in a tax sale:

To withhold the surplus from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation. If he affirms the propriety of selling or taking more than enough of his land to pay the tax and penalty and interest and costs, and applies for the surplus money, he must receive at least that.

The corresponding rights under the Vermont Constitution upon a taking by public authority appear in Chapter I, Article 2. Satisfaction of the statutory procedures, although they may meet the test of due process, does not negate the obligation to account for the excess proceeds received from the sale.

9.      U.S. Constitution, Amend. 5, states that: "No person shall be … deprived of … property, without due process of law; nor shall private property be taken for public use, without just compensation."

10.     Massachusetts Courts are left with no option but to enforce Massachusetts law on tax title foreclosures and permit "equity theft", because the legislature has failed to act quickly in response to newly enacted Supreme Court precedent established in *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023) ("***Tyler***").

11.     The federal excessive fines standard under U.S. Const. Amend 8 ("Excessive bail shall not be required, nor excessive fines imposed …..") is laid out in *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998). A fine is excessive when it is punitive and grossly disproportionate to the offense. *Id*. at 333–34. The law already gives municipalities, like the Town of Westborough in this case, a right to collect a tax debt with substantial interest and costs. Taking more than that is grossly disproportionate to the non-criminal failure to pay a debt, especially where the failure arises from poverty, medical problems, or lack of knowledge.

12.     The Supreme Court is the "ultimate interpreter of the Constitution" and the United States Constitution is the "supreme law of the land." *Baker v. Carr*, 369 U.S. 186, 211 (1962); *Cooper v. Aaron*, 358 U.S. 1, 18-20 (1958); U.S. Const. art. VI (Supremacy Clause).

13.     Thus, it would be constitutional error to assert that the Massachusetts Land Court ("**Land Court**") can stand by and wait for remedial state legislative action when it is required to implement the holding of *Tyler* immediately, especially as to Plaintiff's dispute with the Town of Westborough.

14.     The Land Court has an unfettered constitutional obligation, under the Due Process, Takings, and Supremacy Clauses of the United States Constitution, to cure the scourge of real property equity theft no matter if the Massachusetts General Court ("Legislature") ever enacts any legislation.

15.     The Land Court's standard form tax lien complaint, employed by municipal tax lien foreclosure claimants as the starting point in any tax lien foreclosure case, awards successful claimants with "absolute title" to real property irrespective of how minimal the taxes owed are and how substantial the homeowner's equity is when the Land Court judgment is entered. This directly contravenes the May 25, 2023 ruling in *Tyler*, the Takings Clause of the United States Constitution, and abridges fundamental constitutional property rights of real property holders, including those rights secured under the Due Process, Takings, and Supremacy Clauses of the United States Constitution.

16.     By statute, M.G.L. c. 60, § 50B, every community in Massachusetts must include in its annual budget the necessary monies to pay for tax foreclosure proceedings. This appropriation is estimated by the municipal treasurer and must be at least $80 for each tax title ripe for foreclosure held by the community involving property having a current assessed valuation greater than $100,000.00. Massachusetts has ingrained and granted its imprimatur to the tax foreclosure practice as currently implemented through statutory enactment.

5

## 2. JURISDICTION

17. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under rights conferred by the United States Constitution and the Civil Rights Act of 1871, 42 U.S. Code §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution, under 42 U.S.C. §§ 1985(2) and 1986, and federal law.

18. This Court also has original subject matter jurisdiction under 28 U.S.C. § 1343(a)(2).

19. This Court has ancillary jurisdiction over Massachusetts state-law claims under 28 U.S.C. § 1367.

20. This Court has subject matter jurisdiction over Plaintiff's declaratory judgment claims under 28 U.S.C. § 2201(a), 28 U.S.C. § 2202, and Fed. R. Civ. P. 57.

21. This Court also has subject matter jurisdiction pursuant to 28 U.S.C § 1332. A limited liability company (LLC) is a citizen of all states in which each of its members is a citizen (*see Mgmt. Nominees, Inc. v. Alderney Investments, LLC*, 813 F.3d 1321, 1325 (10th Cir. 2016)). The 100% Member of Plaintiff is Mignonette Investments Limited, a British Virgin Islands limited partnership and thus the Plaintiff is only a citizen of the British Virgin Islands.

22. No Defendant has a citizenship of the British Virgin Islands and thus there is complete diversity.

23. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

24. This Court has the authority to provide preliminary and permanent injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

25.     This Court has personal jurisdiction over all defendants because they have made and established contacts within The Commonwealth of Massachusetts to permit the exercise of personal jurisdiction over them.

## 3.  VENUE

26.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that at least one defendant has its principal place of business in Boston, Suffolk County, Massachusetts and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## 4.  PARTIES

27.     Plaintiff Westborough SPE LLC ("**Plaintiff**") is a limited liability company formed under the laws of the State of Delaware and does business in Westborough, Massachusetts. Plaintiff has a single 100% member: Mignonette Investments Limited — a British Virgin Islands limited partnership. Plaintiff was the record owner of the real property located at the Locus before the Town of Westborough's unlawful actions.

28.     Defendant Town of Westborough is a Massachusetts municipal corporation ("**Town of Westborough**") having a usual place of business at 34 West Main Street, Westborough, Massachusetts 01581.

29.     Upon information and belief, Defendant Shelby Marshall ("**Marshall**"), individually and in the official capacity as Select Board Member resides at 7 Charles Street, Westborough, Massachusetts 01581.

30.     Upon information and belief, Defendant Ian Johnson ("**Johnson**"), individually and in the official capacity as Select Board Member resides at 9 Bertis Adams Way, Westborough, Massachusetts 01581.

7

31.    Upon information and belief, Defendant Allen Edinberg ("**Edinberg**"), individually and in the official capacity as Select Board Member resides at 8 Nash Street, Westborough, Massachusetts 01581.

32.    Upon information and belief, Defendant Sean Keogh ("**Keogh**"), individually and in the official capacity as Select Board Chair resides at 28 Longmeadow Road, Westborough, Massachusetts 01581.

33.    Upon information and belief, Defendant Patrick Welch ("**Welch**"), individually and in the official capacity as Select Board Vice-Chair resides at 15 Chauncy Circle, Westborough, Massachusetts 01581.

34.    Defendants Marshall, Johnson, Edinberg, Keogh, and Welch are collectively referred to as the ("**Select Board**").

35.    Upon information and belief, Defendant Peter Blaustein ("**Mr. Blaustein**"), individually, resides at 950 Vista Road, Hillsborough, California 94010. Mr. Blaustein is the son of F. Jan Blaustein Scholes, a former general counsel and executive at Babcock & Brown Administrative Services, Inc. and manager of Babcock & Brown Parallel Member LLC, its successor in interest and who transferred her manager role to Lolonyon Akouete and Denise Edwards by written agreement in accordance with the Plaintiff's LLC Operating Agreement.

## 5.  RIPENESS/STANDING

36.    This case is ripe for adjudication because it has created a direct and immediate dilemma for the parties—the Town of Westborough has foreclosed on the Locus.

37.    Plaintiff meets all three Article III standing requirements under *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff has a personal stake in the outcome of this litigation because its real property (its most significant financial asset) has been improperly seized

8

by the Town of Westborough for the nonpayment of property taxes. The improper foreclosure of Plaintiff's real property at the Locus constitutes an injury in fact that this Court can redress. The Land Court, Judge Locke (given his control over the Trial Court), the Attorney General, and the Town of Westborough have the power to prevent the Town of Westborough's unlawful taking of Plaintiff's real property at the Locus.

38.     The constitutional injuries endured by the Plaintiff, as detailed here, are directly traceable to Town of Westborough actors.

## 6.  FACTS

### a.  <u>TOWN OF WESTBOROUGH'S PREMATURE AND UNLAWFUL REQUEST FOR PROPOSAL ("RFP")</u>.

39.     In or about early June 2022, the Town of Westborough issued an RFP by which it solicited offers to purchase the former Regal Cinema property located at the Locus, consisting of a lot of around 29 acres and containing a structure that was formerly used as a movie theater, which the Town of Westborough had acquired by foreclosure of a tax lien ("**RFP**").

40.     The Select Board of the Town of Westborough ("**Select Board**") scored the proposals as "highly advantageous", "advantageous", or "least favorable" with respect to each of the five above criteria.

41.     Question 5 in the RFP Addendum asked: Will the closing happen after the redemption period expires?" The Town of Westborough answered: "The Town is willing to consider closing on the property after the redemption period has expired, provided the closing occurs no later than January 30, 2023, and, further, that **the Town may give preference to proposers who are willing to close on the property prior to the expiration of the redemption period**." (Emphasis added).

42.     Since the judgment of foreclosure in the tax lien case (Land Court Case # 19 TL 000768-HPS), issued on January 5, 2022, Plaintiff could petition the Land Court to redeem he property until January 5, 2023, which Plaintiff indeed did.

43.     The Town of Westborough received three proposals to its RFP by the due date of July 25, 2022.

(a)     The high bidder was Pulte Homes of New England, LLC, which offered $7,942,000.00 and proposed to raze the existing movie theater structure and replace it with 108 non-age-restricted residential condominium units ("**Pulte Proposal**"). The Select Board for the Town of Westborough ultimately rejected this proposal.

(b)     The other two proposals were commercial in nature:

(i)     Lax Media LLC and its Massachusetts subsidiary proposed to re-open a movie theater.

(ii)     Ferris Development proposed to make the property the second of its "Beehive" locations, an innovative approach to workspace for tradespeople. Beehive sites offer physical space for everyday trades (such as electricians, plumbers, painters, and carpenters). Ferris Development offered to pay $2,875,000. Lax Media LLC and its Massachusetts subsidiaries proposed $2,500,001.

44.     According to the minutes and agendas of the Town of Westborough Select Board, they met in executive session to discuss the RFP matter at least seven times after receiving the RFP proposals. These executive sessions took place on August 2nd, August 23rd, September 6th, September 13th, September 27th, October 11th, and October 26th, 2022.

45.     On November 2, 2022, the Town of Westborough Select Board met in open session to discuss the RFP matter. They took less than five minutes to announce that they had given Lax

10

three ratings of "highly advantageous" and two of "advantageous (without specifying which of the criteria won each rating); Ferris Development received two (2) ratings of "highly advantageous", three (3) ratings of "advantageous", and Pulte received two (2) ratings of "highly advantageous", one (1) rating of "advantageous", and two (2) ratings of "least advantageous".

46.     The Select Board then voted on November 2, 2022 to award the purchase and sale agreement to the Lax entities. Under the terms of the RFP, The Town of Westborough and Lax were to enter into a purchase and sale agreement within 30 days from the date of the vote.

47.     The Town of Westborough, going through the RFP process highlighted above, shows that the Town of Westborough initially decided not to sell the property through the tax title process described in M.G.L. c. 60.

48.     The Town of Westborough's action of going through the RFP and selecting the Lax Entities as the winning bidder illustrates that the Town of Westborough, its Select Board, Attorney, Town Manager, and Chief Assessor have recklessly disregarded their obligation to pay fair market value for the taken property. By not selecting the highest bidder Pulte, the Town has sought to minimize the value paid to the Plaintiff in violation of law.

49.     The Town of Westborough through their RFP process failed to follow their own criteria. "A public authority [like the Select Board of the Town of Westborough] inviting bids may not, like Humpty Dumpty, choose to let words it uses in an invitation mean what the public authority chooses those words to mean. When words in an invitation are invested with a meaning known only to the issuer of the invitation to bid, the legislative aims that bids be submitted on a common basis is thwarted. Fairness and equality require that bidders have the opportunity to bid in the same way and on the same information such that they bear the same risk of rejection." *See White's Farm Dairy, Inc. v. City of New Bedford*, 1999 Mass. Super. LEXIS 294 at *34-35.

11

502

50.     The Town of Westborough flouted their legal duty by offering the Locus up for sale before adjudication of Plaintiff's property rights.

51.     The Select Board for the Town of Westborough rated the Lax Entities' proposal higher than that of Ferris Development because the Town expected that the Lax entities' proposal would generate higher tax revenue than that of Ferris Development.

52.     The property valuations relied upon by the Town of Westborough in determining projected tax revenue are facially suspect. The assessors claimed to estimate that Lax Entities' proposal would yield a property worth $9,329,750, while Ferris Development's would produce a fair market value of only $5,501,830. It strains credulity to suggest that Ferris Development would invest $2,875,000 to purchase the property and another $2 million +/- to develop it only to be content with a resulting parcel worth scantly more than the purchase and development cost. Given the contraction in the movie theater use segment in recent years, and the example of the failure of a cinema use on the very site that was at issue, it is unlikely that Lax entities could almost quadruple its purchase money investment by continuing a movie theater use. No real estate valuation professional in the United States would assign a higher valuation or capitalization rate to a movie theater than to a shared work storage space or housing units.

53.     This constitutes prima facie evidence that the Town of Westborough was covering up a process that did not follow its own RFP, that violated the Plaintiff's constitutional rights, and that defies economic logic—seeking to resume a prior failed use of the property as a movie theater.

54.     While "The town has broad power to control and dispose of real property on the terms and conditions it deems appropriate," and is not required to "transfer land to the highest bidder" (*see Mangano v. Town of Wilmington*, 51 Mass. App. Ct. 857, 859 (2001)), Towns must not violate bedrock constitutional principles in the exercise of their discretion.

12

503

55.     The Town of Westborough has stated on the record in a Plymouth County Superior Court proceeding:

"the Town had a rational basis for accepting Lax Media's proposal over that of [Ferris Development Group] because Lax Media's proposal provided greater financial benefits to the Town and was able to proceed more quickly than FDG's, even if FDG's proposal reflected greater financial resources.  Because Lax Media and FDG received the same score on price proposal and sustainability, and the Select Board reasonably determined Lax Media's proposal was better than FDG's on two of the three remaining criteria, the Town's decision was not arbitrary and the Court should not substitute its judgment for that of the Select Board.  Because the Select Board's decision was based on grounds upon which reasonable persons would rely, FDG does not have a likelihood of success on the merits of its claims here."

    *See* Opposition of the Town of Westborugh, *Ferris Development Group, LLC v. Town of Westborough et als.*, Superior Court Dept. Civil Action #2285cv01281 (Worcester Cty.) at pp. 12-13.

56.     Furthermore, the Chief Assessor for the Town of Westborough stated:

"The Assessor estimated Lax Media's use of the Property as a cinema would produce an estimated $192,507.33 in tax revenue annually, which was significantly more than [Ferris Development Group's] estimated annual tax revenue of $101,821.29 because of the more developed state the facility would be in as a cinema as opposed to a warehouse and meeting place for tradespeople…Moreover, the cinema use would also bring in tax revenue through ticket sales and meals taxes and personal property taxes on the high-technology fixtures installed…The cinema use would provide an evening destination for the entire community, stimulating nearby restaurants, whereas [Ferris Development Group's] proposal is an untested experiment following in the footsteps of the failed WeWork business model…[Ferris Development Group's] dismissal of the number of jobs Lax Media's cinema use would create is remarkable given that the cinema was estimated to create 10 full-time jobs, 20 part-time jobs, and several seasonal jobs…"

*See Id.* at pages 13-14.

57.     The Town of Westborough has a self-interest that it believes contravenes Plaintiff's constitutional rights—generating increased tax revenues for the Town of Westborough (which are suspect and speculative justifications), creating jobs, and continuing a prior use as it will have a lower effect on municipal services. This is all to the detriment of Plaintiff's Constitutional rights.

   **b.   The Town of Westborough and Its Agents Engaged in An Unconstitutional Taking of Property Without Just Compensation.**

13

58.     The Land Court, by request of the Town of Westborough, has granted official imprimatur to an unconstitutional practice. It is the practice—sanctioned by statute[1]—of using unpaid real estate property taxes to seize real property for a municipality's own benefit, selling (or attempting to sell) it for amounts that far exceed the amount of unpaid taxes, retaining not just the amount owed for unpaid taxes, but all of the sale proceeds, including all of the property owner's equity in the real property. This is the practice of "equity theft".

59.     The Town of Westborough's desire to retain the value of sale proceeds in excess of the unpaid taxes due on real property and associated charges violates the United States Constitution's prohibitions on the taking of private property for public use without just compensation and constitutes an excessive fine for the nonpayment of property taxes.

60.     The willful intent has been manifested not only by the Town of Westborough Select Board, but also by and through its attorneys, treasurer/collector, and Town of Westborough officials and agents. This intent has been publicly broadcast in newspapers throughout Massachusetts.                                  *See,*                                  *e.g.,*

---

[1] M.G.L. c. 60, § 53 provides, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published, and shall conform to the requirements of section forty five. He shall also, fourteen days before the taking, post a notice so conforming in two or more convenient and public places . . ."

M.G.L. c. 60, § 54 provides in pertinent part, "The instrument of taking shall be under the hand and seal of the collector and shall contain a statement of the cause of taking, a substantially accurate description of each parcel of land taken, the name of the person to whom the same was assessed, the amount of the tax thereon, and the incidental expenses and costs to the date of taking. Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken . . . ."

14

https://www.metrowestdailynews.com/story/news/2022/08/05/westborough-ma-fields-proposals-former-regal-cinemas-property/10230187002/ (accessed August 17, 2023).

61.     The Land Court has refused to impose any administrative orders or a moratorium on tax title foreclosure cases in The Commonwealth based on the United States Supreme Court *Tyler* decision.

62.     The Land Court has stated that if a municipality or other plaintiff in a tax foreclosure case seeks to foreclose on a tax title, that Massachusetts law permits this to occur and that any resulting risk of liability, including for compensation owed to the former owner, is for the municipality to consider and assess in proceeding. Accordingly, the Massachusetts Land Court has vitiated the central holding of *Tyler* which prohibits municipalities from confiscating equity after conducting tax lien foreclosure sales.

63.     The Land Court has refused to immediately honor the *Tyler* ruling and has continually issued *absolute* titles in violation of federal law and Supreme Court precedent, especially in 19 TL 000768-HPS that applies to the Plaintiff.

64.     Since the Land Court has exclusive statutory jurisdiction over all tax lien foreclosure cases in Massachusetts, these cases must be litigated exclusively in the Land Court, which controls discovery, the course of proceedings, and enters judgments which have violated the core tenets of *Tyler*, especially through the foreclosure final judgment issued in *Town of Westborough v. Westborough SPE, LLC, et als.*, 19 TL 000768 (Land Ct. applies

65.     The Land Court's standard form tax lien complaint is unconstitutional because it seeks to award "absolute title" which violates *Tyler*.

66.     Every "absolute title" awarded by the Land Court, through judgments entered upon standard form tax lien complaints from May 25, 2023 to present date and beyond, is and will be

15

void ab initio—and of no legal force and effect. All such judgments, and the land titles to which they relate, will be subject to collateral attack for years to come because the Land Court has refused to comply with *Tyler* from the decision date. If "the court which renders judgment has no jurisdiction to render it, either because the proceedings, or the law under which they are taken, are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally…" *In re Neilson*, 131 U.S. 176, 182 (1889).

67.    These tax title foreclosure judgments and land title litigations will continue for years and will infect thousands of land titles going forward, opening the floodgates to litigation on this issue.

68.    By adhering to the rule of law announced in *Tyler*, the Land Court could minimize these invalid judgments and land titles.

69.    The Land Court's obligation to uphold constitutional rulings of the United States Supreme Court is not subject to or conditioned upon any antecedent action by the Massachusetts General Court ("Legislature") or any other legislative body. No legislative action is required to implement the core *Tyler* ruling given the Land Court's exclusive jurisdiction over tax lien foreclosure cases and its mechanical and administrative ability to ensure that no municipal tax lien claimant is ever awarded with any tax lien judgment which embeds the right to "take" real property equity.

70.    Courts, such as the Land Court, cannot stand idle and watch municipalities like the Town of Westborough violate the United States Constitution based on the inaction of a legislative body, especially where there is an active case and controversy.

**The Town of Westborough Initiates a Tax Taking Against Plaintiff**

16

507

71.     On January 16, 2019, the Town of Westborough recorded an instrument of Tax Taking under M.G.L. c. 60, §§ 53 and 54 against the Locus for nonpayment of property taxes.

72.     On July 8, 2019, the Town of Westborough commenced the action to foreclose the tax lien (*Town of Westborough v. Westborough SPE, LLC, et als.*, Massachusetts Land Court, Case # 19 TL 000768-HPS).

73.     On July 24, 2019, a Notice of the foreclosure action was recorded in the Worcester District Registry of Deeds at Book 60751, Page 221.

74.     On August 26, 2019, a Land Court Title Examiner, Michael H. Delaney, Esq. ("Attorney Delaney"), completed and subsequently filed a Title Report under M.G.L. c. 60, § 66, and reported that the parties interested and entitle to notice were "Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc….Att'n Dyann Blaine and/or F. Jan Bluestein" and "Interstate Theaters Corporation".

75.     Plaintiff acquired its ownership interest in the Locus by Quitclaim Deed recorded at Book 19369, Page 75 in the Worcester District Registry of Deeds on November 21, 1997 ("Deed"). The Deed stated that the grantee was Westborough SPE LLC, a Delaware limited liability company with a principal place of business at c/o Babcock & Brown Administrative Services, Inc., Two Harrison Street, San Francisco, CA 94105. Westborough SPE LLC paid $9,151,449.00 in consideration for the Locus in 1997.

76.     Upon information and belief, Attorney Delaney searched the online records of The Secretary of The Commonwealth of Massachusetts Corporations Division ("MA Corporations Division") for Westborough SPE LLC. The MA Corporations Division is a mere repository of corporate filings and no one at the MA Corporations Division can confirm or deny the accuracy of any document filed with it, except to confirm the date and time said document was filed.

17

77. Upon information and belief, Attorney Delaney did not search any records of the Secretary of State for the State of Delaware Corporations Division.

78. Had Attorney Delaney searched he would have discovered that Babcock and Brown Administrative Services, Inc. had become Babcock and Brown Administrative Services LLC which later merged into Babcock and Brown Parallel Member LLC, a Delaware limited liability company.

79. Thus, Babcock and Brown Parallel Member LLC was the successor-in-interest manager to Babcock and Brown Administrative Services, Inc.

80. Babcock and Brown Parallel Member LLC was never provided notice of the foreclosure.

81. When the Town of Westborough "took" Plaintiff's Property with the judgment of foreclosure entering on January 5, 2022, through a tax taking that violated due process (including, but not limited to improper notice), it did not pay for said property.

82. Plaintiff has been deprived of all use and benefit of its real property at the Locus since the Town of Westborough's tax title foreclosure, and Plaintiff has received no compensation whatsoever. The only thing that the Town of Westborough has done was force Plaintiff to have incurred significant legal expenses because of the Town of Westborough and their agents' unconstitutional actions.

83. The Town, through its Tax Collector/Treasurer, asserted that it is due the sum of $918,314.60 for taxes, interest, and incidental expenses as through May 16, 2023. *See* **Exhibit A** attached and incorporated by reference. The Tax Collector in the affidavit readily concedes though that this sum is no longer accurate. On May 3, 2023, Linda A. Smith, Treasurer/Collector for the Town of Westborough ("Town Treasurer") certified that as of May 16, 2023 ("**Town's**

**Certification**"), a grand total of $918,314.60 was owed, consisting of: $119,628.17 (2018 Taxes), $103,133.80 (2019 Taxes), $10-2,963.48 (2020 Taxes), $55,915.95 (2021 Taxes), $36,885.70 (2021 Taxes), and $35,183.54 (2023 Taxes). It also included interest in the amount of $239,341.73, $58,138.22 in legal fees owed to KP Law and The Law Offices of Iris A. Leahy, Esq., miscellaneous water and sewer liens, NSTAR lien, $14,438.55 to Boston Board Up, $109,882.55 in insurance costs, $6000 in appraisal costs, $20,591.22 for a Request for Proposal (RFP) bid process to sell the Locus, and other miscellaneous recording costs and fees as Itemized in **Exhibit A**.

84. The Town Treasurer certified in the Town's Certification that the 2023 assessed value of the Property is currently $2,082,000.00 compared with $9,264,800.00 in 2018. According to the Town of Westborough's Appraisal, the market value of the Locus is $4,790,000 as of August 3, 2018 as determined by Mark S. Reenstierna, Massachusetts Certified General Real Estate Appraiser #3803 communicated to Jonathan Steinberg, MAA, Chief Assessor for the Town of Westborough on September 4, 2018. A second appraisal was performed by William J. Pastuszek, Jr., MAI, SRA, MRA, Massachusetts Certified General Real Estate Appraiser License #10 on behalf of Shepherd Associates, LLC for the Town of Westborough and determined that the as-is opinion of value of the fee simple interest in the Locus as of January 28, 2018 was $5,500,000 to $6,000,000.

85. Attorney Iris A. Leahy ("**Attorney Leahy**") and attorneys from KP Law, P.C. ("**KP Law**"), acting on behalf of the Town of Westborough, were encouraged to allow the Town of Westborough's tax title foreclosure of the Locus, because they have earned and continue to earn substantial legal fees stemming from the Plaintiff's challenge.

86. The Locus consists of a parcel of land containing about 29.34 acres (around 1,277,876 square feet) improved with a single-story movie theater.

87. On March 16, 2023, David M. Ferris, Esq. on behalf of Ferris Development Group, LLC executed a contingent Offer to Purchase the Locus for $2,400,000.00 ("**Minimum Current Market Price**").

88. The Town's Certification stated that the assessed value of the Locus for 2023 is $2,082,000.00. Current Minimum Market Price is $2,400,000.00. The surplus ("**Surplus**"), consisting of the market value less outstanding taxes, interest, charges of keeping, and charges of sale, as of May 16, 2023, exceeded $918,314.60 (minimum amount of "equity theft") as alleged in the Town's Certification. See M.G.L. c. 60, § 28.

89. Assuming arguendo that the Town decided to proceed with Pulte's offer during the RFP of nearly $7 Million, the resultant "equity theft" as of May 16, 2023 would have been nearly $6,081,685.40.

90. Under current Massachusetts law, the Town of Westborough is entitled to this Surplus when and if the Town sells the Property subject only to additional permissible deductions, under M.G.L. c. 60, § 28, due, once again, to the mere passage of time.

91. The Town of Westborough has stated that it refuses to release the proceeds to Westborough SPE LLC's duly authorized successor managers, Lolonyon Akouete, and Denise Edwards according to the records of the Massachusetts Secretary of The Commonwealth Corporations Division and the Secretary of State for the State of Delaware Corporations Division, the Durable Power of Attorney (governed by Delaware law) executed by F. Jan Blaustein Scholes as Manager ("Ms. Scholes") of Babcock and Brown Parallel Member LLC as successor in interest

511

to Babcock and Brown Administrative Services, Inc. and a Written Consent of Manager signed by Ms. Scholes.

92. Ms. Scholes executed and had notarized the Durable Power of Attorney and Written Consent of Manager in Maricopa County, Arizona.

93. Plaintiff's LLC Operating Agreement is governed by Delaware law and allows for an existing manager to transfer the role of manager to another manager or co-manager.

94. Plaintiff's LLC Operating Agreement does not allow a Manager to resign as Manager without Member Consent.

95. No Member Consent was ever provided for the resignation of any manager by Mignonette Investments Limited.

**The Town of Westborough Has Informed Plaintiff's Managers That It Will Refuse to Tender Proceeds to the Plaintiff**

96. The command of M.G.L. c. 60, § 28 is clear: "The collector shall *upon demand* give a written account of every sale on distress or seizure and charges, and pay to the owner any surplus above the taxes, interest and charges of keeping and sale."

97. The Town of Westborough has stated that it will refuse to tender sale proceeds to Plaintiff's Managers even though Plaintiff is a manager-managed LLC.

98. Since Plaintiff timely made a statutory demand, it is entitled to "any surplus" after payment of the expenses under M.G.L. c. 60, §28. Attempts to place a contrary construction upon M.G.L. c. 60, §28 would violate the Due Process Clause since "the touchstone of due process is the protection against the arbitrary action of the government…" *Wolf v. McDonnell*, 418 U.S. 539, 558 (1974).

99. There is no legal, equitable, or factual base on which the Town of Westborough could assert that it may retain any surplus from a sale for itself.

21

512

100.    The Town of Westborough's actions to seize the Surplus violates the Fifth Amendment, Due Process Clause, Federal Civil Rights Act (42 U.S.C. § 1983), M.G.L. c. 60, § 28, and common law (including, but not limited to conversion, fraud, and deceit), and the retention of any such Surplus, within the meaning of M.G.L. c. 60, § 28, would violate Massachusetts criminal larceny statutes. *See* M.G.L. c. 266, § 30(1).

## C. Unconstitutional Documents/Postings by The Land Court.

101.    The Home Page of the Land Court website, which upon information and belief is operated by the Land Court, states: "A tax lien foreclosure is a type of court case in which a city or town (or sometimes a third party) can seek to obtain <u>full ownership</u> of property if the property taxes, water bills, or sewer bills are not paid…" (Emphasis added). See Land Court Website, https://www.mass.gov/land-court-tax-lien-foreclosure-cases-resources#:~:text=The%20Land%20Court%20has%20jurisdiction%20over%20all%20tax%20lien%20foreclosures%20in%20Massachusetts (accessed August 14, 2023).

102.    Land Court websites have spread false information that contradicts the Supreme Court's holding in *Tyler* and that the Town of Westborough and other municipalities rely contradicts.

103.    The Land Court Homepage Link - "Simple Chart of the Tax Lien Foreclosure Process" states at Section #8: "If you do not pay the amount back by a certain date, the plaintiff can file a motion for judgment and hearing notice. The Court will schedule a hearing on the Motion for Judgment. At this hearing, the Court may make a judgment of foreclosure. *If the Court makes a judgment of foreclosure, your ability to get the property back ends, and the plaintiff gets full ownership of the property. <u>You will lose the whole property, even if it is worth much more than you owe</u>.* (See FAQ #18 and FAQ #19)". See https://www.mass.gov/doc/simple-introductory-tax-lien-flowchart/download (Accessed August 14, 2023) which is incorporated by reference.

22

104.     The Massachusetts Standard Form Tax Lien Complaint – Form TL-5 (04-2021) at Section #5 states: "Plaintiff(s) requests that the Court enter judgment foreclosing all rights of all persons entitled to redeem and declaring that title to the described real estate is **absolute** and that all rights of redemption are barred.  Plaintiff(s) requests such other and further relief as the Court deems proper." (Emphasis Added). *See* https://www.mass.gov/doc/tax-lien-complaint/download (Accessed August 14, 2023) which is incorporated by reference.

105.     The Land Court's online Tax lien foreclosure informational outline states: "A tax lien foreclosure is a process through which you can lose ownership of your property if you do not pay your real estate taxes or water/sewer bill. This can result in you losing all of your property's value, even if the amount you owe is much less than your property's value." *See* https://www.mass.gov/info-details/tax-lien-foreclosure-informational-outline (Accessed August 14, 2023) which is incorporated by reference.

## COUNT ONE
## DECLARATORY RELIEF

106.     Plaintiff repeats and realleges the paragraphs above.

107.     Upon any sale of the Property by the Town of Westborough, if it effects such a sale, it is demanded that the Town and its Treasurer/Tax Collector, comply with the dictate of M.G.L. c. 60, § 28. The cited statutory subsection embeds the constitutional requirements of the Takings Clause of the Fifth Amendment to the United States Constitution ("Fifth Amendment") into it. "The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Scott*, 588 U.S.___ (2019) Slip. Op. at p. 1. (brackets in original). "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.*, 588 U.S. ___ at 2. The "property

515

owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation…" *Id*.

108.    On January 05, 2022, Final Judgment entered as to tax-taking by the Town of Westborough in the Land Court case (19 TL 000768-HPS) at the Locus.

109.    Plaintiff is entitled to a declaration that if the Town of Westborough sells the Locus that Plaintiff is entitled to the difference between the amount owed and what the property sells for.

110.    Plaintiff is entitled to a declaration that as a result of the Town of Westborough and its agents' unconstitutional behavior that it must forfeit any interest on amounts owed by Plaintiff for property taxes.

111.    Plaintiff is entitled to a declaration that as a result of the Town of Westborough and its agents' unconstitutional behavior that it shall not be entitled to collect legal fees and costs incurred by Attorney Leahy and KP Law.

112.    Plaintiff is entitled to a declaration as to the rights and obligations of Plaintiff and Defendants vis-à-vis the constitutionality of holding an RFP prior to expiration of Plaintiff's right of redemption period.

113.    Plaintiff is entitled to a declaration as to the constitutionality of the Massachusetts tax-title foreclosure process as it has been directly applied by the Town of Westborough to Plaintiff.

## COUNT TWO

**UNCONSTITUTIONAL TAKING UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION; VIOLATION OF 42 U.S.C. § 1983**

114.    Plaintiff repeats and realleges the paragraphs above.

115.    Defendants at all times relevant to this action were acting under color of state law.

24

116. Defendants unlawfully deprived Plaintiff of 100% of its real property located at the Locus without just compensation and without due process of law, all in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

117. This claim is being made pursuant to 42 U.S.C. § 1983 and § 1988.

118. The Fifth Amendment of the United States Constitution, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking of private property by Defendants. *See Knick v. Twp. Of Scott*, 588 U.S. ____ (2019).

119. The Town of Westborough's actions and those of the 1983 Defendants vis-à-vis tax title foreclosure of the Locus have constituted a complete taking of Plaintiff's real property without any compensation for such taking.

120. James Malloy, the former Town Manager for the Town of Westborough stated in a November 29, 2018 article in the Westboro Telegram & Gazette "the town will have to hold on to the money from the new owner for three years in case a claim is filed against the town…[Malloy] said that would not stop the selling and development of the property." *See* **Exhibit B** attached and incorporated by reference. The Town of Westborough had actual knowledge that selling the Locus in an RFP could subject the Town of Westborough to liability.

121. At all times relevant hereto, the defendants acted under a policy or custom of the Town of Westborough of depriving real property owners that owe unpaid property taxes of their real property to avoid having to pay compensation in an eminent domain proceeding.

122. In an Affidavit dated May 14, 2020, by Shirin Everett, Esq. of KP Law, P.C., legal counsel to the Town of Westborough, Attorney Shirin stated: "We advised the Town Manager that if real estate taxes were not being paid [at the Locus], the Town [of Westborough] could eventually acquire the title to the Property through a Land Court foreclosure process. We advised the Town

as to the steps the Town needs to take to demand payment of WSPE [Plaintiff], to record an Instrument of Taking after waiting the statutory 14-day period, and filing a petition to foreclose on the Property in Land Court." *See* **Exhibit C** at Paragraph #6, attached and incorporated by reference for the Affidavit of Shirin Everett, Esq. ("**Attorney Affidavit**").

123.    Attorney Shirin further notesd that "[a] vote taken under Article 18 of the March 6, 2018 Annual Town Meeting, authorized the Board of Selectmen [for the Town of Westborough] to acquire the Property [the Locus] by eminent domain for economic revitalization and general municipal purposes, and appropriated the sum of $6,000,000 to pay damages for the Property and to pay for costs incidental or related thereto. It was the Town's intent that, should it take the Property by eminent domain rather than through the tax-foreclosure process, it would pay damages to WSPE [Plaintiff] or to any other entity or person that established that it owned the Property." *nonpayment* at Paragraph #10.

124.    The Town of Westborough's unconstitutional municipal policy, practice, and custom vis-à-vis tax-title foreclosure in-lieu of condemnation proceedings to avoid having to pay just compensation for the taking of real property ("**Tax-Title Foreclosure Policy**") was the moving force of the constitutional violation suffered by the Plaintiff. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694-95 (1978).

125.    Not only was the Town of Westborough's formal Tax-Title Foreclosure Policy caused the violation of Plaintiff's constitutional rights, but also it was designated employees with final policymaking authority that caused the rights violation, including Attorney Everett (KP Law), the Town Manager, and the Board of Selectmen.

26

126. All these aforementioned parties were either employees of the Town of Westborough, engaged in the business of the municipality, or were acting with the authority granted to them by the Town of Westborough.

127. Attorney Everett (KP Law) acted jointly with the Town of Westborough and acted under an engagement letter authorized by the Town of Westborough.

128. Peter Blaustein acted jointly with the government and was under the Town of Westborough's control, where Town Counsel, Attorney Leahy, drafted a "Waiver of Notice and Assent to the Entry of Judgment" for Peter Blaustein to sign, have notarized, and which was filed in Land Court proceeding 19 TL 000768-HPS on May 4, 2023. In that document, Peter Blaustein claimed to be a "Party of Interest by and/or through a Power of Attorney, as Court-Appointed Guardian, and as Conservator for F. Jan Blaustein a/k/a Jan Blaustein Scholes, in the above-referenced tax lien case, hereby waives her right to notice and assents to the previous entry of judgment with regards to the parcel listed below [Locus]". *See* **Exhibit D** attached and incorporated by reference. This document had a prejudicial effect on the Land Court proceeding and Plaintiff through its legal counsel moved to strike said document, but the Land Court Judge refused to strike said document from the Docket.

129. Defendants' actions did not substantially advance a legitimate state interest.

130. Defendants' policy and practice regarding tax title foreclosure of the Locus has denied Plaintiff any viable use of their property.

131. The Town of Westborough has taken Plaintiff's property for public use without providing just compensation.

132. The Town of Westborough provided no compensation to Plaintiff for the taking of their real property, thereby depriving Plaintiff of their constitutional rights in violation of the Fifth Amendment of the United States Constitution.

133. The Town of Westborough interfered with Plaintiff's distinct, investment-backed expectations as to their business and real property.

134. As a result of Defendants' actions and failure to pay just compensation, Plaintiff has been injured and suffered damages in an amount to be determined at trial.

135. Defendants cannot assert a compelling interest for disregarding Plaintiff's long-established constitutional property rights.

136. The Land Court's conduct has caused and will continue to cause Plaintiff to suffer immediate and irreparable harm to its constitutional rights to due process. No money damages can remedy this harm because real property is unique, and Plaintiff has no legal avenue by which to recover any money damages against the Town of Westborough.

## COUNT THREE

## VIOLATION OF 42 U.S.C. §§ 1985(2) and 1986

142. Plaintiff repeats and realleges the paragraphs above.

143. The first clause of § 1985(2) permits an action for damages when:

"two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified."

144. § 1986 permits damages against any:

"person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."

28

519

145.　§ 1985(2), "contain[s] no language requiring that the conspirators act with intent to deprive their victims of [constitutional rights]." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983).

146.　The Town of Westborough, Town of Westborough Select Board, Attorney Leahy, KP Law, Peter Blaustein, Dyann Blaine, and Walter Horst conspired to deter, by force, intimidation, and threats, F. Jan Blaustein Scholes from testifying freely, fully, and truthfully.

147.　Furthermore, upon information and belief, Peter Blaustein has told F. Jan Blaustein Scholes that he would not allow her to move to a nicer nursing home facility if she continued "cooperating" with Lolonyon Akouete and Denise Edwards, the successor managers of the Plaintiff. Mr. Akouete an Ms. Edwards owe a fiduciary duty to the Plaintiff to ensure that its greatest asset—real property at the Locus—is not wrongfully seized by the Town of Westborough for payment of outstanding tax obligations amounting to a mere fraction of the real property's value.

148.　Upon information and belief, the Select Board and KP Law had actual knowledge of Attorney Leahy's actions in wrongfully contacting Mr. Horst, Ms. Blaine, Peter Blaustein, and F. Jan Blaustein Scholes, witnesses in the Land Court proceeding (19 TL 000768-HPS).

149.　Neither the Select Board nor KP Law, who had the power to stop Attorney Leahy's improper actions, acted to so stop Attorney Leahy.

150.　As a result of defendants' conduct, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT FOUR

### EXCESSIVE FINES VIOLATION OF THE UNITED STATES CONSTITUTION

### (AGAINST TOWN OF WESTBOROUGH)

151.    Plaintiff repeats and realleges the paragraphs above.

152.    The Eighth Amendment to the United States Constitution prohibits the imposition of excessive fines.

153.    Confiscating the entire value of Plaintiff's real property, including the excess or surplus equity in Plaintiff's property because of non-payments of real estate taxes is an excessive fine under the Eighth Amendment to the United States Constitution.

154.    Defendant is engaged in assessing and collecting prohibited excessive fines.

155.    Plaintiff faces a threat of irreparable harm if, after a trial on the merits, a permanent injunction is not granted, in that there is a threat that its property rights will continue to be violated by Defendant.

156.    Plaintiff has no adequate legal remedy to protect their property interests from the ongoing unconstitutional and unlawful conduct herein described.

157.    Plaintiff has been injured and damaged by the unlawful excessive fines under the United States Constitution and is entitled to relief as a result.

WHEREFORE, Plaintiff requests judgment as follows:

A.    Enter an order that the Defendants have violated Plaintiff's constitutional rights by taking its real property for public use without just compensation and violating Plaintiff's due process rights;

B.    Enter an order for damages and/or compensation for the value of the real property taken by Defendants;

30

521

C. Enter an order for all damages available under federal law as applicable, including, but not limited to, an award for nominal and punitive damages;

D. Issue a Declaratory Judgment that M.G.L. c. 60, § 28 is unconstitutional as applied and/or facially;

E. Issue a Declaratory Judgment that M.G.L. c. 60, §§ 53 and 54 are unconstitutional as applied and/or facially;

F. Issue a Declaratory Judgment that Massachusetts' statutory scheme of tax title takings and allowance for "equity theft" is unconstitutional;

G. Issue a Declaratory Judgment that the Town of Westborough's appropriation of Plaintiff's real estate equity is an excessive fine in violation of the United States Constitution;

H. Issue a Declaratory Judgment that as a result of the Town of Westborough's actions, by and through its Select Board, and agents, that legal fees paid to further the Town's unconstitutional and/or unlawful actions should be removed from amounts Plaintiff owes to the Town;

I. Issue preliminary and permanent injunctions enjoining the Land Court, Town of Westborough, and Judges of the Trial Courts of The Commonwealth of Massachusetts from enforcing the foregoing challenged statutory provisions until further order of this Court.

J. Issue such other declarations as are necessary and proper for a full adjudication of this matter as presented to the Court;

31

K.  Award Plaintiff costs and attorneys' fees under 42 U.S.C. § 1988, or under any

     other applicable statute or authority.

L.  Grant Plaintiff any other relief that the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**Dated**: August 31st, 2023

            Respectfully submitted,

            **WESTBOROUGH SPE LLC**, Plaintiff,

            By its attorneys,

            *Scott A. Schlager*

By: _____

            Scott A. Schlager, BBO#695421
            Nathanson & Goldberg, P.C.
            183 State Street, 5th Floor
            Boston, Massachusetts 02109
            Tel. (617) 909-4511
            Fax. (617) 210-4824
            sas@natgolaw.com

Case 23-40709 · Doc 221 · Filed 10/23/23 · Entered 10/23/23 17:45:03 · Desc Main
Document Page 524 of 1000
Case 1:23-cv-12017   Document 3   Filed 08/31/23   Page 33 of 34

524

**VERIFICATION**

I, Lolonyon Akouete, declare as follows:

1.  I am the co-Manager of Westborough SPE LLC, a Delaware limited liability company, Plaintiff in the above-captioned case. I have authorized the filing of this complaint and in accordance with the limited liability company operating agreement of Plaintiff.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

3.  I have personal knowledge of Westborough SPE LLC, its activities, and its intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

4.  I verify under penalty of perjury under the laws of the United States that the factual statements in this Complaint about myself, my activities, and my intentions are true and correct, as are the factual statements about Plaintiff, its activities, and its intentions. I have reviewed the allegations made in the complaint. As to those allegations of which I do not have personal knowledge, I rely on information and belief, and I believe them to be true. 28 U.S.C. § 1746.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF AUGUST 2023.**

/s/ Lolonyon Akouete

_____

Lolonyon Akouete, Manager

**VERIFICATION**

Denise Edwards, being duly sworn, deposes and says:

1.  I am the co-Manager of Westborough SPE LLC, a Delaware limited liability company, Plaintiff in the above-captioned case. I have authorized the filing of this complaint and in accordance with the limited liability company operating agreement of Plaintiff.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

3.  I have personal knowledge of Westborough SPE LLC, its activities, and its intentions, including those set out in the foregoing Verified Complaint for Declaratory and Other Relief, and if called on to testify I would competently testify about these matters.

4.  I verify under penalty of perjury under the laws of the United States that the factual statements in this Complaint about myself, my activities, and my intentions are true and correct, as are the factual statements about Plaintiff, its activities, and its intentions. I have reviewed the allegations made in the complaint. As to those allegations of which I do not have personal knowledge, I rely on information and belief, and I believe them to be true. 28 U.S.C. § 1746.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF AUGUST 2023.**

*Denise Edwards*

_____

Denise Edwards, Manager

34

525

# Exhibit L

**SUGGESTION OF BANKRUPTCY**

**I declare under penalty of perjury that the foregoing is true and correct**

*/s/ Scott A. Schlager*

M                          M

**CERTIFICATE OF SERVICE**

**/s/ Scott A. Schlager, BBO#695421**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

CERTIFICATE OF SERVICE

1

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Exhibits to the Town of Westborough's Motion for Relief from Automatic Stay and Opposition to

Appointment of a Bankruptcy Trustee to be served through the Court's CM/ECF system to the

following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*

Dated: October 3, 2023

_____
Roger L. Smerage

2

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

DECLARATION OF
KRISTI WILLIAMS

I, Kristi Williams, hereby declare as follows based on my personal knowledge:

1. I am over 18 years of age and could testify to the following in court.

2. I am the Town Manager for the Town of Westborough, Massachusetts (the "Town"). I have held the role of Town Manager since July 2019. Between November 2010 and September 2018, I was the Assistant Town Manager for the Town, and between October 2018 and June 2019, I was the Interim Town Manager for the Town.

3. The Town is the current owner of real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property").

4. The Property was previously owned by an entity known as Westborough SPE LLC (the "Debtor").

5. Notwithstanding the dissolution of the Debtor, the lessee of the Property (Regal Cinemas) continued to lease the Property and pay property taxes to the Town.

6. However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments.

7. Subsequently, property taxes on the Property accrued.

8. After a March 2018 Town Meeting vote, the Town issued a Request for Proposals to sell the Property.

9.      The Town's Select Board voted to accept the proposal of Lax Media LLC ("Lax Media") on November 20, 2018, issued a notice of award to Lax Media on November 28, 2018, and notified the other bidders of the Town's selection on December 3, 2018.

10.     After the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, on December 28, 2018, the Town incurred certain costs of insuring, securing, and maintaining the Property.

11.     On or about April 3, 2019, the Town Manager's office received an email from an attorney representing the successor-in-interest of Babcock and Brown Administrative Services, Inc. ("Babcock     Brown"), the company that had been the Debtor's manager, requesting information concerning the Property and indicating their client may have a claim to the Property.

12.     The Town elected not to proceed with its acquisition of the Property at that time in light of the potential claim to the Property and identification of a party that may be able to pay the outstanding tax liabilities on the Property.

13.     On April 30, 2019, the Select Board voted to authori e Town Counsel to terminate the pending purchase and sale agreement with Lax Media.

14.     However, neither Babcock     Brown nor its successor-in-interest paid off the outstanding taxes on the Property.

15.     On May 26, 2022, the Town issued a new request for proposals for the purchase and redevelopment of the Property.

16.     The Town received three proposals, including one from Lax Media.

17.     Lax Media offered a purchase price of  2,500,001, which was higher than the estimated fair market value of the Property ( 2,082,000).

532

18.     The Town's Select Board evaluated the proposals based on five categories and selected Lax Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two.

19.     Lax Media has been holding its bid firm and keeping its terms in place pending the conclusion of the Town's action in the Massachusetts Land Court to foreclose the Debtor's right of redemption in the Property.

20.     Despite the Town's efforts to secure and maintain the Property since the time that Regal Cinemas vacated it, the Property has been vandali ed and has experienced burst pipes.

3

533

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

Executed on _October 3_, 2023

Kristi Williams
Town Manager, Town of Westborough

882658/WEST/0042

534

CERTIFICATE OF SER ICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Declaration of Kristi Williams to be served through the Court's CM/ECF system to the following

counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon   gordonfirm.com
*Attorney for Petitioning Creditors*

Scott A. Schlager
Nathanson    Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas   natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1,   1051
North Babylon, NY 11703
*Debtor*

Dated: October 3, 2023

_____
Roger L. Smerage

5

535

*OLF 7 (Official Local Form 7)*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In re  WESTBOROUGH SPE LLC

Case No. **23-40709-CJP**

Chapter  **7**

Debtor

**DECLARATION RE: ELECTRONIC FILING**

**PART I - DECLARATION**

I[We] **Kristi Williams**                                                              and **N/A**

_____, hereby declare(s) under penalty of perjury that all of the information contained in my Declaration dated October 3, 2023 (singly or jointly the "Document"), filed electronically, is true and correct.  I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document.   I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: **October 3, 2023**

(Affiant)

**N/A**
(Joint Affiant)

**PART II - DECLARATION OF ATTORNEY (IF AFFIANT IS REPRESENTED BY COUNSEL)**

I certify that the affiant(s) signed this form before I submitted the Document, I gave the affiant(s) a copy of the Document and this DECLARATION, and I have followed all other electronic filing requirements currently established by local rule and standing order.  This DECLARATION is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed. R. Bankr. P. 9011.  I have reviewed and will comply with the provisions of MEFR 7.

Dated: **October 3, 2023**

Signed: **/s/ Roger L. Smerage**
(Attorney for Affiant - /s/used by Registered ECF Users Only)

536

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re: | TOWN OF WESTBOROUGH'S LIMITED OPPOSITION TO PETITIONING CREDITORS' MOTION FOR ORDER OF RELIEF AND APPOINTMENT OF A BANKRUPTCY TRUSTEE |
| WESTBOROUGH SPE LLC | |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby submits a limited opposition to the Petitioning Creditors' motion seeking an order of relief and appointment of a Chapter 7 Trustee (Doc. No. 14). For the reasons stated in the Town's Motion for Relief from Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee (Doc. No. 20), appointment of a trustee with respect to the real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property") is not warranted in this matter.[1]

Specifically, the Property is not an asset of the Debtor's bankruptcy estate. The Massachusetts Land Court had entered judgment in favor of the Town and against the Debtor in the Town's tax title action, thus foreclosing the right of redemption, prior to the filing of the bankruptcy petition. See Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768).[2] As such, the Debtor did not own the Property at the time of the filing of the bankruptcy action (assuming that the Debtor, in its current form with questionable ownership of the LLC, had any ownership interest in the Property to begin with). See Tallage Lincoln, LLC v.

---

[1] The Town hereby incorporates its Opposition to the Debtor's Motion to Appoint Interim Trustee (Doc. No. 10) by reference.

[2] A copy of the Land Court judgment was submitted as Exhibit G to the Town's Motion. See Doc. No. 21-6.

1

537

Williams, 485 Mass. 449, 452 (2020). ("Upon entry of such judgment, the municipality … takes absolute title to the property."). As the SJC has explained, a tax title foreclosure "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens," such that "the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity." Id. at 452-453.[3] Although the Debtor seeks to vacate that judgment, unless the judgment is vacated, the Debtor lacks any equity or ownership interest in the Property.

As the Town explained in opposing the Debtor's prior request for appointment of an interim trustee pursuant to 11 U.S.C. § 303(g) (see Doc. No. 20 at pp. 14-15), appointment of a trustee is not necessary to preserve the Property. A bankruptcy "trustee can only exercise the same right to redeem that the bankrupt had." Town of Agawam v. Connors, 159 F.2d 360, 364 (1st Cir. 1947). Here, the Debtor no longer had any right to redeem the Property and was, at most, left with the statutory right to request vacatur of the Land Court's judgment within one year.[4] Because the Debtor no longer possesses a right to redeem the Property, the same would be true of any trustee appointed in this proceeding.

For the foregoing reasons, the Town opposes the Petitioning Creditors' request for an order of relief and appointment of a trustee as it relates to the Property.

---

[3] This is now modified by Tyler v. Hennepin County, 598 U.S. 631 (2023), which held that "a taxpayer is entitled to the surplus in excess of the debt owed" when real property is taken and sold pursuant to a tax title statute. See 598 U.S. at 642; see also Freed v. Thomas, --- F.4th ----, 2023 WL 5733164, at *2 (6th Cir. Sept. 6, 2023) ("the Supreme Court has [never] held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property"). Nevertheless, the Debtor's potential right to the surplus of proceeds from the sale of the Property (which the Town questions given its concerns about the present ownership of the Debtor) does not give it equity in the Property itself. Thus, the Property would not be a concern of any bankruptcy trustee.

[4] As noted in the Town's Motion, the Debtor's motion in the Land Court was filed on the last day of the one year in question but was not signed by an attorney, calling its validity into question.

2

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

_____
Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
  Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: October 4, 2023

884137/WEST/0042

3

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Limited Opposition to Petitioning Creditors' Motion for Order of Relief and Appointment of a

Bankruptcy Trustee to be served through the Court's CM/ECF system to the following counsel of

record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*

Dated: October 4, 2023

_____
Roger L. Smerage

4

# Appendix

Freed v. Thomas, --- F.4th ---- (2023)

2023 WL 5733164
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Donald FREED,
Plaintiff-Appellant/Cross-Appellee,
v.
Michelle THOMAS, Defendant-Appellee,
County of Gratiot, Michigan,
Defendant-Appellee/Cross-Appellant,
Michigan Department of Attorney
General, Intervenor-Appellee.

Nos. 21-1248/1288/1339
|
Argued: August 1, 2023
|
Decided and Filed: September 6, 2023

**Synopsis**
**Background:** Property owner brought 1983 action against county and county treasurer in her individual capacity, asserting a taking in violation of Fifth Amendment and an excessive fine in violation of Eighth Amendment after county foreclosed on property for unpaid taxes and, after selling property at auction, retained the entire proceeds. The United States District Court for the Eastern District of Michigan, No. 1:17-cv-13519, Bernard A. Friedman, Senior District Judge, 2018 WL 5831013, dismissed for lack of subject matter jurisdiction. Owner appealed. The Court of Appeals, 976 F.3d 729, reversed and remanded. On remand, the District Court granted summary judgment to owner on takings claim but declined to award amount of damages sought by owner, and it also held that claims against county treasurer were barred by qualified immunity. Owner appealed and county cross-appealed.

**Holdings:** The Court of Appeals, Siler, Circuit Judge, held that:

under Fifth Amendment's takings clause, compensation which county was required to make to owner was not required to include the difference between property's asserted value and the amount that it actually sold for at auction;

foreclosure was not an excessive fine in violation of Eighth Amendment even if sale at auction destroyed taxpayer's equity far in excess of tax delinquency;

treasurer's conduct did not violate clearly established law, and thus treasurer had qualified immunity to owner's takings claim; and

county's policy of prohibiting the refunding of surplus proceeds to property owners following foreclosure sale of properties for unpaid taxes had direct causal link to the unconstitutional taking, and thus county could be subject to liability under 1983.

Affirmed.

Appeal from the United States District Court for the Eastern District of Michigan at Bay City. No. 1:17-cv-13519 Bernard A. Friedman, District Judge.

**Attorneys and Law Firms**

ARGUED: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae. ON BRIEF: Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant Cross-Appellee. Douglas J. Curlew, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee and Appellee Cross-Appellant. Matthew B. Hodges, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Intervenor-Appellee. Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Amicus Curiae.

Before: SILER, GIBBONS, and LARSEN, Circuit Judges.

**OPINION**

SILER, Circuit Judge.

**\*1** Although Plaintiff Donald Freed prevailed on his Fifth Amendment claim before the district court, he appeals because the district court declined to award him the fair market value of his property minus his debt. Freed argues that the district court erred by (1) violating his Fifth or Eighth Amendment rights by awarding him the difference between the foreclosure sale and his debt instead of the fair market value of his property; (2) granting qualified immunity to Michelle Thomas, Gratiot County's ("the County") treasurer; and (3) denying without prejudice his motion for attorney's fees. The County cross-appeals, arguing that the district court improperly held it liable for Freed's 42 U.S.C. § 1983 claims. We affirm.

## I.

After Freed fell behind approximately $1,100 on his property taxes, Thomas, acting on behalf of the County and pursuant to Michigan's General Property Tax Act (GPTA), foreclosed on Freed's property and sold it at a public auction for $42,000. The County retained the entire proceeds. Freed sued the County and Thomas under § 1983, alleging (1) an unconstitutional taking under the Fifth and Fourteenth Amendments by state and local officials; and (2) an unconstitutional excessive fine under the Eighth Amendment. The district court, applying *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017), dismissed Freed's complaint for lack of subject matter jurisdiction, finding that the Tax Injunction Act (TIA) and principles of comity prevented it from hearing the case.

We reversed and remanded. *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), *reh'g en banc denied* (Nov. 4, 2020). We held that (1) the TIA did "not preclude the exercise of federal jurisdiction ... because Freed is not attempting to enjoin Michigan's assessment, levy, or collection of a state tax"; (2) the doctrine of comity did not prevent this suit from proceeding "because Freed is not challenging the validity of Michigan's tax procedures"; and (3) we were not bound by *Wayside Church* because the opinion's discussion of the TIA and comity issues was simply "persuasive dictum." *Id.* at 734, 737–38, 740. We also noted that the Supreme Court overruled *Wayside Church*'s subject matter jurisdiction analysis when it held "that a property owner may bring a takings claim in federal court under § 1983 upon the taking of his property without just compensation by a local government." *Id.* at 733–34 (quoting *Knick v. Township of*

*Scott*, ––– U.S. ––––, 139 S. Ct. 2162, 2179, 204 L.Ed.2d 558 (2019)) (alterations in original).

On remand, the district court granted summary judgment in favor of Freed on his Fifth Amendment claim and denied summary judgment on his Eighth Amendment claim. It rejected Freed's argument that he was entitled to the fair market value of his property, minus his debt, and instead held that Freed was "owed just compensation in the amount of the difference between the foreclosure sale and his debt, plus interest on this amount from the date of the foreclosure sale." This meant that Freed was owed about $40,900 plus interest (approximately $56,800 less than he was seeking). The court also held that Freed's claims against Thomas were barred by qualified immunity.

**\*2** Freed appealed, and the County cross-appealed. Freed also filed a motion for attorney's fees following the entry of judgment, which the district court denied without prejudice under Federal Rule of Civil Procedure 54(d)(2)(B). It noted that it would be premature to decide plaintiff's motion pending the appeal and ordered the period for filing a motion for attorney's fees be extended until fourteen days after the appeal mandate is issued. Freed appealed the denial of his attorney's fees motion.

## II.

We review a district court's grant of summary judgment de novo. *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021).

### A.

#### 1.

Freed first argues that the district court should have awarded him the fair market value of his property pursuant to either the Fifth or the Eighth Amendment.

#### a.

The Supreme Court recently resolved a case with similar facts. Hennepin County, Minnesota, sold the delinquent

taxpayer's house for $40,000 to satisfy a $15,000 tax bill and kept the remaining $25,000. *Tyler v. Hennepin County*, 598 U.S. 631, 634, 143 S.Ct. 1369, 215 L.Ed.2d 564 (2023). The district court there dismissed for failure to state a claim, and the Eighth Circuit affirmed. *Id.* at 636, 143 S.Ct. 1369. The Supreme Court unanimously reversed, affirming "the principle that a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642, 143 S.Ct. 1369.

Here, the district court held at the motion for summary judgment stage that Freed's Fifth Amendment rights were violated, and it held that Freed was owed the difference between the foreclosure sale amount and his debt, plus interest. This holding squares with *Tyler*. Freed asserts though that he is entitled to an additional $56,800 because the purported fair market value of the property was $98,800 and the property sold for only $42,000. However, neither this court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property. *Cf. United States v. Davis*, 815 F.3d 253, 260 (6th Cir. 2016) (holding that the government does not violate the Fifth Amendment by selling a property at a public auction, even if the property sells for less than its fair market value). Furthermore, the best evidence of a foreclosed property's value is the property's sales price, not what it was worth before the foreclosure.[1] *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548–49, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

[1]   Freed stated at oral argument that although the property was sold at a public auction, the procedures used by the county restricted who could bid on the property and in what manner, and this caused the property to sell for less than it was worth. But Freed did not make this argument before the district court or in his opening brief, and it is therefore waived. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016) ("Arguments not raised in a party's opening brief are deemed waived.").

The Michigan Supreme Court, in addressing this exact issue, held that awarding the fair market value of a property instead of the price obtained at a public tax foreclosure sale "would run contrary to the general principle that just compensation is measured by the value of the property *taken*" and would "not only ... take money away from the public" but would also allow plaintiffs to "benefit from their tax delinquency." *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434, 465–66 (2020). Freed is entitled to the amount of the sale above his debt and no more. *See Hall v. Meisner*, 51 F.4th 185, 194 (6th Cir. 2022) (explaining the longstanding principle that following a public sale, a debtor is "entitled

to any surplus proceeds from the sale, which represented the value of the equitable title thus extinguished" (citing *Resol. Tr. Corp.*, 511 U.S. at 541, 114 S.Ct. 1757)). This is precisely what the district court held, and Freed's Fifth Amendment takings argument is therefore meritless.

**b.**

**\*3** Freed's Eighth Amendment argument fares no better. He argues that Defendants "destroyed" his "equity far in excess of the tax delinquency" in violation of the Eighth Amendment.

The Eighth Amendment protects "against excessive fines" and "guards against abuses of the government's punitive or criminal-law-enforcement authority." *Timbs v. Indiana*, —— U.S. ——, 139 S. Ct. 682, 686, 203 L.Ed.2d 11 (2019). However, in *Hall*, we affirmed the district court's dismissal of the plaintiffs' Eighth Amendment Excessive Fines claim on the ground that the GPTA is not punitive. *See Hall*, 51 F.4th at 196–97 (adopting district court's reasoning as the panel's own); *Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at \*14 (E.D. Mich. May 21, 2021) (concluding that the GPTA is not punitive); *see also Rafaeli*, 952 N.W.2d at 447 (holding that the GPTA "is not punitive in nature" because "i]ts aim is to encourage the timely payment of property taxes and to return tax-delinquent properties to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes"). The Supreme Court did not reach the merits of the Eighth Amendment claim in *Tyler*. *See* 598 U.S. at 647–48, 143 S.Ct. 1369. *But see id.* at 648–50, 143 S.Ct. 1369 (Gorsuch, J., concurring). Accordingly, our holding in *Hall* remains binding. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (A prior published "decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)). Therefore, Freed's arguments that he is owed the fair market value of the property under either the Fifth Amendment or the Eighth Amendment fail, and we affirm.

**2.**

The district court granted qualified immunity to Thomas in her individual capacity because it found that she "did

not violate a right that was clearly established at the time of defendant s alleged misconduct. [2] To overcome Thomas s claim of qualified immunity, Freed must show that (1) the officials violated one of his constitutional rights and (2) that right was clearly established. *Howell v. NaphCare, Inc.*, 67 F.4th 302, 317 (6th Cir. 2023) (citation omitted). The clearly established prong is the only one at issue here. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 317–18 (citation omitted).

[2]  The district court also granted qualified immunity to Thomas in her official capacity because the claims against defendant Thomas are duplicative of those against the county.

At the time the lawsuit was filed, the contested provisions of the GPTA had been enforced as written for nearly two decades, and s tate statutes, li e federal ones, are entitled to the presumption of constitutionality until their invalidity is udicially declared. *Davies Warehouse Co. v. Bowles*, 321 .S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944). The Michigan Supreme Court held that Michigan s retention of surplus proceeds was an unconstitutional ta ing several years *after* Freed filed this lawsuit. *See Rafaeli*, 952 N.W.2d at 466. And the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated. *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).

**\*4** The only support on which Freed relies to argue that Thomas s conduct violated a clearly established right is *United States v. Lawton*, 110 .S. 146, 3 S.Ct. 545, 28 L.Ed. 100 (1884). owever, *Lawton* pertained to a statute requiring that surplus proceeds from a tax sale be paid to the owner of the property. *United States v. Taylor*, 104 .S. 216, 218, 26 L.Ed. 721 (1881). The GPTA, on the other hand, did not provide that surplus proceeds would be returned to the owner. *Rafaeli*, 952 N.W.2d at 452–53. Freed has failed to demonstrate that *Lawton*, which was premised on a statutory right to recover surplus proceeds, sufficiently put Thomas on notice that her administration of the GPTA was unconstitutional.[3] Therefore, the district court did not err by granting qualified immunity to Thomas, and we affirm.

[3]  Although *Lawton* notes that withholding surplus from an owner when the owner is statutorily entitled to it would violate the Fifth Amendment, the Court held that this case was governed by the rulings of this court in *U.S. v. Taylor*. 110 .S. at 149, 3 S.Ct. 545. In *Taylor*, the Supreme Court held that the appellee was entitled to

surplus proceeds because the government statutorily required it, not because it would be unconstitutional to withhold the surplus proceeds. 104 .S. at 218, 222. And Freed cannot rely on the Supreme Court s recent opinion in *Tyler* for qualified immunity purposes because the events in this case occurred well before *Tyler* was decided. *District of Columbia v. Wesby*, 583 .S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) ( To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. ).

### 3.

Following the district court s opinion and order holding that Freed s Fifth Amendment rights had been violated, Freed filed a motion for attorney s fees which the court denied without pre udice. Freed argues that the court should have render ed a timely and normal decision on the motion.

The court s order denying Freed s attorney s fees motion, however, is not appealable because it is not a final decision under 28 .S.C. 1291. *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1104, 1107 (6th Cir. 2019) (holding that a district court s order on attorney s fees made where the post- udgment proceedings are *ongoing*, is not a final, appealable order). We therefore dismiss Freed s attorney s fees appeal for lac of urisdiction.[4]

[4]  Freed also as s us to remand this matter to the district court with instructions to enter udgment against the state because the district court failed to explicitly name Michigan as a party in the udgment. Michigan oined this case solely for the purpose of defending the constitutionality of the statute and participated in all stages of the litigation; the district court correctly permitted intervention, pursuant to 28 .S.C. 2403(b), which provides that t he State shall, sub ect to the applicable provisions of law, have all the rights of a party and be sub ect to all liabilities of a party *as to court costs* to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality. (emphasis added). And the district court did not err by omitting Michigan from the udgment. *See Tennessee v. Garner*, 471 .S. 1, 22, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ( The State is a party only by virtue of 28 .S.C. 2403(b) and is not sub ect to liability. ).

Freed v. Thomas, --- F.4th ---- (2023)

---

**B.**

In its cross-appeal, the County argues that the district court erred in holding that it was liable for Freed s constitutional claims under 1983 pursuant to *Monell v. Department of Social Services*, 436 .S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In municipal liability cases under 1983, the question is whether there is a direct causal lin between a municipal or county policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 .S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**\*5** The policy at issue here is the prohibition on refunding surplus proceeds to property owners under MCL 211.78, which Defendants ac nowledge was unconstitutional. That leaves the question of whether the County was responsible for the constitutional violation.

The County argues that it was merely following a state statute when it foreclosed on Freed s home and thus it cannot be said that the County had a custom or policy that led to the unconstitutional ta ing. We disagree. The statute here provides that foreclosure of forfeited property by a county is voluntary. MCL 211.78(6).

And as the district court correctly points out, the County, through its treasurer, repeatedly chose to act as the foreclosing governmental unit and ... retained the proceeds of Freed s foreclosure sale. The County s decision to voluntarily and repeatedly serve as the foreclosing governmental unit and retain the proceeds was a policy decision with a direct causal lin to the constitutional violation in this case. *Harris*, 489 .S. at 385, 109 S.Ct. 1197; *see also DePiero v. City of Macedonia*, 180 F.3d 770, 787 (6th Cir. 1999) (finding municipal liability where a state statute authori ed but did not require a city to ta e a certain action); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (recogni ing that a municipality may be sub ect to *Monell* liability where it ma es a deliberate choice beyond what a statute requires). We hold that the district court did not err in finding the County liable.

**AFFIRMED**.

**All Citations**

--- F.4th ----, 2023 WL 5733164

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

OPPOSITION TO THE TOWN OF WESTBOROUGH'S MOTION FOR RELIEF
FROM AUTOMATIC STAY, LIMITED OPPOSITION TO PETITIONING
CREDITORS' MOTION FOR ORDER OF RELIEF, AND OPPOSITION TO
APPOINTMENT OF A BANKRUPTCY TRUSTEE

## I. INTRODUCTION

WESTBOROUGH SPE, LLC ("WSPE"), by and through its manager, Lolonyon Akouete, vehemently objects to the Town of Westborough's (the "Town") Motion for Relief from Automatic Stay and its Opposition to the Appointment of a Bankruptcy Trustee. This objection is rooted in the pervasive deprivation of WSPE's right to due process and the unlawful antagonism exhibited by the Town and the Land Court.

## II. ARGUMENT

### A. Due Process Violation

WSPE's rights have been egregiously violated, akin to the circumstances illuminated in Town of Russell v. Barlow and Jones v. Flowers. The inadequate service, characterized by undelivered mail packages and notices left at inappropriate locations, nullifies the tax foreclosure judgment's legitimacy.

### B. Hostility and Intimidation by the Town

The Town's counsel initiated an orchestrated campaign of hostility, evidenced by the undue involvement of numerous individuals in the land court proceeding. The tactical intimidation included the participation of the Treasurer, Town Manager, Assessor, Detective Croft from the Westborough Police Department, Finance Director, Select Board Members, and attorneys Everett, McEnaney, and Sirigu.

The Town's attorney's contact with the California State Controller's Office, requesting documents regarding WSPE's claim and alleging unethical behavior by its managers, constitutes defamation, further exacerbating WSPE's compromised position.

### C. Prejudicial Consequences of Lifting the Stay

547

Granting the Town's motion will culminate in profound prejudice against WSPE. The animosity and bias demonstrated by the Town and the Land Court jeopardize WSPE's statutory and constitutional rights, underscoring the necessity of maintaining the automatic stay in the land court proceeding. This pervasive hostility accentuates the necessity for the appointment of an impartial and objective trustee. Such an appointment is essential to restore fairness, to counterbalance the existing hostility, and to ensure that WSPE's rights are protected and that justice is served.

## D. WSPE's Equity and Assets

WSPE's considerable equity in the property at 231 Turnpike Road, complemented by the escheated asset of 1.2 million dollars in the state of California, establishes its robust financial posture. The Town's motion, if granted, would precipitate unjust enrichment at WSPE's expense.

## E. Unlawful Collusion

In a bid to circumvent the glaring due process violations, the Town enlisted Dyann Blaine and Peter Blaustein to sign a Waiver of Notice and Assent to the Entry of Judgment. Blaine, a former officer of Babcock & Brown Administrative Services, Inc., had previously acted beyond her authority by wrongfully withdrawing WSPE's Massachusetts registration on November 20, 2007. This act of collusion is indicative of the lengths the Town is willing to go to seize WSPE's property unlawfully.

We apologize for the inconvenience caused by the uncollected taxes due to the breach of fiduciary duty by WSPE's former manager. However, as courts have indicated, tax redemption statutes should be interpreted in favor of the party seeking to recover the property. Therefore, it is in WSPE's best interest to regain their title to the property, and it is in the Town's best interest to receive full payment of the past-due taxes and fees that caused the foreclosure proceedings in the first place.

## III. CONCLUSION

Given the severe due process violations, explicit hostility, and the collateral consequences of lifting the automatic stay, WSPE implores this Honorable Court to deny the Town's motion. The appointment of a trustee is imperative to instill fairness and justice, ensuring an unbiased and equitable examination of WSPE's legitimate claims and interests.

WSPE's plans to petition for the removal of the case to the Bankruptcy Court, where the impartial adjudication of its rights and interests can be safeguarded. Justice, impartiality, and due process should not only be upheld but should be the foundational principles that guide the proceedings herein.

### EXHIBITS

1. Certificate of Revival and Good Standing
2. Durable Power of Attorney and Written Consent of Manager signed by Ms. Scholes
3. Westborough SPE LLC Operating Agreement
4. Documentation of Managerial Transition from BBAS Inc to BBAS LLC to BBPM LLC
5. Westborough SPE LLC - 19 TL 00768 Joint Pre-Trial Memorandum
6. Unlawful Waiver of Notice and Assent to the Entry of Judgment
7. Email correspondence between the State Controller's and the town's attorneys

DATED: October 6, 2023

Respectfully submitted:

WESTBOROUGH SPE, LLC
 By its manager,

Lolonyon Akouete
Manager of Westborough SPE, LLC

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, manager for the Debtor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
 Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

WESTBOROUGH SPE, LLC
 By its manager,

Lolonyon Akouete
1241 Deer Park Ave., Suite 1,
 #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

549

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## EXHIBITS

WESTBOROUGH SPE, LLC ("WSPE"), by and through its manager, Lolonyon Akouete, is hereby providing a list of exhibits in compliance with the Local Bankruptcy Rule 5. These documents are filed separately along with WSPE's opposition to the Town of Westborough's Motion for Relief from Automatic Stay, Limited Opposition to Petitioning Creditors' Motion for Order of Relief, and Opposition to Appointment of a Bankruptcy Trustee.

| Exhibit | Description | No. of Pages |
|---|---|---|
| 1 | Certificate of Revival and Good Standing | 4 |
| 2 | Durable Power of Attorney and Written Consent of Manager signed by Jan | 8 |
| 3 | Westborough SPE LLC Operating Agreement | 19 |
| 4 | Documentation of Managerial Transition from BBAS Inc to BBAS LLC to BBPM LLC | 9 |
| 5 | Westborough SPE LLC - 19 TL 00768 Joint Pre-Trial Memorandum | 73 |
| 6 | Unlawful Waiver of Notice and Assent to the Entry of Judgment | 1 |
| 7 | Email correspondence between the State Controller's and the town's attorneys | 1 |

DATED: October 6, 2023

Respectfully submitted:

WESTBOROUGH SPE, LLC
By its manager,



Lolonyon Akouete
Manager of Westborough SPE, LLC

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, manager for the Debtor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
 Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

WESTBOROUGH SPE, LLC
 By its manager,

Lolonyon Akouete
1241 Deer Park Ave., Suite 1,
#1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

# **Exhibit 1**
Certificate of Revival and Good Standing



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF REVIVAL OF "WESTBOROUGH SPE LLC", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF NOVEMBER, A.D. 2022, AT 5 O`CLOCK P.M.

2811561  8100
SR# 20224086804

Authentication: 204937171
Date: 11-26-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

553

# STATE OF DELAWARE
## CERTIFICATE OF REVIVAL OF
## A DELAWARE LIMITED LIABILITY COMPANY
## PURSUANT TO TITLE 6, SEC. 18-1109

1. Name of the Limited Liability Company  WESTBOROUGH SPE LLC

2. Date of the original filing with the Delaware Secretary of State:
   10/22/1997

3. The name and address of the Registered Agent is

   THE INCORPORATORS LTD.
   300 CREEK VIEW ROAD, SUITE 209
   NEWARK, DE 19711

4. (Insert any other matters the members determine to include herein).

5. This Certificate of Revival is being filed by one or more persons authorized to Execute and file the Certificate of Revival.

In witness whereof, the above name Limited Liability Company does hereby certify that the Limited Liability Company is paying all annual Taxes, penalties and interest due to the State of Delaware.

BY: _____
Authorized Person
Name: Denise Edwards
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:00 PM 11/22/2022
FILED 05:00 PM 11/22/2022
SR 20224086804 - File Number 2811561



# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED

UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND

HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS

OF THE TWENTY-EIGHTH DAY OF NOVEMBER, A.D. 2022.

Jeffrey W. Bullock, Secretary of State

2811561  8300
SR# 20224104318
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 204939237
Date: 11-28-22

*The Commonwealth of Massachusetts*

*Secretary of the Commonwealth*

*State House, Boston, Massachusetts 02133*

**William Francis Galvin**
Secretary of the
Commonwealth

**December 15, 2022**

TO WHOM IT MAY CONCERN:

I hereby certify that a certificate of registration of a Foreign Limited Liability Company was filed in this office by

**WESTBOROUGH SPE LLC**

in accordance with the provisions of Massachusetts General Laws Chapter 156C on **December 12, 2022**.

I further certify that said Limited Liability Company has filed all annual reports due and paid all fees with respect to such reports; that said Limited Liability Company has not filed a certificate of cancellation or withdrawal; that there are no proceedings presently pending under the Massachusetts General Laws Chapter 156C, § 72 for revocation of said Limited Liability Company's authority to transact business in the Commonwealth; and that said Limited Liability Company is in good standing with this office.

I also certify that the names of all managers listed in the most recent filing are: **DENISE EDWARDS, LOLONYON AKOUETE**

I further certify that the name of persons authorized to act with respect to real property instruments listed in the most recent filings are: **DENISE EDWARDS, LOLONYON AKOUETE**



In testimony of which,

I have hereunto affixed the

Great Seal of the Commonwealth

on the date first above written.

Secretary of the Commonwealth

Processed By:NGM

# Exhibit 2
Durable Power of Attorney and Written Consent of Manager signed by Jan

# **Exhibit 3**
Westborough SPE LLC Operating Agreement

# WESTBOROUGH SPE LLC

## LIMITED LIABILITY COMPANY AGREEMENT

October 22, 1997

# LIMITED LIABILITY COMPANY AGREEMENT

## TABLE OF CONTENTS

| | |
|---|---|
| RECITALS | 1 |
| FORMATION, MANAGEMENT, PURPOSES, NAME | 1 |
| CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS; AND LIABILITY OF MEMBERS | 6 |
| RETURN OF CONTRIBUTIONS | 7 |
| SHARE OF DISTRIBUTIONS, PROFITS, LOSSES AND OTHER ITEMS | 7 |
| SUBSTITUTION AND ASSIGNMENT OF A MEMBER'S INTEREST | 9 |
| BOOKS AND RECORDS; BANK ACCOUNTS | 9 |
| OTHER BUSINESS | 10 |
| DISSOLUTION AND CONTINUATION OF THE COMPANY | 10 |
| MISCELLANEOUS | 11 |

-i-

GS2- 1362291

WESTBOROUGH SPE LLC

LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "Agreement"), dated as of the 22nd day of October, 1997, is by and between MIGNONETTE INVESTMENTS LIMITED, a British Virgin Islands entity organized under the BVI International Business Companies Act (the "Member"), and BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., a Delaware corporation, as the Manager.

## R E C I T A L S:

A.    The Member formed a limited liability company (the "Company") pursuant to and in accordance with the Delaware Limited Liability Company Act (the "LLC Act") by the filing on the date hereof of a Certificate of Formation with the Secretary of State of the State of Delaware for the purposes described therein and herein.

B.    The Member and Babcock & Brown Administrative Services, Inc. desire to enter into this Agreement to provide for, among other things, the management of the business and affairs of the Company, the distribution of monies and allocation of profits and losses as to the Member, and the respective rights, interests, obligations and duties of the Member and of the Manager to each other and to the Company and its assets, business, liabilities and obligations.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, the parties hereto hereby agree as follows:

OPERATING AGREEMENT

1.    <u>Formation, Management, Purposes, Name</u>

(a)    The rights and liabilities of the parties hereto shall be determined pursuant to the LLC Act and this Agreement. To the extent that the rights or obligations of the parties are different by reason of any provision of this Agreement than they would be in the absence of any such provision, or even if this Agreement is inconsistent with the LLC Act, this Agreement shall control, except to the extent the LLC Act provides that the applicable provisions thereof as to any

-1-

such matter may not be modified by a limited liability company's members, or hereof shall be applicable to the extent, if any, required by the LLC Act.

The name of the Member and its address are set forth on Schedule A attached hereto. If any additional Members and/or substitute Members are hereinafter added as Members in the Company their names and respective addresses shall be added by amendment of said Schedule A.

The registered office and the registered agent of the Company in the State of Delaware shall be as set forth in the Certificate, as such office and agent may be changed, and as the Certificate may, as a consequence thereof, be amended from time to time by the Manager.

(b)     The name of the limited liability company formed hereby is Westborough SPE LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Manager deems appropriate or advisable. The Manager shall file, or shall cause to be filed, the Certificate of Formation and any fictitious name certificates, foreign state registrations and similar filings, and any amendments to any thereof, that the Manager considers necessary, appropriate or advisable, including, without limitation, an Application for Registration as a foreign limited liability company in the Commonwealth of Massachusetts.

(c)     The Company is formed for the sole purpose of, and the nature of the sole business to be conducted by the Company is, to acquire, own, construct, lease, operate, maintain and, consistent with its investment purposes, to sell, exchange, convey and otherwise transfer, and otherwise to deal with, in any manner deemed desirable, the real property generally described in Schedule C attached hereto, and any other real property and any personal property, tangible or intangible, appurtenant to any thereof or hereafter acquired as necessary or convenient in connection with such real property, and to own interests in and be a member and/or manager, partner, general or limited, venturer, stockholder or other holder of interests in any entity holding direct or indirect interests in any such assets or engaged in any such activity, and in connection with all of the above, the Company may engage in any lawful act or activity for which limited liability companies may be formed under the LLC Act and in any and all activities necessary, advisable, convenient or incidental thereto. The purposes of the Company may not be broadened without the unanimous consent of all the Members and the Manager, nor may it be broadened if such would violate or cause a default under any agreement to which the Company is a party or by which it is bound.

GS2- 136229-1

In furtherance of the conduct of the purposes described above, the Company shall have the power and authority to do any and all lawful activities, business or actions which an Company may take under the LLC Act and, except as limited by the LLC Act, any activities, business or actions which a business corporation or a limited partnership would be entitled to engage in or take pursuant to the applicable laws of the State of Delaware, or under other applicable law, so long as such powers are necessary or convenient to the conduct, promotion or attainment of the business, trade, purposes or activities of the Company.

(d)     Babcock & Brown Administrative Services Inc. is hereby designated as the Manager of the Company. One or more Managers may be designated and the number of Managers may be determined at any time by "Consent of the Members"; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement and shall also indicate those circumstances in which each Manager will be authorized to act alone and those circumstances in which more than one or all of the Managers will be required to act on behalf of the Company. A Manager may be removed by Consent of the Members at any time and for any reason or for no reason.

(e)     Except as otherwise specifically provided in this Section 1 and in Section 8 of this Agreement: (i) the overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager, who shall have the sole power and authority to make any decision and to take any action and to exercise any power on behalf of the Company which the Company has the right, power and authority to take or otherwise engage in; and (ii) the Members shall have no voting rights, consent or approval over or as to any such matters.

Notwithstanding the above, the Manager may not file, on behalf of the Company, a petition in bankruptcy or for reorganization or insolvency or any other similar matter without the unanimous consent of the Members.

The Manager shall devote, and shall cause its members, partners, officers, directors and employees, if any, to devote such time to the affairs of the Company as such Manager, in its sole discretion, determines is necessary for performance by the Manager of its duties, provided no such persons shall be required to devote full time to such affairs. The Manager shall have the right and power to manage, operate, and control the Company, and to do all things and take

-3-

GS2- 136229-1

563

"Consent of the Members" shall mean action of the holders of more than two-thirds of the Percentage Interests of all the Members, as such Percentage Interests are initially set forth on Schedule A hereto and as such Percentage Interests may be changed pursuant to the other provisions of this Agreement.

No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members.

(f)     No Member, acting in its capacity as a Member (but nothing herein limiting any Member's capacity as a Manager if a Member is also a Manager), shall have any authority, power or privilege to act on behalf of or to bind the Company.

(g)     The signature of the Manager or, if more than one Manager any time, of any Manager on any agreement, contract, instrument or other document shall be sufficient to bind the Company and any other Manager in respect thereof, shall be deemed the action of the Company and of any other Manager, and shall conclusively evidence the authority of such executing Manager and the Company with respect thereto, and no third party need look to any other evidence or require joinder or consent of any other party to bind the Company or to evidence such Manager's authority.

Without in any way amending, modifying, expanding or limiting the foregoing provisions of this paragraph (g), an individual or individuals may be authorized in writing by the Manager to execute any documents to be filed with the Secretary of State of the Commonwealth of Massachusetts and/or authorized to execute, acknowledge, deliver and record any recordable instruments on behalf of the Company purporting to effect an interest in real property, whether to be recorded with the registry of deeds or district office of the Land Court, and in the event of any such authorization the Application for Registration for the Company in the Commonwealth of Massachusetts shall include or, as appropriate, be amended to set forth such authorization.

Any Manager may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity. Such writing may fully authorize such other Manager or such other person or entity, acting alone or with others, all as

-4-

GS2- 136229-1

may be provided in such written delegation, without requirement of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager.

(h)     The Manager shall be entitled to reimbursement from the Company for all expenses incurred by such Manager in managing and conducting the business and affairs of the Company. The Manager shall determine which expenses, if any, are allocable to the Company in a manner which is fair and reasonable to the Manager(s) and the Company, and if such allocation is made in good faith it shall be conclusive in the absence of manifest error.

(i)     Any Manager, or the sole Manager if there is only one, may cause the Company to enter into one or more loans, agreements, leases, contracts or other arrangements for the furnishing to or by the Company of money, goods, services or space with any Member, Manager or an affiliate thereof, and may pay compensation thereunder for such goods, services or space, provided in each case the terms of any such arrangements are at least as advantageous to the Company as those which would be available to the Company under similar arrangements between unrelated parties, and if the determination of such terms is made in good faith it shall be conclusive in the absence of manifest error.

(j)     In the performance of its duties and obligations hereunder, and in the exercise of its powers hereunder, the Manager shall act in good faith. The Company shall indemnify, defend and hold harmless the Manager, each Member, any person appointed to act for or on behalf of the Company pursuant to Section 1(g), and each such person's officers, directors, partners, members, shareholders, employees, and agents, and the employees, officers and agents of the Company (all indemnified persons being referred to as "Indemnified Persons" for purposes of this Section 1(j)), from any liability, loss, or damage incurred by an Indemnified Person by reason of any act performed or omitted to be performed by such Indemnified Person in connection with the business of the Company, and

-5-

Case 3:19-cv-10022-FLW Document 128-2 Filed 03/23/20 Page 205 of 639 Main Document Page 26 of 100

from liabilities or obligations of the Company imposed on such person by virtue of such person's position with no relationship to the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss, or damage; provided, however, that, if the liability, loss, damage, or claim arises out of any action or inaction of an Indemnified Person, indemnification under this Section 1(j) shall be available only if (i) the Indemnified Person, at the time of such action or inaction, determined, in good faith, that its course of conduct was consistent with this Agreement or otherwise in the best interests of the Company, and (ii) the action or inaction did not constitute fraud, gross negligence or willful misconduct by the Indemnified Person. Any indemnification under this Section 1(j) shall be recoverable only from the assets of the Company and not from any assets of any of the Members.

2. <u>Capital Contributions; Capital Accounts; and Liability of Members</u>.

(a) The Member has contributed in cash to the capital of the Company the amount set forth opposite such Member's name on Schedule B hereto.

Additional capital contributions may be made (but are not required to be made) by the Member, or any of them if more than one, if necessary or desirable to enable the Company to meet its obligations.

Any third party may rely on a certificate or other statement from the Manager as to Member or Members of the Company and the respective Percentage Interests of the Members at any time. All capital contributions by the Member(s) shall be reflected on the books and records of the Company.

Upon approval of the Manager, any Member may make a loan or loans to the Company on such terms as the Manager may determine. No such loan shall be considered a contribution to the capital of the Company.

(b) No Member shall be obligated to contribute any additional capital or make any loans to the Company. No interest or preferred return shall accrue on any contributions to the capital of the Company. No Member shall have any rights or priority over any other Members as to contributions or as to distributions or compensation by way of income, except as may otherwise be specifically provided for elsewhere in this Agreement.

(c) If there is more than one Member at any time and the Company has not elected to be taxed as a corporation under the Internal Revenue Code, a separate capital account ("Capital Account") shall be established for each Member,

GS2- 136229-1

and shall be maintained in accordance with applicable regulations under the Internal Revenue Code consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital made by such Member to the Company, and such Member's share of the net profits, and items thereof, of the Company, and there shall be charged against each Member's Capital Account the amount of all distributions to such Members, and such Member's share of the net losses, and items thereof, of the Company.

(d)     The liability of any Member for the losses, debts and obligations of the Company shall be limited to its capital contributions then made but not then previously repaid to or withdrawn by them in accordance with the terms of this Agreement.  No Member, in its capacity as a Member or as Manager, shall have any liability to restore any negative balance in its Capital Account.  In no event shall any Member, in its capacity as a Member, nor any Manager, whether or not also a Member, be personally liable for any judgments, debts, liabilities or obligations of the Company.

(e)     The Member(s), unanimously if more than one, shall have the right at any time to require the Manager to elect to treat the Company as a corporation under the Internal Revenue Code.

3.     Return of Contributions.  No Member shall have the right to withdraw or to be repaid any capital contributed by it or to receive any property or other payment in respect of its interest in the Company, including, without limitation, as a result of the withdrawal or resignation of such Member from the Company, except as specifically provided in this Agreement.

4.     Share of Distributions, Profits, Losses and Other Items.

(a)     All cash available for distribution shall be distributed to the Member, or among the Members if there is more than one Member, first to return any unrepaid capital contributions, pro-rata among the Members with such amounts in proportion to each respective Member's unrepaid capital contribution, and then among the Members according to their respective Percentage Interests. Distributions to the Members shall be made at such times and in such amounts as shall be reasonably determined by the Manager.  Except as provided in the next paragraph, all distributions to Members shall be made in cash.

If the Manager elects, with the Consent of the Members, to distribute any assets of the Company in kind, such assets shall be distributed on the basis of

GS2- 136229-1

their fair market value as determined by the Manager, and if the determination of
such fair market value is made in good faith it shall not be challenged in the absence of
manifest error.

Case 8:24-07699 ... Document Page 508 of 1000

(b)     If and so long as the Company is taxed as a partnership, allocations of income, profit, gain and loss, shall be made as follows: (i) items of net income and gain shall be allocated among the Members in the manner necessary to increase each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a), and (ii) items of net loss and deduction shall be allocated among the Members in the manner necessary to reduce each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a).

Notwithstanding the foregoing, all allocations of items that cannot have economic effect (except "partner nonrecourse deductions") shall be allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to the Percentage Interests of the Members, and all "partner nonrecourse deductions" and "partner minimum gain" shall be allocated in accordance with the provisions of Treasury Regulations Section 1.704-2.

All items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, shall be allocated to and among the Members in the same percentages in which the Members share in net profits and net losses.

(c)     Except as otherwise specifically provided herein, all tax elections shall be made by the Manager as it shall deem appropriate.

5.     Substitution and Assignment of a Member's Interest. A Member may sell, assign, give, pledge, hypothecate, encumber or otherwise transfer (including, without limitation, any assignment or transfer by operation of law or by order of court) all or any part of such Member's interest in the Company, without the consent or approval of any other Member or of the Manager.

-8-

GS2- 136229-1

568

6.    Books and Records and Bank Accounts.

(a)    The Manager shall keep or cause to be kept complete and accurate books and records of the Company using such method as the Manager may elect. Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the LLC Act, at an office of the Company for examination and copying by any Member, or its duly authorized representative, at its reasonable request and at its expense during ordinary business hours. Any Member may, at any time, at its own expense, cause an audit or review of the Company books to be made by a certified public accountant of its own selection.

A current list of the full name and last known address of each Member and of the Manager, a copy of this Agreement, any amendments thereto and the Certificate of Formation, executed copies of all powers of attorney, if any, pursuant to which this Agreement, any amendment, or the Certificate of Formation has been executed, copies of the Company's financial statements and federal, state and local income tax returns and reports, if any, for the five most recent years, shall be maintained at the registered office of the Company required by the LLC Act.

If the Company is taxed as a partnership, then on or before the due date (including extensions) of the federal income tax return of the Company for each fiscal year of the Company, the Manager shall cause each Member to be furnished with copies of the Company's federal income tax return and Schedule K-1's for each respective Member for the fiscal year then ended.

If the Company is taxed as a corporation, the Manager shall timely (including extensions) file all requisite federal, state and local tax returns.

(b)    Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by the Manager, and withdrawals shall be made and other activity conducted on such signature or signatures as shall be designated by the Manager.

(c)    The fiscal year of the Company shall end on December 31 of each year.

7.    Other Business. The Members, the Manager and any affiliates of any of them may engage in and possess interests in other business ventures and

-9-

GS2- 136229-1

569

investment opportunities of every kind and description, independently or with others, including serving as managers and general partners of other limited liability companies and partnerships with purposes similar to those of, and/or in competition with, the Company. Neither the Company nor any other Member or Manager shall have any rights in or to such ventures or opportunities or the income or profits therefrom.

8. <u>Dissolution and Continuation of the Company</u>.

(a) The Company shall be dissolved and its affairs wound up upon:

(i) The election, made in writing by the Manager, with the Consent of the Members, to dissolve the Company at any time which is 90 days or more after notice of such election to all Members;

(ii) The sale, disposition or abandonment of all or substantially all of the assets of the Company; or

(iii) The entry of a decree of judicial dissolution under the LLC Act.

The Company shall have no specific date of dissolution.

(b) Upon the dissolution of the Company for any reason, the Manager shall commence to wind up the affairs of the Company and to liquidate its assets. After the sale or other disposition of all of the assets of the Company to be disposed of in the liquidation, and gains and losses thereon shall be calculated. If the Company is taxed as a partnership, such gains and losses shall be allocated in the manner described in Section 4 hereof, and applied to the Capital Accounts of each Member to whom the allocations are made pursuant to the other provisions hereof.

(c) Following the payment of all debts and liabilities of the Company to persons other than the Members and the payment of all expenses of liquidation, and subject to the reserves which the Manager, or other liquidating party, may determine is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other funds shall be applied to the payment of any debts and liabilities to the Members, if any, and then shall be distributed to the Member(s) (i) in accordance with Section 4(a)

-10-

GS2- 136229-1

if the Company is taxed as a corporation, and (ii) in accordance with each Member's respective Capital Account(s) as of the date of such distribution, after giving effect to all contributions, distributions, and allocations for all periods, if the Company is taxed as a partnership.

(d)     The assets of the Company shall be a Member's source of all distributions with respect to the Company, the return of its capital contributions thereto and its share of profits and losses thereof, and each such Member shall have no recourse therefor (upon dissolution or otherwise) against any other Members.

(e)     Upon the completion of the liquidation of the Company and the distribution of all Company's funds, the Company shall terminate, and the Manager shall, or if none, the Members may authorize one or more Members to, execute and record such articles of dissolution for the Company and any and all other documents necessary to effectuate the dissolution and termination of the Company.

9.     Miscellaneous.

(a)     Subject to the restrictions on transfers set forth herein, the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns; and each and every successor-in-interest to any Member, whether such successor acquires such interest by way of inheritance, gift, purchase, foreclosure or any other method, and the Members shall hold such interest subject to all of the terms and provisions of this Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of any Member (including any Member acting in his capacity as a creditor of the Company).

(b)     No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager.

(c)     This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary.

-11-

GS2- 136229-1

(d)     This Agreement may be executed in any number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Members and the Manager notwithstanding that all Members and the Manager have not signed the same counterpart.

(e)     Any and all notices under this Agreement shall be effective (i) on the fourth business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (ii) on the second business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery.  All such notices in order to be effective shall be addressed, if to the Company at its registered office under the LLC Act, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

(f)     As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires.  The word "person shall mean a natural person, a trust of any nature, or any incorporated or unincorporated entity or association of any type or form.

(g)     If any provisions of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it si held invalid, shall not be affected hereby.

(h)     Words such as "herein", "hereinafter", "hereof", "hereto", "hereby", and "hereunder", when used in reference to the Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(i)     This Agreement, including the Certificate of Formation, which is hereby incorporated herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

-12-

GS2- 136229-1

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
        Authorized Signatory

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE
SERVICES, INC.

By: _____
Its _____President_____

-13-

573

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
Authorized Signatory

For F.M.C. LIMITED
CORPORATE DIRECTORS

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: _____

Its _____

-13-

SCHEDULE A
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

<u>MEMBER</u>

| NAME AND ADDRESSES<br>OF MEMBER | PERCENTAGE INTEREST |
|---|---|
| Mignonette Investments Limited | 100% |

-A-1-

SCHEDULE B
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| MEMBER | INITIAL CASH CAPITAL CONTRIBUTION |
|---|---|
| Mignonette Investments Limited | $10,000 |

-B-1-

-C-1-

SCHEDULE C
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC


PROPERTY DESCRIPTION

# DURABLE POWER OF ATTORNEY

This Durable Power of Attorney is made on this 26 day of June, 2023, by Babcock and Brown Parallel Member LLC, a Delaware limited liability company (the "Grantor").

WHEREAS, pursuant to the Operating Agreement ("Operating Agreement") of Westborough SPE LLC (the "Company") dated as of 20th October 1997 (the "LLC Agreement"), Babcock and Brown Administrative Services Inc., a Delaware corporation, was designated as the manager of the Company;

WHEREAS, Babcock and Brown Administrative Services Inc. has merged into the Grantor, and as a result, the Grantor is the successor of all the rights and obligations of Babcock and Brown Administrative Services Inc.;

WHEREAS, Section 1(g) of the LLC Agreement provides that any manager of the Company may delegate all or any of its powers or duties under the LLC Agreement to another manager or to any member or any other person or entity by an instrument in writing;

NOW, THEREFORE, the Grantor hereby appoints Mr. Lolonyon Akouuete and Ms. Denise Edward as its attorney in fact (the "Attorney"), with powers to be exercised jointly with member or manager of the Grantor, to act on behalf of the Grantor in connection with any and all matters relating to the management and operation of the Company, including but not limited to:

1. the right to sell, buy, lease, mortgage, assign, rent or dispose of any real property on behalf of the Company; and
2. the right to execute, acknowledge, and deliver any and all documents, contracts, agreements, checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and other instruments of any nature whatsoever, as may be necessary or desirable, and to perform all acts and do everything that the Grantor could do; and
3. the right to open a bank account/s, deposit, endorse, or withdraw funds to or from any of the Company's bank accounts or safe deposit box;
4. the right to initiate, defend commence or settle legal actions on the Company's behalf;
5. the right to retain any accountant, attorney, or other adviser deemed necessary to protect the Company's interests relative to any foregoing unlimited power;
6. the right to bind the Grantor by executing documents or instruments on its behalf, and any such executed documents or instruments shall be binding upon and enforceable against the Grantor.

The Grantor undertakes to:
- ratify and confirm whatever the Attorney does or purports to do in good faith in exercising the powers conferred by this Power of Attorney; and
- Indemnify the Attorney against all claims, losses, costs, expenses, damages or liability incurred by her as a result of acting in good faith pursuant to this power of attorney (including any costs incurred in enforcing this indemnity).

See Exhibit A hereto for additional rights with respect to the Company property.

This Power of Attorney shall be governed by and construed in accordance with the laws of the State of Delaware. The powers and duties of an Agent under a durable power of attorney are explained more fully in Delaware Code, Title 12, Chapter 49A, Section 49A-114 and Sections 49A-201 through 49A-217.

1

578

By signing below, I have read or had explained to me this notice and I understand its contents. I have had an attorney licensed in the State of Arizona review and approve of me signing this Durable Power of Attorney.

This Power of Attorney shall be effective from the signing date below and shall continue in full force and effect until revoked by the Grantor in writing.

**Reliance on This Power of Attorney**
Any person, including my Agent(s), may rely upon this power of attorney or a copy of it unless that person knows it has terminated or is invalid.

**Revocation of Prior Power of Attorney**
If you have previously executed a power of attorney granting authority covered in this document, indicate below whether or not you wish to revoke the prior power of attorney. INITIAL your selection below:

____ All my previously executed powers of attorney are hereby revoked, except those powers of attorney described in § 49A-103(a) of Title 12 of the Delaware Code, none of which are personal powers of attorney described within the meaning of § 49A-102(9) of Title 12 of the Delaware Code.

**IN WITNESS WHEREOF**, the Grantor has executed this Power of Attorney as of the date first written above as an instrument under seal.

BABCOCK AND BROWN PARALLEL MEMBER LLC

By: _____
Name: F. Jan Blaustein Scholes
Title: Manager, duly authorized

I, DJIGBOD LOKOSSOU _____, swear that I am not related to the Principal by blood, marriage, or adoption; and that I am not entitled to any portion of the estate of the Principal under the Principal's current will or codicil, or under any current trust instrument of the Principal.

_____
Witness Signature

DJIGBODI LOKOSSOU _____
Print Witness Name

State of Arizona

COUNTY OF _Arizona_____

This Durable **Power** of **Attorney** was signed by the Principal, witnessed by the person aforesaid, and acknowledged before me, the Subscriber, a Notary Public, as the free act and deed of the Principal this _26_ day of June, 2023.

_____
Notary Public

My Commission Expires: _02-28-2027___ (seal)

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 642362
My Comm. Expires Feb 28, 2027

**EXHIBIT "A"**

**Real Property § 49A-204**

1. To demand, buy, lease, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject an interest in real property or a right incident to real property;
2. To sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; retain title for security; encumber; partition; consent to partitioning; subject to an easement or covenant; subdivide; apply for zoning or other governmental permits; plat or consent to platting; develop; grant an option concerning; lease; sublease; contribute to an entity in exchange for an interest in that entity; or otherwise grant or dispose of an interest in real property or a right incident to real property;
3. To pledge or mortgage an interest in real property or right incident to real property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;
4. To release, assign, satisfy, or enforce by litigation or otherwise a mortgage, deed of trust, conditional sale contract, encumbrance, lien, or other claim to real property which exists or is asserted;
5. To manage or conserve an interest in real property or a right incident to real property owned or claimed to be owned by the Principal, including:
   a. Insuring against liability or casualty or other loss;
   b. Obtaining or regaining possession of or protecting the interest or right by litigation or otherwise;
   c. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with them; and
   d. Purchasing supplies, hiring assistance or labor, and making repairs or alterations to the real property;
6. To use, develop, alter, replace, remove, erect, or install structures or other improvements upon real property in or incident to which the Principal has, or claims to have, an interest or right;
7. To participate in a reorganization with respect to real property or an entity that owns an interest in or right incident to real property and receive, and hold, and act with respect to stocks and bonds or other property received in a plan of reorganization, including:
   a. Selling or otherwise disposing of them;
   b. Exercising or selling an option, right of conversion, or similar right with respect to them; and
   c. Exercising any voting rights in person or by proxy;
8. To change the form of title of an interest in or right incident to real property; and
9. To dedicate to public use, with or without consideration, easements or other real property in which the Principal has, or claims to have, an interest.

3

### Tangible Personal Property § 49A-205

1. To demand, buy, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject ownership or possession of tangible personal property or an interest in tangible personal property;
2. To sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; create a security interest in; grant options concerning; lease; sublease; or otherwise dispose of tangible personal property or an interest in tangible personal property;
3. To grant a security interest in tangible personal property or an interest in tangible personal property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;
4. To release, assign, satisfy, or enforce by litigation or otherwise, a security interest, lien, or other claim on behalf of the Principal, with respect to tangible personal property or an interest in tangible personal property;
5. To manage or conserve tangible personal property or an interest in tangible personal property on behalf of the Principal, including:
    a. Insuring against liability or casualty or other loss;
    b. Obtaining or regaining possession of or protecting the property or interest, by litigation or otherwise;
    c. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with taxes or assessments;
    d. Moving the property from place to place;
    e. Storing the property for hire or on a gratuitous bailment; and
    f. Using and making repairs, alterations, or improvements to the property; and
6. To change the form of title of an interest in tangible personal property.

### Claims and Litigation § 49A-212

1. To assert and maintain before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, offset, recoupment, or defense, including an action to recover property or other thing of value, recover damages sustained by the Principal, eliminate or modify tax liability, or seek an injunction, specific performance, or other relief;
2. To bring an action to determine adverse claims or intervene or otherwise participate in litigation;
3. To seek an attachment, garnishment, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree;
4. To make or accept a tender, offer of judgment, or admission of facts, submit a controversy on an agreed statement of facts, consent to examination, and bind the Principal in litigation;

4

5. To submit to alternative dispute resolution, settle, and propose or accept a compromise;

6. To waive the issuance and service of process upon the Principal, accept service of process, appear for the Principal, designate persons upon which process directed to the Principal may be served, execute and file or deliver stipulations on the Principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive, execute, and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;

7. To act for the Principal with respect to bankruptcy or insolvency, whether voluntary or involuntary, concerning the Principal or some other person, or with respect to a reorganization, receivership, or application for the appointment of a receiver or trustee which affects an interest of the Principal in property or other thing of value;

8. To pay a judgment, award, or order against the Principal or a settlement made in connection with a claim or litigation; and

9. To receive money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

## Taxes § 49A-216

1. To prepare, sign, and file federal, state, local, and foreign income, gift, generation skipping transfer, payroll, property, Federal Insurance Contributions Act (26 U.S.C. § 3101 et seq.), and other tax returns, claims for refunds, requests for extension of time, petitions regarding tax matters, and any other tax-related documents, including receipts, offers, waivers, consents, including consents and agreements under § 2032A of the Code, closing agreements, and any power of attorney required by the Internal Revenue Service or other taxing authority with respect to a tax year upon which the statute of limitations has not run and the following 25 tax years;

2. To pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authority;

3. To exercise any election available to the Principal under federal, state, local, or foreign tax law; and

4. To act for the Principal in all tax matters for all periods before the Internal Revenue Service, or other taxing authority.

5

# WRITTEN CONSENT
# OF THE MANAGER
# OF BABCOCK AND BROWN PARALLEL MEMBER LLC
# IN LIEU OF A MEETING

The undersigned, being the manager of BABCOCK AND BROWN PARALLEL MEMBER LLC, a Delaware limited liability company (the "**Company**"), acting by written consent without a meeting pursuant to Section 18-404 of the Delaware Limited Liability Company Act, does hereby consent to the adoption of the following resolutions:

**WHEREAS**, F. Jan Blaustein Scholes ("**Scholes**") is the Manager of the Company; and

**WHEREAS**, F. Jan Blaustein Scholes is over the age of eighteen and is of sound mind and is not under a conservatorship or guardianship in the State of Arizona; and

**WHEREAS**, F. Jan Blaustein Scholes resides in the State of Arizona and is executing this document in the State of Arizona.

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that a Durable Power of Attorney be executed authorizing Lolonyon Akouete and Denise Edwards to undertake the actions specified therein;

**RESOLVED**, that the Bill of Sale executed on November 21, 2022, be amended as follows:

(i) The Title of the Document shall be amended to delete "Bill of Sale" and substitute "Transfer of Manager Role";

(ii) The WHEREAS clause shall be amended to delete the word "sell" and "transfer her Manager role of Westborough SPE LLC" shall be substituted therefore. In addition, "Buyer desires to buy" shall be deleted and the following substituted therefore "Subsequent Manager desires to assume the Role as Manager(s) of Westborough SPE LLC". In addition "and all assets thereof" shall be deleted.

(iii) Paragraph 1 shall be deleted in its entirety and "The consideration paid heretofore for a change in Manager is $100.00 which was tendered by Money Order to Scholes".

(iv) Paragraphs 1(a)-(b) shall be deleted in their entirety.

(v) Paragraph 2 shall be deleted in its entirety and F. Jan Blaustein Scholes is not under a conservatorship/guardianship in the State of Arizona where she currently resides and is of sound legal mind, and understands the consequences of this Agreement to Transfer Manager Role".

(vi) Paragraph 3 shall be deleted in its entirety and the following substituted therefore "Westborough SPE LLC has an outstanding debt owed to the Town of Westborough for unpaid obligations which as of May 2023 equated to approximately $920,000.00. In addition, there are unclaimed funds in the State of California of approximately $1,200,000.00 belonging to Westborough SPE LLC. Akouete and Edwards have become Managers of Westborough SPE LLC and that

is hereby ratified and confirmed. Akouete and Edwards are authorized to take whatever actions necessary to recover and protect the property located at Turnpike Road, Westborough, Massachusetts and recover the unclaimed funds in the State of California."

(vii)    Paragraph 5 shall be deleted and the following substituted therefore "This Agreement shall be governed by the laws of the State of Arizona as to contract formation and capacity and the State of Delaware as to limited liability company actions".

(viii)    Paragraph 6 shall remain and is hereby ratified and confirmed and Westborough SPE LLC was lawfully reinstated in both Delaware and Massachusetts.

(ix)    Paragraph 8 shall be added, "If any provision of this Agreement shall to any extent be held void or unenforceable (as to duration, scope, activity, subject or otherwise) by a court of competent jurisdiction, such provision shall be deemed to be modified so as to constitute a provision conforming as nearly as possible to the original provision while still remaining valid and enforceable. In such event, the remainder of this Agreement (or the application of such provision to persons or circumstances other than those in respect of which it is deemed to be void or unenforceable) shall not be affected thereby. Each other provision of this Agreement, unless specifically conditioned upon the voided aspect of such provision, shall remain valid and enforceable to the fullest extent permitted by law; any other provisions of this Agreement that are specifically conditioned on the voided aspect of such invalid provision shall also be deemed to be modified so as to constitute a provision conforming as nearly as possible to the original provision while still remaining valid and enforceable to the fullest extent permitted by law."

(x)    Paragraph 9 shall be added "Time shall be of the essence as to each term hereof."

(xi)    Paragraph 10 shall be added "Each party recognizes that this Agreement is a legally binding contract and acknowledges that it, he or she has had the opportunity to consult with legal counsel of choice. In any construction of the terms of this Agreement, the same shall not be construed against either party on the basis of that party being the drafter of such terms."

(xii)    Paragraph 11 shall be added "Scholes has engaged an attorney licensed in the State of Arizona to represent her interests with respect to this Agreement and the attorney has reviewed the document and consents to its signing."

**RESOLVED**, that the manager be, and each of them individually hereby is, authorized and directed to do and perform or cause to be done and performed all such acts, deeds, and things, and to make, execute, and deliver, or cause to be made, executed, and delivered, all such agreements, undertakings, documents, instruments, or certificates in the name of the Company and to retain such counsel, agents, and advisors and to incur and pay such expenses, fees, and taxes as shall, in the opinion of the manager of the Company executing the same, be deemed necessary or advisable (such necessity or advisability to be conclusively evidenced by the execution thereof) to effectuate or carry out fully the purpose and interest of all of the foregoing resolutions; and that any and all such actions heretofore or hereafter taken by the manager

2

relating to and within the terms of these resolutions be, and they hereby are, adopted, affirmed, approved, and ratified in all respects as the act and deed of the Company; and

**RESOLVED**, that an executed copy of this Written Consent shall be filed with the minutes of the proceedings of the managers.

**IN WITNESS WHEREOF**, the undersigned manager has duly executed this Written Consent as of June ~~23~~ , 2023 as an instrument under seal.

Signature: _____ Date: 2/62/28

F. Jan Blaustein Scholes, Manager

I, _____, swear that I am not related to the Principal by blood, marriage, or adoption; and that I am not entitled to any portion of the estate of the Principal under the Principal's current will or codicil, or under any current trust instrument of the Principal.

State of Arizona

COUNTY OF ___Arizona___

This Durable **Power** of **Attorney** was signed by the Principal, witnessed by the person aforesaid, and acknowledged before me, the Subscriber, a Notary Public, as the free act and deed of the Principal this __2 6__ day of June, 2023.

_____
Notary Public

My Commission Expires: __02-28-2027__ (seal)

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 642362
My Comm. Expires Feb 28, 2027

3

585

# **Exhibit 4**
## Documentation of Managerial Transition from BBAS Inc to BBAS LLC to BBPM LLC



# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND

CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A DELAWARE

CORPORATION UNDER THE NAME OF "BABCOCK & BROWN ADMINISTRATIVE

SERVICES, INC." TO A DELAWARE LIMITED LIABILITY COMPANY, CHANGING

ITS NAME FROM "BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC." TO

"BABCOCK & BROWN ADMINISTRATIVE SERVICES  LLC", FILED IN THIS

OFFICE ON THE THIRD DAY OF JANUARY, A.D. 2000, AT 9 O`CLOCK A.M.



Jeffrey W. Bullock, Secretary of State

2811627 8100V

SR# 20232925381

Authentication: 203683809

Date: 07-05-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

587

W891911

# State of Delaware - Division of Corporations

**FAX**      DOCUMENT FILING SHEET

| | | | | | |
|---|---|---|---|---|---|
| Priority 1 (Two Hr. Service) | Priority 2 (Same Day) | Priority 3 (24 Hour) | Priority 4 (Must Approvals) | Priority 5 (Reg. Approvals) | Priority 6 (Reg. Work) |

DATE SUBMITTED ___12-23-99___  01-03-00

REQUESTOR NAME   CORPAMERICA INC.

ADDRESS   30 OLD RUDNICK LANE

DOVER, DE 19901

ATTN. _Rose_

PHONE _302-736-4300_

FILE DATE _12-23-99_

FILE TIME _0900_

01-03-00

NAME of COMPANY / ENTITY _Babcock & Brown Administrative Services LLC_

SRV NUMBER _001001228_

FILE NUMBER _2811627_

FILER'S NUMBER _9168016_

RESERVATION NO. _____

TYPE of DOCUMENT _Formation/Conversion_

DOCUMENT CODE _17217_

CHANGE of NAME _____    CHANGE of AGENT / OFFICE _____    CHANGE of STOCK _____

## CORPORATIONS

| | | |
|---|---|---|
| FRANCHISE TAX   YEAR ____ | $ _____ | |
| FILING FEE TAX | $ _____ | |
| RECEIVING & INDEXING | $ _____ | |
| CERTIFIED COPIES   NO. 1 | $ _____ | |
| SPECIAL SERVICES | $ _____ | |
| KENT COUNTY RECORDER | $ _____ | |
| NEW CASTLE COUNTY RECORDER | $ _____ | |
| SUSSEX COUNTY RECORDER | $ _____ | |
| TOTAL: | $ _____ | |

## METHOD of RETURN

_X_ MESSENGER / PICKUP
____ FED. EXPRESS Acct. # _____
____ REGULAR MAIL
____ FAX No. _____
____ OTHER _____

## COMMENTS / FILING INSTRUCTIONS

_Converting to Babcock & Brown Administrative Services, Inc._
**★ EFFECTIVE 12/31/99 ★**

## CREDIT CARD CHARGES

You have my authorization to charge my credit card for this service:

☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐ - ☐☐☐☐    Exp. Date _____

Signature _____ Printed Name _____

XX | AGENT USE ONLY

## INSTRUCTIONS

1. Fully shade in the required Priority square using a dark pencil or marker, staying within the square.
2. Each request must be submitted as a separate item, with its own Filing sheet as the FIRST PAGE.

SODDFS3 03-06-95

STATE OF DELAWARE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/03/2000
001001228 – 2811627

# STATE OF DELAWARE
## CERTIFICATE OF CONVERSION
## FROM A CORPORATION TO A LIMITED LIABILITY COMPANY
## PURSUANT TO SECTION 266 OF THE
## DELAWARE GENERAL CORPORATION LAW

(1)     The name of the corporation immediately prior to filing this Certificate is **Babcock & Brown Administrative Services, Inc.**

(2)     The date the Certificate of Incorporation was filed on is October 23, 1997.

(3)     The original name of the corporation as set forth in the Certificate of Incorporation is Babcock & Brown Administrative Services, Inc.

(4)     The name of the limited liability company as set forth in the formation is **Babcock & Brown Administrative Services LLC**.

(5)     The conversion has been approved in accordance with the provisions of Section 266.

By: Jan Blaustein Scholes, Authorized Officer

Dated: December 31, 1999

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/03/2000
001001228 – 2811627

## CERTIFICATE OF FORMATION

### OF

## BABCOCK & BROWN ADMINISTRATIVE SERVICES LLC

This Certificate of Formation of Babcock & Brown Administrative Services LLC, a Delaware limited liability company (the "Company"), dated as of December 31, 1999, is being duly executed and filed by Babcock & Brown Inc., a California corporation, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del.C. §18-101, et seq.) (the "Delaware Act").

FIRST:   The name of the limited liability company formed hereby is **Babcock & Brown Administrative Services LLC**.

SECOND:   The address of the registered office of the Company in the State of Delaware is c/o CorpAmerica, Inc., 30 Old Rudnick Lane, Dover, Delaware 19901.

THIRD:   The name and address of the registered agent for service of process on the Company in the State of Delaware is CorpAmerica, Inc., 30 Old Rudnick Lane, Dover, Delaware 19901.

IN WITNESS WHEREOF, the undersigned, an authorized person as described in the Delaware Act, has executed this Certificate of Formation as of the date first above written.

Authorized Person:

Babcock & Brown Inc.,
a California corporation

By:  Jan Blaustein Scholes
Its:  Vice President

590



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"BABCOCK & BROWN ADMINISTRATIVE SERVICES  LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "BABCOCK & BROWN PARALLEL MEMBER LLC" UNDER THE NAME OF "BABCOCK & BROWN PARALLEL MEMBER LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE ON THE TWENTY-NINTH DAY OF AUGUST, A.D. 2011, AT 2:33 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

2811627  8100M
SR# 20232925381

Authentication: 203683808
Date: 07-05-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

591

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:33 PM 08/29/2011
FILED 02:33 PM 08/29/2011
SRV 110960806 - 4370415 FILE

**DELAWARE**
**CERTIFICATE OF MERGER**
**OF**
**BABCOCK & BROWN ADMINISTRATIVE SERVICES LLC**
**WITH AND INTO**
**BABCOCK & BROWN PARALLEL MEMBER LLC**

August 28, 2011

Pursuant to Section 18-209 of the Delaware Limited Liability Company Act (the "DLLCA"), Babcock & Brown Parallel Member LLC, a Delaware limited liability company (the "Company"), in connection with the merger (the "Merger") of Babcock & Brown Administrative Services LLC, a Delaware limited liability company ("Target"), with and into the Company, hereby certifies as follows:

FIRST: The respective names and states of formation or incorporation of the constituent companies to the Merger are as follows:

| Name | State of Formation or Incorporation |
| --- | --- |
| Babcock & Brown Parallel Member LLC | Delaware |
| Babcock & Brown Administrative Services LLC | Delaware |

SECOND: An Agreement and Plan of Merger, dated as of August 29, 2011, between the Company and Target (the "Merger Agreement"), setting forth the terms and conditions of the Merger, has been approved, adopted, certified, executed and acknowledged by each of the Company and Target.

THIRD: The Company shall be the surviving limited liability company (the "Surviving Company") of the Merger. The name of the Surviving Company is "Babcock & Brown Parallel Member LLC".

FOURTH: The Merger shall become effective upon the filing of this Certificate of Merger with the Secretary of State of the State of Delaware.

FIFTH: An executed copy of the Merger Agreement is on file at the office of the Surviving Company located at 50 California Street, Suite 3610, San Francisco, California 94111. A copy of the Merger Agreement will be furnished by the Surviving Company, on request and without cost, to any member of the Surviving Company or any member of Target.

[Signature page follows.]

The undersigned is signing this Certificate of Merger as of the date first written above.

BABCOCK & BROWN PARALLEL MEMBER LLC

By: _____

Name:   Chaye Besherse

Title:    Secretary

*Signature page to Delaware Certificate of Merger*

## State of Delaware
## Certificate of Correction
## of a Limited Liability Company
## to be filed pursuant to Section 18-211(a)

1.  The name of the Limited Liability Company is:_____

    BABCOCK & BROWN PARALLEL MEMBER LLC

2.  That a Certificate of _____CANCELLATION_____ was filed by the Secretary
    of State of Delaware on 15 March 2019 , and that said Certificate requires
    correction as permitted by Section 18-211 of the Limited Liability Company Act.

3.  The inaccuracy or defect of said Certificate is: (must give specific reason)

    Due to a clerical error, the cancellation was filed
    prematurely. The entity is the Manager of Westborough
    SPE, LLC and there are still significant assets that
    need to be liquidated.

4.  The Certificate is hereby corrected to read as follows:

    The Certificate of Cancellation/Withdrawal is
    rendered null and void.

**IN WITNESS WHEREOF**, the undersigned have executed this Certificate on
the 23 _____ day of June _____, A.D. 2023 .

By: _____
                    Authorized Person

Name: F Jan Blaustein Schol
                    Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:21 AM 06/30/2023
FILED 07:21 AM 06/30/2023
SR 20232897300 - File Number 4370415

594



# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY "BABCOCK & BROWN PARALLEL MEMBER LLC"

IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN

GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF

THIS OFFICE SHOW, AS OF THE FIFTH DAY OF JULY, A.D. 2023.

Jeffrey W. Bullock, Secretary of State

4370415  8300

SR# 20232917389

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203677211

Date: 07-05-23

# Exhibit 5
Westborough SPE LLC - 19 TL 00768 Joint
Pre-Trial Memorandum

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.                    LAND COURT
                                CASE NO. 19 TL 000768

_____
                                )
TOWN OF WESTBOROUGH,            )
                                )
                    Plaintiff,  )
v.                              )
                                )
WESTBOROUGH SPE, LLC            )
                                )
                    Defendant.  )
_____)

### JOINT PRE-TRIAL MEMORANDUM
### (SECOND~~FIRST~~ DRAFT)

Pursuant to the Order of this Court, in preparation for the Pre-Hearing on the Motion to Vacate Judgment, Plaintiff Town of Westborough and the Defendant Westborough SPE, LLC, by their undersigned counsels, submit the following Joint Pre-Trial Memorandum. The first draft of which was provided by the Plaintiff to the Defendant per said Order on Friday, August 4, 2023 at 4:20 PM Eastern Time and the second draft provided to the Defendant on Tuesday, August 22nd, 2023 at 9:00 AM Eastern Time.

1. **Legal Issues, Claims and Defenses**

The locus ~~is a vacant~~consists of commercial property consisting of an approximately 29 acre parcel and having a structure that was formerly leased and operated as a movie theater by Hoyts and their successor in interest Regal Cinemas. The legal issue before this Court is whether the Defendant that filed a Motion to Vacate Foreclosure Judgment is the same

1

**Formatted:** Superscript

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

taxpayer as was the Defendant when the Judgment of Foreclosure entered in the above-referenced case upon 231 Turnpike Avenue in Westborough, Massachusetts.

**Plaintiff's Claims and Defenses**:

The Plaintiff, Town of Westborough, is opposed to the Motion to Vacate for the following reasons:

a. As a matter of equity, a petition to vacate a prior decree foreclosing the right of redemption under a tax title is "extraordinary in nature and ought to be granted only after careful consideration and in instances where . . . [it is] required to accomplish justice." Sharon v. Kafka, 18 Mass. App. Ct. 541, 542 (1984); Lynch v. Boston, 313 Mass. 478, 480 (1943). It would not accomplish justice to vacate the decree of foreclosure as the Defendant does not have a legal interest in the locus and therefore, does not have standing to petition to vacate the prior decree of foreclosure entered by this Court. This Honorable Court should not vacate the decree of foreclosure and allow redemption by this party as it would not be based in equity.

b. The Motion to Vacate was filed on the last day before the tolling of the one (1) year period allowed for a Defendant to put forth such a motion for consideration of this Court. Said motion should have been rejected as it was filed Pro Se in violation of the filing requirements for a corporate entity in the Land Court of the Commonwealth of Massachusetts. Thus, this Court should not be able to consider the motion.

c. According to the docket in this case, on June 30, 2023, with the assistance of legal counsel, Defendant filed a supplement to the Motion to Vacate over one year and five months after the Judgment entered. Said supplement substantially changes the

2

Defendant's position, arguments and evidence related to its claim of ownership from the Defendant's Motion to Vacate and is not properly characterized as a supplement.

d. According to the docket in this case, on July 6, 2023, with the assistance of legal counsel, Defendant filed a second supplement to Defendant's Motion to Vacate over one year and five months after the Judgment entered. This supplement substantially changes the Defendant's position, arguments and evidence related to its claim of ownership from the Motion to Vacate as originally filed and is not properly characterized as a supplement.

e. Plaintiff believes Jan Blaustein (a/k/a F. Jan Blaustein Scholes) did not and does not have a legal interest in Westborough SPE LLC or any assets of said corporation and therefore could not have transferred any interest in the corporation or its assets via the "Bill of Sale" (subsequently amended to be named "Transfer of Manager Role").

f. Plaintiff believes Jan Blaustein (a/k/a F. Jan Blaustein Scholes) did not and does not have the required mental capacity to enter legal contracts.

g. Plaintiff believes the recent evidence the Defendant has presented related to the merger of Babcock & Brown Administrative Services LLC into and with Babcock & Brown Parallel Member LLC further confirms Plaintiff's position that Jan Blaustein (a/k/a F. Jan Blaustein Scholes) did not and/or does not have a legal interest in Westborough SPE LLC its management or its assets at the time of signing the "Bill of Sale" and subsequently the "Transfer of Manager Role".

h. Plaintiff believes the documents presented by Defendant called the "DURABLE POWER OF ATTORNEY" & "WRITTEN CONSENT OF THE MANAGER OF BABCOCK AND BROWN PARALLEL MEMBER LLC IN LIEU OF MEETING"

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

3

dated June 26, 2023, signed by F. Jan Blaustein Scholes as Manager of Babcock and Brown Parallel Member, LLC were executed in exchange for $600,000.00 from the Defendant. Therefore, undue influence and unclean hands are a concern.

i. The "DURABLE POWER OF ATTORNEY" references an operating agreement for Westborough SPE LLC dated October 20, 1997. To Plaintiff's knowledge, said operating agreement has not been presented by the Defendant as evidence. Rather, the Defendant presented as evidence an unsigned operating agreement dated October 22, 1997. For more information see below under "General Facts".

j. Plaintiff believes all parties known to hold an interest in the locus in the tax lien foreclosure case were properly noticed and that there is no existence of a due process violation.

**Defendant's Legal Issues, Claims, and Defenses**:

**1. Request for Superior Court Business Litigation Session Jury Demand for All Issues So Triable.**

While the Land Court only holds bench trials, a party can request that the Land Court frame jury triable questions for a Superior Court jury to decide. The Superior Court's determination on framed issues binds the Land Court, although the Land Court can receive evidence, hear arguments, and decide the remaining issues before rendering a decision in the case pursuant to the authority granted under M.G.L. c. 185, §§ 15 and 17. To preserve a jury right in a Land Court case, a party must make a proper jury demand and perfect the demand. A party perfects a jury demand by both:

- (i) Having the Land Court frame jury questions on any material **issues of fact**. Counsel typically files a motion/request with the Land Court to frame questions for a Superior Court jury trial. In deciding the motion, the Land Court may consider whether the proposed jury

4

questions relate to a jury triable issue. *See*, *e.g.*, *Ne. Univ. v. Nahant Pres. Tr., Inc.*, 2019 WL 5959579, at *2 (Mass. Land Ct. Oct. 24, 2019).

- and (ii) Timely filing certified copies of the framed jury questions and other relevant documents in the Superior Court in the county for the land at issue. While a party generally must file these documents within 30 days from the deadline to make a jury demand, which requires a party to act promptly in having the Land Court frame jury questions, tax/title proceedings are usually perfunctorily administered by the Recorder of the Land Court, and do not require a trial.

The parties generally waive a jury demand if the court holds a bench trial without objection and thus Defendant expressly preserves its rights to a jury demand and objects accordingly. *Trs. of Wash. W. Condo. Tr. v. Ashkouri*, 43 N.E.3d 727, at *3 (Mass. App. Ct. 2016) (unpublished opinion under Mass. App. Ct. Rule 1:28); *but see CMJ Mgmt. Co. v. Wilkerson*, 75 N.E.3d 605, 612-13 (Mass. App. Ct. 2017) (excusing failure to object to bench trial because court impermissibly struck jury demand as a sanction)). The parties have an opportunity to object if there is a jury demand because the trial judge must ask the parties whether they intend to have a jury trial or bench trial before swearing any witnesses (*see Cort v. Majors*, 82 N.E.3d 1089, 1092 (Mass. App. Ct. 2017)).

Westborough SPE LLC hereby objects to a bench trial in this matter if its motion for involuntary dismissal (discussed *infra*) is not granted.

2. **Which Party Has the Burden of Proof?/Failure of Land Court Title Examiner and Town of Westborough to Review Delaware Corporate Records.**

The Land Court has exclusive, original jurisdiction over proceedings for foreclosure and redemption of tax titles. M.G.L. c. 185, § 1(b); *see generally Tallage Lincoln, LLC v. Williams*,

5

485 Mass. 449, 450 (2020) (explaining in detail "the archaic and arcane process of tax lien foreclosure") (footnote omitted).

In *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449 (2020), the Supreme Judicial Court recently provided a comprehensive review of the law regarding the collection of real estate taxes in the Commonwealth. "When a taxpayer fails to pay his or her real estate taxes, the statutory scheme provides municipal tax collectors with two primary ways to collect the taxes: by conducting a tax sale, *see* M.G. L. c. 60, §§ 43-45, or by executing a tax taking, *see* M.G. L. c. 60, § 53." *Id*. at 451. Tax takings have become the predominant method of tax collection. *See id*. (tax sales "have largely been replaced by tax takings"). Section 53 provides in pertinent part:

> If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published ...

When a municipal tax collector conducts a tax taking, "the municipality obtains 'tax title' to the property, which is best understood as legal ownership of the property subject to the owner's right of redemption. M.G. L. c. 60, § 53." *Id*. After such a taking, "the municipality must create a 'tax title account,' to which it can 'certify' (*i.e.*, add) subsequent missed tax payments, as well as any other fees, charges, and interest accrued, without having to conduct another taking. M.G. L. c. 60, §§ 50, 61." *Id*. If the taxpayer does not redeem the property by paying the balance of the tax title account within six months of the taking, "the municipality can petition the Land Court to foreclose the taxpayer's right of redemption" pursuant to M.G. L. c. 60, § 65. *Id*. Section 65 provides in pertinent part:

> Except as provided in section sixty-two, whoever then holds the title to land acquired by a sale or taking for taxes may bring a petition in the land court for the foreclosure of all rights of redemption of said land either six months from the sale or taking.... Such petition shall be made in the form to be prescribed by said court and shall set forth a description of the land to which

6

it applies, with its assessed valuation, the petitioner's source of title, giving a reference to the place, book and page of record, and such other facts as may be necessary for the information of the court.

"[I]f the municipality does not wish to proceed against the taxpayer itself, it can assign the tax title to a private party" pursuant to G. L. c. 60, § 2C (bulk sale of tax receivables and liens) or M.G.L. c. 60, § 52 (tax title auction). *Tallage Lincoln, LLC*, 485 Mass. at 451.

Once a petition is filed pursuant to § 65, the Land Court causes a title examination to be conducted to determine interested parties and provides notice to those parties of the proceedings. M.G.L. c. 60, § 66. Here, the title examiner (Michael H. Delaney, Esq.) and the Town of Westborough knew that the record title holder to the Property, Westborough SPE LLC was a Delaware limited liability company (Pursuant to the Quitclaim Deed recorded at Book 19369, Page 75 on November 21, 1997), yet, upon information and belief, the title examiner and the Town of Westborough failed to search the records of the Delaware Secretary of State Division of Corporations. Had the title examiner and the Town of Westborough diligently searched Delaware records, they would have easily identified that Babcock and Brown Administrative Services, Inc., a Delaware Corporation, and predecessor manager of Westborough SPE LLC, became Babcock and Brown Administrative Services LLC, which merged and became Babcock and Brown Parallel Member LLC.  As Westborough SPE LLC was and is a manager-managed LLC, the Land Court Title Examiner and/or the Town of Westborough had a legal duty to identify the proper manager of the title holder, which only could be ascertained with certainty from a diligent search of Delaware Secretary of State Division of Corporations records. The Massachusetts Secretary of The Commonwealth Corporations Division is merely a repository of filed documents and does not opine on corporate status or authority for non-Massachusetts entities or non-Massachusetts corporations—they either have a foreign registration document or they do not—which is not

7

entirely dispositive. Their role is **circumscribed**. Moreover, https://www.sec.state.ma.us/divisions/terms.htm explicitly states that any online records are "For Information Purposes Only". The Secretary of the Commonwealth is merely a custodian/keeper of the records.

If no interested party timely appears and responds to the petition, as was the case here, "the municipality or assigned private party may immediately move the court to enter a judgment of foreclosure of the right of redemption. G. L. c. 60, § 67." *Tallage Lincoln, LLC*, 485 Mass. at 452.8 "Upon entry of such judgment, the municipality or private party assignee takes absolute title to the property. M.G.L. c. 60, § 69."  Id.9 "[T]he foreclosure judgment extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's or third party's tax title into absolute title. G. L. c. 60, § 64." *Id*.10 Of particular note here, "the foreclosing party takes title free and clear of all encumbrances, including mortgages and other liens." Id. at 452-53 (citations omitted).

Section 64 provides in pertinent part:

The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of the land court as provided in this chapter. The land court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed or a taking of land for taxes....

However, there is a caveat to the finality of a foreclosure judgment: "the taxpayer may move to vacate the judgment if [it] pays the redemption amount, plus interest, within one year. G. L. c. 60, § 69A." *Tallage Lincoln, LLC*, 485 Mass. at 453.11 "After one year, the judgment is final and can be vacated only upon a showing of a denial of due process." *Id.*, *citing Town of North Reading v. Welch*, 46 Mass. App. Ct. 818, 819-820 (1999). "A petition brought within one year requires a showing of some extenuating circumstance, while a petition brought after the one-year limitations period can prevail only upon a showing of a due process violation." *Town of Bourne v. Coffey*, 101

8

Mass. App. Ct. 496, 500 n.10 (2022) (emphasis in original). In *Vincent Realty Corp. v. Boston*, 375 Mass. 775, 778 (1978), the Supreme Judicial Court considered a petition to vacate brought within one year of the foreclosure decree. The court recognized that "[M.G. L. c. 60, §] 69A does not give one the automatic right to redeem, but sets the time period within which petitions to vacate should be brought." *Vincent Realty Corp.*, supra at 780 n.6. *Vincent Realty* instructs that, even when filed within the one-year limitations period, "a petition to vacate a prior decree foreclosing the right of redemption under a tax title is 'extraordinary in nature and ought to be granted only after careful consideration and in instances where they are required to accomplish justice' " (citation omitted). *Id*. The *Vincent Realty* Court went on to conclude that no such "extenuating circumstances" existed to warrant allowance of the petition to vacate.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Town of Andover v. State Fin. Servs., Inc.*, 432 Mass. 571, 574 (2000), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

A municipality's failure to assess taxes correctly on "normal" land (that is, land that's not low value) invalidates the subsequent tax title unless the municipality shows that the erroneous assessment wasn't substantial or misleading. *See Christian v. Mooney*, 400 Mass. 753, 761-762 (1987).

M.G.L. c. 59, § 11 makes clear that if "[t]here [is] no person in possession of the [taxed] parcel," § 11 requires a town's assessors:

to assess the property in question to the "owner" and that mean[s] the owner "appearing of record" as determined by resort to the records in the appropriate registry of deeds and registry of probate. The [assessors are] required to exercise reasonable diligence to try to determine the

9

owner from those sources, but if the board [can]not thereby determine the owner it [may] lawfully assess the property to "persons unknown," or ... assess it to [a] fictitious "John Doe."

*Hardy v. Jaeckle*, 371 Mass. 573, 579-580 (1976).

"Taxes assessed upon land ... shall with all incidental charges and fees be a lien thereon from January first in the year of assessment." M.G.L. c. 60, § 37. If assessed taxes go unpaid, a municipality may execute (as the Town did in this case) a tax taking under id. at § 53. See Tallage Lincoln, LLC, 485 Mass. at 451. Chapter 60, § 37 further provides that:

[n]o tax title ... shall be held to be invalid by reason of any error or irregularity which is neither substantial nor misleading, whether such error or irregularity occurs in the proceedings of the collector or the assessors or in the proceedings of any other official or officials charged with duties in connection with the establishment of such tax title,

but "[o]nce an error has been shown, the party who asserts the insubstantiality of the error has the burden of proving that fact," " 'according to the circumstances of each case.' " *Bartevian v. Cullen*, 369 Mass. 819, 822-823 & n. 4 (1976), *quoting Fall River v. Conanicut Mills*, 294 Mass. 98, 100 (1936); *see also Pass v. Town of Seekonk*, 4 Mass. App. Ct. 447, 450 (1976) (same).

**3. Defendant Objects to Non-Live Testimony, Except by Expert Witnesses**.

Defendant objects to written testimony, except for expert testimony, because it can prevent the trial judge from fully assessing a witness's credibility. The parties also risk the trial judge may overlook information that they have to obtain from reading testimony. Live cross-examination and redirect and rebuttal testimony must occur at trial. *See*, *e.g.*, *Harris v. Ward*, 2018 WL 4691071, at *1 n.2 (Mass. Land Ct. Sept. 27, 2018), judgment entered, 2018 WL 4685890 (Mass. Land Ct. Sept. 27, 2018).).

**4. Defendant's Motion for Involuntary Dismissal/Determination of the Right to Redeem**.

In a bench trial, a defendant (or other defending party) can move for involuntary dismissal after the opposing party presents its evidence. Unlike a jury trial, a party does not make a motion for directed verdict and the court can treat a motion for directed verdict as a motion for involuntary dismissal (*Skowronski v. Sachs*, 818 N.E.2d 635, 638 (Mass. App. Ct. 2004)).

10

A moving party must show that the opposing party lacks a right to relief based on the facts and the law (Mass. R. Civ. P. 41(b)(2)). The trial judge then determines if the evidence contains facts supporting a rational inference in the opposing party's favor, as viewed in the best light for the opposing party. Alternatively, the trial judge can evaluate the evidence and resolve any credibility, ambiguity, or inconsistency issues as the trier of fact. The trial judge decides the motion when made or after the close of the evidence. A dismissal operates as a decision on the merits (unless otherwise stated) and requires findings of fact if the trial judge uses the standard of review as a trier of fact. (Mass. R. Civ. P. 41(b)(2), (3), (c) and 52(a), (c); *M.G. v. G.A.*, 112 N.E.3d 837, 843-44 (Mass. App. Ct. 2018).).

The Town of Westborough, Massachusetts lacks a right to relief based on both the facts and the law. Massachusetts Courts have generally interpreted tax redemption statutes – because of their remedial nature—liberally in favor of a person seeking to recover his land. It is the policy of the law to favor redemption from tax sales. *West v. Bd. of Selectmen of Yarmouth*, 345 Mass. 547, 550 (1963) citing *United Trust Co. v. William S. Reed, et al.*, 213 Mass. 199, 201 (1912). "The record title continues to be in the town. The property is held subject to the [] right to redeem. In equity and good conscience [the party seeking redemption] should be allowed to exercise that right." *West*, 345 Mass. 547. at 551.

**Managers of an LLC have a right to redeem on behalf of LLC similar to a Trustee redeeming on behalf of Trust**.

Lolonyon Akouete and Denise Edwards as successor managers have the right to redeem on behalf of the LLC, Westborough SPE LLC. An LLC Manager is a fiduciary just like a trustee is a fiduciary in a trust structure. "Succeeding trustees, suing to redeem trust land sold for taxes, their predecessor having left his affairs considerably involved, the value of the property being about $2,000, while the amount due was only $14, were entitled to redeem." *Glazier v. Everett*, 224

11

Mass. 184 (1916); *see also Widersum v. Bender*, 172 Mass. 436 (1899); *Holbrook v. Brown*, 214 Mass. 542 (1913)). The only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interest. § 37.49. Right of redemption, 18B Mass. Prac., Municipal Law and Practice § 37.49 (5th ed.). Under the Delaware statute, a limited liability company's operating agreement specifies the rights and duties of its members and managers, including the terms under which it can be amended. *See, e.g.*, Del.Code. Ann. §§ 18–215, 18–302. The Managers of Westborough SPE LLC have the right to manage the affairs of the LLC, including the right to deal with all real property matters.

**5. The Statutory Scheme is Unconstitutional and Will Be Subject to a US District Court Filing Shortly**.

Numerous Courts in this Commonwealth have acknowledged the harshness of the statutory scheme resulting in a loss of equity. As noted by the Supreme Judicial Court in *Tallage Lincoln, LLC*, 485 Mass. at 453 n.4:

> "In Kelly v. Boston, 348 Mass. 385, 388, 204 N.E.2d 123 (1965), this court considered the legislative history of the statutory scheme governing tax lien foreclosures and determined that the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality. The parties in that case did not raise any constitutional challenge, and [the court] did not address the constitutionality of the statutory scheme. Here, too, the parties have not raised a constitutional challenge, and we do not address the constitutionality of the statutory scheme."

Now, finally, in *Tyler v. Hennepin Cty.*, 598 U.S. ___ (2023), the U.S. Supreme Court held in a unanimous decision that a municipality pocketing the excess between taxes owed and what the property sells for is unconstitutional and that the County could not "use the toehold of the tax debt to confiscate more property than was due", and by doing so, the County had "effected a 'classic taking in which the government directly appropriates private property for its own use.'" In support of its conclusion, the U.S. Supreme Court found that the principle that a

12

government cannot take morefrom a taxpayer than they owe traces its origins at least as far back as the Magna Carta in 1215. Moreover, the U.S. Supreme Court observed that Minnesota's rule was a minority rule and currently 36 states and the federal government require that excess value be returned to the taxpayer. The Court concluded that "[t]he taxpayer must render unto Caesar what is Caesar', but no more."

**6. Even If Westborough SPE LLC Could Not Afford to Pay The Redemption Amount It Can Make An Offer To Redeem And Seek An Order Granting Additional Time to Make The Redemption Payment.**

Inability to pay the redemption amount may ultimately lead to foreclosure of the right of redemption, but it does not prevent a party from participating in the proceeding. For example, even if Westborough SPE LLC could not afford to pay the redemption amount, it can make an offer to redeem and thus in the alternative, seeks an order granting additional time to make the redemption payment. See M.G.L. c. 60, § 68 (the court may "make a finding allowing the party to redeem, within a time fixed by the court"). *Town of Bourne v. Coffey*, 101 Mass. App. Ct. 496, 502, n. 14, review denied, 490 Mass. 1107 (2022).

**7. Any Steps to "wind up" Westborough SPE LLC By Dyann Blaine and/or Walter Horst and/or Any Other Babcock and Brown Affiliated agent(s) were taken in contravention of the LLC's Written Operating Agreement and invalid under Delaware law which governs the affairs of a Delaware limited liability company.**

Any steps taken to "wind up" the affairs of Westborough SPE LLC by Walter Horst, Dyann Blaine, or any other party acting on behalf of any Babcock and Brown subsidiaries, were acting in contravention of the LLC Operating Agreement and thus were in breach of their fiduciary duties.

In any event, upon finding that limited liability company's (LLC's) affairs were not wound up in compliance with the Delaware Limited Liability Company Act, a Delaware court could nullify the certificate of cancellation, to effectively revive the LLC and allow claims to be brought by and against it. 6 Del. Code § 18-804(b)(3). Moreover, under Delaware law, a limited liability

13

company's (LLC's) failure to comply with statutory requirements for winding up its affairs results in revocation or nullification of certificate of cancellation. 6 Del. Code § 18-804(b)(3). Since Babcock and Brown failed to obtain the consent of the sole member of Westborough SPE LLC, Mignonette Investments Limited, its resignation and "winding up" was in contravention of the LLC's Operating Agreement and thus violative of Delaware LLC Law. Failure to comply with the statutory requirements for winding up an LLC results in revocation or nullification of the certificate of cancellation. *See Metro Commc'n Corp., BVI v. Advanced Mobilecomm Techs.*, Inc., 854 A.2d 121, 139–140 (Del.Ch.2004). "[I]f the Court finds that an LLC's affairs were not wound up in compliance with the Delaware Limited Liability Company Act, it may nullify the certificate of cancellation, which effectively revives the LLC and allows claims to be brought by and against it." *Matthew v. Laudamiel*, No. 5957–VCN, 2012 WL 605589, at *22, n. 148 (Del.Ch. Feb. 21, 2012).

Page 11 of the LLC Operating Agreement at Section 9(c) states "This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary." Id. As a general principle, "[w]here the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy" (citation omitted). *Hodas v. Morin*, 442 Mass. 544, 549-550 (2004). Massachusetts applies "the law of the State of incorporation to internal corporate affairs." *Harrison v. NetCentric Corp.*, 433 Mass. 465, 469-72 (2001). Under well settled Delaware law, "[l]imited liability companies are creatures of contract, and the parties have broad discretion to use an LLC agreement to define the character of the company and the rights and obligations of its members." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 880 (Del. Ch. 2009). Parties who create a Delaware

14

LLC are free, by contract, to expand, restrict, or eliminate fiduciary and other duties that would otherwise be owed by a member or a manager of an LLC. *See* Del. Code Ann. tit. 6, § 18-1101(c), 1101(e).

a.

**2. Factual Issues**

**(a) Statement of Agreed Facts**

**General Facts:**

a. In or about September/early October 1997, David Ambromowitz, Esq. of Goulston & Storrs PC was engaged by the formation client (whose identity is protected under the attorney-client privilege) to draft a limited liability company operating agreement for Westborough SPE LLC under Delaware law and form Westboorugh SPE LLC in Delaware and register said entity as a foreign operating limited liability company in Massachusetts.

a.b. On October 22, 1997, Westborough SPE LLC was formed/incorporated in the State of Delaware as File Number 2811561.

c. On October 29, 1997, according to the F. Jan Blaustein a/k/a F. Jan Blaustein Scholes, in her official capacity as President of Babcock & Brown Administrative Service, Inc., a Delaware corporation website of the Corporations Division, Business Entity Summary provided by the Secretary of the Commonwealth of Massachusetts (SOC), Westborough SPE LLC executed an "Application for Registration of Westborough SPE LLC (a Foreign Limited Liability Company)" (hereinafter "Foreign Registration") and caused the same to be filed with the Secretary of The Commonwealth Corporations Division.

15

611

Westborough SPE LLC's State of Formation was the State of Delaware (See Foreign Registration at Section 3)., The Foreign Registration stated that the Federal Taxpayer Identification number of the LLC had been applied for, but was not ready at the time of the Foreign Registration. See Foreign Registration at Section 1. organized under the laws of the State of Delaware, registered as a Foreign Limited Liability Company in Massachusetts and The Secretary of The Commonwealth Division of Corporations was assigned the entityWestborough SPE LLC an initial identification number of 000593094.

d. The Internal Revenue Service ("IRS") assigned Westborough SPE LLC an FEIN # of   94-3286768 on                          , 1997.

e. At no point in time has the IRS changed the FEIN# of Westborough SPE LLC.

f. Westborough SPE LLC would have been required to obtain a new FEIN# from the IRS if it was (i) incorporated; (ii) changed its name; or (iii) changed ownership of the 100% Member. See https://www.irs.gov/businesses/small-businesses-self-employed/do-you-need-a-new-ein (accessed August 21, 2023).

b.g. The LLC Operating Agreement at page 11, Section 9(c) states: "This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary."

c. Westborough SPE LLC was canceled as an entity in the State of Delaware due to failure to pay taxes.

h. On November 20, 2007, Dyann Blaine, a purportedly authorized person, filed a Certificate of Withdrawal of a Foreign Limited Liability Company dated

16

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

November 19, 2007 ("Massachusetts Certificate of Withdrawal") signed under the "PENALTIES OF PERJURY".

i.  The Massachusetts Certificate of Withdrawal at Section 3 stated that the principal office of Westborough SPE LLC as of the date of the filing of the Massachusetts Certificate of Withdrawal was 2 Harrison Street, 6th Floor, San Francisco, California 94105, which was the same address as Babcock & Brown Administrative Services, Inc.

j.  Section 5 of the Massachusetts Certificate of Withdrawal stated "The company is withdrawing because it is not doing business in the Commonwealth of Massachusetts."

k.  By Quitclaim Deed recorded at Book 19369, Page 75 on October 31, 1997 in the Worcester District Registry of Deeds, Leslie S. Carey, Trustee of Northside Realty Trust u/d/t dated January 14, 1994 duly recorded with the Worcester District Registry of Deeds on January 14, 1994 in Book 15975, Page 213 and having an address c/o New England Management and Realty Corporation, 55 New York Avenue, Framingham, Massachusetts 01701 conveyed to Westborough SPE LLC, a Delaware Limited Liability Company with a principal place of business at c/o Babcock & Brown Administrative Services, Inc., Two Harrison Street, San Francisco, CA 94105 for consideration of $9,151,449.00 the "certain parcel of land, together with any buildings and improvements thereon, located at 231 Turnpike Road, in the Town of Westborogh, Worcester County, Massachusetts, which are shown as Lot #1 on a plan entitled 'Plan of Land in Westborough, Worcester County, . . . ', dated

17

April 11, 1997, prepared by Beals and Thomas, Inc. recorded with the Worcester District Registry of Deeds, Plan Book 714, Plan 77 and being more particularly bounded and described according to said plan on Exhibit A attached [thereto] and made a part [thereof]".

l.  A Notice of Lease was Recorded at Book 19369, Page 79 in the Worcester District Registry of Deeds on November 21, 1997 ("Notice of Lease"). Said Notice of Lease was prepared by Gould & Ettenberg, P.C., having an office at 370 Main Street, Worcester, MA 01608. Lessor under the Lease was Westborough SPE LLC c/o Babcock & Brown Administrative Services, Inc. and Lessee was Interstate Theatres Corporation, One Exeter Plaza, Boston, Massachusetts 02116 ("Interstate Theatres"). In 1988, The Hoyts Group of Australia purchased Interstate Theatres and entered the United States market. The Hoyts Group was sold in 1994 in a joint venture comprised of the San Francisco-based private equity firm Hellman & Friedman LLC (through Hellman & Friedman Asia-Pacific Investments BV) and Lend Lease Corp. At the time of the acquisition, Hoyts claimed to be the 10th largest operator out of 300 groups nationally of movie theatres. On or about May 2, 1999, Hellman & Friedman sold their interest in Hoyts to Consolidated Press Holdings Ltd. of Australia ("CPH"), the family office of Billionaire Kerry Packer (now deceased). CPH sold the United States theatres for $200 million in February 2003 to Regal Entertainment.

m. The Notice of Lease stated that the Date of Execution of the Lease was October 30, 1997 and the Lease Commencement Date was November 21, 1997. The

18

Notice of Lease also stated that the Term of Lease was Twenty (20) years and had an expiration date of November 21, 2017. The Lease stated that "Lessee has the right to extend for four (4) additional (5) year periods". Thus, Tenant had the right to extend the Lease until at least November 21, 2037.

n. The Worcester County Registry of Deeds does not indicate that the Locus was sold prior to the Town of Westborough acquiring ownership by the Foreclosure in this tax-title matter.

o. M.G.L. Chapter 156C, Section 2 (8) defines "Manager" as "a person who is designated as a manager of a limited liability company pursuant to the operating agreement." Section 2 (10) defines "Person" as "a natural person, partnership, whether general or limited and whether domestic or foreign, limited liability company, foreign limited liability company, trust, estate, association, corporation, custodian, nominee or any other individual or entity in its own or any representative capacity."

p. M.G.L. Chapter 156C, Section 25 (Manager's membership in company) specifically states "A manager need not be a member of the limited liability company."

q. M.G.L. Chapter 156C, Section 37 (Resignation of manager) states "A manager may resign as a manager of a limited liability company at the time or upon the happening of events specified in the operating agreement and in accordance with the operating agreement. An operating agreement may provide that a manager shall not have the right to resign as manager of a limited liability company. Regardless of whether the operating agreement provides that a

19

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

manager does not have the right to resign as a manager of a limited liability company, a manager may resign as a manager of a limited liability company at any time upon prior written notice to each member and each other manager at each member's and each other manager's address as set forth on the records of the limited liability company as of the date of the notice. If the resignation of a manager violates the operating agreement, in addition to any remedies otherwise available under applicable law, a limited liability company may recover from the resigning manager damages for breach of the operating agreement and offset the damages against any amounts otherwise distributable to the resigning manager."

r. M.G.L. Chapter 156C, Section 48 (Registration of foreign limited liability company) states "A foreign limited liability company shall be considered to be doing business in the commonwealth for the purpose of this section if it would be considered to be doing business in the commonwealth for the purposes of Part 15 of subdivision A of Chapter 156D if it were a foreign corporation." M.G.L. Chapter 156D, Section 15.02 (Authority to Transact Business Required) states: "(a) a foreign corporation that transacts business or has a usual place of business in the commonwealth shall deliver the certificate required by section 15.03 to the secretary of state for filing. (b) The following activities, among others, do constitute transacting business within the meaning of subsection (a): (1) the ownership or leasing of real estate in the commonwealth…".

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

20

s. M.G.L. Chapter 156C, Section 35 (Liability for distribution in excess of terms of operating agreement) states "(a) a member or manager who votes for or assents to a distribution in violation of the operating agreement shall be personally liable to the limited liability company for the amount of the distribution that exceeds what could have been distributed without violating the operating agreement. (b) Each member or manager held liable under subsection (a) for an unlawful distribution is entitled to contribution: (1) from each other member or manager who could be held liable under said subsection (a) for the unlawful distribution; and (2) from each member for the amount the member received knowing that the distribution was made in violation of the operating agreement."

t. M.G.L. Chapter 156C, Section 54 states that: "(a) a Foreign limited liability company doing business in the commonwealth which rails to register with the state secretary shall, for each year that such failure shall continue, be fined not more than five hundred dollars. No such failure shall affect the validity of any contract involving the foreign limited liability company…The failure of a foreign limited liability company to register with the state secretary shall not prevent the foreign limited liability company from defending any action, suit or proceeding in any of the courts of the commonwealth."

u. M.G.L. Chapter 156C, Section 16 (Execution of certificate by authorized person) states "(c) The execution of a certificate by an authorized person constitutes an affirmation, under the penalties of perjury, that the facts stated therein are true."

21

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

v.  On November 20, 2007, when Dyann Blaine filed the Massachusetts Certificate of Withdrawal, Westborough SPE LLC, still had a Lease at the Locus and thus the Certificate of Withdrawal was improper.

d.  withdrawn in Massachusetts from doing business in the Commonwealth.

e.w.  When a foreign corporation withdraws from transacting business in the Commonwealth with the consent of the Secretary of the Commonwealth, the corporation shall set forth it is not transacting business in the Commonwealth and that it surrenders its authority to transact business in the Commonwealth. G.L. c. 156D, Section 15.20. Additionally, the foreign corporation revokes the authority of its registered agent to accept service on its behalf "and appoints the secretary of state as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in the commonwealth". M.G.L. c. 156C & c. 156D, Section 15.20. The withdrawn corporation additionally commits to notify the SOC of any future changes to their mailing address. M.G.L. c. 156D, Section 15.20.

f.  After Westborough SPE LLC withdrew from transacting business in the Commonwealth, there is no evidence of filings by the corporation with the SOC to update or change the corporation's mailing address.

g.x. On November 22, 2022, Denise Edwards, as successor Co-Manager of Westborough SPE LLC, executed and filed in thewith the Secretary of State for the State of Delaware a Certificate of Revival for Westborough SPE LLC with the certification that she was authorized to do so.

22

h.y.On December 12, 2022, ~~according to the website of the Corporations Division, Business Entity Summary provided by the~~Denise Edwards, as successor co-manager, filed a "Foreign Limited Liability Company Application for Registration" with the  Secretary of the Commonwealth of Massachusetts (SOC).~~,~~ Westborough SPE LLC, certified that it was organized under the laws of the State of Delaware, and Jeffrey W. Bullock, Secretary of The State of Delaware certified that Westborough SPE LLC was duly formed under the laws of the State of Delaware and was in good standing and had legal existence so far as the records of that office showed as of November 28, 2022. ~~registered as a new Foreign Limited Liability Company in Massachusetts and was~~This re-registration of Westborough SPE LLC was assigned ~~the~~an entity identification number of 001623747 which was different than the original entity identification number ~~.~~of 000593094. It is standard policy of the Massachusetts SOC to issue a new entity identification number when a prior entity had been withdrawn from registration. Both registrations with the Massachusetts SOC had identical FEIN#'s.

z.  ~~The foreign limited liability company, Westborough SPE LLC (entity identification number of 000593094), was not revived in the Commonwealth of Massachusetts as there is no means to reinstate from a withdrawal of a corporation.~~ Delaware permits reinstatement of an entity pursuant to Section 18-1109 of the Limited Liability Company Act of the State of Delaware, by first paying all taxes due to the State of Delaware at the time the limited liability company became cancelled and subsequently filing a Certificate of Revival of

23

> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto
>
> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

a Limited Liability Company and payment of a Certificate fee in the amount of $220.00.

aa. The successor co-manager of Westborough SPE LLC, Denise Edwards filed a Certificate of Revival in Delaware on November 22, 2022.

j. Employees of the Corporations Division of the Commonwealth of Massachusetts have confirmed the two corporations of Westborough SPE LLC share the same name but are registered independently of each other and they cannot confirm the corporations are the same entity.

bb. The Corporations Division of the Commonwealth of Massachusetts is tasked as a third party record keeper, to receive and record documents, especially those and do not challenge Foreign pertaining to domestic and foreign Limited Liability Company limited liability companies. filings as long as basic evidence is included with the filing to show that a corporation exists in the company's home state and is in good standing there.

l. Both Westborough SPE LLC entities, in the Commonwealth of Massachusetts, do not share the same principal places of business, resident agents and/or managers.

m. The principal place of business for the newest Westborough SPE LLC shares the same address as the retail store, Staples.

n. At no time was Jan Blaustein (a/k/a F. Jan Blaustein Scholes) the President of Westborough SPE LLC.

cc. Through her position as an attorney at Babcock & Brown Administrative Services, LLC, F. Jan Blaustein Scholes a/k/a Jan Blaustein a/k/a Jan Bluestein Jan Blaustein

24

(a/k/a F. Jan Blaustein Scholes) was appointed a Manager of was listed in the records of the Massachusetts SOC as a real property signatory for Westborough SPE LLC.

p.dd.    Babcock & Brown Administrative Services, Inc., a Delaware corporation, served as the original manager of Westborough SPE LLC from its time of formation until the time it filed its Massachusetts Certtificate of Withdrawal.  LLC was an entity that provided administrative management services to Westborough SPE LLC.

q.ee.    Babcock & Brown Administrative Services, Inc. LLC did not own hold a membership interest in Westborough SPE LLC. The 100% Membership Interest was held by Mignonette Investments Limited, a British Virgin Islands limited partnership. or have any legal right, title or interest in the assets of Westborough SPE LLC.

r.    Jan Blaustein Scholes was admitted to the State Bar of California on December 21, 1997, but was designated by said Bar as inactive as of February 2, 2010 but was subsequently designated by the Bar as active on October 16, 2014. From July 1, 2016, to the present Jan Blaustein Scholes is not eligible to practice law in the State of California.

s.    Jan Blaustein suffered several strokes that impaired her health and well-being leading to issues with her memory and executive functions.

t.    Per the Defendant's evidence of the unsigned affidavit produced for Jan Blaustein, she cannot recall or produce documents related to the ownership of Westborough SPE LLC but is aware that Babcock & Brown did not hold a direct or indirect ownership interest in Westborough SPE LLC.

u.    Defendant has submitted as evidence an unsigned operating agreement from Mignonette Investments Limited titled "WESTBOROUGH SPE LLC LIMITED

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

25

LIABILITY COMPANY AGREEMENT" dated October 22, 1997, authorizing Babcock & Brown Administrative Services LLC to manage the business affairs of the company Westborough SPE LLC. No successor manager was identified in the agreement. No signed agreement has been presented.

ff. Westborough SPE LLC has provided a fully executed limited liability company operating agreement governed by Delaware law to counsel for the Town of Westborough.

v.gg. In said operating agreement the owner of Westborough SPE LLCThe 100% Member of Westborough SPE LLC was identified under "Schedule A" as "Mignonette Investments Limited", a British Virgin Islands limited partnership as the sole "Member" with an interest of "100%".

hh. In said operating agreement, the owner of Westborough SPE LLC was identified under "Schedule B" as "Mignonette Investments Limited" as the sole "Member" with an investment ofMignonette Investments Limited made a "$10,000.00" in "Initial Cash Capital Contribution".

ii. On December 31, 1999, Jan Blaustein Scholes, as Authorized Officer (i.e. President of Babcock & Brown Administrative Services, Inc.) executed a Delaware Certificate of Conversion pursuant to Section 264 of the Delaware General Corporation Law and filed the same with the Delaware Secretary of State on January 03, 2000, converting Babcock & Brown Administrative Services, Inc. to Babcock & Brown Administrative Services LLC, a Delaware limited liability company.

jj. On January 03, 2000, Jan Blaustein Scholes filed a Certificate of Formation of Babcock & Brown Administrative Services LLC with the Delaware Secretary of State. Jan

26

Blaustein Scholes executed the Certificate of Formation of Babcock & Brown Administrative Services LLC as Vice President of Babcock & Brown Inc., a California corporation, and the parent corporation of Babcock & Brown Administrative Services, Inc. and Babcock & Brown Administrative Services LLC.

kk. The records of the Massachusetts SOC were never updated to reflect this change in Manager, but the records of the Delaware Secretary of State were updated. The records of the place of incorporation (i.e. in this case Delaware) are dispositive as to the current status of an entity with respect to its name.

ll. Pursuant to section 18-209 of the Delaware Limited Liability Company Act, on August 28, 2011, Chaye Besherse, as Secretary of Babcock & Brown Parallel Member LLC executed a Delaware Certificate of Merger of Babcock & Brown Administrative Services LLC with and into Babcock & Brown Parallel Member LLC, a Delaware limited liability company ("Certificate of Merger") and filed the same with the Delaware Secretary of State on August 29, 2011.

mm. The merger of Babcock & Brown Administrative Services LLC with Babcock & Brown Parallel Member LLC occurred pursuant to an Agreement and Plan of Merger dated as of August 29, 2011. Babcock & Brown Paralllel Member LLC pursuant to Section Third of the Certificate of Merger stated "The Company shall be the surviving limited liability company…of the Merger. The name of the Surviving Company is 'Babcock & Brown Parallel Member LLC'".

nn. No document evidencing the change from Babcock & Administrative Services, Inc. to Babcock & Brown Parallel Member LLC to its merger with Babcock & Brown Parallel Member LLC was ever filed with the Massachusetts SOC.

27.

**Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 27 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

x. ~~In said operating agreement, Babcock & Brown Administrative Services LLC was not identified as a "Member" and solely as a manager.~~

y. ~~Jan Blaustein (a/k/a F. Jan Blaustein Scholes) was at no time a "Member" or owner of Westborough SPE LLC or Mignonette Investments Limited.~~

oo. ~~Per~~ According to a written statement given by Walter Horst, CFO of Babcock & Brown Inc., a California corporation and parent to the successor-in-interest manager Babcock & Brown Parallel Member LLC to Babcock & Brown Administrative Services, Inc. to Attorney Iris A. Leahy, Esq. of the Town of Westborough, on June 23, 2009, Attorney Judith A. Hall, former Associate General Counsel for Babcock & Brown, Inc. in California, on behalf of Babcock & Brown Administrative Services LLC, ~~as successor in interest to Babcock & Brown Administrative Services, Inc.~~ submitted ~~in writing~~ to Phillip Green (a/k/a Phil Green), the Australian-based former Chief Executive Officer of Babcock & Brown's Australian parent entity ~~of Westborough SPE LLC~~ a written Termination Notice of the Administrative Services Agreement dated October 30, 1997 ("First Termination Notice"). This termination of administrative services stated that it was effective August 31, 2009. No written copy of this First Termination Notice or copy of the Administrative Services Agreement dated October 30, 1997 has been provided to counsel for Westborough SPE LLC and its effectiveness and authenticity is thus challenged by Westborough SPE LLC.

~~z.~~pp. Phillip Green was not listed in Westborough SPE LLC's operating agreement as a Member or co-manager of Westborough SPE LLC and thus did not have the authority to accept Babcock & Brown Parallel Member LLC's resignation as Manager of Westborough SPE LLC.

**Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 27 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

28

aa.qq. Per Walter Horst, since the ~~first letter of resignation~~First Termination Notice was not acknowledged by Philip Green, an individual who was not listed in Westborough SPE LLC's operating agreement as either a co-manager or member and thus had no authority whatsoever to accept a resignation of manager role on behalf of Babcock & Brown Parallel Member LLC, ~~he~~ sent ~~another~~ a second written ~~letter of resignation~~Notice of Termination in his role as Treasurer for Babcock & Brown Administrative Services LLC dated April 30, 2011 ("Second Termination Notice"), ~~which was presented in writing~~ to TMF Group f/k/a Equity Trust (based in Hong Kong), Attention: Serena Kwok, General Manager, Trade Support, 31/F, The Center, 99 Queen's Road Central, Hong Kong, as administrative agent for ~~Westborough SPE LLC~~Mignonette Investments Limited, a British Islands limited partnership and 100% Member of Westborough SPE LLC. The letter ~~states~~stated in relevant part, "this letter serves as notice to the Member of the Manager's intent to resign as Manager of the Company effective as of May 30, 2011."

bb. ~~Per the State of Delaware, on or about August 29, 2011, Babcock & Brown Administrative Services LLC merged with Babcock & Brown Parallel Member LLC.~~

cc. ~~At the time of the above-referenced merger, between Babcock & Brown Administrative Services LLC and Babcock & Brown Parallel Member LLC Babcock & Brown Administrative Services LLC had already resigned (twice) as an administrative service provider of Westborough SPE LLC.~~

rr. Westborough SPE LLC's fully executed operating agreement required the member to acknowledge receipt of a written notice of termination and to consent to the resignation of a manager of Westborough SPE LLC.

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

29

ss.  According to the British Virgin Islands Financial Services Commission, the Director of Mignonette Investments Limited was Abraxas International Limited ("Abraxas International"). Thus, only Abraxas International was authorized to act on behalf of Mignonette Investments Limited. Abraxas International is the Hong Kong operating entity for TMF Group, which was previously controlled by Padnall Enterprises Limited, a private company limited by shares registered in Hong Kong. See TMF Group Annual Report for 2022, accessible via  http://www.tmf-group.com/-/media/files/financial-results/tmf-group-annual-report-2022.pdf (accessed August 21, 2023).

tt.  The Second Termination Notice stated specifically "Pursuant to Section 1(e) of the LLC [Operating] Agreement and Section 18-602 of the Delaware Limited Liability Company Act, this letter serves as notice to the Member of the Manager's intent to resign as Manager of the Company effective as of May 30, 2011."

uu. Walter Horst acknowledged the requirements of Section 1(e) of Westborough SPE LLC's Operating Agreement which

vv. On March 15, 2019, Walter Horst executed and filed in the State of Delaware a Certificate of Cancellation Babcock & Brown Parallel Member LLC.

ww.     On June 23, 2023, F. Jan Blaustein Scholes, as an Authorized Person, executed a State of Delaware Certificate of Correction of a Limited Liability Company to be filed pursuant to Section 18-211(a) of the Delaware Limited Liability Company Act ("Delaware Certificate of Correction"). Said Delaware Certificate of Correction corrects that certain Certificate of Cancellation filed on March 15, 2019. The Delaware Certificate of Correction at Section 3 states "The inaccuracy or defect of said Certificate

30

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

is…Due to a clerical error, the cancellation was filed prematurely. The entity is the Manager of Westborough SPE LLC and there are still significant assets that need to be liquidated." Section 4 states "The Certificate is hereby corrected to read as follows: The Certificate of Cancellation/Withdrawal is rendered null and void."

dd.xx. Jeffrey W. Bullock, Secretary of State of the State of Delaware, certified that "Babcock & Brown Parallel Member LLC" was duly formed under the laws of the State of Delaware and was in good standing and has a legal existence as of July 5, 2023. This Certificate of Goodstanding can be authenticated at corp.delaware.gov/authver.shtml and using Authentication #203677211 and SR#20232917389.

ee.yy. A document titledThe document titled "Bill of Sale" dated November 21, 2022, between "Westborough SPE, LLC", "Denise Edwards" and "Lolonyon Akouete" was and executed by "Jan Blaustein Scholes, its President" was corrected under a Durable Power of Attorney under Delaware Law and Written Consent of the Manager of Babcock & Brown Parallel Member LLC, F. Jan Blaustein Scholes.

ff.zz. On December 5, 2022, Defendant mailed a money order via the United States Postal Service, Serial No. 28358694832, in the amount of $150.00, to Jan Blaustein which served as the original consideration for the document originally labeled as a "Bill of Sale" but which was subsequently changed by written instrument to represent a transfer of management role, as allowed under the written LLC Operating Agreement.

gg.aaa. On June 26, 2023, said "Bill of Sale" was amended to be named "Transfer of Manager Role".

31

hh. The amendments to the "Bill of Sale" as amended to be named the "Transfer of Manager Role" ~~includes the following notable amendments:~~

    ~~i.  Substantial reduction in the amount of consideration;~~

    ~~ii.  Change in the title and intention of the document;~~

~~iii.~~bbb. ~~Change in the terms of the document and agreement~~speak for themselves.

~~ii.  On June 23, 2023, a Certificate of Correction of a Limited Liability Company was executed and filed in the State of Delaware for Babcock & Brown Parallel Member LLC and signed by "F. Jan Blaustein Schol".~~

**Tax Title Procedural Facts:**

a. The locus, consists of ~~a~~three (3) parcel s of commercial real ~~estate~~property ~~located~~ commonly known as~~at~~ 231 Turnpike Road.~~, in the Town of~~ Westborough, Worcester County, Massachusetts as more particularly described in the Quitclaim Deed ("Locus").

~~a.  and was a movie theater in operation by Regal Cinemas (a/k/a Interstate Theaters Corporation) until 2017 but has been vacant and deteriorating since.~~

~~b.  The land where the movie theater is located is subdivided into three separate parcels and is described by some as a mall and/or a plaza. The three parcels in the mall share common area maintenance expenses by a Reciprocal Covenants, Easements and Restrictions Agreement by which 57% of the common area maintenance and snow removal expenses are to be paid by the owner of the locus.~~

~~c.~~b. $453,710.64 in unpaid Property Taxes, plus interest, an NSTAR Lien, costs associated with Boston Board Up, Insurance, EverSource costs, appraisal costs, Legal Fees for KP Law through 2/28/23 in the amount of $24, 110.75, Request for

32

**Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 27 + Alignment: Left + Aligned at: 0.5" + Indent at:  0.75"

**Formatted:** Underline

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

Proposal Costs in the amount of $20,591.22, Legal fees to Iris Leahy, Esq. as of 4/28/23 in the amount of $34,027.47, filing fees, withdrawal, and recording fees equal a grand total of $918,314.60 as of May 16, 2023, as certified by the Town of Westborough Treasurer/Collector, Linda A. Smith on May 3, 2023, and common expenses have not been paid since Regal Cinemas (a/k/a Interstate Theaters) ceased operation and occupancy of the locus. While Regal Cinemas (a/k/a Interstate Theaters Corporation) occupied the locus, they were making payments for real estate taxes, common expenses, and to an assignment of lease mortgage described beloware associated with the Locus.

d.   In the Spring of 2017, Regal Cinemas (a/k/a Interstate Theaters Corporation) attempted to secure a lease extension to continue their occupancy of the locus. To do so Robbie Pope of Regal Cinemas (a/k/a Interstate Theaters Corporation) contacted Allen Hight, of Northside Realty Trust (NRT). NRT who previously managed and leased the two non-locus parcels in the mall prior to those two non-locus parcels being sold to Mobile Street LLC.

e.c. At the time of Regal Cinemas' (a/k/a Interstate Theaters Corporation) attempt to secure a lease extension, the locus wasThe Locus is owned by Westborough SPE, LLC, a Delaware limited liability company as indicated by the Quitclaim Deed described above. and was not managed by NRT and/or was not owned by Mobile Street LLC.

f.   Prior to the title vesting in Westborough SPE, LLC, it was the understanding of Mr. Hight of NRT that Hoyts Cinema was planning to take title to the property and

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

33

retained Babcock & Brown Administrative Services, Inc., a law firm operating out of San Francisco.

g. Per Mr. Hight, Babcock & Brown Administrative Services, Inc. was organizing the Hoyts Cinemas entity with the goal of Hoyts Cinemas owning the locus. However, rather than Hoyts Cinema taking title to the locus Westborough SPE, LLC took title and Regal Cinemas (a/k/a Interstate Theaters Corporation) leased the property and operated the movie theater. All correspondence such as billings, maintenance issue notices, and annual expense reconciliations from NRT regarding the locus were instructed to be sent to Regal Cinemas (a/k/a Interstate Theaters Corporation) at 231 Turnpike Road, Westborough, Massachusetts. This is the address of the locus.

h. In the Spring of 2017, Mobile Street LLC was interested in purchasing the locus and Regal Cinemas (a/k/a Interstate Theaters Corporation) was interested in continuing their lease so both parties in conjunction with the Town and several attorneys tried unsuccessfully to locate anyone with an ownership interest in Westborough SPE, LLC.

i. d. The Instrument of Taking on the locus was executed on December 28, 2018, and recorded on January 16, 2019, at the Worcester District Registry of Deeds in Book 59943, Page 371, pursuant to M.G.L. c. 60, §§43, 53 and 54.

j. e. The Town of Westborough considered taking the locus via its eminent domain powers, but the process was halted before completion and the Town proceeded to try to collect the taxes and the locus back on the tax rolls via a tax title foreclosure instead.

**Commented [SAS1]:** Not relevant.

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

34

f.   On July 18, 2019, Plaintiff filed a Tax Lien Complaint to foreclose upon the tax title lien on the locus naming the equity owner Westborough SPE, LLC pursuant to M.G.L. c. 60, § 65.

g.   Westborough SPE, LLC (i.e. with a comma) was not a properly named equity owner and the Town never amended their Complaint to correct this error.

h.   Westborough SPE LLC, a Delaware limited liability company (i.e. without the comma) is the properly named equity owner as per the original Quitclaim Deed to vis-à-vis the Locus.

i.   The Land Court engaged a title examiner to determine interested parties pursuant to § 66, as a result of which the 2019 Title Report was prepared.

j.   The 2019 Title Report identified Westborough SPE, LLC as an interested party entitled to notice. However, pursuant to the Quitclaim Deed referenced above, the proper owner was Westborough SPE LLC (i.e., with no comma), a Delaware limited liability company.

k.   The Notice of Filing was drafted by Plaintiff's Counsel and recorded at the Worcester District Registry of Deeds on July 24, 2019, in Book 60751, Page 221, pursuant to MGL c. 60, § 75.

l.   Land Court Notices were sent by certified mail on September 22, 2020 to:

(1)   Interstate Theaters Corporation
101 E. Blount Ave.
Knoxville, TN   37920
Tracking Number: 71901706197000959805

(2)   Interstate Theaters Corporation
c/o CT Corporation System, Reg. Agent
155 Federal St., Suite 700
Boston, MA   02110
Tracking Number: 71901706197000959812

35

(3)     James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.
1715 Easton Dr.
Burlingame, CA   94010
Tracking Number: 71901706197000959829

(4)     Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC
20 Queensbrook Pl.
Orinda, CA   94563
Tracking Number: 71901706197000959836

(5)     F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.
Mailing Address
151 E. 31st
Apt. 28B
New York, NY   10016
Tracking Number: 71901706197000959843 Receipt: 418144
Date: 09/23/2020

l.

m.  Additional Land Court Notices were sent to Australia via registered mail on

September 23, 2020 to:

RE 550 804 582US
David Lombe, Liquidator for Babcock and Brown Unlimited
Deloitte Financial Advisory Pvt. Ltd.
Grosvenor Place Level 9
225 George St.
Sydney, NSW 2000
Australia


RE 550 804 596US
Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Unlimited
20 Bond Street, Level 25
Sydney, NSW 2000
Australia Receipt: 418145 Date: 09/23/2020

36

n.  Unsuccessful service was attempted on F. Jan Blaustein Scholes as indicated by the Return of Service filed with the Court on October 02, 2020.

o.  On April 08, 2021 an additional Land Court notice was sent via Certified Mail to:

F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.
888 Avenue of the Americas
New York, NY 10001
Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021

p.  Judgment in Tax Lien entered on behalf of the Town of Westborough on January 5, 2022, and was recorded on January 21, 2022, in Book 66983, Page 53.

q.  No Land Court Notice was ever provided to Babcock & Brown Parallel Member LLC, a Delaware limited liability company, as successor in interest to Babcock & Brown Administrative Services LLC as successor in interest to Babcock & Brown Administrative Services Inc.

m.

**Request for Proposal (RFP) Facts:**

a.  In June 2022, pursuant to the Uniform Procurement Act, G.L. c. 30B, known as a Request for Proposal (RFP), the Town of Westborough through its select board solicited proposals for the offer of purchase of the locus.

b.  RFP documents were made available via BidNetDirect.com.

c.  On November 29, 2022, Lolonyon Akouete requested RFP documents from BidNEtDirect.com and identified his organization as Smart Investors, LLC. Smart Investors, LLC was registered in Maryland as a domestic LLC on July 30, 2009, but the entity was forfeited for failure to file a property return in 2010

37

~~or thereafter. Lolonyon Akouete identified himself as the Resident Agent and CEO/Owner of Smart Investors, LLC.~~

~~d. RFP proposals were to be submitted by July 25, 2022.~~

~~e. The Town of Westborough received three (3) proposals for the purchase of the locus.~~

~~f. The Town of Westborough selected a proposal by LAX MEDIA INC for $2,500,000.00.~~

~~g. LAX MEDIA INC has agreed to several extensions to hold their proposed bid firm and to keep the terms and conditions of purchase in place. A purchase and sale contract has not been executed to date.~~

~~h. An unselected proposal to purchase the locus for $2,785,000.00 was made by Ferris Development Group, LLC.~~

~~i. On November 14, 2022, with the assistance of legal counsel, Ferris Development Group, LLC filed a suit in the Worcester Superior Court against the Town of Westborough to challenge the Town's selection of LAX MEDIA INC's proposal.~~

~~j. On January 18, 2023, the Honorable. James G. Reardon, Jr. ordered the Motion for Preliminary Injunction brought by Ferris Development Group, LLC denied.~~

~~**Ferris Development Group, LLC Involvement in This Case:**~~

~~a. On March 21, 2023, David M. Ferris as the Manager of Ferris Development Group, LLC and Lolonyon Akouete as Manager of Westborough SPE, LLC signed an agreement titled "Offer to Purchase 231 Turnpike Road, Westborough, Massachusetts".~~

38

> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto
>
> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

b. Said Offer to Purchase is an agreement to enter into a subsequent sale of the locus if the Defendant in this case is successful in receiving a vacation of the judgment of foreclosure.

c. David M. Ferris individually and/or through Ferris Development Group, LLC has loaned funds to Lolonyon Akouete to pay a retainer for the Defendant's legal fees in this case payable to Attorney Schlager and Attorney Alvin Nathanson by and/or through their firm Nathanson & Goldberg, P.C.

d. Defendant has presented financial account information of David M. Ferris as Defendant's only proof of funds to redeem. Defendant has not presented evidence of the funds to redeem in the Defendant's possession.

e. Westborough SPE LLC and Ferris Development Group, LLC do not have a purchase and sale executed for the purchase of the locus.

**Motion to Vacate Procedural Facts Related to the Same:**

a. On or about December 6, 2022, the previous Treasurer for the Town of Westborough, Robert Haley, received an email from Lolonyon Akouete identifying himself as "Lolo" an "asset recovery specialist" who has "acquired Westborough SPE, LLC and we would like to redeem."

b. On or about December 12, 2022, Lolonyon Akouete spoke with Mr. Haley and stated he received a bill of sale from F. Jan Blaustein a/k/a F. Jan Blaustein of Babcock & Brown Administrative Services, Inc. and would like to redeem the locus from tax title.

39

c.a. On January 4, 2023, Defendant's Motion to Vacate, which was drafted by its predecessor counsel Sherin & Lodgen LLP, was signed and filed by Lolonyon Akouete as Manager of Westborough SPE, LLC in his capacity as manager and docketed by this Court on January 4, 2023, because Sherin & Lodgen LLP refused to file said Motion, prejudicing its Client, as a result of non-payment of approximately $25,000.00 in outstanding legal fees, which withdrawal was in violation of Mass. R. Prof. C. Rule 1.16 preventing withdrawal where it causes a material adverse effect on the interests of the client.

d. At the time of the signature and filing of the Motion to Vacate, Lolonyon Akouete did not have a license to practice law in the Commonwealth of Massachusetts; therefore said Motion was filed pro se on behalf of a corporation.

e. Defendant filed the Motion to Vacate "pro se" and included prior legal counsels' law firm name, "Sherin and Lodgen", in the footnote area of each page, in violation of the terms of the Disengagement Letter from Attorney Matthew A. Morris to Westborough SPE LLC via Lolonyon Akouete and Denise Edwards dated January 3, 2023.

f. On January 4, 2023, via email correspondence, Staff Attorney John Harrington alerted Lolonyon Akouete that an LLC cannot appear "pro se" and must be represented by legal counsel.

g. On January 4, 2023, Lolonyon Akouete responded to Attorney Harrington via email correspondence and confirmed his understanding of the requirement for the LLC to be represented by legal counsel in this case.

40

b. By letter to the Court dated February 1, 2023, and docketed on the same date, Plaintiff asserted an objection to previous and future pro se filings in this case by the Defendant.

c. On February 2, 2023, Lolonyon Akouete requested on an emergency basis a continuance in order to retain legal counsel for Westborough SPE LLC to address the concerns presented in the February 1, 2023 letter.

h. Undersigned counsel, Alvin S. Nathanson, Esq. and Scott A. Schlager, Esq. filed their Notices of Appearance on behalf of Westborough SPE LLC on February 22, 2023.

**Other Relevant Facts:**

a. Denise S. Edwards as an Investigator of Unclaimed Property in California entered an agreement with Frances Jan Blaustein Scholes (a/k/a Jan Blaustein) for 10% of the unclaimed funds of $1,293.646.83 if successful in reuniting the funds with Ms. Blaustein.

b. On December 8, 2022, Denise S. Edwards made a formal claim for the above referenced funds of Westborough SPE LLC.

c. The above referenced claim for the abandoned funds was denied by the California State Controller's Office in writing on February 8, 2023.

d. On April 24, 2023, Lolonyon Akouete via emails contacted Walkers Global and Kaizen Group to request quotes to restore Mignonette Investments Limited to "recover an asset and properly liquidate the company."

41

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

e. ~~Lolonyon Akouete does not have proof of a legal interest in Mignonette Investments Limited as a former shareholder, former director, or former member.~~

i.d. **Statement of Contested Facts (with a short explanation of the Parties' respective positions on those facts)**

    a. **Whether the actual owners of Westborough SPE LLC were ever successfully located and/or identified.**

Plaintiff's Position on This Contested Fact:

- Per the evidence presented by the Defendant in response to the Plaintiff's Request for Production of Documents, Lolonyon Akouete continues to do diligent search work to try to locate the actual owners of Westborough SPE LLC but to date has been unsuccessful.

- On March 3, 2023, Walter Horst the current Chief Financial Officer of Babcock & Brown and previous Treasurer for Babcock & Brown Administrative Services LLC, stated in an email to Lolonyon Akouete that "Westborough parent is Mignonette Investments. From there the trail ended in Hong Kong and we were unable to identify the owner. As we have resigned providing services I am unable to assist." This supports the Plaintiff's position that the true owner of Westborough SPE LLC has not been identified and the assets of the corporation and management of the same do not belong to the Defendant that filed the Motion to Vacate.

- Per the Defendant's evidence in response to the Plaintiff's Request for the Production of Documents, an email from Julie Ip, Senior Legal Counsel for TMF-Group, advised Lolonyon Akouete that "Mignonette Investments Limited has been

42

struck off and that therefore no one can carry on the company's affairs or deal with the assets of the company."

- o Walter Horst, CFO of Babcock & Brown suggested that Lolonyon Akouete contact TMF Group to gather more information about Mignonette Investments Limited. TMF Group was the Resident Agent of Mignonette Investments Limited until they resigned as agent in writing on March 29, 2017.

- o The evidence the Defendant submitted to this Court and is using to support their position that Mignonette Investments Limited was the only member/owner of Westborough SPE LLC, was the unsigned operating agreement dated October 22, 1997. For obvious reasons, this is not strong proof of ownership.

- o The Defendant produced evidence via a Credit eform e-Report dated May 25, 2023, that Mignonette Investments Limited has "no visible assets" and has been struck off.

<u>Defendant's Position on This Contested Fact</u>:

- This fact is irrelevant, because under the executed limited liability company operating agreement for Westborough SPE LLC, the Durable Power of Attorney for Babcock & Brown Parallel Member LLC as successor in interest to Babcock & Brown Administrative Services LLC as successor in interest to Babcock & Brown Administrative Services, Inc., and the Written Consent of Manager, Lolonyon Akouete and Denise Edwards, as Managers have the full power and fiduciary duty to act on behalf of Westborough SPE LLC.

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

43

- An LLC Manager has a fiduciary duty of care to prevent waste of limited liability company assets, including real property assets.

    b. **Whether the Defendant possesses the funds adequate to redeem should this Court allow the Defendant's Motion to Vacate.**

Plaintiff's Position on This Contested Fact:

- The Defendant has provided proof via a Charles Schwab account statement for a period from April 1-30, 2023, that David M. Ferris has funds adequate to redeem if this Court allows the Defendant's Motion to Vacate.

    o David M. Ferris is not a party to the above-referenced case and does not have the right to redeem.

- The Defendant has not provided proof that the Defendant possesses funds adequate to redeem. Rather, the Defendant has provided proof that should the Motion to Vacate be allowed, an Offer of Purchase will cause a Purchase and Sale to be executed with David M. Ferris for the purchase of the locus. The proof of funds presented by the Defendant does not present evidence that the <u>Defendant</u> has adequate funds to redeem.

- Lolonyon Akouete asserted in several emails to Plaintiff's legal counsel, Westborough SPE LLC will not pay the principal, interest, fees and costs in full of the tax title account if Defendants Motion to Vacate is allowed.

Defendant's Position on this Contested Fact:

- Should this Court allow Plaintiff's Motion to Vacate it will be able to present adequate evidence of sufficient funds.

- It is not the subject of the Court's inquiry in a tax-title redemption matter on a Motion to Vacate to concern itself with how the party in interest

44

entitled to redeem, in this case Westborough SPE LLC, obtained the funds adequate for redemption.

- If the Land Court issues an Order allowing Westborough SPE LLC to redeem its real property, the Town's only interest is in ensuring that it gets paid the reasonable amounts allowed under the statutory scheme.

c. **Whether the "Bill of Sale" dated November 21, 2022, between Westborough SPE, LLC and Denise Edwards and Lolonyon Akouete that was signed by "Jan Blaustein Scholes, its President" is valid to transfer any interest in Westborough SPE LLC and/or its assets.**

Plaintiff's Position on this Contested Fact:

- As far as Plaintiff is aware, Jan Blaustein was incapacitated at the time of execution of the "Bill of Sale" and had a Conservatorship, Guardian and Power of Attorney over her person and estate. Therefore, the "Bill of Sale" is void and could not have transferred any interest in Westborough SPE LLC or its assets.

- Even if Jan Blaustein can be determined to be competent or capable at the time of executing the "Bill of Sale", she did not have an interest to transfer as she signed the document as President of Babcock & Brown Administrative Services, Inc. which was a previous entity that managed Westborough SPE LLC before they resigned from the role.

- Via email on July 2, 2023, Attorney Schlager as legal counsel for the Defendant, advised Plaintiff's legal counsel of the following, "Our Firm did not speak with Jan Blaustein." Thus, Defendant's legal counsel cannot make declarations on the sound mental health of Jan Blaustein as he has no first-hand knowledge or evidence. Rather, the evidence presented initially by the

45

642

Defendant contradicts Attorney Schlager's claims of Jan Blaustein's competence.

Defendant's Position on this Contested Fact:

- Plaintiff has provided no evidence of incapacity.

- Plaintiff has provided no evidence that F. Jan Blaustein Scholes was under a conservatorship/guardianship in the State of Arizona. Ms. Scholes did not resided in Hawaii when the Bill of Sale or the subsequent amended documents (durable power of attorney and written consent of manager) were executed. There is no full faith and credit clause recognition under US Law for conservatorships/guardianships.

- Westborough SPE LLC contends that Peter Blaustein has attempted to exercise undue influence over F. Jan Blaustein Scholes.

- F. Jan Blaustein Scholes has informed Denise Edwards that Peter Blaustein has attempted to insert himself in this matter where he does not belong and has no standing to intervene.

- Only a licensed medical professional can declare someone incapacitated and the Plaintiff has not provided any expert testimony on the subject of capacity. Without evidence, any testimony by Peter Blaustein or any others should be barred by a Daubert-Lanigan Motion.

- F. Jan Blaustein Scholes was authorized to transfer the manager role of Westborough SPE LLC pursuant to the written LLC Operating Agreement. She does not have to be a Member or have a membership interest to transfer her membership role.

46

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

- Only a licensed medical professional in accordance with a guardianship/conservatorship proceeding in the state where Ms. Blaustein Scholes resides can make a determination of incapacity.

- Since there was no guardianship/conservatorship proceeding in Arizona, there was no guardianship/conservatorship recognized under Arizona law, and thus Ms. Blaustein Scholes was not under a guardianship/conservatorship when she executed the durable power of attorney and written consent of manager.

d. **Whether the amended "Bill of Sale" document renamed to "Transfer of Manager Role" is adequate to transfer an interest in the management of Westborough SPE LLC and/or its assets and whether said documents are legally binding or void.**

Plaintiff's Position on this Contested Fact:

- Jan Blaustein was no longer a manager of Westborough SPE LLC at the time she signed the "Bill of Sale" and "Transfer of Manager Role".

- On June 22, 2023, Plaintiff's legal counsel, Iris A. Leahy, received an email from Peter Blaustein with the subject line "did the case end?" stating the following: "Denise and Lolo contacted my mom and said they won $600K for her. is that right? I doubt it but double checking."

- On June 22, 2023, Attorney Leahy emailed Attorney Schlager and asked if he knew anything about the money "won" for Jan Blaustein by Lolonyon Akouete and Denise Edwards.

- Jan Blaustein signed the "DURABLE POWER OF ATTORNEY" dated June 26, 2023 to Lolonyon Akouete and Denise Edwards and the "WRITTEN CONSENT OF THE MANAGER OF BABCOCK AND

47

| Formatted: Font: Bold |
| Formatted: Line spacing: single |
| Formatted: Font: Times New Roman, 12 pt, Font color: Auto |
| Formatted: Font: Times New Roman, 12 pt, Font color: Auto |

BROWN PARALLEL MEMBER LLC IN LIEU OF MEETING" dated June 26, 2023. These documents were signed while not in the presence of legal guardianship and were arguably signed with undue influence over a person that lacked the mental capacity to be bound by such documents.

- On June 22, 2023, On July 2, 2023, Attorney Schalger on behalf of the Defendant response as follows, "Our Firm did not speak with Jan Blaustein.

Defendant's Position on this Contested Fact:

- F. Jan Blaustein Scholes was never a Manager of Westborough SPE LLC.

- Babcock & Brown Administrative Services, Inc. which became Babcock & Brown Administrative Services LLC which merged into Babcock & Brown Parallel Member LLC, a Delaware limited liability company was the predecessor manager.

- F. Jan Blaustein Scholes was the duly authorized manager of Babcock & Brown Parallel Member LLC.

- Thus, F. Jan Blaustein Scholes had the requisite authority on behalf of Babcock & Brown Parallel Member LLC to transfer her membership role over Westborough SPE LLC pursuant to the Westborough SPE LLC Operating Agreement.

- Peter Blaustein is not a party to this case and thus has no standing to participate.

- The Durable Power of Attorney and Written Consent of Manager were not signed under undue influence. To the contrary, it is Peter Blaustein who was attempting to exercise undue influence over his mother.

48

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

e. **Whether the Defendant had the requisite authority to revive Westborough SPE LLC and file it as a new Foreign Corporation in the Commonwealth of Massachusetts.**

Plaintiff's Position on This Contested Fact:

- Defendant presented evidence of an unsigned Operating Agreement of Westborough SPE LLC dated October 22, 1997, in which Babcock & Brown Administrative Services, Inc. was designated as a managing entity of Westborough SPE LLC but explicitly not designated as an equity owner/member.

- No person that owned or was a member of Westborough SPE LLC gave permission to Lolonyon Akouete and/or Denise Edwards to revive Westborough SPE LLC in Delaware or to appoint themselves as managers of Westborough SPE LLC.

- Jan Blaustein (a/k/a F. Jan Blaustein Scholes) did not have the legal ability to transfer any interest or authority in Westborough SPE LLC as she did not have an interest to transfer.

- At the time of the signature on the "Bill of Sale" and subsequently amended document called "Transfer of Manager Role", Jan Blaustein (a/k/a F. Jan Blaustein Scholes) was not mentally competent pursuant to the Order of Court granting Conservatorship and Guardianship to her son, Peter Blaustein.

- At the time of the signature on the "Bill of Sale" dated November 21, 2022, and subsequently amended to be titled "Transfer of Manager Role" dated June 26, 2023, Jan Blaustein (a/k/a F. Jan Blaustein Scholes) was under a Power of Attorney she granted to her son, Peter Blaustein. Without capacity,

49

Jan Blaustein could not have transferred an interest in Westborough SPE LLC.

- The amendments made to the "Bill of Sale" on June 26, 2023, were approximately one year and five months after this Court entered a Judgment of Foreclosure upon the locus.

- Amending the "Bill of Sale" to completely change the purpose and intention of the document is arguably an admission by the Defendant that the "Bill of Sale" was inadequate as a basis to provide the Defendant with the authority to revive Westborough SPE LLC or to appear as the Defendant in this case when the Motion to Vacate was filed.

<u>Defendant's Position on this Contested Fact</u>:

- Defendant has provided a fully executed copy of the Westborough SPE LLC Operating Agreement.

- Lolonyon Akouete and Denise Edwards, via the Durable Power of Attorney and Written Consent of the Manager possessed the requisite authority to act as manager of Westborough SPE LLC.

- Purusant to the LLC Operating Agreement, a manager has the authority to act on behalf of the LLC. In addition, the manager has a fiduciary duty of care and loyalty.

- Babcock & Brown's prior agents breached their fiduciary duty to Westborough SPE LLC when they attempted to resign as manager of the LLC in contravention of the LLC Operating Agreement and Delaware law.

- The timing of the amendments has no significance.

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

50

- The Bill of Sale became a transfer of manager role and that is the dispositive fact.

- The original Bill of Sale document was not drafted by an attorney and thus had to be corrected to correct inaccuracies in the intent of the parties.

f. **Whether the "Durable Power of Attorney" dated June 26, 2023, by "Babcock & Brown Parallel Member LLC" (sic) appointing as attorney in fact "Mr. Lolonyon Akouete and Ms. Denise Edwards" is relevant to this matter.**

Plaintiff's Position on This Contested Fact:

- Plaintiff does not believe that the above-referenced document is relevant or pertinent to the matter before this Court as Babcock & Brown Administrative Services, Inc. merged with Babcock & Brown Parallel Member LLC *after* Babcock & Brown Administrative Services, Inc. resigned twice as administrative manager of Westborough SPE LLC.

- Further, the Durable Power of Attorney does not revoke or affect any personal powers of attorney. Therefore, Peter Blaustein still holds a power of attorney over Jan Blaustein.

Defendant's Position on this Contested Fact:

- The durable power of attorney is governed under Delaware Law.

- The durable power of attorney allows Lolonyon Akouete full authority to act on behalf of Babcock & Brown Parallel Member LLC, which was the immediate predecessor manager for Westborough SPE LLC.

g. **Whether the "WRITTEN CONSENT OF THE MANAGER OF BABCOCK AND BROWN PARALLEL MEMBER LLC IN LIEU OF MEETING" dated June 26, 2023, by "F. Jan Blaustein Scholes, Manager" of "Babcock & Brown Parallel Member LLC" (sic) confirming the Durable Power of Attorney and substantially amending**

51

647

**the Bill of Sale dated November 21, 2022, is evidence of an interest in Westborough SPE LLC and/or its assets.**

Plaintiff's Position on This Contested Fact:

- Again, the Plaintiff does not believe this document is relevant to the pending matter and if anything believes it presents further evidence that invalidates the Defendant's position that they have a legal interest in Westborough SPE LLC and/or the ability to manage the corporation.

Defendant's Position on this Contested Fact:

- The plaintiff fails to recognize that there is a difference between a member-managed limited liability company and a manager-managed limited liability company. Westborough SPE LLC is of the later kind—it is manager-managed pursuant to its written LLC Operating Agreeent which is governed under Delaware Law.

- The LLC Operating Agreement confers upon the Manager the authority to manage the entity and take all actions and steps necessary to preserve the LLC's assets and interests in accordance with its fiduciary duty of care and loyalty.

- Just like a Trustee of a Trust has the authority to redeem property, so too does a manager of a limited liability company. "Succeeding trustees, suing to redeem trust land sold for taxes, their predecessor having left his affairs considerably involved, the value of the property being about $2,000, while the amount due was only $14, were entitled to redeem." *Glazier v. Everett*, 224 Mass. 184 (1916); *see also Widersum v. Bender*, 172 Mass. 436 (1899); *Holbrook v. Brown*, 214 Mass. 542 (1913)). The only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interest. § 37.49. Right of redemption, 18B Mass. Prac., Municipal Law and Practice § 37.49 (5th ed.). Under the Delaware statute, a limited liability company's operating agreement specifies the rights and duties of its members and managers, including the terms under which it can be amended. *See, e.g.,* Del.Code. Ann. §§ 18–215, 18–302. Westborough SPE LLC's Operating

52

Agreement would demand that the manager exercise rights to redeem on behalf of Westborough SPE LLC in order to avoid corporate waste.

- 

h. **Whether the Defendant before this Court is the same Defendant that the Judgment entered in the above-referenced case.**

Plaintiff's Position on This Contested Fact:

- **Evidence submitted to date has clearly shown that the Defendant that filed the Motion to Vacate is not the same entity that is attempting to vacate the judgment ordered by this Court and to subsequently redeem.**

Defendant's Position on this Contested Fact:

- Plaintiff's position clearly indicates a lack of fundamental knowledge of the structure of Delaware limited liability companies.

- A limited liability company has the right to change its manager in accordance with its LLC Operating Agreement and law of the state of formation.

- Westborough SPE LLC did just that in accordance with its fully executed LLC Operating Agreement and Delaware Law.

- Westborough SPE LLC, a Delware limited liability company was the record owner of the property pursuant to the Quitclaim Deed described above. Besides the improper tax-title foreclosure, there has been no recorded change in ownership of the property.

- Thus, Westborough SPE LLC has and continues to be the proper party in interest for redemption. Delaware law recognizes reinstatement of a limited liability company. Westborough SPE LLC's prior manager violated fiduciary duties and acted in direct contravention with the LLC Operating

53

649

Agreement that clearly stated a manager has no right to resign without permission of the Member, in this case Mignonette Investments Limited.

- Westborough SPE LLC was lawfully reinstated in the State of Delaware and a subsequent foreign registration was re-filed in Massachusetts in order to correct the gross deviation from the LLC Operating Agreement and gross negligence of Walter Horst and Dyann Blaine.

- Massachusetts SOC identification numbers are not dispositive as to an entity.

- Both entries of the MA SOC vis-à-vis Westborough SPE LLC have the same FEIN#.

- If an entity has the same FEIN# it is dispositively the same entity.

I. In the event that the Land Court does not allow redemption, that the Town of Westborough must return the difference between the amount owed to the Town of Westborough and what the Town sells the Locus for.

Defendant's Position:

- Under *Tyler v. Hennepin County Minnesota*, 598 U.S. ___ (2023), the Town of Westborough must not engage in "equity theft" and must return the difference between the amount owed to the Town of Westborough and the amount it sells the property for, in the event that the Land Court does not allow redemption/motion to vacate.

PLAINTIFF's POSITION:

- 

i.e. **Witnesses**

54

650

Plaintiff's Witnesses:

    a. Krisi Williams, Town Manager, Town of Westborough

    b. Linda Smith, Treasurer/Collector, Town of Westborough

    c. Jon Steinberg, Chief Assessor, Town of Westborough

    d. Peter Blaustein, POA and Legal Guardian of Jan Blaustein (a/k/a F. Jan Blaustein Scholes)

    e. Dyann Blaine, former legal counsel of Babcock & Brown Limited, LLC, former manager of Westborough SPE LLC

    f. Walter Horst, former Managing Member of Babcock & Brown Limited, LLC, current CFO of Babcock & Brown Limited, LLC

Defendant's Witnesses:

    a. Lolonyon Akouete

    b. Denise Edwards

    c. Walter Horst

    d. Dyann Blaine

    e. Philip Green

    f. Terrence ("Terry") Moriarty, former CFO of Hoyts Group

    g. David Ambromowitz, Esq., Goulston & Storrs P.C.

    h. Robert Edward Paul, Riemer & Braunstein LLP

    i. Keeper of the Records, TMF Group

    j. Jon Steinberg, Chief Assessor, Town of Westborough

    k. David Ferris, Esq.

**Formatted:** Indent: Left: 1", No bullets or numbering

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

55

l.   Brian Charville, Esq., Ferris Development Group

m.  Keeper of the Records, Charles Schwab Corporation.

n.   Krisi Williams, Town Manager, Town of Westborough

o.   Linda Smith, Treasurer/Collector, Town of Westborough

p.   Jon Steinberg, Chief Assessor, Town of Westborough

q.   The Entire Select Board for the Town of Westborough

r.   Christopher M. Perry, Esq., Bredan J. Perry & Associates, P.C.

s.   Allen Hight

t.   Billie J. Wahl, Notary Public, Maricopa County, Arizona, Commission #642362, Classic Residence Hyatt, Scottsdale, Arizona

u.   Medical Director, Classic Residence Hyatt, Scottsdale, Arizona

v.   Chaye Besherse

w.  Keeper of the Records, Delaware Secretary of State Division of Corporations

x.   Keeper of the Records, Massachusetts Secretary of the Commonwealth Corporations Division

y.   Keeper of the Records, Worcester County Registry of Deeds

z.   Sivakumar Shanmugasundaram

aa. Udayana Kotta

bb. Jegan Gomangalam

cc. Uday Kotta

dd. Michael H. Delaney, Esq., Land Court Title Examiner

ee. Deborah H. Patterson, Recorder, Land Court Department

ff.  Hon. Gordon H. Piper, Chief Justice, Land Court Department

56

652

gg. The Honorable Andrea Campbell, Attorney General of The Commonwealth of

Massachusetts

a.

**k.f.Exhibits**

**(a) List of Agreed to Exhibits**

PLAINTIFF'S EXHIBITS:

The below correspond numerically to the Exhibits produced via the Plaintiff's Response to

Defendant's First Request for Production of Documents. (ALL EXHITS REDLINED BELOW

ARE CONTESTED)

Exhibit 1:

- Email chain from Chaye Besherse of Babcock & Brown, dated April 19, 2018 (Hearsay)

Exhibit 2:

- Notice of Resignation of Babcock & Brown, dated April 30, 2011

Exhibit 3:

- Corporations Division, Business Entity Summary, Westborough SPE LLC, Id. No.
  000593094 & Id. No. 001623747 (Objection: must obtain certified copy from
  Commonwealth of Massachusetts)

Exhibit 4:

- State of Delaware, Entity Details, dated July 2, 2023

Exhibit 5:

- The Commonwealth of Massachusetts, Foreign Certificate of Withdrawal, Babcock &
  Brown Administrative Services, Inc., dated April 17, 2008

Exhibit 6:

57

- Arizona Notary Public Reference Manual, dated January 2023 (Objection: No expert to opine and introduce; Not certified copy)

Exhibit 7:

- Secretary of the Commonwealth, Foreign Limited Liability Company Information (Objection: What specific information)

Exhibit 8:

- First Mortgage, Security Agreement and Fixture Filing, from Westborough SPE LLC to The Northwestern Mutual Life Insurance Company, dated October 30, 1997, recorded at the Worcester District Registry of Deeds in Book 19369, Page 85.

Exhibit 9:

- Satisfaction of First Mortgage, Security Agreement and Fixture Filing and Assignment of Lease, dated January 16, 2018, recorded at the Worcester District Registry of Deeds in Book 58446, Page 152

Exhibit 10:

- Tax Lien Motion and Notice of Hearing, signed by Attorney Dawn E. Bloom, dated May 18, 2020

Exhibit 11:

- Westborough Massachusetts, Website Publication

Exhibit 12:

- Deloitte Annual Report of Creditors and Noteholders, dated September 27, 2018, executed by David J F Lombe, Liquidator (Objection: Hearsay. If you want it to be admissible then you must name David Lombe and the other Receiver and author of the report as a witness, he must testify in person, and Defendant shall have the right to cross-examine)

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

58

Exhibit 14:

- News article, telegram.com Worcester Massachusetts, "Regal Cinemas ownership claim emerges in Westboro", by Elaine Thompson, dated June 11, 2019, updated June 12, 2019 (Objection: Hearsay)

Exhibit 15:

- Printable Case View, Generated January 3, 2023, Docket for Conservatorship & Guardianship In Re Frances Jan Blaustein Scholes (Objection: must be a certified copy; Must have an expert to testify)

Exhibit 16: (Objection: Relevance)

- TLO Search, Jan B. Scholes, dated February 12, 2021
- ClustrMaps search of 34 Stern LN
- MapQuest Directions, Atherton, CA to San Francisco, CA
- Product Details, A Journey To Ladakh, Paperback, dated January 1, 2014
- RecorderWorks, search result, Deed of Trust, date of search May 19, 2021
- County of San Mateo, Tax Collector, Property Tax Account at 34 Stern LN
- Transcript Spring 2007, Insight, Alumni Guest Columnist Sound Off, For Women Only, "Women Must Work Together to Achieve True Equality", by Jan Blaustein Scholes '77
- Linkedin.com, Jan Blaustein Scholes, Managing Director, date of search September 9, 2021 with note of Attorney Leahy

Exhibit 17:

- The State Bar of California, Jan Blaustein Scholes #77272, License Status: Not Eligible to Practice Law (Objection: Relevance)

Exhibit 18:

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

59

- The New York Times, "A Tax Shelter, Deconstructed", by David Cay Johnston, July 13, 2003 (Objection: Hearsay)

Exhibit 19:

- Superior Court of California, County of San Francisco, Document Scanning Lead Sheet, dated August 30, 2013, Complaint, Lee Debroff vs. Jan Blaustein Scholes, et al. (Objection: must have certified copy. Hearsay)

Exhibit 20:

- TLO Search, Jan Blaustein Scholes, dated February 1, 2023
- Vi at Grayhawk Info, printed February 1, 2023

Exhibit 21:

- Affidavit of Peter L. Blaustein, dated May 3, 2023 (Objection: Hearsay; Objection no Standing to Testify)
- Waiver of Notice and Assent to the Entry of Judgment of Peter Blaustein as Party of Interest by and/or through a Power of Attorney, as Court-Appointed Guardian, and as Conservator of F. Jan Blaustein (a/k/a Jan Blaustein Scholes), dated May 3, 2023 (Objection: Hearsay and subject to a motion to strike)

Exhibit 22:

- Uniform Statutory Form Power of Attorney (California Probate Code Section 4401), from Frances Jan Blaustein Scholes to Peter L. Blaustein, dated September 11, 2014 (Objection: relevance; Objection: Hearsay)

Exhibit 23:

60

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

- Waiver of Notice and Consent to Conservatorship, in the Circuit Court of the Third Circuit, State of Hawaii, signed by Frances Jan Blaustein Scholes dated April 19, 2019 (Objection: must have a certified copy; Hearsay)

Exhibit 24:

- Email correspondence chain, Iris Leahy, Peter Blaustein, Dyann Blaine, dated July 5, 2023 (Objection: Hearsay; Objection: Relevance)

Exhibit 26:

- Email correspondence chain, Iris Leahy, Peter Blaustein, Dyann Blaine, dated May 4, 2023 (Objection: Hearsay; Objection: Relevance)

Exhibit 29:

- Affidavit of Dyann Blaine, dated April 28, 2023 (Objection: Hearsay; Objection: Relevance)

Exhibit 30:

- TLO Search, Peter Laurance Blaustein, dated February 1, 2023

Exhibit 33:

- Email correspondence chain, Iris Leahy, Peter Blaustein, dated February 21, 2023 (Objection: Hearsay; Objection: Relevance; Objection: Advocate-witness rule)

Exhibit 34:

- Email correspondence chain, Iris Leahy, Dyann Blaine, Peter Blaustein, dated February 21, 2023 (Objection: Hearsay; Objection: Relevance; Objection: Advocate-witness rule)

Exhibit 39:

- Email correspondence chain, Iris Leahy, Peter Blaustein, dated February 22, 2023 (Objection: Hearsay; Objection: Relevance; Objection: Advocate-witness Rule)

61

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

Exhibit 48:

- Town of Westborough Massachusetts, Office of the Treasurer/Collector, Certified Figures, dated May 3, 2023

Exhibit 49:

- Email correspondence chain, Jon Steinberg, Peter Hoffman, Chaye Besherse, dated April 19, 2018 (Objection: Hearsay; Objection: Relevance)

Exhibit 50:

- Email correspondence chain, Kenneth Fries, selectmen@town.westborough.ma.us, kwilliam@town.westborough.ma.us, dated October 22, 2018 (Objection: Hearsay; Objection: Relevance)

Exhibit 54:

- Affidavit of Jonathan Steinberg, dated May 14, 2020 (Objection: Hearsay; Objection: Relevance)

- Email correspondence chain, Walter Horst, Jon Steinberg, Michael Larkin, Chaye Besherse, David Lombe, Ingrid Oey, Jim Malloy, dated October 17, 2017 (Objection: Hearsay; Objection: Relevance)

Exhibit 57:

- bidnet direct. RFP 22 0080 – Sale of Property at 231 Turnpike Road, Westborough

Exhibit 63:

- KP LAW Letter, dated March 18, 2019, from Shirin Everett, Esq. to Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc.

- KP LAW Letter, dated April 11, 2019, from Shirin Everett, Esq. to Mr. Joseph

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

62

- Scarcella, Johnson Winter & Slattery (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

  - Johnson Winter & Slattery Letter, dated April 17, 2019, from Johnson Winter & Slattery to Ms. Shirin Everett (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

  - KP LAW Letter, dated May 6, 2019, from Shirin Everett, Esq. to Mr. Joseph Scarcella, Johnson Winter & Slattery (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 65:

  - Johnson Winter & Slattery Letter, dated April 4, 2019, from Johnson Winter & Slattery to Town of Westborough MA, Attention: Mr. Jim Malloy and Mr. Jon Steinberg (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

  - Email correspondence chain, Robert Haley, Dawn Bloom, Iris Leahy, Alan Kovacs, Shirin Everett, Joseph Scarcella, Emily Barrett, dated October 1, 2020 (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

  - Email correspondence chain, Alan Kovacs, Iris Leahy, dated February 12, 2021 (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 67:

  - Babcock and Brown Limited Insolvency Case Information, Voluntary Administrator, David Lombe, Appointment Date March 13, 2009, Sydney, Australia (Objection: Hearsay; Objection: Certified Copy Required)

  - Babcock and Brown Limited/Deloitte Australia/Reconstructing, Insolvency & Financial Advisory, Summary Update (November 2019) (Objection: Hearsay; Objection: Relevance)

63

Exhibit 69:

- ~~Email correspondence chain, Lenard B. Zide, Dawn Bloom, dated September 5, 2019~~

- ~~Email correspondence chain, Allen Hight, Dawn Bloom, Lenard B. Zide, dated January 17, 2020~~

- ~~Email correspondence chain, Allen Hight, Dawn Bloom, dated February 28, 2020~~

- ~~Letter from Allen Hight to Dawn Bloom, Esq., dated May 18, 2020~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 72:

- ~~Email correspondence chain, Iris Leahy, Scott A. Schlager, Alvin Nathanson, Peter Blaustein, Dyann Blaine, dated January 17, 2020~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 73:

- ~~Email correspondence chain, Scott A. Schlager, Iris Leahy, Alvin Nathanson, Lolonyon Akouete, dated March 31, 2023~~
    - ~~Attachment: Notice of Resignation Letter of Babcock & Brown Administrative Services signed by Walter Horst dated April 30, 2011.~~
    - ~~Attachment: Mignonette Investments Limited, British Virgin Islands (BVI) Financial Services Commission, Registry of Corporate Affairs, Register of Companies Search Report~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 74:

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

64

- ~~Email correspondence chain, John R. Harrington, Lolonyon Akouete, Iris Leahy, dated January 4, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 75:

- ~~Email correspondence chain, Scott A. Schlager, Iris Leahy, Alvin Nathanson, dated July 2, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 76:

- ~~Email correspondence chain, John R. Harrington, Lolonyon Akouete, Iris Leahy, dated January 4, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 77:

- ~~Email correspondence chain, Lolonyon Akouete, Iris Leahy, Denise Edwards, dated February 9, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 79:

- ~~Email correspondence chain, Iris Leahy, Scott A. Schlager, Alvin Nathanson, dated March 31, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 80:

- ~~Email correspondence chain, Lolonyon Akouete, Iris Leahy, Denise Edwards, dated February 9, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)
  - ~~Attachment: Bill of Sale, made on November 21, 2022, executed by Jan Blaustein Scholes on December 8, 2022~~ (Objection: must introduce corrected document)

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

65

Exhibit 81:

- Email correspondence chain, Lolonyon Akouete, Iris Leahy, Denise Edwards, dated February 9, 2023

  o Attachment: IRS Forms 4506, signed by Denies S. Edwards, dated December 21, 2022, one form with no attestation clause box checked, one form with attestation clause box checked

  o Attachment: Letters from IRS to Westborough SPE LLC, A Delaware Limited Liability Co % F Jan Blaustein, 1241 Deer Park Ave Ste 1 No 1051, North Babylon, NY 11703, dated December ____, 2022 (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 82:

- Letter from California State Controller, Unclaimed Property Division, Unclaimed Property Claim Affirmation Form to Westborough SPE LLC, c/o Denise Edwards, 137 N 25th St., Wyandanch, NY 11798, "Printed Date: 12/01/2022"

  o Checking Accounts – Cash Reported $1,293,646.83 – Shares Reported 0.0000

  o Signed by Denise Edwards on December 8, 2022 (Objection: Hearsay; Objection: Relevance)

Exhibit 83:

- Email correspondence, Harpreet Nakhwal, Iris Leahy, dated February 23, 2023

  o Attachment: Letter from California State Controller, Denial of Unclaimed Property Claim Identification Number 4853303, to Denise Edwards, dated February 8, 2023 (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

66

Exhibit 84:

- ~~Email correspondence chain, Harpreet Nakhwal, Iris Leahy, dated February 23, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 85:

- ~~Email correspondence chain, Iris Leahy, Scott A. Schlager, Alvin Nathonson, dated April 18, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 86:

- ~~Email correspondence chain, Iris Leahy, Scott A. Schlager, Alvin Nathonson, dated April 18, 2023~~
  - ~~Attachment: Bill of Sale, made on November 21, 2022, executed by Jan Blaustein Scholes on December 8, 2022~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 87:

- ~~Email correspondence chain, Scott A. Schlager, Iris Leahy, Alvin Nathonson, dated April 18, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 88:

- ~~Email correspondence chain, Scott A. Schlager, Iris Leahy, Alvin Nathanson, Lolonyon Akouete, dated March 31, 2023~~
  - ~~Attachment: Notice of Resignation Letter of Babcock & Brown Administrative Services signed by Walter Horst dated April 30, 2011.~~
  - ~~Attachment: Mignonette Investments Limited, British Virgin Islands (BVI) Financial Services Commission, Registry of Corporate Affairs, Register of~~

67

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

~~Companies Search Report~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 89:

- ~~Email correspondence chain, Matthew A. Morris, Iris Leahy, dated December 14, 2022~~
    - o ~~Attachment: State of Delaware Certificate of Revival and Good Standing, signed by Denise Edwards, dated November 22, 2022~~
    - o ~~Attachment: State of Delaware Entity Search Status Copy, dated December 14, 2022~~
    - o ~~Attachment: State of Delaware Entity Search Status Copy, dated November 21, 2022~~
    - o ~~Attachment: Westborough SPE LLC, Massachusetts Corporations Division, Business Entity Summary, dated December 14, 2022~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

Exhibit 90:

- ~~Invoice No. 286882 of Sherin Lodgen, to Westborough SPE LLC, dated January 17, 2023, for Processional Services Rendered for the period ending January 10, 2023~~ (Objection: Attorney Client Privilege)

Exhibit 91:

- ~~Email correspondence chain, Lolonyon Akouete, Iris Leahy, Denise Edwards, dated February 10, 2023~~
    - o ~~Attachment: Affidavit of Frances Jan Blaustein Scholes, signed by Frances Jan Blaustein Scholes, dated January 23, 2023~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

68

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

Exhibit 92:

- ~~Email correspondence chain, Lolonyon Akouete, Iris Leahy, dated January 14, 2023~~

  - ~~Attachment: Bill of Sale, made on November 21, 2022, executed by Jan Blaustein Scholes on December 8, 2022~~ (Objection: Hearsay; Objection: Relevance; Objection: Witness-advocate rule)

DEFENDANT'S EXHIBITS:

Exhibit 1:

Westborough SPE LLC has not yet determined which exhibits it will introduce at trial and thus reserves the right to introduce any document admissible under the Massachusetts Guide to Evidence.

Notwithstanding the foregoing, Defendant incorporates by reference all documents listed by the Plaintiff above.

Plaintiff would add the following documents:

93: Quitclaim Deed

94: Westborough SPE LLC fully executed operating agreement

95: Durable Power of Attorney

96: Written Consent of Manager

**(b) List of Contested Exhibits**

    a. Plaintiff objects to any and all of Defendant's Exhibits that relate to Babcock & Brown Parallel Member as this information is not relevant to

69

this case. Said evidence is not probative and unnecessarily distracts from the issues before this Court. [DEFENDANT: Defendant contends that there is no adequate basis for Plaintiff's objection. Babcock & Brown Parallel Member LLC is the successor by merger of Babcock & Brown Administrative Services LLC which was the successor in interest to Babcock & Brown Administrative Services, Inc. This is extremely probative and will prove that the Town of Westborough committed a material due process violation by serving the wrong party—Babcock & Brown Parallel Member LLC was the true manager of Westborough SPE LLC at the time the tax-title proceedings were instituted. ]

b. Plaintiff objects to any and all of Defendant's Exhibits that relate to Mignonette Investments Limited as this information is not relevant to this case. Said evidence is not probative and unnecessarily distracts from the issues before this Court. [DEFENDANT: Defendant contends that there is no adequate basis for Plaintiff's objection. Mignonette Investments Limited is a British Virgin Islands limited partnership and is the 100% member of Westborough SPE LLC. This information is extremely relevant because it shows the Member of Westborough SPE LLC.]

b.c.

1.g. **Discovery Status**

Plaintiff's Position on Discovery Status:

70

> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto
>
> **Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

Plaintiff is satisfied with the progress and status of discovery to date.

Defendant's Position on Discovery Status:

**Defendant is not satisfied with the progress and status of discovery to date. Defendant would respectfully request deposition testimony.**

**h. MOTIONS IN LIMINE.**

Defendant Westborough SPE LLC reserves its rights to file Motions in limine and Daubert-Lanigan Motions.

Respectfully submitted,

TOWN OF WESTBOROUGH
By its Attorney,

Date: August 21, 2023

_____
Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661
[INSERT EMAIL]

WESTBOROUGH SPE LLC, a Delaware limited liability company,
By its Attorneys,

_____
Scott A. Schlager, BBO#695421
Alvin S. Nathanson, BBO#367480
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Tel. (617) 909-4511
Fax. (617) 210-4824
sas@natgolaw.com | asn@natgolaw.com

**CERTIFICATE OF SERVICE**

I, Iris A. Leahy, attorney for the Plaintiff, hereby certify that I have served the foregoing, First Draft of the Joint Pre-Trial Memorandum, via email only:

71

**Formatted:** Indent: Left: 1"

**Formatted:** Font: Not Bold, No underline

**Formatted:** Right

**Formatted:** Right, Indent: Left: 0", First line: 0"

**Formatted:** Right

**Formatted:** Superscript

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

Scott A. Schlager, Esq.
Alvin S. Nathanson, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109

TOWN OF WESTBOROUGH
By its Attorney,

Date: August 4, 2023

_____
Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

**CERTIFICATE OF SERVICE**

I, Scott A. Schlager, Esq., attorney for the Defendant Westborough SPE LLC, a Delaware limited liability company, hereby certify that I have served the foregoing, Second Draft of the Joint Pre-Trial Memorandum, via email only:

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040

**/s/ Scott A. Schlager, BBO# 695421**

WESTBOROUGH SPE LLC, a Delaware limited liability company,
By its Attorneys,

_____
Scott A. Schlager, BBO#695421
Alvin S. Nathanson, BBO#367480
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Tel. (617) 909-4511
Fax. (617) 210-4824

72

sas@natgolaw.com | asn@natgolaw.com

73

# <u>Exhibit 6</u>
Unlawful Waiver of Notice and Assent to the Entry
of Judgment

## COMMONWEALTH OF MASSACHUSETTS
### TRIAL COURT
### LAND COURT DEPARTMENT

**TAX LIEN CASE NO: 19 TL 000768**

TOWN OF WESTBOROUGH )
      **Plaintiff** )
  v. )
       )
       )
WESTBOROUGH SPE, LLC, et al. )
      **Defendant** )

### WAIVER OF NOTICE AND ASSENT TO THE ENTRY OF JUDGMENT

I, ___Peter Blaustein_____, as
Party of Interest by and/or through a Power of Attorney, as Court-Appointed Guardian, and as Conservator for F. Jan Blaustein a/k/a Jan Blaustein Scholes, in the above-referenced tax lien case, hereby waives her right to notice and assents to the previous entry of judgment with regards to the parcel listed below:

DESCRIPTION OF PROPERTY:

PROPERTY: Land and any building(s) thereon      CONTAINING: 29.336 AC (more or less)
LOCATION: 231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY: Worcester District Registry of Deeds Book 19369, Page 75

    WHEREFORE, I respectfully move this Honorable Court to enter an order allowing this waiver of notice and assent to the entry of judgment in favor of the Plaintiff.

Dated: ___May 3, 2023___

Respectfully submitted by

___Peter Blaustein_____,
Printed Name            Title

_____
Signature

State of California, County of San Mateo )ss.
On ___May 3rd___, 20_23_ before me Dina N. Kolesnikov,
Notary Public, personally appeared ___Peter Blaustein___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Notary Signature _____

DINA N. KOLESNIKOV
COMM. #2386495
Notary Public - California
San Mateo County
My Comm. Expires Dec. 12, 2025

# **Exhibit 7**
Email correspondence between the State Controller's and the town's attorneys

## AttyLeahy@outlook.com

| | |
|---|---|
| **From:** | Nakhwal, Harpreet <HNakhwal@sco.ca.gov> |
| **Sent:** | Thursday, February 23, 2023 12:33 PM |
| **To:** | attyleahy@outlook.com |
| **Subject:** | Unclaimed Property-Westborough SPE LLC |
| **Attachments:** | MX-5071_20230223_092811.pdf |

Ms. Leahy,

Your inquiry regarding a claim for Unclaimed Property submitted for property reported with the owner as Westborough SPE LLC was forwarded to me. I attempted to contact you via telephone yesterday and left you a voicemail.

We are considering your inquiry a request under California's Public Records Act. Attached, please find a copy of my letter addressing the claim received for the unclaimed property in question.

I would also like to clarify that while people may register with the State Controller's Office as an investigator for purposes of unclaimed property claims, they are not registered investigators of the California State Controller's Office, Unclaimed Property Division.

If you would like to discuss further, please feel free to call me at the number listed below.

**Harpreet K. Nakhwal** | Staff Counsel
Office of State Controller Malia M. Cohen
Legal Office
300 Capitol Mall, Suite 1850
Sacramento, CA 95814
Tel: (916) 322-6430| Fax: (916) 322-1220


CONFIDENTIALITY NOTICE: This communication and its contents is from an attorney and may contain confidential and legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act (18 U.S.C. §§2510-22, 2701-11, 3121-26). If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

OBJECTION OF PETITIONING CREDITORS TO MOTION OF
THE ALLEGED DEBTOR FOR RELIEF FROM STAY [DOCKET NO. 13]

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now come the Petitioning Creditors, by and through their counsel, and hereby state their opposition to the Alleged Debtor's Motion for Relief from Stay [Docket No. 13]. As grounds for their opposition, the Petitioning Creditors state the following:

1. The Estate created by the filing of the Involuntary Petition by the Petitioning Creditors could be a multi-million dollar estate.

2. The Petitioning Creditors have delayed in opposing the Alleged Debtor's Motion for Relief from Stay hoping that an Order for Relief would have entered and a Trustee appointed, relieving the Petitioning Creditors from any obligation to represent the interests of the Bankruptcy Estate.

3. There are at least two potential assets of the Bankruptcy Estate:

   A. An escheated fund of $1,293,646.83 being held by the Controller of the State of California awaiting claiming by the appropriate representative of the Debtor; and

   B. Real estate in Westborough, Massachusetts worth at least $2,500,000 and subject to a tax lien which the Debtor states is $918,314.60.

1

674

4. The Alleged Debtor, "represented" by its Manager, a layperson, believes that it is necessary for him to take action to obtain the escheated funds. The Alleged Debtor is wrong. While the Alleged Debtor cites *In re Death Row Records, Inc.,* (B.A.P. 9th Cir., Mar. 21, 2012) for the proposition that only the Alleged Debtor and not the Trustee in Bankruptcy can make a legally effective claim for the escheated funds, the Alleged Debtor, not surprisingly, misreads the case. In fact, the Court <u>rejected</u> the arguments made by the Controller of the State of California (including sovereign immunity) and ruled that a trustee in bankruptcy is, indeed, entitled to collect escheated funds being held by the Controller (the owner of such funds being defined by the California escheat law itself as "the person who had the legal right to the property prior to its escheat…his or her <u>legal representative</u>..." (emphasis added).

5. There is no Statute of Limitations urgency. Under Section 108, the Trustee in Bankruptcy will have time <u>after the entry of the Order for Relief</u> to take whatever action could have been taken on the date the Involuntary Petition was filed.

6. This case is further confused by a "Limited" Objection from the Town of Westborough stating its objection to the appointment of a Trustee to administer whatever the Debtor's rights are in the Westborough land. While the Town of Westborough seeks to keep over a million dollars in real estate value from the Bankruptcy Estate, determinations with respect to that asset should be made by this Court with the benefit of argument from a Trustee in Bankruptcy. The Town of Westborough is free to attempt to convince the Trustee that the Bankruptcy Estate has no interest in the real estate in question, but there cannot be a limitation even before his/her appointment on the Trustee's ability to look at this seven-figure asset.

Wherefore, the Petitioning Creditors pray that this Court deny the Alleged Debtor's Motion for Relief from Stay without prejudice to its renewal after the appointment of a Chapter 7

Trustee and for such other and further relief, especially the entry of an Order for Relief, as may

be just and proper.

PETITIONING CREDITORS,

By their attorneys,

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
The Gordon Law Firm LLP
57 River Place, Suite 200
Wellesley, Massachusetts 02481
Tel: (617) 261-0100
Fax: (617) 261-0789
Dated: October 10, 2023 E-mail: sgordon@gordonfirm.com

<u>CERTIFICATE OF SERVICE</u>

I, Stephen F. Gordon, hereby certify that on October 10, 2023, the foregoing Motion was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake    jblake@k-plaw.com
- Paul W. Carey    pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Stephen F. Gordon    sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King    USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley    briley@k-plaw.com
- Scott Adam Schlager    sas@natgolaw.com
- Roger L. Smerage    rsmerage@k-plaw.com

and by email upon Manager of the Alleged Debtor:

Lolonyon Akouete (info@smartinvestorsllc.com)

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)

P:\Clients-GLF\Westborough SPE\Plead (Bktcy)\Obj to D Mtn f Relief f Stay.docx

3

676

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE, LLC, | ) | |
| | ) | |
| Alleged Debtor | ) | |
| | ) | |

## <u>ORDER FOR RELIEF IN INVOLUNTARY CASE</u>

Upon consideration of the involuntary petition filed against Westborough SPE LLC, the

above-named alleged debtor ("Westborough SPE" or "Alleged Debtor"), on August 31, 2023

[Dkt. No. 1] and the evidence of the service of the involuntary summons [Dkt. No. 12] filed by

counsel to the petitioners, the involuntary petition not having been timely controverted,[1] an

ORDER FOR RELIEF under Chapter 7 of Title 11 of the United States Code, is hereby

ENTERED.

Dated: October 11, 2023 By the Court,

Christopher J. Panos
United States Bankruptcy Judge

---

[1] The Court notes that Westborough SPE, pursuant to a "Motion and Answer to Petition for Involuntary Bankruptcy" [Dkt. No. 5] filed by the manager of the Alleged Debtor, also purported to consent to the entry for an order for relief. Pursuant to MLBR 9010-1(g), MLBR 9029-3, and D. Mass. LR 83.5.5, a limited liability company may not appear without counsel.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

---

In Re:   Westborough SPE LLC ,
         Debtor

Chapter: 7

Case No: 23−40709

Judge Christopher J. Panos

---

### CERTIFICATE OF APPOINTMENT OF INTERIM TRUSTEE
### AND FIXING OF BOND

Pursuant to 11 U.S.C. § 701(a)(1)

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio, P.C.
1350 Main Street
Suite 1505
Springfield, MA 01103

is hereby appointed as Interim Trustee in the above−referenced proceeding and is designated to preside at the meeting of creditors. The Trustee's bond is fixed under the general blanket bond heretofore approved. The Trustee shall notify the United States Trustee immediately in the event that the liquid assets exceed $1,000,000.

Pursuant to FRBP 2008 the Trustee will be deemed to have accepted this appointment unless it is rejected within five (5) days of receipt of this notice. Unless another trustee is elected the Interim Trustee appointed herein shall serve as Trustee without further appointment as provided by 11 U.S.C. § 702(d).

Date:10/12/23

<u>William K. Harrington</u>
U.S. Trustee
(617) 788−0400

Original filed with Bankruptcy Court
Copy to trustee

---

**REJECTION**

I, Jonathan R. Goldsmith , hereby REJECT appointment as Trustee.
Dated: This day of _____ .

Jonathan R. Goldsmith

Original filed with Bankruptcy Court
Copy to United States Trustee

29

| Information to identify the case: | | |
|---|---|---|
| Debtor | **Westborough SPE LLC** <br> Name | EIN: 94–3286768 |
| United States Bankruptcy Court District of Massachusetts | | Date case filed for chapter: 7 8/31/23 |
| Case number: 23–40709 | | |

## Official Form 309D (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case –– Proof of Claim Deadline Set          **10/20**

**For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

**To protect your rights, you may wish to consult an attorney.** All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other document in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | |
|---|---|---|
| 1. **Debtor's full name** | Westborough SPE LLC | |
| 2. **All other names used in the last 8 years** | | |
| 3. **Address** | 231 Turnpike Road <br> Westborough, MA 01581 | |
| 4. **Debtor's attorney** <br> Name and address | Westborough SPE LLC <br> 231 Turnpike Road <br> Westborough, MA 01581 | Contact phone _____ <br> Email: **None** |
| 5. **Bankruptcy trustee** <br> Name and address | Jonathan R. Goldsmith <br> Goldsmith, Katz & Argenio, P.C. <br> 1350 Main Street <br> Suite 1505 <br> Springfield, MA 01103 | Contact phone 413–747–0700 <br> Email: trusteedocs1@gkalawfirm.com |
| 6. **Bankruptcy clerk's office** <br> Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at pacer.uscourts.gov. | U. S. Bankruptcy Court <br> 595 Main Street <br> Worcester, MA 01608 | Hours open <br> Monday–Friday <br> 8:30am–5:00pm <br><br> Contact phone        508–770–8900 <br> Date:                      10/12/23 |
| 7. **Meeting of creditors** <br> The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | **November 15, 2023 at 11:30 AM** <br><br> The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location: <br> **The meeting will be held TELEPHONICALLY** |
| | **The dial–in number and participant code for the telephonic section 341 meeting of creditors will be posted to the docket within 14 days prior to the meeting. You may also contact the trustee for dial–in information.** | |

**For more information, see page 2 >**

Official Form 309D (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case –– Proof of Claim Deadline Set**          page **1**

679

Debtor **Westborough SPE LLC**                                           Case number **23–40709 –cjp**

| | | |
|---|---|---|
| 8. **Deadlines**<br>Papers and any required fee must be received by the bankruptcy clerk's office **no later than the deadlines listed.** | **Deadline for all creditors to file a proof of claim (except governmental units):** | **Filing deadline: 1/9/24** |
| | **Deadline for governmental units to file a proof of claim:** | **Filing deadline:** 180 days from the date the bankruptcy petition was filed. |
| | A proof of claim is a signed statement describing a creditor's claim. A proof of claim form (Official Form 410) may be obtained at www.uscourts.gov or any bankruptcy clerk's office or printed from the courts website at www.mab.uscourts.gov/mab/creditorinformation. You may also file your claim electronically through the court's website at www.mab.uscourts.gov. | |
| | • If you do not file a proof of claim by the deadline listed, you might not be paid any money on your claim.<br><br>• **To be paid, you must file a proof of claim even if your claim is listed in the schedules that the debtor filed.** | |
| | Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| 9. **Deadline to file §503(b)(9) requests** | Requests under Bankruptcy Code §503(b)(9)(goods sold within twenty(20) days of bankruptcy) must be filed in the bankruptcy clerk's office. | **Filing deadline:** 60 days from the first date set for the meeting of creditors. |
| 10. **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| 11. **Liquidation of the debtor's property and payment of creditors' claims** | The bankruptcy trustee listed on the front of this notice will collect and sell the debtor's property. If the trustee can collect enough money, creditors may be paid some or all of the debts owed to them, in the order specified by the Bankruptcy Code. To ensure you receive any share of that money, you must file a proof of claim, as described above. | |
| 12. **Abandonment of Estate Property** | Notice is hereby given that any creditor or other interested party who wishes to receive notice of the estate representative's intention to abandon property of the estate pursuant to 11 U.S.C. §554(a) must file with the Court and serve upon the estate representative and the United States trustee a written request for such notice within fourteen (14) days from the date first scheduled for the meeting of creditors. | |

Official Form 309D (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case –– Proof of Claim Deadline Set**        page **2**

680

Dated: 10/12/2023

DENIED AS UNNECESSARY. THE ORDER FOR RELIEF HAS ENTERED IN THIS CASE, SEE DKT. NO. 26, AND A CHAPTER 7 TRUSTEE HAS BEEN APPOINTED.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |
|---|---|
| In re: | Involuntary Chapter 7 |
|  | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, |  |
| Debtor. |  |

## MOTION TO APPOINT INTERIM TRUSTEE

TO THE HONORABLE JUDGE CHRISTOPHER J. PANOS, AND TO THE PARTIES IN INTEREST:

I, Lolonyon Akouete, the manager of the debtor, Westborough SPE LLC ("Debtor"), hereby submit this Motion to Appoint an Interim Trustee in the above-referenced involuntary Chapter 7 bankruptcy case, pursuant to Section 1104 of the U.S. Bankruptcy Code.

I. BACKGROUND

1. On August 31, 2023, a petition under Title 11 of the United States Code was filed against Westborough SPE LLC, seeking an order for relief under chapter 7 of the Bankruptcy Code.

II. LEGAL BASIS

Section 1104 of the U.S. Bankruptcy Code authorizes the appointment of a trustee for cause, including preventing unreasonable delay or gross mismanagement of the estate. Section 303(g) permits the court to appoint an interim trustee under Section 701 of the U.S. Bankruptcy Code in an involuntary Chapter 7 case.

III. JUSTIFICATION

In the interest of preserving the bankruptcy estate and preventing further deterioration, Westborough SPE LLC requests the appointment of an interim trustee due to the following:

1. Preservation of Estate Property:
   - The Debtor's assets include $1,293,646.83 in unclaimed funds held by the State of California and a real property at 231 Turnpike Road, subject to a tax-title taking proceeding.

2. Deteriorating Property Condition:
   - The property at 231 Turnpike Road has suffered damage from vandalism and neglect, posing safety concerns (See Exhibit 1: Photograph of the Damages and Vandalism).

3. Escalating Property Costs:
   - Property taxes, interest, expenses, and costs of taking for 231 Turnpike Road have increased substantially from $119,628.17 in December 2018 to $918,314.60 as of May 16, 2023 (See Exhibit 2).

4. Unclaimed Funds:
   - The State of California reported $1,293,646.83 in unclaimed funds as of June 15, 2022, which are not accruing interest.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
|  | ) |  |
| WESTBOROUGH SPE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## APPLICATION FOR ORDER AUTHORIZING TRUSTEE
## TO EMPLOY COUNSEL TO THE TRUSTEE

Now comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Chapter 7 Trustee ("Trustee") in the above-captioned proceedings, and moves this Honorable Court for an Order pursuant to §327(d) of the U.S. Bankruptcy Code ("Code") authorizing him to employ GOLDSMITH, KATZ & ARGENIO, P.C., as Counsel to the Trustee. In support of said Application, the Trustee respectfully represents as follows:

1. That on August 31, 2023, an Involuntary Petition was filed against the above-named Debtor under the provisions of Chapter 7 of the Bankruptcy Code; subsequently, an Order for Relief was entered on October 11, 2023.

2. That on October 12, 2023, JONATHAN R. GOLDSMITH accepted the appointment as Chapter 7 Trustee for the above-entitled estate.

3. That, as a result of information procured by the Trustee since his appointment, your Applicant believes that the appointment of counsel is necessary to effectuate the lawful rights and remedies available to the Trustee under the provisions of Title 11 and to fully and properly discharge his fiduciary duties.

4. That the services of counsel are required for, but not limited to, the following purposes:

(a)     to review and evaluate certain assets of the Debtor;

(b)     to pursue all lawful claims of the estate;

(c)     to liquidate assets of the estate;

(d)     to employ and supervise professionals employed by the estate; and

(e)     to maximize the recovery for creditors of the estate.


5.      In order to avoid duplication of effort and to maximize the recovery for the benefit of the estate and the unsecured creditors, your Applicant believes it will be in the best interests of the estate to employ counsel to the Trustee.


6.      Your Applicant avers that GOLDSMITH, KATZ & ARGENIO, P.C. is proficient in the knowledge and practice of bankruptcy law and has the experience required to adequately represent the Trustee in this case.


7.      On information and belief, no member or associate of GOLDSMITH, KATZ & ARGENIO, P.C. has any other connection with the Debtor, his creditors or any other party in interest.


WHEREFORE, your Applicant prays for the allowance of this Application and for an Order pursuant to §327(d) of the Code authorizing him to employ GOLDSMITH, KATZ & ARGENIO, P.C. as Counsel to the Trustee in this case.

JONATHAN R. GOLDSMITH, TRUSTEE IN
BANKRUPTCY FOR  WESTBOROUGH SPE LLC

Dated:  *10/13/23*

By:  */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

683

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 7, No. 23-40709 |
| WESTBOROUGH SPE LLC | ) ) | |
| Debtor | ) ) ) | |

## **AFFIDAVIT PURSUANT TO FRBP 2014(a) AND MLBR 2014-1**

1.      I hereby represent that I do not hold or represent any interest adverse to the estate of the above-noted Debtor (11 U.S.C. Section 327).  I further represent that no member of my firm holds or represents any interest adverse to the estate.

2.      My, and my firm's connections with the Debtor, creditors, or other parties in interest, and their respective attorneys and accountants (Federal Rule of Bankruptcy Procedure 2014(a)) are as follows:  None.

3.      I hereby represent that I am and each member of my firm is a "disinterested person" (11 U.S.C. Section 327) as that term is defined in 11 U.S.C. Section 101 (14).

4.      I hereby represent that neither I nor any member of my firm is disqualified by reason of being a relative of a Judge of the United States Bankruptcy Court for the District of Massachusetts, nor am I or any member of my firm disqualified by reason of being a relative of the United States Trustee for the Districts of Maine, Massachusetts, New Hampshire and Rhode Island (Federal Rule of Bankruptcy Procedure 5002).

5.      I hereby represent that I have agreed not to share with any person the compensation to be paid for the services rendered in this case.

6.      I have received no retainer in this case.

7.      I shall amend this statement immediately upon any learning that:  (a) any of the within representations are incorrect; or (b) there is any change of circumstances relating thereto.

8.      I have reviewed the provisions of MBLR 2016-1.

684

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: 10/13/23

By: _____
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                 )       Chapter 7, No. 23-40709

                      )

WESTBOROUGH SPE LLC      )

                      )

        Debtor         )

                      )

## <u>ORDER AUTHORIZING TRUSTEE TO EMPLOY COUNSEL TO THE TRUSTEE</u>

At                , in said District, on this        day of October, 2023.

Upon the Application of JONATHAN R. GOLDSMITH, Trustee in the above-captioned case, seeking to employ GOLDSMITH, KATZ & ARGENIO, P.C. to act as Counsel to the Trustee pursuant to 11 U.S.C. §327(d), for cause shown, proper notice having been given and no objections being filed, it is hereby

ORDERED that JONATHAN R. GOLDSMITH, Trustee, is hereby authorized to employ GOLDSMITH, KATZ & ARGENIO, P.C., as Counsel to the Trustee in the above-captioned case, with all fees and expenses subject to further Order of this Court.

_____

HONORABLE CHRISTOPHER J. PANOS
Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
|  | ) |  |
| WESTBOROUGH SPE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Application to Employ Counsel upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this *13th* day of October, 2023:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ferris Development Group, LLC
(Address not available)

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

LOLONYON AKOUETE
ATTN WESTBOROUGH SPE LLC
800 RED MILLS RD
WALLKILL, NY 12589-3220

Lolonyon Akouete
Manager of Westborough, SPE, LLC
1241 Deer Park Ave
Suite 1 #1051
North Babylon, NY 11703

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608-2361

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Matthew A. Morris Sherin and
Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

---

In Re:    Westborough SPE LLC ,
          Debtor

Chapter: 7
Case No: 23–40709
Judge Christopher J. Panos

---

### NOTICE OF NONEVIDENTIARY TELEPHONIC HEARING

**PLEASE TAKE NOTICE** that a **HEARING** will be held on **10/25/23 at 02:30 PM** before the Honorable Judge Christopher J. Panos, the hearing will be held TELEPHONICALLY to consider the following:

> [20] Motion of the Town of Westborough for Relief from the Automatic Stay (231 Turnpike Road, Westborough, MA) and Opposition to Appointment of a Bankruptcy Trustee. TO PARTICIPATE, ATTENDEES SHALL DIAL (877) 873–8018 AND ENTER ACCESS CODE 1167883.

> To facilitate informal discussions similar to those that occur just prior to in–person hearings that may narrow or resolve issues, the Court encourages parties to confer by telephone prior to the scheduled hearing. When stating their names for the record, participants are invited to also state that the parties have reached resolution on some or all of the issues on for hearing.

### OBJECTION/RESPONSE DEADLINE: OCTOBER 24, 2023 12:00 PM

If no deadline is set, the objection/response deadline shall be governed by the Federal Rules of Bankruptcy Procedure (FRBP) and the Massachusetts Local Bankruptcy Rules (MLBR). If no objection/response is timely filed, the Court, in its discretion, may cancel the hearing and rule on the motion without a hearing or further notice. See MLBR 9013–1(f).

### THE MOVING PARTY IS RESPONSIBLE FOR:

1. Serving a copy of this notice upon all parties entitled to notice within two (2) business days; and
2. Filing a certificate of service with respect to this notice seven (7) days after the date of issuance set forth below. If the hearing date is fewer than seven (7) days from the date of issuance, the certificate of service must be filed no later than the time of the hearing. **If the movant fails to timely file a certificate of service, the court may deny the motion without a hearing.**

### NOTICE TO ALL PARTIES SERVED:

1. **<u>Your rights may be affected.</u>** You should read this notice, the above referenced pleading and any related documents carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.
2. Any request for a continuance **MUST** be made by **WRITTEN MOTION** filed and served at least one (1) business day prior to the hearing date. See MLBR 5071–1.
3. The above hearing shall be <u>nonevidentiary</u>. If, in the course of the nonevidentiary hearing, the court determines the existence of a disputed and material issue of fact, the court will schedule an evidentiary hearing. <u>If this is a hearing under section 362</u>, it will be a consolidated preliminary and final nonevidentiary hearing unless at the conclusion thereof the court schedules an evidentiary hearing.

Date:  10/16/23

By the Court,

Halina Magerowski
Deputy Clerk
508–770–8927



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | Westborough SPE LLC | Chapter 7<br>23-40709-CJP |
| | Debtor(s) | |

## ORDER

**MATTER:**

#13 Emergency Motion filed by Westborough SPE LLC to Modify
Automatic Stay.

NOTWITHSTANDING THAT THE MOTION WAS FILED BY
WESTBOROUGH SPE, LLC WITHOUT COUNSEL, SEE MLBR 9010-
1(G), MLBR 9029-3, AND D. MASS. LR 83.5.5 (PROVIDING THAT A
LIMITED LIABILITY COMPANY MAY NOT APPEAR WITHOUT
COUNSEL), EVEN IF THE COURT WERE TO CONSIDER THIS
MOTION, IT IS MOOT.  AN ORDER FOR RELIEF HAS ENTERED AND
A CHAPTER 7 TRUSTEE HAS BEEN APPOINTED.

Dated: 10/23/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

690



10/23/2023 MOOT. AN ORDER FOR RELIEF HAS ENTERED AND A CHAPTER 7 TRUSTEE HAS BEEN APPOINTED.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

EMERGENCY MOTION OF PETITIONING CREDITORS
FOR IMMEDIATE ENTRY OF AN ORDER FOR RELIEF OR, IN THE ALTERNATIVE,
AN ORDER FORBIDDING THE MANAGER OF THE ALLEGED DEBTOR
FROM FILING ANYTHING IN THE COURTS OF CALIFORNIA

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now come the Petitioning Creditors herein and, on an emergency basis created by the Manager of the Alleged Debtor, move for the immediate entry of an Order for Relief (which will result in the immediate appointment of a Chapter 7 Trustee) or, in the alternative or in addition, for an Order forbidding the Manager of the Alleged Debtor from filing anything in the Courts of the State of California. In support of their Emergency Motion, the Petitioning Creditors state as follows:

1. On August 31, 2023, an Involuntary Petition commenced the within case.

2. A Summons was issued upon the Involuntary Petition and the Alleged Debtor accepted service of the Summons on September 2, 2023.

3. A Return of Service was filed with this Court on September 8, 2023.

4. The Court set September 29, 2023 as the deadline for filing an Answer to the Involuntary Petition.

5. No Answer contesting the Involuntary Petition has been filed (the Alleged Debtor filed *pro se* a pleading entitled "Answer" but in it consented to the Involuntary Petition).

1

692

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
|  | ) |  |
| WESTBOROUGH SPE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## TRUSTEE'S LIMITED OBJECTION TO TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSITION TO APPOINTMEN TOF BANKRUPTCY TRUSTEE

NOW comes JONATHAN R. GOLDSMITH, Trustee ("Trustee"), through his counsel and submits this limited objection to the Motion of the Town of Westborough for Relief from the Automatic Stay [docket No. 20, the "Motion"]. In support thereof, the Trustee respectfully states as follows:

1. In light of his recent appointment, the Trustee is not yet in a position to respond to the various unnumbered paragraphs of the Motion, and reserves his right to do so.

2. On August 31, 2023, an Involuntary Petition was filed against the Debtor.

3. On October 3, 2023, the Town of Westborough filed the subject Motion.

4. Subsequent to the filing of the Motion, the Court entered an Order for Relief in the Involuntary case [docket No. 26].

5. On October 12, 2023, the Office of the U.S. Trustee filed the Certificate of Appointment of Interim Trustee, noting the appointment of Jonathan R. Goldsmith [docket No. 29].

6. The 341 Meeting of Creditors in this case is scheduled for November 15, 2023.

693

7.  In light of the foregoing and considering what appears to be complex facts and issues surrounding the grounds by which the Town of Westborough seeks relief from stay, the Trustee moves this Honorable Court to either deny the Motion or alternatively continue the hearing for at least 45 days.  A continuance of the hearing will enable the Trustee to conduct the 341 Meeting, allow him time to analyze the Debtor's dispute with the Town of Westborough and, if appropriate, seek the employment of special counsel to assist the Trustee in the matter.

WHEREFORE, the Trustee respectfully requests that:

1.  the Town of Westborough's Motion for Relief be denied; or
2.  alternatively continue the hearing on the Motion for 45 days; and
3.  for other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated:  October 24, 2023

By:  */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

694

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                                    )        Chapter 7, No. 23-40709
                                          )
WESTBOROUGH SPE LLC                       )
                                          )
          Debtor                          )
                                          )

## ASSENTED TO MOTION TO CONTINUE HEARING ON THE TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Now come JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee in the above-captioned case ("Trustee") and the TOWN OF WESTBOROUGH (the "Town), through its undersigned counsel, and respectfully move this Honorable Court for an Order continuing the hearing on the Town of Westborough's Motion for Relief from Automatic Stay **currently scheduled telephonically for Wednesday, October 25, 2023 at 2:30 p.m.** for thirty (30) days or to a date that is convenient to the Court.

As grounds therefore, the Trustee and counsel for the Town request the continuance of the hearing to enable the Trustee to conduct the 341 Meeting, allow him time to analyze the Debtor's dispute with the Town and, if appropriate, seek the employment of special counsel to assist the Trustee in the matter.

In light of this request, the Trustee hereby withdraws his Limited Objection filed earlier today (Doc. No. 43) to the extent he seeks to deny the Town's motion without further response from the Trustee and to the extent he requests an extension of time beyond the 30 days requested herein, while reserving the right to file a more substantive response to the Town's motion within the time allowed by the requested extension.

WHEREFORE, the Trustee and the Town respectfully request that the Court allow this Motion and continue the hearing presently scheduled for Wednesday, October 25, 2023 at 2:30

p.m. until Wednesday, November 29, 2023, or until such other time and date as is convenient for the Court.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: October 24, 2023

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700
Email: jgoldsmith@gkalawfirm.com

TOWN OF WESTBOROUGH
By its attorneys,

Dated: 10/24/23

By: */s/ Roger L. Smerage, Esq.*
Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

696

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Joint Motion to Continue hearing upon those parties listed below by electronic mail or by mailing, first class mail, postage prepaid, on this 24th day of October, 2023:

Stephen F. Gordon, Esq.
The Gordon Law Firm, LLP
River Place
57 River Street
Wellesley, MA 02481

Richard King, Esq.
Office of the U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109

Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

697



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re: | Westborough SPE LLC | Chapter 7 |
|---|---|---|
| | Debtor | 23-40709-CJP |

**ORDER**

**MATTER:**
**#45 Assented To Motion filed by Trustee Jonathan R. Goldsmith to Continue Hearing [Re: 20Motion for Relief From Stay].**

THE ASSENTED TO MOTION TO CONTINUE HEARING IS GRANTED. THE OCTOBER 25, 2023 HEARING REGARDING THE TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY [DKT. NO. 20] (THE "STAY RELIEF MOTION") IS HEREBY CONTINUED TO **NOVEMBER 30, 2023 AT 10:30 A.M.** IN PERSON IN COURTROOM 1, 12TH FLOOR, JOHN W. MCCORMACK POST OFFICE AND COURT HOUSE, 5 POST OFFICE SQUARE, BOSTON, MASSACHUSETTS 02109, WITH AN OPTION TO APPEAR BY ZOOM VIDEO. THE COURT SHALL ENTER A FURTHER NOTICE OF HYBRID HEARING INFORMING PARTICIPANTS ON HOW TO ELECT TO APPEAR BY EITHER ZOOM VIDEO OR IN PERSON AT THE CONTINUED HEARING.

THE DEADLINE FOR THE TRUSTEE TO FILE A FURTHER RESPONSE TO THE STAY RELIEF MOTION IS **NOVEMBER 27, 2023 AT 11:59 P.M.**

Dated: 10/24/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

698

UNITED STATES BANKRUPTCY COURT
FOR THE  DISTRICT OF MASSACHUSETTS

In re:                                    )     Chapter 7, No. 23-40709
                                          )
                                          )
WESTBOROUGH SPE LLC                       )
                                          )
        Debtor                            )
                                          )

## ORDER AUTHORIZING TRUSTEE TO EMPLOY
## COUNSEL TO THE TRUSTEE

 

Upon the Application of JONATHAN R. GOLDSMITH, Trustee in the above-captioned case, seeking to employ GOLDSMITH, KATZ & ARGENIO, P.C. to act as Counsel to the Trustee pursuant to 11 U.S.C. §327(d), for cause shown, proper notice having been given and no objections being filed, it is hereby

ORDERED that JONATHAN R. GOLDSMITH, Trustee, is hereby authorized to employ GOLDSMITH, KATZ & ARGENIO, P.C., as Counsel to the Trustee in the above-captioned case, with all fees and expenses subject to further Order of this Court.

Dated: October 31, 2023            _____
                                   CHRISTOPHER J. PANOS
                                   United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## TRUSTEE'S SUPPLEMENTAL OBJECTION TO TOWN OF WESTBOROUGH'S MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSTION TO THE APPOINTMENT OF A BANKRUPTCY TRUSTEE

NOW comes JONATHAN R. GOLDSMITH, the duly appointed and acting Trustee ("Trustee"), and hereby submits this Supplemental Objection to the Town of Westborough's Motion for Relief from the Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee[1] (the "Motion").

As a preliminary matter, the Trustee submits that he has now received an offer ("Offer") from Ferris Development Group, LLC ("Ferris") to purchase the subject property at 231 Turnpike Road, Westborough, Massachusetts ("Property") for the sum of Two Millon Eight Hundred and Seventy-Five Thousand Dollars ($2,875,000.00), which the Trustee has accepted, subject to Bankruptcy Court approval on a Motion to Sell and the contingencies noted therein. A copy of the Offer is attached hereto as Exhibit "A".

A sale of the Property to Ferris will, upon information and belief, be sufficient to pay all outstanding taxes and costs owed to the Town of Westborough ("Town") and also provide funds to distribute a dividend (possibly payment in full) to all scheduled creditors of the bankruptcy case. The Trustee also submits that a sale pursuant to 11 U.S.C. §363 will expedite payment to the Town and the creditors of the Bankruptcy Estate.

---

[1] The Trustee does not respond to the portion of the Motion for Relief from Stay in Opposition to the Appointment of a Bankruptcy Trustee, as the Trustee deems this issue moot.

In the event that the Trustee is unable to obtain an order on a stipulation of the parties vacating the Judgment issued by the Land Court in the case of *Town of Westborough v. Westborough SPE, LLC, et al* (Mass. Land Ct. No. 19 TL 000768), then it is the intent of the Trustee to file a notice of removal of the said Land Court action to Federal Court pursuant to Federal Rule of Bankruptcy Procedure 9027, which provides, <u>inter alia</u>, that the Trustee has until 90 days after the Order for Relief was entered in the case to file said notice. The Order for Relief was filed on October 11, 2023.

In light of the foregoing, the Trustee requests that the Motion be denied. In further support of his Objection, the Trustee responds to each and every allegations set forth in the Motion. For ease in reviewing the Trustee's responses to each and every of the unnumbered allegations in the Motion, the Trustee has noted his responses to the Motion as noted on Exhibit "B" attached hereto.

WHEREFORE, the Trustee respectfully requests that:

1.  the Town of Westborough's Motion for Relief be denied; and
2.  for other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 11/27/23

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

701

*Exhibit "A"*

# MIRICK O'CONNELL

ATTORNEYS AT LAW

**Paul W. Carey**
Mirick O'Connell
100 Front Street
Worcester, MA 01608
pcarey@mirickoconnell.com
t 508.860.1590
f 508.983.6238

November 27, 2023

**VIA E-MAIL**
*jgoldsmith@gkalawfirm.com*

Jonathan R. Goldsmith Esq.
Goldsmith, Katz & Argenio, P.C.
1350 Main Street
Suite 1505
Springfield, MA 01103

      Re: <u>Offer to Purchase – 231 Turnpike Road, Westborough, Massachusetts ("Premises")</u>

Dear Jonathan:

This letter will serve as Ferris Development Group, LLC's offer to purchase the land and improvements located at 231 Turnpike Road, Westborough.

| | |
|---|---|
| Purchase Price: | $2,875,000 |
| Purchasing Entity: | Ferris Development Group, LLC, or its nominee |
| Tenants: | None; to be delivered vacant |
| Purchase and Sale: | A purchase and sale agreement ("P&S") to be prepared by Buyer between Buyer and Seller, in form and scope satisfactory to both parties, will be executed within ten (10) days following Seller's acceptance of this Offer to Purchase. The P&S will incorporate the material terms stated in this Offer to Purchase. |
| Inspection Period: | Until 6 p.m. Boston time on the seventh day following full P&S signing. Buyer in its sole discretion may withdraw from the P&S up until that time. |
| Deposit: | Simultaneous with acceptance of this Offer, a refundable deposit of Two Hundred Eighty Seven Thousand Five Hundred Dollars ($287,500) ("Deposit") will be tendered |

---

**MIRICK, O'CONNELL, DeMALLIE & LOUGEE, LLP**
WORCESTER | WESTBOROUGH | BOSTON
www.mirickoconnell.com

{Client Matter 33990/00001/A8531267.DOCX[Ver:2]}

703

**MIRICK O'CONNELL**

Jonathan R. Goldsmith Esq.
November 27, 2023
Page 2

<table>
<tr><td></td><td>by Buyer to Seller to be held in his Trustee's account. The deposit shall be fully refundable only if Buyer withdraws this Offer to Purchase prior to the end of the Inspection Period or, thereafter, upon (a) Seller's breach of the terms of this Offer to Purchase or the P&S, or (b) failure of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") to enter within 60 days from execution of this Offer to Purchase a final and unappealed order approving the sale of the Premises to Buyer on the terms set forth herein.</td></tr>
<tr><td>Financing Contingency:</td><td>None</td></tr>
<tr><td>Bankruptcy Court Approval:</td><td>Sale of the Premises is subject to approval by the Bankruptcy Court. Seller shall file a motion for approval of the sale to Buyer within seven days of the execution of the P&S upon terms acceptable to Buyer. The motion shall request a hearing on the sale motion within not more than 45 days and Seller shall obtain final Bankruptcy Court approval not later than 60 days from execution of this Offer to Purchase. The sale motion shall require any counteroffers to be on substantially the same terms as this Offer to Purchase excepting only the Purchase Price, which shall exceed the Purchase Price by not less than 5%.</td></tr>
<tr><td>Closing:</td><td>Closing will take place not later than the third (3rd) day following entry of a final, unappealed order of the Bankruptcy Court approving the sale to Buyer.</td></tr>
<tr><td>Sale Free and Clear:</td><td>The sale of the Premises shall be free and clear of all liens, claims, and encumbrances accruing prior to the Closing including, without limitation, any claims as to ownership, claims for taxes and municipal charges, claims for any common area, easement, or other charges and obligations with respect to the Premises and any sharing arrangements to which it may be subject.</td></tr>
<tr><td>Brokerage:</td><td>Both Seller and Buyer shall warrant in the P&S that there are no brokers involved in this potential transaction, and no commissions due to brokers.</td></tr>
</table>

704

**MIRICK O'CONNELL**

Jonathan R. Goldsmith Esq.
November 27, 2023
Page 3

Closing Costs:                    Both Buyer and Seller will pay their own legal and other
                                  transaction costs. Recordation, transfer fees and title costs
                                  shall be allocated to the parties pursuant to local custom
                                  (e.g. Seller pays any grantor's tax).

If the Seller is in agreement with the terms outlined in this Offer to Purchase, please sign a copy
and return it to us by 5:00 p.m. Boston time on November 27, 2023. This offer will become null
and void if not accepted by that time.

Sincerely,                                   Agreed and Accepted:

**BUYER**                                    **SELLER**

**Ferris Development Group, LLC**            **Jonathan Goldsmith, in his capacity as**
a Massachusetts limited liability company    **Chapter 7 Trustee of Westborough SPE,**
                                             **LLC** a Delaware limited liability company

By: David M. Ferris                          By: Jonathan Goldsmith, Trustee
Its: Manager, duly authorized

{Client Matter 33990/00001/A8531267.DOCX[Ver:2]}

705

*Exhibit "B"*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

TOWN OF WESTBOROUGH'S
MOTION FOR RELIEF FROM
AUTOMATIC STAY AND
OPPOSITION TO APPOINTMENT OF
A BANKRUPTCY TRUSTEE

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves the Court for an order providing relief from the automatic stay provisions of 11 U.S.C. § 362(a) to the extent those provisions stay the cases of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action") and Westborough SPE, LLC v. Town of Westborough, et al. (D. Mass. No. 4:23-cv-12017-MRG) (the "Civil Action"). As set forth below, the former is a tax title foreclosure action between the Town and the Debtor currently underway in the Massachusetts Land Court, in which judgment had already entered against the Debtor long before the commencement of this bankruptcy proceeding, but which judgment the Debtor was seeking to vacate. The latter is an action the Debtor filed—through the law firm listed as a petitioning creditor here—in U.S. District Court on the very same day that creditor (and another) commenced this involuntary Chapter 7 proceeding.

**_Response:_**    **_The Trustee's response to the foregoing paragraph is set forth in his preamble to his Objection and as noted below._**

For the reasons discussed herein, if either action (or both) is covered by the automatic stay, relief is appropriate to allow the actions to proceed so as to allow the Town to dispose of the property subject to the Tax Foreclosure Action through a long-awaited sale and to deposit the

1

surplus proceeds into the court for the Debtor (or anyone else claiming a right to them, including the Debtor's apparent former owners) to claim in light of Tyler v. Hennepin County, 598 U.S. 631 (2023). For those same reasons, the Town opposes the appointment of a bankruptcy trustee with respect to disposition of that property, including an interim trustee as requested by the Debtor's Motion to Appoint Interim Trustee (Doc. No. 10).[1]

*Response:* **The Trustee denies the allegations set forth in the foregoing paragraph, except that he admits that surplus funds are property of the bankruptcy estate under *Tyler v. Hennepin County*, 598 U.S. 631 (2023). Further answering, the Trustee notes that the Debtor timely filed a Motion Seeking to Vacate Foreclosure Judgment.**

## BACKGROUND

In 1997, the Debtor acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). The Debtor withdrew from doing business in Massachusetts in 2007 and was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware. See Exhibits A (MA Certificate of Withdrawal) and B (DE Administrative Dissolution). Notwithstanding the dissolution of the Debtor, the lessee of the Property (Regal Cinemas) continued to lease the Property and pay property taxes to the Town. See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5. However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments. See id. at ¶ 6. Subsequently, property taxes on the Property accrued, and at the Town's Annual Town Meeting in March 2018, Town Meeting voted to authorize the Town to acquire and dispose of the Property. See id. at ¶ 7; Exhibit C (2018 ATM Results) at pp. 13-14. As noted in the Town Manager's Statement for the article in

---

[1] The Town was not served with a copy of the Debtor's motion when it was filed on September 11, 2023.

2

question, the Town intended to act proactively "to ensure that the [Property] does not become a blight to the neighborhood ... because of neglect, vandalism and/or exposure to the elements" and "to put the [Property] to productive use and to contribute again to the Town's tax revenue." <u>See</u> <u>id</u>. Unfortunately, as discussed below, the Town's efforts have been hampered, in large part due to the actions of the Debtor and its counsel.

*<u>Response:</u>* *The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph.*

After the March 2018 Town Meeting vote, the Town issued a Request for Proposals to sell the Property. <u>See</u> Williams Decl. at ¶ 8.[2] The Town's Select Board voted to accept the proposal of Lax Media LLC ("Lax Media") on November 20, 2018, issued a notice of award to Lax Media on November 28, 2018, and notified the other bidders of the Town's selection on December 3, 2018. <u>See</u> <u>id</u>. at ¶ 9. On December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54 as a result of unpaid FY2018 taxes in the amount of $106,944.99. <u>See</u> Exhibit D (Instrument of Taking). Subsequently, the Town incurred certain costs of insuring, securing, and maintaining the Property. <u>See</u> Williams Decl. at ¶ 10. The Town is also responsible, to the extent provided by G.L. c. 60, § 77, for payment of a portion of common area maintenance and snow removal to The MobileStreet Trust, the owner of two abutting parcels that, with the Property, are all subject to a Declaration of Reciprocal Covenants, Easements and Restrictions (the "Reciprocal Agreement"). <u>See</u> Exhibit E (Reciprocal Agreement) at § 3.1.

*<u>Response:</u>* *The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph.*

---

[2] The RFP provided that "Proposers are advised that the Town intends to acquire title to the Premises prior to or simultaneously with the closing. The Board of Selectmen has been authorized by Town Meeting to acquire the Premises."

3

On or about April 3, 2019, the Town Manager's office received an email from an attorney representing the successor-in-interest of Babcock and Brown Administrative Services, Inc. ("Babcock & Brown"), the company that had been the Debtor's manager, requesting information concerning the Property and indicating their client may have a claim to the Property. <u>See</u> Williams Decl. at ¶ 11. The Town elected not to proceed with its acquisition of the Property at that time in light of the potential claim to the Property and identification of a party that may be able to pay the outstanding tax liabilities on the Property. <u>See</u> <u>id</u>. at ¶ 12. On April 30, 2019, the Select Board voted to authorize Town Counsel to terminate the pending purchase and sale agreement with Lax Media. <u>See</u> <u>id</u>. at ¶ 13.

*<u>Response:</u>* *The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph.*

However, neither Babcock & Brown nor its successor-in-interest paid off the outstanding taxes on the Property. <u>See</u> Williams Decl. at ¶ 14. As a result, since six months had passed after the Town's recording of the instrument of taking without the Debtor redeeming the Property, the Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the Debtor's right of redemption. <u>See</u> Exhibit F (Tax Foreclosure Complaint). On January 5, 2022, the Land Court entered judgment in favor of the Town and against the Debtor.[3] <u>See</u> Exhibit G (Tax Foreclosure Judgment).

*<u>Response:</u>* *The Trustee admits that the outstanding taxes on the Property have not been paid off, but the Trustee is without sufficient knowledge to admit or deny the remaining allegations contained in the foregoing paragraph.*

---

[3] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in <u>Tyler</u>, discussed further below.

4

On May 26, 2022, the Town issued a new request for proposals for the purchase and redevelopment of the Property. See Williams Decl. at ¶ 15. The Town received three proposals, including one from Lax Media. See id. at ¶ 16. Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000). See id. at ¶ 17.[4] The Town's Select Board evaluated the proposals based on five categories and selected Lax Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[5]

***Response:*** ***The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph. Further answering, the Trustee submits that he has received an offer for the Property that is $375,000.00 higher than the Lax Media offer.***

On December 22, 2022, the Debtor (under the purported control of two new managers) applied for registration to do business in Massachusetts. See Exhibit H (Application for Registration). On January 4, 2023—which was one day short of the first year anniversary of the

---

[4] The Debtor's Schedule A/B (Doc. No. 8) lists a purported current value of $7,942,000 for the Property, based upon the highest bid that the Town received. As a Massachusetts Superior Court judge noted in a related proceeding to which the Debtor is not a party, that bid sought "to raze the existing structure and build 108 condominium units," which was not feasible because "[t]here was a moratorium on additional water and sewer connections in Westborough due to capacity constraints that [the bidder] would have to overcome." See Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 2-3, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023); see also, infra, note 5. The Town rejected the highest bid because the water moratorium precluded the proposed development.

[5] In November 2022, one of the other bidders filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied the plaintiff's motion for preliminary injunction, finding that plaintiff failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023). As the Debtor is not a party to the Superior Court action, that action is not subject to the automatic stay.

5

711

issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69) the Debtor filed a motion with the Land Court to vacate the judgment. See Exhibit I (Motion to Vacate).[6] The Town opposed the motion to vacate[7] for various reasons, including the significant questions that the Town had regarding the ownership and identity of the Debtor, including whether the individuals purporting to own the Debtor and advancing the motion to vacate (Lolonyon Akouete and Denise Edwards) had actually acquired the Debtor, much less any interest in the Property. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit J (Land Court Docket) at May 16, 2023 entry.

_**Response:**_ _**The Trustee admits that the Debtor filed a Motion with the Land Court to vacate said judgment, but is without sufficient information to admit or deny the remaining allegations set forth in the foregoing paragraph.**_

Lax Media has been holding its bid firm and keeping its terms in place pending the outcome of the Tax Foreclosure Action. See Williams Decl. at ¶ 19. Despite the Town's efforts to secure and maintain the Property since the time that Regal Cinemas vacated it, the Property has been vandalized and has experienced burst pipes. See id. at ¶ 20. The Debtor does not dispute the condition of the property and, in fact, explicitly references the deterioration of the Property in its

---

[6] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

[7] As noted therein, the tax title account balance on the Property as of the date of the Town's opposition was $638,755.20, exclusive of expenses incurred under the Reciprocal Agreement.

6

712

motion for appointment of a trustee. <u>See</u> Doc. No. 8 at p. 1 & Ex. 1. As of May 3, 2023, the Town's tax title account for the Property reflects an amount of $918,314.60 due to the Town, exclusive of expenses under the Reciprocal Agreement. <u>See</u> <u>id</u>. at Ex. 2.

*Response:* ***The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph.***

On August 31, 2023, petitioner Nathanson & Goldberg, P.C. (which has represented the Debtor in the Tax Foreclosure Action since February 22, 2023) and The MobileStreet Trust (which is the other party subject to the Reciprocal Agreement) filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings. The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). <u>See</u> Exhibit J (Land Court Docket) at August 31, 2023 entry.

*Response:* ***The Trustee admits the allegations contained in the foregoing paragraph.***

On the same day (August 31, 2023), the Debtor—through Nathanson & Goldberg, P.C. (one of the petitioners here)—commenced the Civil Action. In the Civil Action, the Debtor seeks declaratory relief and other relief relating to the surplus proceeds of the Town's sale of the Property (which has not occurred because of the Debtor's actions in the Tax Foreclosure Action) under <u>Tyler</u>. <u>See</u> Exhibit K (Civil Action Complaint). The Debtor also filed a suggestion of bankruptcy in the Civil Action on August 31, 2023. <u>See</u> Exhibit L (Civil Action Suggestion).

*Response:* ***The Trustee admits the allegations contained in the foregoing paragraph.***

## ARGUMENT

**I.    RELIEF FROM THE STAY IS APPROPRIATE TO ALLOW THE TOWN TO BRING THE TAX FORECLOSURE ACTION TO A CONCLUSION**

## A.     <u>Relief for Cause Is Warranted</u>

There is cause under 11 U.S.C. § 362(d)(1) to relieve the Town from the automatic stay with respect to the Tax Foreclosure Action (and the Civil Action, should the Court find that the stay applies). The Bankruptcy Code does not provide a definition of what constitutes "cause," and therefore, courts have discretion to determine when relief is appropriate on a case-by-case basis.

In re Hurvitz, 554 B.R. 35, 40 (Bankr. D. Mass. 2016). Courts consider three factors to determine "whether cause exists to lift the automatic stay to permit the continuation of pending litigation," namely "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of a civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor; and (3) whether the creditor has a probability of prevailing on the merits of his case." Id. (formatting and quotations omitted).

*__Response:__     The Trustee denies that there is cause to grant the Town relief from stay but admits that the __Hurvitz__ Court considered three factors in determining whether cause exists to lift stay, none of which factors support lifting of the stay at this time.*

Here, all three factors weigh heavily in favor of lifting the automatic stay for the Town. Permitting the Tax Foreclosure Action to proceed will not prejudice the Debtor or the bankruptcy estate because the Property is not an asset of the estate and one of the creditors represents the Debtor in that action. On the other hand, the Town will suffer great hardship as a result of the stay, as it will be unable to bring the tax recovery process (which started in 2018) to a conclusion, return the Property to the tax rolls and productive use, and cease incurring significant expenses to maintain the Property. Finally, the Town has a strong probability of prevailing in the Tax Foreclosure Action, as it has already obtained judgment in its favor and the Debtor's motion to vacate that judgment rests on extremely dubious grounds, both procedurally (having been brought by an unrepresented LLC) and substantively (given the questions surrounding the Debtor's

8

ownership and the fact that the Town provided the Debtor sufficient notice in line with the applicable statutes and the Land Court's directions).

*__Response:__* *__The Trustee denies the allegations contained in the foregoing paragraph. Further answering, the Trustee submits that the consummation of the sale with Ferris Development Group, LLC will most likely provide for the timely payment of outstanding taxes and the return of the Property to the tax rolls.__*

The conduct of the Debtor and the Debtor's litigation counsel, one of the petitioners here, has caused the Town to lose municipal revenue and to incur unnecessary expense. The Town has not received real estate tax or water/sewer fees on the Property since 2017. With interest, this amounts to $695,620.24 due and owing to the Town as of May 3, 2023. See Doc. No. 8 at Ex. 2. This lack of payment establishes that the Town is not adequately protected, justifying relief from the stay. See McCullough v. Horne (In re McCullough), 495 B.R. 692, 695-696 (Bankr. W.D.N.C. 2013) (history of lack of prepetition payments to creditor combined with insufficient postpetition payments left creditor inadequately protected). Additionally, since the tax taking in 2018 and, in particular, since the Land Court entered judgment foreclosing the Debtor's right of redemption in January 2022, the Town has incurred significant costs to maintain the Property. See Doc. No. 8 at Ex. 2. For example, the Town has expended over $109,000 to insure the Property. See id. The Town has also paid almost $15,000 to board the Property and over $10,000 in utility costs, despite the fact that the building on the Property is vacant. See id. Additionally, the Town is responsible, to the extent provided by G.L. c. 60, § 77, to The MobileStreet Trust for payment of a portion of common area maintenance and snow removal under the Reciprocal Agreement. The Town

9

continues to bear these costs and will continue to do so until it sells the Property, thereby recouping the outstanding tax title balance inclusive of expenses.[8]

*Response:*    *The Trustee denies the foregoing allegations; further answering, the Trustee submits that the Town is adequately protected in that there is equity in the Property far in excess of the outstanding taxes and costs incurred by the Town in maintaining the Property.*

That sale cannot happen until the Land Court adjudicates the Debtor's motion to vacate in the Tax Foreclosure Action. Absent the delays caused by the Debtor and the Debtor's litigation counsel, the Land Court could have disposed of the Debtor's motion to vacate long ago. Assuming that the Land Court denied that motion and allowed the Town's judgment to stand, the Town could have consummated the sale of the Property. Instead, that sale has been—and continues to be—delayed as a result of the Debtor's actions. Indeed, the involuntary petition in this matter, filed on behalf of the Debtor's Land Court counsel (Nathanson & Goldberg) mere hours before the Land Court pre-hearing conference on the motion to vacate in the Tax Foreclosure Action (at which it was expected that the Court would establish the hearing schedule), was a desperate attempt to delay the Land Court conference.

*Response:*    *The Trustee denies the allegations contained in the foregoing paragraph. Further answering, the Trustee submits that the litigation can be removed to the Federal Court system.*

---

[8] The Town has also spent $6,000 to have the Property appraised, over $20,000 preparing the RFPs on the Property, and almost $60,000 in legal fees for the tax title matter. See Doc. No. 8 at Ex. 2.

1(

716

These delays have been made all the more glaring in light of the Debtor's filings in the Civil Action. Although the Debtor spent the past eight months contesting the Town's right to sell the Property in the Land Court, the Debtor now asks the U.S. District Court to hold that surplus sales proceeds from the Town's sale of the Property belong to Debtor under <u>Tyler</u>. Specifically, the Debtor alleges that it demands payment of surplus proceeds "[u]pon any sale of the Property by the Town." <u>See</u> Ex. K at ¶ 107. The Debtor continues by alleging that it "is entitled to a declaration that if the Town … sells the [Property] that [the Debtor] is entitled to the difference between the amount owed and what the property sells for." <u>Id</u>. at ¶ 109.[9]

**<u>Response:</u>** **_The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph._**

Allowing the Tax Foreclosure Action to proceed is not inconsistent with the purposes of the automatic stay. The stay is designed to allow "debtors to resolve their debts in a more orderly fashion, … and at the same time safeguard[] their creditors by preventing 'different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets.'" <u>Heaney</u> v. <u>Lamento</u> (In re Whiz Kids Dev., LLC), 576 B.R. 731, 760 (Bankr. D. Mass. 2017), quoting <u>Soares</u> v. <u>Brockton Credit Union</u> (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). The Tax Foreclosure Action has nothing to do with capturing the debtor's assets, however.

---

[9] As the Sixth Circuit recently recognized, "the Supreme Court has [never] held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property," and <u>Tyler</u> does not change that. <u>Freed</u> v. <u>Thomas</u>, --- F.4th ----, 2023 WL 5733164, at *2 (6th Cir. Sept. 6, 2023). Thus the Debtor's claims in the Civil Action relating to the alleged fair market value of the Property are misplaced, even if the Debtor (or whomever properly "owns" the Debtor) is entitled to the difference between the sale price and the tax title account balance.

1

Rather, the Tax Foreclosure Action was a statutory action by which the Town sought to foreclose the Debtor's right of redemption in the tax title to the Property (see G.L. c. 60, § 65) in order to permit the Town to recover the tax title balance (caused by the Debtor's failure to pay taxes on the Property) through a sale to a third party. As the Supreme Judicial Court has explained, "[w]hen a tax collector conducts a tax taking, ... the municipality obtains 'tax title' to the property, which is best understood as legal ownership of the property subject to the owner's right of redemption." Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451 (2020). Because the Land Court had entered judgment in favor of the Town and against the Debtor foreclosing the right of redemption prior to the filing of the bankruptcy petition, the Debtor did not own the Property at the time of the filing of the bankruptcy action (assuming that the Debtor, in its current form with questionable ownership of the LLC, had any ownership interest in the Property to begin with). See id. at 452 ("Upon entry of such judgment, the municipality ... takes absolute title to the property."). As the SJC has explained, a tax title foreclosure "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's ... tax title into absolute title ... free and clear of all encumbrances, including mortgages and other liens," such that "the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity." Id. at 452-453.[10]

***Response:*** ***The Trustee has insufficient knowledge to admit or deny the allegations contained in the foregoing paragraph. Further answering, removing the State Court litigation to***

---

[10] This is now modified by Tyler, which held that "a taxpayer is entitled to the surplus in excess of the debt owed" when real property is taken and sold pursuant to a tax title statute. See 598 U.S. at 642. Nevertheless, the Debtor's potential right to the surplus of proceeds from the sale of the Property (which the Town questions given its concerns about the present ownership of the Debtor) does not give it equity in the Property itself. Thus, the Land Court should be allowed to conclude the Tax Foreclosure Action so that the Town can sell the Property and deposit the surplus proceeds into the court (potentially in the Civil Action) for determination of who is entitled to those surplus proceeds.

12

718

*the Federal Court /Bankruptcy Court will allow the matter to be resolved in a more orderly fashion and at the same time safeguard all creditors of the Bankruptcy Estate.*

Thus, permitting the Land Court to bring that action to final resolution by adjudicating the Debtor's motion to vacate the foreclosure judgment will neither imperil the Debtor's assets nor the rights of other creditors. Allowing a creditor relief from the automatic stay to proceed with its state law remedies under such circumstances is entirely appropriate. See Bushnell v. Bank of the West (In re Bushnell), 469 B.R. 306, 309-310 (B.A.P. 8th Cir. 2012) (affirming lifting of stay to allow bank holding foreclosure deed to evict debtor that had improperly reentered property). As the Land Court has spent the past several years presiding over the disposition of the Property and, absent the stay, will soon conclude that action, there is no benefit to anyone in having the issue transferred to this Court and incurring additional legal expense as a result of the automatic stay.

**_Response:_** **_The Trustee denies the allegations contained in the foregoing paragraph._**

Indeed, this Court has provided relief from the automatic stay to allow similar proceedings to conclude post-petition, even where the Town had not yet succeeded in obtaining judgment foreclosing the debtor's right of redemption. See In re Tomaselli, No. 14-10736-JNF, 2014 WL 4322404, at *5 (Bankr. D. Mass. Aug. 29, 2014). As Judge Feeney explained in Tomaselli, the "[Bankruptcy] Court is not the appropriate forum for the Debtor to raise specialized state law issues involving betterment liens and tax liens that have been the subject of prior rulings in other courts," such as the Land Court. Id. at *7. Given that the Town here has obtained judgment foreclosing the Debtor's right of redemption, and the only thing left for the Land Court to do in the Tax Foreclosure Action is to adjudicate the Debtor's dubious motion to vacate, the reasoning of Tomaselli applies even more so here.

**_Response:_** **_The Trustee states that the foregoing paragraph calls for a legal_**

13

*conclusion and no response is required.*

Cause for relief from stay is not limited to a lack of adequate protection or a finding of bad faith motive for filing the bankruptcy case. In re Shady Grove Tech Ctr. Assocs. Ltd. P'shp, 216 B.R. 386, 388 (Bankr. D. Md. 1998) (internal quotations and citations omitted). Here, cause exists to grant the Town relief from the automatic stay to the extent it applies to the Tax Foreclosure Action and the Civil Action.

*Response:* **The Trustee denies the allegations contained in the foregoing paragraph.**

### B. Relief Is Appropriate Because the Debtor Has No Equity in the Property

The Court may also lift the automatic stay "with respect to ... an act against property ... if the debtor does not have an equity in such property; and ... such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). As discussed above, whatever equity the Debtor ever had or has in the Property was extinguished on January 5, 2022 when the Land Court entered judgment in the Tax Foreclosure Action. Although the Debtor seeks to vacate that judgment, until such time as the judgment is vacated (which cannot happen while the stay is in effect with respect to the Tax Foreclosure Action), the Debtor lacks any equity or ownership interest in the Property.

*Response:* **The Trustee denies the allegations contained in the foregoing paragraph.**

Indeed, because the Debtor's right of redemption on the Property was foreclosed and absolute title to the Property transferred to the Town prior to the commencement of this proceeding, the Property itself is not even part of the Debtor's bankruptcy estate, such that the stay should not apply to the Property at all. See U.S. Bank, N.A. v. Vertullo (In re Vertullo), 610 B.R. 399, 404 (B.A.P. 1st Cir. 2020) ("For property to be protected by the automatic stay, it must be

14

720

property of the bankruptcy estate."). Nor does the fact that the Debtor may have a pending petition pursuant to G.L. c. 60, § 69, or an interest in any surplus sale proceeds under Tyler change the fact that the Debtor lacks equity in the Property itself. Finally, the Property is not necessary for reorganizing the Debtor as this is not a Chapter 11 proceeding. Thus, the Court should also lift the stay under subsection (d)(2).

> **_Response:_** **_The Trustee denies the allegations contained in the foregoing paragraph._**

### C. Relief for Single Asset Real Estate Is Warranted

Additionally, relief from the stay should be granted to the Town pursuant to 11 U.S.C. § 362(d)(3) because the Town's claim concerns a single asset real estate. Under the Bankruptcy Code, the term "single asset real estate" means "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B). The Property meets this definition, as it appears that the Property (which is commercial real estate) was the sole income-generating asset of the Debtor prior to its administrative dissolution.[11]

> **_Response:_** **_The Trustee denies the allegations contained in the foregoing paragraph._**

Under subsection (d)(3), the Court may provide relief "with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an

---

[11] In its schedules, the Debtor lists the Property as its sole asset exclusive of an unspecified unclaimed checking account in California. See Doc. No. 8 at p. 7-8. Although the Debtor states that it is the "Owner" of the Property in its schedules, as discussed above, absolute title to the Property transferred to the Town upon the Land Court's entry of judgment in the Tax Foreclosure Action.

15

721

interest in such real estate, unless" the Debtor "has commenced monthly payments that … are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate" within 90 days of the order of relief.  11 U.S.C. § 362(d)(3).[12] Relief from the automatic stay for single asset real estate may be granted in Chapter 7 cases, such as this one, where the debtor has not made interest payments to a secured creditor within 90 days.[13] See Suntrust Bank v. Global One, L.L.C. (In re Global One, L.L.C.), 411 B.R. 524, 528-529 (Bankr. S.D. Ga. 2009).  As discussed above, it is undisputed that the Debtor has not paid the Town interest on the tax lien (much less the principal) for several years and has not established any ability (or legal right) to make such payments going forward should the Court enter an order of relief pursuant to 11 U.S.C. § 303(h). Thus, relief from the stay is appropriate under subsection (d)(3), as well.

*Response:*        *The Trustee denies the allegations contained in the foregoing paragraph.*

## II.    THE STAY DOES NOT APPLY TO THE DEBTOR'S CIVIL ACTION

The automatic stay provisions of 11 U.S.C. § 362 typically apply to "judicial, administrative, or other action[s] or proceeding[s] against the debtor." 11 U.S.C. § 362(a)(1) (emphasis added); see, e.g., id. § 362(a)(2) (staying "the enforcement, against the debtor or against property of the estate, of a judgment"); id. §§ 362(a)(4)-(5) (staying acts "to create, perfect, or enforce" liens against property of the estate or the debtor). The automatic stay thus "does not freeze litigation where the debtor is the plaintiff." Worth v. Tamarack Am., Div. of Great Am.

---

[12] Interest accrues on a municipal tax title account at a rate of 14% per annum from delinquency to taking and a rate of 16% per annum after taking. G.L. c. 59, § 57; G.L. c. 60, § 62.

[13] Although the statute allows a debtor to avoid such relief from the stay by alternatively filing "a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time" within the 90-day period, such alternative does not apply in a Chapter 7 proceeding. See 11 U.S.C. § 362(d)(3)(A).

16

722

Ins. Co., 47 F. Supp. 2d 1087, 1099 n.9 (S.D. Ind. 1999); see 4Kids Entertainment, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) ("automatic stay does not extend to claims brought by the debtors against other parties"); cf. Roberts v. C.I.R., 175 F.3d 889, 894-896 (11th Cir. 1999). As the First Circuit has explained, the filing of a bankruptcy petition "has absolutely no effect on the debtors' ability to bring suit against other parties." DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir. 2006); see Pinpoint IT Servs., LLC v. Atlas IT Export, LLC (In re Atlas IT Export, LLC), 491 B.R. 192, 195 (B.A.P. 1st Cir. 2013) (noting that "claims asserted by the debtor may continue" no matter how closely related to stayed claims against the debtor).

The automatic stay thus does not apply to the Civil Action. The Debtor brought the Civil Action against the Town. Regardless of how related the Debtor's claims may be to the issues being litigated in the Tax Foreclosure Action (as discussed above), the commencement of this involuntary bankruptcy proceeding does not stay the Civil Action.

***Response:*** ***The Trustee admits the allegations in the foregoing paragraph, but since the Federal District Court case is interwoven with the Land Court case, the stay should continue at this time.***

## III. APPOINTMENT OF A BANKRUPTCY TRUSTEE IS UNNECESSARY TO THE DISPOSITION OF THE PROPERTY

Appointment of a bankruptcy trustee is not automatic in an involuntary Chapter 7 proceeding such as this one. Specifically, 11 U.S.C. § 303 provides that:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

17

11 U.S.C. § 303(g) (emphasis added). The relief that the Debtor requests pursuant to this provision—appointment of an interim trustee—is extremely rare. In re Diamondhead Casino Corp., 540 B.R. 499, 505 (Bankr. D. Del. 2015) ("a request for an interim trustee should be denied in the absence of an exceptionally strong need for doing so or where no facts are alleged showing a necessity for the appointment.") (quotations and citations omitted). The Debtor has not demonstrated why such appointment is necessary in this case.

Indeed, appointment of a trustee is not necessary to preserve the Property, for the reasons discussed above. A bankruptcy "trustee can only exercise the same right to redeem that the bankrupt had." Town of Agawam v. Connors, 159 F.2d 360, 364 (1st Cir. 1947). Here, the Debtor no longer had any right to redeem the Property and was, at most, left with the statutory right to request vacatur of the Land Court's judgment within one year.[14] Because the Debtor no longer possesses a right to redeem the Property, the same would be true of any trustee appointed in this proceeding. At most, the trustee (like the Debtor) would have the right to have the Debtor's motion to vacate adjudicated in the Land Court. Given that the Debtor was prepared to do just that before its counsel in the Land Court commenced this proceeding, the Court should simply allow the Land Court to proceed without appointing a trustee.

***Response:*** *The Trustee denies the allegations contained in the foregoing paragraph; further answering the issue regarding the appointment of a Trustee is now moot.*

---

[14] As noted above, the Debtor's motion was filed on the last day of the one year in question but was not signed by an attorney, calling its validity into question.

18

## CONCLUSION

For the foregoing reasons, the Court should grant the Town relief from the automatic stay and order that the stay does not bar the Tax Foreclosure Action or the Civil Action from proceeding. Additionally, the Court should decline to appoint a trustee in this proceeding with respect to the Property.

**_Response:_**     ***The Trustee denies the allegations contained in the foregoing paragraph.***

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: October 3, 2023

882073/WEST/0042

19

725

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                                    )
                                          )        Chapter 7, No. 23-40709
                                          )
WESTBOROUGH SPE LLC                       )
                                          )
            Debtor                        )
                                          )
_____)

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Supplemental Objection upon those parties listed below by electronic mail or by mailing, first class mail, postage prepaid, on this 27th day of November, 2023:

Stephen F. Gordon, Esq.
The Gordon Law Firm, LLP
River Place
57 River Street
Wellesley, MA 02481

Richard King, Esq.
Office of the U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109

Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

726



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**Westborough SPE LLC**
**Debtor**

**Chapter 7**
**23-40709-CJP**

## PROCEEDING MEMORANDUM AND ORDER

**MATTER:**
Hybrid Hearing on #20 Motion of the Town of Westborough for Relief from the Automatic Stay (231 Turnpike Road, Westborough, MA).

**Decision set forth more fully as follows:**

THE HEARING IS CONTINUED TO 12/21/2023 AT 1:30 P.M.IN COURTROOM 1, 12TH FLOOR, JOHN W. MCCORMACK POST OFFICE AND COURT HOUSE, 5 POST OFFICE SQUARE, BOSTON, MASSACHUSETTS 02109, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN THE ZOOM VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTICIPANTS SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV, NO LATER THAN 12/20/2023 AT 1:30 P.M., PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

Dated: 12/01/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

JOINT MOTION TO CONTINUE HEARING

NOW COME Movant Town of Westborough ("Town") and the Chapter 7 Trustee (the "Trustee," and together, the "Parties") and hereby respectfully and jointly request that the Court further continue the hearing on the Town's Motion for Relief from Automatic Stay and Opposition to Appointment of a Bankruptcy Trustee (Doc. No. 20, the "Motion for Relief"), currently scheduled for Thursday, December 21, 2023, at 12:30 p.m., for at least forty-five (45) days, until a date convenient for the Court no sooner than Monday, February 5, 2024.

In support of this Motion, the Parties state as follows:

1. The Town filed the Motion for Relief on October 3, 2023, seeking an order of the Court allowing the Town's tax title foreclosure action pending in Massachusetts Land Court, Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action"), concerning the property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property") to proceed, namely to allow the Land Court to adjudicate the motion to vacate judgment that the Debtor in this proceeding had purported to file in the Land Court in January 2023, which adjudication was halted by the filing of an involuntary Chapter 7 petition by the Debtor's own counsel in the Tax Foreclosure Action (along with another party).

2. After the Trustee was appointed and the original hearing date on the Motion for Relief was continued until November 30, 2023, the Trustee filed an objection to the Motion for

1

Relief in which the Trustee raised the prospect of a bankruptcy sale of the Property (even though the Town currently holds title to the Property) and the possibility of removing the Tax Foreclosure Action to the Bankruptcy Court. No other party has objected to the Motion for Relief.

3. Additionally, around the time of the November 30, 2023 hearing, the Trustee advanced an informal oral proposal to settle certain issues and outstanding litigation concerning the Property in the context of this bankruptcy proceeding.

4. During the November 30, 2023 hearing, the Court continued the hearing for three weeks until December 21, 2023 in order to allow the Trustee to further explore the possibility of settlement and the question of removal of the Tax Foreclosure Action (despite the Town's objections to such removal), as well as to consider whether to commence an adversary proceeding under 11 U.S.C. § 548(a) to seek to avoid the tax title foreclosure judgment that entered in the Tax Foreclosure Action on January 5, 2022.

5. On December 5, 2023, the Trustee sent the Town's undersigned counsel a written settlement proposal. The Town's undersigned counsel has provided the proposal to the Town Manager, who in turn provided it to the Town's Select Board, the entity which controls the Town's legal strategy and ultimately must approve any settlement. Although the Town's undersigned counsel has met with the Select Board once in executive session pursuant to G.L. c. 30A, § 21(a)(3), to discuss the settlement proposal, the Select Board requires additional time to consider the proposal and how/whether it would like to proceed. In light of the limitations under the Open Meeting Law (G.L. c. 30A, §§ 18-25), the Select Board may only deliberate on this issue at duly-posted meetings, even when convening in executive session, such that the process requires more time than it would for a private party.

6.      In light of the need for such additional time to further explore the possibility of settlement, as well as the scheduling concerns presented by the upcoming winter holidays (Christmas Eve and Day–December 24-25, 2023; and New Year's Eve and Day–December 31, 2023 and January 1, 2024), the Parties respectfully request a further continuance of the hearing on the Motion for Relief for a period of at least forty-five (45) days from the current scheduled date of December 21, 2023.

7.      Additionally, the Parties stipulate that the time for the Trustee to remove the Tax Foreclosure Action shall be similarly extended, such that the allowance of this Motion does not prejudice the Trustee's rights of removal (whatever they may be); provided however that neither by this stipulation or otherwise does the Town consent to removal of the Tax Foreclosure Action or waive any objections to removal that are not based on timing.

WHEREFORE, the Town and the Trustee respectfully request that the Court allow this Motion and further continue the hearing presently scheduled for Thursday, December 21, 2023 at 12:30 p.m. until Monday, February 5, 2024, or until such other time and date thereafter as is convenient for the Court.

3

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

/s/ *Roger L. Smerage*

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

JONATHAN R. GOLDSMITH, TRUSTEE
IN BANKRUPTCY FOR WESTBOROUGH
SPE LLC

/s/ *Jonathan R. Goldsmith (with permission)*

Jonathan R. Goldsmith (BBO# 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700
Email:  jgoldsmith@gkalawfirm.com

Dated: December 15, 2023

894808/WBOR/0049

4

731

<u>CERTIFICATE OF SERVICE</u>

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Joint Motion to Continue Hearing to be served through the Court's CM/ECF system to the

following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*
(by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Dated: December 15, 2023

_____
Roger L. Smerage

5

732

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

<u>OPPOSITION TO JOINT MOTION FOR CONTINUANCE OF HEARING ON
MOTION FOR RELIEF FROM AUTOMATIC STAY AND OPPOSITION TO
APPOINTMENT OF A BANKRUPTCY TRUSTEE</u>

NOW COMES Lolonyon Akouete, a creditor in the above-captioned case, and hereby respectfully opposes the Joint Motion for Continuance of Hearing filed by the Town of Westborough ("Town") and the Chapter 7 Trustee (the "Trustee"), and in support thereof, respectfully states as follows:

1. The undersigned creditor has been a continuous participant in the ongoing bankruptcy proceedings of Westborough SPE, LLC. The current motion for a further continuance of the hearing on the Town's Motion for Relief from Automatic Stay, scheduled for December 21, 2023, represents yet another delay in a case that has already been prolonged for over a year.

2. Under Section 704(a)(1) of the Bankruptcy Code, a trustee is mandated to close an estate as expeditiously as is compatible with the best interests of the estate. The continual delays in this case not only diminish the return to creditors but also undermine the creditors' and public's confidence in the bankruptcy system. These delays increase the costs of administration, expose the trustee to potential liability, and in cases involving tax liabilities, can lead to increased penalties and interest against the debtor.

3. The ongoing extensions requested by the Town and the Trustee contradict the very essence of Section 704(a)(1). While the need for careful deliberation is understood, it is imperative to balance this with the statutory obligation to expedite case closure.

4. The Town's Motion for Relief, originally filed on October 3, 2023, sought to expedite the resolution of the tax title foreclosure action concerning the property at 231 Turnpike Road. This objective aligns with the interests of all parties, including the debtor and creditors. However, the repeated requests for extensions, including the current joint request for a 45-day continuance, contradict this goal. The request risk further depreciation of the property's value, adding financial strain on the bankruptcy estate and diminishing potential recoveries for creditors.

5. The need for additional time for the Select Board to consider a settlement proposal, while valid, must be weighed against the broader context of the case and the negative implications of ongoing delays. The bankruptcy process is subject to public scrutiny and criticism, and unnecessary prolongations, such as the one currently sought, only exacerbate this issue.

6. In consideration of these factors, the undersigned creditor respectfully requests that the Court deny the Parties' Motion for Continuance and proceed with the scheduled hearing on December 21,

2023. An expedited resolution is crucial for the bankruptcy estate, the creditors, and for maintaining public confidence in the bankruptcy process.

**WHEREFORE**, the undersigned creditor respectfully requests that the Court deny the Joint Motion for Continuance and proceed with the hearing as scheduled.

DATED: December 17, 2023                    Respectfully submitted:


By creditor,


Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276


## CERTIFICATE OF SERVICE

I, Lolonyon Akouete, manager acreditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608


Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110



Lolonyon Y Akouete



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

    Westborough SPE LLC

              Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#57 Joint Motion filed by Trustee Jonathan R. Goldsmith, Creditor Town of Westborough to Continue Hearing [Re: 20 Motion for Relief From Stay].

UPON CONSIDERATION OF THE JOINT MOTION TO CONTINUE HEARING [DKT. NO. 57] (THE "MOTION"), THE OPPOSITION THERETO OF LOLONYON AKOUETE [DKT. NO. 59], AND THE RECORD OF THIS CASE, THE MOTION IS GRANTED AS FOLLOWS.

THE DECEMBER 21, 2023 HEARING ON THE MOTION FOR RELIEF [DKT. NO. 20] IS CONTINUED TO **FEBRUARY 13, 2024 AT 10:30 AM** IN COURTROOM 3, DONOHUE FEDERAL BUILDING AND COURTHOUSE, 595 MAIN STREET, WORCESTER, MASSACHUSETTS, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN **FEBRUARY 12, 2024 AT 4:00 P.M.**, PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

THE DEADLINE FOR THE TRUSTEE TO REMOVE THE TAX FORECLOSURE ACTION, SUBJECT TO THE STIPULATION OUTLINED IN THE MOTION, IS EXTENDED THROUGH AND INCLUDING TO **FEBRUARY 27, 2024**.

Dated: 12/19/2023

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | |
| Debtor. | |

## MOTION FOR COURT ASSISTANCE IN RECOVERING UNCLAIMED FUNDS FOR THE BENEFIT OF THE BANKRUPTCY ESTATE

NOW COMES Lolonyon Akouete, a creditor in the above-captioned case, and hereby respectfully moves the Court for assistance in recovering unclaimed funds for the benefit of the bankruptcy estate, and in support thereof, states as follows:

1. **Background:**

   a. WESTBOROUGH SPE LLC is under involuntary Chapter 7 bankruptcy with Jonathan Goldsmith duly appointed as the Chapter 7 Trustee.

   b. The debtor has critical financial obligations that urgently require the recovery of assets currently held by the State.

2. **Unclaimed Funds:**

   a. The bankruptcy estate includes a checking account valued at $1,293,646.83, under Property ID# 1019294209, as reported by MUFG Union Bank NA.

   b. Despite repeated communications, including claim ID 4974344 and prior claim ID 21014485, the funds remain unreleased by the State Controller's Office.

3. **Trustee's Efforts and Creditor's Communications:**

   a. The Trustee and creditors have made concerted efforts, as evidenced by multiple communications, to expedite the release of these funds, emphasizing the urgent need due to critical financial obligations.

   b. Immediate financial commitments, such as the annual report filing fee with the Massachusetts Secretary of State and Delaware registration agent fees, highlight the time-sensitive nature of these funds.

4. **Legal Basis for Motion:**

   a. Pursuant to 11 U.S.C. § 541, the unclaimed funds form part of the bankruptcy estate, and the trustee is tasked with administering such estate assets.

b. The trustee's fiduciary duty to maximize the value of the bankruptcy estate for the benefit of creditors, as per various provisions of the Bankruptcy Code, supports this motion.

c. Under 11 U.S.C. § 542, the trustee has the authority to compel the turnover of estate property held by third parties.

d. The Bankruptcy Code, particularly under sections 544, 547, and 548, grants the trustee avoidance powers to recover assets for the benefit of the estate.

e. The bankruptcy court's broad authority to enforce the provisions of the Bankruptcy Code supports the issuance of orders compelling the turnover of funds to the trustee.

5. **Request for Court Assistance:**

a. The undersigned creditor, reflecting the concerns outlined in communications to the State Controller's Office, requests the Court's support in securing the release of these funds.

b. The expeditious processing and approval of the claims are crucial to mitigate financial burdens and facilitate the orderly liquidation process under Chapter 7.

6. **Relief Sought:**

a. The undersigned creditor requests that the Court issue an order to expedite the review and release of the unclaimed funds.

b. This relief is critical to meeting the immediate financial obligations of the bankruptcy estate and ensuring equitable distribution to creditors.

Wherefore, Lolonyon Akouete respectfully requests that the Court grant this Motion for Court Assistance in Recovering Unclaimed Funds for the Benefit of the Bankruptcy Estate.

DATED: January 4, 2024,      Respectfully submitted:

By creditor,

Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

737

## CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

_____
Lolonyon Y Akouete



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#62 Motion filed by Creditor Lolonyon Akouete For Court Assistance In Recovering Unclaimed Funds For the Benefit of the Bankruptcy Estate.

DENIED. AS RECOGNIZED IN THE MOTION, THE CHAPTER 7 TRUSTEE IS TASKED WITH ADMINISTERING SUCH ESTATE ASSETS. THE TRUSTEE MAY FILE A REQUEST FOR TURNOVER OR OTHER RELIEF AS MAY BE APPROPRIATE.

WITHIN THIRTY (30) DAYS OF THE DATE OF THIS ORDER, THE TRUSTEE SHALL FILE A STATUS REPORT WITH RESPECT TO THE ACCOUNT.

Dated: 01/05/2024

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

In re:                                    )
                                          )    Chapter 7
                                          )    Case No. 23-40709-CJP
WESTBOROUGH SPE LLC,                      )
                                          )
                    Debtor.               )
                                          )

## MOTION TO COMPEL RELEASE OF INFORMATION FOR COMPLIANCE WITH THE FINANCIAL CRIMES ENFORCEMENT NETWORK (FinCEN) REQUIREMENTS

NOW COMES Lolonyon Akouete, a creditor of Westborough SPE LLC, in the bankruptcy case currently pending before this Court. An Order for Relief was entered on October 11, 2023, with Jonathan Goldsmith duly appointed as the Chapter 7 Trustee. This motion respectfully requests the Court to compel David M. Abramowitz, the former legal counsel for Westborough SPE LLC from Goulston & Storrs PC, to release necessary information for compliance with the Beneficial Ownership Information (BOI) report as required by the Financial Crimes Enforcement Network (FinCEN). In support of this motion, the movant states as follows:

1. **Introduction**: I, Lolonyon Akouete, am a creditor in the bankruptcy case of Westborough SPE LLC. Following the entry of an order of relief and the appointment of a trustee, I am filing this motion in my capacity as a creditor.

2. **Trustee's Lack of Response**: While I understand that addressing these matters typically falls within the duties of the bankruptcy trustee, Jonathan Goldsmith, the appointed Chapter 7 Trustee, has not responded to any communications regarding this matter. This lack of response necessitates my direct involvement as a creditor to protect the interests of the bankruptcy estate.

3. **Bankruptcy Court's Equitable Powers**: Pursuant to 11 U.S.C. § 105, the Bankruptcy Court has broad equitable powers to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code. This motion seeks such an order to compel the disclosure of information crucially for preventing potential financial liabilities to the bankruptcy estate.

4. **Examination under Federal Rules of Bankruptcy Procedure**: Under Fed. R. Bankr. P. 2004, the Court has the authority to order the examination of entities concerning the debtor's financial affairs. The information sought in this motion falls within the scope of such an examination, as it is relevant to the administration of the bankruptcy estate.

5. **Background and Legal Representation**: Westborough SPE LLC was formed under Delaware law and registered in Massachusetts. David M. Abramowitz of Goulston & Storrs PC was the former legal counsel. Gary M. Ronan, also from Goulston & Storrs PC, informed us that the firm cannot share confidential information about its former clients.

740

6. **Legal Basis for the Motion**: Based on relevant case law, including Gretsky v. Miller, 160 F. Supp. 914 (1958), the identity of a client is generally not protected by the attorney–client privilege under Massachusetts, Delaware, and Federal Common Law.

7. **Concerns Regarding Bankruptcy Estate**: Failure to obtain this information for compliance with FinCEN requirements could result in civil fines of up to $500 per day and potential criminal repercussions, significantly depleting the bankruptcy estate and adversely affecting the interests of all creditors.

8. **Request for Relief**: This motion respectfully requests the court to order David M. Abramowitz to provide any available information regarding the identity of the original client who engaged his services for the formation of Westborough SPE LLC, as it is critical for preventing financial liabilities to the bankruptcy estate.

9. **Conclusion**: The release of this information is essential for preserving the integrity of Westborough SPE LLC's bankruptcy estate and ensuring compliance with regulatory requirements, thereby protecting the interests of all creditors.

WHEREFORE, Lolonyon Akouete, as a creditor in the bankruptcy case of Westborough SPE LLC, respectfully requests that this Court enter an order compelling David M. Abramowitz to release the necessary information for compliance with the Financial Crimes Enforcement Network (FinCEN) Beneficial Ownership Information (BOI) report requirements, consistent with the legal precedents, the Bankruptcy Court's equitable powers, and the Federal Rules of Bankruptcy Procedure.

DATED: January 5, 2024,      Respectfully submitted:


By creditor,


Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

<u>CERTIFICATE OF SERVICE</u>

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110



_____
Lolonyon Y Akouete



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#65 Motion filed by Creditor Lolonyon Akouete to Compel Release of Information For Compliance with the Financial Crimes Enforcement Network (FinCEN) Requirements.

DENIED. AS RECOGNIZED IN THE MOTION, THE CHAPTER 7 TRUSTEE IS THE PARTY AUTHORIZED TO ADDRESS COMPLIANCE REQUIREMENTS WITH RESPECT TO THE DEBTOR.

WITHIN THIRTY (30) DAYS OF THE DATE OF THIS ORDER, THE TRUSTEE SHALL FILE A STATUS REPORT WITH REPECT TO ANY FINANCIAL CRIMES ENFORCEMENT NETWORK COMPLIANCE REQUIREMENTS.

Dated: 01/12/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## MOTION TO REQUIRE THE TRUSTEE TO FURNISH INFORMATION UNDER 11 U.S.C. § 704(a)(7)

I, Lolonyon Akouete, a creditor in the above-referenced involuntary Chapter 7 bankruptcy proceeding, hereby submit this motion to request that the court order the trustee, Mr. Jonathan Goldsmith, to furnish the full text of the written settlement proposal sent to the Town of Westborough's counsel on December 5, 2023, pursuant to Section 11 U.S.C. § 704(a)(7).

**Background:**

1. I am a creditor in the Chapter 7 bankruptcy case involving Westborough SPE, LLC. My claim arises from providing asset recovery and management services to the debtor.
2. The trustee, Mr. Jonathan Goldsmith, has negotiated a settlement proposal with another creditor, the Town of Westborough, in this case.
3. On December 7, 2023, I requested this settlement proposal from the trustee via email, but the trustee did not respond.
4. Subsequently, in an email dated January 10, 2024, the trustee explicitly refused to send me the settlement proposal.
5. I have also submitted a public records request to the Town of Westborough on December 26, 2023. The Town responded on January 10, 2024, but did not provide the requested information, citing attorney-client privilege and other exemptions. *See* Exhibit A

**Argument:**

Pursuant to 11 U.S.C. § 704(a)(7), the trustee is mandated, unless otherwise ordered by the court, to furnish information concerning the estate and the estate's administration as requested by a party in interest, which includes creditors. The trustee's refusal to share the settlement proposal with other creditors raises concerns about impartiality and equal treatment of creditors. The trustee has a fiduciary duty to manage the bankruptcy estate in the best interests of all creditors.

**Relief Sought:**

Therefore, I respectfully request that the court order the trustee, Mr. Jonathan Goldsmith, to provide me with the full text of the written settlement proposal sent to the Town of Westborough's counsel on December 5, 2023. This information is vital for me to protect my interests as a creditor in this bankruptcy case.

**Conclusion:**

I respectfully request that the court grant this motion and order the trustee to furnish the requested information, which is essential for ensuring transparency and fairness in the administration of the bankruptcy estate.

DATED: January 15, 2024,    Respectfully submitted:


By creditor,




Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276


# Exhibit A
# Town of Westborough's Response to the December 26, 2023 Public Records Request



# TOWN OF WESTBOROUGH
# MASSACHUSETTS

**TOWN MANAGER**
Kristi Williams

**TOWN HALL - 34 WEST MAIN STREET**
**WESTBOROUGH, MA 01581-1998**
**TEL: (508) 366-3030 FAX: (508) 366-3099**

January 10, 2024

BY ELECTRONIC MAIL ONLY

Mr. Lolonyon Akouete
Manager of Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

Re:     Public Records Request - Town of Westborough

Dear Mr. Akouete:

The Town of Westborough ("Town") is in receipt of your public records request sent by e-mail on December 26, 2023 and received on December 26, 2023.  Please find the Town's response to the request in accordance with the provisions of the Public Records Law within ten business days following receipt of the request by the Town.[1]

Request:

In your public records request, you state as follows:

I am seeking documents related to a settlement proposal made by Chapter 7 Trustee, Mr. Jonathan Goldsmith, in connection with the ongoing legal disputes concerning the property located at 231 Turnpike Rd, Westborough, MA 01581. Specifically, my request includes:

1. **The Written Settlement Proposal**: The full text of the written settlement proposal sent by Mr. Jonathan Goldsmith to the Town's counsel on December 5, 2023.  This proposal was then provided to the Town Manager and the Town's Select Board.
2. **Corresponding Communications and Responses**: Any and all responses, communications, minutes, or decisions made by the Town, the Town's counsel, the Town

---

[1] Pursuant to 950 CMR 32.03(3), the following regulatory provision applies to time requirements under the Public Records Law: "Computation of Time. Unless otherwise provided, the computation of time referred to in 950 CMR 32.00 shall begin with the first business day following the date of receipt of any request, regardless of form."

Manager, and the Town's Select Board regarding this settlement proposal related to 231 Turnpike Rd, Westborough.

As an initial matter, and without waiving any of the Town's rights under the Public Records Law, as you know, the requested records all pertain to litigation pending in state and federal courts in which Westborough SPE, LLC is a party. Further, please be advised that the Town's duty to respond to records requests extends only to records that are in existence and in its custody, and the Town is under no obligation to create records in response to your request. See, e.g., G. L. c. 4, § 7(26) (defining "public records" as materials which have already been "made or received" by a public entity); 32 Op. Att'y Gen. 157, 165 (May 18, 1977) (records custodian is not obliged to create a record in response to a request for information); Secretary of the Commonwealth, "A Guide to the Massachusetts Public Records Law," at 41 (December 2022) (same). As permitted by law, certain information may be withheld or redacted under exemptions to the Public Records Law, other applicable provisions of law, and/or common law privileges, such as the attorney-client privilege. See, e.g., G.L. c. 4, § 7(26); Suffolk Construction Co. v. Div. of Capital Asset Mgmt., 449 Mass. 444, 449-450 (2007); 950 CMR 32.06(3).

After initial diligent review of your request and its records, the Town has certain records responsive to your request for the time period specified. The Town is providing the below hyperlinks to the meeting agendas for the Select Board meetings that took place on December 6, 2023 and December 18, 2023:

See https://ma-westborough.civicplus.com/AgendaCenter/ViewFile/Agenda/_12062023-901; https://ma-westborough.civicplus.com/AgendaCenter/ViewFile/Agenda/_12182023-923.

After an individualized review of the remaining Town records responsive to your public records request, such records will be withheld since they are protected by the attorney-client privilege, the deliberative process privilege pursuant to Exemption (d) of the Public Records Law, and the Open Meeting Law, as the materials are confidential executive session materials pursuant to G.L. c. 30A, § 21, as that statute operates through Exemption (a). A detailed description of such exemptions is detailed herein.

## Attorney-Client Privilege

Certain records responsive to your request include privileged attorney-client communications between the Town and its attorneys on pending legal matters. In the case of Suffolk Construction v. DCAM, 449 Mass. 444, 449–50 (2007), the Supreme Judicial Court recognized and acknowledged the application of the attorney-client privilege to governmental entities. Where the Town has not waived the attorney-client privilege with respect to such records, they will not be released. Therefore, certain records responsive to your request have been withheld pursuant to the attorney-client privilege, as permitted by law. See Suffolk Construction Co. v. Div. of Capital Asset Mgmt., 449 Mass. 444, 449–50 (2007). Please see the log herein detailing the records withheld pursuant to the attorney-client privilege.

## Exemption (a)

Exemption (a), G.L. c. 4, §7(26)(a) covers those records which are "specifically or by necessary implication exempted from disclosure by statute," which may be withheld from disclosure. This section has been interpreted to mean that requested materials may be withheld or information redacted where the language of the statute of exemption relied upon expressly states or necessarily implies that the public's right to inspect records under the Public Records Law is restricted. Certain provisions of the Open Meeting Law apply under Exemption (a), by derivation, namely: G.L. c. 30A, §21(a), which permits executive session meetings for several specifically-enumerated reasons; and G.L. c. 30A, §22(f), which allows the public body to withhold executive session meeting materials in their entirety, where public disclosure would defeat the purpose of the executive session. Records you have requested, including records responsive to Item 1 of your request, are confidential executive session materials pertaining to ongoing litigation, and, as such, will be withheld at this time.

### Exemption (d)

This exemption is intended to avoid release of materials which could taint the deliberative process if prematurely disclosed. The exemption applies to recommendations on legal and policy matters found within an ongoing deliberative process. Babets v. Secretary of the Executive Office of Human Services, 403 Mass. 230, 237 n.8 (1988). In considering Exemption (d), the Supreme Judicial Court in General Electric Company v. Department of Environmental Protection, 429 Mass. 798, 807 (1999) stated, "[t]he purpose of Exemption (d) is to foster independent discussions between those responsible for a governmental decision in order to secure the quality of the decision." The courts and the Supervisor have additionally construed Exemption (d) as applying to records concerning ongoing litigation involving a public body. See, e.g., Lafferty v. Martha' s Vineyard Commission, Superior Court, C.A. No. 03-3397, 2004 WL 792712, Memorandum of Decision and Order on Plaintiff' s Motion for Summary Judgment (Brassard, J., April 9, 2004) (citations omitted). " The preparation of and involvement in litigation by [a public body] inherently entails the development of ' policy positions' by that [public body].… Further, the [public body] prosecutes a strategy for the litigation, and its 'policy positions' are frequently subject to change and refinement throughout the litigation." Id., 2004 WL 792712 at *3. Therefore, records requested which involve the Town's review of pending litigation matters related to 231 Turnpike Road will be withheld in their entirety at this time as such records relate directly to such ongoing court actions.

| Date | Record | Subject | Basis for Withholding |
|---|---|---|---|
| December 5, 8, 15, 17, 18, 2023 | E-mail messages between Town attorneys (Roger Smerage, Esq., Jeffrey Blake, Esq., Thomas McEnaney, Esq., Brian Riley, Esq. Shirin Everett, Esq., Courtney Mayo, Esq., and Iris Leahy, Esq.) and Town Manager Kristi Williams about litigation matters; E-mail from | 231 Turnpike Rd, Westborough Litigation | Attorney-Client Privilege/Exemption (d)/Exemption (a)- Executive Session Materials |

| | Select Board member Patrick Welch to Town Manager re: executive session/legal matters | | |
|---|---|---|---|
| December 23, 2023 | E-mail messages between Town Counsel and Town Manager about litigation matters | 231 Turnpike Rd, Westborough Litigation | Attorney-Client Privilege |
| December 5, 2023 | E-mail message between Town Manager and Select Board | 231 Turnpike Rd, Westborough Litigation | Exemption (d)/Attorney-Client Privilege/Exemption (a)- Executive Session Materials |
| December 12, 2023 | E-mail message between Town Manager and Select Board | 231 Turnpike Rd, Westborough Litigation | Exemption (d) /Exemption (a)- Executive Session Materials |

You may appeal this response to the Supervisor of Public Records pursuant to 950 CMR 32.08(1)(d). By law, the Supervisor is required to respond within ten (10) business days of receipt of your appeal. You may also seek judicial review of an unfavorable response by commencing a civil action in the superior court, under G.L. c. 66, § 10A(c).

Thank you.

Sincerely,

Kimberly Foster
Assistant Town Manager

749

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C. 101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110

_____
Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

| | |
|---|---|
| In re:<br><br>WESTBOROUGH SPE LLC | TOWN OF WESTBOROUGH'S MOTION <u>TO DISMISS BANKRUPTCY CASE</u> |

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves pursuant to 11 U.S.C. § 707(a) for the Court to dismiss this bankruptcy case for cause.[1]  Cause for dismissal exists because this case was filed against an invalidly-revived iteration of Westborough SPE LLC (to be referred to herein as the "Debtor," to distinguish it from the original iteration, which will be referred to as the "LLC") by the Debtor's own counsel in the Massachusetts tax title foreclosure action that the Town was pursuing against the LLC, <u>Town of Westborough</u> v. <u>Westborough SPE, LLC, et al</u>. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action").  The involuntary Chapter 7 was filed against the Debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action, in which the Town had raised the same issues of deception surrounding the Debtor that warrant dismissal of this bankruptcy case.  This frustration of the judicial process, when combined with the fact that the Debtor was not properly revived and the individuals behind that revival are attempting to frustrate the Town's disposition of real property that the Town

---

[1] As the filing of a § 707 motion commences a contested matter under Fed. R. Bankr. P. 9014, <u>see</u> Fed. R. Bankr. P. 1017(f)(1), and such contested matters are subject to many of the rules concerning adversary proceedings—including Fed. R. Bankr. P. 7026, 7028-7037, and 7056, <u>see</u> Fed. R. Bankr. P. 9014(c)—the Town reserves the right to conduct discovery and to move for summary judgment on its allegations of cause warranting dismissal of this bankruptcy case.

1

acquired through the Tax Foreclosure Action, constitutes cause that warrants dismissal of this bankruptcy proceeding.

## **BACKGROUND**

### *Formation and Dissolution of LLC*

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). See Exhibit A (Quitclaim Deed). The LLC was a Delaware limited liability company registered to do business in Massachusetts. See Exhibit B (MA Certificate of Registration). The LLC's manager was Babcock & Brown Administrative Services, Inc. ("Babcock & Brown"). See id. Babcock & Brown's president, F. Jan Blaustein, was authorized to execute recordable instruments on behalf of the LLC. See id. An unauthenticated document entitled "Westborough SPE LLC Limited Liability Company Agreement," apparently prepared by Goulston & Storrs, purports to indicate that Mignonette Investments Limited ("Mignonette"), a British Virgin Islands entity, was the LLC's sole member. See Exhibit C (LLC Agreement).[2]

The LLC withdrew from doing business in Massachusetts in 2007. See Exhibit D (MA Certificate of Withdrawal). In 2011, Babcock & Brown (through its successor) resigned as the LLC's manager. See Exhibit E (BBAS Resignation). The LLC was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware. See Exhibit F (DE Administrative Dissolution).[3] Nevertheless, the lessee of the Property (Regal Cinemas) continued to lease the

---

[2] The Debtor's Land Court counsel submitted this document to the Land Court but provided no affidavit authenticating it, much less any indication how counsel came to possess the document.

[3] Babcock & Brown itself withdrew from doing business in Massachusetts in 2008. See Exhibit G (Babcock & Brown Withdrawal). Mignonette was stricken from the British Virgin Islands Register of Companies pursuant to Section 213(5) of the BVI Business Companies Act on May 31, 2010. See Exhibit H (VI Gazette, excerpted) and I (Search Report). The effect of the striking off is that the company and its directors, members, liquidator(s), or receiver(s) may not "carry on any business" or "act in any way with respect to the affairs of the company," subject to restoration. See BVI Business Companies Act § 215 (V.I.).

Property and pay property taxes to the Town.  See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5.[4]  However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments.  See id. at ¶ 6.

### The Town's Tax Taking

Subsequently, property taxes on the Property accrued, and on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99.  See Exhibit J (Instrument of Taking).  The Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the LLC's right of redemption.  See Exhibit K (Tax Foreclosure Complaint).  On January 5, 2022, the Land Court entered judgment in favor of the Town and against the LLC.[5]  See Exhibit L (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property.  See Williams Decl. at ¶ 15.  The Town received three proposals, including one from Lax Media.  See id. at ¶ 16.  Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000).  See id. at ¶ 17.  The Town's Select Board evaluated the proposals based on five categories and selected Lax Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two.  See id. at ¶ 18.[6]

---

[4] Filed on October 3, 2023, in conjunction with the Town's Motion for Relief from Automatic Stay.  See Doc. No. 22.

[5] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler v. Hennepin County, 598 U.S. 631 (2023).

[6] In November 2022, Ferris Development Group, LLC ("FDG")—one of the other bidders—filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media.  See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281.  The Superior Court denied FDG's motion for preliminary injunction, finding that FDG failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023).

### *The Purported Revival*

On November 22, 2022, Denise Edwards filed a Certificate of Revival, purportedly for the LLC, with the Secretary of State of Delaware, effectively creating the Debtor.  See Exhibit M (DE Certificate of Revival).  On December 6, 2022, Lolonyon Akouete emailed the Town's Treasurer and identified himself as an "asset recovery specialist" who had "acquired Westborough SPE, LLC and … would like to redeem."  See Exhibit N (Dec. 6, 2022 Email).[7]

On December 12, 2022, the Debtor applied for registration to do business in Massachusetts using the same name as the LLC.  See Exhibit R (MA Application for Registration).  The managers of the Debtor were identified as Ms. Edwards and Mr. Akouete.  See id.  The principal office of the Debtor—1241 Deer Park Ave., Suite 1 #1051, North Babylon, NY 11703, see id.—is a Staples store.  See Exhibit S (Staples.com Printout).

Subsequently, Attorney Matthew Morris of Sherin & Lodgen LLP, representing Mr. Akouete, claimed that Ms. Edwards and Mr. Akouete were "the new owners of the LLC."  See Exhibit T (M. Morris Email).  Mr. Akouete and Ms. Edwards based their claim to ownership and control over the Debtor (and purportedly the LLC by extension) through a bill of sale.  See Exhibit U (Jan. 13, 2023 Email).  The bill of sale states, on its face, that it is between the LLC and Denise Edwards and Mr. Akouete as "joint tenants."  See Exhibit V (Bill of Sale).  The bill of sale was purportedly signed by Ms. Blaustein as president of the LLC on December 8, 2022, although the bill of sale itself states that it was made November 21, 2022.  See id.  Although the Debtor represented to the Land Court that Ms. Blaustein resides in a New Mexico assisted living facility, her signature on the bill of sale bears an Arizona notarization, which itself provides no indication

---

[7] Mr. Akouete holds himself out as the CEO/Owner of Smart Investors, LLC, a Maryland limited liability company that was forfeited for failure to file a property return in 2010 or thereafter.  See Exhibits O (Smart Investors MD Documents) and P (Akouete LinkedIn).  Mr. Akouete also holds himself out as "an investigator of unclaimed property," as reflected in documents he filed in the Land Court.  See Exhibit Q (Akouete Exs. 2 and 3).

4

of how the notary confirmed that the person signing was Ms. Blaustein or that Ms. Blaustein was the "president" of the LLC (which she was not). See id.; see also Exhibit W (Motion to Vacate) at p. 6.[8] Moreover, in 2019, a Hawaii state court ruled that Ms. Blaustein was "an incapacitated person" and appointed her son, Peter Blaustein, as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Mr. Blaustein did not give permission or consent for Ms. Blaustein to sign the bill of sale and did not approve of her doing so. See Exhibit Z (Affidavit of Peter L. Blaustein).

### ***Mr. Akouete's Scheme to Vacate the Tax Title Foreclosure Judgment***

On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69), Mr. Akouete filed a motion with the Land Court to vacate the judgment on behalf of the Debtor. See Exhibit W (Motion to Vacate).[9] Mr. Akouete also sent a copy of his motion papers to David Ferris, the CEO of FDG, which had unsuccessfully attempted to purchase the Property when the Town solicited bid proposals through G.L. c. 30B (as noted above, see fn. 6). See Exhibit AA (Jan. 7, 2023 Email). Days later, on January 9, 2023, Mr. Ferris contacted Mr. Akouete by iMessage to discuss the Property. See Exhibit BB (iMessage Screenshots) at p. 2. In the ensuing iMessage exchange (which also involved Brian Charville, FDG's COO and General Counsel), Mr. Akouete indicated that he had "at least one document showing who may be the equity owner of the LLC." See id. at p. 3.[10] In response to Mr. Charville

---

[8] Page references to exhibits in this brief are to the CM/ECF pagination, inclusive of exhibit cover sheets, unless otherwise noted.

[9] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

[10] Exhibit BB contains excerpts of iMessage screenshots that were produced to the Town's counsel by FDG's counsel and appear to be from Mr. Charville's phone.

5

stating that anything Mr. Akouete could do "to substantiate [his] ownership of the LLC will help [Mr. Ferris] evaluate a potential purchase of the property," Mr. Akouete stated, "If you are going to help me find an attorney, then I'll share information with you. If not, then good luck." See id. at p. 4. Mr. Akouete also stated in a separate message that "[w]e believe that Jan Blaustein Scholes[] is a managing member of the LLC," but acknowledged that he had not confirmed this. See id. at p. 5.

On January 18, 2023, Mr. Akouete and Ms. Edwards signed what purported to be a new "Limited Liability Company Agreement of Westborough SPE LLC," dated December 8, 2022. See Exhibit CC (2022 LLC Agreement). The new LLC agreement makes no reference to the LLC's original operating agreement from 1997 and, notably, states that Mr. Akouete and Ms. Edwards, as members, "form a Limited Liability Company (the 'Company') in accordance with the laws of the State of Delaware." Id. at p. 2 (emphasis added). In the iMessage chain with FDG's officers, Mr. Akouete admitted that "we couldn't find any original operating Agreement or Corporate Resolutions. We just put this one in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6.

On February 28, 2023, Mr. Akouete admitted to Mr. Charville that he was "starting to see the authority issues we have in this case." See Exhibit BB (iMessage Screenshots) at p. 7. On March 14, 2023, Mr. Akouete told FDG's officers that he was "very close to finding the beneficial owner of the property," but also admitted that he lacked the funds required to redeem the Property. See id. at p. 8. Days later, Mr. Akouete told Mr. Charville that he had "been trying to negotiate with Peter [Blaustein], Jan's Guardian, to get the authority I need to vacate the foreclosure judgment," but Mr. Blaustein was "not responding." See id. at p. 9. On March 31, 2023, Mr. Akouete informed Mr. Charville that he had "run out of money" and did not "have anymore [sic]

6

funds to continue with the case," such that he was requesting Mr. Ferris to pay his attorney's retainer. See id. at p. 10. In the same message, Mr. Akouete indicated that he was "in the process of restoring [the] registration of Mignonette," which had been "suspended for nonpayment of fees," although Mr. Akouete was not an owner of Mignonette. See id. Several weeks later, on May 23, 2023, Mr. Akouete asked Mr. Charville if Mr. Ferris would "pay the attorneys fees" if "we are able to get Peter [Blaustein] to ratify and confirm the Bill of Sale." See id. at p. 11.

The Town opposed the motion to vacate for various reasons, including significant questions that the Town had regarding the ownership and identity of the Debtor, such as whether the individuals purporting to own the Debtor and advancing the motion to vacate (Mr. Akouete and Ms. Edwards) had actually acquired the LLC, much less any interest in the Property. See Exhibit DD (Opposition without Exhibits). Nathanson & Goldberg, P.C. subsequently appeared on behalf of the Debtor in the Tax Foreclosure Action and filed a slew of motions (which the Land Court ultimately denied). See Exhibit EE (Land Court Docket) at pp. 8-9. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit EE (Land Court Docket) at May 16, 2023 entry.

Meanwhile, Mr. Akouete and Ms. Edwards attempted to recover an unclaimed checking account located in California, which had belonged to the LLC and contained almost $1.3 million.[11] On February 8, 2023, however, the California State Controller denied their claim. See Exhibit GG (CA Decision). The California State Controller concluded that "the Bill of Sale is void" due to

---

[11] In the Land Court, Mr. Akouete claimed to have obtained Mr. Blaustein's permission to have Ms. Blaustein sign certain papers to assist in this recovery attempt and submitted a September 15, 2022 text message screenshot to support this claim. See Exhibit FF (Sept. 15, 2022 Text).

Ms. Blaustein's lack of capacity and, as a result, Mr. Akouete and Ms. Edwards "could not have acquired any interest in Westborough SPE LLC." Id. Additionally, the California State Controller noted that "[i]t appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC" and "that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC," such that there was a question of "whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC." Id.[12]

### The Last Resort - Bankruptcy

On June 29, 2023, Scott Schlager of Nathanson & Goldberg, P.C. emailed Mr. Ferris and Mr. Charville. See Exhibit HH (June 29, 2023 Email). In that email, Attorney Schlager stated that he concluded that FDG was "not wanting to finance a bankruptcy proceeding" but nevertheless solicited FDG to provide $10,000 to pay an attorney to provide "a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC" based on three additional documents that Nathanson & Goldberg, P.C. was "able to have F. Jan Blaustein Scholes execute." See id.[13]

On August 31, 2023, Nathanson & Goldberg, P.C. and The MobileStreet Trust filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings.[14] The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate in the Tax

---

[12] As discussed above, Babcock & Brown resigned as the LLC's manager effective May 30, 2011. See Exhibit E (BBAS Resignation).

[13] These documents, which Nathanson & Goldberg, P.C. also submitted to the Land Court, do not alter the facts that (i) Mr. Blaustein had already been appointed as Ms. Blaustein's guardian and conservator, and (2) was not a member of the LLC and thus held no ownership interest in it or its assets.

[14] The MobileStreet Trust owns two parcels of land adjoining the Property, all of which are subject to a Reciprocal Covenants, Easements and Restrictions Agreement.

8

Foreclosure Action, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit EE (Land Court Docket) at August 31, 2023 entry. The Tax Foreclosure Action remains stayed.[15]

Since the entry of the Order of Relief and appointment of the Chapter 7 Trustee in this matter, Mr. Akouete has nevertheless engaged in a persistent course of conduct badgering the Town. Among other things, Mr. Akouete has threatened to assert that the Town is engaging in unreasonable and vexatious litigation simply by pursuing its concerns with Mr. Akouete's involvement in the Debtor, opined that he may to object to any settlement that the Town and the Chapter 7 Trustee may reach, accused the Town of bullying him and accused the Land Court judge of bias, and threatened to file a lawsuit against the Town after a sale of the Property if this Court continued the December 21, 2023 hearing on the Town's motion for relief from the automatic stay. See Exhibits II (Dec. 1, 2023 Email Chain) and JJ (Dec. 16, 2023 Email). Recently, he sent the Town's Select Board members—even though the Town is represented by counsel—a pair of emails, including one sent on the Saturday of the Christmas holiday weekend, directly threatening "initiating legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process" if the Board did not expedite a settlement. See Exhibit KK (Dec. 26, 2023 Email Chain).

---

[15] On October 3, 2023, the Town moved for relief from the automatic stay to proceed with the Tax Foreclosure Action. See Doc. No. 20. The Court conducted an initial hearing on that motion on November 30, 2023, but continued it so that the Chapter 7 Trustee could explore settlement discussions with the parties and whether to attempt to remove the Tax Foreclosure Action, commence an adversary proceeding regarding the Property under 11 U.S.C. § 548(a), or both. The Court is scheduled to resume the hearing on February 13, 2024.

9

# ARGUMENT

The Bankruptcy Code provides that the Court may dismiss a Chapter 7 case "for cause." 11 U.S.C. § 707(a). Although the U.S. Court of Appeals for the First Circuit has not decided what constitutes "cause" for the purposes of § 707(a), other bankruptcy judges in this Court have concluded that "egregious conduct or abuse and manipulation of the Bankruptcy Code" suffices to warrant dismissal. See In re Linehan, 326 B.R. 474, 483 (Bankr. D. Mass. 2005) (Feeney, J.), citing In re Huckfeldt, 39 F.3d 829 (8th Cir. 1994).[16] Section 707(a) "allows the court to consider a concerted scheme of bankruptcy abuse." Krueger v. Torres (In re Krueger), 812 F.3d 365, 372 (5th Cir. 2016). That is what has occurred here.

Much of what Mr. Akouete, Ms. Edwards, and their lawyers have done to frustrate the Town's disposition of the Property likely constitutes bad faith, which would constitute cause in some circuits but not others. See, e.g., Krueger, 812 F.3d at 370-373. Mindful of the undecided status of the law in the First Circuit, the Town does not rely upon a finding that there has been "bad faith" that, in turn, is "cause" for dismissal under § 707(a). Rather, as discussed below, it is clear that, regardless of labels, the actions of Mr. Akouete, Ms. Edwards, and their lawyers amount to "egregious conduct" and a manipulation of the bankruptcy process to frustrate the Town's efforts to bring the Tax Foreclosure Action to a close in the Land Court. As such, dismissal is warranted.

---

[16] Unlike Linehan, this case involves an entity debtor which is not entitled to a discharge (see 11 U.S.C. § 727(a)(1)), such that the Town has no ability to raise concerns over the actions of the Debtor or Petitioning Creditors through an objection to discharge pursuant to 11 U.S.C. § 523 or § 727. Thus, dismissal under § 707(a) is the only vehicle for the Town to bring the concerns addressed herein to the Court's attention.

10

## I.    THE INVALID ATTEMPT TO REVIVE THE LLC IS EGREGIOUS

Egregious means "extraordinary in some bad way," or "glaring; flagrant."[17]  The conduct of Mr. Akouete and Ms. Edwards in seeking to invalidly revive the LLC and vacate the Town's tax title foreclosure judgment is both extraordinarily bad and glaringly flagrant.  The conduct is sufficiently egregious to constitute cause to dismiss this bankruptcy proceeding.

From the start, the attempt to revive the LLC was duplicitous.  The bill of sale—which is the backbone to Mr. Akouete and Ms. Edwards's claims to ownership and/or management of the LLC—is legally meaningless.  Even taken on its face, it was ineffective, as it was purportedly signed by Ms. Blaustein as president of the LLC, a role she never held.  See Exhibit V (Bill of Sale).  And to the extent that Ms. Blaustein intended to sign the bill of sale in her role as president of Babcock & Brown, that would not cure the defect.  Babcock & Brown, which had withdrawn from doing business in Massachusetts in 2008, resigned as the LLC's manager in 2011.  See Exhibit E (BBAS Resignation); see also Exhibit D (MA Certificate of Withdrawal).[18]  Simply put, Ms. Blaustein had no authority to convey any interest—whether ownership or management—of the LLC in 2022 when she purportedly signed the bill of sale.

Moreover, the bill of sale is fraught with indicia of fraud.  Mr. Akouete and Ms. Edwards apparently had Ms. Blaustein sign the bill of sale in Arizona, even though the Debtor itself acknowledged that she resides in a New Mexico assisted living facility.  See Exhibit V (Bill of Sale); see also Exhibit W (Motion to Vacate) at p. 6.  Ms. Blaustein's signature on the bill of sale is suspect, however, as the notary who attested that signature did not indicate how he confirmed

---

[17] See https://www.dictionary.com/browse/egregious (last visited Jan. 9, 2024).

[18] Babcock & Brown's corporate parent has apparently been in liquidation in Australia for almost two decades.  See https://jws.com.au/insights/articles/2019-articles/the-continued-saga-of-the-babcock-brown-liquidatio (last visited Jan. 9, 2024).

that the person signing was, indeed, Ms. Blaustein or that Ms. Blaustein had the authority to sign the bill of sale as the LLC's president (which she was not). See Exhibit V (Bill of Sale). Moreover, at the time Ms. Blaustein purportedly signed the bill of sale, she had been adjudged "incapacitated" and Mr. Blaustein had been appointed as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Thus, Ms. Blaustein lacked the capacity to execute the bill of sale. See Restatement (Second) of Contracts § 12(1) (1981) ("No one can be bound by contract who has not legal capacity to incur at least voidable contractual duties."); see also, e.g., G.A.S. v. S.I.S., 407 A.2d 253, 256-257 (Del. Fam. Ct. 1978); Krasner v. Berk, 366 Mass. 464, 467-468 (1974); Young v. Lujan, 11 Ariz. App. 47, 49 (1969).[19] Critically, Mr. Blaustein did not in any way authorize Ms. Blaustein's execution of the bill of sale. See Exhibit Z (Affidavit of Peter L. Blaustein). Thus, the bill of sale is voidable, if not void given Mr. Blaustein's testimony, as the California State Treasurer already recognized in rejecting Mr. Akouete and Ms. Edwards's claim to the LLC's unclaimed property in California. See, e.g., G.A.S., 407 A.2d at 256-257; Krasner, 366 Mass. at 467-468; Young, 11 Ariz. App. at 49; see also Exhibit GG (CA Decision). The fact that these actions were coordinated by Mr. Akouete, who labels himself as "an asset recovery specialist" and "an investigator of unclaimed property," casts further doubt on the validity of the revival of the LLC. See Exhibits N (Dec. 6, 2022 Email) and Exhibit Q (Akouete Exs. 2 and 3).

What casts even further doubt on the validity of the revival of the LLC, and what further demonstrates the egregiousness of the conduct at issue, are Mr. Akouete's iMessage exchanges with the CFO and COO/GC of FDG. For example, Mr. Akouete's initial messages acknowledged

---

[19] In the Land Court, the Debtor contended that Ms. Blaustein's signature in Arizionia was not impacted by the adjudication of incapacitation in Hawaii. But, the question of Ms. Blaustein's capacity to contract in December 2022 does not depend exclusively on formal registration of her guardianship in the jurisdiction where she purportedly signed the bill of sale. See e.g., G.A.S., 407 A.2d at 256-257; Krasner, 366 Mass. at 467-468; Young, 11 Ariz. App. at 49.

that he was not "the equity owner of the LLC" and that he would have "to substantiate [his] ownership of the LLC." See Exhibit BB (iMessage Screenshots) at pp. 3-4. He also acknowledged that he had not confirmed that Ms. Blaustein was a member of the LLC, as opposed to just an agent of its since-resigned manager. See id. at p. 5. Subsequently, Mr. Akouete admitted that there were "authority issues" with the revival of the LLC and the Debtor's attempt to vacate the tax title foreclosure judgment. See id. at p. 7. Then, Mr. Akouete sent a pair of messages in which he acknowledged that the bill of sale was not valid, when he told Mr. Charville that he was "trying to negotiate" with Mr. Blaustein—who Mr. Akouete admitted was Ms. Blaustein's guardian—"to get the authority … to vacate the foreclosure judgment" and to "ratify and confirm the Bill of Sale." See id. at pp. 9, 11. Thus, Mr. Akouete himself has admitted to third parties that the bill of sale is void and does not actually give him and Ms. Edwards any control over or interest in the LLC.[20]

Critically, the LLC's governance documents also undermine the Debtor's validity. The document that may be the original operating agreement provides that Mignonette—which itself may no longer exist under the laws of the British Virgin Islands—was the sole member of the LLC. See Exhibit C (LLC Agreement); see also Exhibit H (VI Gazette, excerpted) and I (Search Report). But Mr. Akouete and Ms. Edwards have never brought forward any evidence that they own or control Mignonette. Apparently Mr. Akouete and Ms. Edwards were unable to get a copy of this agreement or, perhaps, they recognized that it is an impediment to their claim of ownership and management of the LLC. Regardless, and undeterred, on January 18, 2023—after already having filed the motion to vacate but recognizing the need for some documentation to corroborate their claim of authority—Mr. Akouete and Ms. Edwards simply drafted up a new operating agreement

---

[20] Mr. Akouete's actions—namely his September 2022 text exchange with Mr. Blaustein—further demonstrate that he and Ms. Edwards knew that Ms. Blaustein had been placed in conservatorship and had a guardian appointed. See Exhibit FF (Sept. 15, 2022 Text).

13

that nowhere mentions the original formation of the LLC but instead itself states that Mr. Akouete and Ms. Edwards were "form[ing]" a Delaware limited liability company, rather than reviving an existing one. See Exhibit CC (2022 LLC Agreement). As Mr. Akouete told FDG's officers, he and Ms. Edwards "just put" the new operating agreement "in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6. Thus, there is no evidence whatsoever that Mr. Akouete and Ms. Edwards had any authority to act on the LLC's behalf, either as members or managers.

Cause for dismissal generally "exists where a business entity lacks authority to file a bankruptcy petition." In re Polish-Am. Citizen's Club Inc., 2023 WL 4259266, at *8 (1st Cir. BAP June 27, 2023), quoting In re Or. Homes, LLC, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio. Sept. 25, 2014). Although this case involves an involuntary petition filed against the Debtor, the principle applies because the Debtor was not a properly-revived version of the LLC and thus lacked authority to file a bankruptcy petition. The fact that the Debtor's own lawyers stood in as one of two petitioning creditors and facilitated the bankruptcy filing should not serve as an end-around of the impact of the issues concerning the LLC's status. Indeed, if the Court "finds that those who purport to act on behalf of the [entity] have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." Id., quoting Price v. Gurney, 324 U.S. 100, 106 (1945). Here, Mr. Akouete and Ms. Edwards had no authority to act on behalf of the LLC, whether it was to commence a bankruptcy petition or retain counsel that ultimately did so against the Debtor as a petitioning creditor.

Mr. Akouete and Ms. Edwards's egregious conduct in attempting to invalidly revive the LLC solely for their own gain is cause to dismiss the bankruptcy involving the Debtor. Adding to that egregious conduct is how Mr. Akouete has conducted himself since the Court entered the order of relief (which shifted whatever control Mr. Akouete had over the Debtor to the Chapter 7

14

Trustee). Mr. Akouete has badgered the Town's attorneys for weeks, threatening additional litigation, accusing the Town of bullying, and leveling unfounded assertions of bias against the Land Court judge. See II (Dec. 1, 2023 Email Chain) and JJ (Dec. 16, 2023 Email). When this tactic did not get him anywhere, Mr. Akouete turned to sending the Town's Select Board emails threatening "legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process," on Christmas weekend no less. See Exhibit KK (Dec. 26, 2023 Email Chain).

In light of this egregious conduct, the Court should dismiss this bankruptcy proceeding for cause, particularly given the circumstances surrounding the filing of the involuntary petition that commenced these proceedings.

## II. THIS BANKRUPTCY CASE WAS FILED FOR THE PURPOSES OF FRUSTRATING OTHER JUDICIAL PROCEEDINGS, NAMELY THE LAND COURT TAX TITLE FORECLOSURE ACTION

Cause exists to dismiss this bankruptcy proceeding because it is an abuse and manipulation of the Bankruptcy Code designed solely to hinder final resolution of the Town's Tax Foreclosure Action. There is no abuse of discretion by a bankruptcy court that dismisses a Chapter 7 petition that was filed to manipulate the bankruptcy process to benefit those that filed the petition, including to frustrate other judicial proceedings. See Krueger, 812 F.3d at 374 (petition filed "to hamper … state court litigation that threatened" debtor's "pecuniary interests" and "personal freedom"); Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832-833 (8th Cir. 1994) ("Huckfeldt filed the petition for the purpose of frustrating the divorce court decree"). Indeed, bankruptcy may not be used "as a refuge from another court's jurisdiction." Huckfeldt, 39 F.3d at 832.

Manipulation of the bankruptcy process to frustrate other judicial proceedings is not limited to the actions of the debtor, either. If the conduct of a petitioning creditor amounts to such abuse, an involuntary Chapter 7 case may be dismissed for cause, as well. See Fisher v. Bank Leumi Trust Co. of N.Y. (In re MacFarlane Webster Assocs.), 121 B.R. 694, 697, 700-702 (Bankr.

15

S.D.N.Y. 1990) (granting senior mortgagee's motion to dismiss involuntary Chapter 7 commenced by junior mortgagee that would benefit from avoidance of pre-petition foreclosure). "[W]here the primary function of" an involuntary bankruptcy "petition was to serve as a 'litigation tactic,'" cause exists to dismiss the case. See Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 60 (2d Cir. 2018).

Here, the Debtor and its attorneys at Nathanson & Goldberg, P.C.—one of the two petitioning creditors—commenced this bankruptcy proceeding by filing an involuntary petition as a litigation tactic to frustrate the Land Court proceedings in the Tax Foreclosure Action. With Mr. Akouete acknowledging to FDG's officers in May 2023 that the bill of sale was void absent Mr. Blaustein's ratification, thus crystallizing the "authority issues" that plagued the Debtor's motion before the Land Court, the Debtor's attorneys at Nathanson & Goldberg, P.C. then pivoted in June 2023 to seeking FDG's help to "finance a bankruptcy proceeding." See Exhibit BB (iMessage Screenshots) at pp. 7, 11; Exhibit HH (June 29, 2023 Email). Although FDG apparently declined to do so, that did not ultimately stop the Debtor's own counsel from putting the Debtor into Chapter 7 bankruptcy despite continuing to represent the Debtor in the Land Court.

The timing of the involuntary petition, however, reflects that this bankruptcy was intended to be used impermissibly "as a refuge from" the Land Court's "jurisdiction." Huckfeldt, 39 F.3d at 832. The Debtor's attorneys at Nathanson & Goldberg, P.C. filed the involuntary petition the very morning that the Land Court was scheduled to hold a conference to set a hearing on the Debtor's motion to vacate the tax title foreclosure judgment. See Exhibit EE (Land Court Docket) at May 16, 2023 entry. As a result, the Tax Foreclosure Action was stayed and has remained stayed to this date.

16

Thus, by putting the Debtor into bankruptcy, Mr. Akouete, Ms. Edwards, and their attorneys have successfully prevented the Land Court from adjudicating the Debtor's motion to vacate. That motion is undermined by the very same issues of authority that constitute cause to dismiss this bankruptcy proceeding. The Debtor and its attorneys should not be permitted to use the bankruptcy process to prevent the Land Court from disposing of the motion to vacate, upholding the tax foreclosure judgment, and allowing the Town to proceed with the sale of the Property to Lax Media pursuant to the Select Board's bid selection.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this bankruptcy case in its entirety.

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: January 16, 2024

89657/WEST/0049

17

## CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Motion to Dismiss Bankruptcy Case to be served through the Court's CM/ECF system to the

following counsel of record or by U.S. mail or email to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*
(by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor*
(by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor*
(by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor*
(by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor*
(by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust*
(by email)

Dated: January 16, 2024

_____
Roger L. Smerage

18

# Appendix

72 Bankr.Ct.Dec. 166

2023 WL 4259266

**NOT FOR PUBLICATION**

United States Bankruptcy Appellate Panel of the First Circuit.

POLISH-AMERICAN CITIZEN'S CLUB INC. of Willimansett, Massachusetts, d/b/a Pulaski Hall, d/b/a Pulaski Club, d/b/a Polish-American Citizens Club, Debtor.

David W. Ostrander, Chapter 7 Trustee, Appellant,

v.

Elaine Dowd, Stanley Gromacki, Jr., Matthew Roman, June Massee, Marian Zielinski, Frank Meckay, and Mitchell Nowak, Appellees.

BAP NO. MS 22-033

|

Bankruptcy Case No. 21-30357-EDK

|

June 27, 2023

**Appeal from the United States Bankruptcy Court for the District of Massachusetts (Elizabeth D. Katz, U.S. Bankruptcy Judge)**

**Attorneys and Law Firms**

David W. Ostrander, Chapter 7 Trustee, on brief for Appellant.

Gregory A. Hession, Esq., on brief for Appellees.

Before Godoy, Harwood, and Cary, U.S. Bankruptcy Appellate Panel Judges.

**Opinion**

Godoy, United States Bankruptcy Appellate Panel Judge.

**\*1** After a trial, the bankruptcy court dismissed the chapter 7 petition filed by Polish-American Citizen's Club Inc. of Willimansett, Massachusetts (the "Club") because it was not duly authorized by a properly constituted board of directors. The chapter 7 trustee (the "Trustee") moved for reconsideration and that request was denied. The Trustee appealed both orders. On appeal,

the Trustee argues that the dismissal order was based on a clearly erroneous finding that the board of directors was not elected prior to the adjournment of the Club's 2020 annual meeting, and the bankruptcy court should have granted reconsideration to allow him to introduce additional evidence on the issue. He also challenges the court's denial of his request to "condition" the dismissal upon the payment of "administrative expenses." For the reasons discussed below, we **AFFIRM** both the dismissal order (including the denial of the Trustee's request for payment of administrative expenses) and the order denying reconsideration.

**BACKGROUND**[1]

[1]    Unless otherwise noted, all references to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure and references to "Rule" are to the Federal Rules of Civil Procedure.

The Club, a Massachusetts non-profit corporation, is a social club founded in 1927. It has about 500 shareholders, including the seven appellees (the "Appellees"). The Club owns real property located at 13 Norman Street, Chicopee, Massachusetts (the "Property"), where it conducted its club activities and operated a restaurant, bar, and hall rental business. Plagued by financial difficulties, the Club ceased active operations in October 2020 and closed the facility altogether in early 2021.

**I. The Bankruptcy Proceedings**

**A. The Chapter 7 Filing**

On September 17, 2021, the Club filed a chapter 7 petition, signed by its president, Dorothy Wojtczak. The Trustee was appointed shortly thereafter, and, with the bankruptcy court's approval, employed his law firm to represent him in the case.[2] On September 28, 2021, upon the bankruptcy court's request, the Club filed a corporate resolution (the "Resolution") authorizing the filing of the bankruptcy case. The Resolution was signed by eight

**Polish-American Citizen's Club Inc., Slip Copy (2023)**

72 Bankr.Ct.Dec. 166

people purporting to be members of the Club's board of directors (the "Board" or "Board of Directors").[3]

> 2  Neither the Trustee nor his counsel submitted any fee applications in the bankruptcy case.

> 3  The signatories on the Resolution were: Dorothy Wojtczak, president; Carl Schreiber, vice president; Barbara Zabinska, director; Lucyna Wojtczak, director; Jordan Klofas, director; Anton Zamachaj, director; Mariola Jarzynska, director; and Rachel Ilnicki, director.

### B. Appellees' Motion to Dismiss

About six months after the bankruptcy filing, after conducting Bankruptcy Rule 2004 examinations of several directors and officers of the Club, the Appellees filed a motion to dismiss the petition (the "Motion to Dismiss"), asserting that the bankruptcy filing was not duly authorized by a properly constituted Board of Directors. Among other things, they alleged that at least six of the eight individuals whose signatures appeared on the Resolution were not qualified Board members because they were not properly elected at the Club's annual meeting held on February 23, 2020 (the "2020 annual meeting").[4] Accordingly, the Appellees argued, the Resolution was not valid, the petition was not authorized, and the case should be dismissed.

> 4  It is undisputed that due to the COVID-19 pandemic and subsequent cessation of Club operations, no annual meeting or election of officers and directors was held after the 2020 annual meeting.

### C. Trustee's Objection to Motion to Dismiss

**\*2** The Club did not respond to the Motion to Dismiss. The Trustee, however, filed an objection. Relying primarily on an affidavit from Dorothy Wojtczak, the Club's president, in which she attested that all persons whose signatures appeared on the Resolution were valid Board members, the Trustee countered that the bankruptcy filing was duly authorized. The Trustee further contended that the Club's debts, which totaled more than $151,000, would "only be satisfied" by selling the Property, and that he had already spent considerable

time and effort marketing the Property for sale. If he did not sell the Property through the bankruptcy case, the Trustee insisted, the City of Chicopee, which had moved for relief from stay to foreclose its tax lien on the Property, would likely conduct a "distress sale" which would net far less than his proposed sale.[5] For these reasons, the Trustee requested that the Motion to Dismiss be denied.

> 5  A few days after filing his objection to the Motion to Dismiss, the Trustee sought authority to sell the Property to a third party for $375,000. No objections were filed, and a combined trial with the Motion to Dismiss was scheduled for June 21, 2022. After trial, the bankruptcy court denied the motion to sell as moot due to the dismissal of the bankruptcy case.

### D. Trustee's Motion for Sanctions

Shortly before the trial, the Trustee filed a motion (the "Sanctions Motion") seeking to impose monetary sanctions against the Appellees and their counsel "for prosecuting baseless claims against the Bankruptcy Estate resulting in the Estate incurring substantial time and expenses defending [against] these allegations." The Trustee asserted that the Appellees' filing of numerous pleadings, including the Motion to Dismiss, was "an attempt to obstruct the Trustee's administration of the case," which caused administrative expenses to accrue at a substantial rate.

That same day, the bankruptcy court denied the Sanctions Motion, without prejudice, "for failure to articulate any legal basis for the relief requested" and "for failure to comply with Fed. R. Bankr. P. 9011(c)," which governs the imposition of sanctions for violations of Fed. R. Bankr. P. 9011(b) (setting forth certifications made by any party signing, filing, and submitting documents with the bankruptcy court).

### II. The Trial

The bankruptcy court conducted a three-day trial in June 2022. Dorothy Wojtczak, five of the Appellees, and several other shareholders were among the thirteen individuals who testified. We summarize only the testimony most relevant to this appeal.

Polish-American Citizen's Club Inc., Slip Copy (2023)

72 Bankr.Ct.Dec. 166

### A. Opening Statements

During his opening statement, the Appellees' counsel argued that the petition should be dismissed as the evidence would show that most of the individuals who signed the Resolution were not properly elected to the Board at the 2020 annual meeting in the manner required by the Club's bylaws. He stated: "The meeting ended. There w[as] only a handful of people left and they remembered that they forgot to elect a board," so the Club's president "just appointed some people" to the Board. The Trustee countered that the evidence would show that all the individuals whose names appeared on the Resolution were valid Board members.

### B. Shareholder Testimony

The Appellees introduced the testimony of June Massee, who had served as president of the Club for several years. She described the 2020 annual meeting as a "drunken brawl," explaining that after elections were held for the various officer positions, "chaos" ensued when a controversial financial report for 2019 was presented. Ms. Massee stated that "someone" then "said the meeting's adjourned in a loud voice" and "almost everybody got up and left." Ms. Massee believed the person who adjourned the meeting was Dorothy Wojtczak, who was known to abruptly end meetings when she did not like what she was hearing. No "director elections" had occurred before the meeting was adjourned, Ms. Massee stated.

**\*3** Kevin Juchno, who had been a member of the Club since 2016, also described the 2020 annual meeting as "chaotic" and testified that no Board had been elected before the meeting was adjourned. He explained that after the meeting was adjourned, somebody realized that a board of directors had not been elected. Dorothy Wojtczak then asked him if he would like to be a Board member and "offered up a couple of other names" from the "handful" of people remaining. She "asked if anyone objected to these people being appointed as directors. Everyone said no, no objections. And she said okay, we have our board members." Matthew Roman, a Club member for at least 50 years who served as a director, officer, and trustee, corroborated Mr. Juchno's testimony, stating that after the meeting was adjourned, Ms. Wojtczak simply asked the few remaining people whether they wanted to be on the Board and they agreed. Another former officer and trustee, Marian Zielinski, also testified that a large number of people left halfway through the meeting. There had been no election of Board members and so Dorothy Wojtczak simply chose the directors without any discussion. Rachel Ilnicki, a Club member who was working in the kitchen during the meeting, similarly explained that after a lot of people had left the meeting, Dorothy Wojtczak simply asked her to be a director and she agreed.

On direct examination by the Appellees, however, Dorothy Wojtczak insisted she did not simply "appoint" members of the Board when there was only a "handful" of people remaining. When questioned by the bankruptcy court as to how the directors were "chosen" at the 2020 annual meeting, she explained:

> [O]nce the election happens for the officers there is a hand vote, basically a question, who would like to become a director..., and whoever wants to be a director raises their hand. If there's not enough directors, then you can ask on the floor, hey, so[ ] and so[,] would you like to be a director?

All the individuals who signed the Resolution were "elected" in this manner at the 2020 annual meeting, Ms. Wojtczak stated. She also asserted that although the Club's 1927 bylaws may have required an "election" of directors, the Club had "not run by these bylaws for many, many years" and there had "never been a vote to elect any directors" since she became a Club member.

The Appellees, however, introduced conflicting testimony that before Dorothy Wojtczak became president in 2019, the Club conducted formal elections of directors. Matthew Roman explained that traditionally, when electing directors, a nominating committee made nominations for individuals to serve on the Board. Depending on how many director positions needed to be filled, there was either a ballot (by hand or paper) and the "highest vote getters" became directors, or, if the number of nominees did not exceed the number of positions to be filled, a motion would be made and seconded to accept the nominees as directors. Mitchell Nowak, who served as president of the Club for about 19 years, corroborated this testimony.

The Trustee introduced several witnesses who testified that the Board members were chosen before the conclusion of the 2020 annual meeting. Anton Zamachaj testified that, after determining the number of director positions to be filled, "nominations" for directors were made from the floor and then the nominees were "elected" by a "voice vote." He was nominated in this manner by his cousin, he explained, and no objections to any of the nominations were made. He further stated that the meeting was not adjourned before the election of the Board, insisting that the "mass exodus" occurred *after* the

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

3

72 Bankr.Ct.Dec. 166

directors were elected. Alice Pasterczyk similarly testified that the Board of Directors was "in place" before the 2020 annual meeting was adjourned. She could not recall, however, exactly how the Board members were selected, stating that her "recollection of specifics [of] that meeting [was] not quite there ...."

### C. Documentary Evidence

Both parties also introduced documentary evidence to support their respective positions. The Appellees repeatedly referenced the Club's bylaws, which the witnesses agreed required the Club to conduct an "election" of directors by "written ballot." They pointed to Dorothy Wojtczak's handwritten notes of the 2020 annual meeting, which reflected tallied votes for the officer positions but none for the directors, as evidence that the officers were selected by ballot and the directors were not. The Appellees also emphasized that a Certificate of Change of Directors and Officers for the Club (the "Change of Directors Certificate") filed with the Secretary of the Commonwealth in January 2021, indicated that the terms of the directors named therein expired in February 2021, well before the petition was filed.[6]

[6] The Change of Directors Certificate identified the following officers: Dorothy Wojtczak, President; Kevin Juchno, Treasurer; Heather Larsen, Clerk; Ronald Schwalm, Financial Secretary; and Carl Schreiber, Vice President; and the following directors: Mariola Jarzynska, Rachel Ilnicki, Jordan Klofas, Barbara Zabinska, Lucyna Wojtczak, and Anton Zamachaj.

**\*4** The Trustee, on the other hand, pointed to Ms. Wojtczak's handwritten notes of the 2020 annual meeting—which identified as new directors many but not all the individuals who signed the Resolution—as evidence that the individuals listed therein were elected to the Board at the 2020 annual meeting and that the election occurred before the meeting was adjourned. He also claimed that the Change of Directors Certificate "confirmed" that all the individuals who signed the Resolution were directors of the Club.

### D. The Trustee's Request for Payment of Administrative Expenses

Following closing arguments, the Trustee requested that

dismissal of the petition be conditioned upon the Club's payment of "administrative expenses" incurred in the case:

> Your Honor, if you are ... inclined to grant the motion to dismiss, ... then I request that the dismissal be conditioned upon payment of the administrative expenses that have been incurred in this case.

> The petition was filed about nine months ago. Since then, trustee and counsel to trustee have spent over 135 hours in this case in good-faith reliance on the validity of the bankruptcy filing.

> You heard testimony from Ms. June Massee that the club can get loans, grants, and even, apparently, substantial money contributions from the club members.... [I]f so then the club should have the ability and obligation to pay the administrative expenses incurred in this case as a condition of the dismissal.

> I ask that if the case is to be dismissed, *that it be conditioned on the Court ordering the club to pay the administrative expenses* and that the club grant a mortgage on the Chicopee real estate to secure payment in full, no later than one year after the date of dismissal.

(emphasis added).[7] The bankruptcy court did not address or rule on the Trustee's request but took the entire matter under advisement.

[7] Significantly, although the Trustee had previously requested in the Sanctions Motion that the court impose an award of attorney's fees and expenses against *the Appellees* as sanctions for having to defend against their various motions, including the Motion to Dismiss, his request at the end of trial was for the bankruptcy court to "condition" any dismissal upon the *Club's* payment of "administrative expenses."

### III. Dismissal Order

On July 18, 2022, the bankruptcy court entered an order dismissing the bankruptcy petition (the "Dismissal Order"), concluding that the bankruptcy filing was not duly authorized under applicable Massachusetts law because the Resolution was not signed by a "properly constituted Board." See In re Polish-Am. Citizens Club Inc. of Willimansett, Mass., 642 B.R. 204 (Bankr. D. Mass. 2022). The court explained:

> Pursuant to the [Club]'s by-laws, the [Club]'s officers (who are automatically members of the Board) and other Board directors are to be *chosen by vote* at an

**Polish-American Citizen's Club Inc., Slip Copy (2023)**

72 Bankr.Ct.Dec. 166

annual meeting. See Movants' Ex. 1, Art. IV § 1 and Art. VI § 1. The by-laws further provide that the Board of Directors consist of not less than 5 and no more than 15 directors. See Movants' Ex. 1, Art. IV § 1.

The [Club]'s last annual meeting was held in February 2020, attended by 92 individuals according to the sign-in sheet. See Movants' Ex. 4. The February 2020 meeting was described by some witnesses as chaotic, a fiasco, and a joke. The Court credits the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses, that although an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.

**\*5** According to the minutes of the February 2020 meeting prepared by Wojtczak, prior to the adjournment of the meeting, 4 officers had been elected by ballot. See Movants' Ex. 6. Pursuant to the [Club]'s by-laws, those officers also constituted members of the Board. See Movants' Ex. 1, Art. IV § 1. *As to the remaining purported directors of the Board, the Court finds that they were not properly elected prior to the adjournment of the annual meeting as required by the by-laws.* See Movants' Ex. 1, Art. VI § 1. At the conclusion of the 2020 meeting, therefore, there were only 4 properly elected Board members. However, the by-laws require the Board to consist of at least 5 members. See Movants' Ex. 1, Art. IV, § 1. No annual meetings were conducted to elect officers or directors of the Board after the February 2020 meeting. Accordingly, the Court finds and rules that the corporate resolutions were not signed by a properly constituted Board and the filing of the [Club]'s Bankruptcy Case was therefore not authorized. Id. at 207-08 (emphasis added) (footnotes omitted).

In a footnote at the end of the decision, the bankruptcy court denied the Trustee's request to condition dismissal upon payment of administrative expenses, stating:

In addition to opposing dismissal of the Bankruptcy Case, the Trustee has also asked the Court to require *the moving shareholders* to reimburse the Trustee for his time and expenses incurred in the case *in defending the shareholders' various motions*. The Trustee has cited to no authority in support of such a request, and

the Court will not invoke its powers under 11 U.S.C. § 105(a) or its general equitable powers to award the Trustee reimbursement of his legal fees and expenses. Id. at 208 n.5 (emphasis added).

**IV. The Trustee's Request for Reconsideration**

**A. Motion to Reconsider**

Eleven days later, the Trustee filed a motion seeking reconsideration of the Dismissal Order under Rules 59(e) and 60(b) (the "Motion to Reconsider"). The Trustee argued that, because he did "not anticipate" that the bankruptcy court "would hinge its decision on whether the 2020 annual meeting had been adjourned before the election of directors," reconsideration was warranted so he could introduce affidavits by six shareholders of the Club as "new evidence" regarding when the meeting was adjourned. The Trustee further emphasized that although the Club's bylaws called for an election of directors by ballot, the "actual practice" was for the Club's president to appoint directors as needed to constitute the Board.

The Trustee also asked the court to reconsider the denial of his request to condition the dismissal of the petition upon the Club's payment of administrative expenses to the Trustee and his counsel.[8] He argued that: (1) he acted in "good faith reliance" on the validity of the Resolution; (2) by the time the Motion to Dismiss was filed, he and his counsel had already spent over 61 hours of time in the case, and a motion to sell the Property had already been "in the works" for months; (3) the bankruptcy court had authority under § 105 to condition the dismissal upon payment of administrative expenses; and (4) his request was also supported by "analogous case law" under the equitable theory of quantum meruit citing, among others, In re Jankowski, 382 B.R. 533 (Bankr. M.D. Fla. 2007) (awarding quantum meruit compensation to the trustee for carrying out his duties under § 704 before case was dismissed).

---

[8] In a footnote, the Trustee characterized his request as follows:

Specifically, the Trustee requested that after the filing with the Court of an application for fees and expenses, and the Court's review and allowance of same, that the [Club] grant a mortgage on its real estate located at 13 Norman Street, Chicopee, Mass., to secure payment of the allowed administrative expenses no later than one year from the date of dismissal.

72 Bankr.Ct.Dec. 166

### B. Appellees' Opposition to Motion to Reconsider

**\*6** The Appellees opposed the Trustee's request for reconsideration on the basis of "newly discovered evidence," arguing that the information contained in the "new" affidavits "could have been learned earlier by reasonable diligence." The Appellees also urged the bankruptcy court to deny reconsideration of the Trustee's request for payment of administrative expenses. Emphasizing that the Trustee had offered no legal authority at trial to support his initial request, the Appellees asserted that his newly advanced theory of quantum meruit was unpersuasive as there was no evidence the Trustee had provided "valuable" services to the estate.

### C. Order Denying Reconsideration

After a hearing, the bankruptcy court entered an order denying the Motion to Reconsider (the "Order Denying Reconsideration"). The court explained that the question of whether the bankruptcy filing "was authorized by a duly elected Board of Directors was known to the Trustee prior to and during the trial," and he "was given ample opportunity to raise any legal arguments in opposition to the Motion to Dismiss and specifically declined to file a posttrial brief to address any further legal arguments in light of testimony adduced at trial." It also rejected the Trustee's proffer of "new evidence" as he had failed to demonstrate it was previously unavailable to him through reasonable diligence. "As to the Trustee's arguments regarding payment of his legal fees," the court ruled, "the cases cited by the Trustee [we]re factually distinguishable and largely relied on specific provisions of the Bankruptcy Code in ruling that a Chapter 7 trustee was entitled to recovery and payment of fees."

### V. The Appeal

This appeal followed. The Trustee's requests to the bankruptcy court and the Panel for a stay pending appeal were denied.

## POSITIONS OF THE PARTIES

### I. The Trustee

The Trustee's sole challenge to the dismissal of the Club's petition is that it was based on a clearly erroneous finding that the Board was not elected before the 2020 annual meeting was adjourned. He claims that the bankruptcy court erred by relying on the testimony of June Massee, Matthew Roman, Kevin Juchno, and Marian Zielinski, all of whom, he contended, lacked credibility due to their "acrimonious" relationship with Dorothy Wojtczak and/or their "questionable recall" of the events that took place at the 2020 annual meeting. The bankruptcy court, the Trustee insists, should have focused instead on the conflicting testimony of Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj that the 2020 annual meeting was not adjourned until after the Board members were selected. He also points to the Change of Directors Certificate which, he claims, "confirms" that the individuals who signed the Resolution were valid Board members. Although the Change of Directors Certificate suggests that the directors' terms expired in February 2021, he contends, because there was no annual meeting or election of a new Board in 2021, those directors "continued to serve" as set forth in Mass. Gen. Laws ch. 155D, § 8.05(e) (providing that "[d]espite the expiration of a director's term, he shall continue to serve until his successor is elected and qualified").[9]

[9] We question the Trustee's reliance on Mass. Gen. Laws ch. 155D, § 8.05(e), as that provision does not appear to apply to "[special] purpose" corporations such as the Club, which is governed by Mass. Gen. Laws ch. 180. Even if this statute were applicable, however, it would have no bearing on the outcome of this appeal. The Trustee raises the "director holdover" provision to argue that the directors who were elected in 2020 continued to serve at the time the Resolution was signed. Having determined that the directors were not properly elected during that meeting, the bankruptcy court never reached this issue. Moreover, the Trustee did not raise the "director holdover" statute to argue that, even if the directors were not validly elected at the *2020* annual meeting, then the directors who were elected at the *2019* annual meeting continued to serve at the time the petition was filed. Even if he had raised this argument, however, there is nothing in the record showing that any of the individuals (except for one) who signed the Resolution were elected as directors in 2019.

**\*7** The Trustee also argues that the bankruptcy court "should have allowed" the Motion to Reconsider. He

reiterates his arguments below that he was not given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors, and he should have been allowed to "provide new evidence ... regarding this issue."

Finally, the Trustee contends that the bankruptcy court, as a court of equity, should have "conditioned" the dismissal of the case on the Club's payment of administrative expenses incurred by the Trustee and his counsel. The Trustee emphasizes, as he did in the Motion to Reconsider, that he had relied in good faith upon the Resolution as authority for the Club's bankruptcy filing and that, given the time he and his counsel had spent administering and prosecuting the case, it would have been "just and equitable" for the court to allow administrative expenses. Other than a brief reference to § 105, the Trustee does not cite any other legal authority to support his position.

## II. The Appellees

The Appellees counter that the bankruptcy court committed no error when it dismissed the Club's petition because the Board was not duly elected and, thus, had no legal authority to sign the Resolution. Emphasizing that the Panel must give "due regard to the trial court's opportunity to judge the credibility of witnesses," the Appellees assert that although there was some conflicting evidence as to whether the Board was properly elected at the 2020 annual meeting, the Trustee does not point to any "significant error" in the bankruptcy court's credibility determinations and weighing of the evidence. As the bankruptcy court's "decision about what testimony and documents to credit was amply supported by the evidence," the court's findings "should stand," they argue.

The Appellees also argue that the bankruptcy court correctly denied the Motion to Reconsider, as the Trustee had due notice of their allegation that the Board was not properly elected at the 2020 annual meeting. Further, the Appellees contend, the bankruptcy court correctly determined that the "new evidence" proffered by the Trustee "could have been known at the time of the original hearing by exercise of reasonable diligence, and should have been presented prior to the ruling ...."

Finally, the Appellees urge us to "[d]eny the Trustee's request for fees." They highlight that the Trustee cited no legal authority to support his initial request at the conclusion of the trial, nor has he cited any legal authority for that request in his appellate brief, other than a brief

reference to § 105. Moreover, they contend, the Trustee does not explain "how his activities benefitted the Debtor, its estate, or its creditors."

In the prayer for relief set forth at the end of their brief, the Appellees also ask us to award them "attorneys fees and costs, based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so."

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, ––– U.S. ––––, 140 S. Ct. 582, 587, 205 L.Ed.2d 419 (2020). A bankruptcy court order dismissing a chapter 7 bankruptcy petition is a final order. Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo), 581 B.R. 346, 354 (B.A.P. 1st Cir. 2018). Because the Dismissal Order is final, the Order Denying Reconsideration is also a final order. See id. ("A bankruptcy court order denying a motion to alter a judgment under Rule 59(e) or to set aside a judgment under Rule 60(b) is a final order 'if the underlying order is final and together the orders end the litigation on the merits.' ") (citation omitted). Therefore, we have jurisdiction to review both orders.

## STANDARDS OF REVIEW

**\*8** We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Typically, a bankruptcy court's dismissal of a chapter 7 petition is reviewed for an abuse of discretion. See In re Eldorado Canyon Props., LLC, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014). Here, however, the bankruptcy court dismissed the chapter 7 petition because it was not duly authorized by a properly constituted board of directors. Whether a corporate agent had the requisite authority to file a bankruptcy petition on the corporation's behalf is a legal question which is reviewed de novo. See Keenihan v. Heritage Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994); Squire Ct. Partners Ltd. P'ship v. Centerline Credit Enhanced Partners LP Series J (In re Squire Ct. Partners Ltd. P'ship), 574 B.R. 701, 705 (E.D. Ark. 2017). If the corporate agent lacked authority to file a bankruptcy petition, the court has no discretion and must dismiss the

petition. Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945)

The Trustee argues that the bankruptcy court's determination that the bankruptcy filing was unauthorized was based on an erroneous factual finding. We review the court's factual findings for clear error. See Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 117 (1st Cir. 2016) ("In the aftermath of a bench trial, we review the [trial] court's factual findings for clear error.") (citation omitted). Under the clearly erroneous standard, factual findings will be set aside "only if, on the entire evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been committed." Id. (citation and internal quotation marks omitted). "[I]f there are a couple of plausible ways to view the evidence, the judge's preference for one over the other cannot be clear error." Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 45 (1st Cir. 2013) (citation omitted); see also Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

An order denying a motion for reconsideration is reviewed for abuse of discretion. Rodriguez Camacho v. Doral Fin. Corp. (In re Rodriguez Camacho), 361 B.R. 294, 299 (B.A.P. 1st Cir. 2007). Typically, a bankruptcy court's decision on whether to award compensation to a chapter 7 trustee or the trustee's counsel is also reviewed for abuse of discretion. See Michel v. Beard (In re Beard), 45 F.3d 113, 118 (6th Cir. 1995) (stating that "the statutory framework allows the courts a rather broad measure of discretion to allow 'reasonable compensation' to a Chapter 7 ... bankruptcy trustee") (citing 11 U.S.C. §§ 105(a), 326(a), 330(a)); Daikin Mia. Overseas, Inc. v. Lee, Schulte, Murphy & Coe, P.A. (In re Daikin Mia. Overseas, Inc.), 868 F.2d 1201, 1208 (11th Cir. 1989) ("The determination of attorneys' fees in a bankruptcy proceeding is normally left to the sound discretion of the bankruptcy judge unless the bankruptcy judge abuses his discretion.") (citation omitted). We may set aside a bankruptcy court's discretionary ruling if the court "relie[d] upon an improper factor, neglect[ed] a factor entitled to substantial weight, or consider[ed] the correct mix of factors but ma[de] a clear error of judgment in weighing them." Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015) (quoting Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013)).

**DISCUSSION**

**I. The Bankruptcy Court Did Not Err in Dismissing the Chapter 7 Petition**

**A. Dismissal of Chapter 7 Petition for Lack of Corporate Authority**

Section 707(a) provides that the bankruptcy court "may" dismiss a chapter 7 case "for cause." See 11 U.S.C. § 707(a). The Bankruptcy Code does not define "cause," but courts have held that "[c]ause for dismissal exists where a business entity lacks authority to file a bankruptcy petition." In re Or. Homes, LLC, No. 13-33349, 2014 WL 4794861, at *2 (Bankr. N.D. Ohio Sept. 25, 2014) (citing, among others, Price, 324 U.S. at 106, 65 S.Ct. 513); see also In re Innocenti, LLC, No. 15-30690 HLB, 2016 WL 3483228, at *3 (Bankr. N.D. Cal. June 20, 2016). Although the bankruptcy court typically has discretion to determine whether cause exists to dismiss a chapter 7 petition, see Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 57 (2d Cir. 2018), "if the [bankruptcy court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." Price, 324 U.S. at 106, 65 S.Ct. 513; see also In re Real Homes, LLC, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.") (citations omitted). "The burden of demonstrating cause for dismissal for lack of authority to file is on the movant." In re Curare Lab. LLC, 642 B.R. 787, 802 (Bankr. W.D. Ky. 2022) (citation and internal quotation marks omitted); see also In re Quad-C Funding LLC, 496 B.R. 135, 142 (Bankr. S.D.N.Y. 2013) (holding that party seeking dismissal for lack of authority to file the petition bears the burden of proof).

**B. Massachusetts Law and the Club's Bylaws**

**\*9** State law typically governs a corporation's authority to file a bankruptcy petition. See Hager v. Gibson, 188 B.R. 194, 197 (E.D. Va. 1995) ("If the corporation is incorporated under state law, then the ... court must look to state law to decide whether the authority to file bankruptcy existed."), aff'd, 108 F.3d 35 (4th Cir. 1997); see also Thompson v. Daluise (In re Wet-Jet Int'l, Inc.), 235 B.R. 142, 148 (Bankr. D. Mass. 1999) ("The source of a corporation's authority to file a bankruptcy petition is found in state law, not in the Bankruptcy Code.") (citation omitted). Here, the bankruptcy court concluded that

72 Bankr.Ct.Dec. 166

Chapter 180 of the Massachusetts General Laws ("Chapter 180") applies to the Club, "since the stated purpose of the [Club] corresponds to the purposes defined in Chapter 180, § 4(a), (f), and (i) (namely, the [Club] was formed for any civic, educational, charitable, benevolent purposes, athletic purposes, and for the establishment and maintenance of places for reading rooms, libraries or social meetings)." Neither party challenges that determination and, based on the record before us, we discern no error.

Chapter 180 does not specifically address who has the authority to file a bankruptcy case on behalf of a corporation subject to its provisions. Sections 6A and 17 of Chapter 180, however, grant a corporation the power to determine the duties and powers of the officers and directors through its bylaws. See Mass. Gen. Laws ch. 180, § 6A (providing that "[a] corporation may prescribe by its by-laws the manner in which and the officers and agents by whom its purposes may be accomplished") and § 17 (providing that "[t]he by-laws shall contain clear and distinct provisions relative to ... the titles, duties, powers and tenure of the officers of the corporation and their election and removal").

There is no dispute that the Club is governed by its original bylaws, which were enacted when the Club was formed in 1927.[10] Article IV, § 2 of the Club's bylaws, entitled "Directors," provides, in relevant part:

> *The Board of Directors shall transact all business of the Club and may exercise all powers of the corporation except such as are conferred by the law or by these by-laws upon the stockholders.* It shall make rules and regulations to govern its own meetings, it may fill vacancies, choose standing and special committees of its own number *for facilitating the work and welfare of the Club.*
>
> ....
>
> One-third Directors of the Board shall constitute a quorum at any meeting of the Board.

(emphasis added).

[10] Although there was some testimony at trial suggesting that the original 1927 bylaws may have been amended, there is no evidence in the record as to the nature of any such amendments (other than an amendment prohibiting more than one family member from serving on the Board) or when or how they were made. The record reflects that the bankruptcy court considered the 1927 bylaws to be controlling and no challenges to that determination have been made in this appeal. Moreover, both parties agreed at oral argument that the Club is governed by the 1927 bylaws. Therefore, we also consider the 1927 bylaws to be the controlling document for the Club.

While the bylaws do not explicitly reference the filing of a bankruptcy petition or explicitly confer authority for the filing of such petitions, the act of filing a bankruptcy petition may properly be viewed as an act "facilitating the work and welfare of the Club" within the meaning of the bylaws, to the extent that bankruptcy would promote the proverbial "fresh start" of the Club. See In re Wolf, 739 F. App'x 165, 169 (3d Cir. 2018) ("Bankruptcy allows individuals and corporations to recover from difficult circumstances, and provides a fresh start to those who need it."). Additionally, as the Massachusetts bankruptcy court has recognized, "[s]tatutes with similar language [authorizing the board of directors to conduct the business of the corporation] have been held to authorize the board of directors to file a petition in bankruptcy." In re N2N Com., Inc., 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (quoting In re Arkco Props., Inc., 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997)). Further, the Club's bylaws do not explicitly restrict the authority of the Board to file a bankruptcy petition and there is no authority in the bylaws that would permit anyone, other than the Board of Directors, to authorize the filing of a bankruptcy petition. Therefore, the validity of the filing of the Club's chapter 7 petition was "fully dependent" on whether the Resolution authorizing that filing was made by a "duly elected, properly constituted Board of Directors." See In re Wet-Jet Int'l, Inc., 235 B.R. at 148 (stating that where only the board of directors has authority to file a bankruptcy petition, the "validity" of a bankruptcy filing is "fully dependent" on whether the filing was authorized by a "duly elected, properly constituted Board of Directors").

**\*10** To determine whether the Resolution was signed by a "duly elected, properly constituted Board of Directors," we again turn to Massachusetts law and the Club's bylaws. Section 6A of Chapter 180 provides that a "corporation may by its by-laws determine ... the tenure of office of the directors and officers and the manner of their selection and removal[.]" Mass. Gen. Laws ch. 180, § 6A. Article V, § 1 of the Club's bylaws requires the Club to hold an annual meeting of its stockholders, and Article VI, § 1, which outlines the "order of business" to be conducted at the annual meetings, includes the "[e]lection of directors and other officers" as an agenda item. Article IV, § 1, entitled "Officers," further provides:

> The officers of this Club shall be a Board of not less than five (5) and not more than fifteen (15) directors, a President, a Vice-President, a Treasurer, [a] Clerk, and

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 9

a Financial Secretary, all of whom shall belong to the Board of Directors.

All the above officers shall be chosen by ballot at the annual meeting, with the exception of the President and the Vice-President, who shall be chosen by the Directors at the first meeting of the Board.

All officers shall hold office for one year and until their successors are chosen and qualified.

The bankruptcy court interpreted these provisions to mean there must be at least five and no more than fifteen members of the Board of Directors—which automatically include the president, vice president, treasurer, clerk, and financial secretary—and all "officers ... and other Board directors" must be "chosen by vote" at the annual meeting. In re Polish-Am. Citizens Club Inc. 642 B.R. at 207. The bankruptcy court's interpretation of the Club's bylaws has not been disputed.

The bankruptcy court ultimately concluded that only the four officers who were elected by ballot at the 2020 annual meeting (Dorothy Wojtczak as president, Carl Schreiber as vice president, Joe Martino as treasurer, and Ron Schwalm as financial secretary) were valid members of the Board under the Club's bylaws and that the remaining purported directors "were not properly elected prior to the adjournment of the annual meeting as required by the by-laws." Id. Specifically, it found, based on the testimony of June Massee, Matthew Roman, Kevin Juchno and Marian Zielinski, that:

[A]lthough an election of officers was done by ballot at the 2020 meeting, after the officers were elected but before the remaining Board directors were chosen, Wojtczak announced that the meeting was adjourned. At that time many people left. After the adjournment of the meeting, approximately 30 people remained. Someone realized that the remaining Board directors had not yet been elected. At that point, Wojtczak essentially nominated several people to be directors, they agreed, and no one disagreed.

Id. The bankruptcy court then ruled that, because the bylaws require the Board to have at least five members, and only the four officers were properly elected, there was not a properly constituted Board and the Club's bankruptcy case was unauthorized. Id.

**C. No Reversible Error**

The Trustee's sole argument on appeal with respect to the dismissal of the Club's petition is that the bankruptcy court made a clearly erroneous finding that the 2020 annual meeting "was adjourned prior to the election of the directors." Underlying the Trustee's argument is an assumption that the bankruptcy court's determination as to the validity of the so-called "election" of directors was based solely on *when* the meeting was adjourned and not the manner in which the "election" was conducted. This assumption ignores the import of the bankruptcy court's determination that the directors "were not properly elected" under the Club's bylaws. When considering Massachusetts law and the Club's bylaws, the bankruptcy court concluded that the bylaws required all officers *and other Board members* "to be chosen by vote" at the annual meeting, a determination which has not been challenged on appeal. The court found, however, that only four officers were elected by ballot at the 2020 annual meeting, and the remaining directors were simply selected by Ms. Wojtczak without a formal ballot or vote. Therefore, the bankruptcy court's conclusion regarding the validity of the Resolution was based both on *when* the meeting was adjourned and on the manner in which the remaining directors were selected.

**\*11** There was much testimony at trial to support the bankruptcy court's finding that the directors were not properly elected by formal vote or ballot before the adjournment of the 2020 annual meeting as required by the bylaws. June Massee testified that after the officers and trustees were elected, the meeting was "adjourned," and no Board of Directors had been elected before the adjournment. Her testimony was corroborated by at least two shareholders—Kevin Juchno and Matthew Roman—both of whom testified that no Board members were elected before the meeting was adjourned and that, after the majority of shareholders had left, Dorothy Wojtczak simply named people to serve on the Board from those remaining. There were also several other shareholders, including Marian Zielinski and Rachel Ilnicki, who did not expressly state that the meeting had been adjourned, but did say that after the officers were elected, most of the shareholders left, and Ms. Wojtczak then selected the Board members without a formal vote.

Even Dorothy Wojtczak testified that the directors were not elected by formal vote or ballot at the 2020 annual meeting, stating: "There is no official vote for board of directors. It is a ... hand vote, or nomination of ... the board, on the floor."[11] Although Ms. Wojtczak insisted it had been many years since the Club's directors were formally elected by ballot, there was nothing in the record from which the court could have concluded that the provisions of the Club's bylaws requiring an "election" of directors had been altered or amended by shareholder vote at an annual meeting as required under Article VIII, § 3 of

the Club's bylaws.[12] Further, even if the bylaws could be amended by a course of conduct over time—as the Trustee seems to suggest without offering any legal support—several longstanding shareholders testified that before Ms. Wojtczak became president in 2019, the Club did, in fact, conduct a formal election process for the Board members, but that process was no longer followed under Ms. Wojtczak's leadership.

[11]   Ms. Wojtczak's testimony was consistent with the minutes of the Club's annual meeting in 2019, which reflected tallied votes for the officers but indicated the directors were selected by "hand vote" at that meeting.

[12]   Article VIII, § 3 of the bylaws provides: "The[se] by-laws may be changed, amended or new ones added at any meeting of the stockholders regularly called, notified and held, as provided by these by-laws, by affirmative vote of two-thirds of all stockholders present and voting."

In rendering its decision, the bankruptcy court "credit[ed] the testimony of June Massee and Matthew Roman, as corroborated by the testimony of other witnesses" such as Kevin Juchno and Marian Zielinski. The Trustee, however, argues that these witnesses lacked credibility and contends the bankruptcy court should have relied instead on conflicting testimony from Dorothy Wojtczak, Alice Pasterczyk, and Anton Zamachaj, who testified that the 2020 annual meeting was not adjourned until after the Board members were selected. Because of this conflicting evidence, the Trustee argues, the court's determination that the 2020 annual meeting was adjourned prior to the election of the directors "was clearly erroneous and should be reversed ...."

The Trustee, however, has not demonstrated that the bankruptcy court's view of the evidence was implausible and, therefore, clearly erroneous. See Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504. The bankruptcy court conducted a trial over the course of three days, heard testimony from 13 witnesses, and admitted 11 exhibits into evidence. It had the opportunity to observe the demeanor of the witnesses, assess their credibility, and weigh all the testimonial and documentary evidence presented. Without question, there was conflicting evidence supporting the Trustee's allegations that the directors were selected *before* the 2020 annual meeting was adjourned. But the existence of conflicting evidence, standing alone, is insufficient to establish that the bankruptcy court's finding was clearly erroneous. See Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 727 F.3d 58, 65 (1st Cir.

2013) (declining to find clear error where there was sufficient evidence to support two plausible but conflicting findings). Further, there was ample evidence in the record to support a finding that even if the directors were selected *before* the meeting adjourned, they were not elected by formal ballot as required by the bylaws. Thus, the bankruptcy court's finding that the directors were not "properly elected" before the meeting was adjourned was "plausible" based on the entire record before the bankruptcy court and we could not overturn it even if we might have weighed the evidence differently. Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 505-06 (B.A.P. 1st Cir. 2005). Affording the bankruptcy court the "due deference" to which it is entitled when weighing the evidence, see Fed. R. Civ. P. 52(a)(6), we are not left with "the definite and firm conviction that a mistake has been committed." Nevor, 842 F.3d at 117.

**\*12** Having concluded that the bankruptcy court's factual findings were not clearly erroneous, it necessarily follows that the bankruptcy court did not err in ruling that the Club's bankruptcy filing was not authorized by a duly elected Board of Directors and in dismissing the unauthorized petition. See Price, 324 U.S. at 106, 65 S.Ct. 513.

**II. The Bankruptcy Court Did Not Abuse its Discretion in Denying Reconsideration of the Dismissal Order**

We turn, now, to the bankruptcy court's denial of the Trustee's request for reconsideration of the Dismissal Order under Rules 59(e) and 60(b). On appeal, the Trustee reiterates his assertion in the Motion to Reconsider that he had not been given "fair notice" of the Appellees' allegation that the 2020 annual meeting was adjourned prior to the election of directors and argues that the Motion to Reconsider "should have been allowed" so that he could provide "new evidence" regarding this issue. For the reasons discussed below, we conclude that the Trustee has not satisfied his burden of demonstrating that the bankruptcy court's denial of relief under Rules 59(e) and 60(b) constituted an abuse of discretion.

It is well settled in the First Circuit that to prevail under Rule 59(e), the moving party "must either clearly establish a 'manifest error of law or fact' or must present 'newly discovered evidence.' " La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 804 (B.A.P. 1st Cir. 2021) (citation omitted); see also Aybar v. Crispin-Reyes, 118

72 Bankr.Ct.Dec. 166

F.3d 10, 16 (1st Cir. 1997). "The filing of a Rule 59(e) motion," however, "does not afford the movant an opportunity to introduce evidence that was previously available." Mancini v. City of Providence, 909 F.3d 32, 48 (1st Cir. 2018) (citation omitted). Therefore, "[a] party asking a court to reconsider its judgment on this basis must show 'that [it] could not in the exercise of reasonable diligence have obtained [the] new evidence earlier.' " City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 36 (1st Cir. 2022) (citation omitted). This means that "when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Rule 59(e) motion." In re Ortiz Arroyo, 544 B.R. 751, 757 (Bankr. D.P.R. 2015) (citation omitted).

The court may also relieve a party from a final judgment under Rule 60(b)(2) if the party presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). As with Rule 59(e), "a party who seeks relief from a judgment based on newly discovered evidence [under Rule 60(b)(2)] must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings." Fisher v. Kadant, Inc., 589 F.3d 505, 513 (1st Cir. 2009) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19-20 (1st Cir. 2002)).

The Trustee has not offered any cogent reason why he could not, in the exercise of due diligence, have obtained the evidence contained in the six affidavits before the entry of the Dismissal Order or why he could not have anticipated the premise underlying the Motion to Dismiss. It is clear from both the joint pretrial memorandum and the Appellees' opening statement at trial that the Appellees were challenging the validity of the election of the Board of Directors. As the Club's bylaws require that the Board members be elected by ballot at the annual meeting—a determination by the bankruptcy court that the Trustee does not dispute on appeal—the Trustee could have, and should have, produced any and all evidence to refute the evidence proffered by the Appellees to establish that the Board members were not validly elected during the 2020 annual meeting. The Trustee did not argue, or demonstrate, that the "new" evidence he was seeking to proffer through the affidavits was "previously unavailable" to him and that he could not have discovered the evidence earlier "in the exercise of due diligence."

**\*13** In fact, the Trustee admitted in connection with the Motion to Reconsider that the six affiants " 'could' have testified at the prior hearings" on the Motion to Dismiss, but that, "[o]ut of respect for the Court's time," he would not present "numerous witnesses [to] testify to the same effect ...." Therefore, by his own admission, the Trustee's failure to introduce the evidence earlier was a strategic litigation choice, not the result of unavailability of evidence. And, in any event, courts have held that new evidence "which at best is merely cumulative" of previously submitted evidence or which merely "corroborat[es]" prior allegations does not satisfy Rule 60(b)(2). See Giroux v. Fed. Nat'l Mortg. Ass'n, 810 F.3d 103, 107 (1st Cir. 2016) (citation and internal quotation marks omitted).

We conclude, therefore, that the bankruptcy court did not abuse its discretion in rejecting the Trustee's belated effort to produce additional evidence regarding the adjournment of the 2020 annual meeting after the entry of the Dismissal Order by way of a Motion to Reconsider.

### III. The Bankruptcy Court Did Not Abuse its Discretion by Declining to Condition Dismissal of the Bankruptcy Case on the Payment of Administrative Expenses Incurred by the Trustee and his Counsel

The Trustee's final argument on appeal is that the bankruptcy court should have "conditioned" the dismissal of the bankruptcy petition on the Club's payment of at least a portion of the "administrative expenses" incurred by the Trustee and his counsel in the administration of the estate. As in his initial request in the proceedings below, the Trustee does not cite any statutory authority to support his argument, except for a brief reference to § 105. When requesting payment of administrative expenses, however, he repeatedly references the number of hours he and his counsel had collectively spent administering the estate, marketing the Property for sale to maximize payments to creditors, and defending the Appellees' motions. Under § 503(b)(2), both the Trustee's compensation and his counsel's fees and expenses incurred in the administration of the bankruptcy estate would constitute "administrative expenses," if allowed. See 11 U.S.C. § 503(b)(2) (providing that "compensation and reimbursement awarded under [§] 330" are "allowed administrative expenses"); Law v. Siegel, 571 U.S. 415, 422, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (recognizing that reasonable attorney's fees incurred by the trustee "were indubitably an administrative expense"); Boldt v. Crake (In re Riverside-Linden Inv. Co.), 945 F.2d 320, 324 (9th Cir. 1991) (recognizing allowed trustee's fees are administrative expenses under § 503(b)(2)). Therefore, we

72 Bankr.Ct.Dec. 166

construe the Trustee's request for payment of administrative expenses as one for allowance and payment of both his compensation and his counsel's fees and expenses.

### A. Statutory Provisions Governing Compensation for Chapter 7 Trustees and Professionals

Requests for payment of compensation and expenses by the estate are governed by § 330, which provides that the bankruptcy court "may award to a trustee ... or any professional persons employed under § 327 ... reasonable compensation for actual, necessary services rendered." See 11 U.S.C. § 330(a). Compensation is reasonable if, among other things, "the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a [bankruptcy] case ...." See 11 U.S.C. § 330(a)(3)(C). Consequently, the fact that a case "was ultimately dismissed does not [automatically] render the trustee's [or his counsel's] efforts unnecessary."[13] In re Jankowski, 382 B.R. at 545.

[13] Although dismissal does not render a trustee's efforts unnecessary, § 326(a) limits a chapter 7 trustee's "reasonable" compensation under § 330 (but not that of his counsel) "to a percentage of the funds disbursed by the trustee." Checks Cashed for Less v. Kipperman, No. 11cv2383 BTM( ), 2012 WL 2723027, at *3 (S.D. Cal. July 9, 2012). Thus, if, as here, a chapter 7 case is dismissed before the trustee distributes any funds, "the plain language of § 326(a) directs that ... the trustee's maximum compensation ... [is] $0." In re Mingledorff, No. 12-41543-EJC, 2015 WL 3897374, at *5 (Bankr. S.D. Ga. June 23, 2015). Some courts, however, eschew a strict reading of § 326(a) and award compensation to chapter 7 trustees in unadministered cases based on equitable considerations. See, e.g., In re Jankowski, 382 B.R. at 542-45 (applying quantum meruit principles to award compensation to chapter 7 trustee for carrying out his duties before case was dismissed). Here, however, the bankruptcy court did not reach the question of whether the Trustee and his counsel were entitled to compensation under § 330 or whether the Trustee's compensation was limited by § 326(a) as they failed to follow the mandatory procedural requirements for requesting such relief, as discussed below.

**\*14** Court approval is mandatory for all awards of compensation and fees from the estate, and trustees and professionals seeking such compensation are *required* to submit fee applications setting forth a detailed explanation of the services rendered, time expended, expenses incurred, and the amounts requested. See Fed. R. Bankr. P. 2016(a) (providing that entities seeking compensation "shall" file applications which are subject to a noticed hearing prior to allowance or payment of fees); In re Par 5 Prop. Invs., LLC, No. 21-22404-A-11 MF-2, 2022 Bankr. LEXIS 3045, at *21 (Bankr. E.D. Cal. Oct. 26, 2022) (recognizing that § 330 is implemented by Bankruptcy Rule 2016, which requires professionals to file applications for compensation); see also Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.), 741 F.3d 269, 276 n.9 (1st Cir. 2014) (recognizing, in a different statutory context, that "shall" is a "mandatory verb").

### B. Review of the Bankruptcy Court's Ruling

Here, although the Trustee and his counsel sought to "condition" dismissal on the Club's payment of "administrative expenses" they incurred in the administration of the estate, they did so through an oral request made at the end of trial, and not through a formal motion or application. They never filed fee applications detailing the compensation requested as required by Bankruptcy Rule 2016(a) or requested additional time to do so. Nor did the Trustee at any point cite § 330 as the legal basis for his requested relief. The bankruptcy court having denied his request for attorney's fees and costs as sanctions against the Appellees due, in part, to his failure to cite any supporting legal authority, the Trustee was clearly on notice that any further request for payment of attorney's fees and expenses should identify the relevant legal basis for the requested relief. The Trustee also failed to make clear, in his oral request at the close of trial, that he was not seeking payment of attorney's fees and expenses *from the Appellees*—as asserted in the Sanctions Motion—but rather compensation *from the estate*.

The bankruptcy court appears to have misconstrued the Trustee's verbal request at the end of trial as a *renewed* request to impose monetary sanctions *against the Appellees* in the amount of his attorney's fees and expenses incurred in defending against their various motions, as set forth in his initial Sanctions Motion, rather than a new request for compensation under § 330. This interpretation of the Trustee's request is at odds with the record. We conclude, however, that the mischaracterization is harmless, as the court had no obligation (or authority) to consider an oral request for compensation in the absence of a formal fee application as mandated by Bankruptcy Rule 2016(a). Nor was the bankruptcy court required to delay the dismissal of the case to afford the Trustee and his counsel an opportunity

to file fee applications so that the court could evaluate whether they were entitled to compensation, in whole or part, under §§ 330 and 326, or to remind them of their obligation to do so. The bankruptcy court has "a rather broad measure of discretion" when considering whether to award compensation to a chapter 7 trustee or the trustee's professionals. See In re Beard, 45 F.3d at 118. Under these circumstances, we conclude that the bankruptcy court did not abuse its discretion in denying the Trustee's request to condition the dismissal upon payment of administrative expenses incurred by the Trustee and his counsel.[14]

[14] Despite this conclusion, we recognize that it may have been possible for the Trustee and/or his counsel to file fee applications with the bankruptcy court despite the dismissal of the bankruptcy case. We do not opine, however, on the bankruptcy court's jurisdiction to consider any such fee application in the absence of a specific retention of jurisdiction in the Dismissal Order, whether an award of compensation and expenses would have been warranted under §§ 330 and 326(a), or whether the Trustee and his counsel would have been able to recover any allowed compensation and expenses from the Club.

### IV. Appellees' Request for Attorney's Fees and Costs for a Frivolous Appeal

**\*15** In their brief, the Appellees ask us to award them attorney's fees and costs, "based on the Trustee filing a frivolous appeal, without reasonable legal or factual grounds to do so." Although the Appellees do not cite any legal authority for this relief, we construe their request as one for damages and costs for a frivolous appeal under Bankruptcy Rule 8020 (providing that if the "BAP determines that an appeal is frivolous, it may, *after a separately filed motion ...,* award just damages and single

or double costs to the appellee") (emphasis added). Bankruptcy Rule 8020 expressly requires that sanctions be requested by a "separately filed motion." See id. This requirement "is strict, and failure to comply results in the denial of the request for sanctions." Reyes Rivera v. Bracetty Matos (In re Reyes Rivera), 494 B.R. 101, 107 (B.A.P. 1st Cir. 2013); see also Sirikanjanachai v. Town of Hingham (In re Sirikanjanachai), 628 B.R. 562, 571 (B.A.P. 1st Cir. 2021) (denying appellee's request for costs under Bankruptcy Rule 8020 due to its "failure to comply with the rule's separate motion requirement"). As the Appellees did not file a separate motion, their request for attorney's fees and costs is **DENIED**.[15]

[15] The Appellees may still seek reimbursement of their costs in the bankruptcy court under Bankruptcy Rule 8021. See Fed. R. Bankr. P. 8021 (providing that certain costs of appeal are taxable in bankruptcy court against appellant if judgment is affirmed); see also In re Sirikanjanachai, 628 B.R. at 571 n.8.

### CONCLUSION

For the reasons set forth above, we **AFFIRM** the Dismissal Order, including the bankruptcy court's denial of the Trustee's request to condition the dismissal on payment of administrative expenses incurred by the Trustee and his counsel. We also **AFFIRM** the Order Denying Reconsideration. The Appellees' request for reimbursement of attorney's fees and costs is **DENIED**.

### All Citations

Slip Copy, 2023 WL 4259266, 72 Bankr.Ct.Dec. 166

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

LIST OF EXHIBITS

Pursuant to Rule 5 of Appendix 8 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Massachusetts, the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby lists the exhibits that are filed separately in conjunction with the Town's Motion to Dismiss Bankruptcy Case:

| Exhibit | Description | No. of Pages (with cover sheet) |
|---------|-------------|----------------------------------|
| A | Quitclaim Deed | 5 |
| B | MA Certificate of Registration | 4 |
| C | LLC Agreement | 20 |
| D | MA Certificate of Withdrawal | 3 |
| E | BBAS Resignation | 2 |
| F | DE Administrative Dissolution | 2 |
| G | Babcock & Brown Withdrawal | 3 |
| H | VI Gazette, excerpted | 4 |
| I | Search Report | 3 |
| J | Instrument of Taking | 2 |
| K | Tax Foreclosure Complaint | 3 |
| L | Tax Foreclosure Judgment | 2 |
| M | DE Certificate of Revival | 3 |
| N | Dec. 6, 2022 Email | 2 |
| O | Smart Investors MD Documents | 9 |

| P | Akouete LinkedIn | 3 |
|---|---|---|
| Q | Akouete Exs. 2 and 3 | 3 |
| R | MA Application for Registration | 5 |
| S | Staples.com Printout | 3 |
| T | M. Morris Email | 4 |
| U | Jan. 13, 2023 Email | 2 |
| V | Bill of Sale | 3 |
| W | Motion to Vacate | 13 |
| X | In re Blaustein Docket | 5 |
| Y | Waiver of Notice and Consent to Conservatorship | 3 |
| Z | Affidavit of Peter L. Blaustein | 3 |
| AA | Jan. 7, 2023 Email | 2 |
| BB | iMessage Screenshots | 11 |
| CC | 2022 LLC Agreement | 14 |
| DD | Opposition without Exhibits | 40 |
| EE | Land Court Docket | 11 |
| FF | Sept. 15, 2022 Text | 2 |
| GG | CA Decision | 3 |
| HH | June 29, 2023 Email | 3 |
| II | Dec. 1, 2023 Email Chain | 5 |
| JJ | Dec. 16, 2023 Email | 2 |
| KK | Dec. 26, 2023 Email Chain | 4 |

899234/WBOR/0049

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

LIST OF EXHIBITS

     Pursuant to Rule 5 of Appendix 8 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Massachusetts, the Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby lists the exhibits that are filed separately in conjunction with the Town's Motion to Dismiss Bankruptcy Case:

| Exhibit | Description | No. of Pages (with cover sheet) |
|---|---|---|
| A | Quitclaim Deed | 5 |
| B | MA Certificate of Registration | 4 |
| C | LLC Agreement | 20 |
| D | MA Certificate of Withdrawal | 3 |
| E | BBAS Resignation | 2 |
| F | DE Administrative Dissolution | 2 |
| G | Babcock & Brown Withdrawal | 3 |
| H | VI Gazette, excerpted | 4 |
| I | Search Report | 3 |
| J | Instrument of Taking | 2 |
| K | Tax Foreclosure Complaint | 3 |
| L | Tax Foreclosure Judgment | 2 |
| M | DE Certificate of Revival | 3 |
| N | Dec. 6, 2022 Email | 2 |
| O | Smart Investors MD Documents | 9 |

| P | Akouete LinkedIn | 3 |
|---|---|---|
| Q | Akouete Exs. 2 and 3 | 3 |
| R | MA Application for Registration | 5 |
| S | Staples.com Printout | 3 |
| T | M. Morris Email | 4 |
| U | Jan. 13, 2023 Email | 2 |
| V | Bill of Sale | 3 |
| W | Motion to Vacate | 13 |
| X | In re Blaustein Docket | 5 |
| Y | Waiver of Notice and Consent to Conservatorship | 3 |
| Z | Affidavit of Peter L. Blaustein | 3 |
| AA | Jan. 7, 2023 Email | 2 |
| BB | iMessage Screenshots | 11 |
| CC | 2022 LLC Agreement | 14 |
| DD | Opposition without Exhibits | 40 |
| EE | Land Court Docket | 11 |
| FF | Sept. 15, 2022 Text | 2 |
| GG | CA Decision | 3 |
| HH | June 29, 2023 Email | 3 |
| II | Dec. 1, 2023 Email Chain | 5 |
| JJ | Dec. 16, 2023 Email | 2 |
| KK | Dec. 26, 2023 Email Chain | 4 |

899234/WBOR/0049

# Exhibit A

129560

QUITCLAIM DEED

LESLIE S. CAREY, as she is Trustee of NORTHSIDE REALTY TRUST under Declaration of Trust dated January 14, 1994 duly recorded with the Worcester District Registry of Deeds on January 14, 1994 in Book 15975, Page 213 having an address c/o New England Management and Realty Corporation, 55 New York Avenue, Framingham, Massachusetts 01701

for consideration paid and in consideration of Nine Million and One Hundred Fifty One Thousand Four Hundred and Forty Nine Dollars and 00/100 ($9,151,449.00)

grants to WESTBOROUGH SPE LLC, a Delaware Limited Liability Company with a principal place of business at c/o Babcock & Brown Administrative Services, Inc., Two Harrison Street, San Francisco, CA 94105

with Quitclaim Covenants, the following described property:

that certain parcel of land, together with any buildings and improvements thereon, located at 231 Turnpike Road, in the Town of Westborough, Worcester County, Massachusetts, which are shown as Lot #1 on a plan entitled "Plan of Land in Westborough, Worcester County,...", dated April 11, 1997, prepared by Beals and Thomas, Inc. recorded with the Worcester District Registry of Deeds, Plan Book 714, Plan 77 and being more particularly bounded and described according to said plan on Exhibit A attached hereto and made a part hereof.

Said Lot 1 contains 1,277,351 square feet more or less, or 29.324 acres, more or less, according to said plan.

Said Premises are conveyed subject to and together with the benefit of easements, restrictions and other matters of record, insofar as in force and applicable.

Without limitation, said premises are conveyed together with the following:

(i) rights and easements set forth in that certain Declaration of Reciprocal Covenants, Easements and Restriction dated April 9, 1997 and recorded with said Deeds in Book 18745, Page 313 as being for the benefit of said Lot 1 and subject to the rights, easements and restrictions set forth therein as the same affect Lot 1, which are reserved for the benefit of Lots 2 and 3 as shown on said Plan, and (ii) Utility Easement "A", Utility Easement "B" and Utility Easement "D" all as shown on Plan Book 710, Plan 91.

**GOULD & ETTENBERG, P.C.**
370 Main Street
Worcester, MA 01608
Tel: (508) 752-6733

GUARANTY ABSTRACT CO
VoL 151 Pg 98

Said Premises are conveyed subject to real estate taxes due the Town of Westborough for the 1998 tax fiscal year, which the Grantee hereof assumes and agrees to pay by the acceptance and recording of this deed.

The undersigned hereby certify that (i) Northside Realty Trust is in full force and effect and has not been amended, rescinded or terminated, (ii) that the undersigned is a trustee of the trust and (iii) that the undersigned has been directed by all of the beneficiaries of said trust to execute, seal, acknowledge and deliver this deed.

Grantor intends to convey and does hereby convey a portion of the premises conveyed to Grantor by Deed of Stanley Miller, Trustee dated April 13, 1994 recorded with the Worcester District Registry of Deeds Book 16210, Page 372.

EXECUTED as a sealed instrument the 31st day of October, 1997.

Leslie S. Carey, Trustee of
Northside Realty Trust,
and not individually

THE COMMONWEALTH OF MASSACHUSETTS

Suffolk
~~Middlesex~~, ss.                                     October 31, 1997

Then personally appeared before me the above named Leslie S. Carey as she is Trustee of Northside Realty Trust and acknowledged the foregoing instrument to be his free act and deed, before me,

Kenneth J. Miskiewicz - Notary Public
My Commission Expires: 5/19/2000
KENNETH J. MISKIEWICZ

DEEDS REG 20
WORCESTER

11/21/97

TAX · 41730.84
CASH  41730.84

5032A140 14:02
  EXCISE TAX ··

EXHIBIT A

## METES AND BOUNDS DESCRIPTION

Lot 1
Westborough, Massachusetts
W-45.30

A certain parcel of land in the Commonwealth of Massachusetts, County of Worcester, Town of Westborough situated on the northerly side of Boston Worcester Turnpike, Route 9, and shown as Lot 1 on a plan entitled "Plan of Land in Westborough, Worcester County, ...", dated April 11, 1997, prepared by Beals and Thomas, Inc.  More particularly bounded and described as follows:

Beginning at a point in the east bank of the Assabet River at Boston Worcester Turnpike, thence running;

N 30 58 22 W 1123.34 feet to a point, said course being by land now or formerly of Brown Realty Trust, thence turning and running;

N 86 07 42 E 1022.91 feet to a point, thence turning and running;

N 03 52 18 W 501.72 feet to a point, thence turning and running;

N 86 07 42 E 627.83 feet to a point, thence turning and running;

N 58 30 39 E 523.55 feet to a point, said four courses being by land now or formerly of P.V. Davis Construction Company, Inc., thence turning and running;

S 18 32 25 E 9.51 feet to a Worcester County Highway bound, thence turning and running;

S 17 00 25 E 69.96 feet to a point, thence turning and running;

S 15 35 25 E 79.20 feet to a Worcester County Highway bound, thence turning and running;

S 11 50 25 E 63.36 feet to a point, thence turning and running;

S 09 15 25 E 67.32 feet to a Worcester County Highway bound point, thence turning and running;

S 06 35 25 E 66.00 feet to a point, thence turning and running;

S 06 25 25 E 74.57 feet to a Worcester County Highway bound, thence turning and running;

S 05 48 30 E 73.06 feet to a Worcester County Highway bound, thence turning and running;

S 04 09 29 E 190.38 feet to a point, thence turning and running;

BEALS AND THOMAS, INC.

Metes and Bounds Description
Lot 1
Westborough, Massachusetts
W-45.30
Page 2 of 2

Southerly        by a curve to the right having a radius of 1000.00 feet and a length of 215.67 feet to a point, said last 10 courses being by the westerly line of Milk Street, thence turning and running;

S 52 34 33 W  376.10 feet to a point, thence turning and running;

S 86 07 42 W  209 07 feet to a point, thence turning and running;

N 49 56 56 W  33.00 feet to a point, thence turning and running;

Northwesterly by a curve to the left having a radius of 335.00 feet and a length of 76.89 feet to a point, thence turning and running;

S 86 07 42 W  213.61 feet to a point, thence turning and running;

N 03 47 36 W  319.22 feet to a point, thence turning and running;

S 86 07 42 W  337.66 feet to a point, thence turning and running;

S 03 52 18 E  112.44 feet to a point, thence turning and running;

S 86 07 42 W  437.86 feet to a point, said last nine courses being by Lot 2, thence turning and running;

S 03 52 18 E  925.00 feet to a point, said course being in part by Lot 2 and in part by land now or formerly of Lillian E. Brown Life Estate, thence turning and running;

S 86 07 42 W  148.31 feet to the point of beginning, said course being by the northerly line of Boston Worcester Turnpike.

Containing 1,277,351 square feet more or less, or 29.324 acres, more or less.

Subject to any and all existing rights and easements of record.

RJB/vmb/004530MB007

The plan referenced herein is recorded herewith as Plan Book 714 Plan 77 .

BEALS AND THOMAS, INC.

ATTEST: WORC. Anthony J. Vigliotti, Register

# Exhibit B

APPLICATION FOR REGISTRATION
OF
WESTBOROUGH SPE LLC
(A Foreign Limited Liability Company)

Pursuant to the provisions of the Massachusetts Limited Liability Company Act (the "Act"), the undersigned hereby certifies as follows:

1.     <u>Federal Taxpayer Identification Number</u>. The federal taxpayer identification number of the LLC has been applied for.

2.     <u>Name of the Limited Liability Company</u>. The name of the limited liability company (the "LLC") is Westborough SPE LLC.

3.     <u>State of Formation</u>. The LLC was formed under the laws of the State of Delaware on October 22, 1997.

4.     <u>Business of the LLC</u>. The general character of the business the LLC proposes to do in the Commonwealth is to acquire, own, develop, construct, rehabilitate, improve, maintain, finance, manage, operate, lease, sell, convey, assign, mortgage and otherwise deal with real estate, and to own interests in incorporated and unincorporated entities engaged in any of the foregoing, and to carry on any related or unrelated lawful business, trade, purpose or activity.

5.     <u>Business Address of Principal Office</u>. The business address of the principal office of the LLC is c/o Babcock & Brown Administrative Services, Inc., 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

6.     <u>Manager(s)</u>. The name and address of the manager of the LLC is Babcock & Brown Administrative Services, Inc., 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

7.     <u>Business Address in the Commonwealth</u>. The business address of the principal office of the LLC in the Commonwealth is c/o Corporation Service Company, 84 State Street, 5th Floor, Boston, MA 02109.

8.     <u>Agent for Service of Process</u>. The name and address of the resident agent for service of process for the LLC is Corporation Service Company, 84 State Street, 5th Floor, Boston, MA 02109.

9.     <u>Date of Dissolution</u>. The LLC is to have no specific date of dissolution.

10.     <u>Execution of Documents Relating to Real Property</u>. F. Jan Blaustein, President of Babcock & Brown Administrative Services, Inc., is authorized to execute, acknowledge, deliver and record any recordable instrument on behalf of the LLC purporting to affect an interest in real property, whether to be recorded with a registry of deeds or a district office of the Land Court.

IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true this **2ª** day of **October**, 1997.

Babcock & Brown Administrative Services, Inc.

F. Jan Blaustein, Its President

GS1- 128909-1

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED
UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING
AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE
SHOW, AS OF THE TWENTY-FOURTH DAY OF OCTOBER, A.D. 1997.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE
NOT BEEN ASSESSED TO DATE.



Edward J. Freel, Secretary of State

2811561   8300

971359389

AUTHENTICATION:    8720352

DATE:    10-24-97

46053

593094

# COMMONWEALTH OF MASSACHUSETTS

## FOREIGN LIMITED LIABILITY COMPANY
### (General Laws, Chapter 156C)

Filed this ____25th____ day of ____Oct____

19 _57_

FEE PAID
$500.00
OCT 29 1997

CASHIERS
SECRETARY'S OFFICE

*William Francis Galvin*

## WILLIAM FRANCIS GALVIN
## SECRETARY OF THE COMMONWEALTH

CT

Michelle

472-4450

97 OCT 29 PM 3: 00
CORPORATION DIVISION

SECRETARY OF THE COMMONWEALTH

# Exhibit C

797

798

WESTBOROUGH SPE LLC

LIMITED LIABILITY COMPANY AGREEMENT

October 22, 1997

GS2- 136229-1

# LIMITED LIABILITY COMPANY AGREEMENT

## TABLE OF CONTENTS

| | |
|---|---|
| RECITALS | 1 |
| FORMATION, MANAGEMENT, PURPOSES, NAME | 1 |
| CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS; AND LIABILITY OF MEMBERS | 6 |
| RETURN OF CONTRIBUTIONS | 7 |
| SHARE OF DISTRIBUTIONS, PROFITS, LOSSES AND OTHER ITEMS | 7 |
| SUBSTITUTION AND ASSIGNMENT OF A MEMBER'S INTEREST | 9 |
| BOOKS AND RECORDS; BANK ACCOUNTS | 9 |
| OTHER BUSINESS | 10 |
| DISSOLUTION AND CONTINUATION OF THE COMPANY | 10 |
| MISCELLANEOUS | 11 |

GS2- 1362291

# WESTBOROUGH SPE LLC

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (the "Agreement"), dated as of the 22nd day of October, 1997, is by and between MIGNONETTE INVESTMENTS LIMITED, a British Virgin Islands entity organized under the BVI International Business Companies Act (the "Member"), and BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., a Delaware corporation, as the Manager.

## R E C I T A L S:

A. The Member formed a limited liability company (the "Company") pursuant to and in accordance with the Delaware Limited Liability Company Act (the "LLC Act") by the filing on the date hereof of a Certificate of Formation with the Secretary of State of the State of Delaware for the purposes described therein and herein.

B. The Member and Babcock & Brown Administrative Services, Inc. desire to enter into this Agreement to provide for, among other things, the management of the business and affairs of the Company, the distribution of monies and allocation of profits and losses as to the Member, and the respective rights, interests, obligations and duties of the Member and of the Manager to each other and to the Company and its assets, business, liabilities and obligations.

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, the parties hereto hereby agree as follows:

## OPERATING AGREEMENT

1. Formation, Management, Purposes, Name

(a) The rights and liabilities of the parties hereto shall be determined pursuant to the LLC Act and this Agreement. To the extent that the rights or obligations of the parties are different by reason of any provision of this Agreement than they would be in the absence of any such provision, or even if this Agreement is inconsistent with the LLC Act, this Agreement shall control, except to the extent the LLC Act provides that the applicable provisions thereof as to any

GS2- 136229-1

such matter may not be modified by a limited liability company's members, or ... hereof shall be applicable to the extent, if any, required by the LLC Act.

The name of the Member and its address are set forth on Schedule A attached hereto. If any additional Members and/or substitute Members are hereinafter added as Members in the Company their names and respective addresses shall be added by amendment of said Schedule A.

The registered office and the registered agent of the Company in the State of Delaware shall be as set forth in the Certificate, as such office and agent may be changed, and as the Certificate may, as a consequence thereof, be amended from time to time by the Manager.

(b)     The name of the limited liability company formed hereby is Westborough SPE LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Manager deems appropriate or advisable. The Manager shall file, or shall cause to be filed, the Certificate of Formation and any fictitious name certificates, foreign state registrations and similar filings, and any amendments to any thereof, that the Manager considers necessary, appropriate or advisable, including, without limitation, an Application for Registration as a foreign limited liability company in the Commonwealth of Massachusetts.

(c)     The Company is formed for the sole purpose of, and the nature of the sole business to be conducted by the Company is, to acquire, own, construct, lease, operate, maintain and, consistent with its investment purposes, to sell, exchange, convey and otherwise transfer, and otherwise to deal with, in any manner deemed desirable, the real property generally described in Schedule C attached hereto, and any other real property and any personal property, tangible or intangible, appurtenant to any thereof or hereafter acquired as necessary or convenient in connection with such real property, and to own interests in and be a member and/or manager, partner, general or limited, venturer, stockholder or other holder of interests in any entity holding direct or indirect interests in any such assets or engaged in any such activity, and in connection with all of the above, the Company may engage in any lawful act or activity for which limited liability companies may be formed under the LLC Act and in any and all activities necessary, advisable, convenient or incidental thereto. The purposes of the Company may not be broadened without the unanimous consent of all the Members and the Manager, nor may it be broadened if such would violate or cause a default under any agreement to which the Company is a party or by which it is bound.

GS2- 136229-1

-2-

801

In furtherance of the conduct of the purposes described above, the Company shall have the power and authority to do any and all lawful activities, business or actions which an Company may take under the LLC Act and, except as limited by the LLC Act, any activities, business or actions which a business corporation or a limited partnership would be entitled to engage in or take pursuant to the applicable laws of the State of Delaware, or under other applicable law, so long as such powers are necessary or convenient to the conduct, promotion or attainment of the business, trade, purposes or activities of the Company.

(d)     Babcock & Brown Administrative Services Inc. is hereby designated as the Manager of the Company.  One or more Managers may be designated and the number of Managers may be determined at any time by "Consent of the Members"; provided, however, that any such Consent providing for the Company to have more than one Manager shall only be made by amendment of this Agreement and shall also indicate those circumstances in which each Manager will be authorized to act alone and those circumstances in which more than one or all of the Managers will be required to act on behalf of the Company.  A Manager may be removed by Consent of the Members at any time and for any reason or for no reason.

(e)     Except as otherwise specifically provided in this Section 1 and in Section 8 of this Agreement:  (i) the overall management and control of the business and affairs of the Company, and the sole and exclusive authority to make all decisions and take all actions as to the business and affairs of the Company, shall be vested in the Manager, who shall have the sole power and authority to make any decision and to take any action and to exercise any power on behalf of the Company which the Company has the right, power and authority to take or otherwise engage in; and (ii) the Members shall have no voting rights, consent or approval over or as to any such matters.

Notwithstanding the above, the Manager may not file, on behalf of the Company, a petition in bankruptcy or for reorganization or insolvency or any other similar matter without the unanimous consent of the Members.

The Manager shall devote, and shall cause its members, partners, officers, directors and employees, if any, to devote such time to the affairs of the Company as such Manager, in its sole discretion, determines is necessary for performance by the Manager of its duties, provided no such persons shall be required to devote full time to such affairs.  The Manager shall have the right and power to manage, operate, and control the Company, and to do all things and take

-3-

GS2- 136229-1

802

"Consent of the Members" shall mean action of the holders of more than two-thirds of the Percentage Interests of all the Members, as such Percentage Interests are initially set forth on Schedule A hereto and as such Percentage Interests may be changed pursuant to the other provisions of this Agreement.

No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members.

(f)     No Member, acting in its capacity as a Member (but nothing herein limiting any Member's capacity as a Manager if a Member is also a Manager), shall have any authority, power or privilege to act on behalf of or to bind the Company.

(g)     The signature of the Manager or, if more than one Manager any time, of any Manager on any agreement, contract, instrument or other document shall be sufficient to bind the Company and any other Manager in respect thereof, shall be deemed the action of the Company and of any other Manager, and shall conclusively evidence the authority of such executing Manager and the Company with respect thereto, and no third party need look to any other evidence or require joinder or consent of any other party to bind the Company or to evidence such Manager's authority.

Without in any way amending, modifying, expanding or limiting the foregoing provisions of this paragraph (g), an individual or individuals may be authorized in writing by the Manager to execute any documents to be filed with the Secretary of State of the Commonwealth of Massachusetts and/or authorized to execute, acknowledge, deliver and record any recordable instruments on behalf of the Company purporting to effect an interest in real property, whether to be recorded with the registry of deeds or district office of the Land Court, and in the event of any such authorization the Application for Registration for the Company in the Commonwealth of Massachusetts shall include or, as appropriate, be amended to set forth such authorization.

Any Manager may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity. Such writing may fully authorize such other Manager or such other person or entity, acting alone or with others, all as

-4-

may be provided in such written delegation, without requirement of any other authorization of the delegating Manager to take any action or function and to do anything and everything which the delegating Manager may be authorized to take or do hereunder (including, without limitation, executing checks, drafts, promissory notes, mortgages, deeds of trust, leases, deeds, easements, and contracts of any nature whatsoever) and may delegate such authority generally or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager.

(h)    The Manager shall be entitled to reimbursement from the Company for all expenses incurred by such Manager in managing and conducting the business and affairs of the Company. The Manager shall determine which expenses, if any, are allocable to the Company in a manner which is fair and reasonable to the Manager(s) and the Company, and if such allocation is made in good faith it shall be conclusive in the absence of manifest error.

(i)    Any Manager, or the sole Manager if there is only one, may cause the Company to enter into one or more loans, agreements, leases, contracts or other arrangements for the furnishing to or by the Company of money, goods, services or space with any Member, Manager or an affiliate thereof, and may pay compensation thereunder for such goods, services or space, provided in each case the terms of any such arrangements are at least as advantageous to the Company as those which would be available to the Company under similar arrangements between unrelated parties, and if the determination of such terms is made in good faith it shall be conclusive in the absence of manifest error.

(j)    In the performance of its duties and obligations hereunder, and in the exercise of its powers hereunder, the Manager shall act in good faith. The Company shall indemnify, defend and hold harmless the Manager, each Member, any person appointed to act for or on behalf of the Company pursuant to Section 1(g), and each such person's officers, directors, partners, members, shareholders, employees, and agents, and the employees, officers and agents of the Company (all indemnified persons being referred to as "Indemnified Persons" for purposes of this Section 1(j)), from any liability, loss, or damage incurred by an Indemnified Person by reason of any act performed or omitted to be performed by such Indemnified Person in connection with the business of the Company, and

-5-

GS2- 136229-1

804

from liabilities or obligations of the Company imposed on such person by virtue of such person's position with or relationship to the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss, or damage; provided, however, that, if the liability, loss, damage, or claim arises out of any action or inaction of an Indemnified Person, indemnification under this Section 1(j) shall be available only if (i) the Indemnified Person, at the time of such action or inaction, determined, in good faith, that its course of conduct was consistent with this Agreement or otherwise in the best interests of the Company, and (ii) the action or inaction did not constitute fraud, gross negligence or willful misconduct by the Indemnified Person. Any indemnification under this Section 1(j) shall be recoverable only from the assets of the Company and not from any assets of any of the Members.

2.    <u>Capital Contributions; Capital Accounts; and Liability of Members</u>.

(a)    The Member has contributed in cash to the capital of the Company the amount set forth opposite such Member's name on Schedule B hereto.

Additional capital contributions may be made (but are not required to be made) by the Member, or any of them if more than one, if necessary or desirable to enable the Company to meet its obligations.

Any third party may rely on a certificate or other statement from the Manager as to Member or Members of the Company and the respective Percentage Interests of the Members at any time. All capital contributions by the Member(s) shall be reflected on the books and records of the Company.

Upon approval of the Manager, any Member may make a loan or loans to the Company on such terms as the Manager may determine. No such loan shall be considered a contribution to the capital of the Company.

(b)    No Member shall be obligated to contribute any additional capital or make any loans to the Company. No interest or preferred return shall accrue on any contributions to the capital of the Company. No Member shall have any rights or priority over any other Members as to contributions or as to distributions or compensation by way of income, except as may otherwise be specifically provided for elsewhere in this Agreement.

(c)    If there is more than one Member at any time and the Company has not elected to be taxed as a corporation under the Internal Revenue Code, a separate capital account ("Capital Account") shall be established for each Member,

-6-

GS2- 136229-1

805

Case 6:33-40789 Doc 17 Filed 05/06/26 Entered 05/23/24 13:39 04 Desc Exhibit C Dbt Operating Agreement Page 306 of 000 20

consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital made by such Member to the Company, and such Member's share of the net profits, and items thereof, of the Company, and there shall be charged against each Member's Capital Account the amount of all distributions to such Members, and such Member's share of the net losses, and items thereof, of the Company.

(d)     The liability of any Member for the losses, debts and obligations of the Company shall be limited to its capital contributions then made but not then previously repaid to or withdrawn by them in accordance with the terms of this Agreement.  No Member, in its capacity as a Member or as Manager, shall have any liability to restore any negative balance in its Capital Account.  In no event shall any Member, in its capacity as a Member, nor any Manager, whether or not also a Member, be personally liable for any judgments, debts, liabilities or obligations of the Company.

(e)     The Member(s), unanimously if more than one, shall have the right at any time to require the Manager to elect to treat the Company as a corporation under the Internal Revenue Code.

3.     Return of Contributions.  No Member shall have the right to withdraw or to be repaid any capital contributed by it or to receive any property or other payment in respect of its interest in the Company, including, without limitation, as a result of the withdrawal or resignation of such Member from the Company, except as specifically provided in this Agreement.

4.     Share of Distributions, Profits, Losses and Other Items.

(a)     All cash available for distribution shall be distributed to the Member, or among the Members if there is more than one Member, first to return any unrepaid capital contributions, pro-rata among the Members with such amounts in proportion to each respective Member's unrepaid capital contribution, and then among the Members according to their respective Percentage Interests. Distributions to the Members shall be made at such times and in such amounts as shall be reasonably determined by the Manager.  Except as provided in the next paragraph, all distributions to Members shall be made in cash.

If the Manager elects, with the Consent of the Members, to distribute any assets of the Company in kind, such assets shall be distributed on the basis of

-7-

GS2- 136229-1

806

(b)    If and so long as the Company is taxed as a partnership, allocations of income, profit, gain and loss, shall be made as follows: (i) items of net income and gain shall be allocated among the Members in the manner necessary to increase each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a), and (ii) items of net loss and deduction shall be allocated among the Members in the manner necessary to reduce each Member's Capital Account to an amount equal to the amount of cash such Member would be entitled to receive pursuant to Section 4(a) if an amount of cash equal to the net positive Capital Account balances (after such allocation) were distributed to the Members in the order and priority specified in Section 4(a).

Notwithstanding the foregoing, all allocations of items that cannot have economic effect (except "partner nonrecourse deductions") shall be allocated to the Members in accordance with the Members' interests in the Company, which, unless otherwise required by Code Section 704(b) and the Regulations promulgated thereunder, shall be in proportion to the Percentage Interests of the Members, and all "partner nonrecourse deductions" and "partner minimum gain" shall be allocated in accordance with the provisions of Treasury Regulations Section 1.704-2.

All items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, shall be allocated to and among the Members in the same percentages in which the Members share in net profits and net losses.

(c)    Except as otherwise specifically provided herein, all tax elections shall be made by the Manager as it shall deem appropriate.

5.    Substitution and Assignment of a Member's Interest. A Member may sell, assign, give, pledge, hypothecate, encumber or otherwise transfer (including, without limitation, any assignment or transfer by operation of law or by order of court) all or any part of such Member's interest in the Company, without the consent or approval of any other Member or of the Manager.

-8-

GS2- 136229-1

807

6.    Books and Records; Bank Accounts.

(a)    The Manager shall keep or cause to be kept complete and accurate books and records of the Company using such method as the Manager may elect. Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the LLC Act, at an office of the Company for examination and copying by any Member, or its duly authorized representative, at its reasonable request and at its expense during ordinary business hours.  Any Member may, at any time, at its own expense, cause an audit or review of the Company books to be made by a certified public accountant of its own selection.

A current list of the full name and last known address of each Member and of the Manager, a copy of this Agreement, any amendments thereto and the Certificate of Formation, executed copies of all powers of attorney, if any, pursuant to which this Agreement, any amendment, or the Certificate of Formation has been executed, copies of the Company's financial statements and federal, state and local income tax returns and reports, if any, for the five most recent years, shall be maintained at the registered office of the Company required by the LLC Act.

If the Company is taxed as a partnership, then on or before the due date (including extensions) of the federal income tax return of the Company for each fiscal year of the Company, the Manager shall cause each Member to be furnished with copies of the Company's federal income tax return and Schedule K-1's for each respective Member for the fiscal year then ended.

If the Company is taxed as a corporation, the Manager shall timely (including extensions) file all requisite federal, state and local tax returns.

(b)    Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by the Manager, and withdrawals shall be made and other activity conducted on such signature or signatures as shall be designated by the Manager.

(c)    The fiscal year of the Company shall end on December 31 of each year.

7.    Other Business.  The Members, the Manager and any affiliates of any of them may engage in and possess interests in other business ventures and

GS2- 136229-1

-9-

808

investment opportunities of every kind and description, independently or with others, including serving as managers and general partners of other limited liability companies and partnerships with purposes similar to those of, and/or in competition with, the Company. Neither the Company nor any other Member or Manager shall have any rights in or to such ventures or opportunities or the income or profits therefrom.

8.  Dissolution and Continuation of the Company.

(a)  The Company shall be dissolved and its affairs wound up upon:

(i)  The election, made in writing by the Manager, with the Consent of the Members, to dissolve the Company at any time which is 90 days or more after notice of such election to all Members;

(ii)  The sale, disposition or abandonment of all or substantially all of the assets of the Company; or

(iii)  The entry of a decree of judicial dissolution under the LLC Act.

The Company shall have no specific date of dissolution.

(b)  Upon the dissolution of the Company for any reason, the Manager shall commence to wind up the affairs of the Company and to liquidate its assets. After the sale or other disposition of all of the assets of the Company to be disposed of in the liquidation, and gains and losses thereon shall be calculated. If the Company is taxed as a partnership, such gains and losses shall be allocated in the manner described in Section 4 hereof, and applied to the Capital Accounts of each Member to whom the allocations are made pursuant to the other provisions hereof.

(c)  Following the payment of all debts and liabilities of the Company to persons other than the Members and the payment of all expenses of liquidation, and subject to the reserves which the Manager, or other liquidating party, may determine is reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company, the proceeds of the liquidation and any other funds shall be applied to the payment of any debts and liabilities to the Members, if any, and then shall be distributed to the Member(s) (i) in accordance with Section 4(a)

-10-

GS2- 136229-1

if the Company is taxed as a corporation, and (ii) in accordance with each Member's respective Capital Account(s) as of the date of such distribution, after giving effect to all contributions, distributions, and allocations for all periods, if the Company is taxed as a partnership.

(d)     The assets of the Company shall be a Member's source of all distributions with respect to the Company, the return of its capital contributions thereto and its share of profits and losses thereof, and each such Member shall have no recourse therefor (upon dissolution or otherwise) against any other Members.

(e)     Upon the completion of the liquidation of the Company and the distribution of all Company's funds, the Company shall terminate, and the Manager shall, or if none, the Members may authorize one or more Members to, execute and record such articles of dissolution for the Company and any and all other documents necessary to effectuate the dissolution and termination of the Company.

9.     Miscellaneous.

(a)     Subject to the restrictions on transfers set forth herein, the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns; and each and every successor-in-interest to any Member, whether such successor acquires such interest by way of inheritance, gift, purchase, foreclosure or any other method, and the Members shall hold such interest subject to all of the terms and provisions of this Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of any Member (including any Member acting in his capacity as a creditor of the Company).

(b)     No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager.

(c)     This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware, notwithstanding any choice of law rules to the contrary.

GS2- 136229-1

(d)     This Agreement may be executed in any number of counterparts, all of which together shall for all purposes constitute one Agreement, binding on all the Members and the Manager notwithstanding that all Members and the Manager have not signed the same counterpart.

(e)     Any and all notices under this Agreement shall be effective (i) on the fourth business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (ii) on the second business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery.  All such notices in order to be effective shall be addressed, if to the Company at its registered office under the LLC Act, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified.

(f)     As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires.  The word "person shall mean a natural person, a trust of any nature, or any incorporated or unincorporated entity or association of any type or form.

(g)     If any provisions of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it si held invalid, shall not be affected hereby.

(h)     Words such as "herein", "hereinafter", "hereof", "hereto", "hereby", and "hereunder", when used in reference to the Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

(i)     This Agreement, including the Certificate of Formation, which is hereby incorporated herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

GS2- 136229-1

811

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
        Authorized Signatory


MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.


By: _____

Its _____


-13-

GS2- 136229-1

812

813

IN WITNESS WHEREOF, the Members have executed this Limited Liability Company Agreement of Westborough SPE LLC as of the date first above written.

MEMBER:

MIGNONETTE INVESTMENTS LIMITED

By: _____
    Authorized Signatory

       For F.M.C. LIMITED
       CORPORATE DIRECTORS

MANAGER:

BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC.

By: _____

    Its _____

SCHEDULE A
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

### MEMBER

| NAME AND ADDRESSES OF MEMBER | PERCENTAGE INTEREST |
|---|---|
| Mignonette Investments Limited | 100% |

-A-1-

814

815

SCHEDULE B
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

MEMBER

| MEMBER | INITIAL CASH CAPITAL CONTRIBUTION |
|--------|-----------------------------------|
| Mignonette Investments Limited | $10,000 |

-B-1-

GS2- 1362291

816

SCHEDULE C
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
WESTBOROUGH SPE LLC

PROPERTY DESCRIPTION

GS2- 1362291

# Exhibit D

NOV. 20. 2007 3:20PM    MA SOC    Filing Number: 200701080710    Date: 11/20/2007 3:19 PM    NO. 7795    P. 2
CSC161753253189

CERTIFICATE OF WITHDRAWAL
OF A FOREIGN LIMITED LIABILITY COMPANY

(Under Section 53 of the Massachusetts Limited Liability Company Act)

To the State Secretary
Commonwealth of Massachusetts

Federal Employer
Identification Number
94-3286768

It is hereby certified that:

1. The name of the limited liability company (the "company") is Westborough SPE LLC.

2. The jurisdiction where the company was organized is Delaware.

3. The address of the principal office of the company, wherever located, is 2 Harrison Street, 6th Floor, San Francisco, CA 94105.

4. The name and the business address of the registered agent of the company in the Commonwealth of Massachusetts is 84 State Street Boston MA 02109.

5. The company is withdrawing because it is not doing business in the Commonwealth of Massachusetts.

6. All fees and taxes owed by the company have been paid or provided for.

IN WITNESS WHEREOF AND UNDER THE PENALTIES OF PERJURY, the undersigned does hereby affirm and swear, that to the undersigned's knowledge and belief the foregoing statements are true as of this 19th day of November 2007.

_____
Dyann Blaine, Authorized Person

MA LL F-CERTIFICATE OF WITHDRAWAL 08/05 1 (MALLWITH)

818

MA SOC   Filing Number: 200701080710   Date: 11/20/2007 3:19 PM
Case 2:05-cv-00726-K   Document 26-2   Entered 01/23/2013   Page 319 of 1000   Exhibit
D - MA Certificate of Withdrawal Page 3 of 3

819

THE COMMONWEALTH OF MASSACHUSETTS


I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

November 20, 2007 3:19 PM




WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*



232335-1-0

Case 23-40709 Doc 172-8 Filed 06/18/24 Entered 03/23/24 13:39:45 Desc Exhibit E DBA Resignation Page 1 of 2

# Exhibit E



## BABCOCK & BROWN

Babcock & Brown LP
One Letterman Drive · Bldg D · San Francisco CA 94129 USA
T +1 415 512 1515 · F +1 415 267 1500 · www.babcockbrown.com

## NOTICE OF RESIGNATION

April 30, 2011

Westborough SPE LLC
c/o Equity Trust
31/F, The Center
99 Queen's Road Central, Hong Kong

Attention: Serena Kwok, General Manager, Trade Support

RE: Westborough SPE LLC (the "Company")

Dear Ms. Kwok:

We refer to the Company's Limited Liability Company Agreement dated as of October 22, 1997 (the "LLC Agreement") between Mignonette Investments Limited (the "Member") and Babcock & Brown Administrative Services LLC, as successor to Babcock & Brown Administrative Services, Inc. (the "Manager").

Pursuant to Section 1(e) of the LLC Agreement and Section 18-602 of the Delaware Limited Liability Company Act, this letter serves as notice to the Member of the Manager's intent to resign as Manager of the Company effective as of May 30, 2011.

Sincerely,

Babcock & Brown Administrative
Services LLC

By: Walter Horst
Title: Treasurer

# Exhibit F

## State Of Delaware

Entity Details

11/21/2022 12:18:17AM

File Number: 2811561      Incorporation Date / Formation Date: 10/22/1997

Entity Name: WESTBOROUGH SPE LLC

Entity Kind: Limited Liability Company      Entity Type: General

Residency: Domestic      State: DELAWARE

Status: Cancelled, Failure to Pay Tax      Status Date: 6/1/2014

### Registered Agent Information

Name: CORPORATION SERVICE COMPANY

Address: 251 LITTLE FALLS DRIVE

City: WILMINGTON      Country:

State: DE      Postal Code: 19808

Phone: 302-636-5401

### Tax Information

Last AnnualReport Filed: 0      Tax Due: $ 1593

Annual Tax Assessment: $250      Total Authorized Shares:

### Filing History (Last 5 Filings)

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|-----|-------------|-------------|------------------------|-------------|---------------------------|
| 1 | L.P./L.L.C. Restoration | 3 | 7/13/1999 | 9:00 AM | 7/13/1999 |
| 2 | LLC | 1 | 10/22/1997 | 9:00 AM | 10/22/1997 |

823

# Exhibit G

APR. 24. 2008 12:52PM    MA SOC  Filing Number: 200824355430    Date: 04/24/2008 11:52 AM  NO. 1855   P. 2
CSC01730078314

**F**
**FPC**

# The Commonwealth of Massachusetts
### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED    **Foreign Certificate of Withdrawal**    FORM MUST BE TYPED
(General Laws Chapter 156D, Section 15.20; 950 CMR 113.51)

(1) Exact name of corporation: Babcock & Brown Administrative Services, Inc.

(2) Jurisdiction of Incorporation: Delaware

Date of Incorporation: _____    **10/23/1997**
_____
(month, day, year)

(3) The corporation is not transacting business in the commonwealth.

(4) The corporation surrenders its authority to transact business in the commonwealth.

(5) The corporation revokes the authority of its registered agent to accept service on its behalf.

(6) The Secretary of the Commonwealth is hereby appointed as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in the commonwealth.

(7) The corporation's mailing address to which the Division may mail a copy of any process served on it:

2 Harrison Street, 6th Floor, San Francisco, CA 94105
_____
(number, street, city or town, state, zip code)

(8) The corporation shall notify the Division in the future of any changes to the above mailing address by filing a certificate of amendment.

(9) The corporation hereby certifies that all taxes known to the corporation to be due the commonwealth have been paid or provided for.

(10) This certificate is effective at the time and on the date approved by the Division, unless a later effective date not more than 90 days from the date of filing is specified: _____

Signed by: _____
(signature of authorized individual)

☐ Chairman of the board of directors,

☐ President,

☑ Other officer,

☐ Court-appointed fiduciary,

on this 17th _____ day of April _____, 2008 _____.

R.C.

Case 1:09-cv-01656-RMC Document 26-2 Filed 04/24/2009 Page 465 of 639 Main Document G - Babcock & Brown Page 826 of 1900 Page 3 of 3

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

April 24, 2008 11:52 AM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

251483-1-0

# Exhibit H

827



# THE VIRGIN ISLANDS
## Official Gazette

*Published by Authority*

*Vol. XLIV, No. 53*     ROAD TOWN, TORTOLA     *FRIDAY 27 AUGUST 2010*

## *E X T R A O R D I N A R Y*

# CONTENTS

### GOVERNMENT

**Supplements**

Statutory Instruments . . . . . . . . . . . . . . . . . None

**Statutory Appointments** . . . . . . . . . . . . . . None

**Court Notices** . . . . . . . . . . . . . . . . . . . . . . . None

**Land Notices** . . . . . . . . . . . . . . . . . . . . . . . None

**Public Service Notices** . . . . . . . . . . . . . . . . None

**Departmental Notices** . . . . . . . . . . . . . . . . None

### STATUTORY

Trademark . . . . . . . . . . . . . . . . . . . . . . . . None

Patent . . . . . . . . . . . . . . . . . . . . . . . . None

Company . . . . . . . . . . . . . . . . . . . . . . . 2690

Other . . . . . . . . . . . . . . . . . . . . . . . . . . None

### COMMERCIAL

Liquidation

Appointment of Liquidator . . . . . . . . . None

Dissolution Notices . . . . . . . . . . . . . . . None

Other . . . . . . . . . . . . . . . . . . . . . . . . . . None

Insurance . . . . . . . . . . . . . . . . . . . . . . . None

Other . . . . . . . . . . . . . . . . . . . . . . . . . . None

## USING THE GAZETTE

The Virgin Islands Official Gazette is the official newspaper of the Government of the Virgin Islands. It is published weekly on Thursdays. Extraordinary editions are published as and when required.

Closing time for lodging notices is 12 noon on Monday in the week prior to publication. Early deadlines apply in cases of public holidays. Please refer to the schedule of deadlines at the back of the Gazette for specific deadlines. Late notices are accepted at the publisher's discretion only.

Notices must be accompanied by payment and written instructions. All dates, proper names, and signatures must be shown clearly, and contact details for the person responsible for the notice must be included.

Notices will be returned unpublished if not submitted in accordance with these requirements.

The *Official Gazette* reserves the right to apply its in-house style, and to reject notices which do not meet its requirements.

Kindly address notices and other correspondence to:

**The Virgin Islands Official Gazette**
**Passport Office**
**33 Administration Drive**
**Road Town, Tortola VG1110**
**Virgin Islands**
**Telephone: (284) 468-3701 ext. 2523 or 2521**
**Facsimile: (284) 468-1000**
**Email: gazette@gov.vg**
**Website: www.bvigazette.org**

# STATUTORY

## Company Notices

**12302**   In accordance with Section 213(5) of the BVI Business Companies Act, 2004 following is a list of Companies stricken from the Register of Companies on 31st May, 2010;

| Company No. | Company Name |
| --- | --- |
| 85 | BAKA LTD. |
| 1010 | GIBRALTAR MANAGEMENT COMPANY LIMITED |
| 1166 | GOLDEN RAY INTERNATIONAL LIMITED |
| 1251 | PAN ASIAN LIMITED |
| 1996 | BOND INTERNATIONAL LIMITED |
| 2075 | ANTHYCCO INTERNATIONAL LTD. |
| 2080 | AKKEL HOLDINGS LIMITED |
| 2166 | BALTIC LIMITED |
| 2249 | INDUSTRIAL PACKAGING SYSTEMS LIMITED |
| 2366 | KITTIHAWK SECURITIES LIMITED |
| 2465 | OCEANIC COMPLEX, INC. |
| 2505 | EMPIRE INVESTMENTS LTD. |
| 2634 | REPTON HOLDINGS LTD. |
| 3560 | IEE INVESTMENTS LIMITED |
| 3761 | GALADRIEL LTD. |
| 3967 | BYRON PROPERTIES LIMITED |
| 4248 | ESHLER HOLDINGS LIMITED |
| 4284 | MAYQUEEN INVESTMENTS SA INC. |
| 4588 | MARJORAM LIMITED |
| 8262 | AYZO SOUTH EAST ASIA HOLDINGS INC. |
| 8263 | FLIXIR COMPANY LIMITED |
| 8336 | BEAUREGARD S.A. |
| 8400 | BROCKHAM FINANCE INC. |
| 8418 | A.F.A.I. CORPORATION |
| 8438 | INDEPENDENT FEATURE FILMS LIMITED |
| 8525 | INTERNATIONAL MINES CORPORATION |
| 8529 | BARTOK HOLDINGS, INC. |
| 8648 | BAKER INVESTMENT LTD. |
| 8870 | WARDOUR CONSULTANTS LIMITED |
| 8978 | WILDLIFE PROPERTIES CORPORATION |
| 9023 | GREAT SUCCESS LIMITED |
| 9061 | Marvellous Profit (PTC) Limited |
| 9192 | VIRGIN INTERNATIONAL SPORTS PROMOTIONS INC. |

| 243013 | ROGLO INVESTMENTS CORPORATION |
| 243042 | DROMEDA FINANCE LTD. |
| 243085 | ANDORINHA COMPANY LIMITED |
| 243325 | GLORY DRAGON PROFITS LIMITED |
| 243338 | VENTURE DRAGON LIMITED |
| 243437 | VIANNA DEVELOPMENT LIMITED |
| 243464 | WESTFIELD COMMERCIAL INC. |
| 243484 | NORDIC FINANCE COMPANY SERVICES LIMITED |
| 243487 | MILLION CHINA HOLDINGS LIMITED |
| 243576 | GLOBAL ELECTRONIC DISTRIBUTION COMPANY LIMITED |
| 243600 | COOKIES LTD. |
| 243736 | MIGNONETTE INVESTMENTS LIMITED |
| 243799 | INFINITY HOLDINGS GROUP INC. |
| 243986 | WHIRLIGIG LIMITED |
| 244008 | TRUELEX HOLDINGS LIMITED |
| 244060 | PROFIT UNION LIMITED |
| 244118 | PEACEFUL UNION LIMITED |
| 244157 | TELECOMMUNICATION SERVICE CONSULTING LIMITED |
| 244221 | ATMOSPHERE CORPORATION |
| 244248 | DATA ONE (B.V.I.) CO., LTD. |
| 244273 | CASETEK (B.V.I.) CO., LTD. |
| 244572 | SMART LINK CONSULTANTS LIMITED |
| 244770 | COMMERCIAL INTEREST ENTERPRISES LIMITED |
| 244781 | OCEAN LEISURE ENTERPRISES LIMITED |
| 244782 | OCEAN NAVIGATOR LIMITED |
| 244793 | BOLD CREATIVITY LIMITED |
| 244869 | GARDENGROVE INTERNATIONAL CO. LTD. |
| 244887 | PORTCULLIS INVESTMENT ADVISERS HOLDINGS LTD |
| 244893 | VERMILLION VELVET LIMITED |
| 244928 | SILVER BRIDGE GROUP LIMITED |
| 244950 | BYRON FINANCIAL CORP. |
| 244953 | BLUEFIELD FINANCIAL CORP. |
| 244971 | STARFIELD CONSULTANTS LTD. |
| 245033 | THE DAUFUSKIE COMPANY LIMITED |
| 245042 | GLOBAL STRATEGIC HOLDINGS LIMITED |
| 245168 | JONNIS TRADING LTD. |
| 245218 | BENTWICK INTERNATIONAL LIMITED |
| 245283 | CRANBORNE SERVICES LIMITED |
| 245333 | NORTON INTERNATIONAL INVESTMENT CORPORATION |
| 245334 | WISTOW MANAGEMENT LIMITED |
| 245350 | SHELLBROOK PROPERTIES CORP. |

# Exhibit I



BVI Financial Services Commission, Registry of Corporate Affairs

# Register of Companies Search Report

Print

**Date of Search :** 09/03/2023
This search is accurate as at the Search Date above.

| | |
|---|---|
| **Company Name :** | MIGNONETTE INVESTMENTS LIMITED |
| **Company Number :** | 243736 |
| **Company Type :** | BC Re-registration |

**Date of Incorporation / Registration :** 11/08/1997

**Current Status :**

| | |
|---|---|
| Status Description: | Struck off - Non Pmt A/Fee |
| Status Date: | 02/05/2017 |
| Re-registration Type: | Automatic |
| Re-registration date: | 01/01/2007 |
| Current Registered Agent: | TMF (B.V.I.) LTD. |
| Current Registered Agent Address: | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VIRGIN ISLANDS, BRITISH |
| Current Registered Agent Phone Number: | 284-494-4997 |
| Current Registered Agent Fax Number: | 284-494-4999 |
| Current Registered Office : | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VG1110<br>VIRGIN ISLANDS, BRITISH |
| Telephone: | |
| Agent Fax: | |
| Register of Directors Filed : | Yes |
| First Registered Agent: | TMF Corporate Services (BVI) Limited |
| First Registered Office: | Palm Grove House<br>P.O. Box 438<br>Road Town<br>Tortola<br>VG1110<br>VIRGIN ISLANDS, BRITISH |

**Share/Capital Information:**

| | |
|---|---|
| Authorized Capital: | 50,000.00    United States of America, Dollars |
| Ability to Issue Bearer Shares: | No |

**Previous Names History**

| S.No | Previous Name | Foreign Character Name | Date Range or Cease Date From | To |
|---|---|---|---|---|
| 1 | MIGNONETTE INVESTMENTS LIMITED | | 11/08/1997 | |

**Transaction History**

| S.No | Date | Transaction Number | Description | Status | Eforms/Attachments |
|---|---|---|---|---|---|
| 1 | 11/08/1997 | T970007039 | Application for Incorporation (IBC) | Approved | General Filing |

|   |   |   | | General Filing - General Filing |
|---|---|---|---|---|
| 2 | 23/10/1997 T970007040 | IBC Request for Certificate of Goodstanding/Certified Certificates | Approved | General Filing |
|   |   |   | | General Filing - General Filing |
| 3 | 17/03/2008 T080144830 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 4 | 17/11/2008 T080766540 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 5 | 27/06/2011 T110479651 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 6 | 21/11/2012 T120824356 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 7 | 11/11/2013 T130747395 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 8 | 10/11/2014 T140760598 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 9 | 10/11/2015 T150768924 | Annual Fee Submission (BC) | Approved | Annual Submission |
| 10 | 29/03/2017 T170521455 | Registered Agent intent to Resign | Approved | Registered Agent Intent To Resign |
|   |   |   | | Notice of intention to resign given to the company under section 93(2) |
| 11 | 31/03/2017 T170568523 | Register of Members or Directors | Approved | Register of Directors |

**Certificate History**

| S.No | Transaction No. | Type of Certificate | Date of Filing |
|---|---|---|---|
| 1 | T110479651 | Certificate of Restoration | 27/06/2011 |

**DISCLAIMER:**

Although care has been taken to ensure the accuracy, completeness and reliability of the information provided through the use of this service ("the Information"), neither the Registrar of Corporate Affairs ("the Registrar") nor the Financial Services Commission ("the Commission") assumes any responsibility for the accuracy, completeness and reliability of the Information. This report does not reflect any transactions that may be submitted and not yet registered, or other changes for which the Registrar has not received notice. The user of the Information agrees that the Information is subject to change without notice, and neither the Registrar nor the Commission is responsible for any discrepancies that may result if a transaction is approved for filing after the issuance of this report. Neither the Registrar nor the Commission assumes any responsibility for the consequences of use of the Information, nor for any infringement of third party intellectual property rights which may result from its use. In no event shall the Commission or the Registrar be liable for any direct, indirect, special or incidental damage resulting from, arising out of or in connection with the use of the Information.

Case 24-40709 Doc 97-12 Filed 06/23/26 Entered 06/23/26 13:38:47 Desc Exhibit
J - Document Page 834 Page 100 of 2

# Exhibit J

This instrument must be filed for record or registration within 60 days from its date

STATE TAX FORM 301
Revised 3/2009

G.L. c. 60 §§53 and 54

## COMMONWEALTH OF MASSACHUSETTS
### TOWN OF WESTBOROUGH
### OFFICE OF THE COLLECTOR OF TAXES

I, <u>Robert C. Haley</u>, Collector of Taxes for the <u>Town of Westborough</u>, acting under General Laws Chapter 60, Sections 53 and 54, hereby take for the city/town the real property described below:

### DESCRIPTION OF PROPERTY

PROPERTY: Land and any building(s) thereon     CONTAINING: 29.336 AC (more or less)
LOCATION:  231 Turnpike Road
ASSESSORS: 32-48-0
REGISTRY:  Worcester District Registry of Deeds Book 19369, Page 75

This land is taken because taxes, as defined in Chapter 60, Section 43, assessed on the property to <u>Westborough SPE LLC</u> for the fiscal year <u>2018</u> were not paid within 14 days after a demand for payment was made on <u>Westborough SPE LLC</u> on <u>June 4, 2018</u>. After notice of intention to take the land was given as required by law, they remain unpaid along with interest and incidental expenses and costs to the date of taking as follows:

Fiscal Year 2018 Taxes Remaining Unpaid          $ 106,944.99
Interest to Date of Taking                       $   12,673.18
Incidental Expenses and Costs to Date of Taking  $      10.00
Total for which Land is Taken                    $ 119,628.17

Signature of Collector of Taxes
ROBERT  C.  HALEY

Executed as a sealed instrument on <u>December 28, 2018</u>

Printed/Typed Name of Collector of Taxes

## COMMONWEALTH OF MASSACHUSETTS

Worcester District, ss                                           December 28, 2018

On this <u>28th</u> day of <u>December</u>_____, 2018, before me, the undersigned notary public, personally appeared <u>Robert C. Haley</u>, proved to me through satisfactory evidence of identification, which were <u>MA Drivers License</u>___, and personally known to me, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose, as Collector of Taxes for the City/Town of <u>Westborough</u>.

Signature of Notary Public

My commission expires <u>April 23, 2021</u>

Deborah E. Ledoux
Printed/Typed Name of Notary Public

DEBORAH E. LEDOUX
Notary Public
Commonwealth of Massachusetts
My Commission Expires THIS FORM APPROVED BY THE COMMISSIONER OF REV

TEST WORC. Kathryn A. Toomey, Register



2019 00004568
Bk: 59943 Pg: 371
Page: 1 of 1  01/16/2019 02:16 835 WD

# Exhibit K

## COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
## DEPARTMENT OF THE TRIAL COURT

19 JUL -8 PH 2:00

The undersigned hereby represent(s):

*that*    the land hereinafter described was taken on December 28, 2018 for non-payment of taxes by the Town of Westborough in the County of Worcester by instrument dated December 28, 2018 and recorded on January 16, 2019 at the Worcester District Registry of Deeds in Book 59943, Page 371.

*that*    more than six months from the date of said taking has elapsed and no redemption has been made;

*that*    the proceedings aforesaid have been conducted according to law;

*that*    the instruments were recorded or registered within sixty (60) days from the date of taking;

*that*    the assessed value of said land and building is $5,239,100.00;

*that*    said land is described as a certain parcel of land situated in the Town of Westborough, County of Worcester and said Commonwealth, bounded:

(Description must be same as in tax deed)

PROPERTY:    Land and any building(s) thereon      CONTAINING 29.336 AC (more or less)
LOCATION:    231 Turnpike Road
ASSESSORS:    32-48-0
REGISTRY:    Worcester District Registry of Deeds Book 19369, Page 75

*that*    the following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:

**Westborough SPE, LLC**

Wherefore your plaintiff(s) pray(s) that the rights of all persons entitled to redeem from said proceedings may be foreclosed: that said Court enter a judgment that the title of the plaintiff to said land under said proceedings is absolute and that all rights of redemption are barred; and for such other and further relief as may seem meet and proper to said Court.

Name    _~~Robert Haley~~_    Street   34 West Main Street
     Robert Haley, Treasurer/Collector    City or Town   Westborough, MA 01581

On this _22nd_ day of _May_, 2019 personally appeared before me the within named Robert Haley known to me to be the signer of the foregoing complaint, and made oath that the statements therein contained so far as made of <u>his</u> own knowledge are true and so far as made upon information and belief that <u>his</u> believes them to be true.

Before me: (PRINT) Susan A. Bush
Notary Public: (SIGN) Susan A. Bush
My Commission Expires:   9-9-2022

*(See over)



SUSAN A. BUSH
Notary Public
Commonwealth of Massachusetts
My Commission Expires September 9, 2022

No.

**Complaint To Foreclose**

**Tax Lien**

_____

Examiner

**LET JUDGMENT ISSUE**

_____

Justice

From the Office of

Dawn E. Bloom
Berenson & Bloom
116 Pleasant Street, Suite 340
Easthampton, MA 01027
BBO# 659839

LCP-5-8/88

**NOTE:** *60 days after July 12, 1933
30 days before July 12, 1933

**CAVEAT:** Notice of this complaint should be filed in the local registry upon the proper form (LCN2) as soon as complaint is entered in this office.

838

# Exhibit L



| JUDGMENT IN TAX LIEN CASE | 19 TL 000768 | Commonwealth of Massachusetts Land Court Department of the Trial Court |
|---|---|---|

**CASE NAME**



2022 00008115
Bk: 66983 Pg: 53
Page: 1 of 1  01/21/2022 10:39 AM  WD

Town of Westborough , Plaintiff(s)

v.

Westborough SPE, LLC , Defendant(s)

After consideration by the Court, it is **ADJUDGED** and **ORDERED** that all rights of redemption are forever foreclosed and barred under the following instruments:

| Land Type | Instrument Date | Book Number | Page Number | Document Number | Certificate of Title Number |
|---|---|---|---|---|---|
| Recorded | 12/28/2018 | 59943 | 371 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

This Judgment must be recorded and/or registered by the Plaintiff in the appropriate Registry of Deeds and/or Registration District pursuant to G. L. c. 60, § 75.

By the Court: Deborah J. Patterson

Attest:

A TRUE COPY
ATTEST:

*Deborah J. Patterson*
RECORDER

*Deborah J. Patterson*

DATE ENTERED: 01/05/2022

RECORDER: Deborah J. Patterson

063JUDTL (01-2020)  www.mass.gov/courts/landcourt  Printed: 01/05/2022 9:33:10 AM  Page 1 of 1

ATTEST: WORC. Kathryn A. Toomey, Register

841

# Exhibit M



# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF REVIVAL OF "WESTBOROUGH SPE LLC",
FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF NOVEMBER, A.D.
2022, AT 5 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

2811561  8100

SR# 20224086804

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 204937171

Date: 11-26-22

842

# STATE OF DELAWARE
# CERTIFICATE OF REVIVAL OF
# A DELAWARE LIMITED LIABILITY COMPANY
# PURSUANT TO TITLE 6, SEC. 18-1109

1. Name of the Limited Liability Company  WESTBOROUGH SPE LLC

2. Date of the original filing with the Delaware Secretary of State:
   10/22/1997

3. The name and address of the Registered Agent is

   THE INCORPORATORS LTD.
   300 CREEK VIEW ROAD, SUITE 209
   NEWARK, DE 19711

4. (Insert any other matters the members determine to include herein).

5. This Certificate of Revival is being filed by one or more persons authorized to
   Execute and file the Certificate of Revival.

In witness whereof, the above name Limited Liability Company does hereby certify that
the Limited Liability Company is paying all annual Taxes, penalties and interest due to
the State of Delaware.

BY: _____
Authorized Person

Name: Denise Edwards
_____
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:00 PM 11/22/2022
FILED 05:00 PM 11/22/2022
SR 20224086804 - File Number 2811561

843

# Exhibit N

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Robert Haley <rhaley@town.westborough.ma.us> |
| **Sent:** | Friday, December 9, 2022 9:43 AM |
| **To:** | Iris Leahy |
| **Subject:** | FW: Redemption of Tax Title: 231 Turnpike Road, Westborough (Former Regal Cinema) |

**From:** Lolonyon Akouete <loloact2@gmail.com>
**Sent:** Tuesday, December 6, 2022 12:55 PM
**To:** TreasurerCollector@town.westborough.ma.us
**Subject:** Redemption of Tax Title: 231 Turnpike Road, Westborough (Former Regal Cinema)

Hello,

My name is Lolo. I am an asset recovery specialist. We have acquired Westborough SPE, LLC and we would like to redeem the property at 231 Turnpike Road.

Would you please let us know how much we owe?

Thank you,
Lolonyon Akouete
443-447-3276

1

# Exhibit O



THE ENTITY WAS FORFEITED FOR FAILURE TO FILE PROPERTY RETURN FOR 2010.

✕ Close

## SMART INVESTORS, LLC: W13167986

> ⚠ **Notice** ✕
>
> If you applied for a 2-month extension prior to April 15th, the NEW deadline to file Annual Report/Personal Property Tax Return Filings is June 15th. **Please go** HERE **to file your Annual Report.**
>
> A 2-month **extension request** for filing the Annual Report and Personal Property Tax Return may be filed here.
>
> Please be aware of an **ongoing scam** in which newly registered businesses are being instructed to send additional payment in order to obtain a Certificate of Status. Any 3rd party solicitation from a company attempting to represent the 'Maryland Secretary of State' via mail or email should be fully vetted before submitting additional payment information.

**Department ID Number:**
W13167986

**Business Name:**
SMART INVESTORS, LLC

**Principal Office:**
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

**Resident Agent:**
LOLONYON Y. AKOUETE
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

**Status:**
FORFEITED

**Good Standing:**
THIS BUSINESS IS **NOT IN GOOD STANDING**

**Business Type:**
DOMESTIC LLC

**Business Code:**
20 ENTITIES OTHER THAN CORPORATIONS

**Date of Formation/ Registration:**
07/30/2009

**State of Formation:**
MD

848

**Stock Status:**

N/A

**Close Status:**

N/A

849

## SMART INVESTORS, LLC: W13167986

> ## ⚠ Notice  ✕
>
> If you applied for a 2-month extension prior to April 15th, the NEW deadline to file Annual Report/Personal Property Tax Return Filings is June 15th. **Please go** HERE **to file your Annual Report.**
>
> A 2-month **extension request** for filing the Annual Report and Personal Property Tax Return may be filed here.
>
> Please be aware of an **ongoing scam** in which newly registered businesses are being instructed to send additional payment in order to obtain a Certificate of Status. Any 3rd party solicitation from a company attempting to represent the 'Maryland Secretary of State' via mail or email should be fully vetted before submitting additional payment information.

## Annual Report/Personal Property

Mailing Address:    SMART INVESTORS, LLC
7135 EASTBROOK AVENUE
BALTIMORE MD 21224

## Annual Report/Personal Property Tax Filings

| Asmt. Year | Date Filed | Extension | Penalty Amount | Date Penalty Paid |
|---|---|---|---|---|
| 2023 | | No | | |
| 2022 | | No | | |
| 2021 | | No | | |
| 2020 | | No | | |
| 2019 | | No | | |
| 2018 | | No | | |
| 2017 | | No | | |
| 2016 | | No | | |
| 2015 | | Yes | | |
| 2014 | | No | | |

## Personal Property Assessments Summary (Select year to view details)

| Asmt. Year | County Base | Town Base | Date Certified |
|---|---|---|---|
| 2023 | 0 | 0 | |
| 2022 | 0 | 0 | |
| 2021 | 0 | 0 | |
| 2020 | 0 | 0 | |
| 2019 | 0 | 0 | |
| 2018 | 0 | 0 | |
| 2017 | 0 | 0 | |
| 2016 | 0 | 0 | |
| 2015 | 0 | 0 | |
| 2014 | 0 | 0 | |

851

# CORPORATE CHARTER APPROVAL SHEET
## **EXPEDITED SERVICE**        ** KEEP WITH DOCUMENT **

DOCUMENT CODE _____   BUSINESS CODE _____

\# _____

Close _____     Stock _____     Nonstock _____

P.A. _____     Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

|||||||||||||||||||||||||||||||||||||||||||||

1000361998416022

ID # W13167986 ACK # 1000361998416022
PAGES: 0003
SMART INVESTORS, LLC

07/30/2009  AT 03:35 P WO # 0001754842

New Name _____

_____

_____

FEES REMITTED

| | |
|---|---|
| Base Fee: | 100 |
| Org. & Cap. Fee: | 70 |
| Expedite Fee: | |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| Certified Copies | |
| Copy Fee: | 22 |
| Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | |
| Other: | |
| TOTAL FEES: | 192 |

Credit Card _____     Check __X__     Cash _____

_____ Documents on _____ Checks

Approved By: _____

Keyed By: _____

COMMENT(S):

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
       and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
       _____
       _____

_____ Other Change(s)
       _____
       _____

Code _____

Attention: _____

Mail: Name and Address

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
4 RESERVOIR CIRCLE
BALTIMORE MD 21208-7301

### Stamp Work Order and Customer Number HERE

CUST ID:0002311804
WORK ORDER:0001754842
DATE:07-31-2009 06:02 PM
AMT. PAID:$192.00



CERTIFIED
COPY MADE

# ARTICLES OF ORGANIZATION
## FOR

## SMART INVESTORS, LLC

The undersigned, being a natural persons of at least eighteen years of age and acting as the organizer of the limited liability company (the "Company") by these articles being formed under Section 4A of the Corporations and Associations Code of the State of Maryland the "Act", certify that:

### ARTICLE ONE
NAME OF COMPANY

The name of the Company is SMART INVESTORS, LLC.

### ARTICLE TWO
PURPOSE OF COMPANY

The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be organized under the Act.

### ARTICLE THREE
PRINCIPAL OFFICE AND RESIDENT AGENT

The principal office of the company will be 7135 Eastbrook Avenue, Baltimore, MD 21224. Lolonyon Y. Akouete, of that address, will be the resident agent.

### ARTICLE FOUR
DURATION

The period of duration of the Company is perpetual.

### ARTICLE FIVE
MANAGEMENT

The Company is to be managed by one manager who will be elected by the member. Manager may but need not be a member of the Company.

### ARTICLE SIX
LIABILITY OF MEMBERS

No member shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company, pursuant to Section 4A-301 of the Act.

### ARTICLE SEVEN
LIABILITY OF MANAGERS

A member acting in his, her or its capacity as a manager of the Company shall not be personally liable to the Company or its members for damages for any breach of duty in such capacity as a manager, except for damages resulting from actions or omissions by such manager, as to which there shall have been a judgment or other final adjudication that establishes that such acts or omissions were in bad faith, involved intentional misconduct or a knowing violation of law, or that such manager personally gained a financial profit or other advantage to which he was not legally entitled. Neither the amendment nor the repeal of this Article shall eliminate or reduce the effect of this Article in respect of any matter occurring, or any cause of action, suit or claim that, but for this Article, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

WEINSTOCK,
FRIEDMAN &
FRIEDMAN, P.A.

4 RESERVOIR
CIRCLE
BALTIMORE,
MARYLAND
21208-7301

410-559-9000

853

## ARTICLE EIGHT
### CLASSES OF MEMBERS

The Company may, from time to time, establish classes, or series of classes, of members or managers, with such relative rights, designations, qualifications, preferences and duties as may be adopted as set forth in the Company's operating agreement from time to time.

## ARTICLE NINE
### OPERATING AGREEMENT

These Articles shall be deemed to be the operating agreement of the Company, unless and until the members shall have otherwise adopted additional or inconsistent provisions in connection with any matters permitted to be addressed in an operating agreement.

## ARTICLE TEN
### AMENDMENTS TO THESE ARTICLES

These articles may be amended from time to time by unanimous consent of the members. Amendments must be signed in accordance with Section 4A-206 of the Act and filed with the State Department of Assessment and Taxation of Maryland.

In witness, these Articles of Organization have been subscribed by the undersigned, who affirms the foregoing as true under the penalties of perjury, this 13 day of ___JULY___, 2009.

Organizer:

_____
**Lolonyon Y. Akouete**

### Resident Agent Agreement

Pursuant to Maryland Corporations and Associations Code §1-208, I, Lolonyon Y. Akouete, a resident of Maryland at 7135 Eastbrook Avenue, Baltimore, MD 21224, hereby consents to serve as resident agent for SMART INVESTORS, LLC.

_____
**Lolonyon Y. Akouete**

_07/13/09_
Date

**Filing party's return address:**

Victor A. Lembo, Esquire
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle, Suite 200
Baltimore, MD 21208

```
CUST ID:0002311804
WORK ORDER:0001754842
DATE:07-31-2009 06:02 PM
AMT. PAID:$192.00
```

WEINSTOCK,
FRIEDMAN &
FRIEDMAN, P.A.

4 RESERVOIR
CIRCLE
BALTIMORE,
MARYLAND
21208-7301

410-559-9000

854

# Exhibit P

 



# lolonyon Akouete · 3rd
N/A

SMART INVESTORS, LLC

Exellence

Baltimore, Maryland, United States · Contact info

**225** connections

Message    + Follow    More

---

## Activity
229 followers

**lolonyon hasn't posted yet**
Recent posts lolonyon shares will be displayed here.

Show all activity ➜

---

## Experience

**SMART INVESTORS, LLC**
14 yrs 7 mos

**CEO /Owner**
Jul 2009 - Present · 14 yrs 7 mos

Maryland based Real Estate investment company that buy and sell real estate.We specialize in finding properties for investors to rehab.   ...see more

**CEO /Owner**
Jul 2009 - Present · 14 yrs 7 mos

Maryland based Real Estate investment company that buy and sell real estate.We specialize in finding properties for investors to rehab. We provid...

---

**N/A**
N/A
2017 · Less than a year
N/A

N/A

---

 **Independent representative**
Primerica Financial Services
Oct 2008 - Mar 2010 · 1 yr 6 mos

Educate clients, teach them how money works, help families address their most serious financial problems and find solutions....



### Nutrition staff
Johns Hopkins Hospital
Nov 2007 - Jul 2009 · 1 yr 9 mos

Food service

### Floor car technician
Sears Holdings Corporation
Jan 2007 - Oct 2008 · 1 yr 10 mos

Disassembles and/or reassembles product. Performs PM checks, Performs
functional test, Updates service order....

## Education

### Exellence
Hight school, Social sciences
2003 - 2005

NA

## Skills

**Investments**

Endorsed by Stephen Rculac, PhD who is highly skilled at this

8 endorsements

**Marketing**

Endorsed by Kim Motta who is highly skilled at this

6 endorsements

Show all 34 skills →

## Interests

Companies    Groups



### Charles Schwab
301,318 followers

+ Follow

### E*TRADE from Morgan Stanley
134,460 followers

+ Follow

Show all companies →

# Exhibit Q

On May 11, 2021, EMIGRANT BANK, with the mailing address of 13 Croton Ave Ossining, NY 10562, reported to CUPD an abandoned savings account with a balance of $75,149.05 that belongs to Allen Thomas.

On March 8, 2022, Lolonyon Akouete (Lolo), an investigator of unclaimed property, called Allen to see if he could help him recover the funds. Allen vaguely remembers the savings account, but he was willing to let Lolo help recover the funds. On October 11, 2022, Allen received a check from CUPD for $67,634.15, And Lolo received a check from CUPD for $7,514.90 for assisting Allen in recovering his abandoned funds. *See a picture of the check below.*





# BETTY T. YEE

## California State Controller
## UNCLAIMED PROPERTY DIVISION

July 30, 2019

AKOUETE LOLONYON Y
800 RED MILLS RD
WALLKILL NY 12589

RE: Investigator Registration

Dear Lolonyon,

Thank you for registering to become an investigator with the California State Controller's Office, Unclaimed Property Division. We look forward to working with you to reunite lost and abandoned property with its rightful owner(s).

As part of the registration process, we have formatted payment to you as follows. Please review and ensure that the name, address, and SSN/FEIN are correct. If they are not, please contact our office with the correct information.

AKOUETE LOLONYON Y  (XXX-XX-7650)
800 RED MILLS RD
WALLKILL NY 12589

We encourage you to visit our website at http://www.sco.ca.gov/upd_form_investigator.html as it contains resources that will be helpful in the submission of claims. Below is a list of some of these resources.

- Downloadable Unclaimed Property Records - You can download all of the unclaimed property records in the Controller's public database

- Notices to Investigators – These notices alert the investigator community of important changes in forms, publications, and the law

- Investigator Handbook – Detailed guide on the claiming process and investigator requirements

- Investigator Forms – Forms required for submission of claims

# Exhibit R

# F The Commonwealth of Massachusetts

## William Francis Galvin
### Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

## Foreign Limited Liability Company
## Application for Registration
(General Laws Chapter 156C, Section 48)

Federal Identification No.: 94-3286768

(1a) The exact name of the limited liability company:

**WESTBOROUGH SPE LLC**

(1b) If different, the name under which it proposes to do business in the Commonwealth of Massachusetts:



(2) The jurisdiction* where the limited liability company was organized:

**Delaware**

(3) The date of organization in that jurisdiction: **10/22/1997**

(4) The general character of the business the limited liability company proposes to do in the Commonwealth:

Acquire, own, develop, construct, rehabilitate, improve, maintain, finance, manage, operate, lease, sell, convey, assign, mortgages and otherwise deal with real estate, and to own interests in businesses engaged in any of the foregoing, and to carry on any related lawful business, trade, purpose or activity.

(5) The business address of its principal office:

1241 Deer Park Ave, Suite 1 #1051
North Babylon, NY 11703

(6) The business address of its principal office in the Commonwealth, if any:

N/A

(7) The name and business address, if different from principal office location, of each manager:

Denise Edwards


Lolonyon Akouete

862

(8) The name and business address of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court:

NAME | ADDRESS

Denise Edwards — 1241 Deer Park Ave, Suite 1 #1051 North Babylon, NY 11703

Lolonyon Akouete — 1241 Deer Park Ave, Suite 1 #1051 North Babylon, NY 11703

(9) The name and street address of the resident agent in the Commonwealth:

Universal Registered Agents, Inc. — 4 Central Street Woburn, MA 01801

(10) The latest date of dissolution, if specified: _____

(11) Additional matters:

Signed by the or from one authorized signatures)

I Ashton Villegas on behalf of Universal Registered Agents, Inc.

resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. c156C § 48 (or attach resident agent's consent hereto).

* Attach a certificate of existence or good standing issued by an officer or agency properly authorized in home state.



# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "WESTBOROUGH SPE LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-EIGHTH DAY OF NOVEMBER, A.D. 2022.

Jeffrey W. Bullock, Secretary of State

2811561 8300

SR# 20224104318

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 204939237

Date: 11-28-22

# THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

December 12, 2022 03:52 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

Case 24-10719-JKS Doc 972-18 Filed 01/23/25 Entered 01/23/25 13:21:05 Desc Exhibit S - Staples.com Printouts Page 100 of 3

# Exhibit S

# Staples Community in North Babylon, NY

1241 Deer Park Avenue Suite 1
North Babylon, NY 11703

Get directions

**Tel:** (631) 243-3036
**Fax:** (631) 268-2581

Weekly Ad

## Hours of operation

| | |
|---|---|
| Monday | 8:00 am - 9:00 pm |
| Tuesday | 8:00 am - 9:00 pm |
| Wednesday | 8:00 am - 9:00 pm |
| Thursday | 8:00 am - 9:00 pm |
| **Friday** | **8:00 am - 9:00 pm** |
| Saturday | 9:00 am - 8:00 pm |
| Sunday | 10:00 am - 6:00 pm |



### Free, fast delivery over $25

Order online and pick up in store or get free delivery, $25 minimum.

Shop now >



### Explore in store

Discover what's possible, connect with your community.

Find now >



### Same-day pickup & delivery

From our stores to your door, get what you need.

Shop now >


Live Chat

# Available services at your Staples store



Print and Marketing Services

Affirm

PC Tune-Up

UPS Shipping & Drop-off

Passport Photos

Amazon Returns

Tech Services

iPostal1

Direct Mail

Design Services

Recycling Services

Business Protection

## Meet your store specialists



Hello, North Babylon! We are unstoppable when we come together. Here you'll find solutions to everyday challenges, connect with businesses that make our community thrive, and tips on keeping you safe and healthy as the season unfolds. We are excited for you to discover our business solutions at our Print and Marketing Department, at our store. Warm Regards, Michael Lopez General Manager

**Michael Lopez**

General Manager



# Exhibit T

## AttyLeahy@outlook.com

| | |
|---|---|
| **From:** | Matthew A. Morris <MMorris@sherin.com> |
| **Sent:** | Wednesday, December 14, 2022 4:20 PM |
| **To:** | Iris Leahy |
| **Subject:** | RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough |
| **Attachments:** | Certificate of Revival and Good Standing.pdf; EntitySearchStatusCopy_12142022-combined.pdf; Westborough SPE LLC MA Corporations Search Entity Summary.pdf |

Iris,

I attach a Delaware Certificate of Revival and Good Standing and the status of today's entity search with the State of Delaware. Please note that Westborough SPE LLC is registered in Massachusetts as a foreign limited liability company (see attached screen shot), and the new owners of the LLC (Lolonyon Akouete and Denise Edwards) are both authorized real estate signatories for this entity. I asked my clients to request a MA certificate of good standing and we will provide it to you as soon as we receive it.

Best,
Matt

**Matthew A. Morris, LL.M., Esq.**
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
617.646.2130 (direct)
mmorris@sherin.com
https://www.sherin.com/attorneys/matthew-a-morris/

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Wednesday, December 14, 2022 1:16 PM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

---

CAUTION: External Email

---

Hello Again,

I forwarded your below email to the Treasurer and received a response.

Without proof of title from your client, the town cannot spend the time calculating the balance of the tax title. As I previously noted, since the town has owned the property for almost a year, taxes have not been assessed on the property in that time.

Also, the town is wary of increasing the legal fee balance on the property and has instructed me not to continue communications unless or until I receive proof of title showing your clients have a legal interest in the property.

Also, to be clear, the right of redemption for any previous owner was lost with the entry of the final judgment. Therefore, the town does not have to accept payment of the tax title balance. As stated in my previous email, the town is opposed to allowing a vacation of the judgment and redemption of the property. **Any payment presented to the town for the tax**

1

**title will be returned**. Further, the town does not have evidence that your clients have a legal interest in the property and therefore should not accept payment from them.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Iris Leahy
**Sent:** Wednesday, December 14, 2022 12:47 PM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

Hello Matt,

I will request the info from the town. However, it will take some time because they have to calculate the taxes and interested owed since the date of foreclosure.

Also, the town will not accept payment on the tax title unless ordered to by the Land Court if the judgment is vacated.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

**From:** Matthew A. Morris <MMorris@sherin.com>
**Sent:** Wednesday, December 14, 2022 11:06 AM
**To:** Iris Leahy <AttyLeahy@outlook.com>
**Subject:** RE: Westborough SPE, LLC - 231 Turnpike Road - Westborough

Iris,

We are in the process of gathering the information you requested. Can you please provide the current payoff amount with an approximate breakdown of tax/interest, utility charges, legal fees, and any other charges? Regardless of whether the town assents to the motion to vacate, we still plan to pay off the full balance due in the next week or so.

Thanks,
Matt

**Matthew A. Morris, LL.M., Esq.**
Sherin and Lodgen LLP
101 Federal Street, 30th Floor

2

871

Boston, MA 02110
617.646.2130 (direct)
mmorris@sherin.com
https://www.sherin.com/attorneys/matthew-a-morris/

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Wednesday, December 14, 2022 10:56 AM
**To:** Matthew A. Morris <MMorris@sherin.com>
**Subject:** Westborough SPE, LLC - 231 Turnpike Road - Westborough

---

CAUTION: External Email

---

Hello Matthew,

I confirmed with my client, the Town of Westborough, they would be opposed to vacating the judgment in 19 TL 000768 on the above-referenced property.

As we discussed, please provide me with the information your clients have showing proof of title for the purchase of Westborough SPE, LLC. Additionally, has the corporation been revived in Delaware? Please note, if a motion to vacate is brought before the Land Court without proof of title, the town has requested I make a motion to oppose the motion and request payment from your clients of legal fees for the time it will take to hold a hearing.

I am awaiting confirmation from the town but I believe they have accepted a bid on the property. I'm not sure what the closing date is for the sale.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
Phone: (413)322-8318
Fax: (413)322-8661
attyleahy@outlook.com

---

PRIVILEGED AND CONFIDENTIAL: The information contained in this electronic message and any attachments are confidential property and intended only for the use of the addressee. Any interception, copying, accessing, or disclosure or distribution of this message is prohibited, and sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please notify the sender immediately and purge the message you received.

DISCLAIMER REGARDING ELECTRONIC TRANSACTIONS: If this communication relates to the negotiation of a contract or agreement, any so-called electronic transaction or electronic signature statutes shall not be deemed to apply to this communication; contract formation in this matter shall occur only upon the mutual delivery or exchange of manually-affixed original signatures on original documents.

If you have any questions regarding this disclaimer, please contact Sherin and Lodgen LLP at 617.646.2126

872

# Exhibit U

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Lolonyon Akouete <info@smartinvestorsllc.com> |
| **Sent:** | Friday, January 13, 2023 12:37 PM |
| **To:** | Iris Leahy |
| **Subject:** | Re: 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al. |
| **Attachments:** | WB SPE EIN LETTER0001.pdf; FORM 4506 TAX return.pdf |

Hello Iris,

I am not opposed to rescheduling the hearing for February 9, 2023, at 2:00 pm.
Feel free to contact the Court and make the request. We will have enough money to redeem the property, including any additional legal fees.


We strongly believe that Jan Blaustein Scholes, the manager from whom we obtained the Bill of Sale, is a managing member of the LLC. To confirm that we have ordered Partnership Income Tax Return, Form 1065, from the IRS. Only a member manager has the authority to sign IRS Form 1065. This is more informational to show the IRS what annual distributions were.

See attachment.
Request for Copy of Tax Return from 1997 to 2007

Thanks,
Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276


On Fri, Jan 13, 2023 at 10:29 AM Iris Leahy <AttyLeahy@outlook.com> wrote:

Hello Mr. Akouete,


Thank you for the below email. I am in the process of drafting my response to your motion. I haven't completed my work and have been working diligently. With the additional work to prepare for the Ex Parte hearing earlier this week, I need more time to be able to provide my response.


I would like to again request that you ask the Court to mark the hearing up on your motion to vacate for February 9, 2023 at 2:00pm. I understand the Court marked the hearing up for January 19, 2023 at 10:00am, but as I advised you on January 5, 2023, this does not provide me with adequate time to prepare for this hearing. This was even before I had to prepare for the above-mentioned hearing this week.

1

# Exhibit V

## BILL OF SALE

THIS BILL OF SALE, made as of this 21st day of November, 2022, by and between **WESTBOROUGH SPE, LLC.**, a Delaware corporation, whose mailing address is 2 Harrison Street 6th Floor San Francisco, CA 94105, (hereinafter referred to as "Seller") and **DENISE EDWARDS and LOLONYON AKOUETE** both whose post office address is 1241 Deer Pk Ave suite 1 #1051 North Babylon, NY 11703, as joint tenants, (hereinafter referred to as the "Buyer").

Whereas the Seller desires to sell and the Buyer desires to buy the business of a certain WESTBOROUGH SPE LLC now or previously being operated at 50 CALIFORNIA ST STE 3610 SAN FRANCISCO, CA 94111 and known as WESTBOROUGH SPE and all assets thereof, the parties hereto agree and covenant as follows:

1. The total purchase price for the name of the business, all online resources (websites, BBB listings, etc.), all assets and/or monies due is $646,000.00 dollars payable as follows:

a) $100 paid in cash; certified or bank checks, as a deposit upon execution of this Agreement, to be held by Seller.

b) $645,900.00 additional to be paid by check, check to be sent within 7 months of Buyer's receipt of this document.

2. The property to be sold hereunder shall be conveyed by this standard form Bill of Sale, duly executed by the Seller and/or an authorized representative of the Seller.

3. Seller warrants that there are no debts owed by Seller except those listed below:

Corporation Annual Tax Due: $1,593.00
Tax title: $391,541.93

~~Seller further agrees that if there is additional debt owed by Seller, not disclosed, Seller is solely responsible for that debt.~~

4. If the Buyer fails to fulfill his obligations herein, all deposits made hereunder by the Buyer shall be retained by the Seller as liquidated damages.

5. This agreement for sale shall also serve as a bill of sale.

6. The Seller agrees that this Agreement is contingent upon the following condition:

Buyer being able to re-activate the business with any/all agencies that handle the regulation or recordation of the business.

7. All of the terms, representations and warranties shall survive the closing. This Agreement shall bind and inure to the benefit of the Seller and Buyer and their respective heirs, executors, administrators, successors and assigns.

Page 1 of 2

876

8. If this Agreement shall contain any term or provision which shall be invalid or against public policy or if the application of same is invalid or against public policy, then, the remainder of this Agreement shall not be affected and shall remain in full force and effect.

9. For further clarity, the business in question was registered in the State of Delaware and was also registered as a foreign corporation in the State of Massachusetts. The tax identification number associated with the business was 94-3286768 and ID #: 000593094.

IN WITNESS WHEREOF, the party hereto have caused this instrument to be executed on the day and year dated below.

_____ _Jan Blaustein Scholes_ ____ Dated 12/5/22

SELLER: Jan Blaustein Scholes, its President

State of Arizona

County of Maricopa

I, Billie J. Wahl , Notary Public, do hereby certify that Jan Blaustein Scholes (name of individual(s) whose acknowledgment is being taken), acting as President for Westborough SPE LLC, and swearing and affirming that he/she has authority to sell Westborough SPE LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and official seal this 5 day of December 2022 _____ (Official Seal)

Official Signature of Notary _____

Notary's printed or typed name _Billie J. Wahl_

Notary Public My commission expires: _02-28-2023_

BILLIE J WAHL
Notary Public - Arizona
Maricopa County
Commission # 560937
My Comm. Expires Feb 28, 2023

# Exhibit W

878

LAND COURT
COMMONWEALTH OF MASSACHUSETTS

2023 JAN -4 ᴘᴍ 2: 20

WORCESTER, ss.

LAND COURT
19 TL 000768

THE TOWN OF WESTBOROUGH, )
)
)
Plaintiff, )
)
v. )
)
WESTBOROUGH SPE, LLC )
)
Defendant. )
)

## DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT

Defendant, Westborough SPE, LLC ("WSPE"), hereby moves this Honorable Court to vacate the judgment foreclosing WSPE's right of redemption dated January 5, 2022.

### I.   FACTS

Until January 5, 2022, WSPE was the record owner of property located at 231 Turnpike Road in Westborough, Massachusetts, Worcester County Registry of Deeds at Book 19369, Page 75 (the "Property"). *See* Exhibit 1, *Title Examination Report Prepared by Michael H. Delaney, Esq. (Jul. 10, 2019)*, at 1.

WSPE was formed as a Delaware limited liability company on October 22, 1997. *See* Exhibit 2.  On October 29, 1997, WSPE subsequently registered in Massachusetts as a foreign limited liability company. *See* Exhibit 3.  According to its annual reports, WSPE's sole business purpose was to serve as the owner the Property. *See* Exhibit 4, (the "Annual Reports") (all providing that WSPE's business purpose is to serve as "owner of a theatre in Westborough, Massachusetts").

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

879

From 1997 to 2017, WSPE leased the Property to Interstate Theatres Corporation for use as a movie theatre. *See* Exhibit 1, at 6.

Babcock & Brown Administrative Services, Inc. ("BBAS") served as manager of WSPE since WSPE's formation in 1997. Beginning in 1997, Frances Jan Blaustein Scholes ("Jan"), then-president of BBAS, was authorized to execute, acknowledge, deliver, and record any recordable instrument on behalf of WSPE purporting to affect an interest in real property. *See* Exhibit 2. According to Annual Reports filed with the Massachusetts Secretary of Commonwealth, Dyann Blaine ("Dyann") was also authorized to execute, acknowledge, deliver, and record any recordable instrument purporting to affect an interest in real property on behalf of WSPE. *See* Exhibit 4.

In 2004, Jan suffered her first major stroke, which left her physically and mentally incapable of properly executing her responsibilities as manager and real estate signatory for WSPE to their full extent. Thereafter, Jan reduced her responsibilities and eventually retired from BBAS in 2007. Upon Jan's retirement, Dyann took over Jan's roles and responsibilities for both BBAS and WSPE.

On November 20, 2007, Dyann filed a Certificate of Withdrawal in the Commonwealth of Massachusetts. *See* Exhibit 5. On April 24, 2008, Dyann Blaine also filed a Certificate of Withdrawal in the Commonwealth of Massachusetts for BBAS. *See* Exhibit 6, *Foreign Certificate of Withdrawal of BBAS*.

Babcock & Brown Limited ("BBL") went into liquidation in 2009. In a September 27, 2018 Annual Report to Creditors and Noteholders, Liquidator David Lombe addressed the Property and questions as to its ownership. *See* Exhibit 7, *Annual Report to Creditors and Noteholders of BBL*, at 3. The Liquidator states that after investigation and enquiries within the

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Babcock & Brown Group, he determined that BBAS "managed the property on behalf of a third party and the property is not owned by BBL."

On December 28, 2018, the Turnpike Road Property was taken by the Town of Westborough (the "Town") for non-payment of real estate taxes. *See* Exhibit 8, *Foreclosure Complaint by Town of Westborough* (the "Complaint"). On July 8, 2019, the Town filed the Complaint with the Massachusetts Land Court that is the basis of this lawsuit. The Complaint provides as follows:

> [T]he following are the names and addresses of all persons known to the undersigned who have any interest in said land other than the plaintiff, to wit:

**Westborough SPE, LLC**

The Complaint does not list the address of Westborough SPE, LLC, nor does it identify Jan as a person who has an interest in the Property.

The title examination report as filed with this Court on August 26, 2019, lists the equity owner and lessee, respectively, as the parties entitled to notice:

> Westborough SPE, LLC
> c/o Babcock & Brown Administrative Services, Inc. MANAGER
> 2 Harrison St, 6th Floor
> San Francisco, CA 94105-0000
> ATT'N: Dyann Blaine and/or F. Jan Bluestein
>
> Interstate Theatres Corporation
> One Exeter Plaza
> Boston, MA 02116

According to the Court docket, notices of the foreclosure proceedings were sent on September 22, 2020. This included a notice to Jan at 151 E. 31st, Apt. 28B, New York, NY 10016. On October 21, 2020, proof of unsuccessful service was filed with this Court related to such notice. Although Jan once lived at that address, she moved out in 2015 and never returned. On April 8, 2021, another notice by certified mail was sent to Jan,

this time at a different address: 888 Avenue of the Americas, New York, NY 10001. This notice was also returned as unsuccessful and filed with the Court on May 4, 2021.

On September 7, 2021, a registered process server attempted to serve Jan "by leaving at the last and usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein, 34 Stern Lane, Atherton, California 94027 with a "Limited Assistance Representation (LAR) Document. Document placed at front gate with knowledge of male who answered electronic intercom." *See* Exhibit 9.

In 2006, Jan and her then-husband Myron Scholes ("Myron") purchased the property at 34 Stern Lane, Atherton, California 94027 (the "Stern Lane Property"), as joint owners. Jan and Myron lived together at the Stern Lane Property until 2013 when Myron filed for divorce, prompting Jan to move out of the Stern Lane Property and never return. On September 4, 2015, Jan and Myron, as joint owners, conveyed the Stern Lane Property to Myron individually pursuant to the terms of their divorce agreement.

On April 2, 2019, Jan's son Peter Blaustein ("Peter") filed a petition for appointment of himself as Jan's conservator and guardian with the Hawaii Third Circuit, Kona Division. *See* Exhibit 10, *Printable Docket Record for Jan's Conservatorship and Guardianship Proceeding*. On July 8, 2019, the Hawaii Third Circuit granted Peter's petition, finding that Jan "is an incapacitated person," that a "basis exist[s] for appointment of a conservator and guardian," and that Peter is qualified to serve in both capacities. (text for June 3, 2019 docket entry). Jan currently lives in an assisted living facility in New Mexico.

On January 5, 2022, this Court issued its final judgment of foreclosure in connection with the Town's tax taking of the Property.

On November 22, 2022, WSPE filed a Certificate of Revival in Delaware. *See* <u>Exhibit 11</u>, *WSPE Certificate of Revival - Delaware*. As of November 28, 2022, WSPE is duly formed and in good standing in Delaware. *See* <u>Exhibit 12</u>, *Delaware Good Standing of WSPE*. On December 12, 2022, WSPE filed an Application for Registration as Foreign Limited Liability Company in Massachusetts. *See* <u>Exhibit 13</u>, *Foreign LLC Application for Registration of WSPE*.

Shortly after reviving good standing status in Delaware and Massachusetts, WSPE filed a claim with the California Unclaimed Property Division ("CUPD") for approximately $1.2 million. *See* <u>Exhibit 14</u>. On December 14, 2022, the CUPD sent a reply letter to WSPE requesting additional information pursuant to the claim.

## II.    <u>APPLICABLE LAW</u>

Motions to vacate a decree of foreclosure must be commenced within one year of the final judgment. M.G.L. c. 60, sec. 69A. Such motions may be granted if the court "after 'careful consideration, finds that to do so is required to accomplish justice.'" *Tallage LLC v. Meaney*, 2015 WL 4207424 (2015) (quoting *Town of Sharon*, 18 Mass. App. Ct. at 542)). Tax redemption statutes "are remedial in nature and are therefore 'interpreted liberally in favor of a person seeking to recover his land.'" *City of Pittsfield v. Randall*, 63 Mass. App. Unpub. 1107 (2005) (quoting *Union Trust Co. v. Reed*, 213 Mass. 199, 201 (1912)). This Court has recognized that "'the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interests.'" *Tallage LLC*, 2015 WL 4207424. When the owner of the property pays the taxes, the statute has served its purpose.

Within the one-year period, courts may use their discretion to vacate a judgment for various reasons, including incapacity or mental illness. *Town of Sharon v. Kafka*, 18 Mass. App.

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Ct. 541, 543 (1984). In *Tallage LLC v. Meaney*, this Court vacated its foreclosure judgment after the property owners filed a motion to vacate within one year of the Court's foreclosure decree, but after the property had been sold to a third party. *See generally* 2015 WL 4207427 (June 26, 2015). After a fact-intensive inquiry, the Court concluded that the property owners (the Meaneys) were overwhelmed due to health issues in the family. The Court credited the Meaneys' claim that they acted promptly to resolve the overdue water and sewer bills once they were able to focus on the past-due notices. The Court acknowledged that notice was delivered to the property owners and that they should have been more attentive; however, the Court determined that "extraordinary circumstances"—including that the owners were "overwhelmed with Mrs. Meaney's and the children's health issues at the time the notices were sent"—"justif[ied] this Court's exercise of discretion to vacate the foreclosure."

This Court has vacated foreclosure judgments without a showing of "extraordinary circumstances" when property owners were properly notified of the foreclosure proceedings, the owners filed a motion to vacate the foreclosure in the one-year period following the foreclosure decree, and the town has not transferred the property to a third party. *See, e.g., City of Pittsfield v. Randall*, 63 Mass. App. Ct. 1107 at *2 (2005) (unpublished opinion) (affirming vacation of foreclosure judgement where defendant received proper notice and "made no real effort to redeem the property until one month after a default decree had entered," without explanation for delay).

If the property owner files its motion to vacate after the one-year anniversary of the final foreclosure decree, this Court's discretion to vacate the foreclosure is typically limited to situations in which the property owner has been deprived of due process. *See Town of Russell v. Barlow*, 2016 WL 3745960, at *13 (Mass. Land Ct. July 13, 2016) ("While courts are consistent

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

in applying the statutory deadline, strict application of the one-year limitation may be excused when there has been a denial of due process.").

In *Jones v. Flowers*, the U.S. Supreme Court addressed a situation in which a property owner filed a motion to vacate after the town sold the property to a third party and after the time limit for post-sale redemption had passed. *See* 547 U.S. 220, 224 (2006). Even though the town published notice of the foreclosure sale in a local newspaper, the town attempted to serve the property owner by two separate certified mail letters sent to the address of the foreclosed property, and the property owner's ex-wife continued to live at the property at the time the certified mail envelopes were returned to the town unclaimed, the Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." The Court declined to prescribe the specific steps that the town should have taken to satisfy the property owner's due process rights, but determined that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals."

## III.  ANALYSIS

As cases such as *Tallage LLC v. Meaney* and *City of Pittsfield v. Randall* demonstrate, courts have broad discretion to vacate a foreclosure decree when a motion to vacate is filed within one year of the judgement. As cases such as *Town of Russell v. Barlow* explain, the courts' discretion to vacate a foreclosure decree after one year is typically limited to instances of due process violations. In the instant case, WSPE files the motion to vacate within the one-year period, and Jan's strokes which significantly affected her physical and mental abilities should, in themselves, support the Court's exercise of discretion to grant the Motion to Vacate.

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

In addition to Jan's serious health issues, there is also a due process violation in this case because Jan was never properly served with notice of the foreclosure proceedings. After receiving two notices of unsuccessful service via U.S. certified mail, the Town should have, pursuant to *Jones v. Flowers*, taken additional steps to confirm Jan's correct physical address before "serving" notice on a male individual who lived at Jan's former residence six years after Jan deeded this property to her ex-husband pursuant to a divorce, especially when the deed and the divorce proceedings are public records that are easily accessible online.

The combination of WSPE's timely filing within the one-year period, Jan's serious health issues, and the due process violation related to improper service provides ample support for the Land Court's exercise of discretion to vacate the foreclosure decree.

A. **Discretionary Factors**

We respectfully ask the Court to consider the incidence of Jan's strokes, which left her physically and mentally incapacitated, as an extraordinary circumstance that significantly interfered with Jan's ability to focus on the past-due tax notices. Like the property owner in *Tallage LLC v. Meaney*, 2015 WL 4207427, Jan's serious health issues interfered with her ability to devote the necessary time or attention to addressing the past due taxes at the time these notices became due and during the initial foreclosure proceedings. On the date the Complaint was filed with this Court (July 8, 2019), Jan's son Peter Blaustein was appointed her conservator and guardian. Like the Meaneys, Jan took prompt action to respond to the foreclosure proceedings as soon as she was ready and able to do so. Once Jan was informed of the proceedings and the opportunity to reclaim the Property on behalf of WSPE, she took action to connect with those who were in a position to assist WSPE. Within the past two months, WSPE restored its "good standing" statuses in Delaware and Massachusetts, filed a claim for $1.2 million currently held

by the California Unclaimed Property Division ("CUPD"), and retained counsel to prepare this Motion to Vacate and other pleadings. WSPE reasonably anticipates that this $1.2 million will be more than enough to pay the past-due taxes, utility charges, and other fees required to properly exercise its right of redemption. WSPE is diligently pursuing the claim with the CUPD and anticipates that the CUPD will release these funds to WSPE within the next 90 days (on or before April 1, 2023).

Because the Property has not yet been transferred to a third party, only the Town and WSPE's interests should be considered as the Court weighs the various factors at issue in this case. As courts have indicated, tax redemption statutes should be interpreted in favor of the party seeking to recover the property. It is in WSPE's best interest to restore their title to the Property, and it is in the Town's best interest to receive full payment of the past-due taxes and fees that gave rise to these foreclosure proceedings in the first place.

### B. Due Process Violation

In addition to the discretionary factors discussed in **Section III.A**, above, there is also a due process violation in this case because the Town never properly served Jan with notice of the foreclosure proceedings. As was the case in *Jones v. Flowers*, two U.S. certified mail packages (with two different New York addresses) intended to notify Jan of the proceedings were returned "undeliverable." The undelivered certified mail packages did not constitute sufficient service, as the Court docket indicates "unsuccessful service" for each package. The Town then hired a process server to attempt to serve Jan at a third address, 34 Stern Lane in Atherton, California, which the process server represented to be Jan's "last known address."

The process server indicated he left the notice at the front gate of 34 Stern Lane, with knowledge of a man who was heard over the intercom. Because Jan is not a man, the process

server's indication of "service" based on a male presence at the address should have informed the town that proper service was not made, and the Town should have taken additional steps to determine if this was Jan's residence considering the new information. We respectfully request this Court to take judicial notice that Jan's divorce from her ex-husband, Myron,[1] and the 2015 deed of the 34 Stern Lane property from Myron and Jan as joint owners to Myron individually are matters of public record.[2] If the Town had taken the next reasonable steps to attempt to confirm Jan's presence at the 34 Stern Lane property, the information would have revealed that (a) Jan no longer lived at the address, (b) Jan deeded her interest in the property to Myron approximately 6 years earlier, and (c) the only individual that the process server actually "served" was Myron.

After the certified mail notices were returned undelivered in *Jones v. Flowers,* the U.S. Supreme Court determined that this was insufficient notice, but declined to prescribe the specific steps that a town should take to satisfy a property owner's due process rights. Instead, the Court provided that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *See* 547 U.S. 220, 234 (2006). *Jones v. Flowers* is a residential foreclosure case in which the town attempted to serve the property owner at the exact property address that was the subject of the foreclosure—in that case, the town was found to have violated the property owner's due process rights by failing to take additional steps to determine his address after serving notice on the owner's daughter who was living in the property. In a commercial foreclosure case such as this, the Town should be held to the same (if not a higher) standard of due diligence in determining a proper service address for the property owner or

---

[1] The record of the divorce is accessible on the San Mateo Superior Court website, at https://odyportal-ext.sanmateocourt.org/Portal-External/Home/Dashboard/29 (insert "Scholes, Frances" into the search bar).

[2] The 2015 deed is accessible on the San Mateo County Clerk – Recorder Online Index, at https://apps.smcacre.org/recorderworks/ (insert "Scholes" into the Name search box).

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

representative thereof. Because the individual sought to be served in a foreclosure of abandoned commercial property is always going to reside at an address different then the property subject to the foreclosure proceedings, the Town must exercise some level of due diligence to determine the address of the property owner or the property owner's representative. While the town took some steps to locate Jan by identifying one of her former residential addresses (34 Stern Lane in Atherton), they should have conducted a more logical and diligent effort to locate Jan's current mailing address.

The Town should not be able to meet its standard of due diligence under *Jones v. Flowers* by simply picking multiple addresses that were connected to Jan at some distant point in the past without any indication that Jan was actually residing at any of these addresses. Delivering notice of the foreclosure proceedings to an unknown, unidentified, and unseen male at the Stern Lane Property was no more likely to apprise Jan of the proceedings than if notice were left at a random location. Accordingly, Jan was never properly served with notice of the foreclosure proceedings, which constitutes a due process violation pursuant to *Jones v. Flowers*.

## IV.   REQUEST FOR RELIEF

WHEREFORE, Defendant Westborough SPE LLC respectfully moves the Court to vacate the judgment entered against them, allow them to pay outstanding taxes and fees on the Property, and exercise its right to redeem the Property.

Respectfully submitted,

WESTBOROUGH SPE,

LLC By its manager,

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
loloact2@gmail.com
(443) 447-3276

Dated: January 4, 2023

01. Sherin and Lodgen\4880-8358-9189.v3-1/2/23

# Exhibit X

# PRINTABLE CASE VIEW

**Generated: 27-DEC-2023 04:55 AM**

**Search Criteria: Case ID or Citation Number: 3CG19100002K**

**1 record(s) total**

| | |
|---|---|
| **Case ID:** 3CG19100002K - IN RE FRANCES JAN BLAUSTEIN SCHOLES<br>**Type:** CG - Conservatorship & Guardianship<br>**Status:** ACTIVE - Active Case<br>**Last Updated:** 15-Aug-2019 | **Filing Date:** TUESDAY, APRIL 2, 2019<br>**Court:** THIRD CIRCUIT<br>**Location:** KONA DIVISION |

**Related Cases**

No related cases were found.

**Case Parties**

| Seq # | Assoc | End Date | Type | ID | Name / Aliases |
|---|---|---|---|---|---|
| 1 | Griswold, Rhonda L. | | Other | @4397033 | SCHOLES, FRANCES JAN BLAUSTEIN |
| 2 | SCHOLES, FRANCES JAN BLAUSTEIN | | Attorney | A3679 | Griswold, Rhonda L. |
| 3 | | | Other | D3CK3 | Third Circuit Court 3rd Division |

**Bail / Bond Information**

No Bails were found.

**Events**

| Event | Parties | Date | Time | Room | Location | Judge | Appearance Disposition |
|---|---|---|---|---|---|---|---|
| Petition(s) For | | 06/03/2019 | 09:30:00 | Third Circuit 3rd Division | KONA DIVISION | Kim , Robert | GRT-Granted |

**Dockets**

| Docket # | Date | Docket | Document Name | Parties | Filing Party |
|---|---|---|---|---|---|

Case 1:24-cv-00012-DKW-RT Document 28-2 Filed 03/28/25 Page 802 of 5 Document ID: FRANCES BLAUSTEIN Page 892 X - ID Document Exhibit

| 1 | 04/02/2019 | Document Converted DOC ID: , Comments: ROBERT KIM) | PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN; EXHIBITS A-B; SCHEDULE OF PROPERTY AND PROPOSED BUDGET; ACCEPTANCE OF APPOINTMENT NOTICE OF HEARING (HRG 06/03/19 @ 9:30 AM JUDGE | All Case Parties | Griswold, Rhonda L. |
|---|---|---|---|---|---|
| 2 | 04/02/2019 | Document Converted DOC ID: , Comments: | ORDER SETTING DATE, TIME AND PLACE OF HEARING ON PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN | All Case Parties | Griswold, Rhonda L. |
| 3 | 04/02/2019 | Document Converted DOC ID: , Comments: | INFORMATION DESIGNATED AS CONFIDENTIAL PURSUANT TO RULE 9 OF THE HAWAII COURT RECORDS RULES (CONFIDENTIAL INFORMATION) | All Case Parties | Griswold, Rhonda L. |
| 4 | 04/08/2019 | Document Converted DOC ID: , Comments: A-B; SCHEDULE OF PROPERTY AND PROPOSED BUDGET ACCEPTANCE OF APPOINTMENT; NOTICE OF HEARING; (2) ORDER SETTING DATE, TIME AND PLACE OF HEARING AND PETITION FOR APPOINTMENT OF CONSERVATOR AND | RETURN AND ACKNOWLEDGMENT OF SERVICE (FRANCES JAN BLAUSTEIN SCHOLES ALSO KNOWN WAS JAN BLAUSTEINSCHOLES WAS SERVED 04/16/19 WITH 1) PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN, EXHIBITS | All Case Parties | Shelverton, Summer Gillenwater |
| 5 | 04/08/2019 | Document Converted DOC ID: , Comments: | GUARDIAN; AND (3) DOCUMENTS SUBMITTED UNDER SEAL [DR. IAN N. CHUN'S LETTER DATED 02/27/19 AND US PASSPORT] | All Case Parties | Shelverton, Summer Gillenwater |
| 6 | 05/13/2019 | Document Converted DOC ID: , Comments: | FLAG SHEET NO. 1-C [CG] (HRG 06/03/19 @ 9:00 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |
| 7 | 05/13/2019 | Document Converted DOC ID: , Comments: | PROOF OF SERVICE BY MAIL; EXHIBIT A (HRG 06/03/19 @ 9:00 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |
| 8 | 05/20/2019 | Document Converted DOC ID: , Comments: | WAIVER OF NOTICE AND CONSENT TO CONSERVATORSHIP AND GUARDIANSHIP (HRG 06/03/19 @ 9:30 AM JUDGE ROBERT KIM) | All Case Parties | Griswold, Rhonda L. |

893

| 15 | 06/03/2019 | Minutes<br>DIGITAL RECORDING CC3.19-89/ 2019-6-3/9:34-9:36   CLERK - N. LOO<br> APPEARANCES BY TELEPHONE: S. SHELVERTON PETER BLAUSTIN<br>        SHELVERTON: NOTED THAT FUNDS ARE LIMITED TO ONLY $1500/MONTH THAT PROTECTED<br> PERSON RECEIVES. ONLY THE CHECKING ACCOUNT IS NECESSARY.        .<br>        ***RULING***<br>PETITION IS APPROVED AS<br> NOTED RE CHECKING ACCOUNT RESPONDENT IS AN<br> INCAPACITATED PERSON BASIS EXIST FOR APPOINTMENT OF A CONSERVATOR   AND GUARDIAN PETER BLAUSTEIN IS APPOINTED AND IS QUALIFIED  AS CONSERVATOR AND GUARDIAN<br> LETTERS OF CONSERVATORSHIP AND GUARDIANSHIP TO ISSUE APPOINTING PETER BLAUSTEIN FUNDS SHALL BE<br> DEPOSITED IN CHECKING ACCOUNT    ACCOUNTING TO BE MADE TO COURT TRI- ANNUALLY ANDAT TERMINATION,<br> COURT TO APPROVE BUDGET AND     REASONABLE FEES AND COSTS TO BE PAID. SHELVERTON TO PREPARE THE<br> ORDERS |  | All Case Parties | JUDG Kim, Robert |
| 9 | 07/08/2019 | Document<br>Converted<br>DOC ID: , Comments: | ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN (HEARING:  JUNE 3, 2019 AT 9:30 AM - JUDGE KIM) | All Case Parties | Griswold, Rhonda L. |
| 10 | 07/08/2019 | Document<br>Converted<br>DOC ID: , Comments: | JUDGMENT PURSUANT TO ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN       (HEARING: JUNE 3, 2019 AT 9:30 AM JUDGE KIM) | All Case Parties | Griswold, Rhonda L. |

894

| 11 | 07/08/2019 | Document Converted DOC ID: , Comments: | LETTERS OF CONSERVATORSHIP AND GUARDIANSHIP | All Case Parties | Griswold, Rhonda L. |
|---|---|---|---|---|---|
| 12 | 07/08/2019 | Document Converted DOC ID: , Comments: | NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION | All Case Parties | Griswold, Rhonda L. |
| 13 | 07/15/2019 | Document Converted DOC ID: , Comments: | AMENDED NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION | All Case Parties | Griswold, Rhonda L. |
| 14 | 07/30/2019 | Document Converted DOC ID: , Comments: AMENDED NOTICE OF APPOINTMENT OF CONSERVATOR AND GUARDIAN AND NOTICE OF RIGHT TO REQUEST MODIFICATION OR TERMINATION WAS SERVED BY US MAIL TO FRANCES J.B. SCHOLES AND MICHAEL J. BLAUSTEIN) | CERTIFICATE OF SERVICE (ON JULY 25, 2019 FILED MARKED COPIES OF THE ORDER GRANTING PETITION FOR APPOINTMENT OF CONSERVATOR AND GUARDIAN, JUDGMENT PURUANT THERETO, AND THE | All Case Parties | Griswold, Rhonda L. |

895

896

# Exhibit Y

CADES SCHUTTE
A Limited Liability Law Partnership

RHONDA L. GRISWOLD          3679-0
SUMMER G. SHELVERTON        9799-0
DANIEL C. VERMILLION        10568-0
PŌHAI NU'UHIWA CAMPBELL 10433-0
1000 Bishop Street. Suite 1200
Honolulu, HI 96813
Telephone: (808) 521-9200

Attorneys for Petitioner
PETER L. BLAUSTEIN

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

IN THE MATTER OF THE
CONSERVATORSHIP AND
GUARDIANSHIP

OF

FRANCES JAN BLAUSTEIN SCHOLES,
also known as JAN BLAUSTEIN
SCHOLES,

                    Respondent.

CG. NO. 19-1-002K
(Conservator and Guardian of Adult)

**WAIVER OF NOTICE AND
CONSENT TO CONSERVATORSHIP**

DATE:   June 3. 2019
TIME:   9:320 a.m.
JUDGE: The Hon. Robert D.S. Kim

**WAIVER OF NOTICE AND
CONSENT TO CONSERVATORSHIP**

I acknowledge receipt of filed copies of the Petition requesting the appointment of

my son, PETER L. BLAUSTEIN, as my Conservator and Guardian, and the Notice of Hearing in

this action.

I consent to the conservatorship and guardianship, the appointment of the

proposed Conservator and Guardian, and waive the requirement that I receive notice of the

hearing at least fourteen days before the hearing on the Petition.

ImanageDB:4821959.1

Also,

[✓]   I do not want to be notified of any further hearings and understand that the
      Court may grant the Petition without further notice to me.

[ ]   I want to be notified of all future hearings but do not require that I be
      given at least fourteen days advance notice.

DATED: Kamuela, Hawaii, _____APRIL 19,_____, 2019.
                                              (Date)

                        _Frances Jan Blaustein Scholes_
                        Print Name: FRANCES JAN BLAUSTEIN SCHOLES
                        Address:    68-1122 N. Kaniku Drive. No. 103
                                    Kamuela, HI 96743

**WAIVER OF NOTICE AND CONSENT TO CONSERVATORSHIP,** In The Matter of The
Conservatorship and Guardianship of FRANCES JAN BLAUSTEIN SCHOLES, also known as
JAN BLAUSTEIN SCHOLES. Respondent. CG. No. 19-1-002K

2

ImanageDB:4821959.1

Case 24-10719-JKS Doc 1021-2 Filed 03/28/25 Entered 03/28/25 13:31:05 Desc Exhibit
Z - Affidavit of Petter LP Page 1 of 3

899

# Exhibit Z

## AFFIDAVIT OF PETER L. BLAUSTEIN

I, Peter L. Blaustein, attest and state the following of my own personal knowledge:

1. F. Jan Blaustein a/k/a Jan Blaustein Scholes is my mother and prefers to be addressed as Jan (hereinafter referred to as "Jan").

2. Jan is legally considered an incapacitated person.

3. Since September 11, 2014, I have been authorized as the "attorney-in-fact" or "agent" for Jan via a Power of Attorney. Therefore, I was granted all powers as her agent and/or her attorney-in-fact.

4. On June 3, 2019, I was appointed as Jan's conservator and court-appointed guardian upon signing the Waiver of Notice and Consent to Conservatorship.

5. Jan and I were approached by Denise Edwards and Loloynon Akouete who offered to investigate and attempt to reunite Jan with unclaimed property in California. The unclaimed property was a checking account owned by Westborough SPE LLC.

6. I consented to the assistance and gave permission for Jan to sign a Claim for Abandoned Property.

7. I did not give permission or consent for Jan to sign the Bill of Sale dated November 21, 2022, produced by Loloynon Akouete and/or Denise Edwards. I did not approve of Jan executing said document.

8. Lolonyon Akouete and Denise Edwards were aware Jan lacked capacity and that I was her legal guardian, and they did not involve me in the Bill of Sale contract process or seek my consent for Jan to sign it.

9. I do not believe the Bill of Sale contract terms are reasonable.

10. I do not believe Jan is or ever was the legal or rightful owner of Westborough SPE, LLC and/or the locus.

11. I have been in contact with Dyann Blaine (a previous employee of Babcock & Brown). Dyann Blaine does not think Jan has any legal interest in Westborough SPE, LLC and/or the locus.

12. I have instructed Jan to disengage from and cease contact with Lolonyon Akouete and Denise Edwards.

Signed under the pains and penalties of perjury this 3rd day of May, 2023.

_____
Peter L. Blaustein

## STATE OF CALIFORNIA

County of San Mateo                                      Date: 5/3/2023

On this day, before me, the undersigned notary public, personally appeared Peter L. Blaustein, proved to me on the basis of satisfactory evidence such as _Drivers License (CA)_ to be the person whose name is signed on the preceding or attached document and, who subscribed and swore to or affirmed before me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public Signature: _____
Notary Public Name: __Dina N. Kolesnikov__
My Commission Expires: __12.12.2025__

(Seal)

DINA N. KOLESNIKOV
COMM. #2386495
Notary Public - California
San Mateo County
My Comm. Expires Dec. 12, 2025

2

# Exhibit AA

| **From:** | Lolonyon Akouete <info@smartinvestorsllc.com> |
|---|---|
| **Sent:** | Saturday, January 7, 2023 6:37 PM |
| **To:** | David Ferris |
| **Subject:** | 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al. |
| **Attachments:** | 19 TL 000768 Town of Westborough v. Westborough SPE, LLC.pdf; Ex Parte Motion for Approval of Memorandum of Lis Pendens.pdf; 19 TL 000768 HPS - Summons and Hearing Notice.pdf; Verified Complaint (with exhibits).pdf |

*aution*:  *xternal*  *info*   *smartin*  *estorsllc*  *com*

*First  Time  Sender*   *Details*

*Re ort This   mail  FA    Skout   mail   rotection*

David,

See attached:
Motion to Vacate foreclosure Judgment for 231 Turnpike Road property.
Ex Parte Motion for Approval of Memorandum of Lis Penden.

The hearing for the Ex Parte Motion will be on Tuesday 01/10/2023 at 09:00 AM.
The hearing for the Vacation of Foreclosure Judgment is on 01/19/2023. At 02:00 PM.

Thanks
Lolo

Case 24-10769 Doc 970-2 Filed 03/23/26 Entered 03/23/26 13:30:05 Desc Exhibit BB - Message Screenshots Page 904 of 1001

# Exhibit BB

















Case 2:24-cv-00709-DBK Doc 102-2 Filed 06/23/25 Entered 03/23/25 13:41:05 Desc Exhibit
BB - iMessager Screenshots Page 913 Page 10 of 11

913





# Exhibit CC

# LIMITED LIABILITY COMPANY AGREEMENT
## of
## WESTBOROUGH SPE LLC

**This Limited Liability Company Agreement** (the "Agreement") made and entered into this 8th day of December 2022 (the "Execution Date"),

**BETWEEN:**

> Denise Edwards of 1241 DEER PARK AVE, SUITE 1# 1051, and
> Lolonyon Akouete of 1241 DEER PARK AVE, SUITE 1# 1051
>
> (Individually the "Member" and collectively the "Members").

**BACKGROUND:**

A. The Members wish to associate themselves as members of a limited liability company.

B. The terms and conditions of this Agreement will govern the Members within the limited liability company.

**IN CONSIDERATION OF** and as a condition of the Members entering into this Agreement and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Members agree as follows:

### Formation

1. By this Agreement, the Members form a Limited Liability Company (the "Company") in accordance with the laws of the State of Delaware. The rights and obligations of the Members will be as stated in the Delaware Limited Liability Company Act (the "Act") except as otherwise provided in this agreement.

### Name

2. The name of the Company will be WESTBOROUGH SPE LLC.

### Purpose

3. To engage in and conduct any and all lawful business...

### Term

4. The Company will continue until terminated as provided in this Agreement or may dissolve under conditions provided in the Act.

916

### Place of Business

5. The Principal Office of the Company will be located at 1241 DEER PARK AVE, SUITE 1 # 1051 or such other place as the Members may from time to time designate.

### Capital Contributions

6. The following is a list of all Members and their Initial Contributions to the Company. Each of the Members agree to make their Initial Contributions to the Company in full, according to the following terms:

| Member | Contribution Description | Value of Contribution |
|---|---|---|
| Denise Edwards | $3,000 wired transferred to an attorney for legal services, $430.00 to order Tax documents, $150.00 to Jan Blaustein Scholes-bill of sale deposit, mailing to Ka City IRS and Ca state controller's office. $85.15, paid taxes owed in Delaware $796.50, $169.00 paid for certificate of revive, revive course training $150.00, sweat equity 1,219.35. | $5,000.00 |
| Lolonyon Akouete | $2,000 wired transferred to attorney for legal services. Court documents purchased. $600, paid taxes owed in Delaware $796.50, $169.00 paid for certificate of revive, revive course training $150.00, sweat equity 1,284.50 | $5,000.00 |

### Allocation of Profits/Losses

7. Subject to the other provisions of this Agreement, the Net Profits or Losses, for accounting purposes, will accrue to and be borne by the Members in equal proportions.

8. Each Member will receive an equal share of any Distribution.

9. No Member will have priority over any other Member for the distribution of Net Profits or Losses.

### Nature of Interest

10. A Member's Interest in the Company will be considered personal property.

### Withdrawal of Contribution

11. No Member will withdraw any portion of their Capital Contribution without the unanimous consent of the other Members.

### Liability for Contribution

12. A Member's obligation to make their required Capital Contribution can only be compromised or released with the consent of all remaining Members or as otherwise provided in this Agreement. If a member does not make the Capital Contribution when it is due, he is obligated at the option of any remaining Members to contribute cash equal to the agreed value of the Capital Contribution. This option is in addition to and not in lieu of any other rights, including the right to specific performance that the Company may have against the Member.

### Additional Contributions

13. No Member will be required to make Additional Contributions. Any changes to Capital Contributions will not affect any Member's Interests except with the unanimous consent of the Members.

14. Any advance of money to the Company by any Member in excess of the amounts provided for in this Agreement or subsequently agreed to, will be deemed a debt due from the Company rather than an increase in the Capital Contribution of the Member. This liability will be repaid with interest at such rates and times to be determined by a majority of the Members. This liability will not entitle the lending Member to any increased share of the Company's profits nor to a greater voting power. Repayment of such debts will have priority over any other payments to Members.

## Capital Accounts

15. An individual capital account (the "Capital Account") will be maintained for each Member and their Initial Contributions will be credited to this account. Any Additional Contributions made by any Member will be credited to that Member's individual Capital Account.

## Interest on Capital

16. No borrowing charge or loan interest will be due or payable to any Member on their agreed Capital Contribution inclusive of any agreed Additional Contributions.

## Management

17. Management of this Company is vested in the Members.

## Authority to Bind Company

18. Any Member has the authority to bind the Company in contract.

## Duty of Loyalty

19. While a person is a Member of the Company, and for a period of at least one year after that person ceases to be a member, that person will not carry on, or participate in, a similar business to the business of the Company within any market regions that were established or contemplated by the Company before or during that person's tenure as Member.

## Duty to Devote Time

20. Each Member will devote such time and attention to the business of the Company as the majority of the Members will from time to time reasonably determine for the conduct of the Company's business.

## Member Meetings

21. A meeting may be called by any Member providing that reasonable notice has been given to the other Members.

22. Regular meetings of the Members will be held only as required.

## Voting

23. Each Member will have a single equal vote on any matter.

## Admission of New Members

24. New Members may be admitted into the Company by unanimous approval from existing partners.

## Voluntary Withdrawal of a Member

25. A Member may not withdraw from the Company without the unanimous consent of the remaining Members. Any such unauthorized withdrawal will be considered a wrongful dissociation and a breach of this Agreement. In the event of any such wrongful dissociation, the withdrawing Member will be liable to the remaining Members for any damages incurred by the remaining Members including but not limited to the loss of future earnings.

26. The voluntary withdrawal of a Member will have no effect upon the continuance of the Company.

27. It remains incumbent on the withdrawing Member to exercise this dissociation in good faith and to minimize any present or future harm done to the remaining Members as a result of the withdrawal.

## Involuntary Withdrawal of a Member

28. Events leading to the involuntary withdrawal of a Member from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company into disrepute. Expulsion of a Member can also occur on application by the Company or another Member, where it has been judicially determined that the Member: has engaged in wrongful conduct that adversely and materially affected the Company's business; has willfully or persistently committed a material breach of this Agreement or of a duty owed to the Company or to the other Members; or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member.

29. The involuntary withdrawal of a Member will have no effect upon the continuance of the Company.

## Dissociation of a Member

30. In the event of either a voluntary or involuntary withdrawal of a Member, if the remaining Members elect to purchase the interest of the withdrawing Member, the remaining Members will serve written notice of such election, including the purchase price and method and schedule of payment for the withdrawing Member's Interests, upon the withdrawing Member, their executor, administrator, trustee, committee or analogous fiduciary within a reasonable period after acquiring knowledge of the change in circumstance to the affected Member. The purchase amount of any buyout of a Member's Interests will be determined as set out in the Valuation of Interest section of this Agreement.

31. Valuation and distribution will be determined as described in the Valuation of Interest section of this Agreement.

32. The remaining Members retain the right to seek damages from a dissociated Member where the dissociation resulted from a malicious or criminal act by the dissociated Member or where the dissociated Member had breached their fiduciary duty to the Company or was in breach of this Agreement or had acted in a way that could reasonably be foreseen to bring harm or damage to the Company or to the reputation of the Company.

33. A dissociated Member will only have liability for Company obligations that were incurred during their time as a member. On dissociation of a Member, the Company will prepare, file, serve, and publish all notices required by law to protect the dissociated Member from liability for future Company obligations.

34. Where the remaining Members have purchased the interest of a dissociated Member, the purchase amount will be paid in full, but without interest, within 90 days of the date of withdrawal. The Company will retain exclusive rights to use of the trade name and firm name and all related brand and model names of the Company.

### Right of First Purchase

35. In the event that a Member's Interest in the Company is or will be sold, due to any reason, the remaining Members will have a right of first purchase of that Member's Interest. The value of that interest in the Company will be the lower of the value set out in the Valuation of Interest section of this Agreement and any third party offer that the Member wishes to accept.

### Assignment of Interest

36. In the event that a Member's interest in the company is transferred or assigned as the result of a court order or Operation of Law, the trustee in bankruptcy or other person acquiring that Member's Interests in the Company will only acquire that Member's economic rights and interests and will not acquire any other rights of that Member or be admitted as a Member of the Company or have the right to exercise any management or voting interests.

### Valuation of Interest

37. In the event of a dissociation or the dissolution of the Company, each Member will have an equal financial interest in the Company.

38. In the absence of a written agreement setting a value, the value of the Company will be based on the fair market value appraisal of all Company assets (less liabilities) determined in accordance

with generally accepted accounting principles (GAAP). This appraisal will be conducted by an independent accounting firm agreed to by all Members. An appraiser will be appointed within a reasonable period of the date of withdrawal or dissolution. The results of the appraisal will be binding on all Members. The intent of this section is to ensure the survival of the Company despite the withdrawal of any individual Member.

39. No allowance will be made for goodwill, trade name, patents or other intangible assets, except where those assets have been reflected on the Company books immediately prior to valuation.

### Dissolution

40. The Company may be dissolved by a unanimous vote of the Members. The Company will also be dissolved on the occurrence of events specified in the Act.

41. Upon Dissolution of the Company and liquidation of Company property, and after payment of all selling costs and expenses, the liquidator will distribute the Company assets to the following groups according to the following order of priority:

    a. in satisfaction of liabilities to creditors except Company obligations to current Members.

    b. in satisfaction of Company debt obligations to current Members; and then

    c. to the Members based on Member financial interest, as set out in the Valuation of Interest section of this Agreement.

### Records

42. The Company will at all times maintain accurate records of the following:

    a. Information regarding the status of the business and the financial condition of the Company.

    b. A copy of the Company federal, state, and local income taxes for each year, promptly after becoming available.

    c. Name and last known business, residential, or mailing address of each Member, as well as the date that person became a member.

    d. A copy of this Agreement and any articles or certificate of formation, as well as all amendments, together with any executed copies of any written powers of attorney

922

pursuant to which this Agreement, articles or certificate, and any amendments have been executed.

   e. The cash, property, and services contributed to the Company by each Member, along with a description and value, and any contributions that have been agreed to be made in the future.

43. Each Member has the right to demand, within a reasonable period of time, a copy of any of the above documents for any purpose reasonably related to their interest as a Member of the Company, at their expense.

## Books of Account

44. Accurate and complete books of account of the transactions of the Company will be kept in accordance with generally accepted accounting principles (GAAP) and at all reasonable times will be available and open to inspection and examination by any Member. The books and records of the Company will reflect all the Company's transactions and will be appropriate and adequate for the business conducted by the Company.

## Banking and Company Funds

45. The funds of the Company will be placed in such investments and banking accounts as will be designated by the Members. All withdrawals from these accounts will be made by the duly authorized agent or agents of the Company as appointed by unanimous consent of the Members. Company funds will be held in the name of the Company and will not be commingled with those of any other person or entity.

## Audit

46. Any of the Members will have the right to request an audit of the Company books. The cost of the audit will be borne by the Company. The audit will be performed by an accounting firm acceptable to all the Members. Not more than one (1) audit will be required by any or all of the Members for any fiscal year.

## Fiscal Year End

47. The fiscal year end of the Company is the 31st day of December.

## Tax Treatment

48. This Company is intended to be treated as a corporation, for the purposes of Federal and State Income Tax.

## Annual Report

49. As soon as practicable after the close of each fiscal year, the Company will furnish to each Member an annual report showing a full and complete account of the condition of the Company including all information as will be necessary for the preparation of each Member's income or other tax returns. This report will consist of at least:

   a. A copy of the Company's federal income tax returns for that fiscal year.

   b. Income statement.

   c. Balance sheet.

   d. Cash flow statement.

   e. A breakdown of the profit and loss attributable to each Member.

## Goodwill

50. The goodwill of the Company will be assessed at an amount to be determined by appraisal using generally accepted accounting principles (GAAP).

## Governing Law

51. The Members submit to the jurisdiction of the courts of the State of Delaware for the enforcement of this Agreement or any arbitration award or decision arising from this Agreement.

## Force Majeure

52. A Member will be free of liability to the Company where the Member is prevented from executing their obligations under this Agreement in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable event where the Member has communicated the circumstance of the event to any and all other Members and where the Member has taken any and all appropriate action to satisfy his duties and obligations to the Company and to mitigate the effects of the event.

## Forbidden Acts

53. No Member may do any act in contravention of this Agreement.

54. No Member may permit, intentionally or unintentionally, the assignment of express, implied or apparent authority to a third party that is not a Member of the Company.

924

55. No Member may do any act that would make it impossible to carry on the ordinary business of the Company.

56. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company.

57. No Member may confess a judgment against the Company.

58. Any violation of the above forbidden acts will be deemed an Involuntary Withdrawal and may be treated accordingly by the remaining Members.

### Indemnification

59. All Members will be indemnified and held harmless by the Company from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in Company affairs. A Member will not be entitled to indemnification under this section for liability arising out of gross negligence or willful misconduct of the Member or the breach by the Member of any provisions of this Agreement.

### Liability

60. A Member or any employee will not be liable to the Company or to any other Member for any mistake or error in judgment or for any act or omission believed in good faith to be within the scope of authority conferred or implied by this Agreement or the Company. The Member or employee will be liable only for any and all acts and omissions involving intentional wrongdoing.

### Liability Insurance

61. The Company may acquire insurance on behalf of any Member, employee, agent or other person engaged in the business interest of the Company against any liability asserted against them or incurred by them while acting in good faith on behalf of the Company.

### Life Insurance

62. The Company will have the right to acquire life insurance on the lives of any or all of the Members, whenever it is deemed necessary by the Company. Each Member will cooperate fully with the Company in obtaining any such policies of life insurance.

### Actions Requiring Unanimous Consent

63. The following actions will require the unanimous consent of all Members:

 a. Incurring Company liabilities over $0.00.

 b. Incurring a single transaction expense over $0.00.

 c. Endangering the ownership or possession of Company property including selling, transferring or loaning any Company property or using any Company property as collateral for a loan.

 d. Releasing any Company claim except for payment in full.

## Amendment of this Agreement

64. No amendment or modification of this Agreement will be valid or effective unless in writing and signed by all Members.

## Title to Company Property

65. Title to all Company property will remain in the name of the Company. No Member or group of Members will have any ownership interest in Company property in whole or in part.

## Miscellaneous

66. Time is of the essence in this Agreement.

67. This Agreement may be executed in counterparts.

68. Headings are inserted for the convenience of the Members only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa. Words in a neutral gender include the masculine gender and the feminine gender and vice versa.

69. If any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the Members' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

70. This Agreement contains the entire agreement between the Members. All negotiations and understandings have been included in this Agreement. Statements or representations that may have been made by any Member during the negotiation stages of this Agreement, may in some

way be inconsistent with this final written Agreement. All such statements have no force or effect in respect to this Agreement. Only the written terms of this Agreement will bind the Members.

71. This Agreement and the terms and conditions contained in this Agreement apply to and are binding upon each Member's successors, assigns, executors, administrators, beneficiaries, and representatives.

72. Any notices or delivery required here will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the Members at the addresses contained in this Agreement or as the Members may later designate in writing.

73. All of the rights, remedies and benefits provided by this Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law.

### Definitions

74. For the purpose of this Agreement, the following terms are defined as follows:

   a. "Additional Contribution" means Capital Contributions, other than Initial Contributions, made by Members to the Company.

   b. "Capital Contribution" means the total amount of cash, property, or services contributed to the Company by any one Member.

   c. "Distributions" means a payment of Company profits to the Members.

   d. "Initial Contribution" means the initial Capital Contributions made by any Member to acquire an interest in the Company.

   e. "Member's Interests" means the Member's collective rights, including but not limited to, the Member's right to share in profits, Member's right to a share of Company assets on dissolution of the Company, Member's voting rights, and Member's rights to participate in the management of the Company.

   f. "Net Profits or Losses" means the net profits or losses of the Company as determined by generally accepted accounting principles (GAAP).

g. "Operation of Law" means rights or duties that are cast upon a party by the law, without any act or agreement on the part of the individual, including, but not limited to, an assignment for the benefit of creditors, a divorce, or a bankruptcy.

h. "Principal Office" means the office whether inside or outside the State of Delaware where the executive or management of the Company maintain their primary office.

i. "Voting Members" means the Members who belong to a membership class that has voting power. Where there is only one class of Members, then those Members constitute the Voting Members.

**IN WITNESS WHEREOF** the Members have duly affixed their signatures under hand and seal on this 18th day of January 2023.

**SIGNED, SEALED, AND DELIVERED**

in the presence of:

Witness: _____ (Sign)

Witness Name: Dawn M Petrillo

Denise Edwards (Member)

**SIGNED, SEALED, AND DELIVERED**

in the presence of:

Witness: _____ (Sign)

Witness Name: Jonathan Tercero

Lolonyon Akouete (Member)

1/18/2023

SAL F MANGANO
NOTARY
NO. 01MA6132339
QUALIFIED IN
SUFFOLK COUNTY
COMM. EXP.
08-22-2025
PUBLIC
STATE OF NEW YORK

JOEL VOZZO
Notary Public, State of New York
No. 01VO6213484
Qualified in Ulster County
Commission Expires 11/04/25

1/18/23

# Exhibit DD

COMMONWEALTH OF MASSACHUSETTS
LAND COURT
DEPARTMENT OF THE TRIAL COURT

SUFFOLK, ss.                                    LAND COURT
                                                CASE NO. 19 TL 000768

_____
                                    )
TOWN OF WESTBOROUGH,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
WESTBOROUGH SPE, LLC                )
                                    )
            Defendant.              )
_____     )

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WESTBOROUGH SPE, LLC'S MOTION TO VACATE FORECLOSURE JUDGMENT

Now comes, the Plaintiff, Town of Westborough (the "Town") and hereby respectfully submit their Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment. The Town opposes the Motion to Vacate Final Judgment as the Motion is not supported by facts and evidence to prove the right title and interest in the locus by way of purchase of the company previously holding title to the locus, Westborough SPE, LLC.

As evidenced by the information presented below by the Plaintiff in opposition, Defendant's motion is clearly filed for the sole and exclusive monetary benefit of Denise Edwards and Lolonyon Akouete (hereinafter referred to collectively as "Defendant") and said motion should be denied with prejudice. The Town is concerned by the motives and true moving party behind Defendant's motion.

930

## I.  FACTUAL BACKGROUND

The locus, a parcel of commercial real estate located at 231 Turnpike Road in the Town of Westborough, and was a movie theater in operation by Regal Cinemas (a/k/a Interstate Theaters Corporation) until 2017 but has been vacant and deteriorating since.

The land where the movie theater is located is subdivided into three separate parcels and is described by some as a mall and/or a plaza. The three parcels in the mall share common area maintenance expenses by a Reciprocal Covenants, Easements and Restrictions Agreement by which 57% of the common area maintenance and snow removal expenses are to be paid by the owner of the locus.

Taxes and common expenses have not been paid since Regal Cinemas (a/k/a Interstate Theaters) ceased operation and occupancy of the locus. While Regal Cinemas (a/k/a Interstate Theaters Corporation) occupied the locus, they were making payments for real estate taxes, common expenses, and to an assignment of lease mortgage described below.

In the Spring of 2017, Regal Cinemas (a/k/a Interstate Theaters Corporation) attempted to secure a lease extension to continue their occupancy of the locus. To do so Robbie Pope of Regal Cinemas (a/k/a Interstate Theaters Corporation) contacted Allen Hight, of Northside Realty Trust (NRT). NRT who previously managed and leased the two non-locus parcels in the mall prior to those two non-locus parcels being sold to Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein). At the time of Regal Cinemas' (a/k/a Interstate Theaters Corporation) attempt to secure a lease extension, the locus was owned by Westborough SPE, LLC and was not managed by NRT and/or was not owned by Mobile Street LLC. *See* Exhibit 22 (Exhibit C therein).

Prior to the title vesting in Westborough SPE, LLC, it was the understanding of Mr. Hight of NRT that Hoyts Cinema was planning to take title to the property and retained Babcock & Brown Administrative Services, Inc., a law firm operating out of San Francisco. *See* Exhibit 22 (Exhibit C therein). Per Mr. Hight, Babcock & Brown Administrative Services, Inc. was organizing the Hoyts Cinemas entity with the goal of Hoyts Cinemas owning the locus. *See* Exhibit 22 (Exhibit C therein). However, rather than Hoyts Cinema taking title to the locus Westborough SPE, LLC took title and Regal Cinemas (a/k/a Interstate Theaters Corporation) leased the property and operated the movie theater. *See* Exhibit 22 (Exhibit C therein). All correspondence such as billings, maintenance issue notices, and annual expense reconciliations from NRT regarding the locus were instructed to be sent to Regal Cinemas (a/k/a Interstate Theaters Corporation) at 231 Turnpike Road, Westborough, Massachusetts. This is the address of the locus. *See* Exhibit 22 (Exhibit C therein).

In the Spring of 2017, Mobile Street LLC was interested in purchasing the locus and Regal Cinemas (a/k/a Interstate Theaters Corporation) was interested in continuing their lease so both parties in conjunction with the Town and several attorneys tried unsuccessfully to locate anyone with an ownership interest in Westborough SPE, LLC. *See* Exhibit 22 (Exhibit C therein).

### A. PLAINTIFF'S DUE DILIGENCE AND SUBSTANTIAL EFFORTS TO NOTIFY ALL PARTIES

On October 31, 2017, Attorney Shirin Everett, as legal counsel for the Town, was contacted by the Town Manager regarding concerns about the lack of the Town's ability to contact the current owner of the locus. *See* Exhibit 22. Regal Cinemas (a/k/a Interstate Theaters Corporation) was leasing and occupying the locus and was interested in

932

renewing/extending their lease but could not locate the owners and therefore vacated the property in November of 2017. *See* <u>Exhibit 22</u>. As stated, during their occupation of the property Regal Cinemas (a/k/a Interstate Theaters Corporation) was paying real estate taxes. *See* <u>Exhibit 22</u>. However, once the property was vacant the real estate taxes went unpaid. The Town Manager informed Attorney Everett that the Town made many diligent attempts to locate the owners of the locus in the hopes that the property would not remain vacant with unpaid real estate taxes. *See* <u>Exhibit 22</u>. The attempts were unsuccessful.

## B. <u>EMINENT DOMAIN</u>

The Town considered taking the locus via their eminent domain powers possibly for economic revitalization purposes. Damages would have to be paid upon the taking. The Town retained an appraiser to value the locus and by the appraiser's report as of August 3, 2018, the locus was valued at $4,790,000. The process was halted before completion and the Town proceeded to try to collect the taxes and get the locus back on the tax rolls via a tax title foreclosure instead.

## C. <u>TAX TITLE FORECLOSURE</u>

On January 16, 2019, Plaintiff, recorded an instrument of Tax Taking pursuant to G.L. c. 60 ss. 53 and 54 against the locus for non-payment of property taxes. Demand and notice of the taking were appropriately issued as required by the above-referenced statutes to the record owner of said parcel, Westborough SPE, LLC.[1]

---

[1]  Ch. 60 Sec. 53 provides, "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town, first giving fourteen days' notice of his intention to exercise such power of taking, which notice may be served in the manner required by law for the service of subpoenas on witnesses in civil cases or may be published, and shall conform to the requirements of section forty. He shall also, fourteen days before the taking, post a notice so conforming in two or more convenient and public places. ...."
   Ch. 60 Sec. 54 provides in pertinent part, "The instrument of taking shall be under the hand and seal of the collector and shall contain a statement of the cause of taking, a substantially accurate description of each parcel of land taken, the name of the person to whom the same was assessed, the amount of the tax

On July 8, 2019, having received no payment for the outstanding taxes and being unable to identify owners of Westborough SPE, LLC, the Town commenced the action to foreclose the tax lien and served notice of the same on the parties identified to potentially hold an interest in the locus. The Court also issued notice of citation by publication as notice to the world of the potential loss of interest should a foreclosure decree enter.

On July 24, 2019, notice of the foreclosure action was also recorded in the Worcester District Registry of Deeds at Page 60751, Page 221. On August 26, 2019, a Land Court-approved title examiner to whom the court referred the title at issue in this case, completed and subsequently filed the Title Report pursuant to G.L. c. 60, s. 66, reporting that the parties interested and entitled to notice were "Westborough SPE, LLC c/o Babcock & Brown Administrative Services, Inc… Att'n: Dyann Blaine and/or F. Jan Bluestein" and "Interstate Theaters Corporation".

On November 1, 2021, with no answer or appearance having been filed, a motion for general default was filed by the Town and allowed by the Court. In the above-referenced case, a Judgment in Tax Lien Case entered on January 5, 2022, and notice of the same was recorded on January 21, 2022, in the Worcester District Registry of Deeds at Page 66983, Page 53.

### D. <u>DELOITTE FINANCIAL ADVISORY PTY, LLD</u>

On October 14, 2017, Chief Assessor for the Town of Westborough, Jonathan Steinberg, contacted Deloitte Financial Advisory Pty, LLD (hereinafter "Deloitte) in Sydney Australia. *See* <u>Exhibit 22</u> (Exhibit B therein). Deloitte was the appointed

---

thereon, and the incidental expenses and costs to the date of taking. Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken…."

934

liquidator in bankruptcy for Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7. Through Mr. Steinberg's research, he found information that Babcock & Brown Administrative Services, Inc. may be affiliated with Babcock & Brown Limited of Australia. *See* Exhibit 22 (Exhibit B therein).

On October 17, 2017, the Town received a response from David Lombe of Deloitte advising all assets outside of the Holding Company in Australia were under the control of Michael Larkin, CEO of Babcock & Brown Administrative Services, Inc., in San Francisco, California. *See* Exhibit 22 (Exhibit B therein). That same day the Town contacted Mr. Larkin who referred the Town to Walter Horst, CFO of Babcock & Brown Administrative Services, Inc. *See* Exhibit 22 (Exhibit B therein).

Mr. Horst responded the same day to the Town advising that Babcock & Brown Administrative Services, Inc. was simply an administrative manager of Westborough SPE, LLC and had no ownership interest in the locus and did not possess information regarding Westborough SPE, LLC's successors or assigns. *See* Exhibit 22 (Exhibits A & B therein) & Defendant's Exhibit 7.

Additionally, Mr. Horst advised the Town they researched title in a "Know Your Customer" compliance procedure and were unable to identify the owner and therefore resigned as administrative manager. *See* Exhibit 22 (Exhibit B therein). Deloitte retained a private investigator local to Westborough, Massachusetts to assist with their research. *See* Exhibit 22 (Exhibit C therein).

According to Mr. Hight of NRT, the private investigator advised him that "B&B and WSPE were essentially the same entity. Moreover, when they leased the theater to

935

Regal Cinemas (a/k/a Interstate Theaters Corporation) (prior to Babcock & Brown Administrative Services, Inc. filing bankruptcy) they expected it to fail and did not list it as an asset on their balance sheet. He also informed me that there are other discrepancies and 'issues of law' facing B&B and WSPE in the Australian Courts." *See* Exhibit 22 (Exhibit C therein) & Defendant's Exhibit 7.

Mr. Horst referred the Town to Chay Besherse, Legal Services Manager for Babcock & Brown, who also conducted the title research. *See* Exhibit 22 (Exhibit B therein). Ms. Besherse advised the Town that her research mimicked the Town's and ultimately no individuals were identified as having an ownership interest in the locus for their compliance process. *See* Exhibit 22 (Exhibit B therein) & Defendant's Exhibit 7.

### E.  JOHNSON WINTER & SLATTERY, ATTORNEY JOSEPH SCARCELLA

The Town received a letter dated April 4, 2019, from Attorney Joseph Scarcella of Johnson Winter & Slattery, a firm located in Sydney, Australia, stating that the firm was representing David Lombe, the liquidator in bankruptcy of Babcock & Brown Limited, the successor in title to Babcock & Brown Limited. *See* Exhibit 22 (Exhibit A therein). Said letter requested information from the Town as to whether the Town owned the locus. *See* Exhibit 22 (Exhibit A therein). On April 11, 2019, the Town responded advising there was a tax lien on record but it had not been foreclosed on. *See* Exhibit 22 (Exhibit A therein). On May 6, 2019, the Town sent a follow-up letter advising of the amount due and requesting to be informed if Babcock & Brown Administrative Services, Inc. had any legal interest in the property. *See* Exhibit 22 (Exhibit A therein). The Town received a letter

dated June 25, 2019, again requesting if the Town had acquired the property via foreclosure. *See* <u>Exhibit 22 (</u>Exhibit A therein). No assertion of a legal interest in the property was made.

## F.   BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC. LACK OF LEGAL INTEREST IN THE PROPERTY

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service by publication because there was an unsettled question of ownership of Westborough SPE, LLC. The Court also directed the Town to *attempt* to make direct service on all individuals named in the proposed citation for whom the Town identified an address. Following this date several communications detailed below established that Babcock & Brown Administrative Services, Inc. does not have a legal interest in the locus.

On September 29, 2020, Attorney Kovacs emailed the Town requesting information regarding the pending Tax Lien Foreclosure case and asserted that he represented Johnson Winter & Slattery (who represents David Lombe, Liquidator of Babcock & Brown Limited as well as Joseph Scarcella, Esq of Johnson Winter & Slattery).

On October 13, 2020, Attorney Dawn Bloom (co-counsel in this case for the Town) received a voicemail from Attorney Kovacs requesting information regarding the pending Land Court foreclosure action. On October 14, 2020, Attorney Kovacs was provided the return date of November 16, 2020, on the file for the citations mailed to other parties of interest in the case.

On October 21, 2020, Attorney Bloom received an email from Attorney Kovacs confirming a telephone conversation in which Attorney Kovacs advised Attorney Bloom that Attorney Edward Englander was also representing David Lombe, Liquidator for Babcock and Brown Limited.

On October 30, 2020, Attorney Bloom and Attorney Englander had an approximately 20-minute telephone conversation regarding his clients' option to answer and to provide proof of their interest in the locus to the Court, as his clients' interest in the locus was and is not a settled matter.

On February 12, 2021, I spoke with Attorney Kovacs by telephone as well as sent him an email. During these communications, Attorney Kovacs was requesting information regarding how to remove or strike his clients as defendants and/or parties of interest in the tax lien foreclosure case or alternatively to disclaim their interest(s) in the locus due to having no legal or equitable interest in the locus. I drafted and provided Attorney Kovacs with a draft Waiver of Notice and Assent to the Entry of Judgment. This was never filed in this case.

On March 17, 2021, Attorney Englander emailed me and said he didn't believe his clients would authorize him to file an appearance in this case and therefore could not file a waiver of notice in this case. No appearance(s) or answer(s) were filed by and/or for the above-referenced parties of interest. There was adequate time for these parties to appear and/or answer this Court but they decided not to exercise their right to do so.

Following the entry of the Judgment in Tax Lien Case, on February 7, 2022, the Town sent letters regarding the necessity of removal of non-fixture items from the locus. Letters were mailed to the following: James D. Jarworski, Treasurer of Babcock & Brown Administrative Services, Inc.; Dyann Blaine, Babcock & Brown Administrative Services, Inc.; F. Jan Bluestein a/k/a Jan Blaustein Scholes, Babcock & Brown Administrative Services, Inc.; and Interstate Theaters Corporation. None of the letters were returned in the

mail and only Interstate Theaters Corporation (a/k/a Regal Cinemas) responded and advised they did not have any non-fixture property at the locus.

## G. REQUEST FOR PROPOSAL (RFP)

The Town proceeded to sell the locus pursuant to G.L. c. 30B, known as a Request for Proposal (RFP), and solicited proposals for said purchase. On May 26, 2022, RFP documents were made available via BidNetDirect.com. *See* Exhibits 5 and 6. Proposals for purchase were to be submitted by July 25, 2022. *See* Exhibits 5 and 6.

On November 29, 2022, Lolonyon Akouete requested RFP documents from BidNetDirect.com. *See* Exhibit 6. In said request, Mr. Akouete identifies his organization as Smart Investors, LLC. *See* Exhibit 6. Mr. Akouete uses several email addresses, one of which is info@smartinvestorsllc.com. *See* Exhibits 7 and 14.

Smart Investors, LLC was registered in Maryland as a domestic LLC on July 30, 2009, but the entity was forfeited for failure to file a property return in 2010 or thereafter. *See* Exhibit 15. The Resident Agent of the Smart Investors, LLC is Lolonyon Y. Akouete. *See* Exhibit 15. Mr. Akouete has created profiles for Smart Investors, LLC via Zillow.com and LinkedIn. On his LinkedIn profile, he describes himself as the CEO/Owner of Smart Investors, LLC. *See* Exhibit 16. It is believed that Lolonyon Y. Akouete is the same individual as Lolonyon Akouete.

The Town of Westborough received three (3) proposals in response to their RFP. A proposal by LAX MEDIA INC for $2,500,000.00 was selected, and subsequently, an unselected proposer brought an action for injunctive relief in the Superior Court. Due to the suit, LAX MEDIA INC agreed with the town for an extension until January 31, 2023,

Page 10 of 39

939

to hold their bid firm and to keep the terms and conditions in place. On January 18, 2023, the Superior Court found for the Town and denied the request for injunctive relief.

Due to the hearing scheduled in this case, LAX MEDIA INC agreed to another extension to hold their bid firm and to keep the terms and conditions of purchase in place until March 3, 2023. A purchase and sale contract has not been executed to date.

### H. **REQUEST FOR REDEMPTION FROM LOLONYON AKOUETE**

On December 6, 2022, over ten (10) months after the final judgment of foreclosure was recorded, the Treasurer for the Town, Robert Haley (hereinafter referred to as "the Treasurer), received an email from Lolonyon Akouete identifying himself as "Lolo" an "asset recovery specialist" who has "acquired Westborough SPE, LLC and we would like to redeem". *See* Exhibit 1.

On December 9, 2022, the Treasurer received another email from Mr. Akouete, stating "[w]e would like to know how to redeem the property on 231 Turnpike Road" and included an attachment titled "Addendum 2". *See* Exhibit 2. Said correspondences did not identify how Mr. Akouete "acquired" Westborough SPE, LLC. Please note, "Addendum 2" was published by the Town with the RFP information and it was also provided to any plan holders.

On December 12, 2022, the Treasurer left me a voicemail advising that he had a telephone conversation with Mr. Akouete in which Mr. Akouete stated he had a bill of sale from F. Jan Bleustein a/k/a F. Jan Blaustein of Babcock & Brown Administrative Services, Inc. and was seeking guidance on the process of redemption. Mr. Akouete was advised he should seek legal counsel to advise him on his rights and also to provide proof of his acquisition of Westborough SPE, LLC.

940

## I. **ATTORNEY MATTHEW MORRIS**

On December 13, 2022, I received a voicemail from Attorney Matthew Morris of Sherin and Lodgen LLP in Boston, Massachusetts. I confirmed Attorney Morris' information on the website for the Massachusetts BBO. *See* Exhibit 3.

On December 14, 2022, I returned the phone call and spoke with Attorney Morris who advised me that his clients, Lolonyon Akouete and Denise Edwards, purchased an interest in the locus and would like to redeem and requested the Town motion the Land Court for a vacation of the judgment. I requested proof and information from Attorney Morris regarding how his clients obtained a legal interest in the locus in this phone call and in subsequent email correspondences. *See* Exhibit 4.

I advised Attorney Morris that my understanding of the balance due was estimated to be approximately $700,000.00 but wasn't sure if that included the balances due for the snow removal and maintenance services provided pursuant to the reciprocal maintenance agreement. Attorney Morris seemed to be surprised by the balance and stated he thought the balance was closer to $300,000.00. I believe this was due to his clients' review of the RFP publication that included "Addendum 2". *See* Exhibit 2. The amount shown on the addendum did not include the additional taxes, interest, fees and costs associated with the tax title following the foreclosure.

I advised Attorney Morris that the Town is opposed to the vacation of judgment absent proof of a legitimate legal interest in the locus. *See* Exhibit 4. On December 14, 2022, Attorney Morris advised he was in the process of gathering the information I requested and he also requested exact figures for the tax title account balance for redemption.

I provided this request to the Treasurer for the Town and I was advised that absent proof of title or proof of a legitimate legal interest in the locus, the Town could not expend the time and legal expense to continue communications with Attorney Morris or his clients.

As a note, the exact balance of the tax title account was not readily available at that time. The Town owned the property for almost a year following the entry of the judgment and therefore there were no assessed taxes on the locus since the decree entered. Therefore, the up-to-date balance information would have to be calculated.

On December 14, 2022, Attorney Morris stated "[r]egardless of whether the town assents to the motion to vacate, we still plan to pay off the full balance due in the next week or so." *See* <u>Exhibit 5</u>. Proof of funds were not presented to the Plaintiff and a motion to vacate was not filed by the Defendant until January 4, 2023. Said motion was filed one day before the one-year anniversary of the entry of the Judgment in Tax Lien Case and was not signed by an attorney on behalf of the corporation but rather; was signed by Lolonyon Akouete as manager.

The only information I received from Attorney Morris to purportedly show his clients' legal and legitimate interest in the locus were documents showing that a company called Westborough SPE, LLC was revived in the State of Delaware and a company by this same name was registered in the Commonwealth of Massachusetts on December 12, 2022. Attorney Morris also provided a Certificate of Good Standing from the State of Delaware and advised he would provide me with the same from the Commonwealth.

According to G.L. c. 156D, Section 1.28 (b) & G.L. c. 156C, Section 68, any person may apply for a Certificate of Good Standing. The certificate provides evidence including but not limited to the name of the corporation and the date it was organized under the laws

of the Commonwealth, that annual reports are not due and all fees then due to the SOC have been paid and the corporation appears from the records presented to the state secretary to be in good standing.

### J.  NEW CORPORATION REGISTERED IN MASSACHUSETTS

According to the website of the Corporations Division, Business Entity Summary provided by the Secretary of the Commonwealth of Massachusetts (SOC), on October 29, 1997, Westborough SPE, LLC registered as a Foreign Limited Liability Company (organized under the laws of Delaware, the identification number assigned by the SOC was 000593094, but it withdrew from Massachusetts on November 20, 2007. *See* Exhibit 18.

On December 12, 2022, a corporation under the same name, Westborough SPE, LLC was registered in Massachusetts as a Foreign Limited Liability Company (organized under the laws of Delaware).  *See* Exhibit 19. The identification number assigned by the SOC was 001623747. *See* Exhibit 19. **Both corporations were assigned separate identification numbers by the SOC.**

According to a telephone conversation on January 12, 2023, with an employee of the Corporations Division of the Secretary of the Commonwealth, on December 12, 2022, Westborough SPE, LLC was a new registration of a new entity. The corporations under the same name were registered independently of each other.

The Corporations Division advised they are tasked as a third party to receive and record documents and do not challenge Foreign Limited Liability Company filings if the filing includes basic evidence such that the corporation exists in the company's home state and in good standing and this new filing included the same.

The Corporations Division advised me that these independently registered "Westborough SPE, LLC" corporations *could* be the same entity but it is not established that they are. According to the Corporations Division, they do not investigate the authority of a party to act on behalf of a corporation; rather, the burden rests on the filing party to have the appropriate authority and to act under the law by signing and swearing they are authorized. *See* G.L. c. 156C, Section 48. If the relevant provisions of law are satisfied, they approve the document/filing. *See* G.L. c. 156D, Sections 1.20, 1.25 & G.L. c. 156C, Sections 48, 49.

There is a penalty for signing a document known to be false in any material respect with the intent to provide that document to the SOC for filing. G.L. c. 156D, Section 1.29. The penalty is a civil misdemeanor punishable by a fine not to exceed $100,000. This statute is meant to deter intentionally false filings with the SOC.

Per G.L. c. 156C, Section 47, a foreign limited liability company shall not do any business in the Commonwealth that is prohibited as the company is subject to the constitution of the Commonwealth. However, a foreign limited liability company's organization and internal affairs and the liability of its members and managers shall be governed by the laws of the jurisdiction under which it is organized. *See* G.L. c. 156C, Section 47.

### K. WESTBOROUGH SPE, LLC WAS NOT REVIVED IN MA

The original corporation called Westborough SPE, LLC (identified by the SOC as 000593094) was not revived or reinstated and is noted as withdrawn. *See* Exhibit 18. The forms for revival or reinstatement do not allow a company to change its resident agent, officers, directors or principal place of business. Rather, these changes must be completed

944

through a Statement of Change Form which did not occur here. The filings for both corporations under the same name have completely different Principal Places of Business, Resident Agents and Managers. *See* Exhibits 18 and 19.

Further, the SOC requires that a Foreign Limited Liability Company Amend any registration when any arrangement or other facts have changed including a change in the manager or authorized signatories. *See* Exhibit 17.

## L. WITHDRAWAL OF A FOREIGN CORPORATION

When a foreign corporation withdraws from transacting business in the commonwealth with the consent of the SOC, the corporation shall set forth it is not transacting business in the Commonwealth and that it surrenders its authority to transact business in the Commonwealth. G.L. c. 156D, Section 15.20. Additionally, the foreign corporation revokes the authority of its registered agent to accept service on its behalf. G.L. c. 156C & c. 156D, Section 15.20. The withdrawn corporation additionally commits to notify the SOC of any future changes to their mailing address. G.L. c. 156D, Section 15.20. This did not occur.

## M. LACK OF LEGAL COUNSEL

On January 4, 2023, Mr. Akouete was advised by John R. Harrington that an LLC cannot appear "pro se" and must be represented by legal counsel. On January 4, 2023, Mr. Akouete confirmed his understanding of the requirement for legal counsel in an email to John R. Harrington. *See* Exhibit 10.

Subsequently, the Defendant brought an Ex Parte Motion for Approval of Memorandum of Lis Pendens before this Court without legal counsel present or appearing on the docket. At the hearing on said motion on January 10, 2023, the Honorable Howard

P. Speicher advised Mr. Akouete again of the requirement for a corporation to be represented by legal counsel. Mr. Akouete confirmed he is not an attorney and confirmed his understanding that an attorney must be present. Further, the Honorable Howard P. Speicher took no action on the Memorandum of Lis Pendens as it was not filed and/or signed by an attorney on behalf of Westborough SPE, LLC.

It has long been established in the Commonwealth that a corporation must be represented by legal counsel in judicial proceedings. "In this case, we hold that, except for small claim matters, a corporation may not be represented in judicial proceedings by a corporate officer who is not an attorney licensed to practice law in the Commonwealth." Varney Enterprises, Inc. v. WMF, Inc., 402 Mass. 79 (1988). The case interprets G.L. c. 221, Section 46.

As of today, there has not been an appearance filed in the above-referenced case on behalf of the Defendants by an attorney licensed to practice law in the Commonwealth.

Further, Westborough SPE, LLC's motion titled "Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment" includes notations on the bottom of each page from Sherin and Lodgen, the firm Attorney Morris is employed by. *See* Exhibit 3. However, the motion presently before this Court was not signed by an attorney. Rather, the motion was signed by Westborough SPE, LLC by its manager, Lolonyon Akouete.

On January 9, 2023, the hard copy of the Defendant's motion to vacate was left in my mailbox by UPS and I retrieved the documents on January 10, 2023. The return address of these documents is as follows: Lolonyon Akouete, (845)744-6000, 800 Red Mills Road, Wallkill, NY 12589-5200. *See* Exhibit 11. I researched this street address via Google.com,

Bing.com and TLO.com (a powerful pay-for search site powered by Experian). I found this address to belong to Dr. Kenneth Yeboah.

On January 10, 2023, I called Dr. Yeboah and he returned my call and advised that his office is part of a very large community complex. Dr. Yeboah also advised me that mail is addressed to the return address referenced above for anyone receiving mail in the complex and then the mail is sorted. Dr. Yeboah said he is familiar with Mr. Akouete and then voluntarily searched on his computer and confirmed that Mr. Akouete resides in the complex.

Further research via the same methods described above, provided information that the complex located at 800 Red Mills Road is also known Watchtower Farms, a Jehovah's Witness community that includes education facilities, computer and printing technology, farming, residences and offices. The complex in Wallkill, New York is approximately 114 miles away from North Babylon, New York where the "new" corporation has said its principal place of business is located. *See* <u>Exhibit 13</u>.

**N. PRINCIPAL PLACE OF BUSINESS IS THE RETAIL STORE STAPLES**

On the SOC filing for the "new" Westborough SPE, LLC, the principal place of business of the corporation is listed as 1241 Deer Park Avenue, Suite 1 #1051, North Babylon, NY 11703. *See* <u>Exhibit 19</u>. On January 10, 2023, I spoke with Doug Weinstein, Broker for the leasing company RIPCO Realty. Mr. Weinstein said RIPCO Realty leases the property to the five companies occupying the plaza. Mr. Weinstein said that he was unfamiliar with Westborough SPE, LLC and that the address of 1241 Deer Park Avenue Suite 1, North Babylon, NY 11703 is the mailing address for their tenant, the retail store, Staples.

## O. DEFENDANT'S PURPORTED EVIDENCE SUPPORTING THEIR ALLEGED TITLE TO WESTBOROUGH SPE, LLC and LOCUS

On January 11, 2023, I received an email from Mr. Akouete in relevant part the following:

> "[w]e initially gained control of the management of the LLC with an agreement from Jan (F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Administrative Services, Inc.). However, we didn't stop there. We conducted further research into the ownership. Unfortunately, Jan Bluestein and Dyann Blaine did not have any Operating Agreement or Corporate Resolution that could us quickly determine ownership. Nevertheless, I found the three entities with equitable interest in the property through the mortgage agreement…"
>
> *See* Exhibit 7.

Mr. Akouete attached a mortgage agreement dated October 30, 1997, purporting to show additional owners of record of the locus other than Westborough SPE, LLC. The mortgage was recorded in the Worcester District Registry of Deeds at Book 19369, Page 85 and was discharged in Book 58446, Page 152. *See* Exhibits 8 & 9. The mortgage identified Westborough SPE, LLC as the mortgagor. Several additional parties were identified in the security agreement such as a tenant, guarantor(s) and equity investors. This mortgage is an assignment of lease and does not provide evidence of additional parties of interest. *See* Exhibit 8.

According to the assignment of lease mortgage document, "The principal amount of the Notes to be issued hereunder shall be $9,406,742.40. *See* Exhibit 8. The mortgage document was executed by "WESTBOROUGH SPE LLC, BABCOCK & BROWN ADMINISTRATIVE SERVICES, INC., its Manager, By: Its: President F. Jan Bluestein". *See* Exhibit 8. Per G.L. c. 156C, Section 24, unless otherwise stated in the operating

Page 19 of 39

agreement, the management of a LLC (limited liability company) shall be vested in its members. An operating agreement may provide for the management of the LLC in part or in full by one or more managers. However, a manager does not need to be a member of the LLC. *See* <u>G.L. c. 156C, Section 25</u>. It is reasonable to believe that F. Jan Bluestein (a/k/a Jan Blaustein Scholes) acting as manager of Westborough SPE, LLC had the authority to sign the assignment of lease mortgage. This document was not signed by F. Jan Bluestein (a/k/a Jan Blaustein Scholes) in any other capacity on behalf of Westborough SPE, LLC.

Mr. Akouete provided in the above-referenced email a list he is relying on to argue additional parties holding an equitable interest in the locus titled "Ownership History". The list provided by Mr. Akouete appears to be a recitation of the information provided by Mr. Hight of NRT in his affidavit provided to this Court and uploaded to the docket. *See* Exhibit 7, Exhibit 22 (Exhibit C therein). Rather than evidence of ownership, the information is evidence that Westborough SPE, LLC was the sole equity owner prior to the foreclosure judgment in this case. *See* <u>Exhibit 7, Exhibit 22</u> (Exhibit C therein).

In the above-referenced email Mr. Akouete alleges Hoyts Cinemas Corporation, Hoyts Cinemas Limited and Hoyts Cinemas America Limited (hereinafter referred to as the "Hoyts entities") have an equitable interest in the locus. *See* <u>Exhibit 7</u>. This assertion is not supported by fact. Rather, these Hoyts entities were designated as guarantors of the assignment of lease mortgage rather than the owner of the property. This mortgage has been discharged and therefore, the Hoyts entities no longer have a legal interest in the property. *See* <u>Exhibit 9</u>.

Included in the assignment of lease mortgage was Interstate Theaters Corporation (a/k/a Regal Cinemas) which occupied the property until 2017 when they were unable to

locate an owner of Westborough SPE, LLC and therefore could not extend their lease. Interstate Theaters Corporation (a/k/a Regal Cinemas) made the payments to the mortgage until it was paid in full and then vacated the property. *See* <u>Exhibit 22</u> (Exhibit C therein).

## P.  <u>LACK OF EVIDENCE OF ARTICLES OF ORGANIZATION, BY LAWS, CORPORATE RECORDS, CORPORATE WRITTEN OPERATING AGREEMENT, CERTIFICATE OF ORGANIZATION OR CORPORATE RESOLUTION</u>

Per G.L. 156D, Section 17.02 a foreign corporation authorized to transact business is subject to the said chapter outlining the statutes related to Business Corporations as well as the Massachusetts Limited Liability Company Act. *See* <u>G.L. c. 156C, Section 1</u>. According to G.L. c. 156D, Section 2.01, one or more persons may act as an incorporator or incorporators of a corporation by signing articles of organization and delivering them to the secretary of state for filing.

On January 11, 2023, Mr. Akouete advised that F. Jan Bluestein a/k/a Jan Blaustein Scholes and Dyann Blaine "did not have any Operating Agreement or Corporate Resolution that could help us quickly determine ownership." *See* <u>Exhibit 7</u>.

According to G.L. c. 156D, Section 2.02, Articles of Organization for business corporations provide the name and address of each incorporator and define the purposes of the corporation and the board of directors and shareholders. Supplemental information not considered part of the articles includes location of the initial registered office of the corporation and the names and addresses of the individuals who serve as the initial directors, president, treasurer and secretary. G.L. c. 156D, Section 2.02(d).

While both corporations are Foreign Limited Liability Companies, without any Articles of Organization or documentation that provides the same information from Delaware or

950

Massachusetts, it cannot be confirmed who the individuals are that serve as the directors, president, treasurer or secretary.

## Q. F. JAN BLUESTEIN a/k/a JAN BLAUSTEIN SCHOLES

F. Jan Bluestein a/k/a Jan Blaustein Scholes, was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and the President of Babcock & Brown Administrative Services, Inc., a company managing Westborough SPE, LLC. *See* Exhibit 18. According to the website for The State Bar of California "Jan Blaustein Scholes" was licensed to practice law until July 1, 2016, but was suspended for failure to pay fees. *See* Exhibit 29.

The address noted for "Jan Blaustein Scholes" by The State Bar of California was an apartment in New York, New York. *See* Exhibit 29. According to a search of TLO (a pay-for-search website powered by Experian), this was the most recent address for this party. Therefore, this was the first address this Court attempted to notice this party at by mailing a citation via certified mail. The citation was returned to the Court unsuccessfully and was noted by the USPS as "ATTEMPTED – NOT KNOWN". I then researched online in an attempt to see if I could find ownership of the apartment but was unsuccessful.

This Court, by request of the Plaintiff, issued a citation by deputy sheriff to this party at the same address. This service was also unsuccessful so additional research was done to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. Another search of TLO provided another mailing address for this party in New York, New York and a special citation was issued but was returned as unsuccessful and again was noted by the USPS as "ATTEMPTED – NOT KNOWN". The USPS tracking via their website states "Addressee Unknown".

951

Extensive research was conducted before and after the pendency of this case to try to locate the proper mailing address for F. Jan Bluestein a/k/a Jan Blaustein Scholes. An internet search uncovered a book she authored under the name of "Frances Jan Scholes" called "A Journey To Ladakh" published on January 1, 2014 and for sale. *See* <u>Exhibit 24</u>. According to the section titled "About the Author" she was general counsel and responsible for legal obligations of Babcock & Brown and married to Dr. Myron Scholes. *See* <u>Exhibit 24</u>. Again, Westborough SPE, LLC was not mentioned. *See* <u>Exhibit 24</u>.

An article titled, "A Tax Shelter Deconstructed" published by the New York Times on July 13, 2003 also mentions that Dr. Scholes and "Jan Blaustein" were married. *See* <u>Exhibit 30</u>. This article interestingly notes that Babcock & Brown with the help of general counsel, "Jan Blaustein" introduced Dr, Scholes to a way to defer, avoid or eliminate taxes on more than one-third of a billion dollars in profits from a hedge fund he created with others called Long-Term Capital. *See* <u>Exhibit 30</u>.

I researched the location of Dr. Myron Scholes and found that he was a professor at the Stanford Graduate School of Business located in Stanford, California. An address listed by TLO for F. Jan Bluestein a/k/a Jan Blaustein Scholes showed she may live in Atherton, California which is approximately 2.6 miles from Stanford, California.

On May 19, 2021, I researched the property records of the County Clerk of San Mateo County of Atherton, California and found information that appeared to show property owned by Scholes Jan Blaustein Trust in Atherton, California described as Map 47/18. *See* <u>Exhibit 25</u>. Research showed the property was described the same way by Tax Collector of San Mateo County. *See* <u>Exhibit 25</u>. On September 9, 2021, I searched the

Case 2:24-cv-00769-BK Doc 97-2 Filed 03/23/25 Entered 03/23/25 13:34:05 Desc Exhibit
DD - Opposition without Exhibits Page 953 of 1000 Page 25 of 40

953

online records of the San Mateo County Superior Court under Family Law and found no evidence of a divorce.

On June 9, 2021, this Court issued another special citation to F. Jan Bluestein a/k/a Jan Blaustein Scholes to be delivered to 34 Stern Lane, Atherton, California. Unfortunately, it was returned to the Court unclaimed. The envelope was returned to this Court with a label stating it was returned because there was no such number. However, with the use of the website of USPS, the tracking states that this special citation was unclaimed.

Upon reason and belief, this was the last known address for this party, and upon request by the Town, this Court issued a citation by deputy sheriff. On May 19, 2021, this property was reviewed via the website of the Tax Collector in the County of San Mateo finding the property to be assessed at $9,317,682.00. Per the process server, this property was protected by a security gate but a male responded to the process server through an intercom device acknowledging the citation was being placed there to be received by F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Rule 4 of the Massachusetts Rules of Civil procedure advises that personal service of a complaint may be made by delivering a copy of the same to the party intending to be served personally or by leaving it as her last and usual place of abode. Rule 4(d)(1) and G.L. c. 223, Section 31. Subsequently, the process server shall make proof of service in writing and return it to the Court. However, if the process server fails to provide proof of service, it does not affect the validity of the service. Rule 4(d)(1).

In the present case, the citation was left at the last and usual place of abode by reason of belief by the Plaintiff and proof of service in writing was returned to the Court.

The process server did not indicate that any information was presented that would lead him to believe the address was not the usual place of abode of F. Jan Bluestein a/k/a Jan Blaustein Scholes.

According to the most recent review of the LinkedIn profile for Jan Blaustein Scholes, she resides in Atherton, California, and under "Experience" it states she was General Counsel & Partner of Babcock & Brown until October 2007. *See* <u>Exhibit 23</u>. This profile also mentions that she has been the trustee of Jan Blaustein Schols 2005 Trust from October 2007 to the present. *See* <u>Exhibit 23</u>. As stated above, it appeared the address she was successfully served at was owned by the same trust.

On August 30, 2013, a complaint was filed in the Superior Court of California County of San Francisco, Case Number: CGC-13-533946, <u>Lee Debroff vs. Jan Blaustein Scholes, et al</u>. This case appears by the docket to have been settled but was a tort case alleging personal injury inflicted by Jan Blaustein through use of her motor vehicle negligently in a parking garage in San Francisco, California. *See* <u>Exhibit 31</u>. I reviewed the filings in the case and could not find an address reference for F. Jan Bluestein a/k/a Jan Blaustein Scholes.

Atherton and San Francisco California are approximately 35 miles away from each other. It would be reasonable to believe that F. Jan Bluestein a/k/a Jan Blaustein Scholes lived in Atherton, California as Plaintiff's research uncovered many connections to that town and those local to it such as San Francisco, California.

Further, under "Experience", her LinkedIn profile provides information about many other companies she claims to have held positions in such as managing director,

954

955

trustee, and director. The profile does not mention Westborough SPE, LLC or any position held in that company. *See* Exhibit 23.

It was established through communications with liquidators for Babcock & Brown Administrative Services, Inc. that the company does not have a legal interest in the locus or the right to transfer the property. Therefore, F. Jan Bluestein a/k/a Jan Blaustein Scholes by and/or through her previously held position as President of Babcock & Brown Administrative Services, Inc. does not have the legal ability to transfer the locus or the corporation, Westborough SPE, LLC.

In addition, prior to the entry of the judgment of foreclosure, I reviewed a column written by Jan Blaustein Scholes and printed in the Transcript Spring 2007 issue in the Boalt's Berkeley Center for Law. *See* Exhibit 26. This column does not mention medical issues from which F. Jan Bluestein (a/k/a Jan Blaustein Scholes) was then or previously suffering. Rather, it states that she was "talking to lots of women entrepreneurs about how I can help. I'm currently looking at wonderfully interesting opportunities in… biodegradable fuels, a children's Internet company, and a breast cancer detection company." *See* Exhibit 26. No mention of divorce was made in the column or by way of any other information found through the Town's due diligence. *See* Exhibit 26.

The Defendant presented as "Exhibit 10" a docket from the Hawaiian Family Court, Third Circuit, Kona Division. This was evidence not previously known to the Town regarding the mental capacity of F. Jan Bluestein a/k/a Jan Blaustein Scholes. *See* Defendant's Exhibit 10. The docket produced by the Defendant appears to show that as of January 3, 2023, there is an active case regarding the conservatorship and guardianship of "Frances Jan Blaustein Scholes". *See* Defendant's Exhibit 10. The docket notes an

appearance on June 3, 2019, by "Peter Balustin" and then that "Peter Blaustein" was to be appointed as conservator and guardian. *See* <u>Defendant's Exhibit 10</u>.

It appears by the docket, on July 18, 2019, an order entered granting the appointment of a conservator and guardian. *See* <u>Defendant's Exhibit 10</u>. The last activity in the case was on July 30, 2019, when an amended notice of appointment of conservator and guardian was docketed. *See* <u>Defendant's Exhibit 10</u>. This docket entry does not provide information regarding what amendment was made and the case appears by the docket to remain open. *See* <u>Defendant's Exhibit 10</u>.

Through the Town's diligent search efforts to locate F. Jan Bluestein a/k/a Jan Blaustein Scholes, it did not find evidence that she was residing out of the Country or that her mental capacity was in question.

The Defendant states in their motion that in 2004 F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke and was "incapable of properly executing her responsibilities as manager and real estate signatory for WSPE" and that she "retired from BBAS in 2007." The Defendant further states "Dyann took over Jan's roles and responsibilities for both BBAS and WSPE."

### R. **DYANN BLAINE**

Dyann Blaine was identified by the SOC as the Real Property Signatory for the "original" Westborough SPE, LLC and an officer of Babcock & Brown Administrative Services, Inc., the company previously managing Westborough SPE, LLC. *See* <u>Exhibits 18 & 32</u>. As the docket entry dated January 19, 2021, correctly reflects, notice of the tax lien foreclosure case was served upon this party of interest successfully. No response or answer was received by the Town or this Court.

956

## S.  COURT ALLOWED PLAINTIFF'S MOTION
## FOR ALTERNATIVE SERVICE BY PUBLICATION

On June 15, 2020, this Court allowed the Plaintiff's Motion for Alternative Service by publication. Additionally, the Plaintiff was to *attempt* to make direct service on "(1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock and Brown LP Liquidation." *See* Land Court Docket Entry 06/15/2020.

Plaintiff provided affidavits from Shirin Everette, Esq., of KP Law P.C., Town Counsel for Plaintiff, Jonathan Steinburg, Chief Assessor for the Plaintiff, and Allan E. Hight, of REO Management all indicating their substantial efforts made to locate the owners of the locus. *See* Exhibit 22.

## T.  BILL OF SALE AGREEMENT

On January 14, 2023, I received a Bill of Sale via email from Mr. Akouete. *See* Exhibit 20. This agreement is two (2) pages and states it was made on November 21, 2022, but was executed on December 8, 2022 by "Jan Blaustein Scholes, its President". The agreement is made between "WESTBOROUGH SPE, LLC., a Delaware corporation…" and "DENISE EDWARDS and LOLONYON AKOUETE"… "as joint tenants". *See* Exhibit 20.

The Bill of Sale further states "the Seller desires to sell and the Buyer desires to buy the business of a certain WESTBOROUGH SPE LLC known as WESTBOROUGH SPE and all assets thereof…." *Exhibit 20*. Per the agreement, the parties agreed to $100.00 to be paid as a deposit upon execution of the agreement and the reminder of the purchase

price of $646,000.00 to be "paid within 7 months of Buyer's receipt of this document." *See* Exhibit 20. I am not aware of the date the Buyers received the document.

The agreement states the "property to be sold hereunder shall be conveyed by this standard form Bill of Sale, duly executed by the Seller and/or an authorized representative of the Seller" but does not include a description of the locus. *See* Exhibit 20. Further, the agreement states the only debts owed by the Seller are annual corporation taxes and "Tax title: $391,541.93". *See* Exhibit 20. This amount noted on the agreement as the balance of the tax title was the amount advertised as the balance on the RFP.

This agreement was notarized in the State of Arizona but does not include information in the notarial certificate indicating if or how the notary officer identified the party executing the agreement, "Jan Blaustein Scholes, its President". *See* Exhibit 20. According to the Arizona Notary Public Reference Manual, published by the Department of State Office of the Secretary of State dated January 2023, "to deter fraud, to prove the authenticity of the signature… it's essential that a notary accept a valid form of identification, as defined in statutes, to determine the signer is who he or she claims to be." *See* Exhibit 28.

Further, the Defendant's motion states that F. Jan Bluestein (a/k/a Jan Blaustein Scholes) is residing in an assisted living facility in New Mexico but the Bill of Sale was notarized in the State of Arizona. The name of the assisted living facility was not identified by the Defendant.

The Bill of Sale is the only document potentially in existence in which she is identified as the President of Westborough SPE, LLC and it is self-serving. No other

evidence has been recovered evidencing that she was ever the President of Westborough SPE, LLC.

## U.  **IRS DOCUMENT REQUEST EVIDENCE FROM THE DEFENDANT**

In an email from Lolonyon Akouete on January 13, 2023, he advised me that in an attempt to confirm that F. Jan Bluestein a/k/a Jan Blaustein Scholes "is a managing member of the LLC" he advised he requested from the Internal Revenue Service (IRS) a Partnership Income Tax Return, Form 1065. However, the information he provided in an attachment to said email was two IRS Form 4506 both executed by Denise Edwards on December 21, 2022, Form 56 left blank, and a response letter from the IRS.

Said letter is dated December 20, 2022, and states "Thank you for your inquiry of Dec. 09, 2022" and advises "We can't reproduce the CP 575/576, Employer Identification (EIN) Assignment. However, this letter will serve as proof of EIN assignment verification." *See* Exhibit 27. Mr. Akouete did not provide a copy of the letter dated December 9, 2022, to which the IRS is responding to. The response letter from the IRS was addressed as follows:

> "WESTBOROUGH SPE LLC
> A DELAWARE LIMITED LIABILITY CO
> % F JAN BLAUSTEIN
> 1241 DEER PARK AVE STE 1 NO 1051
> NORTH BABYLON NY 11703"

The return address is the same address provided by Defendant as the current principal place of business and the address used on both copies of IRS Form 4506. One of the copies of IRS Form 4506 does not have the box checked above the signature. The box states "Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506." *See* Exhibit 27.

These documents do not appear to provide evidence that F. Jan Bluestein a/k/a Jan Blaustein Scholes was the President of Westborough SPE, LLC.

## V.  **LACK OF PROOF OF FUNDS**

According to the Defendant Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment, they have a pending claim with the California Unclaimed Property Division (CUPD) for the balance of a checking account owned by Westborough SPE, LLC in the amount of $1,293,646.83. *See* Defendant's Exhibit 14. Per the Defendant's motion, the CUPD requested additional information related to the claim.  A copy of the correspondence from CUPD advising what additional information was needed was not presented by the Defendant as evidence in this case. Rather a letter from the CUPD is presented in response to a phone call providing information on an unclaimed bank account that may belong to Westborough SPE, LLC. *See* Defendant's Exhibit 14.

The address on the letter provided by the Defendant from the CUPD shows it was sent to the following address:

WESTBOROUGH SPE LLC
C/O DENISE EDWARDS
137 N 25TH ST
WYANDANCH NY 11798

According to the property card records of the Town of Babylon this property is owned by Denise Edwards and is approximately five miles from the address used as the principal place of business of the "new" Westborough SPE, LLC. *See* Exhibit 19.

In an email I received from Mr. Akouete on January 14, 2023, I was informed that "We spoke to Harpreet K. Nakhal, the State Counsel, last week regarding the claim. We are planning to use the funds to redeem the property. We are also applying for a hard money loan from West Forest Capital in case the State does not release the funds before the motion

960

hearing." *See* <u>Exhibit 21</u>. Despite assurances by Mr. Akouete the tax title account balance will be paid in full, as of today, no proof of funds have been provided despite my request for proof of the same.

**W. <u>TAX TITLE ACCOUNT BALANCE</u>**

According to the Online information provided by the Assessor's Database for the Town the property is assessed as $2,082,000.00. The balance of the tax title account including principal, interest, fees and costs calculated to January 19, 2023, was $638,755.20. This balance included the following amounts:

> Taxes, interest, electric lien paid, water lien: $525,970.40
> Boston Board Up (to secure the property): $14,438.55
> Insurance: $38,419.96 (renewal date February 15, 2023)
> Eversource: $2,757.92
> Appraisal: $6,000.00
> KP Law – Legal Fees as of 01/13/2023: $32,797.97
> Law Office of Iris A. Leahy – Legal Fees as of 01/26/2023: $21,778.40
> Filing Fee: $515.00

As previously stated, the locus is benefited and burdened by a Reciprocal Covenants, Easements and Restrictions Agreement. The tax title account balance does not include the outstanding amounts due under a reciprocal maintenance agreement for snow removal and other maintenance services charged at $100,000.00 per year. The lack of payments towards the maintenance and snow removal costs due from the previous owner of the locus has created a significant financial burden on the two other parcels in the mall. *See* <u>Exhibit 22</u> (Exhibit C).

**X. <u>PROPERTY WAS SUBSTANTIALLY DAMAGED WHILE VACANT</u>**

When the locus became vacant the owners were not maintaining or protecting it from vandalism. There was no heat which led to pipes bursting and the property was vandalized resulting in significant damage despite the Town's efforts to secure the

property. Public safety concerns are ongoing as this property seems to be a draw for vandals. **ANALYSIS AND ARGUMENTS**

The Defendant's Motion should be denied because the moving party has not produced evidence to prove a true claim of legal interest in the locus and therefore there is no real likelihood of success on the merits.

## a) <u>STATUTORY LIMITATION</u>

While G.L. c. 60, section 69A allows petitions to vacate a decree of foreclosure within one year after the final entry of the decree, "Section 69A does not give one the automatic right to redeem but sets the time period within which petitions to vacate should be brought." <u>Vincent Realty Corporation v. City of Boston</u>, 375 Mass. 775 (1978).

In the present case, the Defendant brought a motion to vacate within on the last day of the one-year period after the final entry of the decree. However, the motion was not signed or filed by an attorney as required by law. The Defendant was advised of this legal requirement on several occasions but to date, the motion has not been refiled and no appearance by legal counsel has been docketed or received by the Plaintiff. Therefore, the Defendant has not filed an actionable motion to vacate the judgment before the one-year deadline.

## b) <u>PUBLIC POLICY AND EQUITY</u>

For most communities, the property tax levy is the largest revenue source. *See* <u>DLS Alerts, Cities and Towns, January 5, 2022</u>. Lack of property tax payments for years has substantially burdened the Town, the residents, and the businesses therein. The substantial diligent search efforts and efforts to secure the locus have been costly and time-consuming and have burdened the Town.

Page 33 of 39

The RFP process created another cost and time burden for the Town. The Town should be allowed to continue to exercise its legal right to sell the property and continue with the sale through the RFP process to the selected bidder as the Defendant has not produced evidence to establish they have a legal interest in the property. All information provided by the Defendant appears to be public records except for the Bill of Sale that is questionable at best.

The Bill of Sale was signed by F. Jan Bluestein a/k/a Jan Blaustein Scholes, who by Defendant's evidence was at that time deemed incapacitated and has been appointed a conservator/guardian. If F. Jan Bleustein has been deemed mentally incapacitated, she could not legally grant title to Westborough SPE, LLC and/or the locus. There is no evidence her conservator and/or guardian appointed in Hawaii, Peter Blaustein, was included in the Bill of Sale transaction.

As stated supra, the notarial certificate on the Bill of Sale does not present evidence that the person signing the document before the notary presented identification or alternatively was known to the notary. The validity of this document is in serious question. The Defendant rests their claim to title of the locus and Westborough SPE, LLC on this document but by Defendant's admission, they have not reviewed a written operating agreement or the like.

Further, of concern is the fact that the Defendant did not revive Westborough SPE, LLC but rather created another corporation under the same name in the Commonwealth of Massachusetts. The two corporations are not confirmed to be the same entity. Both entities have different managers and real estate signatories.

As a matter of equity, a petition to vacate a prior decree foreclosing the right of redemption under a tax title is "extraordinary in nature and ought to be granted only after careful consideration and in instances where . . . [it is] required to accomplish justice." Sharon v. Kafka, 18 Mass. App. Ct. 541, 542 (1984); Lynch v. Boston, 313 Mass. 478, 480 (1943). It would not accomplish justice to vacate the decree of foreclosure as the Defendant's legal interest in the locus is in question.

The CFO of Babcock & Brown Administrative Services, Inc. said they resigned as manager of Westborough SPE, LLC when they could not identify owners. Westborough SPE, LLC failed to notify the Town of a current mailing address for the purpose of receiving tax notices. Further, Westborough SPE, LLC did not respond to the Town before, during or after this case.

In sum, the Town fulfilled its obligations to notify interested parties of the foreclosure proceeding pursuant to Chapter 60, but the previous owner fulfilled none of their duties with respect to their ownership of the locus. It was these failures that made it impossible for the Town or the title examiner to discover the true ownership of Westborough SPE, LLC and thus the parcel.

The Honorable Judge Piper, in Yarmouth v. Laurie Snowden-Lebel, 17 LCR 654, included "whether the petitioner has sat idly on his rights for an unreasonable period of time before asserting them" as a factor that should be considered when someone claims a due process violation.

The Defendant waited to schedule file a motion to vacate without legal representation until one day prior to the one-year period following the decree of foreclosure in hopes of squashing the RFP sale and garnering more time from this Court to continue

964

due diligence to confirm that the Bill of Sale was a legal transfer of Westborough SPE, LLC and the locus as well as to obtain funds to redeem.

This Honorable Court should not vacate the decree of foreclosure and allow redemption by this party as it would not be based in equity.

### c) **<u>DENIAL OF DUE PROCESS</u>**

In this case, it does not seem to be disputed that the Land Court-approved title examiner's title report was thorough and proper; that during the pendency of the foreclosure proceeding this Court allowed an alternative form of notice by citation of publication due to the unanswered question regarding the owners of Westborough SPE, LLC and the Town was to *attempt* to make direct service on F. Jan Bluestein a/k/a Jan Blaustein Scholes among others. *See* <u>Land Court Docket Entry 06/15/2020</u>.

The Defendant does not argue that service was improper upon any party of interest except upon F. Jan Bluestein a/k/a Jan Blaustein Scholes. However, the Town disagrees and has presented sufficient evidence to prove substantial diligent search efforts to notice her. This Court received and reviewed the return of service and marked it as successful.

Additionally, the Defendant does not argue that F. Jan Bluestein a/k/a Jan Blaustein Scholes did not receive the citation served upon her by sheriff but rather that the citation was left at the residence of her ex-husband. Evidence found by the Town at the time of the sheriff's service was reasonably relied upon to believe F. Jan Bluestein a/k/a Jan Blaustein Scholes owned the property she was served at.

Further, as can be inferred from the information presented, F. Jan Bluestein a/k/a Jan Blaustein Scholes is a sophisticated businesswoman who has had significant experience in matters of managing real property. Therefore, it is reasonable to conclude that she was

not only aware of the fact that taxes were owed, but also of the consequences of failing to pay.

Additionally, it can be inferred that although the Defendants assert that F. Jan Bluestein a/k/a Jan Blaustein Scholes suffered a major stroke in 2004, evidence presented by the Defendants shows that she was not deemed incapacitated until 2019 and was an active attorney in the State of California until July 1, 2016. *See* <u>Exhibit 29</u> and <u>Defendant's Exhibit 10</u>.

Additionally, the Defendant asserts Dyann Blaine took over duties for F. Jan Bluestein a/k/a Jan Blaustein Scholes and received timely notice but sat idly and did not answer or respond to this Court to date. Further, Dyann Blaine does not appear to have been included in the Bill of Sale transaction.

### d) <u>ABILITY TO REDEEM</u>

According to the Defendant, obtaining funds to redeem is in process. *See* <u>Exhibit 21</u>. As far as the Town is aware, the Defendant has not received the funds unclaimed in California and have not secured financing. Further, upon reason and belief, the balance of the purchase price due under the Bill of Sale has not been paid. *See* <u>Exhibit 20</u>.

Time is of the essence in order for the Town to be made whole through the RFP sale, therefore, no continuance should be allowed by this Court.

### II. PLAINTIFF'S REQUEST FOR RELIEF

The Town believes the Defendant's Motion to Vacate is frivolous and argues the cost of defending the same should not be the Town's burden if this Court denies the Defendant's motion, the Town moves this Court to award from the Defendant all legal fees

charged to the Town since the date Lolonyon Akouete requested to redeem and all legal fees related to the same.

### III. CONCLUSION

The Defendants are not entitled to the vacating of the decree of foreclosure entered by this Honorable Court on either legal or equitable grounds.

The Defendants' motion does not set forth adequate grounds to justify vacating the decree of foreclosure. Based on the Defendants' own assertions they have not done their due diligence before signing the Bill of Sale and cannot provide proof that this document is binding to transfer ownership of the locus.

Because both the statutory law concerning the validity of the Defendants' title and interest in the locus and Westborough SPE, LLC, and the equities in this case, weigh against disturbing the Court's final judgment of foreclosure, the Defendants' motion should be denied.

WHEREFORE, the Defendant's Motion to Vacate Foreclosure Judgment should be DENIED WITH PREJUDICE.

Respectfully submitted,
TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

## CERTIFICATE OF SERVICE

I, Iris A. Leahy, attorney for the Plaintiff, hereby certify that I have served the foregoing Motion in Opposition by first class mail, postage prepaid, to the following:

Lolonyon Akouete, Manager
Denise Edwards, Manager
Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

TOWN OF WESTBOROUGH
By its Attorney,

Date: January 27, 2023

Iris A. Leahy, Esq.
Law Office of Iris A. Leahy
4 Open Square Way, Suite 217
Holyoke, MA 01040
BBO # 697783
Phone: (413) 322-8318
Fax: (413)322-8661

Case 24-10709-JTD   Doc 970   Filed 06/28/24   Entered 06/28/24 11:34:39   Desc Main
Bankr. Court Docket 969   Page 10 of 11

# Exhibit EE



| 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al. |
|---|

Case Type:
Tax Lien

Case Status:
Closed

File Date
07/08/2019

DCM Track:


Initiating Action:
Tax Lien - one tax taking

Status Date:
07/08/2019

Case Judge:
Speicher, Hon. Howard P.

Next Event:



### Property Information

Turnpike Road
Westborough
RECORD

---

| All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition |
|---|---|---|---|---|---|---|---|

### Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
Attorney
Bloom, Esq., Dawn E
Bar Code
659839
Address
43039 Boardwalk Loop
Punta Gorda, FL  33982
Phone Number
(413)529-9936
Attorney
Leahy, Esq., Iris Ann
Bar Code
697783
Address
Law Office of Iris A. Leahy
4 Open Square Way
Suite 217
Holyoke, MA  01040
Phone Number
(413)322-8318

**More Party Information**

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
Attorney
Nathanson, Esq., Alvin S
Bar Code
367480
Address
Nathanson and Goldberg, P.C.
183 State St
Fifth Floor
Boston, MA  02109
Phone Number
(617)210-4810
Attorney
Schlager, Esq., Scott Adam
Bar Code
695421

- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA  02109
- Phone Number
- (617)909-4511

**More Party Information**

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

Party Attorney

**More Party Information**

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

Party Attorney

**More Party Information**

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

Party Attorney

**More Party Information**

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

Party Attorney

**More Party Information**

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

Party Attorney

**More Party Information**

**Interstate Theaters Corporation**
- Defendant

Party Attorney

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020  Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted:  Motion scheduled on:<br>        06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued.  Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 11/16/2020. | | |
| 09/22/2020 | Land Court notices mailing – Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN  37920<br>Tracking Number: 71901706197000959805 | $59.75 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA 02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA 94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA 94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY 10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/26/2020<br>Return : 09/30/2020<br>On : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 09/30/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959812 | | Image |
| 10/01/2020 | Successful Service<br>Method : Certified Mail<br>Issued : 09/22/2020<br>Service : Service<br>Served : 09/28/2020<br>Return : 10/01/2020<br>On : Interstate Theaters Corporation<br>Signed By :<br>Reason : Successful<br>Comment :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br> Method   : Certified Mail<br> Issued   : 09/22/2020<br> Service  : Service<br> Served   : 09/30/2020<br> Return   : 10/02/2020<br> On       : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br> Signed By :<br> Reason   : Unsuccessful<br> Comment   : attempted – not known<br> Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued.  Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing – Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY   10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br> Method   : Certified Mail<br> Issued   : 04/08/2021<br> Service  : Service<br> Served   :<br> Return   : 04/15/2021<br> On       : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br> Signed By :<br> Reason   : Unsuccessful<br> Comment   : attempted – not known<br> Tracking #: 71901706197000977816 | | Image |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing – Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service | $11.96 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA  94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued.  Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br> Method    : Certified Mail<br> Issued     : 06/10/2021<br> Service   : Service<br> Served    :<br> Return    : 09/21/2021<br> On         : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br> Signed By :<br> Reason     : Unsuccessful<br> Comment   : no such number<br> Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed.  (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to:  Iris Ann Leahy, Esq. 4 Open Square Way  Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023  Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023  Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 01/19/2023 10:00 AM Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/09/2023  Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 02/09/2023 02:00 PM Has been: Rescheduled to February 23, 2023 at 2:00pm Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.  Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 02/23/2023  Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted: Motion to Vacate Judgment scheduled on: 02/23/2023 02:00 PM Has been: Rescheduled Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.  Judge: Kelley, Ellen M. | | |
| 02/23/2023 | Scheduled Judge: Patterson, Deborah J. Event: Motion to Vacate Judgment Date: 03/23/2023  Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed  by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Conservator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>    03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023  Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | Image |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintiff'f (First) Request for Production of Documents,filed | | |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled Judge: Speicher, Hon. Howard P. Event: Pre-Hearing on Motion to Vacate Judgment Date: 08/10/2023 Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted: Pre-Trial Conference scheduled on: 08/17/2023 02:00 PM Has been: Rescheduled For the following reason: Request of Plaintiff(s) Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled Judge: Speicher, Hon. Howard P. Event: Pre-Trial Conference Date: 08/31/2023 Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | Image |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |
| 08/31/2023 | Notice of Docket Entry: Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter. Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on: 08/31/2023 02:00 PM Has been: Not held per request of the defendant. Hon. Howard P. Speicher, Presiding | | |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- **Money on Deposit**

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- | Money Distributed by Court | |
  |---|---|
  | **Payment Type** | **Amount** |
  | Disbursement | $558.83 |
  | | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

# Exhibit FF



Peter L Blaustein ›

Hello Peter How r you? Just checking to see if you have any additional questions and to see if you have decided to allow your mom to see if she can recover the funds. She seems to have the best chance to do so and believes that as well. Please call and let me know what you decide. Thank You. Have a Great day

Pblaustein@gmail.com

Ok I sent the email and the notary is Billy Wahl and her number is 408-361-3316. Thank you. Please me know we are good !

Thu, Sep 15, 5:59 PM

We are good to proceed

Please have Billy connect with my mom and she can sign the docs and provide copies of her information

Tuesday 8:55 AM

Good morning Peter, how are you? this is Denise Edwards, wanted to let you know that we are working with an Attorney. He is preparing an Affidavit for your mother to sign and wants to give you a call to get your Permission . If you can please call me back, I can explain the details. Thank you for your time. Praying all is well.

iMessage

# Exhibit GG



# MALIA M. COHEN
## California State Controller

February 8, 2023

Westborough SPE LLC
c/o Denise Edwards
1241 Deer Park Ave., Suite 1 #1051
North Babylon, NY  11703

Re:     Unclaimed Property Claim Identification Number 4853303

Dear Ms. Edwards:

This letter is in response to the above-referenced Unclaimed Property Claim.  The claim was referred to the Legal Office for review.  As explained in more detail below, after review, the claim must be denied.

This claim was submitted for one property identified as number 1019294209.  This property was remitted to the State Controller's Office by MUFG Union Bank as a checking account in the amount of $1,293,646.83.  The owner is reported as "Westborough SPE LLC" at a last known address of "50 California St., Suite 3610, San Francisco, CA  94111."

It appears to be your contention that you are entitled to these funds because you purchased the assets of Westborough SPE LLC.  In support of your claim you submitted a Bill of Sale, a Certificate of Revival of Westborough SPE LLC from Delaware Secretary of State, a Foreign Limited Liability Company Application for Registration from the Massachusetts Secretary of State, proof of FEIN, and Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment filed with the Land Court for the Commonwealth of Massachusetts.

Based upon the documentation submitted and our research, it appears that Westborough SPE, LLC was a Delaware entity.  Based upon information received by the State Controller's Office, Westborough SPE, LLC was manager run as opposed to member or owner run.  The manager was Babcock & Brown Administrative Services, Inc., a Delaware corporation.  Officers of Babcock & Brown Administrative Services, Inc. included Jan Blaustein Scholes, James Jaworski, and Dyann Blaine.

300 Capitol Mall, Suite 1850, Sacramento, CA 95814  P.O. Box 942850, Sacramento, CA 94250  Fax: (916) 322-4404
sco.ca.gov

Westborough SPE LLC
February 8, 2023
Page 2

The Bill of Sale dated November 21, 2022, between Westborough SPE, LLC and Denise Edwards and Lolonyon Alouete was signed by "Jan Blaustein Scholes, its President." Jan Blaustein Scholes has suffered from multiple strokes since 2004. In 2019 the Hawaii Third Circuit, Kona Division granted Conservatorship and Guardianship over the person and estate of Frances Jan Blaustein Scholes to her son, Peter Blaustein. As Jan Blaustein Scholes has been judicially declared to lack capacity, she is unable to enter into contracts. After review, the Bill of Sale was signed by Jan Blaustein Scholes after she was declared to be incapacitated and had a Conservatorship and Guardianship entered over her person and estate. Therefore, the Bill of Sale is void. As the Bill of Sale is void, you could not have acquired any interest in Westborough SPE LLC and your claim for this property must be denied.

Additionally, it should be noted that even if it is determined that Jan Blaustein Scholes had the capacity to enter into the contact, it does not appear that you would be entitled to the funds in question. It appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC. It appears that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC. At this time our office is lacking sufficient information to determine whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC.

For the reasons discussed above, the claim is denied.

Sincerely,

HARPREET K. NAKHWAL
Staff Counsel

HKN/jh

cc:     Coleen Kimler, Bureau Chief, Unclaimed Property Division, State Controller's Office

# Exhibit HH

Case 24-10769-JKS Doc 702-8 Filed 03/28/25 Entered 03/28/25 13:31:06 Desc Exhibit HH - Document 2023 Gen 985 Page 1 of 3

| From: | Scott A. Schlager <sas@natgolaw.com> |
|---|---|
| Sent: | Thursday, June 29, 2023  : 7 PM |
| To: | David Ferris;   rian  . Charville |
|  c: | Lolonyon Akouete; deniseedwards818@yahoo.com; sgordon@gordonfirm.com |
| Subject: | Westborough SPE LLC - Legal   pinion from Delaware Corporate Counsel in-lieu of   ankruptcy Filing |
| Attachments: | Documents from Jan   laustein Scholes - June 29 2023.pdf; Ellisa Habbart - The Delaware Counsel   roup, LLC ( DC  ).pdf |
| m  ortance: | High |

External (sas@natgolaw.com)

Report This Email  FAQ  Skout Email Protection

Hi David and Brian,

Our not hearing back from you leads us to the conclusion that you are not wanting to finance a bankruptcy proceeding. However, we do have an important update to share with you on the authority side of the equation, that may change your reasoning.

Attached are 3 documents that we were able to have F. Jan Blaustein Scholes execute:

1. **Delaware Certificate of Correction** – Nullifying the Certificate of Cancellation/Withdrawal of Babcock & Brown Parallel Member LLC executed on June 23, 2023 by F. Jan Blaustein Scholes as Manager. This LLC is the successor-in-interest to Babcock & Brown Administrative Services, Inc. (a DE Corporation) that was the original listed manager of Westborough SPE LLC, the owner of the 231 Turnpike Road, Westborough, MA real property.
2. **Written Consent of the Manager of Babcock and Brown Parallel Member LLC, a DE LLC**. – This document revises the "Bill of Sale" document and changes the name and purpose to a transfer of Manager role only. This document was executed on June 26, 2023 by F. Jan Blaustein Scholes and notarized in Maricopa County, Arizona by Billie J. Wahl.
3. **Durable Power of Attorney** for Babcock and Brown Parallel Member LLC to Lolonyon Akouete and Denise Edwards.

We believe that we have sufficient authority to conduct all business on behalf of Westborough SPE LLC. To that end, and in-lieu of filing for Bankruptcy, we would like to obtain a formal legal opinion to present to the Land Court from a noted Delaware corporate law authority, Ellisa Habbart of The Delaware Counsel Group, LLC. I have spoken with Attorney Habbert and she is able to draft a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC and state her opinion that under Delaware law, a revived Westborough SPE LLC with the same FEIN # is the same entity and thus the owner of the real property in Westborough, MA and the party entitled to the unclaimed funds in California.

In order to obtain this legal opinion, Attorney Habbart has requested a retainer of $10,000.00. She stated that she would be able to prepare the opinion prior to the July 6th, 2023 discovery deadline.

Instead of financing a bankruptcy proceeding at this time, would you be amenable to incurring $10,000.00 for payment to Attorney Habbart for a legal opinion and testimony to present in Court? Ideally, if you could please let us know if you

would be interested by tomorrow morning preferably, that would be much appreciated so we can engage Attorney Habbart.

Scott

Scott A. Schlager
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

988

# Exhibit II

| From: | Lolonyon Akouete <info@smartinvestorsllc.com> |
|---|---|
| Sent: | Friday, December 1, 2023 6:38 AM |
| To: | Jonathan oldsmith |
| c: | STP egion01.W .ECF@usdo .gov; Scott A. Schlager; ris Leahy; cmulhearn@mulhearnlawri.com; Jeffrey T. lake; trusteedocs1@gkalawfirm.com; rian iley; oger L. Smerage; Carey, Paul W. |
| Subject: | e: rgent Appeal for a Timely and Cost-effective esolution |
| Attachments: | 19 TL 000768 CourtViewForm-388809939-1.pdf; M 070.PN ; Smart nvestors LLC Mail - 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.pdf |

Jonathan,

Can you please consider my suggestions for resolving this matter quickly?

I hope you won't waste valuable time trying to figure out how to remove the land core case to the bankruptcy court. Under MGL c. 185 § 1(b), the Land Court has the exclusive, original jurisdiction of proceedings for the foreclosure and the redemption of tax takings made under MGL c. 60.

We shouldn't be afraid of the Land court just because we have a hostile and biased judge.

Westborough SPE LLC's due process has been violated. F. Jan Bluestein, a/k/a Jan Blaustein Scholes, was a Real Estate Signatory and agent for Westborough SPE LLC and President of Babcock & Brown Administrative Services, Inc. Unsuccessful service was attempted on F. Jan Blaustein Scholes as indicated by the Return of Service filed with the Land Court on October 02, 2020. No Land Court Notice was ever provided to Babcock & Brown Parallel Member LLC, a Delaware limited liability company, as a successor in interest to Babcock & Brown Administrative Services LLC as a successor in interest to Babcock & Brown Administrative Services Inc. The town's having Peter Blaustein sign an illegal Waiver of Notice and Assent to the Entry of Judgment is an acknowledgment that they never gave proper notice to F. Jan Blaustein.

Could you please file an appearance in the land court so that the pretrial conference can be rescheduled? Prior to the Pre-trial Conference, the Parties shall discuss (1) the issues presented by the case, and (2) whether ADR (Alternative Dispute Resolution) may be an appropriate route to narrow the issues or resolve the case, as indicated by the court. This will provide the proper avenue for negotiation.

I have gathered evidence of the judge's bias. In case the judge maintains his attitude towards us after the pretrial conference, you have the option of filing a motion for recusal to have the judge removed from the case. If the judge declines to recuse himself and issues an unfair decision, we can always resort to an appeal.

We should not allow the town to bully us into making an unfair settlement.
If the town is so determined to sell the property to Lax Media, they can just ask them to raise their offer. (The town had accepted a 5 million offer from LA Media to buy the property in November 2018)

If you rescind your offer to Ferris Development Group LLC, it will result in additional legal complications. See attached image.

If you need funds to cover legal costs, you should get the funds from California back as soon as possible.

Thank you,
Lolonyon Akouete
Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

**Due Process  e  uirement**: Due process is a fundamental legal principle that requires fair procedural practices when the government acts in a way that affects a person's rights. In tax foreclosure, due process primarily involves ensuring that property owners receive proper and timely notice of the tax proceedings and have an opportunity to respond or challenge the proceedings. The Massachusetts case law, as referenced in the information, underscores the importance of notice being "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

**acating the  udgment within  ne  ear**: If a property owner wants to vacate a foreclosure judgment within one year of its entry, they can do so by paying the redemption amount plus interest. This period allows property owners a last opportunity to reclaim their property by fulfilling their tax obligations. However, the process of vacating the judgment is not automatic, and the court may require evidence of extenuating circumstances to allow the vacating of the judgment.

**acating  udgment on Due Process  rounds After  ne  ear**: After the one-year period, the judgment of foreclosure becomes final and can only be vacated upon a showing of a denial of due process. This means that if a property owner can demonstrate that the foreclosure process violated their due process rights (e.g., they did not receive adequate notice of the tax proceedings), they might succeed in having the foreclosure judgment vacated, even after the one-year period. This aspect of the law provides a safeguard against potential procedural injustices in the foreclosure process.

1. **allage Lincoln, LLC   Williams,     Mass          :**
   **A   lication**: This case provides a comprehensive review of the laws regarding real estate tax collection in Massachusetts. It details the process of tax taking and the subsequent rights and obligations of municipalities and property owners. It emphasizes the importance of due process in tax foreclosure proceedings, particularly in the service of notice and the opportunity to respond or challenge.

2. **own of  orth  eading   Welch,    Mass A    Ct           :**
   **A   lication**: This case discusses the finality of a foreclosure judgment and the conditions under which it can be vacated. It specifically notes that after one year, a foreclosure judgment can only be vacated upon a showing of a denial of due process, highlighting the significance of due process in these matters.

3. **own of Bourne   Coffey,    Mass A   Ct           :**
   **A   lication**: It clarifies the requirements for vacating a tax foreclosure judgment. It states that a petition brought within one year needs to show extenuating circumstances, whereas a petition brought after one year must demonstrate a due process violation.

4. **incent  ealty Cor      Boston,    Mass          :**
   **A   lication**: This case examines the criteria for allowing a petition to vacate a tax foreclosure judgment within one year. It clarifies that such a petition is extraordinary and should only be granted in instances where it is required to achieve justice.

5. **own of Ando er   tate in er s , nc ,    Mass          :**
   **A   lication**: This case cites the fundamental requirement of due process in legal proceedings, particularly the need for notice that is reasonably calculated to inform interested parties of the action and allow them to present objections.

6. **Christian    Mooney,     Mass          :**
   **A   lication**: This case addresses the invalidation of tax titles due to incorrect tax assessments, emphasizing the need for accurate and non-misleading assessments in the tax process.

7. **ardy   aeckle,    Mass          :**
   **A   lication**: It clarifies the assessment requirements for parcels with no person in possession, including the due diligence required of assessors in identifying the owner of record.

8. **Barte ian   Cullen,     Mass          :**

2

990

**A** **lication**: This case discusses the burden of proof in situations where an error in the tax process is identified. It stipulates that the party asserting the insubstantiality of the error must prove this fact according to each case's circumstances.

On Mon, Nov 20, 2023 at 9:02 PM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:

Hello everyone,

I hope this message finds you all doing well. I am reaching out again to let you know that I have secured an attorney to represent Westborough SPE LLC. However, I still need to come up with an additional 20,000 for the retainer fee, which I am currently working on. While I'm taking care of that, I wanted to discuss with you all whether we could settle this matter without incurring further legal expenses.

A Chapter 7 Trustee has been appointed, and the trustee's request to employ his law firm as counsel has been granted. Furthermore, the meeting of creditors has already taken place.

I urge all parties involved to avoid any further delays in this case. Although I understand that the Town is considering selling the property to Lax Media for 2.5 million, it would be unfair to do so since Ferris Development Group is willing to pay 2.875 million and close in just 14 days, unless Lax Media is willing to match that offer.

Once I have a lawyer, I will object to any unfair settlement. It is in the best interest of everyone involved to be reasonable and come to an agreement.

This is in line with section 704(a)(1), which states that a trustee should close an estate as quickly as possible in the best interest of the estate. Delays in closing the case reduce the return to creditors, undermine the creditors' and public's trust in the bankruptcy system, increase the trustee's exposure to liability, raise administrative costs, and in cases involving non-dischargeable pre-petition tax liabilities, expose the debtor to increased penalties and interest. Delays also lead to public criticism of the bankruptcy process.

Thank you for your time and attention in this matter.

Lolonyon Akouete
Manager of Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

On Wed, Oct 25, 2023 at 7:48 AM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:

Dear Mr. Riley, Blake, and Smerage,

I am writing on behalf of Westborough SPE LLC, expressing our growing concern regarding the protracted nature of the simple motion to vacate that has been in process for the past 10 months. It is disheartening to note that this prolonged legal engagement has resulted in Westborough SPE LLC incurring over 140,000 in legal fees.

It is our firm belief that the Town seems to be employing scorched earth litigation tactics. By unreasonably increasing our litigation expenses, the Town is not only adding to the financial burden on Westborough SPE LLC but is also exposing itself to potential liability. As per 28 U.S. Code § 1927, any entity that unreasonably and vexatiously multiplies proceedings can be held responsible for the excess costs and attorneys' fees.

I sincerely hope it doesn't come to that. However, to safeguard our interests, we are on the brink of engaging an attorney to counter any further delays, especially in the bankruptcy court.

It's noteworthy to mention that there are numerous cases where both parties, without compromising their interests, work collaboratively to ensure swift resolutions with minimal judicial involvement. However, it's deeply regrettable when the opposite approach is taken, leading to endless disputes and necessitating frequent judicial intervention. This not only strains our resources but also overburdens our judicial system.

In light of the above, I earnestly urge the Town of Westborough to re-evaluate its stance and consider a swift and amicable settlement. This will undoubtedly save both sides from incurring further unnecessary expenses and will stand as a testament to the Town's commitment to its residents and businesses.

Let's work together towards a resolution that is in the best interest of all parties involved.

Warm regards,

Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

# Exhibit JJ

**AttyLeahy@outlook.com**

| | |
|---|---|
| **From:** | Lolonyon Akouete <info@smartinvestorsllc.com> |
| **Sent:** | Saturday, December 16, 2023 8:22 AM |
| **To:** | Iris Leahy |
| **Subject:** | Please pass on this urgent message to the town of Westborough |
| **Attachments:** | gov.uscourts.mab.511599.56.0.pdf; Filed Affidavit of Lolonyon Akouete and Exibit A.pdf |

Attorney Leahy,

Could you please pass on this communication to the Town of Westborough?
The trustee has sent a detailed proposal to Attorney Smerage, who represents the Town of Westborough, regarding the sale of the property under Bankruptcy Code Section 363. The proposal allows a sale to Ferris or any higher bidder and has been reviewed by the Select Board. However, they need more time to decide and have requested to postpone the hearing on the Motion for Relief from Stay until early February.

It is not uncommon for the Select Board to need additional time to review and consider such proposals, especially when they involve complex legal and financial decisions. However, due to the unique circumstances surrounding this case, it is requested that the Select Board hold an emergency meeting and involve all necessary parties to make a decision. This will prevent the hearing on the Motion for Relief from Stay from being continued.

If the hearing is continued, the Town of Westboro should expect another lawsuit after the sale of the property. I intend to bring a case for malicious prosecution and abuse of process against the town. This is not a threat but an honest communication of intentions.

The town can avoid this situation by being responsible and quickly resolving the matter instead of dragging it out further.

I do not wish to postpone the hearing scheduled for Thursday, December 21, 2023. The case has been ongoing for more than a year without reason.


Thank you,

Lolonyon Akouete
Manager of Westborough SPE, LLC
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
info@smartinvestorsllc.com
(443) 447-3276

# Exhibit KK

Case 24-10769 Doc 970-2 Filed 03/23/26 Entered 03/23/26 13:38:06 Desc Exhibit KK - Dec 2023 Page 1 of 4

| From: | Lolonyon Akouete <info@smartinvestorsllc.com> |
|---|---|
| Sent: | Tuesday, December 26, 2023 6:    AM |
| To: | Aedinberg@westboroughma.gov;   ohnson@westboroughma.gov; Smarshall@westboroughma.gov; Skeogh@westboroughma.gov; Pwelch@westboroughma.gov |
| c: | kwilliams@westboroughma.gov; kfoster@westboroughma.gov;   oger L. Smerage;  ris Leahy; Jonathan   oldsmith |
| Subject: |   e:   rgent Call for January Meeting on Settlement Proposal Amidst Multiple Legal Disputes  nvolving 231 Turnpike   d, Westborough |

Dear Members of the Select Board,

I am writing to follow up on my previous communication regarding the critical need for a January meeting to discuss the settlement proposal by the bankruptcy trustee, concerning the ongoing legal matters involving Westborough SPE LLC and the property at 231 Turnpike Rd, Westborough, MA 01581.

As we navigate these multifaceted legal proceedings, it is crucial to reflect on the Board's established pattern of governance:

1. **Efficient Decision Making**: The Board's history of holding regular, bi-weekly meetings exemplifies a commitment to timely and efficient handling of town affairs. The proposed 45-day delay in addressing this matter seems to be a significant departure from this commendable practice, especially given the urgency and complexity of the current situation.
2. **Ca  ability for  imely Deliberation**: Your ability to swiftly address urgent matters, even within the constraints of the Open Meeting Law, has been evident in past dealings. This capability strongly suggests that a shorter timeframe would be sufficient for considering the Trustee's proposal. A prolonged delay to February appears unnecessary and inconsistent with the Board's demonstrated efficiency and standard operating procedures.
3. **  easonal   ariations**: While acknowledging the impact of the winter holidays, it is important to note that the Board has successfully managed such seasonal variations in the past. Therefore, scheduling a meeting in January, rather than extending the delay to February, aligns better with the Board's historical practice of maintaining consistent governance activities throughout the year.

Given these considerations, and the interconnected nature of the legal disputes involving Westborough SPE LLC, an expedited January meeting would be instrumental in moving towards a resolution. Such a meeting would not only be in keeping with the Board's established rhythm of responsive governance but also mitigate the risk of further legal complications and financial implications for all parties involved.

I respectfully urge the Board to reconsider the proposed scheduling and recognize the criticality of a prompt and collaborative approach. Your timely action in this matter is highly valued and will be seen as a constructive step towards an effective resolution.

Thank you for your immediate attention to this urgent issue. I look forward to your prompt response and am hopeful for a positive outcome.

Sincerely,

Lolonyon Akouete

Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051

North Babylon, NY 11703

info@smartinvestorsllc.com

(443) 447-3276

On Sat, Dec 23, 2023 at 12:10 PM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:
Dear Members of the Select Board,

As Manager/Creditor of Westborough SPE LLC, deeply involved in the ongoing legal disputes concerning 231 Turnpike Rd, Westborough, MA 01581, I am compelled to address the necessity of a timely meeting regarding the settlement proposal put forth by the bankruptcy trustee. Presently, we are engaged in multiple legal proceedings, including:

1. Town of Westborough v. Westborough SPE LLC, Case No: 19 TL 000768, Suffolk County Superior Court-Land Court.
2. Civil Action #1:23-cv-12017, U.S. District Court for the District of Massachusetts.
3. Debtor - Westborough SPE LLC, Involuntary Chapter 7, Case No: 23-40709-CJP.
4. Ferris Development Group, LLC. v. Town of Westborough, Lax Media, LLC, and Lax Media MA, LLC, Worcester Superior Court C.A. No. 2285C  01281.

These interconnected cases reflect a complex legal landscape, necessitating an efficient and proactive approach. The settlement proposal from the bankruptcy trustee offers a potential pathway toward resolving these disputes. Given this context, it is imperative that the Select Board convenes in January, rather than deferring until February.

The Board's established pattern of diligent and responsive governance, as evidenced by your meeting schedule in 2023, further underscores the feasibility of this request. Addressing this proposal in a timely manner aligns with the Board's commitment to efficient and effective resolution of pressing town matters.

I must also express my growing concern regarding the potential for additional legal action. Should there be unnecessary delays in resolving these cases, I am considering initiating legal proceedings against the town for malfeasance, malicious prosecution, and abuse of process. Such a course would be regrettable but may become necessary to protect the interests of Westborough SPE LLC.

 iolation of due process is a fundamental right that should be adjudicated promptly. It shouldn't be subject to multi-year litigation. We discourage this litigation strategy.

An expedited January meeting to discuss the trustee's settlement proposal could be pivotal in avoiding further legal entanglements and financial implications for all parties involved. It offers an opportunity for a collaborative approach towards a mutually beneficial resolution.

I trust the Board will recognize the urgency and critical nature of this matter and will act accordingly. Your prompt scheduling of this meeting will be greatly appreciated and viewed as a constructive step towards a resolution.

Thank you for your immediate attention to this matter. I eagerly await your response and hope for a positive and proactive approach in addressing these complex legal issues.

Sincerely,

Lolonyon Akouete

2

997

Manager of Westborough SPE, LLC

1241 Deer Park Ave., Suite 1, #1051

North Babylon, NY 11703

info@smartinvestorsllc.com

(443) 447-3276

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

CERTIFICATE OF SERVICE

1

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing Exhibits to the Town of Westborough's Motion to Dismiss Bankruptcy Case to be served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to the following unregistered parties:

Stephen F. Gordon
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
sgordon@gordonfirm.com
*Attorney for Petitioning Creditors*

Jonathan R. Goldsmith
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
trusteedocs1@gkalawfirm.com
*Attorney for Chapter 7 Trustee*

Richard King
Office of US. Trustee
446 Main Street
14th Floor
Worcester, MA 01608
*Attorney for the U.S. Trustee*

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703
*Debtor*
(by U.S. mail)

Scott A. Schlager
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109
sas@natgolaw.com
*Attorney for Creditor Nathanson & Goldberg, P.C.*

Paul W. Carey
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608-1477
pcarey@mirickoconnell.com
*Attorney for Creditor Ferris Development Group, LLC*

Darin Clagg
24 Kobbs Korner Rd.
Pine Bush, NY 12566
*Creditor*
(by U.S. Mail)

Matthew A. Morris
Sherin and Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110
mmorris@sherin.com
*Creditor*
(by email)

Lolonyon Akouete
800 Red Milles Rd.
Wallkill, NY 12589
info@smartinvestorsllc.com
*Creditor*
(by email)

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798
deniseedwards818@yahoo.com
*Creditor*
(by email)

Lenard Benson Zide
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
zide@buttersbrazilian.com
*Attorney for Creditor The MobileStreet Trust*
(by email)

Dated: January 16, 2024

_____
Roger L. Smerage

2

1000