UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

WORCESTER, ss.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### RESPONSE TO TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE

The response of Lolonyon Akouete, a creditor in the above-referenced involuntary Chapter 7 bankruptcy proceeding to the motion filed by the Town of Westborough (the "Town") to dismiss the bankruptcy case is as follows:

1. **Validity of Revival of Westborough SPE LLC**:

   - The revival of the Debtor was executed with due diligence and legal conformity. The initial formation and registration were professionally managed, and the accidental withdrawal in 2007 did not negate the LLC's legal standing. The revival in 2022 by Denise Edwards was a necessary correction, strictly adhering to state laws.

   - F. Jan Blaustein, as recognized by the land court, the IRS and The Secretary of State in both Delaware and Massachusetts maintained her capacity and authority to execute the bill of sale for the revival. Her role as per the operating agreement and her status as the responsible party for the LLC under IRS definitions affirm her authority in these matters.

   - Denise Edwards and Lolonyon Akouete played pivotal roles in asset recovery and management, acting within the bounds of the operating agreement. Their intervention was crucial to prevent the inappropriate appropriation of the LLC's assets by the Town. Their actions align with the legal framework designed to safeguard the interests of Westborough SPE LLC.

2. **Allegations of Egregious Conduct**:

   - The involvement of Akouete and Edwards was not manipulative of the bankruptcy process but a reactive measure to external misrepresentations and legal complexities. They acted in defense of the LLC's rights and assets against misleading actions from the Town and the California State Controller's Office.

   - Their legal involvement adhered to the urgency and necessity dictated by the situation, especially considering the potential loss of assets due to the foreclosure judgment. Their actions were within legal bounds, aiming to secure the LLC's interests promptly.

144

3. **Judicial Process in Land Court Tax Foreclosure Action**:

   o The necessity of the bankruptcy filing stemmed from the Town's collusion with external entities, not as a strategy to obstruct Land Court proceedings. The filing was a compelled response to protect the LLC's interests in the face of legal challenges.

   o The bankruptcy case, rather than being a tool of delay, has been a response to the Town's persistent requests for continuations, which have significantly delayed the resolution of the case and adversely impacted the LLC.

4. **Validity and Authority Concerns**:

   o The legal foundations for the revival of Westborough SPE LLC and the authority of Akouete and Edwards are robust, anchored in the LLC's Operating Agreement. Their actions have been consistently within the scope of their managerial roles, as outlined in the agreement.

   o Despite challenges, the actions of legal representatives, especially those of Alvin Nathanson and Scott A. Schlager, have been conducted with integrity and in full compliance with legal and ethical standards.

5. **Impact on Property Disposition and Municipal Interests**:

   o The Town's interference, rather than the bankruptcy case, has been the primary obstacle in the disposition of the property. The trustee's effort to finalize a deal with Ferris Development, which is beneficial to all parties involved, has been thwarted by the Town's actions.

   o The Town's financial interests are limited to recovering taxes and fees related to the foreclosure. The current process ensures that these interests are adequately addressed, without infringing upon the rights and interests of the Debtor.

6. **Post-Bankruptcy Filing Conduct**:

   o Akouete's actions post-bankruptcy have been aimed at navigating the complex legal landscape to defend the LLC's rights. Contrary to the Town's assertions, his conduct has not been detrimental to the Town but rather a necessary part of legal advocacy.

   o The allegations of disruptive behavior by Akouete are unsubstantiated. His efforts to seek legal recourse, including reaching out to state officials and filing a civil rights complaint, are legitimate exercises of legal rights and do not constitute empty threats.

7. **Legal Framework and Precedents**:

   o There is a lack of evidence suggesting fraud, abuse, or gross negligence by the Debtor. Conversely, it appears that the Town has engaged in questionable tactics that may contravene the spirit of fair and just legal proceedings.

145

In light of the above, the Creditor respectfully requests that the Court deny the Town of Westborough's motion to dismiss the bankruptcy case. The actions and decisions taken by the Debtor and its representatives have been in strict compliance with legal standards and motivated by the necessity to safeguard the LLC's assets and interests.

DATED: January 17, 2024,    Respectfully submitted:


By creditor,


Lolonyon Akouete
800 Red Milles Rd
Wallkill NY 12589
info@smartinvestorsllc.com
(443) 447-3276

146

# <u>Exhibit A</u>

Email communications between Lolonyon Akouete and Scott A. Schlager About the filing of bankruptcy.



**Lolonyon Akouete <info@smartinvestorsllc.com>**

---

## Involuntary Bankruptcy - Westborough SPE LLC

---

**Lolonyon Akouete** <info@smartinvestorsllc.com>                   Thu, Aug 31, 2023 at 9:32 PM
To: "Scott A. Schlager" <sas@natgolaw.com>, Alvin Nathanson <asn@natgolaw.com>
Cc: "deniseedwards818@yahoo.com" <deniseedwards818@yahoo.com>

Scott,

I wanted to thank you for your hard work on our case. Your efforts have been greatly appreciated. However, I would like to clarify my expectations to ensure that we are all aligned and moving forward with a shared understanding.

Initially, I was opposed to the suggestion of filing for Bankruptcy Chapter 11, as this would have violated the LLC Operating Agreement. However, I have since agreed to the Chapter 7 Involuntary Petition, as it will enable you to receive payment for your legal services.

As you are aware, the land court has requested updates on the bankruptcy petition status every 60 days, starting from October 31, 2023. This indicates that we can expect the bankruptcy case to be discharged and closed within the next 60 days, which is what we hope for.

The Trustee will prioritize claiming the unclaimed funds of $1,293,646.83 from California. They will also pay your legal fees, the CAM charges, Darin, and any other creditors that file a proof of claim. This should amount to approximately $500K.
The Trustee should also advance the two cases to prevent any unnecessary delays (Case: #4:23-cv-12017-MRG) and (Case: #19 TL 000768).
Once this is done, the bankruptcy case will be closed, and Westborough SPE, LLC will have sufficient funds to complete the federal complaint and land court case.

If you have any alternative plans in mind, please let me know. I value transparency and open communication.

Thank you again for your hard work.
Lolo

On Wed, Jul 26, 2023 at 7:09 PM Lolonyon Akouete <info@smartinvestorsllc.com> wrote:
Scott,

Thank you for your email. I understand that you want to receive payment for your attorney fees, which is why you are suggesting bankruptcy as an option. I don't blame you for this suggestion.

However, I personally believe that bankruptcy won't immediately resolve the issue. The trustee will have to do the same work you are currently doing, which will only prolong the process. If we can't obtain funds from California by the 15th, I will agree to your request.

We have already paid you $20,000, and we have been waiting for seven months for this case to be resolved. I don't want us to add another year to the case just so you can receive another $20,000. It's reasonable to be patient for two more months and resolve the entire case.

This doesn't mean that we should wait until August 15th to file for bankruptcy. We need to follow up with the State Council next week to see if she needs any additional documents. Additionally, we should check with Iris for a concrete date on when we can receive the draft of the joint memorandum.

My goal is to find a permanent solution to this dispute, without just pushing it further down the road. At the same time, I understand that you need to be paid for your work, so we need to find a balance between these two goals.

Thanks
Lolo

On Wed, Jul 26, 2023 at 3:27 PM Scott A. Schlager <sas@natgolaw.com> wrote:

Lolo & Denise:

Pursuant to our telephone conversation a few moments ago I am confirming our agreement:

1. If the State of California either fails to respond or release the unclaimed funds belonging to Westborough SPE LLC on or before August 15, 2023, you both, as duly authorized managers:

(A) Do not object to an involuntary bankruptcy filing by Nathanson & Goldberg, P.C. Against Westborough SPE LLC;

(B) Waive any opposition to such involuntary bankruptcy petition or any other filing in the Bankruptcy Court.

We would appreciate your written confirmation response but if we shall receive no response by the end of today, time being of the essence, we shall take your silence to mean confirmation of the terms stated above.

You should note that nothing contained herein prevents any creditor from filing an involuntary bankruptcy petition.

Very truly yours,

Scott A. Schlager, Esq.
Partner
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
(O): (617) 210-4800
(C): (617) 909-4511
(F): (617) 210-4824
sas@natgolaw.com

****************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

****************************************

Sent from my iPhone

# **<u>Exhibit B</u>**

Scott A. Schlager informed Lolonyon Akouete via email that the town's attorney filed a Motion to Continue the pre-trial conference in the land court, delaying the case resolution. Scott also mentioned that he has filed an opposition to that motion.

Case 23-40709 Doc 129 Filed 03/28/24 Entered 03/28/24 10:27:87 Desc Main
Document Page 8 of 101



**Lolonyon Akouete <info@smartinvestorsllc.com>**

# FW: Filing Accepted for Case: 19 TL 000768; Envelope Number: 2054113
1 message

**Scott A. Schlager** <sas@natgolaw.com>                                   Thu, Jul 27, 2023 at 4:00 PM
To: Lolonyon Akouete <info@smartinvestorsllc.com>, "deniseedwards818@yahoo.com"
<deniseedwards818@yahoo.com>

FYI. Iris has filed a Motion for a Continuance of the August 17th Hearing to August 31st, 2023. We have filed an
Opposition that I will send to you shortly.

Scott A. Schlager

Partner

Nathanson & Goldberg, P.C.

183 State Street, 5th Floor

Boston, Massachusetts 02109

(O): (617) 210-4800

(C): (617) 909-4511

(F): (617) 210-4824

sas@natgolaw.com

************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary
information and may be subject to the attorney-client privilege or other confidentiality protections. If you
are not a designated recipient, you may not review, copy or distribute this message. If you receive this in
error, please notify the sender by reply e-mail and delete this message. Thank you.

************************************************

**From:** Iris Leahy <AttyLeahy@outlook.com>
**Sent:** Thursday, July 27, 2023 2:10 PM
**To:** Scott A. Schlager <sas@natgolaw.com>
**Cc:** Alvin Nathanson <asn@natgolaw.com>
**Subject:** FW: Filing Accepted for Case: 19 TL 000768; Envelope Number: 2054113

Hello Attorney Schlager,

As a courtesy, I am advising you that I filed a Motion to Continue the above-referenced case for a Pre-trial Conference to August 31, 2023 at 2:00pm. A copy of said motion was e-filed and served upon you and Attorney Nathanson.

Thank you,

Iris A. Leahy, Esq.

Law Office of Iris A. Leahy

4 Open Square Way, Suite 217

Holyoke, MA 01040

Phone: (413)322-8318

Fax: (413)322-8661

attyleahy@outlook.com

---

**From:** no-reply@efilingmail.tylertech.cloud <no-reply@efilingmail.tylertech.cloud>
**Sent:** Thursday, July 27, 2023 2:08 PM
**To:** attyleahy@outlook.com
**Subject:** Filing Accepted for Case: 19 TL 000768; 19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.; Envelope Number: 2054113

# Filing Accepted

Envelope Number: 2054113
Case Number: 19 TL 000768
Case: 19 TL 000768 Town of Westborough v.
Westborough SPE, LLC , et al.

This is a notification that the following document has been ACCEPTED for filing by the Clerk's Office. You may access the file stamped copy of the document by clicking the below link.

| Filing Details | |
| --- | --- |
| **Court** | File & Serve |
| **Date/Time Submitted** | 7/27/2023 1:09 PM EST |

| Date/Time Accepted | 7/27/2023 2:07 PM EST |
|---|---|
| Reviewer Comment | |
| Filing Code | Request, Unspecified (only use if no other Request type applies) |
| Page Count | 2 |
| Submitted By | Iris Leahy |
| Submitting Attorney | Iris Leahy |
| View Document | Download Document |
| **This link is active for 45 days.** | |

Please do not reply to this email. It was automatically generated.
For technical assistance, contact your service provider.
Odyssey File & Serve
(800) 297-5377

Should you have procedural questions related to e-filing a document, please call the Clerk's Office.
Land Court

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
LAND COURT DEPARTMENT
19 TL 000768 – HPS

TOWN OF WESTBOROUGH,      )
      Plaintiff,      )
                       )
                       )
v.      )
                       )
WESTBOROUGH SPE, LLC, et als.      )
      Defendants.      )
                       )

## DEFENDANT WESTBOROUGH SPE, LLC's OPPOSITION TO THE TOWN OF WESTBOROUGH'S MOTION TO CONTINUE PRE-TRIAL CONFERENCE

**NOW, COMES**, Westborough SPE, LLC ("Defendant") and hereby opposes the Town of Westborough's Motion to Continue Pre-Trial Conference scheduled for August 17, 2023 to August 31, 2023 ("Motion"). Plaintiff has provided no valid grounds or authority to support its Motion. The civil procedural rules provide that a continuance may be granted "only for good cause." Mass. R. Civ. P. 40(b). Plaintiff has failed to articulate good cause for the granting of a continuance.

Furthermore, this Court is justified in not even considering Plaintiff's request and shall of course deny it because no affidavit was provided in support of the Motion. *Gynan v. Jeep Corp.*, 13 Mass. App. Ct. 504, 506 (1982); *Hunnewell v. Hunnewell*, 15 Mass. App. Ct. 358, 362–363 (1983); Mass. R. Civ. P. 40(c) (the filing of an affidavit is required when the motion for a continuance is grounded on the want of any material document, thing, or other evidence). § 3:153. Continuances, 14 Mass. Prac., Summary of Basic Law § 3:153 (5th ed.).

Defendant provides the following grounds for denial of said motion by the Town of Westborough:

1

154

1. Plaintiff failed to state in their Motion that they consulted Defendant's counsel on July 26, 2023 by email and Defendant's counsel stated they opposed the granting of a continuance.

2. Defendant's production set was delivered to the Town of Westborough's legal counsel, Iris A. Leahy, Esq. on July 10, 2023. *See* United States Postal Service, Certified Mail # 9589 0710 5270 0419 1644 82. Said delivery was signed for by Iris A. Leahy herself. *See* **Exhibit A** attached for the USPS confirmation of delivery which is incorporated by reference.

3. Defendant's Production Set #1 consisted of only 664 bate stamped pages. And Plaintiff's Production Set was not bate stamped.

4. The number of days from July 10, 2023 to August 17, 2023 constitutes 38 days. Since the Pre-Trial Memorandum must be submitted to the Court at least seven (7) days before the Hearing, i.e., no later than August 10th, 2023, prudence and fairness would dictate that each side be granted 15 days to prepare their portions. That would mean that Plaintiff should submit their draft to Defendant no later than 15 days after the July 13, 2023 Scheduling Order issuance date, i.e., no later than July 28, 2023. In fact, Defendant's counsel was generous and agreed that Plaintiff could submit their draft no later than August 1, 2023.

5. 664 Pages divided by 15 days equals about 44 pages to review per day. Plaintiff has had the opportunity to engage an electronic discovery expert to use artificial intelligence to speed up document review. In addition, the Town of Westborough has not one, but two law firms at their disposal: KP Law and The Law Offices of Iris A. Leahy, Esq. If Attorney Leahy spent on average 3 minutes per page (which may be an

2

155

overestimation), it would take her approximately 33.2 hours to review the 664 pages in Defendant's Production Set #1.

6. Massachusetts Courts have routinely denied continuances because of the movant's lack of diligence and dilatory conduct. *See, e.g., Real v. Hogan*, 828 F.2d 58, 63 (1st Cir. 1987) (District Court did not abuse discretion in denying plaintiff's request for continuance); *Com. v. Miles*, 420 Mass. 67, 85–86, 648 N.E.2d 719, 731, 55 A.L.R.5th 813 (1995) (**no error when the judge denied motion to continue even though the defendants stated they needed more time to prepare**).

7. In ruling on a motion for continuance, the court may consider any prior delays and the reasons for them, whether a continuance will cause any hardship to the nonmovant, and the movant's good faith. *See Amarin Plastics, Inc. v. Maryland Cup Corp.*, 946 F.2d 147, 151 (1st Cir. 1991) ("The conduct of the moving party is a factor to be considered. In Lussier, the defendant moved for a continuance on the grounds that he had not had enough time to digest government documents. 929 F.2d at 28. This Court upheld the district court's denial of that motion, noting that the problem was partly the defendant's own fault, for he had had enough time to prepare, and the issues involved were not complex." *Id.*).

8. It is not an abuse of discretion for a court to deny request for continuance to obtain discovery when a party makes only general and conclusory statements about the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the document to be discovered. See *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 95 U.S.P.Q.2d 1283 (6th Cir. 2010).

3

9. It is essential to show that the denial of a continuance will prejudice the movant. A movant requesting a continuance to conduct additional discovery should specify the evidence expected to be uncovered, show how it is relevant to the issues in dispute, and establish how it will alter the outcome. *See Scott v James* (1990, CA8 Mo) 902 F2d 672, cert den 498 US 873 (denial of continuance was not abuse of discretion where evidence movant sought to develop was irrelevant to issues and would not have altered outcome). Plaintiffs have not satisfied the requirements of this showing. *See Ameristar Jet Charter, Inc. v. Signal Composites*, 244 F.3d 189, 193 (1st Cir.2001) (noting "[w]e will not allow [it] to go on a 'fishing expedition,' with the mere 'hope' that it will obtain such information").

10. Courts have denied continuances that were made within a short period of time prior to the hearing. *See Brace v. Commissioner of Soc. Sec.*, 97 Fed. Appx. 589 (6th Cir. 2004) (request was not made until week before hearing); *See also, Prime Rate Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 767 (6th Cir. 2019) (trial date had been set far in advance). In determining whether the denial of a continuance is an abuse of discretion, courts have occasionally applied standards established in the criminal law context. Courts have considered the following factors relevant from the criminal context: the quantum of time available for preparation, the defendant's role in shortening the effective preparation time and his diligence in meeting time limits, the likelihood that the moving party would be prejudiced from the denial, the extent to which a continuance would inconvenience the court and the opposing party and witnesses, the degree of the case's complexity, the availability of discovery from the prosecution, the defense actually

4

157

provided at trial, and the counsel's skill and experience. *See* § 2352 Continuances, 9 Fed. Prac. & Proc. Civ. § 2352 (4th ed.).

11. Lastly, given Defendant's submittal of its First and Second Supplementations to this Court, Defendant believes that they have proffered sufficient evidence to prove by a preponderance of the evidence, that Lolonyon Akouete and Denise Edwards, as Managers of Westborough SPE LLC, have the requisite authority as managers pursuant to the LLC operating agreement, to pay the town what they are owed and redeem the property in accordance with statutory mandate.

**WHEREFORE**, the Defendant requests that this Honorable Court deny Plaintiff's motion for a continuance.

Dated: July 27, 2023

**DEFENDANT WESTBOROUGH SPE, LLC,**

**By its attorneys,**

*/s/ Scott A. Schlager*

Scott A. Schlager, BBO# 695421
Alvin S. Nathanson, BBO# 367480
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor, Boston, MA 02109

Tel. (617) 909-4511 | Fax. (617) 210-4824 | sas@natgolaw.com | asn@natgolaw.com

## CERTIFICATE OF SERVICE

I, Scott A. Schlager, Esq., hereby certify that a copy of the above-captioned Notice of Supplementation was filed electronically through the Massachusetts E-File system and a copy was transmitted electronically to counsel of record in the above-captioned matter on July 27, 2023.

**/s/ Scott A. Schlager, BBO# 695421**

5

158

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

## 9589071052700419164482

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:27 pm on July 10, 2023 in HOLYOKE, MA 01040.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**



DEFENDANT'S EXHIBIT
A

Feedback

**Delivered**
**Delivered, Front Desk/Reception/Mail Room**

HOLYOKE, MA 01040
July 10, 2023, 3:27 pm

**Out for Delivery**

HOLYOKE, MA 01040
July 10, 2023, 6:10 am

**Arrived at Hub**

HOLYOKE, MA 01040
July 9, 2023, 9:02 am

**Arrived at USPS Regional Facility**

SPRINGFIELD MA NETWORK DISTRIBUTION CENTER
July 8, 2023, 3:55 pm

**Departed USPS Regional Facility**

BOSTON MA DISTRIBUTION CENTER
July 8, 2023, 2:19 pm

**Arrived at USPS Regional Origin Facility**

BOSTON MA DISTRIBUTION CENTER
July 7, 2023, 9:14 pm

**Departed Post Office**

BOSTON, MA 02205
July 7, 2023, 5:57 pm

**USPS in possession of item**

BOSTON, MA 02205
July 6, 2023, 10:19 pm

**Hide Tracking History**

---

## Text & Email Updates ∧

**Select what types of updates you'd like to receive and how. Send me a notification for:**

**Text**    **Email**

☐    ☐  All Below Updates

☐    ☐  Expected Delivery Updates ⓘ

☐    ☐  Day of Delivery Updates ⓘ

☐    ☐  Package Delivered ⓘ

☐    ☐  Available for Pickup ⓘ

☐    ☐  Delivery Exception Updates ⓘ

☐    ☐  Package In-Transit Updates ⓘ

---

## USPS Tracking Plus® ∧

Your item is eligible for USPS Tracking Plus. This feature allows you to buy extended access to your tracking history and receive a statement via email upon request. Without this feature, your regular tracking history is only available on this site until July 6, 2025. To extend your access to this tracking history, select the length of time you would like and confirm your selection. You can only purchase extended history once, so all orders are final and are not eligible for a refund.

**Note:** For multiple tracking numbers, you can save and continue adding USPS Tracking Plus selections to your cart until you are ready to complete your purchase.

3 Years
**$3.75**

CERTIFICATE OF SERVICE

I, Lolonyon Akouete, a creditor, hereby certify that the above document is served by email and mailing a copy of the same, first-class mail, to the following:

Stephen F. Gordon, Attorney of the Petitioners
(Email: sgordon@gordonfirm.com)
The Gordon Law Firm LLP
River Place 57 River Street Wellesley, MA 02481

Scott A. Schlager on behalf of,
Nathanson & Goldberg, P.C., a creditor.
(Email: sas@natgolaw.com)
183 State Street, 5th Floor Boston, MA 02109

Assistant U.S. Trustee
Richard King
Office of US. Trustee
446 Main Street 14th Floor
Worcester, MA 01608
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com
Goldsmith, Katz & Argenio P.C.
1350 Main Street, 15th Floor.
Springfield, MA 01103

Paul W. Carey, Attorney of Creditor
FERRIS DEVELOPMENT GROUP, LLC
(Email: pcarey@mirickoconnell.com)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608

Brian W. Riley, Attorney of Creditor
Jeffrey T. Blake, Attorney of Creditor
Roger L. Smerage, Attorney of Creditor
TOWN OF WESTBOROUGH
(Email: briley@k-plaw.com)
(Email: jblake@k-plaw.com)
(Email: rsmerage@k-plaw.com)
KP Law, P.C.  101 Arch Street,
12th Floor Boston, MA 02110

Gary M Ronan
David M Abromowitz
Goulston&storrs
GRonan@goulstonstorrs.com
DAbromowitz@goulstonstorrs.com
400 Atlantic Avenue
Boston, MA 02110



_____
Lolonyon Y Akouete

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| WESTBOROUGH SPE LLC | ) | Chapter 7, No. 23-40709-CJP |
| | ) | |
| Debtor | ) | |
| | ) | |
| TOWN OF WESTBOROUGH | ) | |
| | ) | Commonwealth of Massachusetts |
| Plaintiff | ) | Land Court Department |
| | ) | Case No. 19TL000768-HPS |
| v. | ) | |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Defendant | ) | |

## <u>NOTICE OF REMOVAL – RULE 9027 (a)(1)</u>

**NOTICE OF REMOVAL**

JONATHAN R. GOLDSMITH, as Chapter 7 Trustee ("Trustee") in Bankruptcy for
Westborough SPE, LLC (hereinafter "Debtor"), which Debtor is a Defendant in a case pending
in the Massachusetts Land Court Department as Case No. 19TL000768-HPS (the "Removed
Case"), and hereby removes the Removed Case to the United States Bankruptcy Court for the
District of Massachusetts (the "Bankruptcy Court").

**Entitlement to Removal.**

The Removed Case was commenced in the Land Court on July 8, 2019. On August 31, 2023, a
Chapter 7 Involuntary Case was commenced against Westborough SPE, LLC, Case No. 23-
40709 ("Bankruptcy Case") in the Bankruptcy Court for the District of Massachusetts.

On October 11, 2023, an Order for Relief under Chapter 7 was entered in the Bankruptcy Case.

The Removed Case is a case related to the Bankruptcy Case. As such, the United States District
Court for the District of Massachusetts (the "District Court") has jurisdiction of the Removed
Case pursuant to 28 U.S.C. §1334(b). Therefore, pursuant to 28 U.S.C. §1452(a), the Removed
Case may be removed to the District Court.

Pursuant to 28 U.S.C. §157, the District Court may refer the Removed Case to the bankruptcy
judges for the district. By its General Order, the District Court has referred to the bankruptcy

162

judges for this district in all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11. That includes the Removed Case.

As permitted by Bankruptcy Rule 9027(a)(2), this Notice of Removal is being filed within the time frame allotted by the Bankruptcy Court pursuant to its Order of December 19, 2023, a copy of which is attached hereto as Exhibit "A".

**Core/Noncore Status of Removed Case.**

The Trustee submits that the Removed Case is a core proceeding within the meaning of 28 U.S.C. §157(b).

**Process and Pleadings.**

In light of the extensive number of pleadings in the Removed Case, the Trustee is only attaching, at this time, the docket report from the Removed Case, a copy of which is attached hereto as Exhibit "B". In the event the Court requires the submission of all or a portion of the pleadings or orders from the Removed Case, the Trustee will supplement this notice accordingly.

**Filing in Massachusetts Land Court.**

Promptly after the filing hereof, the undersigned shall file a copy of this Notice with the Clerk of the Massachusetts Land Court.

Respectfully submitted,
JONATHAN R. GOLDSMITH, CHAPTER 7
TRUSTEE IN THE BANKRUPTCY CASE
FOR WESTBOROUGH SPE, LLC

Dated: January 17, 2024

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780
Email: jgoldsmith@gkalawfirm.com

163

# Exhibit "A"



## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

      Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**
#57 Joint Motion filed by Trustee Jonathan R. Goldsmith, Creditor Town of Westborough to Continue Hearing [Re: 20 Motion for Relief From Stay].

UPON CONSIDERATION OF THE JOINT MOTION TO CONTINUE HEARING [DKT. NO. 57] (THE "MOTION"), THE OPPOSITION THERETO OF LOLONYON AKOUETE [DKT. NO. 59], AND THE RECORD OF THIS CASE, THE MOTION IS GRANTED AS FOLLOWS.

THE DECEMBER 21, 2023 HEARING ON THE MOTION FOR RELIEF [DKT. NO. 20] IS CONTINUED TO **FEBRUARY 13, 2024 AT 10:30 AM** IN COURTROOM 3, DONOHUE FEDERAL BUILDING AND COURTHOUSE, 595 MAIN STREET, WORCESTER, MASSACHUSETTS, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN **FEBRUARY 12, 2024 AT 4:00 P.M.**, PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

THE DEADLINE FOR THE TRUSTEE TO REMOVE THE TAX FORECLOSURE ACTION, SUBJECT TO THE STIPULATION OUTLINED IN THE MOTION, IS EXTENDED THROUGH AND INCLUDING TO **FEBRUARY 27, 2024**.

Dated: 12/19/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

165

# *Exhibit "B"*

1/17/24, 12:42 PM

Case 4:20-cv-11244-EK   Document 46-5   Filed 05/23/24   Page 24 of 136   Desc Main
Document   Page 24 of 136

19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.



- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
-
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
-

### Property Information

Turnpike Road
Westborough
RECORD

| All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition |

## Party Information

**Town of Westborough**
- Plaintiff

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL  33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA  01040
- Phone Number
- (413)322-8318

**More Party Information**

**Westborough SPE, LLC**
- Defendant

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA  02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code

- 695421
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA 02109
- Phone Number
- (617) 909-4511

**More Party Information**

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

[ Party Attorney ]

**More Party Information**

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

[ Party Attorney ]

**More Party Information**

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

[ Party Attorney ]

**More Party Information**

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

[ Party Attorney ]

**More Party Information**

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

[ Party Attorney ]

**More Party Information**

**Interstate Theaters Corporation**
- Defendant

[ Party Attorney ]

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|------|---------|----------|------|-------------|--------|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

168

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled Event: Motion for Alternative Service Date: 06/15/2020 Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted:  Motion scheduled on: 06/15/2020 02:00 PM Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued.  Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 11/16/2020. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN   37920<br>Tracking Number: 71901706197000959805<br><br>Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA   02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA   94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA   94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY   10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | $59.75 | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method    : Certified Mail<br>Issued    : 09/22/2020<br>Service   : Service<br>Served    : 09/26/2020<br>Return    : 09/30/2020<br>On        : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason    : Successful<br>Comment   :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method    : Certified Mail<br>Issued    : 09/22/2020<br>Service   : Service<br>Served    : 09/28/2020<br>Return    : 09/30/2020<br>On        : Interstate Theaters Corporation<br>Signed By :<br>Reason    : Successful | | Image |

Case 4:20-cv-10124-EK Document 6-8 Entered on 03/25/20 Page 28 Desc Main
Document    Page 28 of 001

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Comment  :<br>Tracking #: 71901706197000959812 | | |
| 10/01/2020 | Successful Service<br>Method   : Certified Mail<br>Issued   : 09/22/2020<br>Service  : Service<br>Served   : 09/28/2020<br>Return   : 10/01/2020<br>On      : Interstate Theaters Corporation<br>Signed By :<br>Reason   : Successful<br>Comment  :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method   : Certified Mail<br>Issued   : 09/22/2020<br>Service  : Service<br>Served   : 09/30/2020<br>Return   : 10/02/2020<br>On      : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason   : Unsuccessful<br>Comment  : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued.  Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY  10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method   : Certified Mail<br>Issued   : 04/08/2021 | | Image |

171

Case 4:02-cv-00124-JEK Document 26-1 Filed 08/23/24 Page 29 of 136

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | $11.96 | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 06/10/2021<br>Service : Service<br>Served :<br>Return : 09/21/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : no such number<br>Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |

172

Case 4:23-cv-10013-JEK Document 6-1 Filed 03/28/23 Page 30 of 136

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023  Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens, filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023  Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>  01/19/2023 10:00 AM<br>Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/09/2023  Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>  02/09/2023 02:00 PM<br>Has been: Rescheduled to February 23, 2023 at 2:00pm<br>Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.<br><br>Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/23/2023  Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>  02/23/2023 02:00 PM<br>Has been: Rescheduled<br>Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel Is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.<br><br>Judge: Kelley, Ellen M. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 02/23/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 03/23/2023  Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed  by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image<br>Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |
| 03/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>    03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023  Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | Image |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff, Town of Westborough, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintiff'f (First) Request for Production of Documents,filed | | Image |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023  Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | Image |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted:  Pre-Trial Conference scheduled on:<br>          08/17/2023 02:00 PM<br>Has been: Rescheduled        For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023  Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | Image |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |

| Docket Date | Docket Text | | Amount Owed | Image Avail. |
|---|---|---|---|---|
| 08/31/2023 | Notice of Docket Entry: Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter. Notice of the docket entry sent. | | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on: 08/31/2023 02:00 PM Has been: Not held per request of the defendant. Hon. Howard P. Speicher, Presiding | | | |
| 10/13/2023 | Notice of Bankruptcy status pursuant to August 31, 2023 Order, filed. | | | Image |

### Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

### Money on Deposit

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

### Money Distributed by Court

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

### Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

### Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

| **Case Disposition** | | |
| --- | --- | --- |
| **Disposition** | **Date** | **Case Judge** |
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## TRUSTEE'S OBJECTION TO MOTION OF LOLONYON AKOUETE SEEKING TO REQUIRE THE TRUSTEE TO FURNISH INFORMATION UNDER 11 U.S.C. §704(a)(7)

NOW comes JONATHAN R. GOLDSMITH, Chapter 7 Trustee of Westborough SPE, LLC ("Trustee") and hereby objects to the request of Lolonyon Akouete ("Akouete") seeking to require the Trustee to furnish the written settlement proposal the Trustee sent to the Town of Westborough's counsel on December 5, 2023. In support thereof, the Trustee submits that:

The referenced settlement proposal sent to counsel for the Town of Westborough was related to negotiations commenced in an attempt by the Trustee to resolve the dispute surrounding the pending Massachusetts Land Court foreclosure action initiated by the Town of Westborough as it relates to the Debtor's property at 231 Turnpike Road, Westborough, Massachusetts. The Trustee submits that this communication was part of a confidential settlement negotiation and is not within the ambit of 11 U.S.C. §704(a)(7). If a settlement is reached, then the terms will be laid out in a pleading filed with this Court and served upon Akouete and other parties of interest. To the extent that the Court concludes that §704(a)(7) applies to this communication, then the Trustee requests that an Order be issued excluding this communication from submission to Akouete. The basis for this request is that Akouete has a propensity to communicate directly with the Select Board of the Town as well as other parties in a manner that has undermined the Trustee's efforts to administer this case. Providing this communication would likely further erode the Trustee's efforts to resolve this claim.

178

WHEREFORE, the Trustee respectfully requests that:

1. Deny Lolonyon Akouete's Motion to Require the Trustee to Furnish Information Under 11 U.S.C. §704(a)(7); and

2. for other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN
BANKRUPTCY FOR WESTBOROUGH SPE
LLC

Dated: 1/25/24

By: /s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                      )         Chapter 7, No. 23-40709

WESTBOROUGH SPE LLC         )

           Debtor          )

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Objection upon those parties listed below by electronic mail or by mailing, first class mail, postage prepaid, on this 25th day of January, 2024:

Stephen F. Gordon, Esq.
The Gordon Law Firm, LLP
River Place
57 River Street
Wellesley, MA 02481

Richard King, Esq.
Office of the U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

Westborough SPE, LLC
c/o Lolonyon Akouete
1241 Deer Park Ave., Suite 1, #1051
North Babylon, NY 11703

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109

Roger L. Smerage, Esq.
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

180



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**

#68 Motion filed by Creditor Lolonyon Akouete to Require the Trustee to Furnish Information Under 11 U.S.C. Section 704(a)(7).

UPON CONSIDERATION OF THE *MOTION TO REQUIRE THE TRUSTEE TO FURNISH INFORMATION UNDER 11 U.S.C. § 704(a)(7)* [DKT. NO. 68] (THE "MOTION") FILED BY LOLONYON AKOUETE AND THE OBJECTION THERETO [DKT. NO. 75] FILED BY THE CHAPTER 7 TRUSTEE, JONATHAN R. GOLDSMITH, THE MOTION IS DENIED.

TO THE EXTENT A SETTLEMENT IS REACHED, THE TRUSTEE WILL FILE A COPY OF THE SETTLEMENT AGREEMENT IN SUPPORT OF A MOTION TO APPROVE THE SETTLEMENT UNDER FED. R. BANKR. P.9019.

Dated: 01/26/2024

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

181

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:          )         Chapter 7, No. 23-40709-CJP

                  )

WESTBOROUGH SPE LLC     )

                  )

         Debtor      )

                  )

## MOTION TO COMPEL THE CALIFORNIA STATE CONTROLLER TO SURRENDER TO THE TRUSTEE PROPERTY OF THE ESTATE (REQUEST FOR EXPEDITED DETERMINATION )

Now comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Chapter 7 Trustee ("Trustee") in the above-captioned case and moves this Honorable Court pursuant to 11 U.S.C. §542(a) to enter an Order compelling the California State Controller to surrender to the Trustee certain property of the bankruptcy estate ("Estate") totaling $1,293,646.83, all as more fully set forth below. The Trustee also respectfully requests that this Motion be heard on an expedited basis. In support of said Motion, the Trustee respectfully represents:

1. That on August 31, 2023, an Involuntary Petition was filed against the above-named Debtor under the provisions of Chapter 7 of the Bankruptcy Code; subsequently, an Order for Relief was entered on October 11, 2023.

2. That on October 12, 2023, JONATHAN R. GOLDSMITH accepted the appointment as Chapter 7 Trustee for the above-entitled estate.

3. That among the assets of the Estate, as noted on the Debtor's Bankruptcy Schedule "B", is an "Unclaimed Checking Account with the California State Controller" with a current listed value at $1,293,646.83 (hereinafter "Unclaimed Funds").

1

4. Since his appointment, the Trustee has investigated the background of the Unclaimed Funds and ascertained the following salient facts:

(a) The Unclaimed Funds were remitted to the Controller's Office of the State of California ("Controller") by MUFG Union Bank from a checking account in the amount of $1,293,646.83, with the reported owner as "Westborough SPE LLC" at a last known address of "50 California St., Suite 3610, San Francisco, CA 94111". The Controller has attached an identification number to the Unclaimed Funds as 4853303.

(b) Upon information and belief, beginning at around 2022, a Denise Edwards ("Edwards") and a Lolonyon Akouete ("Akouete"), as asserted managers of the Debtor, had attempted to have the Unclaimed Funds turned over to the Debtor. It appears that their request was denied by the Controller for the reasons outlined in letters dated February 8, 2023 and April 12, 2023, copies of which are attached hereto as Exhibit "A".

5. The Trustee does not opine at this time as to whether Edwards and/or Akouete were authorized to receive the Unclaimed Funds on behalf of the Debtor. However, what is undisputed is that once the Order for Relief was entered in this case and the Trustee was appointed, he has the duty and authority under 11 U.S.C. §704(a) to collect the Unclaimed Funds for the Estate, as these funds are property of the Estate pursuant to 11 U.S.C. §541.

6. During the course of the last couple of months, the Trustee has communicated via email and by telephone with one Harpreet K. Nakhwal ("Attorney Nakhwal"), Acting Chief Counsel for the Office of the Controller, seeking the turnover of the Unclaimed Funds. These communications included providing Attorney Nakhwal with: (i) the bankruptcy case number; (ii) a copy of the Trustee's appointment; (iii) submission of a completed Claim Affirmation Form; and (iv) a copy of the Involuntary Petition Page confirming the Debtor's tax ID as requested by Attorney Nakhwal. Attorney Nakhwal has confirmed receipt of all of this information and has not requested any further documentation from the Trustee to support the

2

183

grounds by which the Trustee submits he is entitled to the Unclaimed Funds on behalf of the Debtor.

7. Despite providing all the necessary and requested information, Attorney Nakhwal has been unwilling to provide information as to when (and if) the Unclaimed Funds will be turned over to the Trustee.

8. In light of the foregoing, the Trustee is seeking to have this Motion heard on an expedited basis so that he may proceed with the timely administration of this Estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

1. That this Motion be heard on an expedited basis;
2. Compelling the Controller of the State of California to turn over to the Trustee no later than fourteen (14) days after the allowance of this Motion, the Unclaimed Funds of the Debtor in the sum of $1,293,646.83, which is identified by the Controller's Office as property number 1019294209; and
3. For such other relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 2/2/24

By: /s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, 15th Floor
Springfield, MA 01103
Tel: (413) 747-0700

3

# Exhibit "A"





# MALIA M. COHEN
## California State Controller

February 8, 2023

Westborough SPE LLC
c/o Denise Edwards
1241 Deer Park Ave., Suite 1 #1051
North Babylon, NY  11703

Re:   Unclaimed Property Claim Identification Number 4853303

Dear Ms. Edwards:

This letter is in response to the above-referenced Unclaimed Property Claim.  The claim was referred to the Legal Office for review.  As explained in more detail below, after review, the claim must be denied.

This claim was submitted for one property identified as number 1019294209.  This property was remitted to the State Controller's Office by MUFG Union Bank as a checking account in the amount of $1,293,646.83.  The owner is reported as "Westborough SPE LLC" at a last known address of "50 California St., Suite 3610, San Francisco, CA  94111."

It appears to be your contention that you are entitled to these funds because you purchased the assets of Westborough SPE LLC.  In support of your claim you submitted a Bill of Sale, a Certificate of Revival of Westborough SPE LLC from Delaware Secretary of State, a Foreign Limited Liability Company Application for Registration from the Massachusetts Secretary of State, proof of FEIN, and Westborough SPE, LLC's Motion to Vacate Foreclosure Judgment filed with the Land Court for the Commonwealth of Massachusetts.

Based upon the documentation submitted and our research, it appears that Westborough SPE, LLC was a Delaware entity.  Based upon information received by the State Controller's Office, Westborough SPE, LLC was manager run as opposed to member or owner run.  The manager was Babcock & Brown Administrative Services, Inc., a Delaware corporation.  Officers of Babcock & Brown Administrative Services, Inc. included Jan Blaustein Scholes, James Jaworski, and Dyann Blaine.

300 Capitol Mall, Suite 1850, Sacramento, CA 95814  P.O. Box 942850, Sacramento, CA 94250  Fax: (916) 322-4404
sco.ca.gov

186

Westborough SPE LLC
February 8, 2023
Page 2

The Bill of Sale dated November 21, 2022, between Westborough SPE, LLC and Denise Edwards and Lolonyon Alouete was signed by "Jan Blaustein Scholes, its President." Jan Blaustein Scholes has suffered from multiple strokes since 2004. In 2019 the Hawaii Third Circuit, Kona Division granted Conservatorship and Guardianship over the person and estate of Frances Jan Blaustein Scholes to her son, Peter Blaustein. As Jan Blaustein Scholes has been judicially declared to lack capacity, she is unable to enter into contracts. After review, the Bill of Sale was signed by Jan Blaustein Scholes after she was declared to be incapacitated and had a Conservatorship and Guardianship entered over her person and estate. Therefore, the Bill of Sale is void. As the Bill of Sale is void, you could not have acquired any interest in Westborough SPE LLC and your claim for this property must be denied.

Additionally, it should be noted that even if it is determined that Jan Blaustein Scholes had the capacity to enter into the contact, it does not appear that you would be entitled to the funds in question. It appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC. It appears that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC. At this time our office is lacking sufficient information to determine whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC.

For the reasons discussed above, the claim is denied.

Sincerely,

HARPREET K. NAKHWAL
Staff Counsel

HKN/jh

cc:     Coleen Kimler, Bureau Chief, Unclaimed Property Division, State Controller's Office

187



MALIA M. COHEN
CALIFORNIA STATE CONTROLLER

April 12, 2023

Westborough SPE LLC
c/o Denise Edwards and Lolonyon Akouete
1241 Deer Park Ave., Suite 1 #1051
North Babylon, NY 11703

Re: Unclaimed Property Claim Identification Number 4853303

Dear Ms. Edwards and Mr. Akouete:

This letter is in regard to the above-referenced unclaimed property claim. In my letter dated February 8, 2023, the claim was denied. You subsequently submitted additional documentation in support of your claim. As explained in more detail below, after review of the additional documentation, the denial of your claim must be affirmed.

In my previous letter I explained that there were several deficiencies with the claim. The first issue being that it was established that the Bill of Sale was signed by Jan Blaustein Scholes after she was declared to be incapacitated and had a Conservatorship and Guardianship entered over her person and estate. As Ms. Scholes has been judicially declared to lack capacity, she could not have entered into a contract to sell assets of Westborough SPE LLC. The second issue was that even if it is determined that Ms. Scholes had the capacity and ability to enter into the contract, there was insufficient information to determine whether she, an officer of the managing entity, Babcock & Brown Administrative Services, Inc., would have authority to sell the assets of Westborough SPE LLC.

You have now submitted several documents that appear to try and address the second issue. However, after review of the evidence now submitted, there does not appear to be any evidence to refute the fact that a Conservatorship and Guardianship was entered over the person and estate of Jan Blaustein Scholes and that she was declared to be incapacitated by the Hawaii Third Circuit, Kona Division.

300 Capitol Mall, Suite 1850, Sacramento, CA 95814 | P.O. Box 942850, Sacramento, CA 94250
Phone: 916.445.2636 | Fax: 916.322.1220

188

Westborough SPE LLC
April 12, 2023
Page 2

Without expressing an opinion on the new documentation submitted, the claim must remain denied because you have failed to remedy the fact that Jan Blaustein Scholes lacked the capacity to enter into a contract.

Sincerely,

HARPREET K. NAKHWAL
Staff Counsel

HKN/jh

cc:     Coleen Kimler, Bureau Chief, Unclaimed Property Division, State Controller's Office

189

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: | ) Chapter 7, No. 23-40709 |
|  | ) |
| WESTBOROUGH SPE LLC | ) |
|  | ) |
| Debtor | ) |
|  | ) |

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Motion to Compel upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this 2nd day of February, 2024:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ferris Development Group, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

LOLONYON AKOUETE
ATTN WESTBOROUGH SPE LLC
800 RED MILLS RD
WALLKILL, NY 12589-3220

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608-2361

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Matthew A. Morris Sherin and
Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798-2002

The MobileStreet Trust
225 Turnpike Road
Westborough, MA 01581-2807

Ms. Malia M. Cohen
California State Controller
300 Capitol Mall, Suite 1850
Sacramento, CA 95814

Harpreet K. Nakhwal, Esq.
Office of the State Controller
Malia M. Cohen
300 Capitol Mall, Suite 1850
Sacramento, CA 95814

191

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
|  | ) |  |
| WESTBOROUGH SPE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

### TRUSTEE'S RESPONSE TO ORDER FOR STATUS REPORT REGARDING RECOVERY OF UNCLAIMED FUNDS FOR THE BENEFIT OF THE BANKRUPTCY ESTATE

Now comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee ("Trustee") in the above-captioned case, and hereby files this response to the Court's Order for a Status Report with respect to the Recovery of the Unclaimed Funds for the Benefit of the Bankruptcy Estate (Docket No. 63).

The Trustee submits that on February 2, 2024, he filed a Motion ("Motion") with this Court (Docket No. 78) seeking to Compel the California State Controller ("Controller") to Surrender to the Trustee Property of the Estate, namely the unclaimed funds due the Debtor in the sum of $1,293,646.83. Subsequent to the filing of the Motion, the Trustee received written confirmation from counsel for the Controller that remittance of the proceeds to the Trustee has been approved. At this juncture the Trustee is awaiting receipt of said funds.

JONATHAN R. GOLDSMITH, TRUSTEE IN
BANKRUPTCY FOR WESTBOROUGH SPE
LLC

Dated: 2/5/24

By: /s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700

192

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
|  | ) |  |
| WESTBOROUGH SPE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, Suite 1505, Springfield, Massachusetts, do hereby certify that I served a copy of the within Response upon those parties listed below by electronic mail or by mailing, first class mail, postage prepaid, on this *5th* day of February, 2024:

Richard T. King, Esq.
OFFICE OF THE U.S. TRUSTEE
446 Main Street, 14th Floor
Worcester, MA 01608

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No. 23-40709-CJP

Chapter 7

In re:

WESTBOROUGH SPE LLC

TOWN OF WESTBOROUGH,

    Plaintiff,

v.

WESTBOROUGH SPE, LLC,

    Defendant.

TOWN OF WESTBOROUGH'S
MOTION TO REMAND AND/OR
ABSTAIN FROM HEARING TAX
FORECLOSURE ACTION

The Town of Westborough ("Town"), listed in the Debtor's Matrix List of Creditors (Doc. No. 7) in the above-captioned action, hereby moves pursuant to 28 U.S.C. § 1447 for the Court to remand, or alternatively to abstain from hearing pursuant to 28 U.S.C. § 1334(c), the case of Town of Westborough v. Westborough SPE, LLC, et al. (Mass. Land Ct. No. 19 TL 000768) (the "Tax Foreclosure Action"), which the Chapter 7 Trustee purportedly removed to this Court on January 17, 2024.[1] Remand of the Tax Foreclosure Action is appropriate because the Tax Foreclosure Action is a non-core proceeding subject to mandatory abstention.[2] Alternatively, equity demands remand and permissive abstention, particularly where the Massachusetts Land Court has exclusive

---

[1] The Chapter 7 Trustee filed a paper entitled "Notice of Removal" on the primary docket of the bankruptcy proceeding, using the "Notice" ECF event, rather than commencing an adversary proceeding using the "Notice of Removal" ECF event. See Doc. No. 74. It is questionable whether the Chapter 7 Trustee's filing effectuated a proper removal, but the Town files this motion in response on the primary docket (as there is no adversary proceeding in which to file) out of an abundance of caution.

[2] Although abstention is technically a separate procedure than remand, "[w]here abstention is appropriate, or required, remand will follow." Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 788 (D.N.J. 1995).

1

194

jurisdiction.  Finally, the bankruptcy removal statute (28 U.S.C. § 1452) does not permit removal because the Tax Foreclosure Action is an action in which the Town, a governmental unit under the Bankruptcy Code, exercised its police or regulatory powers.

## BACKGROUND[3]

### *Formation and Dissolution of LLC*

In 1997, the entity Westborough SPE LLC (the "LLC") acquired real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property").  See Exhibit A (Quitclaim Deed).  The LLC was a Delaware limited liability company registered to do business in Massachusetts.  See Exhibit B (MA Certificate of Registration).  The LLC's manager was Babcock & Brown Administrative Services, Inc. ("Babcock & Brown").  See id.  Babcock & Brown's president, F. Jan Blaustein, was authorized to execute recordable instruments on behalf of the LLC.  See id.  An unauthenticated document entitled "Westborough SPE LLC Limited Liability Company Agreement," apparently prepared by Goulston & Storrs, purports to indicate that Mignonette Investments Limited ("Mignonette"), a British Virgin Islands entity, was the LLC's sole member.  See Exhibit C (LLC Agreement).[4]

The LLC withdrew from doing business in Massachusetts in 2007.  See Exhibit D (MA Certificate of Withdrawal).  In 2011, Babcock & Brown (through its successor) resigned as the LLC's manager.  See Exhibit E (BBAS Resignation).  The LLC was administratively dissolved in 2014 for failure to pay taxes in the State of Delaware.  See Exhibit F (DE Administrative

---

[3] The facts set forth herein are taken from the Town's recent § 707 Motion to Dismiss (Doc. No. 69) and the exhibits referenced herein are those that were filed in connection with that motion (Doc. No. 70).  In the event that the Court grants the Town's § 707 Motion to Dismiss, the Tax Foreclosure Action should necessarily be remanded to the Land Court as there will no longer be a bankruptcy proceeding to which the Tax Foreclosure Action may be related.

[4] The Debtor's Land Court counsel submitted this document to the Land Court but provided no affidavit authenticating it, much less any indication how counsel came to possess the document.

2

195

Dissolution).[5]   Nevertheless, the lessee of the Property (Regal Cinemas) continued to lease the Property and pay property taxes to the Town.   See Declaration of Kristi Williams ("Williams Decl.") at ¶ 5.[6]   However, when the lease expired in late 2017, the lessee vacated the Property and stopped making tax payments.   See id. at ¶ 6.

### *The Town's Tax Taking*

Subsequently, property taxes on the Property accrued, and on December 28, 2018, the Town recorded an instrument of taking on the Property and all improvements thereon pursuant to G.L. c. 60, §§ 53-54, as a result of unpaid FY2018 taxes in the amount of $106,944.99.   See Exhibit J (Instrument of Taking).   The Town commenced the Tax Foreclosure Action in the Massachusetts Land Court on July 8, 2019 to foreclose the LLC's right of redemption.   See Exhibit K (Tax Foreclosure Complaint).   On January 5, 2022, the Land Court entered judgment in favor of the Town and against the LLC.[7]   See Exhibit L (Tax Foreclosure Judgment).

On May 26, 2022, the Town issued a request for proposals for the purchase and redevelopment of the Property.   See Williams Decl. at ¶ 15.   The Town received three proposals, including one from Lax Media.   See id. at ¶ 16.   Lax Media offered a purchase price of $2,500,001, which was higher than the estimated fair market value of the Property ($2,082,000).   See id. at ¶ 17.   The Town's Select Board evaluated the proposals based on five categories and selected Lax

---

[5] Babcock & Brown itself withdrew from doing business in Massachusetts in 2008.   See Exhibit G (Babcock & Brown Withdrawal).   Mignonette was stricken from the British Virgin Islands Register of Companies pursuant to Section 213(5) of the BVI Business Companies Act on May 31, 2010.   See Exhibit H (VI Gazette, excerpted) and I (Search Report).   The effect of the striking off is that the company and its directors, members, liquidator(s), or receiver(s) may not "carry on any business" or "act in any way with respect to the affairs of the company," subject to restoration.   See BVI Business Companies Act § 215 (V.I.).

[6] Filed on October 3, 2023, in conjunction with the Town's Motion for Relief from Automatic Stay.   See Doc. No. 22.

[7] Thus, the Land Court judgment issued more than a year before the U.S. Supreme Court's May 2023 decision in Tyler v. Hennepin County, 598 U.S. 631 (2023).

3

196

Media's proposal, which received the score of "highly advantageous" in three categories and "advantageous" in the remaining two. See id. at ¶ 18.[8]

### *The Purported Revival*

On November 22, 2022, Denise Edwards filed a Certificate of Revival, purportedly for the LLC, with the Secretary of State of Delaware, effectively creating the Debtor. See Exhibit M (DE Certificate of Revival). On December 6, 2022, Lolonyon Akouete emailed the Town's Treasurer and identified himself as an "asset recovery specialist" who had "acquired Westborough SPE, LLC and … would like to redeem." See Exhibit N (Dec. 6, 2022 Email).[9]

On December 12, 2022, the Debtor applied for registration to do business in Massachusetts using the same name as the LLC. See Exhibit R (MA Application for Registration). The managers of the Debtor were identified as Ms. Edwards and Mr. Akouete. See id. The principal office of the Debtor—1241 Deer Park Ave., Suite 1 #1051, North Babylon, NY 11703, see id.—is a Staples store. See Exhibit S (Staples.com Printout).

Subsequently, Attorney Matthew Morris of Sherin & Lodgen LLP, representing Mr. Akouete, claimed that Ms. Edwards and Mr. Akouete were "the new owners of the LLC." See Exhibit T (M. Morris Email). Mr. Akouete and Ms. Edwards based their claim to ownership and control over the Debtor (and purportedly the LLC by extension) through a bill of sale. See Exhibit U (Jan. 13, 2023 Email). The bill of sale states, on its face, that it is between the LLC and Denise

---

[8] In November 2022, Ferris Development Group, LLC ("FDG")—one of the other bidders—filed suit against the Town and Lax Media in Massachusetts Superior Court for breach of implied contract, declaratory judgment, and injunctive relief as a result of the Town's awarding the bid to Lax Media. See Ferris Development Group, LLC v. Town of Westborough, et al., Mass. Superior Court Case No. 2285CV01281. The Superior Court denied FDG's motion for preliminary injunction, finding that FDG failed to show a likelihood of success on the merits. Memorandum of Decision and Order on Plaintiff's Motion for Preliminary Injunction, at pp. 9-11, Ferris Development Group, LLC v. Town of Westborough, et al., No. 2285CV02181 (Mass. Superior Ct. Jan. 13, 2023).

[9] Mr. Akouete holds himself out as the CEO/Owner of Smart Investors, LLC, a Maryland limited liability company that was forfeited for failure to file a property return in 2010 or thereafter. See Exhibits O (Smart Investors MD Documents) and P (Akouete LinkedIn). Mr. Akouete also holds himself out as "an investigator of unclaimed property," as reflected in documents he filed in the Land Court. See Exhibit Q (Akouete Exs. 2 and 3).

Edwards and Mr. Akouete as "joint tenants." See Exhibit V (Bill of Sale). The bill of sale was purportedly signed by Ms. Blaustein as president of the LLC on December 8, 2022, although the bill of sale itself states that it was made November 21, 2022. See id. Although the Debtor represented to the Land Court that Ms. Blaustein resides in a New Mexico assisted living facility, her signature on the bill of sale bears an Arizona notarization, which itself provides no indication of how the notary confirmed that the person signing was Ms. Blaustein or that Ms. Blaustein was the "president" of the LLC (which she was not). See id.; see also Exhibit W (Motion to Vacate) at p. 6.[10] Moreover, in 2019, a Hawaii state court ruled that Ms. Blaustein was "an incapacitated person" and appointed her son, Peter Blaustein, as her conservator and guardian. See Exhibits X (In re Blaustein Docket) and Y (Waiver of Notice and Consent to Conservatorship). Mr. Blaustein did not give permission or consent for Ms. Blaustein to sign the bill of sale and did not approve of her doing so. See Exhibit Z (Affidavit of Peter L. Blaustein).

### Mr. Akouete's Scheme to Vacate the Tax Title Foreclosure Judgment

On January 4, 2023—which was one day short of the first year anniversary of the issuance of the judgment entered in the Tax Foreclosure Action and the final day to petition to vacate the judgment (see G.L. c. 60, § 69), Mr. Akouete filed a motion with the Land Court to vacate the judgment on behalf of the Debtor. See Exhibit W (Motion to Vacate).[11] Mr. Akouete also sent a copy of his motion papers to David Ferris, the CEO of FDG, which had unsuccessfully attempted to purchase the Property when the Town solicited bid proposals through G.L. c. 30B (as noted above, see fn. 8). See Exhibit AA (Jan. 7, 2023 Email). Days later, on January 9, 2023, Mr. Ferris

---

[10] Page references to exhibits in this brief are to the CM/ECF pagination, inclusive of exhibit cover sheets, unless otherwise noted.

[11] Although the Debtor is a limited liability company, its motion was not signed by an attorney, which is impermissible under Massachusetts law. See Dickey v. Inspectional Servs. Dep't of Boston, 482 Mass. 1003, 1004 (2019).

contacted Mr. Akouete by iMessage to discuss the Property. See Exhibit BB (iMessage Screenshots) at p. 2. In the ensuing iMessage exchange (which also involved Brian Charville, FDG's COO and General Counsel), Mr. Akouete indicated that he had "at least one document showing who may be the equity owner of the LLC." See id. at p. 3.[12] In response to Mr. Charville stating that anything Mr. Akouete could do "to substantiate [his] ownership of the LLC will help [Mr. Ferris] evaluate a potential purchase of the property," Mr. Akouete stated, "If you are going to help me find an attorney, then I'll share information with you. If not, then good luck." See id. at p. 4. Mr. Akouete also stated in a separate message that "[w]e believe that Jan Blaustein Scholes[] is a managing member of the LLC," but acknowledged that he had not confirmed this. See id. at p. 5.

On January 18, 2023, Mr. Akouete and Ms. Edwards signed what purported to be a new "Limited Liability Company Agreement of Westborough SPE LLC," dated December 8, 2022. See Exhibit CC (2022 LLC Agreement). The new LLC agreement makes no reference to the LLC's original operating agreement from 1997 and, notably, states that Mr. Akouete and Ms. Edwards, as members, "form a Limited Liability Company (the 'Company') in accordance with the laws of the State of Delaware." Id. at p. 2 (emphasis added). In the iMessage chain with FDG's officers, Mr. Akouete admitted that "we couldn't find any original operating Agreement or Corporate Resolutions. We just put this one in please [sic]." See Exhibit BB (iMessage Screenshots) at p. 6.

On February 28, 2023, Mr. Akouete admitted to Mr. Charville that he was "starting to see the authority issues we have in this case." See Exhibit BB (iMessage Screenshots) at p. 7. On

---

[12] Exhibit BB contains excerpts of iMessage screenshots that were produced to the Town's counsel by FDG's counsel and appear to be from Mr. Charville's phone.

6

March 14, 2023, Mr. Akouete told FDG's officers that he was "very close to finding the beneficial owner of the property," but also admitted that he lacked the funds required to redeem the Property. See id. at p. 8. Days later, Mr. Akouete told Mr. Charville that he had "been trying to negotiate with Peter [Blaustein], Jan's Guardian, to get the authority I need to vacate the foreclosure judgment," but Mr. Blaustein was "not responding." See id. at p. 9. On March 31, 2023, Mr. Akouete informed Mr. Charville that he had "run out of money" and did not "have anymore [sic] funds to continue with the case," such that he was requesting Mr. Ferris to pay his attorney's retainer. See id. at p. 10. In the same message, Mr. Akouete indicated that he was "in the process of restoring [the] registration of Mignonette," which had been "suspended for nonpayment of fees," although Mr. Akouete was not an owner of Mignonette. See id. Several weeks later, on May 23, 2023, Mr. Akouete asked Mr. Charville if Mr. Ferris would "pay the attorneys fees" if "we are able to get Peter [Blaustein] to ratify and confirm the Bill of Sale." See id. at p. 11.

The Town opposed the motion to vacate for various reasons, including significant questions that the Town had regarding the ownership and identity of the Debtor, such as whether the individuals purporting to own the Debtor and advancing the motion to vacate (Mr. Akouete and Ms. Edwards) had actually acquired the LLC, much less any interest in the Property. See Exhibit DD (Opposition without Exhibits). Nathanson & Goldberg, P.C. subsequently appeared on behalf of the Debtor in the Tax Foreclosure Action and filed a slew of motions (which the Land Court ultimately denied). See Exhibit EE (Land Court Docket) at pp. 8-9. After several extensions, the Land Court was prepared to hold an evidentiary hearing "to determine whether Westborough SPE, LCC [sic], having appeared in this case, is the taxpayer who has the right to redeem the subject property" and a pre-hearing conference was scheduled for August 31, 2023 to determine the hearing schedule. See Exhibit EE (Land Court Docket) at May 16, 2023 entry.

7

200

Meanwhile, Mr. Akouete and Ms. Edwards attempted to recover an unclaimed checking account located in California, which had belonged to the LLC and contained almost $1.3 million.[13] On February 8, 2023, however, the California State Controller denied their claim. See Exhibit GG (CA Decision). The California State Controller concluded that "the Bill of Sale is void" due to Ms. Blaustein's lack of capacity and, as a result, Mr. Akouete and Ms. Edwards "could not have acquired any interest in Westborough SPE LLC." Id. Additionally, the California State Controller noted that "[i]t appears that Jan Blaustein Scholes signed the Bill of Sale as the President of Babcock & Brown Administrative Services Inc. and not of Westborough SPE, LLC" and "that Babcock & Brown Administrative Services Inc. acted only as the manager of Westborough SPE, LLC and did not have an ownership interest of Westborough SPE, LLC," such that there was a question of "whether an officer of the managing entity, Babcock & Brown Administrative Services Inc., would have authority to sell the assets of Westborough SPE LLC." Id.[14]

### The Last Resort - Bankruptcy

On June 29, 2023, Scott Schlager of Nathanson & Goldberg, P.C. emailed Mr. Ferris and Mr. Charville. See Exhibit HH (June 29, 2023 Email). In that email, Attorney Schlager stated that he concluded that FDG was "not wanting to finance a bankruptcy proceeding" but nevertheless solicited FDG to provide $10,000 to pay an attorney to provide "a formal opinion as to the authority of Lolonyon Akouete and Denise Edwards to act on behalf of Westborough SPE LLC" based on

---

[13] In the Land Court, Mr. Akouete claimed to have obtained Mr. Blaustein's permission to have Ms. Blaustein sign certain papers to assist in this recovery attempt and submitted a September 15, 2022 text message screenshot to support this claim. See Exhibit FF (Sept. 15, 2022 Text).

[14] As discussed above, Babcock & Brown resigned as the LLC's manager effective May 30, 2011. See Exhibit E (BBAS Resignation).

8

three additional documents that Nathanson & Goldberg, P.C. was "able to have F. Jan Blaustein Scholes execute." See id.[15]

On August 31, 2023, Nathanson & Goldberg, P.C. and The MobileStreet Trust filed an involuntary Chapter 7 petition against the Debtor, commencing these proceedings.[16] The Land Court cancelled the pre-hearing conference on the Debtor's motion to vacate in the Tax Foreclosure Action, which was scheduled for 2:00 pm that same day, and ordered the Debtor to file a status report by October 31, 2023 (with additional status reports due every 60 days thereafter). See Exhibit EE (Land Court Docket) at August 31, 2023 entry. The Tax Foreclosure Action remains stayed.[17]

## **ARGUMENT**

It is well established that the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017), quoting Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). A party may only remove a claim or cause of action from a state court to a bankruptcy court under 28 U.S.C. § 1452(a) if the latter would have jurisdiction under 28 U.S.C. § 1334, which states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Notwithstanding this grant of jurisdiction, discussed in detail below, "there is a strong presumption against removal jurisdiction

---

[15] These documents, which Nathanson & Goldberg, P.C. also submitted to the Land Court, do not alter the facts that (i) Mr. Blaustein had already been appointed as Ms. Blaustein's guardian and conservator, and (2) was not a member of the LLC and thus held no ownership interest in it or its assets.

[16] The MobileStreet Trust owns two parcels of land adjoining the Property, all of which are subject to a Reciprocal Covenants, Easements and Restrictions Agreement.

[17] On October 3, 2023, the Town moved for relief from the automatic stay to proceed with the Tax Foreclosure Action. See Doc. No. 20. The Court conducted an initial hearing on that motion on November 30, 2023, but continued it so that the Chapter 7 Trustee could explore settlement discussions with the parties and whether to attempt to remove the Tax Foreclosure Action, commence an adversary proceeding regarding the Property under 11 U.S.C. § 548(a), or both. The Court is scheduled to resume the hearing on February 13, 2024.

generally." Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *2

(D. Mass. June 21, 2019) (quotations omitted). "On a motion to remand, the removing party bears

the burden of establishing the propriety of removal." Id., citing Fayard v. Ne. Vehicle Servs., LLC,

533 F.3d 42, 48 (1st Cir. 2008). In light of this burden and "the important federalism concerns at

play in considering removal jurisdiction," Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11

(1st Cir. 2004), this Court should remand and/or abstain from hearing the Tax Foreclosure Action.

## I. THE TAX FORECLOSURE ACTION IS A NON-CORE PROCEEDING SUBJECT TO MANDATORY ABSTENTION

Section 1452 only permits removal if the district court to which the case would be removed

has jurisdiction under 28 U.S.C. § 1334. See 28 U.S.C. § 1452(a).[18] But section 1334 only gives

federal courts jurisdiction over three types of cases: cases "under title 11," which means the

bankruptcy case itself; cases "arising under title 11" or "arising in cases under title 11," which

means core proceedings; or cases relating to cases under title 11, which means non-core

proceedings that nevertheless have some potential impact on the bankruptcy estate. See 28 U.S.C.

§ 1334(a)-(b); Gupta, 858 F.3d at 661-663. The Tax Foreclosure Action only falls at most within

the last of these categories and is, therefore, subject to mandatory abstention.

Even if the Tax Foreclosure Action is considered a non-core proceeding related to the

bankruptcy because it involves the LLC's statutory rights with respect to the Property, mandatory

abstention applies. Specifically,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is

---

[18] Although section 1452 provides for removal to the district court, bankruptcy matters are automatically referred from the U.S. District Court for the District of Massachusetts to the U.S. Bankruptcy Court for the District of Massachusetts pursuant to Rule 201 of the Local Rules of the U.S. District Court for the District of Massachusetts.

10

203

commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). In other words, where (1) the claim has no independent basis for federal jurisdiction, (2) is a non-core proceeding, (3) has already been commenced in state court, and (4) will be timely adjudicated in state court, the Court <u>must</u> abstain from adjudicating the case. <u>See</u>, e.g., <u>Hayim</u> v. <u>Gotez</u> (<u>In re SOL, LLC</u>), 419 B.R. 498, 504 (Bankr. S.D. Fla. 2009); <u>Malloy</u> v. <u>Hawk</u> (<u>In re 4 Front Petroleum, Inc</u>.), 345 B.R. 744, 749 (Bankr. N.D. Okla. 2006); <u>see also New England Power & Marine, Inc</u>. v. <u>Town of Tyngsborough</u> (<u>In re Middlesex Power Equip. & Marine, Inc</u>.), 292 F.3d 61, 68 n.6 (1st Cir. 2002).[19] The Tax Foreclosure Action meets all of these statutory requirements for mandatory abstention.

First, the Tax Foreclosure Action could not have been commenced in a federal court absent section 1334 jurisdiction. The Massachusetts General Laws require such actions to be brought in the Massachusetts Land Court. <u>See</u> G.L. c. 60, § 65 ("whoever then holds the title to land acquired by a sale or taking for taxes may bring a petition <u>in the land court</u> for the foreclosure of all rights of redemption of said land …") (emphasis added). The Chapter 7 Trustee has made no contention that the Tax Foreclosure Action, on its own, was or could have been brought under a federal statute or constitutional provision. Instead, the only basis for jurisdiction asserted in the purported Notice of Removal is section 1334(b). <u>See</u> Doc. No. 74. There is no independent basis for federal jurisdiction. <u>See</u> Hayim, 419 B.R. at 504 (independent jurisdiction analysis looks only at notice of removal and additional grounds for jurisdiction may not be asserted after a request for abstention has been made); <u>see also Little Rest Twelve, Inc</u>. v. <u>Visan</u>, 458 B.R. 44, 58-59 (S.D.N.Y. 2011) ("A notice of removal may not be sustained on a ground of jurisdiction not stated in that notice.").

---

[19] Although the First Circuit listed the factors for mandatory abstention in a footnote in <u>New England Power & Marine, Inc</u>., the Court decided the case on permissive abstention grounds as discussed below. It does not appear that the First Circuit has decided a case on mandatory abstention grounds.

11

Further, the Tax Foreclosure Action is a non-core proceeding.[20]  Core proceedings are those involving causes of action either created by the Bankruptcy Code or that have no existence outside of the bankruptcy.  See Gupta, 858 F.3d at 662-663.  Any other case that relates to the bankruptcy proceeding is a non-core proceeding.  The Tax Foreclosure Action is not a core proceeding, as the cause of action is created by Massachusetts statute, not the Bankruptcy Code, and has existence outside of the bankruptcy, as demonstrated by the fact that it was pending for several years before the commencement of this bankruptcy proceeding.  See id.  While the Tax Foreclosure Action may have some potential effect on the bankruptcy estate if the Debtor's motion to vacate the foreclosure judgment is allowed, this only means that the Tax Foreclosure Action is at best "related to" the bankruptcy case and thus is a non-core proceeding.

Critically, the Tax Foreclosure Action does not involve property of the bankruptcy estate.  As soon as the Land Court entered judgment in that action (more than a year before the bankruptcy began), full title to the Property vested in the Town, leaving the LLC (and, purportedly, the Debtor) with nothing more than a statutory right to seek to vacate the judgment and pay a redemption amount set by the Land Court.  See Tallage Lincoln, LLC v. Williams, 485 Mass. 449, 451-453 (2020) (entry of tax title foreclosure judgment "extinguishes the taxpayer's remaining interest in the property—the right of redemption—and converts the municipality's … tax title into absolute title … free and clear of all encumbrances, including mortgages and other liens").  While a decision on whether the Debtor can exercise that statutory right in this instance may have sufficient consequences to the bankruptcy estate to make the Tax Foreclosure Action related to this bankruptcy proceeding, that connection is not sufficient to make this proceeding a core one.  See

---

[20] In the Chapter 7 Trustee's purported Notice of Removal, he asserts that the Tax Foreclosure Action is a core proceeding.  See Doc. No. 74 at pg. 2.  The Chapter 7 Trustee offers no support for this assertion, which is incorrect for the reasons discussed herein.

12

Hayim, 419 B.R. at 506 ("a matter cannot be deemed to be core merely because the debtor holds a claim which, if successful, could increase the assets of the estate").

Finally, the third and fourth factors mandating abstention have also been met. The Tax Foreclosure Action was commenced in the Land Court before this bankruptcy proceeding and can be timely adjudicated there, where judgment has already entered and all that is left for the Land Court to do is decide the pending motion to vacate the judgment. Where the Land Court is, by statute, the exclusive venue in which the Town could bring the Tax Foreclosure Action, and there is no evidence that the Land Court faces a backlog that would prevent prompt disposition of the Debtor's motion to vacate, removal in no way enhances efficiency. To the contrary, "the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion." Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 580 (2d Cir. 2011) (analyzing elements of "timely adjudication" factor);[21] see Little Rest Twelve, Inc., 458 B.R. at 59 (where a case is "far along in state court" with the state court judge "about to decide important issues," the "claims are wholly based on … state law, with which the state courts have great expertise," and "bankruptcy proceedings are just beginning," timely adjudication demands remand or abstention). Additionally, because the Tax Foreclosure Action is not a core proceeding, this Court can only submit proposed findings of fact and conclusions of law to the District Court absent the Town's consent (which the Town has not provided). See 28 U.S.C. § 157(c). As such, remand and decision by the Land Court is significantly more efficient than two-step adjudication in federal court. See Malloy, 345 B.R. at 754-755 ("This procedure is inefficient, generates a

---

[21] Those elements are: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Parmalat Cap. Fin. Ltd., 639 F.3d at 580.

13

multitude of repetitive pleadings, is expensive, doubles the judicial resources devoted to the matter, and substantially increases the duration of the litigation.").

Moreover, "perhaps the single most important factor is the nature of the underlying chapter proceeding," particularly because a Chapter 7 such as this case has "no administrative urgency or plan of reorganization to facilitate." Silverman v. General Rwy. Signal Co. (In re Leco Enters., Inc.), 144 B.R. 244, 251 (S.D.N.Y. 1992) (quotations omitted). Likewise, a remand would only be untimely if it unduly prolongs administration of the bankruptcy estate, not simply because of the prospect of some delay. See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 269 (2d Cir. 2012). Where the Tax Foreclosure Action had progressed nearly to the end, only to be avoided at the last minute by the Debtor's own counsel when the Debtor's own motion was the only thing left for the Land Court to adjudicate, there is no prospect of unduly protracted administration of the estate. In the unlikely event that the Land Court allowed the Debtor's motion on remand (assuming that this Court also grants the Town's pending motion for relief from the automatic stay with respect to the Tax Foreclosure Action), the Chapter 7 Trustee would have the ability to redeem the Property as part of the estate administration process, assuming that the Debtor's estate has any assets sufficient to pay the redemption balance set by the Land Court. But the Tax Foreclosure Action need not proceed in this Court in order for that to occur.

As the Tax Foreclosure Action is subject to mandatory abstention under section 1334(c)(2), the Court should remand the case to the Land Court.

## II. EQUITY DEMANDS THAT THE TAX FORECLOSURE ACTION BE REMANDED AND/OR THAT THIS COURT EXERCISE PERMISSIVE ABSTENTION

Section 1452(b) allows the federal court to remand claims on equitable grounds. "Among the factors courts consider in making a decision to exercise jurisdiction to remand a removed action" under that equitable power "are the following: (1) the effect of the action on the

14

administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (Feeney, J.).

Similarly, bankruptcy courts have broad discretion to abstain under section 1334(c)(1) "in the interest of justice, or in the interest of comity with State courts or respect for State law." See 28 U.S.C. § 1334(c)(1); New England Power & Marine, Inc., 292 F.3d at 69. Where many (but not all) of the factors for mandatory abstention have been met, equitable remand and/or discretionary abstention are overwhelmingly in the interests of justice and comity. See Southern Marine & Indus. Servs., Inc. v. AK Eng'ng, Inc. (In re AK Servs., Inc.), 159 B.R. 76, 86 (Bankr. D. Mass. 1993) (Feeney, J.); see also Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 794 (D.N.J. 1995) ("This near-miss rationale is widely adopted."). As Judge Feeney explained, equitable remand is proper "particularly where all but one of the elements necessary for mandatory abstention are present" and "several of the factors considered for discretionary abstention are compelling." Southern Marine & Indus. Servs., Inc., 159 B.R. at 86. Additionally, the principles underlying permissive abstention require courts to be wary of "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." New England Power & Marine, Inc., 292 F.3d at 69. For these reasons, equitable remand and/or permissive abstention are appropriate here even if the Court finds that one of the factors for mandatory abstention is missing or questionable.[22]

---

[22] Permissive abstention and equitable remand are "kindred statutes" that, together, "strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334(b) and the litigation can be timely completed in state court." Dubose v. Merchants & Farmers Bank, 318 F. Supp. 2d 419, 428 (S.D. Miss.

15

208

Here, where the Tax Foreclosure Action was pending in the Land Court long before this bankruptcy was initiated and had almost reached its conclusion, equity calls for remand and/or permissive abstention.  See O'Rourke v. Cairns, 129 B.R. 87, 91 (E.D. La. 1991) ("The state court was on the verge of trying this case when it was removed").  Indeed, it appears that this bankruptcy proceeding was filed expressly for the purposes of preventing the Land Court from adjudicating the pending motion to vacate the judgment, which was the final step in bringing the Tax Foreclosure Action to a close.  As set forth more fully in the Town's Motion to Dismiss Bankruptcy Case, this involuntary Chapter 7 was filed against the Debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action.  See Doc. No. 69 at p. 1.  The petition was filed, amidst other failed attempts by the Debtor to establish ownership of the LLC and thus an interest in the Property, the day of the pre-hearing conference on the Debtor's motion to vacate the judgment in the Tax Foreclosure Action.  Id. at pp. 8-9.  Indeed, even if (somehow) this manipulation of the bankruptcy process does not amount to cause to dismiss the petition in its entirety, when the manipulation is viewed in the light of clear statutory dictates for bankruptcy courts to promote comity, efficiency, and respect for state courts and state law, the tactics employed here overwhelmingly suggest that remand of and/or abstention from the Tax Foreclosure Action is in the interests of justice.  Indeed, the First Circuit has previously affirmed a decision to apply permissive abstention under similar circumstances, where a tax title action under G.L. c. 60, § 65 "had already been fully litigated in the Land Court" and the case was under advisement.  See New England Power & Marine, Inc., 292 F.3d at 69.

---

2003).  These statutes and doctrines substantially overlap.  See Bibeault v. CVS Pharmacy, Inc., No. CV 19-10758-NMG, 2019 WL 3546889, at *4 n.6 (D. Mass. June 21, 2019) ("In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a permissive abstention analysis"); O'Rourke v. Cairns, 129 B.R. 87, 90 (E.D. La. 1991) ("some bankruptcy courts, although deciding whether to remand the case, take into account whether abstention would also be appropriate").  For ease of reference, as a result, these statutes are discussed together in this section.

16

In considering the VideOcart factors specifically, the case for remand is clear. All factors, except for the question of a jury trial, weigh in favor of equitable remand and/or permissive abstention. With respect to the first and fifth factors, as discussed above, while the Tax Foreclosure Action may have some relationship to the current bankruptcy action and may have some effect on the administration of the estate, resolution of the Land Court action will only improve efficient administration. The relationship, at the outset, is tenuous, as "no substantive right under the Bankruptcy Code is at issue in the underlying [state] litigation" and "[t]he only connection between the litigation and the Bankruptcy Code is the fact that [the Debtor's counsel] happened to file for relief … during the pendency of the removed action." Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handlings Sys., LLC), 304 B.R. 111, 127 (Bankr. D.N.J. 2003). This is especially true where the relationship is an artificially created one, as part of the Debtor's scheme to avoid the otherwise imminent resolution of the Tax Foreclosure Action in Land Court. Balcor/Morristown Ltd. P'ship, 181 B.R. at 793 ("There is a strong possibility that Vector seeks to change forums to avoid adverse rulings" in state court). Moreover, resolution of the Tax Foreclosure Action promptly in the Land Court will actually facilitate administration of the estate, as "resolving the various claims will be quicker in the forum where the process of adjudication is already well underway." Id. "Any task left over for the bankruptcy court"— whether a bankruptcy sale of the Property (if the Debtor's motion is allowed and the Chapter 7 Trustee is able to redeem) or a distribution of the surplus proceeds of the Town's sale of the Property (if the Debtor's motion is denied)—"will be made the simpler" by Land Court resolution of the Debtor's motion. Id.

The "second, third, and fourth factors favoring [equitable remand and] discretionary abstention are met and require little elaboration" here. Maintainco, Inc., 304 B.R. at 126-127. The

210

Tax Foreclosure Action involves exclusively state law issues, namely whether the Debtor is entitled to vacate the Land Court's tax title foreclosure judgment under the Massachusetts General Laws. The case certainly involves no bankruptcy issues. Comity and the centrality of state law to the removed claim strongly favor remand to the Land Court, as the Commonwealth of Massachusetts and its designated court for hearing tax title foreclosure cases have a clear interest in enforcing the state's tax laws and resolving title doubts created by failure to abide thereby. See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *8 (D. Mass. Dec. 28, 2010), adopted 813 F. Supp. 2d 242, 246 (D. Mass. 2011); see also Hayim, 419 B.R. at 510 ("where the real estate dispute involves solely state court issues, relates to property located within the state…, and no core issues are involved, comity weighs heavily in favor of abstention"). This is especially true where the issue has been litigated for years and already proceeded to judgment.

The final factor weighs heavily in favor of equitable remand and/or permissive abstention, as the prejudice to the Town is substantial. This entire proceeding was manufactured to avoid the impending resolution of the Tax Foreclosure Action. That the Debtor has effectively schemed with its counsel in the Tax Foreclosure Action to have the case stayed at the eleventh hour and removed by the Chapter 7 Trustee (who now represents the Debtor's interests and controls the Debtor's rights in the Tax Foreclosure Action) demonstrates the prejudice that removal will cause. The Tax Foreclosure Action "was on the verge" of finality, and to retain the matter in bankruptcy would result in the expenditure of this Court's resources familiarizing itself with the issues posed by the Debtor's motion to vacate (which the Land Court had been grappling with for the better part of nine months), waste the resources spent in Land Court, and cause serious "prejudice to the involuntarily removed party because the institutional delays implicit in starting over" with the

18

Debtor's motion in this Court will be significant. O'Rourke, 129 B.R. at 91. With respect to the additional prejudice caused by the Debtor's dealings, the Town need not belabor points already discussed above and in its motion to dismiss this bankruptcy proceeding. It is sufficient to state that the prejudice must be viewed in light of the demonstrated likelihood that this bankruptcy was commenced in order to avoid the Land Court's disposition of the Tax Foreclosure Action, which was on the "eve" of final resolution. Balcor/Morristown Ltd. P'ship, 181 B.R. at 793.

Thus, even if the Court finds that mandatory abstention does not apply, the Court should remand the Tax Foreclosure Action pursuant to equitable remand and/or permissive abstention.

## III. THE MASSACHUSETTS LAND COURT HAS EXCLUSIVE JURISDICTION OVER THE TAX FORECLOSURE ACTION

Where a state court has exclusive jurisdiction, an action cannot be removed pursuant to section 1452, particularly if it is not a core proceeding. See CityView Towne Crossing Shopping Center Fort Worth Tx. Ltd. P'Ship v. Aissa Medical Resources L.P., 474 F. Supp. 3d 586, 597-598 (W.D.N.Y. 2020) (granting motion to remand where leases upon which action was based provided that New York state court had exclusive jurisdiction over disputes). As discussed above, under Massachusetts law, tax title foreclosure actions are subject to the exclusive jurisdiction of the Land Court. See G.L. c. 60, § 65. As such, the Tax Foreclosure Action—which is not a core proceeding, as discussed above, as well—cannot be removed pursuant to section 1452.

## IV. THE BANKRUPTCY REMOVAL STATUTE DOES NOT PERMIT REMOVAL OF THE TAX FORECLOSURE ACTION

Finally, section 1452 does not permit removal of a civil action brought by a governmental unit—which includes a municipality, see 11 U.S.C. § 101(27)—to enforce its police or regulatory power. 28 U.S.C § 1452(a). An action to foreclose a municipal tax title is a form of enforcement of the municipality's regulatory powers of taxation. Although the First Circuit has not interpreted the "police or regulatory power" provision of section 1452, it has interpreted the similar provision

19

of 11 U.S.C. § 362 and, in doing so, adopted two tests—the "public purpose" and "pecuniary purpose" tests—which apply to section 1452 as well. Massachusetts v. New England Pellet, LLC, 409 B.R. 255, 258-259 (D. Mass. 2009), citing Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 9 (1st Cir. 2003); see Kupperstein v. Schall (In re Kupperstein), 994 F.3d 673, 677-678 (1st Cir. 2021). "If either test is satisfied the case is considered an enforcement action" that may not be removed. New England Pellet, 409 B.R. at 258-259.

The Tax Foreclosure Action satisfies the "public purpose" test. Under that test, "the court determines whether the government seeks to 'effectuate public policy,'" in which case the test is satisfied, "or to adjudicate 'private rights,'" in which case it is not. Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). The Tax Foreclosure Action does not seek to adjudicate private rights such as a municipal contract dispute or employment issue. Rather, the Tax Foreclosure Action sought to recover property that had been abandoned with no owner paying the property taxes, so that the Property could, in turn, be sold and returned both to the tax rolls and to operational status by a new owner. As such, the Tax Foreclosure Action served the public policy of putting real property to productive use for the benefit of all of the Town's citizens. Thus, under the "public purpose" test, the Tax Foreclosure Action was enforcement of the Town's "police or regulatory power" for the purposes of section 1452(a). The fact that the Town may obtain some financial benefit, namely satisfaction of the tax title account balance, through the Tax Foreclosure Action does not bar application of the public purpose test. See Kupperstein, 994 F.3d at 680-681.

As the Tax Foreclosure Action is a civil action brought by a governmental unit to enforce its police or regulatory power, it may not be removed under section 1452(a).

## CONCLUSION

For the foregoing reasons, the Court should remand the Tax Foreclosure Action to the Massachusetts Land Court.

20

213

Respectfully submitted,

TOWN OF WESTBOROUGH,

By its attorneys,

Brian W. Riley (BBO# 555385)
Jeffrey T. Blake (BBO# 655773)
Roger L. Smerage (BBO# 675388)
KP Law, P.C.
 Town Counsel
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
briley@k-plaw.com
jblake@k-plaw.com
rsmerage@k-plaw.com

Dated: February 7, 2024

895870/WEST/0049

21

CERTIFICATE OF SERVICE

I, Roger L. Smerage, hereby certify that on the below date, I caused a copy of the foregoing

Motion to Remand or, Alternatively, Abstain from Hearing Tax Title Foreclosure Action to be

served through the Court's CM/ECF system to the following counsel of record or by U.S. mail to

the following unregistered parties:

| | | |
|---|---|---|
| Stephen F. Gordon<br>The Gordon Law Firm LLP<br>River Place<br>57 River Street<br>Wellesley, MA 02481<br>sgordon@gordonfirm.com<br>*Attorney for Petitioning Creditors* | Jonathan R. Goldsmith<br>Goldsmith, Katz & Argenio P.C.<br>1350 Main Street, 15th Floor<br>Springfield, MA 01103<br>trusteedocs1@gkalawfirm.com<br>*Attorney for Chapter 7 Trustee* | Richard King<br>Office of US. Trustee<br>446 Main Street<br>14th Floor<br>Worcester, MA 01608<br>*Attorney for the U.S. Trustee* |
| Westborough SPE, LLC<br>c/o Lolonyon Akouete<br>1241 Deer Park Ave., Suite 1, #1051<br>North Babylon, NY 11703<br>*Debtor* (by U.S. mail) | Scott A. Schlager<br>Nathanson & Goldberg, P.C.<br>183 State Street, 5th Floor<br>Boston, MA 02109<br>sas@natgolaw.com<br>*Attorney for Creditor Nathanson & Goldberg, P.C.* | Paul W. Carey<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>100 Front Street<br>Worcester, MA 01608-1477<br>pcarey@mirickoconnell.com<br>*Attorney for Creditor Ferris Development Group, LLC* |
| Darin Clagg<br>24 Kobbs Korner Rd.<br>Pine Bush, NY 12566<br>*Creditor* (by U.S. Mail) | Matthew A. Morris<br>Sherin and Lodgen LLP<br>101 Federal Street, 30th Floor<br>Boston, MA 02110<br>mmorris@sherin.com<br>*Creditor* (by email) | Lolonyon Akouete<br>800 Red Milles Rd.<br>Wallkill, NY 12589<br>info@smartinvestorsllc.com<br>*Creditor* (by email) |
| Denise Edwards<br>137 North 25th Street<br>Wyandanch, NY 11798<br>deniseedwards818@yahoo.com<br>*Creditor* (by email) | Lenard Benson Zide<br>Butters Brazilian LLP<br>420 Boylston Street, 4th Floor<br>Boston, MA 02116<br>zide@buttersbrazilian.com<br>*Attorney for Creditor The MobileStreet Trust* (by email) | |

Dated: February 7, 2024

_____
Roger L. Smerage

22

215

# Appendix

2019 WL 3546889
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Marcia BIBEAULT, et al., Plaintiffs,

v.

CVS PHARMACY, INC., et al., Defendants.

Civil Action No. 19-10758-NMG
|
Filed 06/21/2019

**Attorneys and Law Firms**

Lisa M. Conserve, Michael J. McCann, Erika A. O'Donnell, Michael C. Shepard, Shepherd Law Group P.C., Boston, MA, for Plaintiffs.

REPORT AND RECOMMENDATION ON MOTION TO REMAND

[Docket No. 8]

Boal, M.J.

 **\*1** Plaintiffs Marcia and Howard Bibeault have filed an emergency motion to remand this action to state court. Docket No. 8. For the following reasons, this Court recommends that the District Judge grant the motion.[1]

### I. BACKGROUND

A. Bibeault Case

Roughly 2,400 talc-related actions have been filed against Johnson & Johnson in state courts nationwide. Docket No. 17 at 7 n.1. Plaintiffs filed this action in Middlesex Superior Court on December 27, 2018. Docket No. 1-2 ("Complaint"). They allege negligence, breach of express and implied warranties, and loss of consortium as a result of Mrs. Bibeault's exposure to asbestos in Johnson & Johnson's talcum powder that caused her to contract mesothelioma, a fatal form of cancer. Id.[2]

B. Delaware Proceedings

On February 13, 2019, non-party Imerys Talc America, Inc., Johnson & Johnson's talc supplier, and two affiliates filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. See In re Imerys Talc Am., No. 19-10289-LSS (Bankr. D. Del.). Johnson & Johnson removed this action on April 18, 2019,[3] on the theory that it is "related to" the Imerys bankruptcy proceeding. Docket No. 1.

On April 18, 2019, Johnson & Johnson filed a motion in the U.S. District Court for the District of Delaware to fix venue for claims related to Imerys' bankruptcy. Docket No. 1-4. On April 30, 2019, Johnson & Johnson filed an emergency motion to provisionally transfer the 2,400 talc actions. On May 9, 2019, the Delaware judge denied the emergency motion because Johnson & Johnson had not demonstrated its entitlement to such sweeping relief. See In re Imerys Talc Am., Inc., No. 19-103-MN, 2019 WL 2052351, at \*5 (D. Del. May 9, 2019). The motion to fix venue is still pending.

Plaintiffs filed the instant motion to remand on May 1, 2019, which Johnson & Johnson opposed. Docket Nos. 8, 17. Plaintiffs filed a reply brief. Docket No. 24. This Court heard oral argument on June 13, 2019.

### II. DISCUSSION

Plaintiffs argue remand is proper for the following reasons: (1) Johnson & Johnson's removal was untimely; (2) the court lacks subject matter jurisdiction because this case is not "related to" the Imerys bankruptcy proceeding; and (3) the court should abstain from hearing the case under a mandatory or permissive basis. Docket No. 8. As an initial matter, Johnson & Johnson requests a stay of the instant motion until after the Delaware District Court decides the pending motion to fix venue. Docket No. 17. Johnson & Johnson further argues that plaintiffs' claims are "related to" the Chapter 11 case and neither mandatory nor permissive abstention is appropriate. Id.

Judges Saylor, Burroughs, Sorokin and Stearns of this district have recently remanded similar cases presenting essentially the same issue.[4]

A. Motion To Fix Venue

**\*2** Pursuant to 28 U.S.C. § 157(b)(5), Johnson & Johnson argues that any decision on the instant motion be stayed while the motion to fix venue is pending in Delaware. Docket No. 17 at 14-16. Section 157(b)(5) states that:

> personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). However, Section 157(b)(5) governs venue, not jurisdiction. See Stern v. Marshall, 564 U.S. 462, 479 (2011). The Supreme Court has explained that this provision "does not implicate questions of subject matter jurisdiction." Id. at 480. Instead, it "simply specifies where a particular category of cases should be tried." Id.; see In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. 256, 265 (D. Mass. 2013). The issue before this Court is whether removal jurisdiction is proper under 28 U.S.C. § 1452. Accordingly, this Court must first decide whether it has jurisdiction prior to ruling on any request for a stay.

### B. Johnson & Johnson Has Not Demonstrated That Plaintiffs' Claims Are "Related To" The Imerys Bankruptcy Proceeding

A party may remove any claim in a civil proceeding to federal court if the court has bankruptcy jurisdiction over the claim under 28 U.S.C. § 1334. 28 U.S.C. § 1452(a). The federal court may then remand the claim to the state court "on any equitable ground." Id. § 1452(b). In evaluating whether to remand on equitable grounds, a federal court typically considers the following factors:

> (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of remand on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity considerations; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where action originated.

Messerlian v. A.O. Smith Corp., No. 09-393 S, 2010 WL 308981, at \*3-4 (D.R.I. Jan. 25, 2010) (citation omitted).

"The statutory grant of 'related to' jurisdiction is quite broad." Bos. Reg'l Med. Ctr. v. Reynolds (In re Bos. Reg'l Med. Ctr.), 410 F.3d 100, 105 (1st Cir. 2005). "[B]ankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation 'potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.' " Id. (quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), overruled on other grounds by, Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992)). Nevertheless, there is a "strong presumption against removal jurisdiction generally." Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., No. 10-11376-NMG, 2010 WL 6580503, at \*3 (D. Mass. 2010) (citation omitted). On a motion to remand, the removing party bears the burden of establishing the propriety of removal. Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008).

**\*3** The U.S. Court of Appeals for the Third Circuit[5] has explained that a court does not necessarily have "related to" jurisdiction over an action involving a non-debtor party seeking indemnification from a bankruptcy debtor. New Jersey v. W.R. Grace & Co. (In re W.R. Grace & Co.), 412 B.R. 657, 667 (D. Del. 2009); see In re Combustion Eng'g, Inc., 391 F.3d 190, 231 (3d Cir. 2004). Indeed, "[e]ven with an indemnification agreement, a court lacks 'related to' jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification." In re W.R. Grace & Co., 412 B.R. at 667. "When indemnification is not automatic, 'related to' jurisdiction does not exist." Id. (collecting cases).

Johnson & Johnson argues that its indemnification claims "vested" immediately upon the filing of the state talc lawsuits. Docket No. 17 at 22. However, a plain reading of the indemnification provisions themselves demonstrates that any rights to indemnity do not operate automatically. See, e.g., Docket No. 1-4 at 431-33, 442-43. Instead, the provisions require Imerys to indemnify and defend Johnson & Johnson for liabilities only where a number of exceptions are not met and where a number of contingencies are met. See id. At least two of the agreements also contain cross-provisions in which Johnson & Johnson must indemnify Imerys for any liability that it incurs as a result of Johnson & Johnson's violations of law. Id. Accordingly, this Court is unable to conclude that Johnson & Johnson would in fact receive the benefit of such indemnification without extended litigation. See Rivera, No. 19-10747-LTS, Docket No. 29 at 4. In any event, indemnification would not be automatic. Therefore, there is no "related to" jurisdiction on this basis.

Further, Imerys and Johnson & Johnson appear to dispute the existence and/or amount of shared insurance policies. See Docket Nos. 17 at 23-25; 24 at 12. "Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor." In re Combustion Eng'g, Inc., 391 F.3d at 232-33. Here, there are no comparable findings of fact concerning even the existence of shared insurance policies, and no findings on the operative terms of any such policies. Johnson & Johnson therefore has not established the identity of interests necessary to invoke federal subject matter jurisdiction. See In re Combustion Eng'g, Inc., 391 F.3d at 225 n.35, 230-31. For these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction and remand is appropriate.

C. Equitable Grounds Support Remand

Even if federal subject matter jurisdiction did exist, however, this Court would still recommend that the District Judge remand the claims for equitable reasons. Pursuant to 28 U.S.C. § 1452(b), the District Court has discretion to remand claims or cases "on any equitable ground." 28 U.S.C. § 1452(b). Factors to be considered when deciding whether such equitable grounds exist include:

**\*4** (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court.

Fed. Home Loan Bank of Bos. v. Ally Fin., Inc., No. 11-10952-GAO, 2012 WL 769731, at \*4 (D. Mass. Mar. 9, 2012) (citing Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara Cty. Child Care Consortium), 223 B.R. 40, 46 (B.A.P. 1st Cir. Aug. 4, 1998)); Cambridge Place Inv. Mgmt., Inc., 2010 WL 6580503, at \*7.[6] Application of these factors weighs strongly in favor of remand.

This case is an exclusively state law action that is part of a coordinated proceeding of asbestos-related lawsuits in Middlesex Superior Court. Docket No. 8 at 3. It involves a non-debtor bringing claims against non-debtors that bear, at best, a tenuous connection to the Inerys bankruptcy estate.

The other defendants in the original action are still proceeding in state court. Because only the claims against Johnson & Johnson were removed, the state court action would, if removal is allowed, proceed separately from this case. Therefore, the plaintiffs would have to litigate their claims in two different courts.

In addition, other than Johnson & Johnson's theory of "related to" jurisdiction under Section 1334(b), there is no basis for removal or federal jurisdiction. Although this case appears to be in its infancy, Docket No. 17-1 at 37, plaintiffs have represented that they might receive an expedited state court trial date given Mrs. Bibeault's failing health. Docket No. 8 at 4. In any event, there is no indication that plaintiffs' claims will not proceed efficiently in state court. Finally, courts in this district have recently remanded cases presenting essentially the same issues on the same equitable grounds. See supra n.4.[7]

III. RECOMMENDATION

For all of these reasons, this Court recommends that the District Judge grant the emergency motion to remand.

IV. REVIEW BY DISTRICT JUDGE

**\*5** The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).

The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3546889

## Footnotes

1      On May 21, 2019, the District Judge referred the instant motion to the undersigned for a report and recommendation. Docket No. 20.

2      The facts are set forth as alleged in the Complaint unless otherwise noted.

3      The claims against defendants CVS Pharmacy, Inc. and New England Resins & Pigments Corporation remain in state court.

4      See Order of Remand, Mitchell v. Johnson & Johnson, No. 19-10762-FDS, Docket No. 32 (D. Mass. June 12, 2019); Memorandum and Order on Plaintiff's Motion to Remand, O'Riorden v. Johnson & Johnson, No. 19-10751-ADB, Docket No. 25 (D. Mass. June 5, 2019); Order on Emergency Motion to Remand, Rivera v. Johnson & Johnson, No. 19-10747-LTS, Docket No. 8 (D. Mass. May 31, 2019); Remand Order, Wilson v. Johnson & Johnson, No. 19-10764-RGS, Docket No. 19 (D. Mass. May 29, 2019).

5      At oral argument, the parties agreed that Third Circuit case law controls the Delaware bankruptcy court's exercise of "related to" jurisdiction. See also Docket Nos. 8 at 9; 17 at 19. Plaintiffs also argue that the First Circuit has adopted "essentially the same definition of 'related to' jurisdiction expressed by the Third Circuit." Docket No. 8 at 9. Johnson & Johnson has not argued that the circuits' case law differs. This Court assumes but does not decide that Third Circuit case law applies.

6      In deciding whether to equitably remand claims, courts have looked to the same factors as those employed in a permissive abstention analysis under 28 U.S.C. § 1334(c)(1). S. Marine & Indus. Servs. v. AK Eng'g, Inc. (In re AK Servs. Inc.), 159 B.R. 76, 83 (Bankr. D. Mass. 1993).

7      Plaintiffs also argue that their claims implicate mandatory abstention under 28 U.S.C. § 1334(c). Docket No. 8 at 14-17. They concede that a case in this district has held, pursuant to 28 U.S.C. § 157(b)(4), that mandatory abstention does not apply to personal injury claims. Id. at 15 n. 10 (citing Haber v. Massey, 904 F. Supp. 2d 136, 147 (D. Mass. 2012)). However, plaintiffs go on to suggest that the Haber conclusion is based on a misreading of Section 157. Id. Another court in this district has acknowledged plaintiffs' same interpretation of the statute. See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. at 271 ("A strict textual reading of the statutes may lead to the conclusion that personal injury and wrongful death claims asserted against non-debtor third parties ... are subject to the mandatory abstention provisions of § 1334(c)(2)"). This Court need not decide the issue as it finds that the District Court lacks federal subject matter jurisdiction in the first instance.

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 6580503
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

CAMBRIDGE PLACE INVESTMENT
MANAGEMENT, INC., Plaintiff,

v.

MORGAN STANLEY &
CO., INC., et al., Defendants.

Civil Action No. 10–11376–NMG.
|
Dec. 28, 2010.

**Attorneys and Law Firms**

T. Christopher Donnelly, Michael S. D'Orsi, Donnelly, Conroy & Gelhaar, LLP, Boston, MA, David R. Stickney, Matthew P. Jubenville, Takeo A. Kellar, Timothy A. Delange, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, David L. Wales, Gerald H. Silk, Jai K. Chandrasekhar, Lauren A. McMillen, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, for Plaintiff.

Beth I.Z. Boland, Brandon L. Bigelow, Frances S. Cohen, Nikki J. Fisher, Bingham McCutchen LLP, Franklin H. Levy, Katherine Young Fergus, Duane Morris LLP, Stephen D. Poss, Stacey Baron Ardini, Brian E. Pastuszenski, Daniel P. Roeser, John O. Farley, Goodwin Procter LLP, Adam Hornstine, Andrea J. Robinson, Brian J. Boyle, Christopher B. Zimmerman, Jeffrey B. Rudman, Katherine B. Dirks, Wilmer Cutler Pickering Hale and Dorr LLP, Azure M. Abuirmeileh, Kathy B. Weinman, Collora LLP, Anthony A. Bongiorno, Kevin M. Bolan, McDermott, Will & Emery LLP, William T. Hogan, III, Nelson, Mullins, Riley & Scarborough, LLP, Joseph F. Ryan, Lyne, Woodworth & Evarts LLP, Gary R. Greenberg, Thomas H. Good, Joseph P. Davis, III, Greenberg Traurig, LLP, John R. Baraniak, Jr., Choate, Hall & Stewart LLP, Phoebe Sears Winder, R. Bruce Allensworth, Robert W. Sparkes, III, K & L Gates LLP, Edward V. Colbert, III, Erin E. Howard, Nancy L. Perlman, Looney & Grossman, LLP, Kevin W. Clancy, Cooke, Clancy & Gruenthal, LLP, Christian R. Jenner, James R. Carroll, Peter J. Simshauser, Skadden, Arps, Slate, Meagher & Flom LLP, Philip A. O'Connell, Jr., Sonnenschein Nath & Rosenthal LLP, William Shaw McDermott, Kirkpatrick & Lockhart, John A. Houlihan, Jamie C. Notman, Michael T. Grant, Edwards Angell Palmer & Dodge LLP, Boston, MA, Daniel J. Schwartz, James P. Rouhandeh, William Fenrich, Davis Polk & Wardwell LLP, Brad S. Karp, Charles E. Davidow, Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Christopher B. Harwood, Michael T. Reynolds, Richard W. Clary, Cravath, Swaine & Moore LLP, Jamie L. Wine, Jason C. Hegt, Latham & Watkins LLP, Anthony Antonelli, Barry G. Sher, James R. Bliss, Paul, Hastings, Janofsky & Walker, LLP, Christopher J. Dunne, Richard H. Klapper, Theodore Edelman, Sullivan & Cromwell, LLP, Brandyne S. Warren, Kenneth I. Schacter, Theo J. Robins, Bingham McCutchen LLP, Jennifer M. Rosa, Kelly M. Glynn, Michael O. Ware, Noah Liben, Richard A. Spehr, Mayer, Brown & Platt, LLP, Agnes Dunogue, Joseph J. Frank, Matthew L. Craner, Steven J. Fink, Orrick, Herrington & Sutcliffe LLP, Jonathan D. Forstot, Justin Kattan, Reid L. Ashinoff, Sonnenschein Nath & Rosenthal LLP, New York, NY, Ethan J. Brown, Latham & Watkins, Bernard E. LeSage, Karen L. Stevenson, Shannon Keast, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, John M. Falzone, III, Latham & Watkins, Newark, NJ, James H. Weingarten, Margaret Keeley, Williams & Connolly LLP, Washington, DC, J. Mark Chevallier, J. Thomas Scott, McGuire, Craddock & Strother, P.C., Dallas, TX, Edward J. Fuhr, Eric H. Feiler, Matthew P. Bosher, Trevor S. Cox, Hunton & Williams LLP, Richmond, VA, William F. Alderman, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, Sean T. Carnathan, Benjamin S. Kafka, O'Connor, Carnathan and Mack LLC, Burlington, MA, John J. Murphy, III, Thomas W. Dymek, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA, for Defendants.

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND**

DEIN, United States Magistrate Judge.

**I. INTRODUCTION**

**\*1** The plaintiff Cambridge Place Investment Management, Inc. ("CPIM") commenced an action in Massachusetts Suffolk Superior Court alleging violations of the Massachusetts Uniform Securities Act, Mass. Gen. Laws ch. 110A, § 410, in connection with the sale of mortgage-backed securities. The defendants are investment firms, underwriters and dealers who sold mortgage-backed securities (collectively the "Wall Street Bank defendants") and the "Depositor defendants" who purchased or acquired mortgage loans, securitized them, and were the "issuers" of

Case 2:24-cv-10769 Document 108-1 Filed 02/07/24 Page 179 of 1091

Cambridge Place Inv. Management, Inc. v. Morgan Stanley..., Not Reported in...

the securities sold by the Wall Street Bank defendants. The defendants removed this action to federal court under 28 U.S.C. §§ 1441 and 1452 on the grounds that this action is "related to" the bankruptcy filings by some of the mortgage loan originators from whom the defendants acquired the mortgage-backed securities. *See* 28 U.S.C. §§ 1334(b) and 1452(a). The defendants further argue that there may be diversity jurisdiction if CPIM, who brought this action as assignee of claims from nine hedge funds, is not the proper plaintiff. CPIM has moved to remand this action to state court. (Docket No. 133)

For the reasons detailed in this court's Report & Recommendation on Defendants' Motion to Take Jurisdictional Discovery ("Diversity R & R"), this court has concluded that CPIM is the proper plaintiff, and that there is no diversity jurisdiction in this court.[1] Therefore, this Report and Recommendation will be limited to whether this court has jurisdiction on the grounds that this case is related to bankruptcy proceedings.

[1] As noted in the Diversity R & R, there may be diversity between CPIM and one, unidentified, defendant. This court has recommended that the issue whether that defendant's claim should be severed should be decided in the context of an appropriate motion to separate that defendant's case.

Pursuant to its motion to remand, CPIM contends that the case should be remanded for lack of subject matter jurisdiction as it is not sufficiently related to bankruptcy proceedings to establish federal jurisdiction. In the alternative, CPIM contends that this court should abstain from hearing this matter and remand it to state court, either on the basis of mandatory abstention under 28 U.S.C. § 1334(c)(2), or equitable abstention pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion to remand (Docket No. 133) be ALLOWED on the basis of abstention.

## II. *STATEMENT OF FACTS*

The following facts are undisputed unless otherwise indicated, and are relevant to the motion to remand. Additional facts can be found in the Diversity R & R.

## *Overview*

CPIM is a Delaware corporation with a principal place of business in Concord, Massachusetts. *Complaint* (*"Compl."*) ¶ 11. It "was responsible for the sourcing, review, analysis, and purchase decisions for U.S. investments for its clients," including nine foreign hedge funds known as Caliber Global Investment Ltd., CAMBER 3 PLC, CAMBER 4 PLC, CAMBER 5 Ltd., CAMBER 7 PLC, CPIM Structured Credit Fund 20 LP, CPIM Structured Credit Fund 500 LP, CPIM Structured Credit Fund 1000 LP, and CPIM Structured Credit Fund 1500 LP (collectively the "Clients" or the "hedge funds"). *Id* . ¶ 12. The Wall Street Defendants are 16 banks that offered or sold approximately $2.4 billion of residential mortgage-backed securities ("RMBS") to CPIM for its hedge fund clients between 2005 and 2007. *Id.* ¶¶ 1, 15–32. The Depositor Defendants are 44 Special Purpose Vehicles that, working with the Wall Street Defendants, also offered or sold RMBS to CPIM. *Id.* ¶¶ 6, 31. None of the defendants has filed for bankruptcy.

**\*2** Stated simply, the mortgage pass-through securities at issue in this litigation represent interests in a pool of mortgages. *Id.* ¶ 33. "Although the structure and underlying collateral of the mortgages may vary, the basic principle of pass-through securities remains the same: The cash flow from the pool of mortgages is 'passed through' to the securities holders when payments are made by the underlying mortgage borrowers." *Id.* "To create RMBS, a 'depositor' first acquires an inventory of loans from one or more mortgage loan originators, and then transfers the acquired pool of loans to the issuing trust entity. [*Id.*] ¶ 34. The pool of loans for each RMBS usually includes thousands of loans. [*Id.*] ¶ 39." *Memorandum of Law in Support of Plaintiff's Motion to Remand* (Docket No. 134) (*"CPIM Mem."*) at 2–3. The Wall Street Defendants underwrote the sale of the securities in a securitization and, according to the plaintiff, were "responsible for gathering, verifying, and presenting to potential investors accurate and complete information about the credit quality and characteristics of the loans that [were] deposited into the trust." *Compl.* ¶ 39. The defendants contend they, in turn, relied on representations made by the entities which originated the mortgage loans.

### *Indemnification Agreements*

As noted above, none of the defendants is in bankruptcy. Rather, the defendants base their claim of federal jurisdiction on their contention that the instant case is "related to" bankruptcy filings by entities that originated the mortgage loans or their parent corporations. Some of the defendants have contractual indemnification agreements with some of the mortgage loan originators whereby the defendants may be entitled to indemnification or contribution if they are found liable to the plaintiff for representations attributable to the mortgage originators. These indemnification agreements are found in "over 4,000 pages of agreements between various Non–Party Originators, certain Defendants and other purportedly-related entities." *Plaintiff's Reply Memorandum of Law in Further Support of Its Motion to Remand* (Docket No. 188) (*"CPIM Reply"*) at 6. Their terms are not consistent and not all of the defendants are parties to an indemnification agreement. *See generally Declaration of Brian Boyle* (Docket No. 165). In some cases, the indemnification agreement may give rise to a claim for attorneys' fees incurred by some defendants in connection with the instant proceeding, and at least one proof of claim for such fees has been filed in a bankruptcy proceeding. In other cases, the indemnification obligation will arise, if at all, only after the instant case is completed and a new action against the debtor is commenced. At least one of the bankruptcy proceedings may have been terminated already, with a Chapter 11 plan having been confirmed. *See CPIM Reply* at 8. In some cases, there are reciprocal indemnification obligations between the defendants and the non-party originators. *Id.* at 7–8. Finally, it appears that none of the indemnification agreements will apply to the claims that the defendants, themselves, made misrepresentations about their own conduct in evaluating and acquiring the loans. *See, e.g., Compl.* ¶¶ 233, 234–499.

**\*3** Additional facts will be provided below where appropriate.

### III. *DISCUSSION*

### A. *Jurisdiction Over Cases "Related To" Bankruptcy Proceedings Standard of Review*

"Bankruptcy jurisdiction is governed principally by statute[,]" particularly 28 U.S.C. § 1334, which "vests original jurisdiction in the district courts over 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.' " *In re Boston Reg'l Med. Ctr.,* 410 F.3d

100, 105 (1st Cir.2005) (quoting 28 U.S.C. § 1334(b)). As the First Circuit has explained:

> The statutory grant of "related to" jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Thus, bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991) (quoting *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989)).

*Id.* This grant of "related to" jurisdiction is not limited to bankruptcy courts but, rather, grants jurisdiction to all district courts. *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1211–12 & n. 6 (3d Cir.1991). Finally, although "related to" jurisdiction is to be construed broadly, courts also recognize that there is a "strong presumption against removal jurisdiction generally." *Natale v. Pfizer, Inc.,* 379 F.Supp.2d 161, 172 (D.Mass.2005) (quotations and citations omitted).

The parties disagree strenuously as to whether the instant litigation is "related to" the bankruptcy proceedings of any of the loan originators. CPIM contends that the case being litigated here simply is too remote to be related to any bankruptcy proceedings. CPIM argues that "[a]t best, it is a mere precursor to the potential third party claim for indemnification" by the defendants against the loan originators. *Pacor,* 743 F.2d at 995. Thus, the loan originators would not be bound by any finding of liability, including a finding that there were misrepresentations, as they are not parties to the instant litigation, and the defendants "would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* CPIM relies on a line of cases which hold that absent an "automatic creation of liability against [the loan originators] on account of a judgment against [the defendants,]" the action is "not 'related to' bankruptcy and there therefore there [is] no jurisdiction to remove a case to federal court." *Id.* at 995, 996. *See also In re Santa Clara County Child Care Consortium,* 223 B.R. 40, 49 (B.A.P. 1st Cir.1998) (where state court proceeding "will merely determine the validity and enforceability of a guaranty between two creditors of the debtor[,]" the "proceeding is not sufficiently related to the debtor's bankruptcy case to confer subject-matter jurisdiction upon the bankruptcy court"); *In re*

*Federal–Mogul Global, Inc.,* 300 F.3d 368, 382 (3d Cir.2002) (where any indemnification claims that defendants may have against non-party debtors "have not yet accrued and would require another lawsuit before they could have an impact on ... bankruptcy proceeding[s]," no "related to" jurisdiction exists); *In re W.R. Grace & Co.,* 591 F.3d 164, 173 (3d Cir.2009)* ("in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must affect the bankruptcy without the intervention of yet another lawsuit"— no federal jurisdiction where third party would first have to be found liable and would then have to bring an indemnification or contribution claim against the debtor) (punctuation and citation omitted)). In sum, CPIM contends that this case falls squarely within the principle that "[w]here the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate." *Steel Workers Pension Trust v. Citigroup, Inc.,* 295 B.R. 747, 750 (E.D.Pa.2003).

**\*4** For their part, the defendants argue that the potential indemnification obligations here are so large, that the instant suit will clearly impact the bankruptcy proceedings of the loan originators. In addition, they point to the fact that, under at least one indemnification agreement, the debtor is liable for the legal fees incurred by the defendant in the instant case, without regard to whether the defendant prevails here. Finally, they argue that the existence of written contractual obligations satisfies the requirement that indemnification obligations are sufficiently automatic as to satisfy the "related to" nexus. *See Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir.2010) ("contractual indemnification rights may give rise to 'related to' jurisdiction"; court distinguishes *In re Federal–Mogul Global, Inc.* as involving "tort contribution principles"). The First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to "related to" bankruptcy jurisdiction.

### *Cases Involving Mortgage Pass–Through Certificates*

In other cases involving mortgage pass-through certificates, courts have seemingly consistently found "related to" jurisdiction .[2] As the court explained in *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,* 572 F.Supp.2d 314 (E.D.N.Y.2008), a class action alleging federal securities law violations in connection with the sale of

mortgage pass-through certificates and involving facts very similar to the instant cases:

[2] While an exhaustive search has not been undertaken, neither this court nor, apparently, the parties have found a factually similar case where "related to" jurisdiction was not found. In some cases, however, the matter has been remanded on abstention grounds.

An impact on the debtor estate sufficient to invoke federal jurisdiction has been found where the defendant in the allegedly related action has a contractual claim for indemnification against the debtor. While such a claim does not arise unless the defendant invoking bankruptcy jurisdiction is held liable, it has nonetheless been held to have the required "conceivable" effect on the debtor estate.... Even in the absence of a contractual provision for indemnification, federal jurisdiction has been found. In such cases, jurisdiction has been held to exist where there is a "reasonable" legal basis for the claim of indemnification.... Courts of Appeal in other circuits have also adopted the conceivable effect test, finding bankruptcy jurisdiction where a claim for indemnification could effect the debtor estate.

*Id.* at 317 (internal citations omitted). The *Ann Arbor* court held that there was "more than a 'reasonable' legal basis" for both the common law and contractual indemnification claims which could be brought by the sellers of mortgage backed securities against the loan originators. *Id.* at 318. Furthermore, the court noted, at least one proof of claim for reimbursement of fees and expenses incurred in the securities litigation had been filed in the bankruptcy estate of a loan originator. *Id.* at 318–19. "Unlike the claims for indemnification, these claims are already partially liquidated and not conditional upon the finding that Defendants are liable to Plaintiff here." *Id.* at 318–19. The court concluded that the matter was "related to" the bankruptcy proceedings and that removal was proper. *Id.* at 319.

**\*5** CPIM correctly argues that the First Circuit has not adopted the "conceivable effect test" on which the *Ann Arbor* court relied. *See CPIM Reply* (Docket No. 188) at 4–5. However, the First Circuit has recognized that "related to" jurisdiction is to be construed fairly broadly, and encompasses "proceedings which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d 61,

68 (1st Cir.2002) (quotations and citations omitted). Clearly, a finding of liability pursuant to an indemnification agreement on claims of the magnitude presented here would have such an impact. Therefore, this court recommends that "related to" jurisdiction be found in this case, like in other factually similar cases. *See, e.g., Lone Star Fund v. (U.S.),* 594 F.3d at 387 (concluding that "related to" jurisdiction existed where defendant Barclays "relie[d] heavily, if not exclusively, on contractual indemnity provisions with [mortgage originator] New Century containing representations about the quality of the mortgage loans purchased by Barclays, which [were] nearly identical to the representations Barclays made to [plaintiff] Loan Star."); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.,* No. C10–0139 RSM, 2010 WL 3662345, at *6 (W.D.Wash. Sept.1, 2010) ("related to" jurisdiction found based on indemnification agreement between Barclays and bankrupt loan originator Indy Mac which covered "any untrue statement or alleged untrue statement of a material fact" by Indy Mac (emphasis omitted)).

"Related to" jurisdiction also is appropriate in the instant case even adopting CPIM's contention that there must be " 'an unconditional duty to indemnify' " and a judgment against a defendant that " 'would automatically result in indemnification liability.' " *CPIM Reply* (Docket No. 188) at 4 (quoting *TD Bank, N.A. v. Sewall,* 419 B.R. 103, 106 (Bankr.D.Me.2009)) (emphasis omitted). In light of the fact that there are some liquidated debts in the form of indemnification claims for legal fees and expenses already incurred, there is an unconditional duty to indemnify at least some of the claims.

Finally, CPIM contends that the defendants may be precluded from seeking indemnification as a matter of law for securities fraud violations and that, therefore, there can be no "related to" jurisdiction based on an indemnification claim. It is true that there is no implied right of indemnification under Mass. Gen. Laws ch. 110A, § 410(a) and (b). *See Kennedy v. Josephthal & Co., Inc.,* No. 82–913–MA, 1983 WL 1314, at *5 (D.Mass. May 9, 1983). However, it remains an open question whether contractual indemnification clauses are enforceable under the Massachusetts state securities laws.[3] Moreover, there is a right of contribution under Mass. Gen. Laws ch. 110A, § 410(b). *Kennedy,* 1983 WL 1314, at *6 (noting that the scope of persons entitled to contribution under ch. 110A, § 410(b) "has yet to be articulated"); *In re Atl. Fin. Mgmt., Inc. Sec. Litig.,* 718 F.Supp. 1012, 1015 (D.Mass.1988) (general contribution statute, Mass. Gen.

Laws ch. 231B, governs the parties' contribution rights in state securities law claims). Based on the record before this court, it cannot be determined that the defendants will be precluded from seeking indemnification and/or contribution as a matter of law for securities law violations. Therefore, this court concludes that the removal of this action based on "related to" jurisdiction was appropriate.

3     This court notes that "there is no [implied] right to indemnification as to ... federal securities law claims, since to permit violators to obtain total reimbursement of judgments against them would frustrate the federal policy to deter securities fraud." *In re Atl. Fin. Mgmt., Inc. Sec. Litig.,* 718 F.Supp. 1012, 1015 (D.Mass.1988), and cases cited. Nevertheless, courts have found "related to" jurisdiction based on written indemnification agreements in cases alleging federal securities violations. *See, e.g., Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt–A Sec., Inc.,* 399 B.R. 119, 123 (E.D.N.Y.2009).

**B.** *Mandatory Abstention*

**\*6** CPIM argues that even if this court has jurisdiction over this action, it is nevertheless obligated to abstain in accordance with 28 U.S.C. § 1334(c)(2), the mandatory abstention provision.[4] This court agrees.

4     28 U.S.C. § 1334(c)(2) provides:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

"Pursuant to 28 U.S.C.A. § 1334(c)(2), a court must abstain from hearing a case before it if the following criteria are met: (1) a timely motion to abstain is filed; (2) the proceeding is based on a state law cause of action; (3) the action does not arise under Title 11 but is merely related to a case under Title 11; (4) the action could not have been commenced in federal court absent jurisdiction under 28 U.S.C.A. § 1334; (5) a state court action has commenced; and (6) can be timely adjudicated." *C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.,* 369 B.R. 87, 92 (D.P.R.2007) (citing *Goya Foods, Inc. v. Ulipiano Unanue–Casal,* 164 B.R. 216, 221 (D.P.R.1993)). This case meets all these criteria.

It is undisputed that the plaintiff filed a timely motion to abstain, that the plaintiff has brought only state law claims, and that the instant action is not a core proceeding under Title 11, but is merely "related to" the bankruptcy cases. Therefore, the first three elements have been met. The defendants contend that the fourth element has not been met because there is also diversity jurisdiction in this court, so 28 U.S.C. § 1334 is not the sole basis for federal jurisdiction. For the reasons detailed in the Diversity R & R, however, this court finds that CPIM is the proper plaintiff, and that there is no diversity jurisdiction. Therefore, federal jurisdiction is based, if at all, on § 1334.

The defendants also argue that mandatory abstention is not available because once this action was removed from state court, no action remained pending there. Therefore, they contend, CPIM cannot meet the fifth element. This court disagrees.

28 U.S.C. § 1334(c)(2) provides that if the other elements are met, "the district court shall abstain from hearing such proceeding if *an action is commenced,* and can be timely adjudicated, in a State forum of appropriate jurisdiction." (Emphasis added). There are cases which have held that once an action is removed from state court, "there is no pending state proceeding" so abstention is not applicable. *See In re Lazar,* 237 F.3d 967, 981–82 (9th Cir.2001), and cases cited therein. However, at least "four out of five courts of appeals to have considered the issue concluded that the abstentions codified in 28 U.S.C.A. § 1334(c)(1) & (2) do apply to removal actions because the statutory language only requires that a state action has been commenced as opposed to be pending." *C & A, S.E.,* 369 B.R. at 92 (citing *Stoe v. Flaherty,* 436 F.3d 209, 216 (3d Cir.2006); *Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436 (2d Cir.2005); *Christo v. Padgett,* 223 F.3d 1324, 1331 (11th Cir.2000); and *Robinson v. Mich. Consol. Gas Co.,* 918 F.2d 579, 584 (6th Cir.1990)). *See also In re Southmark Corp.,* 163 F.3d 925, 929 (5th Cir.1999). Other courts in this circuit also have concluded that mandatory abstention applies where the only state court action was removed under "related to" bankruptcy jurisdiction. *See, e.g., In re Culley,* Bankr.No. 06–40081–JBR, 2006 WL 889377, at *1 (Bankr.D.Mass. Mar.31, 2006); *In re Punto Aparte/Cima Publicidad, Inc.,* Bankr.No. 08–01350(GAC), 2009 WL 249429, at *3 (Bankr.D.P.R. Jan. 30, 2009) (slip op.). To conclude otherwise would mean that abstention would never apply to cases which were removed from state court. However, there does not seem to be any

"reason why Congress could have decided to deny mandatory abstention to a party who filed his state claim in a state court, only to have it removed to a federal court." *Stoe,* 436 F.3d at 214. This court recommends joining with the "majority view" and concludes that the mandatory abstention provision applies to cases which were commenced in state court but subsequently removed. *See C & A, S.E.,* 369 B.R. at 92.

**\*7** Finally, the defendants contend that the sixth requirement has not been met because CPIM has failed to establish that the matter can be timely adjudicated in the state court. This court disagrees. CPIM has established that the case has been accepted in the Business Litigation Session of the Massachusetts Superior Court, a session that operates under Time Standards Orders for each case and sets firm trial dates. "[N]obody can truly predict how long it will take for a complicated case to get to trial." *In re United Container LLC,* 284 B.R. 162, 174 (Bankr.S.D.Fla.2002). There is no reason for this court to conclude that the matter would not be resolved as expeditiously in the time-standards state court session as here. *See In re AK Servs., Inc.,* 159 B.R. 76, 85 (Bankr.D.Mass.1993) (Bankruptcy Court was "not persuaded that it could oversee ... claims any more expeditiously than the state court).

In determining whether a case can be "timely adjudicated" in a state forum, courts "have not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." *In re United Container LLC,* 284 B.R. at 174–75 (discussing factors considered), and cases cited. Since any trial of the instant case, either in this court or the state court, would proceed independently of all the pending bankruptcy proceedings, abstention would not interfere with the administration of any of the bankruptcy estates. In sum, CPIM has satisfied all the elements of § 1334(c)(2) and this court concludes that mandatory abstention applies.

**C. *Permissive Abstention***

Even if mandatory abstention were not applicable, a "further basis for remanding a removed cause of action lies in 28 U.S.C. § 1452(b), which provides that the court to which a claim or cause of action is removed may remand the claim or cause of action on any equitable ground." *In re Santa Clara County Child Care Consortium,* 223 B.R. at 44.[5] Factors to be considered in connection with deciding whether a case should be remanded include:

5    28 U.S.C. § 1334(c)(1) provides, with an exception not relevant here, that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1452(b) provides that the court to which an action has been removed "may remand such claim or cause of action on any equitable ground."

(1) the effect of the action on the administration of the bankruptcy estate;

    (2) the extent to which issues of state law predominate;

    (3) the difficulty of applicable state law;

    (4) comity;

    (5) the relatedness or remoteness of the action to the bankruptcy case;

    (6) the existence of a right to a jury trial; and

    (7) prejudice to the party involuntarily removed from state court.

*Id.* at 46 (citing *In re VideOcart, Inc.,* 165 B.R. 740, 744 (D.Mass.1994)). Applying these principles to the instant case compels the conclusion that this action should be remanded to the state court.

The effect of this case on bankruptcy matters does not favor keeping the case in this court. The defendants contend that the instant case is related to more than 20 separate bankruptcy proceedings pending in courts throughout the United States. However, the defendants do not seek to have this case adjudicated in any bankruptcy court—rather, they seek to have the case tried in this district court. *See Amended Defendants' Joint Memorandum of Law Opposing Plaintiff's Motion to Remand* (Docket No. 179) (*"Defs.' Mem."* ) at 15 n. 16. While this court has found "related to" jurisdiction, the connection is not very strong. The indemnification agreements do not involve all of the defendants. Furthermore, while some of those agreements involve current indemnification obligations, others involve only potential indemnification obligations that are quite remote. There is little doubt that if the defendants are found liable for the $1.2 billion in damages the plaintiff is seeking, and the defendants are able to be indemnified for these amounts from a bankrupt estate, the judgment against the

debtor would impact the bankruptcy estate. However, that impact is not affected by the choice of forum. Whether the case proceeds here or goes forward in state court, it will proceed to a jury trial and the outcome will have the same impact on the bankruptcy proceedings. In short, the efficient administration of the bankruptcy-related estates will not be affected if this court abstains and remands the matter to state court. *See, e.g., In re United Container LLC,* 284 B.R. at 176 ("even if the ultimate allowance of claims against the bankruptcy estate[s] may be affected, this 'effect' will not occur until the litigation is concluded and there is no reason to believe that this will happen more quickly in the United States district court").

 **\*8**  There is no dispute that issues of state law predominate in this case, and that the case does not, at this juncture, raise any bankruptcy related issues. While the federal court is equipped to resolve cases based on Massachusetts securities law, the state obviously has an interest in resolving cases under its own statutes. With respect to comity, CPIM is based in Massachusetts, the transactions all took place in Massachusetts, and most of the defendants either have offices in Massachusetts and/or were licensed to sell securities in Massachusetts. Thus, Massachusetts has an interest in this litigation. *See In re Evarts,* Bankr.No. 05–12681–JMD, 2006 WL 696136, at \*3 (Bankr.D.N.H. Mar.14, 2006) (where suit involves solely state law issues, which "may not be difficult, comity and the state's interest in developing its own law and applying it to its own citizens suggest remand is appropriate").

As detailed above, this case is only remotely related to any of the bankruptcy proceedings. The right to a jury trial is not affected in this case, since the defendants are not seeking to have this matter resolved in a bankruptcy court. Thus, these factors do not warrant a trial in federal court.

The defendants argue that this case could proceed more smoothly in federal court under the Federal Rules given the diverse locations of the defendants. That, however, would seem to be more of a problem for the plaintiff seeking discovery from the defendants. Nevertheless, the plaintiff, for whatever reason, has elected to bring suit in state court. Given that the transactions at issue took place in Massachusetts, both the state and federal courts are located in Boston, and the plaintiff's witnesses are located in Boston, there is no reason to usurp the plaintiff's choice to proceed in state court. *See VideOcart, Inc.,* 165 B.R. at 744 ("Comity and respect for the plaintiff's choice of forum outweigh any arguments advanced by the defendants.").

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Finally, this court finds compelling the fact that maintenance of the instant case in federal court does not further the purpose of "related to" jurisdiction. Trying the case here, in a court unconnected with any of the bankruptcy proceedings, will not enhance the bankruptcy court's ability "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." *In re Boston Reg'l Med. Ctr.,* 410 F.3d at 105. "The Congress has made it plain that, in respect to noncore proceedings such as this (i.e., cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state courts." *Mattingly v. Newport Offshore, Ltd.,* 57 B.R. 797, 799 (D.R.I.1986). Consequently, 28 U.S.C. § 1334(c)(2) grants courts "broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re Vrusho,* 316 B.R. 589, 592 (Bankr.D.N.H.2004) (quotations and citation omitted).

**\*9** Undeniably, cases of the type and scope of the instant case are often brought in federal court. Nevertheless, given the lack of ties to a bankruptcy proceeding or other compelling reason, the conclusion is inescapable that the removal of this case to district court was simply forum shopping. *See In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d at 69 (among other factors, in determining whether permissive abstention is appropriate courts consider "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties" (quotation omitted)). The plaintiff's decision to commence suit in state court based on state law should be honored.

## IV. *CONCLUSION*

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that while this court has jurisdiction to hear this case, this court should abstain from doing so under the doctrine of either mandatory or permissive abstention. Therefore, CPIM's Motion to Remand (Docket No. 133) should be ALLOWED.[6]

[6]  The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 6580503

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

228

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WESTBOROUGH SPE LLC | ) | Chapter 7, No. 23-40709-CJP |
| | ) | |
| Debtor | ) | |
| | ) | |
| TOWN OF WESTBOROUGH | ) | |
| | ) | Commonwealth of Massachusetts |
| Plaintiff | ) | Land Court Department |
| | ) | Case No. 19TL000768-HPS |
| v. | ) | |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Defendant | ) | |

## <u>NOTICE OF REMOVAL – RULE 9027 (a)(1)</u>

**NOTICE OF REMOVAL**

JONATHAN R. GOLDSMITH, as Chapter 7 Trustee ("Trustee") in Bankruptcy for Westborough SPE, LLC (hereinafter "Debtor"), which Debtor is a Defendant in a case pending in the Massachusetts Land Court Department as Case No. 19TL000768-HPS (the "Removed Case"), and hereby removes the Removed Case to the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

**Entitlement to Removal.**

The Removed Case was commenced in the Land Court on July 8, 2019. On August 31, 2023, a Chapter 7 Involuntary Case was commenced against Westborough SPE, LLC, Case No. 23-40709 ("Bankruptcy Case") in the Bankruptcy Court for the District of Massachusetts.

On October 11, 2023, an Order for Relief under Chapter 7 was entered in the Bankruptcy Case.

The Removed Case is a case related to the Bankruptcy Case. As such, the United States District Court for the District of Massachusetts (the "District Court") has jurisdiction of the Removed Case pursuant to 28 U.S.C. §1334(b). Therefore, pursuant to 28 U.S.C. §1452(a), the Removed Case may be removed to the District Court.

Pursuant to 28 U.S.C. §157, the District Court may refer the Removed Case to the bankruptcy judges for the district. By its General Order, the District Court has referred to the bankruptcy

229

judges for this district in all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11. That includes the Removed Case.

As permitted by Bankruptcy Rule 9027(a)(2), this Notice of Removal is being filed within the time frame allotted by the Bankruptcy Court pursuant to its Order of December 19, 2023, a copy of which is attached hereto as Exhibit "A".

**Core/Noncore Status of Removed Case.**

The Trustee submits that the Removed Case is a core proceeding within the meaning of 28 U.S.C. §157(b).

**Process and Pleadings.**

In light of the extensive number of pleadings in the Removed Case, the Trustee is only attaching, at this time, the docket report from the Removed Case, a copy of which is attached hereto as Exhibit "B". In the event the Court requires the submission of all or a portion of the pleadings or orders from the Removed Case, the Trustee will supplement this notice accordingly.

**Filing in Massachusetts Land Court.**

Promptly after the filing hereof, the undersigned shall file a copy of this Notice with the Clerk of the Massachusetts Land Court.

Respectfully submitted,
JONATHAN R. GOLDSMITH, CHAPTER 7
TRUSTEE IN THE BANKRUPTCY CASE
FOR WESTBOROUGH SPE, LLC

Dated: January 17, 2024

By: */s/ Jonathan R. Goldsmith, Esq.*
JONATHAN R. GOLDSMITH, ESQ.
(BBO No. 548285)
GOLDSMITH, KATZ & ARGENIO, P.C.
1350 Main Street, Suite 1505
Springfield, MA 01103
Tel. (413) 747-0700
Fax (413) 781-3780
Email: jgoldsmith@gkalawfirm.com

# Exhibit "A"



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

Westborough SPE LLC

Debtor

Chapter 7
23-40709-CJP

## ORDER

**MATTER:**
#57 Joint Motion filed by Trustee Jonathan R. Goldsmith, Creditor Town of Westborough to Continue Hearing [Re: 20 Motion for Relief From Stay].

UPON CONSIDERATION OF THE JOINT MOTION TO CONTINUE HEARING [DKT. NO. 57] (THE "MOTION"), THE OPPOSITION THERETO OF LOLONYON AKOUETE [DKT. NO. 59], AND THE RECORD OF THIS CASE, THE MOTION IS GRANTED AS FOLLOWS.

THE DECEMBER 21, 2023 HEARING ON THE MOTION FOR RELIEF [DKT. NO. 20] IS CONTINUED TO **FEBRUARY 13, 2024 AT 10:30 AM** IN COURTROOM 3, DONOHUE FEDERAL BUILDING AND COURTHOUSE, 595 MAIN STREET, WORCESTER, MASSACHUSETTS, WITH AN OPTION FOR PARTIES TO APPEAR BY ZOOM VIDEO.

TO OBTAIN VIDEO ACCESS INFORMATION FOR THE CONTINUED HEARING, PARTIES IN INTEREST SHALL EMAIL THE COURTROOM DEPUTY, HALINA MAGEROWSKI, AT CJP_COURTROOM_DEPUTY@MAB.USCOURTS.GOV NO LATER THAN **FEBRUARY 12, 2024 AT 4:00 P.M.**, PROVIDING THE CONTACT INFORMATION FOR THE PARTY SEEKING TO APPEAR BY VIDEO.

THE DEADLINE FOR THE TRUSTEE TO REMOVE THE TAX FORECLOSURE ACTION, SUBJECT TO THE STIPULATION OUTLINED IN THE MOTION, IS EXTENDED THROUGH AND INCLUDING TO **FEBRUARY 27, 2024**.

Dated: 12/19/2023

By the Court,

Christopher J. Panos
United States Bankruptcy Judge

232

# Exhibit "B"

**19 TL 000768 Town of Westborough v. Westborough SPE, LLC , et al.**

- Case Type:
- Tax Lien
- Case Status:
- Closed
- File Date
- 07/08/2019
- DCM Track:
- 
- Initiating Action:
- Tax Lien - one tax taking
- Status Date:
- 07/08/2019
- Case Judge:
- Speicher, Hon. Howard P.
- Next Event:
- 

**Property Information**

Turnpike Road
Westborough
RECORD

| All Information | Party | Event | Docket | Financial | Checks | Receipt | Disposition |

**Party Information**

**Town of Westborough**
**- Plaintiff**

**Party Attorney**
- Attorney
- Bloom, Esq., Dawn E
- Bar Code
- 659839
- Address
- 43039 Boardwalk Loop
  Punta Gorda, FL  33982
- Phone Number
- (413)529-9936
- Attorney
- Leahy, Esq., Iris Ann
- Bar Code
- 697783
- Address
- Law Office of Iris A. Leahy
  4 Open Square Way
  Suite 217
  Holyoke, MA  01040
- Phone Number
- (413)322-8318

**More Party Information**

**Westborough SPE, LLC**
**- Defendant**

**Party Attorney**
- Attorney
- Nathanson, Esq., Alvin S
- Bar Code
- 367480
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  Fifth Floor
  Boston, MA  02109
- Phone Number
- (617)210-4810
- Attorney
- Schlager, Esq., Scott Adam
- Bar Code

- 695421
- Address
- Nathanson and Goldberg, P.C.
  183 State St
  5th Floor
  Boston, MA  02109
- Phone Number
- (617) 909-4511

**More Party Information**

**F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.**
- Defendant

| Party Attorney |

**More Party Information**

**Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC**
- Defendant

| Party Attorney |

**More Party Information**

**James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.**
- Defendant

| Party Attorney |

**More Party Information**

**David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

| Party Attorney |

**More Party Information**

**Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited**
- Defendant

| Party Attorney |

**More Party Information**

**Interstate Theaters Corporation**
- Defendant

| Party Attorney |

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|------|---------|----------|------|-------------|--------|
| 06/15/2020 02:00 PM | C.J. Piper | Courtroom 404 - Fourth Floor | Motion | Piper, Hon. Gordon H. | Held via video |
| 01/10/2023 09:00 AM | J. Speicher | Courtroom 1102 - Eleventh Floor | Hearing on Lis Pendens | Speicher, Hon. Howard P. | Held via video |
| 01/19/2023 10:00 AM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/09/2023 02:00 PM | Tax Session | | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 02/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Rescheduled |
| 03/23/2023 02:00 PM | Tax Session | Courtroom 403 - Fourth Floor | Motion to Vacate Judgment | Patterson, Deborah J. | Not held |
| 05/16/2023 10:15 AM | J. Speicher | Courtroom 401 - Fourth Floor | Motion | Speicher, Hon. Howard P. | Held via video |
| 08/17/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Rescheduled |
| 08/31/2023 02:00 PM | J. Speicher | Courtroom 401 - Fourth Floor | Pre-Trial Conference | Speicher, Hon. Howard P. | Not held |

235

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/08/2019 | Complaint filed. | | Image |
| 07/08/2019 | Case assigned to the Tax Track per Land Court Standing Order 1:04. | | |
| 07/08/2019 | Land Court filing complaint tax Receipt: 405581 Date: 07/09/2019 | $200.00 | |
| 07/08/2019 | Land Court initial deposit tax Receipt: 405581 Date: 07/09/2019 | $300.00 | |
| 07/08/2019 | Land Court surcharge Receipt: 405581 Date: 07/09/2019 | $15.00 | |
| 07/10/2019 | Michael H. Delaney, Esq. appointed as Title Examiner. | | |
| 08/26/2019 | Report filed by Michael H. Delaney, Esq.. | | Image |
| 08/28/2019 | Land Court examiner costs | $150.00 | |
| 09/05/2019 | Checklist sent. | | |
| 11/07/2019 | Letter of Diligent Search Filed. | | |
| 12/31/2019 | Checklist completed. | | |
| 05/12/2020 | Scheduled<br>Event: Motion for Alternative Service<br>Date: 06/15/2020 Time: 02:00 PM<br><br>Zoom instructions to be sent by the Recorder's Office in advance of the hearing date.<br><br>Judge: Piper, Hon. Gordon H. | | |
| 05/19/2020 | Motion for Alternative Service and Supporting Memorandum, filed. | | Image |
| 06/15/2020 | Event Resulted: Motion scheduled on:<br>    06/15/2020 02:00 PM<br>Has been: Held via video<br><br>June 15, 2020. Hearing held on Plaintiff's Motion for Alternative Service via videoconference. Attorneys Shirin Everett and Dawn Bloom appeared for plaintiff. Jon Steinberg, Assessor for the town of Westborough, also observed the hearing. Attorney Bloom reported that the defendant owner of the parcel in question is a defunct Delaware limited liability company which withdrew from Massachusetts in 2007, had its registration in Delaware cancelled in 2014, and has listed as its agent for service in Delaware a corporation service company that is no longer active in that role. Attorney Bloom indicated that the manager listed on its Massachusetts registration is a defunct entity named Babcock & Brown Administrative Services, Inc., that Mr. Steinberg was able to contact a related Delaware corporation by the name of Babcock & Brown operating in San Francisco, and that the related corporation's officers indicated that it has no interest in the property. Attorney Everett reported that after the town of Westborough had begun proceedings to acquire title to the property by eminent domain, an Australian law firm notified the town that it represented the administrator of the liquidation of an Australian entity named Babcock & Brown LP, and that it was investigating whether Babcock & Brown LP might hold any interest in the property; the town has since received requests from that law firm concerning the status of eminent domain proceedings, but has received no response to several requests by the municipality that that entity address the basis for its potential claim to any interest in the property. Attorney Bloom indicated that the plaintiff asserts that the defendant owes approximately $400,000 to the town in unpaid real estate taxes and interest, and also owes another $300,000 pursuant to a reciprocal maintenance agreement concerning the property's shared parking lot. Attorney Bloom also indicated that there appears to be no mortgage currently encumbering the property, as there is a recorded discharge of the most recent mortgage of record. Plaintiff to attempt to make direct service on (1) all individuals named in the proposed citation for whom plaintiff has identified an address; (2) the Australian law firm of Johnson, Winter, & Slattery; and (3) Mr. David Lombe, whom counsel identified as the administrator of the Babcock & Brown LP liquidation. Court ALLOWED plaintiff's motion for alternative service by publication. Plaintiff to submit to the court's tax lien department a proposed form of an order of notice for publication in a newspaper of general circulation in the town of Westborough as to the defendant entity, no longer in legal existence, and its successors. Following return dates on all summonses and the published citation, plaintiffs to request default enter under Mass. R. Civ. P. 55 (a) against all parties not timely filing answer or responsive pleading. Upon entry of any indicated default(s), plaintiffs to file motion with the Recorder requesting entry of a finding of the amount and time for redemption from the tax taking. If any additional party appears or answers, parties promptly to request, in writing, further case management conference. (Piper, C.J.)<br><br>(Notice of Docket Entry sent by email to Attorneys Dawn Bloom and Shirin Everett) | | |
| 09/01/2020 | Land Court additional deposit tax Receipt: 417793 Date: 09/01/2020 | $400.00 | |
| 09/15/2020 | Citation by Publication in Village News, issued. Returnable 11/09/2020. | | |
| 09/22/2020 | Citation issued as to the land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 11/16/2020. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 09/22/2020 | Land Court notices mailing - Certified Mail<br>Issue Date: 09/22/2020<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.95<br><br>Interstate Theaters Corporation<br>Mailing Address<br>101 E. Blount Ave.<br>Knoxville, TN   37920<br>Tracking Number: 71901706197000959805<br><br>Interstate Theaters Corporation<br>Mailing Address<br>c/o CT Corporation System, Reg. Agent<br>155 Federal St., Suite 700<br>Boston, MA   02110<br>Tracking Number: 71901706197000959812<br><br>James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Mailing Address<br>1715 Easton Dr.<br>Burlingame, CA   94010<br>Tracking Number: 71901706197000959829<br><br>Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC<br>Mailing Address<br>20 Queensbrook Pl.<br>Orinda, CA   94563<br>Tracking Number: 71901706197000959836<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>151 E. 31st<br>Apt. 28B<br>New York, NY   10016<br>Tracking Number: 71901706197000959843 Receipt: 418144 Date: 09/23/2020 | $59.75 | |
| 09/23/2020 | Land Court notices mailing out of country - Registered Mail<br><br>RE 550 804 582US<br>David Lombe, Liquidator for Babcock and Brown Unlimited<br>Deloitte Financial Advisory Pvt. Ltd.<br>Grosvenor Place Level 9<br>225 George St.<br>Sydney, NSW 2000<br>Australia<br><br>RE 550 804 596US<br>Joseph Scarella, Esq. Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Unlimited<br>20 Bond Street, Level 25<br>Sydney, NSW 2000<br>Australia Receipt: 418145 Date: 09/23/2020 | $52.50 | |
| 10/01/2020 | Successful Service<br>Method    : Certified Mail<br>Issued    : 09/22/2020<br>Service   : Service<br>Served    : 09/26/2020<br>Return    : 09/30/2020<br>On        : James D. Jaworski, Treasurer of Brown & Babcock Administrative Services, Inc.<br>Signed By :<br>Reason    : Successful<br>Comment   :<br>Tracking #: 71901706197000959829 | | Image |
| 10/01/2020 | Successful Service<br>Method    : Certified Mail<br>Issued    : 09/22/2020<br>Service   : Service<br>Served    : 09/28/2020<br>Return    : 09/30/2020<br>On        : Interstate Theaters Corporation<br>Signed By :<br>Reason    : Successful | | Image |

Case 4:20-cv-11849-FDS Document 6-1 Filed 03/25/21 Page 95 of 136
Document    Page 95 of 101

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Comment  :<br>Tracking #: 71901706197000959812 | | |
| 10/01/2020 | Successful Service<br>Method    : Certified Mail<br>Issued     : 09/22/2020<br>Service    : Service<br>Served     : 09/28/2020<br>Return     : 10/01/2020<br>On         : Interstate Theaters Corporation<br>Signed By :<br>Reason    : Successful<br>Comment   :<br>Tracking #: 71901706197000959805 | | Image |
| 10/06/2020 | Tear Sheet Received. | | |
| 10/06/2020 | Citation published September 25, 2020. Returnable 11/09/2020 | | |
| 10/20/2020 | Land Court notice by publications Receipt: 418637 Date: 10/20/2020 | $5.00 | |
| 10/20/2020 | Land Court newspaper payments Voided on 10/20/2020.<br><br>Void Check number: 33258<br>Void Status Date: 10/20/2020<br>Void Reason: Printer Jam<br>Void Comments: | $0.00 | |
| 10/20/2020 | Land Court newspaper payments | $252.92 | |
| 10/21/2020 | Unsuccessful Service.<br>Method    : Certified Mail<br>Issued     : 09/22/2020<br>Service    : Service<br>Served     : 09/30/2020<br>Return     : 10/02/2020<br>On         : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason    : Unsuccessful<br>Comment   : attempted - not known<br>Tracking #: 71901706197000959843 | | Image |
| 11/03/2020 | Registered Mail Service on Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited successful.<br>Served on 10/14/2020 | | Image |
| 11/23/2020 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 12/10/2020 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited issued.  Returnable 02/01/2021. | | |
| 01/19/2021 | Appearance of Iris Ann Leahy, Esq. for Town of Westborough, filed | | |
| 01/19/2021 | Citation by Deputy Sheriff to Dyann Blaine, R.E. Signatory and Agent for Westborough SPE LLC, returned with service thereon. | | |
| 02/19/2021 | Request to issue Special Citation, filed | | |
| 04/08/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.  Returnable 05/31/2021. | | |
| 04/08/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 04/08/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>888 Avenue of the Americas<br>New York, NY   10001<br>Tracking Number: 71901706197000977816 Receipt: 422168 Date: 04/08/2021 | $11.96 | |
| 05/04/2021 | Unsuccessful Service.<br>Method    : Certified Mail<br>Issued     : 04/08/2021 | | Image |

238

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Service : Service<br>Served :<br>Return : 04/15/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : attempted - not known<br>Tracking #: 71901706197000977816 | | |
| 05/21/2021 | Request to issue Special Citation, filed | | |
| 06/09/2021 | Special Citation issued as to land described as: Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75. Returnable 08/02/2021. | | |
| 06/10/2021 | Land Court notices mailing - Certified Mail<br>Issue Date: 06/10/2021<br>Service: Service<br>Method: Certified Mail<br>Cost Per: 11.96<br><br>F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Mailing Address<br>34 Stern Lane<br>Atherton, CA 94027<br>Tracking Number: 71901706197000980878 Receipt: 423362 Date: 06/10/2021 | $11.96 | |
| 08/09/2021 | Request to issue Citation to be served by Deputy Sheriff, filed | | |
| 08/17/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc. issued. Returnable 10/11/2021. | | |
| 09/20/2021 | Citation by Deputy Sheriff to F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc., returned with service thereon. | | Image |
| 10/01/2021 | Unsuccessful Service.<br>Method : Certified Mail<br>Issued : 06/10/2021<br>Service : Service<br>Served :<br>Return : 09/21/2021<br>On : F. Jan Bluestein, a/k/a Jan Blaustein Scholes, R.E. Signatory & Agent for Westborough SPE LLC and Pres. of Babcock & Brown Adminstrative Services, Inc.<br>Signed By :<br>Reason : Unsuccessful<br>Comment : no such number<br>Tracking #: 71901706197000980878 | | Image |
| 11/01/2021 | Citation by Deputy Sheriff to David Lombe, Liquidator for Babcock and Brown Limited, Joseph Scarcella, Esq., Johnson Winter & Slattery, Counsel for David Lombe, Liquidator for Babcock and Brown Limited, returned with service thereon. | | |
| 11/01/2021 | Affidavit as to Military Service filed. | | |
| 11/01/2021 | Motion for General Default filed. | | |
| 11/01/2021 | Printout from www.usps.com showing that the envelope with Tracking #:71901706197000980878 was returned to the sender on September 15, 2021 because the item had been unclaimed, filed. | | |
| 12/28/2021 | Motion for General Default allowed. (Patterson, Rec.)<br><br>Judge: Patterson, Deborah J. | | |
| 01/04/2022 | Letter from attorney Leahy, received. | | |
| 01/05/2022 | Final Judgment entered as to tax-taking(s): Property: Land and any building(s) thereon Containing 29.336 AC (more or less) Location: 231 Turnpike Road Assessors: 32-48-0 Registry: Worcester District Registry of Deeds Book 19369, Page 75.<br><br>Judge: Patterson, Deborah J. | | |
| 01/10/2022 | Land Court overpayment refund disbursement<br>Notice of Disposition sent to: Iris Ann Leahy, Esq. 4 Open Square Way Suite 217 Holyoke, Massachusetts 01040 | $155.91 | |
| 01/04/2023 | Land Court cost- vacation of judgment tax lien Receipt: 437156 Date: 01/04/2023 | $11.00 | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/04/2023 | Defendant's Westborough SPE, LLC's Motion to Vacate foreclosure Judgment, filed. | | Image |
| 01/05/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 01/19/2023  Time: 02:00 PM | | |
| 01/05/2023 | Ex Parte Motion for Approval of Memorandum of Lis Pendens,filed. | | Image |
| 01/05/2023 | Summons and Hearing Notice issued on Application for Lis Pendens.<br>Judge: Speicher, Hon. Howard P.<br>Event: Hearing on Lis Pendens<br>Date: 01/10/2023  Time: 09:00 AM | | |
| 01/10/2023 | Hearing on defendant's motion for approval of a memorandum of lis pendens held by videoconference. Attorney Iris Ann Leahy appeared for the plaintiff. No attorney appeared on behalf of defendant Westborough SPE, LLC; however, Lolonyon Akouete, a non-attorney and manager of defendant, purported to appear pro se on behalf of the defendant. Attorney Leahy reported that there is no imminent sale pending of the subject property because there is a hearing on a motion to vacate scheduled for January 19, 2023 on the defendant's request to redeem the property. The court advised Mr. Akouete that an organization such as an LLC cannot be represented by a non-attorney, and that the court cannot go forward on the motion until the defendant engages an attorney to sign and file the motion on its behalf. Accordingly, the court took no action on the motion for approval of a memorandum of lis pendens. | | |
| 01/13/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>    01/19/2023 10:00 AM<br>Has been: Rescheduled. Motion to continue hearing to February 9, 2023 at 2:00pm, filed. | | Image |
| 01/13/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/09/2023  Time: 02:00 PM | | |
| 01/30/2023 | Plaintiff's Memorandum in Opposition to defendant Westborough SPE, LLC'S Motion to Vacate Foreclosure Judgment, filed. | | Image |
| 01/31/2023 | Affidavit of Frances Juan Blaustein Scholes, filed by email. | | Image |
| 02/01/2023 | Plaintiff's Objection to Pro Se Filings by the Defendant, filed. | | Image |
| 02/02/2023 | Emergency motion to continue the hearing, filed. | | Image |
| 02/02/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>    02/09/2023 02:00 PM<br>Has been: Rescheduled to February 23, 2023 at 2:00pm<br>Deborah J. Patterson, Presiding | | |
| 02/02/2023 | Emergency motion to continue the hearing Allowed. Motion to Vacate Judgment continued to February 23, 2023 at 2:00pm, no further continuance will be granted.<br><br>Judge: Patterson, Deborah J. | | |
| 02/02/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 02/23/2023  Time: 02:00 PM | | |
| 02/22/2023 | Defendant, Westborough SPE, LLC, response to Plaintiff Memorandum in Opposition to Defendant's Motion to Vacate Foreclosure Judgment filed by email. | | Image |
| 02/22/2023 | Appearance of Scott Adam Schlager, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Appearance of Alvin S Nathanson, Esq. for Westborough SPE, LLC, filed | | Image |
| 02/22/2023 | Defendant Westborough SPE, LLC's emergency motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel, filed. | | Image |
| 02/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>    02/23/2023 02:00 PM<br>Has been: Rescheduled<br>Deborah J. Patterson, Presiding | | |
| 02/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a brief continuance of hearing scheduled for February 22, 2023 because of recent engagement of legal counsel Is ALLOWED. Motion to Vacate to be heard on March 23, 2023 at 2:00pm.<br><br>Judge: Kelley, Ellen M. | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 02/23/2023 | Scheduled<br>Judge: Patterson, Deborah J.<br>Event: Motion to Vacate Judgment<br>Date: 03/23/2023 Time: 02:00 PM | | |
| 03/08/2023 | Supplement to Plaintiff's opposition to defendant Westborough, SPE, LLC's motion to vacate foreclosure judgment, filed. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager.. | | Image |
| 03/23/2023 | Notice, filed by Attorney Schlager. | | Image |
| 03/23/2023 | Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time , filed. | | Image<br>Image |
| 03/23/2023 | Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial, filed | | Image |
| 03/23/2023 | Event Resulted:  Motion to Vacate Judgment scheduled on:<br>     03/23/2023 02:00 PM<br>Has been: Not held | | |
| 03/23/2023 | Case has been ASSIGNED to the Honorable Howard P. Speicher | | |
| 03/29/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Events: Date: 05/16/2023 Time: 10:15 AM<br><br>Defendant Westborough SPE, LLC's Emergency Motion for a writ of Mandamus Ordering the Town of Westborough by and Through its Treasurer to Produce with Certification Signed Under the Penalties of Perjury the Amount for Redemption of Real Property Located at 231 Turnpike Road, Westborough, Massachusetts and Request for Extension of time<br><br>Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed.<br><br>Defendant Westborough Spe, Llc's Emergency Motion In Limine To Exclude Any And All Testimony Of Plaintiff's Witnesses, Peter Blaustein, Legal Guardian, Convervator, Power Of Attorney For F. Jan Blaustein A/K/A Jan Blaustein Scholes, And Dyann Blaine, As To Corporate Authority Or Causation, Barring Admission Of Any Evidence Of Unclaimed Fund Denial In California; And Barring Admission Of Any Evidence Of A Lay Witness As To Corporate Authority, That Is Irrelevant, Or Any Evidence That Is Speculative, Or Any Evidence That Is Unfairly Prejudicial | | |
| 04/11/2023 | Defendant Westborough SPE, LLC's Motion for Issuance of a Memorandum of Lis Pendens  and/or Temporary Equitable Relief and for Permission to File a verification of its Motion to Vacate, filed. | | Image |
| 04/13/2023 | Defendant Westborough SPE, LLC's Emergency Motion for Preliminary Injunctive Relief (Temporary Restraining Order), filed. | | Image |
| 04/18/2023 | Notice, filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Emergency Motion for a Writ of Mandamus , filed. | | Image |
| 05/03/2023 | Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate, filed. | | Image |
| 05/04/2023 | Assent of to the Entry of Judgment. | | Image |
| 05/04/2023 | Waiver of Notice and Assent to the Entry of Judgment, filed. | | Image |
| 05/04/2023 | Opposition, filed. | | Image |
| 05/05/2023 | Citation by Deputy Sheriff to , returned with service thereon. | | Image |
| 05/05/2023 | Defendant Westborough SPE, LLC's Emergency Motion to Strike Peter Blaustein's Unlawful Filing of a Waiver of Notice and Assent to the Entry of Judgment and Motion for the Imposition of Mass. R. CIV P. Rule 11 Sanctions Against Attorney Iris A. Leahy, the Town of Westborough, and Peter Blaustein, for Assisting in the Perpetration of an Alleged Fraud on the Court, Unauthorized Practice of Law, and Conduct Prejudicial to the Administration of Justice, filed. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/15/2023 | Defendant Westborough SPE, LLC's Reply to Plaintiff Town of Westborough's Opposition to Defendant Westborough SPE, LLC'S Motion for Issuance of a Memorandum of Lis Pendens and/or Temporary Equitable Relief and for Permission to File a Verification of its Motion to Vacate,filed. | | Image |
| 05/16/2023 | Hearing on Westborough SPE, LLC's motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, motion for preliminary injunctive relief, and motion in limine held by videoconference. Attorneys Iris Ann Leahy and Scott Adam Schlager appeared and argued. Attorneys Alvin Nathanson and Edward Englander also appeared. Following argument, the motion in limine is DENIED without prejudice. Likewise, the motion for a writ of mandamus, motion for issuance of a memorandum of lis pendens, and motion for preliminary injunctive relief are DENIED. The court will hold an evidentiary hearing on Westborough SPE, LLC's motion to vacate judgment, to be scheduled in late July 2023, to determine whether Westborough SPE, LCC, having appeared in this case, is the taxpayer who has the right to redeem the subject property. Counsel are instructed to file requests for production of documents, if any, by June 2, 2023. Counsel must respond to the requests for production of documents by July 6, 2023, after which the court will schedule a pretrial conference. No other discovery, such as interrogatories or depositions, may be conducted. | | |
| 05/30/2023 | Letter from Attorney Leahey, filed. | | |
| 05/30/2023 | Plaintiff's Request for Production of Documents, filed. | | Image |
| 05/31/2023 | Westborough SPE LLC's First Notice of Supplemental Authority in support of its Motion to Vacate, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Plaintiff,Town of Westborough, filed. | | Image |
| 06/02/2023 | Defendant Westborough SPE, LLC's First Request for the Production of Documents to Defendant F. Jan Blaustein a/k/a Jan Blaustein Scholes,R.E. Signatory & Agent for Westborough SPE, LLC's and Pres. of Babcock & Brown Administrative Services.,INC, filed. | | Image |
| 06/30/2023 | Defendant Westborough SPE, LLC's Notice of Supplementation, filed. | | |
| 07/06/2023 | Defendant Westborough SPE, LLC's Second Notice of Supplementation, filed. | | Image |
| 07/11/2023 | Defendant Westborough SPE, LLC's Responses and Objections to Plaintiff'f (First) Request for Production of Documents,filed | | |
| 07/11/2023 | Plaintiff Town of Westborough's Response to Defendant's First Request for the Production of Documents to Plaintiff Town of Westborough, filed. | | |
| 07/13/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Hearing on Motion to Vacate Judgment<br>Date: 08/10/2023  Time: 02:00 PM rescheduled to August 17, 2023 at 2pm. | | |
| 07/27/2023 | Motion to continue Pre-trial Conference, filed. | | |
| 07/27/2023 | Defendant Westborough SPE, LLC's Opposition to the Town of Westborough's Motion to continue Pre-trial Conference, filed. | | Image |
| 07/28/2023 | Plaintiff Town of Westborough's amended motion to continue the pre-hearing conference on the pending motion to vacate is ALLOWED. The pre-hearing conference is rescheduled to August 31, 2023 at 2:00 P.M. by videoconference. | | |
| 07/28/2023 | Event Resulted:  Pre-Trial Conference scheduled on:<br>        08/17/2023 02:00 PM<br>Has been: Rescheduled        For the following reason: Request of Plaintiff(s)<br>Hon. Howard P. Speicher, Presiding | | |
| 07/28/2023 | Scheduled<br>Judge: Speicher, Hon. Howard P.<br>Event: Pre-Trial Conference<br>Date: 08/31/2023  Time: 02:00 PM | | |
| 07/28/2023 | Amended Motion to continue Pre-trial Conference, filed. | | |
| 08/24/2023 | Notice of Statutory Attorneys' Lien by Nathanson & Goldberg P.C., filed. | | Image |
| 08/24/2023 | Defendant Westborough SPE LLC's (First) Notice of Supplementation to Plaintiff's (First) Request for Production of Documents,fiiled. | | Image |
| 08/24/2023 | Westborough SPE, LLC Limited Liability Agreement,filed. | | |
| 08/25/2023 | Joint Pre-Trial Memorandum, filed. | | Image |
| 08/31/2023 | SUGGESTION OF BANKRUPTCY, FILED. | | Image |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 08/31/2023 | Notice of Docket Entry:<br>Counsel for defendant Westborough SPE, LLC, to report to the court on the status of the bankruptcy petition by October 31, 2023 and every sixty days thereafter.<br>Notice of the docket entry sent. | | |
| 08/31/2023 | Event Resulted: Pre-Trial Conference scheduled on:<br>    08/31/2023 02:00 PM<br>Has been: Not held per request of the defendant.<br>Hon. Howard P. Speicher, Presiding | | |
| 10/13/2023 | Notice of Bankruptcy status pursuant to August 31, 2023 Order, filed. | | Image |

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Dismissed | Amount Outstanding |
|---|---|---|---|---|
| Cost | $367.17 | $367.17 | $0.00 | $0.00 |
| | $367.17 | $367.17 | $0.00 | $0.00 |

- ### Money on Deposit

| Account | Applied Amount |
|---|---|
| Land Court Deposit Holding | $141.17 |
| | $141.17 |

- ### Money Distributed by Court

| Payment Type | Amount |
|---|---|
| Disbursement | $558.83 |
| | $558.83 |

## Check Information

| Created | Payee Name | Description | Account | Check | Amount |
|---|---|---|---|---|---|
| 08/28/2019 | Michael H. Delaney | Case: 19 TL 000768 Land Court examiner costs | LCD | 31780 | $150.00 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33259 | $252.92 |
| 10/20/2020 | Gatehouse Media MA 390711 | Case: 19 TL 000768 Land Court newspaper payments | LCD | 33258 | -$252.92 |
| 01/10/2022 | Town of Westborough | Case: 19 TL 000768 Land Court overpayment refund d | LCD | 34880 | $155.91 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 405581 | 07/09/2019 | Town of Westborough | $515.00 |
| 417793 | 09/01/2020 | Bloom, Esq., Dawn E | $400.00 |
| 418144 | 09/23/2020 | Bloom, Esq., Dawn E | $59.75 |
| 418145 | 09/23/2020 | Bloom, Esq., Dawn E | $52.50 |
| 418637 | 10/20/2020 | Bloom, Esq., Dawn E | $5.00 |
| 422168 | 04/08/2021 | Bloom, Esq., Dawn E | $11.96 |
| 423362 | 06/10/2021 | Bloom, Esq., Dawn E | $11.96 |
| 437156 | 01/04/2023 | Aaron B. O'Neal | $11.00 |
| | | | $1,067.17 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment Entered | 01/05/2022 | Speicher, Hon. Howard P. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re:                                                    )        Chapter 7, No. 23-40709
                                                          )
WESTBOROUGH SPE LLC                                       )
                                                          )
          Debtor                                          )
                                                          )

### TRUSTEE'S OPPOSITION TO TOWN OF WESTBOROUGH'S
### MOTION TO DISMISS BANKRUPTCY CASE

NOW comes JONATHAN R. GOLDSMITH, the duly appointed, qualified and acting Trustee in the above-captioned case ("Trustee"), and hereby files this Opposition to the Town of Westborough's Motion to Dismiss this Bankruptcy Case. In support of this Opposition, the Trustee submits the following:

1. To distill the Town ("Town") of Westborough's argument contained in its 17 page Motion to Dismiss ("Motion") to its simplest position, the Town asserts that "cause" exists to dismiss this involuntary bankruptcy case under 11 U.S.C. §707(a) since it alleged that the case was filed in bad faith[1]. The Town contends that the filing thwarted its attempt to complete a tax foreclosure sale of the Debtor's real estate located 231 Turnpike Road, Westborough, Massachusetts ("Property"). The Town has acknowledged that the price that it seeks to sell the Property for is less than other bids it received for the acquisition. Proceeding with a sale of the Property for less than its fair value, would no doubt be detrimental to the Debtor (and therefore the Bankruptcy Estate) as the Trustee contends that the Debtor is entitled to the surplus proceeds after payment of the Town's claim in light of the Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). Contrary to the Town's contentions, the filing of the bankruptcy case was not an abuse or manipulation of the Bankruptcy Code, but rather done to

---

[1] The Town tries to label the alleged basis for dismissal as "egregious conduct". This is a veiled attempt to get around using the words "bad faith". Although there is no First Circuit Appeal Court decision as to whether "bad faith" is "cause" for dismissal under §707(a), there are decisions from bankruptcy judges in this District that have concluded that "bad faith" is not "cause" for dismissal. These cases are noted in the body of this Opposition.

1

245

ensure the full recovery of the Debtor's assets and the rightful distribution of proceeds under the auspices of the Bankruptcy Court system.

2. In addition to the foregoing, the Trustee submits that the Motion contains several pages of disputed facts, including allegations that the efforts of a Denise Edwards ("Edwards") and a Lolonyon Akouete ("Akouete") to retrieve the Debtor's assets constitutes "cause" for dismissal of the Bankruptcy case under Bankruptcy Code provision §707(a). This argument fails for several reasons, including the following:

(i) As the Town admits in the Motion, the U.S. Court of Appeals for the First Circuit has yet to decide whether bad faith constitutes "cause" for grounds to dismiss a bankruptcy case under 11 U.S.C. §707(a). The Circuits that have considered bad faith as "cause" for dismissal under this provision have not been consistent. See *In re: Linehan* 326 B.R. 474 (Bankr. D. Mass 2005) (Feeney, J). However, at least two Massachusetts bankruptcy judges have concluded that bad faith is not "cause" for dismissal of a Chapter 7 case. In the case of *In Re: Reinhold, Mark G.* (case #15-10976-FJB), Judge Bailey has followed the courts that hold that bad faith is not "cause" within §707(a) (see proceeding Memorandum/Order entered as Docket entry #140). See also *In Re: Linehan* 326 B.R. 475, where Judge Feeney stated that bad faith does not generally constitute grounds for dismissal of a Chapter 7 case. See *In re: Linehan,* 362 B.R. 480.

(ii) The Town cites cases from other jurisdictions that have concluded that "egregious conduct" could warrant dismissal. However, the Trustee submits that the facts alleged in the Motion, even if true, are not of the kind that rise to the level of "egregious conduct" as noted in the cases cited.

(iii) It should also be highlighted that this bankruptcy case was initiated by two of the Debtor's creditors under 11 U.S.C. §363, and not filed as a

2

voluntary bankruptcy petition. Therefore, the Town's argument that Akouete and Edwards lacked authority on behalf of the Debtor has no bearing in this case as they did not commence the case. Even if it was determined that these individuals did not have authority to act on behalf of the Debtor and therefore the retention of Nathanson & Goldberg, P.S. somehow disqualifies this party from being a petitioning creditor, the other petitioning creditor, MobileStreet Trust had standing to individually commence the involuntary petition pursuant to 11 U.S.C. §303(b)(2).

(iv)    The Trustee further submits that this Motion should be denied on the grounds that it is untimely and dismissal of the case would be detrimental and prejudicial to the creditors and other parties to this Bankruptcy Estate. Specifically, the facts alleged by the Town occurred pre-petition and should have been raised at or before the Order for Relief was entered. The involuntary petition was filed on August 31, 2023, and the Order for Relief was entered on October 11, 2023. Essentially, this Motion was filed four and one half (4 ½) months after the involuntary petition was filed, which notice of the filing was timely provided to the Town. Dismissal of the case would be improper after these many months and after the Trustee has undertaken extensive efforts to administer this case, including being at the tail end of recovering over 1.2 million dollars of funds for the benefit of the Bankruptcy Estate from the Controller of the State of California.

(v)     Finally, the Trustee submits that by the Town's own admission, the eventual sale of the Property will be more than sufficient to satisfy its claim. As a result, these surplus funds would be available for distribution to the Bankruptcy Estate/Debtor. To the extent that the Town is concerned regarding who actually holds the beneficial interest in the Debtor, this will be addressed when and if there are funds available for distribution back to the Debtor after all allowed claims of the creditors and

3

administrative fees and expenses are satisfied. In such event, it is reasonable to assume that the determination of the equity owner of the Debtor will not be the Town's concern.

3. In light of the foregoing, the Trustee submits that the Motion should be denied.

4. The Trustee reserves the right to supplement this Opposition after additional facts are garnered.

WHEREFORE, the Trustee requests the entry of the following Orders:

1.     That the Motion filed by the Town of Westborough to Dismiss the Bankruptcy Case be denied; and

2.     For such other and further relief as is just and proper.

JONATHAN R. GOLDSMITH, TRUSTEE IN BANKRUPTCY FOR WESTBOROUGH SPE LLC

Dated: 2/7/24

By:  /s/ Jonathan R. Goldsmith, Esq.
     JONATHAN R. GOLDSMITH, ESQ.
     (BBO No. 548285)
     GOLDSMITH, KATZ & ARGENIO, P.C.
     1350 Main Street, 15th Floor
     Springfield, MA 01103
     Tel: (413) 747-0700

4

248

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | )  | |
|---|---|---|
| In re: | ) | Chapter 7, No. 23-40709 |
| | ) | |
| WESTBOROUGH SPE LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, JONATHAN R. GOLDSMITH, ESQ., of GOLDSMITH, KATZ & ARGENIO, P.C., 1350 Main Street, 15th Floor, Springfield, MA 01103, do hereby certify that I served a copy of the within Opposition upon those parties listed on the attached Exhibit "A" by electronic mail or by mailing, first class mail, postage prepaid, on this _7th_ day of February, 2024:

/s/ Jonathan R. Goldsmith, Esq.
JONATHAN R. GOLDSMITH, ESQ.

5

249

David M. Ferris
Ferris Development Group, LLC
118 Turnpike Rd., Ste. 300
Southborough, MA 01772-2133

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ferris Development Group, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

Westborough SPE LLC
231 Turnpike Road
Westborough, MA 01581-2807

Scott A. Schlager, Esq.
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, MA 02109-2666

Darin Clagg
24 Kobbs Korner Rd
Pine Bush, NY 12566-5302

LOLONYON AKOUETE
ATTN WESTBOROUGH SPE LLC
800 RED MILLS RD
WALLKILL, NY 12589-3220

Allen Hight
The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Richard King, Esq.
Office of US. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608-2361

The MobileStreet Trust
12 Cole Road
Wayland, MA 01778-3145

Matthew A. Morris Sherin and
Lodgen LLP
101 Federal Street, 30th Floor
Boston, MA 02110-2109

Walter Horst
Babcock & Brown
1264 Rimer Drive
Moraga, CA 94556-1727

Town of Westborough
34 West Main Street
Westborough, MA 01581-1998

Nathanson & Goldberg, P.C.
c/o Stephen F. Gordon, Esq.
The Gordon Law Firm LLP
57 River Street
Wellesley, MA 02481

Denise Edwards
137 North 25th Street
Wyandanch, NY 11798-2002

The MobileStreet Trust
225 Turnpike Road
Westborough, MA 01581-2807

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 23-40709-CJP |
| WESTBOROUGH SPE LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

OBJECTION OF PETITIONING CREDITORS TO TOWN OF WESTBOROUGH'S
MOTION TO DISMISS BANKRUPTCY CASE [DOCKET NO. 69]

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now come the Petitioning Creditors herein, by and through their counsel, and state the

following in opposition to the Town of Westborough's (the "Town") Motion to Dismiss

Bankruptcy Case (the "Motion to Dismiss"):

1.      Contrary to the view of the Town, this case is not all about it.  The Petitioning

Creditors filed the Involuntary Petition against the Debtor to provide for the preservation and

collection of the multiple assets of the Debtor into a bankruptcy estate pursuant to §541 of the

Bankruptcy Code so that those assets can be used to satisfy the claims of creditors of the Debtor.

2.      The assets of the Debtor include, at least, the following:

a.      Funds of the Debtor escheated to the State of California and refundable to

the bankruptcy estate in the sum of approximately $1.3 Million; and

b.      Real estate in the Town encumbered only by the Town's unpaid taxes the

value of which real estate exceeds the Town's tax lien by more than $1

Million; and

c.      Claims against the Town and others.

1

251

3. The Town now (belatedly; see below) seeks dismissal of this case on the grounds that the Involuntary Petition was filed in bad faith.

4. The Town's case for dismissal is nothing more than an exercise in forum shopping. The Town makes it clear that it wants this case dismissed so that it may pursue its rights with respect to the Debtor's real estate in the Massachusetts Land Court and, in its own obvious exercise of selfish bad faith, wants the unsecured creditors (the Town by its own admission is over-secured by the real estate upon which it holds a first lien) to be deprived of the opportunity to realize upon the remaining assets of the Debtor (which are hardly insubstantial; the Trustee has reported to this Court that the California State Controller has agreed to send the Trustee the bankruptcy estate's funds of $1,293,646.83).

5. Clearly, the Chapter 7 Trustee has taken hold of the bankruptcy estate created upon the entry of the Order for Relief and dismissal of this case will cause extreme harm to all creditors (other than the Town), all because the Town prefers to adjudicate issues with respect to the Debtor's real estate in the Massachusetts Land Court and (irrelevantly) takes great umbrage at the timing of the filing of the Involuntary Petition commencing this case.

6. The late Judge William C. Hillman of this Court often said, from the bench, that there were two complaints from counsel that he wished never to hear again:

> First, that the debtor filed its petition the day before a scheduled foreclosure sale; and
> Second, that the bank filed its motion for relief from stay the day after the filing of the petition.

Judge Hillman observed that both were entitled to take the actions they had taken and the proximity of those actions to events precipitating them had no legal significance. That principal applies here.

2

7.    The Town admits that there is no First Circuit precedent providing for the relief it seeks.  And, based upon the case law cited by the Town, none of the courts that have permitted bad faith dismissals would do so on the facts presented here:

   a.    In *In re: Huckfeldt*, 39 F.3d. 829 (8th Cir. 1994) the court was presented with a debtor who "… filed a Chapter 7 petition to frustrate the divorce decree and to push his ex-wife into bankruptcy.  He then manipulated his immediate earnings to ensure that the Chapter 7 proceeding would achieve these non-economic motives." (*Huckfeldt*, pg. 832).  The *Huckfeldt* case bears no relation, and has no applicability, to the instant bankruptcy case where the only motivation of the Petitioning Creditors was, and remains, an economic, appropriate and legitimate goal (i.e. recovery of the amounts owed to creditors).  *Huckfeldt* counseled a cautious approach and a narrow view of the availability of alleged bad faith to result in the dismissal of a bankruptcy case.  This case is not, under *Huckfeldt*, a candidate for bad faith dismissal.

   b.    In *Krueger v. Torres*, 812 F.3d. 365 (5th Cir. 2016) (a case which cited *Huckfeldt*) the 5th Circuit affirmed a bad faith dismissal of a debtor's <u>voluntary</u> petition finding "… the record is replete with evidence that Krueger filed bankruptcy for illegitimate purposes, misled the court and other parties, and engaged in bare-knuckle litigation practices, including lying under oath and threatening witnesses." (*Krueger*, pg 374).  The <u>Krueger</u> court found that "Krueger filed chapter 7 because of a criminal contempt proceeding pending against him, because his state court

3

253

litigation had taken a turn for the worse, and to provide him the cover to retake control of [a corporation in which he had an interest]. These 'non-economic motives' are 'unworthy of bankruptcy protection'" and, "[o]nce his chapter 7 case commenced, Krueger engaged in conduct designed to manipulate the proceedings to his own ends." No such egregious facts are alleged by the Town (however annoyed the Town may be by the, in this context, irrelevant, filings and communications of Lolonyon Akouete).

c. The facts of *In re: MacFarlane Webster Associates*, 121 B.R. 694 (Bankr. S.D.N.Y. 1990) are likewise totally inapposite to the facts of this case. In *MacFarlane*, the only asset of the estate was a claim to avoid a prepetition foreclosure by a senior mortgagee and only the junior mortgagee stood to benefit from overturning the foreclosure (a foreclosure to which the junior mortgagee had consented prepetition). What the court dismissed was the second mortgagee's one creditor involuntary chapter 7 petition. Here, distinguishing facts from *MacFarlane* include the fact that there are assets available to satisfy all creditors, not just the Petitioning Creditors (at least seven Proofs of Claim have been filed), the Petitioning Creditors did not consent to anything pre-petition and dividends will flow in accordance with the Bankruptcy Code to multiple claimants beyond the Petitioning Creditors.

8. This Court's view of the Town's Motion to Dismiss should be informed by the Town's inexcusable delay in filing its Motion to Dismiss and the need for finality in bankruptcy cases. The Involuntary Petition commencing this case was filed on August 31, 2023. The Town

4

was notified of the filing of the Involuntary Petition on that very day. Counsel for the Town entered an appearance herein on October 4, 2023 and, on that date, filed a Motion for Relief from Stay. The Order for Relief was not entered until October 11, 2023 [Docket No. 26]. At no time between August 31, 2023 and October 11, 2023 did the Town challenge the allegations of the Involuntary Petition or move to dismiss this case. All of the facts cited by the Town purportedly in support of dismissal were known to the Town before the Order for Relief entered. The obvious conclusion from the Town's delay in filing its Motion to Dismiss is that it was not at all concerned with the alleged "bad faith" of the bankruptcy filing but, rather, wanted to pursue its rights in its forum of choice, the Massachusetts Land Court, unfettered by the existence of this bankruptcy case. Only after its Motion for Relief from Stay was not allowed and faced with the Chapter 7 Trustee's announced intention to remove the Massachusetts Land Court case to this Court, did the Town decide to seek its forum-shopping goal through the means of a belated Motion to Dismiss.[1]

9.      In determining that the Town has lost the right to contest the Order for Relief entered herein on October 11, 2023 and to challenge the finality of the Order for Relief, this Court should look to the United States Supreme Court's decision in *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) where the Supreme Court described the difference of finality in ordinary civil litigation and in bankruptcy:

> In ordinary civil litigation, a case in federal district court culminates in a "final decisio[n]," 28 U. S. C. §1291, a ruling "by which a district court disassociates itself from a case," *Swint v. Chambers County Comm'n*, 514 U. S. 35, 42 (1995) . A party can typically appeal as of right only from that final decision. This rule reflects the conclusion that "[p]ermitting piecemeal, prejudgment appeals . . .

---

[1] The Town's third forum shopping strategy occurred this very day with the Town's filing of a Motion to Remand to (of course) the Massachusetts Land Court.

undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Industries, Inc. v. Carpenter*, 558 U. S. 100, 106 (2009) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U. S. 368, 374 (1981) ).

The rules are different in bankruptcy. A bankruptcy case involves "an aggregation of individual controversies," many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. 1 Collier on Bankruptcy ¶5.08[1][b], p. 5–42 (16th ed. 2014). Accordingly, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U. S. 651, 657, n. 3 (2006) (internal quotation marks and emphasis omitted). The current bankruptcy appeals statute reflects this approach: It authorizes appeals as of right not only from final judgments in cases but from "final judgments, orders, and decrees . . . in cases and proceedings." §158(a).

The filing of an involuntary Petition, issuance of a summons and, after expiration of the time to respond to the summons contesting the allegations of the involuntary petition, the entry of an order for relief finally disposes of that "discrete dispute" within the larger case. The Town, disappointed in the results of its prior litigation strategies in this Court, should not now be permitted to end what is already an enormously effective Chapter 7 administration and realization on the assets of this Bankruptcy Estate by obtaining its real forum shopping goal through a dismissal which would disadvantage all creditors of this Debtor and where the continuation of the instant bankruptcy case will do no harm to the Town as an over-secured creditor, other than potentially deprive it of the adjudication of its claims in its preferred venue.

6

Wherefore, the Petitioning Creditors herein pray that this Court deny the Town's Motion to Dismiss.

PETITIONING CREDITORS,

By their attorneys,

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
The Gordon Law Firm LLP
57 River Place, Suite 200
Wellesley, Massachusetts 02481
Tel: (617) 261-0100
E-mail: sgordon@gordonfirm.com

Dated: February 7, 2024

## CERTIFICATE OF SERVICE

I, Stephen F. Gordon, hereby certify that on February 7, 2024, the foregoing **Objection of Petitioning Creditors to Town of Westborough's Motion to Dismiss Bankruptcy Case** was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake     jblake@k-plaw.com
- Paul W. Carey     pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Jonathan R. Goldsmith     bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;kstelmashova@gkalawfirm.com
- Jonathan R. Goldsmith     trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com;kstelmashova@gkalawfirm.com;MA43@ecfcbis.com;mwolohan@gkalawfirm.com
- Stephen F. Gordon     sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King     USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley     briley@k-plaw.com
- Scott Adam Schlager     sas@natgolaw.com
- Roger L. Smerage     rsmerage@k-plaw.com

and by email upon:

Lolonyon Akouete (info@smartinvestorsllc.com)

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)

P:\Clients-GLF\Westborough SPE\Plead (Bktcy)\Obj to Town Mtn to Dismiss.docx

7

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS**

Case Number: 23-40709-CJP
Involuntary Chapter 7

| | |
|---|---|
| *In re:* | ) |
| | ) |
| **WESTBOROUGH SPE LLC** | ) |
| | ) |

**NATHANSON & GOLDBERG, P.C.'s OPPOSITION/OBJECTION TO TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE [DOCKET NO. 69]**

To The Honorable Christopher J. Panos, United States Bankruptcy Judge:

Now comes Nathanson & Goldberg, P.C. and states the following in opposition to the Town of Westborough's ("Town") Motion to Dismiss Bankruptcy Case ("Motion to Dismiss"):

**Introduction**

The Town of Westborough's ("Town") Motion to Dismiss under 11 U.S.C 707(a), alleging this case was filed against an "invalidly-revived" iteration of Westborough SPE LLC ("LLC"), speciously ignores critical facts, and attempts to use law not recognized in the First Circuit—a point conceded by the Town. Town Counsel conveniently ignored the plain language of the Debtor's Delaware LLC Operating Agreement ("Operating Agreement")—the best evidence of the LLC's governing mandate and manager (either *predecessor* or *successor*) authority to act. David Abromowitz, Esq. of Goulston & Storrs P.C. in Boston, Massachusetts, the LLC's incorporating and predecessor counsel, provided a copy of the Operating Agreement, can certainly authenticate the Operating Agreement, and during any adversary proceeding, can be called on as a witness to do the same. *See* **Exhibit A** attached and incorporated by reference.

The Town's argument does not satisfy a motion to dismiss standard. *See In re Shove*, 638 B.R. 1, 14–15 (B.A.P. 1st Cir. 2022), *aff'd*, 83 F.4th 102 (1st Cir. 2023), "Courts use a two-pronged approach when considering a motion to dismiss." *Id.* (citations omitted). 'First, the court must

1

258

accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.' *Id*. (citations omitted). 'Second, the court must determine if these well-pleaded factual allegations state a 'plausible claim for relief.' *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))." *Id*.

According to page 4 of the Operating Agreement, "…**No Manager may resign or retire from, abandon or otherwise terminate its status as a Manager without the Consent of the Members**." (Emphasis Added). Thus, any purported attempt by Babcock & Brown Administrative Services, Inc. (including its predecessors, successors, or assigns) employees, agents, officers, or directors, including, but not limited to, Dyann Blaine, F. Jan Blaustein Scholes, James Babcock, or James D. Jaworski, to "*resign*" or "*abandon*" its manager obligations were entirely improper, contrary to the express terms of the Operating Agreement, and violative of the canons of fiduciary duties under Delaware law[1].

According to Section 9(a) Miscellaneous of the Operating Agreement, "…**the terms of this Agreement shall be binding upon and shall inure to the benefit of the Members and the Manager, their respective permitted successors, successors-in-title, heirs and assigns**…".

---

[1]  *See* Del. Code Ann. tit. 6, § 18-602 (West), "A manager may resign as a manager of a limited liability company at the time or upon the happening of events specified in a limited liability company agreement and in accordance with the limited liability company agreement. **A limited liability company agreement may provide that a manager shall not have the right to resign as a manager of a limited liability company**. Notwithstanding that a limited liability company agreement provides that a manager does not have the right to resign as a manager of a limited liability company, a manager may resign as a manager of a limited liability company at any time by giving written notice to the members and other managers. **If the resignation of a manager violates a limited liability company agreement, in addition to any remedies otherwise available under applicable law, a limited liability company may recover from the resigning manager damages for breach of the limited liability company agreement and offset the damages against the amount otherwise distributable to the resigning manager**." (Emphasis added). Thus, if Babcock & Brown's *resignation* or *abandonment* is found to have violated the Operating Agreement, then **the Chapter 7 Trustee likely has a claim** against Babcock & Brown Administrative Services, Inc., its successors, and assigns.

2

259

(Emphasis added). Thus, Section 9(a) of the Operating Agreement distinctly contemplates the possibility of an *assignment/transfer*[2] of Manager role and thus grants an express imprimatur to any "successor manager" under Delaware law.

Section 9(b) of the Operating Agreement specifically states that, "**No change, modification, or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and duly executed by all of the Members and, if (but only if) such affects the rights or obligations of the Manager, executed by the Manager**" (Emphasis added). Thus, even if Lolonyon Akouete ("Akoute"), as successor manager, attempted to redraft an LLC Operating Agreement, said redraft would be void, because it was not signed by all the Members of the LLC. Thus, any attempted redraft of the Operating Agreement by Akouete is a nullity and the original Operating Agreement remains the operative agreement.

---

[2] *See* Del. Code Ann. tit. 6, § 18-407 (West), "Unless otherwise provided in the limited liability company agreement, a member or manager of a limited liability company has the power and authority to delegate to 1 or more other persons any or all of the member's or manager's, as the case may be, rights, powers and duties to manage and control the business and affairs of the limited liability company, which delegation may be made irrespective of whether the member or manager has a conflict of interest with respect to the matter as to which its rights, powers or duties are being delegated, and the person or persons to whom any such rights, powers or duties are being delegated shall not be deemed conflicted solely by reason of the conflict of interest of the member or manager. Any such delegation may be to agents, officers and employees of a member or manager or the limited liability company, and by a management agreement or another agreement with, or otherwise to, other persons, including a committee of 1 or more persons. Unless otherwise provided in the limited liability company agreement, such delegation by a member or manager shall be irrevocable if it states that it is irrevocable. Unless otherwise provided in the limited liability company agreement, such delegation by a member or manager of a limited liability company shall not cause the member or manager to cease to be a member or manager, as the case may be, of the limited liability company or cause the person to whom any such rights, powers and duties have been delegated to be a member or manager, as the case may be, of the limited liability company. **No other provision of this chapter or other law shall be construed to restrict a member's or manager's power and authority to delegate any or all of its rights, powers and duties to manage and control the business and affairs of the limited liability company**." (*Emphasis added*).

3

Section 9(c) of the Operating Agreement states, "This [Operating] Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted and enforced in accordance with the laws of the **State of Delaware**, notwithstanding any choice of law rules to the contrary." (Emphasis added). Thus, any question of limited liability company governance must be answered under Delaware law and not Massachusetts law. Moreover, the Secretary of The Commonwealth of Massachusetts Corporations Division identification numbering system is not dispositive. Delaware law differs from Massachusetts law on limited liability company reinstatement, and it is Delaware law that prevails[3].

The Operating Agreement also explicitly states:

"**Any Manger may, from time to time, by an instrument in writing, delegate all or any of its powers or duties hereunder to another Manager, if any, or to an officer, manager, member, or partner of any other Manager or to any Member or any other person or entity**. Such writing may **fully authorize such other Manager or such other person or entity, acting alone or with others**, all as may be provided in such written delegation, without requiring…signature of the delegating Manager, **to take any action of any type and to do anything and everything which the delegating Manager may be authorized to take or do hereunder**…**and may delegate such authority generally** or as to any specified matter or specific terms, all as may be provided in writing by any such Manager. **Any documents or other instruments executed by any person or entity to whom any such delegation has been made shall be binding upon and enforceable against the Company, and shall be the valid act and deed of the Company, if executed by such delegee, and any third party shall be fully protected in relying upon the authority of any such delegee pursuant to a written delegation by the (or a) Manager**."

(Emphasis added). *Id*.

---

[3] *See*, *e.g.*, *RFB Properties LLC v. Federal National Mortg. Ass'n*, 284 A.3d 381 (D.C. App. 2022) (The District of Columbia Court of Appeals held that the reinstatement of an administratively dissolved LLC validated its filing an action to quiet title and its recording of a deed during the period of dissolution. The court reversed the trial court's dismissal of the action on the grounds that the LLC was administratively dissolved when the claim arose); *see also* https://corpfiles.delaware.gov/llcrev09.pdf (accessed February 07, 2024) (Delaware has a standard form for LLC revivals).

Thus, F. Jan Blaustein Scholes, under the Operating Agreement, and in full compliance with Delaware law, had the authority to execute a written assignment of Manager role and durable power of attorney, and such assignment of manager role to Lolonyon Akouete ("Akouete"), and Denise Edwards ("Edwards"), delegated general authority to Akouete, and Edwards, to act on behalf of the Debtor.

Accordingly, the Town's Motion to Dismiss should be immediately denied. The Town's discursive, seventeen-page Motion to Dismiss, riddled with "red-herring" exhibits bordering on the frivolous, is merely an attempt by the Town to hinder, delay, and obstruct this Chapter 7 case for its own perceived litigation advantage, and imposes significant unnecessary costs on Creditor Counsel, and the Chapter 7 Trustee. Movant's argument embodies a dubious proposition because of insufficient authority in the First Circuit to conclude that a finding of bad faith is grounds for dismissal under Section 707(a) of the Bankruptcy Code. And there is no basis in law or in fact to conclude that the two Petitioning Creditors acted in bad faith.

Involuntary petitions "help ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching nervously as assets are depleted, either by the debtor or by rival creditors who beat them to the courthouse." *See In re Murray*, 900 F.3d 53, 59 (2d Cir. 2018). The Town exemplifies a rival creditor seeking to deprive other creditors of an "orderly and fair distribution" of the Debtor's assets. The Town's effusive animus against Akouete in its Motion to Dismiss rang clear.

It is doubtful that the Town even possesses adequate legal standing to seek dismissal of this bankruptcy case in which it is assured full payment of its ultimately allowed claim. Standing is a threshold issue, and the Bankruptcy Court must determine whether the Town, admittedly a "party in interest" in this bankruptcy case is a party in any way aggrieved by the existence of this

5

262

bankruptcy case, which will only serve to allow other creditors to recover on their claims. Trustee Jonathan Goldsmith has rightly removed the Land Court proceeding to this Bankruptcy Court, in which the Town's claim can be adjudicated and will be paid in full once determined.

To file an involuntary bankruptcy petition, only certain requirements must be satisfied, such as the number of petitioning creditors, the types of claims these creditors hold, and the amount of the claims. Those requirements have been met in this case:

A. **Since the Debtor has Fewer Than Twelve Creditors, Three Or More Creditors Are Not Required**.

Section 303 states that three or more entities, each of which is a holder of eligible claims against a debtor, can file an involuntary petition so long as those eligible claims aggregate to at least $16,750 more than the value of any lien on the property of the debtor securing such claims held by the holders of such claims. § 303(b)(1). If less than twelve creditors hold qualified claims against the debtor, then one or more of those creditors holding in the aggregate at least $16,750 in eligible claims may file an involuntary case, subject to certain exceptions that do not apply here. § 303(b)(2). Thus, an involuntary bankruptcy case can be initiated by only one creditor if that creditor is one of less than 12 creditors and has an eligible claim worth at least $16,750 as of the petition's filing date. *See In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr. E.D. Va. 1996).

B. **The Two Petitioning Creditors Hold Eligible Claims**.

Eligible claims are neither contingent as to liability nor the subject of a bona fide dispute as to liability or amount, and both petitioning creditors qualify (although only one would be required here). *See Id*. § 303(b).

6

C. **Each Petitioning Creditor Satisfies the Minimum Amount of Claims**.

Eligible claims must aggregate at least $16,750.12 The claims of both petitioning creditors exceed this amount.

## I. The Town Has an Ulterior Motive.

As the United States Supreme Court recently opined in *Tyler v. Hennepin Cty. Minnesota*[4], the Town's **_only_** interest is getting paid its unpaid tax debt[5], but the Town has an ulterior interest— punish Akouete for thwarting the Town's improper sale to Lax Media (the Town's preferred partner). Accordingly, the Town lacks standing to challenge any corporate actions of Westborough SPE LLC vis-à-vis its revival in the State of Delaware and its re-registration as a foreign LLC in Massachusetts. Despite the Town's assertion that this involuntary Chapter 7 Petition was "filed against the debtor as a strategic maneuver to frustrate the Land Court's adjudication of the Tax

---

[4] Beginning with traditional principles, Chief Justice Roberts suggested that a property interest in surplus equity had English origins — King John proclaimed in the Magna Carta that when collecting debts owed to him by a deceased person, any surplus "shall be left to the executors." *Tyler*, 143 S. Ct. at 1376 (*quoting* William Sharp McKechnie, Magna Carta: A Commentary on the Great Charter of King John 322 (2d ed. 1914)). Parliament endorsed this principle, giving the Crown the power to seize and sell a taxpayer's property to satisfy a tax debt but requiring the surplus to be returned to the original owner. And according to Blackstone, the English common law required the same. *Id*. So too did historic and contemporary American laws. Following the Founding, the new federal government and ten states adopted provisions requiring the government to sell only the amount of property equal in value to the taxpayer debt. *Id.* These laws foreshadowed the approach taken by the federal government and most of states today, in which surplus is returned to the taxpayer. Precedent provided further support — a taxpayer's entitlement to surplus in excess of debt was a well-recognized principle. Unlike statutory schemes upheld by the Supreme Court in other instances, Minnesota's scheme entirely precluded owners from obtaining the surplus once absolute title had transferred to the state, suggesting a taking had occurred. This is similar to Massachusetts' current scheme.

[5] Where state courts are suspected of using state law to evade federal law or deliberately impede federal claims, the Court overrides its usual deference to state court interpretations of state law and searches for misconduct by the courts. Misconduct can be inferred from "grossly unfair or unsubstantiated alteration[s] of state law" or anomalous applications of local practices. Chief Justice Roberts himself confirmed the Court's role in combating attempts at evasion by state courts in *Moore v. Harper*.

Foreclosure Action", this could not be further from the truth and ignores two critical facts—(i) Nathanson & Goldberg, P.C. is not the sole petitioning creditor; and (ii) Nathanson & Goldberg, P.C. was owed over $100,000 from the debtor and attorneys' do not work for free.

The Town further laments that the filing of an Involuntary Chapter 7 Petition by the petitioning creditors represents a "frustration of the judicial process" and then unilaterally declares, without citation to any authority, that the "Debtor was not properly revived and the individuals behind that revival are attempting to frustrate the Town's disposition of real property that the Town acquired through the Tax Foreclosure Action, constitutes cause [warranting] dismissal of this bankruptcy proceeding." *Motion to Dismiss*, p.1. This hail-Mary attempt by the Town to avoid having its Land Court proceeding removed to the Bankruptcy Court, is disingenuous and seeks only to punish Akouete for his vociferous advocacy. The Town does not want a Federal forum, where the holding of *Tyler* would unequivocally be invoked. The Town has attempted to obfuscate the issues for the Court, but a careful distillation of the facts, Debtor's Operating Agreement, and Delaware law, readily show that the Debtor, and Creditors, have acted reasonably and appropriately, but the Town has acted irrationally. The Town's improper resort to ad-hominem attacks and baseless assertions strains credulity.

**II.     The Town Fails to Satisfy the 707(a) Standard for Dismissal and the First Circuit Has Not Adopted Bad Faith as a Reason for Dismissal**.

Under § 707(a), the court has discretion to dismiss a Chapter 7 case for cause after notice and a hearing. *United States v. McDaniel (In re McDaniel)*, 363 B.R. 239, 243 (M.D. Fla. 2007). Section 707(a) supplies three non-exclusive illustrations of cause: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file required information (not here at all applicable). None of those reasons, nor any others, apply here.

8

265

Some Courts, but not in the First Circuit, have concluded bad faith can demonstrate cause for dismissing a Chapter 7 case, and that the movant seeking a bad-faith dismissal bears the burden of proof. *In re McDaniel*, 363 B.R. 239, 244 (M.D. Fla. 2007); *but see In re Bushyhead*, 525 B.R. 136, 142 (Bankr. N.D. Okla. 2015) (rejecting bad faith as a consideration when dismissal is sought under § 707(a) and noting that courts are split on the issue). Bad faith is a fact-intensive determination that " 'is subject to judicial discretion under the circumstances of each case' " and "does not lend itself to a strict formula." *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1271 (11th Cir. 2013) (*quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984)). In *Piazza*, the Eleventh Circuit determined that "a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a)" and focused on " 'atypical' conduct that falls short of the 'honest and forthright invocation of the Bankruptcy Code's protections .' " *Id*. (internal citation omitted). Courts must "examine whether a debtor's intentional acts or omissions to act 'constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.' " *In re Merkel*, 595 B.R. 608, 611-12 (Bankr. S.D. Fla. 2018) (*quoting Piazza*, 719 F.3d at 1272). "A bankruptcy court, as a trier of fact, must carefully examine the conduct of the debtor and identify facts and bases which support a finding of bad faith under § 707(a)." *Id.* at 612. Because the analysis is generally subjective and entrusted to the court's discretion, "the court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction." *In re Kane & Kane*, 406 B.R. 163, 170 (Bankr. S.D. Fla. 2009) (*citing In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991) (dismissal of Chapter 7 cases for lack of good faith limited to egregious circumstances)). Here, there are no grounds for dismissal of an involuntary case because of any alleged debtor bad faith.

The Town does not allege that the involuntary petition was filed to avoid having the Town paid as a creditor. The Town merely suggests that the Petition was filed to avoid a Land Court adjudication of the Town's rights vis-à-vis the Tax Foreclosure Action. This Court must reject the Town's first argument as providing just cause for dismissal in this case. Even if the involuntary petition were filed to avoid Land Court adjudication, the involuntary petitioners' resort to Chapter 7 may have been appropriately strategic, but not unfair under the circumstances. In fact, the Town fails to recognize that there was not one petitioning creditor—**the second petitioning creditor had no connection at all to Lolonyon Akouete**. That there was a second unaffiliated petitioning creditor with no connection at all to Lolonyon Akouete ought to be dispositive and deny dismissal of the Chapter 7 case for bad faith alleged only as to Akouete.

Most importantly, filing for bankruptcy relief "to counter the collection efforts of one creditor, without further indicia of bad faith, is not sufficient to warrant dismissal under § 707(a)." *In re Merkel*, 595 B.R. at 614 (collecting cases).

But it is ironic that the Town is even pursuing a dismissal—perhaps it is the Town that has an ulterior and inappropriate motive. Here, there are sufficient assets to pay off Westborough SPE LLC's tax debt to the Town and to pay off all creditors from a properly administered Bankruptcy Estate—(i) there is about $1,293,000 from the State of California to be collected by the Trustee and for which the Trustee has seemingly secured an Agreement from the State of California to release right away; and (ii) the Debtor's real property located at 231 Turnpike Road is worth at the very least about $2.4 Million. The Town will easily get paid its roughly $1 million owed, without disadvantaging other creditors for whom this bankruptcy case represents their only effective means of recovery. But the Town would rather "cut off its nose to spite its face" to inflict maximum "punishment" on Lolonyon Akouete for exercising Debtor's rights to challenge an improper and

constitutionally deficient tax title taking and for exercising his fiduciary duties in good faith to ensure that the Debtor's chief asset—the real property located at 231 Turnpike Road, Westborough, MA, is not wrongfully seized by the Town, as a direct result of Babcock & Brown's breach and abandonment of their fiduciary duties and contractual obligations vis-à-vis the Debtor's Operating Agreement.

The Court cannot conclude that the totality-of-the-circumstances (indeed, any of the circumstances) demonstrates that this involuntary Chapter 7 case was filed in bad faith. The remedy of involuntary bankruptcy "exists as an avenue of relief for the benefit of the overall creditor body…. [I]t was not intended to redress the special grievances, no matter how legitimate, of particular creditors…." *In re Murray*, 900 F.3d 53, 59-60 (2d Cir. 2018). And, certainly, its dismissal cannot be used to redress the special grievances of the Town.

The only "special grievance" seems to be proffered by the Town. At this point, neither the Trustee nor the Petitioning Creditors seem to care who the real property located at 231 Turnpike Road, Westborough, Mass. is sold to, but for reasons unacknowledged, the Town is insistent on its own selectee Lax Media. So if neither the petitioning creditors nor the Trustee have reason to object to the sale of the real property to Lax Media, then the Court should order the Trustee to sell the real property to Lax Media, obtain the funds from California, pay off the Town, pay off the other creditors, and then it is the Trustee's obligation, and not the Town's, to determine the entity entitled to receive the remaining proceeds—be it to the State of Delaware or British Virgin Islands by escheat, an affiliate or entity created by the billionaire Lowy Family of Australia for alleged tax avoidance, the Estate of Max Green, Esq. of Australia, an affiliate or entity created by Myron Scholes for alleged tax avoidance, the Insolvency Estate in Australia of Babcock & Brown's Australian parent company, or some other person(s) known or unknown.

11

268

Allowing the Town's Motion to Dismiss would waste judicial resources and propagate a bad-faith attempt by the Town to punish Akouete for thwarting the Town's plans for the real property at 231 Turnpike Road.

**III.** **The Town Completed Its Discovery in the Land Court Proceeding As Confirmed by the Filing of the Joint-Pre-trial Memorandum.**

In Fn.1 of its Motion to Dismiss, the Town laments that the filing of a §707 Motion commences a contested matter under Fed. R. Bankr. P. 9014. The Town presupposes that it has standing to challenge Westborough SPE LLC's corporate actions, and assuming arguendo it did possess standing, it would be futile, because the Chapter 7 Trustee has the authority to remove the Land Court case to the Bankruptcy Court. Even so, this issue is the subject of Land Court litigation which case has since been removed to the Bankruptcy Court by the Chapter 7 Trustee. The Bankruptcy Court is the proper forum for adjudication of these issues. Rather than accept that the Town will easily get its tax debt paid with the funds obtained from the State of California or by sale of the Property, the Town is looking to exact revenge on Akouete.

**IV.** **The Town Is Incorrect About Many Factual Matters Stated in Its Motion to Dismiss.**

There is absolutely no need to distinguish between a revived iteration of Westborough SPE LLC and the original iteration (*see* Motion to Dismiss at p.1)—both the revived and the original iteration use the same FEIN number and are the same entity. The State of Delaware recognizes revival/reinstatement of entities, and a revived/reinstated Delaware limited liability company is one and the same with the original formed entity. Delaware law applies to this analysis as the choice of law provision in the Debtor's Operating Agreement clearly indicates. Moreover, unlike what was stated in the Motion to Dismiss, Stephen F. Gordon, Esq. of The Gordon Law Firm LLP filed the Involuntary Chapter 7 Petition on behalf of the two petitioning creditors, not the creditors themselves (*see* Motion to Dismiss at p.1). This counsel takes umbrage at the Town's use of labels

12

269

and conclusions throughout its Motion to Dismiss, including, but not limited to "issues of deception surrounding the Debtor", "frustration of the judicial process", "debtor was not properly revived", among similar statements. And the Town claims that the LLC Operating Agreement was not authenticated, but David Abramowitz, Esq. of Goulston & Storrs P.C. provided the signed copy of the LLC Operating Agreement on August 8, 2023, and his testimony, if necessary, can easily authenticate the Operating Agreement that was drafted by his Firm on a matter in which he was the then partner-in-charge. The Town also states that the "LLC withdrew from doing business in Massachusetts in 2007" but fails to state that the Debtor still owned real property located at 231 Turnpike Road, Westborough, Mass. as of 2007. The Town also failed to state that Babcock & Brown lacked the authority to resign as manager because it did not receive the consent of the Debtor's Members. *See* Motion to Dismiss at page 2. Furthermore, the Town failed to state that the Lease (which it conveniently states expired in late 2017), did in fact have four additional successive five-year options and the cinema tenant wished to execute a lease extension, but because Babcock & Brown could not comply with the Patriot Act and OFAC know-your-client regulations (i.e., upon information and belief it did not know the Members complete identities), it sought to abandon its obligations so as to seemingly not risk enforcement action. *See* Motion to Dismiss at p.3. Unpaid taxes as of FY 2018 amounted to only $106,944.99. *See Id*. Yet the Town has decided to engage in protracted litigation and extend the time period where the balance owed to the Town seemed to accrue to massive levels. It is also fundamentally unfair to charge the Debtor for legal fees the Town incurs in Bankruptcy and especially in the Ferris Development Litigation, where the Town comes with unclean hands as a result of its severe constitutional due process and procedural violations. The Town also conveniently omits Debtor's argument about insufficiency of service of process in the Land Court Tax-Title proceeding. *Id*. The Town similarly omits that

13

270

the Debtor moved to vacate the foreclosure judgment based on constitutional violations, including due process, and on procedural grounds. The Town's assertion that the estimated fair market value of the Property was $2,082,000.00 is directly refuted by the appraisal report provided by the Town during discovery in the Land Court Proceeding. In fact, at least one appraisal report had a value approaching $5-6 million for the real property located at 231 Turnpike Road, Westborough, Mass. In Fn. 6 on page 3 of the Town's Motion to Dismiss, the Town cursorily references Ferris Development Group, LLC's lawsuit but seeks to wrongfully portray a denial of an injunction as being dispositive of the Town's position in that matter.

Records from the Delaware Secretary of State Corporations Division are dispositive. Certified Copies of Delaware Corporate Records indicate that the Certificate of Revival for Debtor used the same FEIN # as the original entity and thus they are the same. *See Id*. at p. 4. The Town lacks standing to assert breach of fiduciary duty or derivative claims on behalf of the Debtor—that belongs to the Trustee. Moreover, the Town's assertion that the Debtor applied for registration to do business in Massachusetts using the same name as the LLC is not accurate—Akouete and Edwards, as duly authorized managers of the Debtor, a reinstated Delaware limited liability company using the same FEIN # as the original entity, is the same. Just because Massachusetts distinguishes between original and reinstated entities as being different entities, Delaware does not. It is Delaware limited liability company law that governs per the Operating Agreement. Moreover, the Town's reference to a Bill of Sale is merely a red-herring—Akouete corrected the record through submitting subsequent documentation that the Town failed to mention in its Motion to Dismiss. The later documentation clearly corrected the record and made evident that neither Akouete nor Edwards acquired any membership interest in Debtor and that they only became successor managers of Debtor with all rights and privileges and obligations conferred by the

14

Operating Agreement. Moreover, the reference to the Bill of Sale having Ms. Blaustein reside in New Mexico was an apparent scrivener's error and Ms. Blaustein always resided for the purposes of the Land Court Case in Maricopa County, Arizona. The corrective documentation submitted to the Land Court makes this fact clear, and as stated above, the Bill of Sale is a nullity and not the operative document. As has been reflected in Land Court argument and later filings, Akouete unequivocally does not own any membership interest in debtor. He is merely a co-successor manager of Debtor with full rights and privileges afforded by the Operating Agreement. *Id* at p.4. Moreover, any reference to Ms. Blaustein not being the president of Debtor is not true. Ms. Blaustein was the President of Babcock & Brown Administrative Services, Inc. which was the predecessor entity to Babcock & Brown Parallel Member LLC. In addition, the Town harps on the Hawaii Court ruling that Ms. Blaustein was "an incapacitated person", but there is no reference to any Arizona guardianship proceeding. Guardianship proceedings are not afforded full faith and credit under the United States Constitution. *See May v. Anderson*, 345 U.S. 528, 529 (1953); *Johnson v. Johnson*, 105 Ariz. 233, 240, 462 P.2d 782, 789 (1969) ("A decree of a court of one state…is not binding upon the courts of another state under the full faith and credit clause of the federal Constitution after [that person subject to said foreign court order] has become domiciled in the latter state."). Thus, because Arizona and Hawaii have different standards to adjudge capacity, the fact that F. Jan Blaustein Scholes at all times relevant to the Land Court proceeding resided in Arizona and not Hawaii, and the fact that there is no conservatorship proceeding docketed at the time the revised documentation was executed in or about 2022-2023 in Arizona, Peter Blaustein had no guardianship over his mother in Arizona, and the Town's argument rings hollow.

15

In fact, Peter Blaustein allegedly exercised undue influence over his Mother Ms. Blaustein, and has tried to limit her expenditures. In fact, it was Ms. Blaustein who avoided her responsibilities as manager of the Debtor, and breached her fiduciary duties to the members of the LLC by failing to properly register in Massachusetts when the Debtor continued to own property in Massachusetts.

We also take umbrage at the Town's characterization that Mr. Akouete's efforts to vacate the Town's Tax Foreclosure Judgment was a "scheme". The Town challenges Akouete's communication with David Ferris, as if this were some sort of *coup de grâce*, but frankly, Akouete is allowed to communicate with whomever he desires. *Id*. at p. 5. Next, we object to the Town harping on a purported new LLC Agreement. The Operating Agreement stands, because the express terms of the Operating Agreement required Member Consent and written approval. Thus, if it's a nullity, it does not factor into this analysis and the Town wastes considerable word count discussing a nullity. *Id*. at p. 6. Moreover, the fact that Akouete stated in a text message to Charville that he was "starting to see the authority issues we have in this case" is merely an acknowledgment of the Town's position and not acceptance. Akouete is not a licensed attorney in any jurisdiction and any statements to Ferris likely represent posturing and are taken without the benefit of full context. Despite the Town stating that Akouete claims he acquired an ownership interest in the Debtor, he did not, and in fact the Land Court was informed of this fact and the record was corrected before the Bankruptcy Petition being filed. *Id*. at p. 7. Furthermore, the Town claims that all motions were denied—they were not all denied—some issues were postponed to an evidentiary hearing.

Importantly, no determination by the State of California can decide Akouete's authority and California's recent decision to now release the approximately $1.3 Million of estimated funds,

16

273

previously denied the Debtor, to the <u>Trustee</u> demonstrates how effective this case has already been in creating a valuable bankruptcy estate for the benefit of creditors with no viable alternative if this case is dismissed. The Town lacks standing to challenge authority. *Id*. Once again, the corrected authority documents were provided to the State of California by Akouete and Akouete corrected his statement to the State of California that he was not an owner of the LLC. *Id*. at p. 8.

Fn. 13 on p.8 of the Town's Motion to Dismiss is not true. Mr. Blaustein was not duly appointed guardian in Arizona. A separate guardianship proceeding was required in Arizona under the Uniform Guardianship and Conservatorship Act. An expert is required to opine on this issue and it is a disputed fact.

The Town's considerable lamentation over the Land Court canceling the evidentiary hearing and staying the Land Court proceedings focuses the argument on the gravamen of the Town—the Town is angry that the friendly Land Court may be deprived of its jurisdiction—which it was by the Trustee's filing of the Notice of Removal. Indeed, the Town is frustrated over Akouete's persistence. But persistence is not illegal or improper. Perhaps Akouete is right in that it is the Town that is engaging in unreasonable and vexatious litigation. Akouete is not a licensed attorney and any correspondence with the Town Officials is not subject to Attorney communication prohibitions. The Town hopes that through its use of ad-hominem attacks that it will poison Akouete's reputation with this Court. *Id*. at 9. But Akouete's activities (including this case) are irrelevant to the issues of disadvantaging creditors through dismissal of this bankruptcy case.

Once again, in the Town's Argument section, it is replete with labels and conclusions. The Town has regretfully resorted to ad-hominem attacks. Nathanson & Goldberg, P.C. do not represent Akouete and Edwards—the Engagement is with Westborough SPE, LLC, a Delaware

274

limited liability company. Akouete and Edwards' status as manager was confirmed by obtaining certificates of good standing from Delaware and Massachusetts. Using legal process to attempt to frustrate the Town's plans to disadvantage creditors is in no way improper; no more than is the Town's use of legal process which it can pursue in this Court. because legal process was used. The absolute litigation privilege protects lawyers, and Nathanson & Goldberg, P.C.'s client was always the Debtor, and not Akouete, or Edwards, themselves. *Id*. at p. 10. Akouete's attempt to revive the Debtor was not "egregious". In fact, the only "egregious" behavior was by Babcock & Brown flouting its fiduciary duties and improperly trying to shutter the entity while it was still conducting business in Massachusetts. Ms. Blaustein had the requisite authority to convey management responsibility to Akouete under the Operating Agreement and Delaware law—in fact Ms. Blaustein in her conveyance of management responsibility to Akouete and Edwards for the first time, aimed to try and mitigate her and Babcock & Brown's clear breach of her fiduciary duties owed to the Debtor's Members. *Id*. at p. 11.

Moreover, as discussed *supra*, the Bill of Sale is not operative, and was expressly disclaimed to the Land Court upon Nathanson & Goldberg, P.C. assuming representation, and learning of the purported Bill of Sale—which is an absolute nullity—and which is of no force and effect whatsoever. Any purported Bill of Sale could only convey the interest possessed by Ms. Blaustein, which was a manager role, and thus said document could only purport to transfer said manager role.

In addition, we expressly disagree with Fn. 19, and expert opinion is likely required on this issue. Furthermore, Mr. Akouete, as previously discussed can freely communicate with whomever he chooses. *Id*. at p. 12. Moreover, once again, Mr. Akouete does not have to be the equity owner of the Debtor to prevail as highlighted several times. Akouete is the manager of debtor and

Blaustein is not a member and nor does she have to be. Yes, the Town brought up the question of authority to act, but the Town's position is erroneous and is not grounded in fact or law. *Id*. at p. 13. The Debtor's governing documents to not undermine Akouete and Edwards' authority to act as manager of the Debtor. Akouete and Edwards obtained the Agreement from Goulston & Storrs P.C. so the assertion that they could not obtain said document is not a fair characterization. Goulston released the Agreement because of Akouete authorizing its release as successor manager of the Debtor. Any alleged new operating agreement is not enforceable and is merely a red herring. The only operative agreement is the Operating Agreement. We also disagree with Fn. 20 as it does not demonstrate Akouete and Edwards knew Blaustein had been placed in Conservatorship, because a check of the Maricopa County, Arizona court records show no conservatorship proceeding. *Id*.

The Town's inadequate presentation of facts failed to acknowledge the Operating Agreement. Attorney Smerage's signature indicates a certification under Rule 11, and omission of a material fact (a complete discussion of the Operating Agreement) is essential to understanding the issues in this case.[6] Despite the highlighted flaws in the Town's argument, the Town persists

---

[6] Additionally, a failure to disclose material facts to the Court may constitute a fraud upon the Court. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 n.8 (S.D.N.Y. 1986) ("When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court.") (*citing H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (stating that attorney's knowledge and sponsorship of client's nondisclosure, misrepresentation and perjury would constitute a fraud on the court); *Kupferman v. Consolidated Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (stating that attorney's failure to disclose the existence of a release which he knew was a full defense to plaintiff's claim would fit within the concept of fraud on the court); *Bulloch v. United States*, 95 F.R.D. 123 (D. Utah 1982) (finding fraud on the court where the government and its attorneys made false and deceptive representations, withheld information, and pressured witnesses not to testify)). A court may sanction an attorney for misrepresentation under its inherent authority. *See Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *14 n.13 (S.D.N.Y. June 20, 2019) ("The court's inherent authority is often cited as the 'primary basis' for sanctions

19

in its faulty assessment of the law and presentation of incorrect facts. The Debtor did not file a voluntary petition, it was an involuntary petition filed by two creditors (one of which is wholly independent from Akouete and Edwards). As shown in the Operating Agreement and corrective documents presented in the Land Court, Akouete and Edwards had requisite authority to act on behalf of the Debtor. Reviving an LLC to ensure the Debtor complies with its fiduciary duties is not "egregious". In Fact, Babcock & Brown could face serious liability for abandoning its clearly defined contractual obligations with the Debtor. *Id*. at 14.

The Town states that Akouete has "badgered" Town Attorneys. This remark has no place here and should be stricken as impertinent, irrelevant, and scandalous. Once again, the Town characterizes its remarks "on Christmas weekend no less" as it tries to appeal to emotion and improperly sway this Court. The Town cannot profess to know why this Involuntary Petition was filed. Once again, it uses labels and conclusions for dramatic effect. There has been no manipulation of the right lawfully conferred by the United States Code to file an involuntary proceeding under Chapter 7. *Id*. at p. 15. The Town has no right to deny a lawful manager of Debtor acting on behalf of the Debtor to vacate an unlawful tax foreclosure saddled with constitutional violations of due process.

The Town is incorrect on p. 16 of its Motion to Dismiss in that the Debtor was not one of the two petitioning creditors. *Id*. at 16. The Town continues its campaign to obfuscate the issues

---

where a party or its counsel has made misrepresentations to the court.") (*citing Jung v. Nechis*, 2009 WL 762835, at *13 (S.D.N.Y. Mar. 23, 2009)).

Counsel for the Town may interpret their obligations too narrowly. "An attorney is not obligated merely to not outright lie to the Court; [he] owes the Court a duty of candor. Candor is not the state of simply not lying; candor is the quality of being open and honest in expression. An attorney cannot excuse [his] lack of candor by pointing [out] that [he] did not technically lie." *In re Reed*, 2016 WL 11780171, at *116 (Bankr. E.D. Mo. Apr. 20, 2016).

20

and to try to confuse the Court. The Bill of Sale is not operative and is a complete nullity—it merits no further discussion as it has been corrected as a nullity in the Land Court record and is irrelevant. The Town is wrong in that the Land Court proceeding is stayed. *Id*. at 16. The Debtor did not object and assented to the filing of the involuntary petition so there is no conflict of interest. Moreover, since there are sufficient assets of the Estate to pay off all creditors—absent the Town's antagonism—this case could be resolved relatively expeditiously. Nathanson & Goldberg, P.C. did not file the Petition, it was filed by Stephen F. Gordon, Esq.

While the Town does not like the fact that the Land Court proceeding can be properly removed by the Trustee, it is a reality subject to the Bankruptcy Code. The Town will have sufficient opportunity to address any issues if the Bankruptcy Court decides it has standing and if it continues to exercise its discretion to entertain removal of the Land Court proceeding. Even if the Town were to sell to Lax Media (which we do not oppose), so long as this Court approves, the excess proceeds above the tax debt must be paid to the Debtor. However, the Debtor should not be charged for the Town's legal fees for the Ferris Litigation by KP Law—that is improper. The Town's intransigence and "cut off your nose to spite your face" attitude to punish Akouete is a double-edged sword.

**PRAYERS FOR RELIEF**

**WHEREFORE**, Nathanson & Goldberg, P.C., requests that this Court deny the Town's Motion to Dismiss and grant any other relief that is justice so requires.

21

278

**Dated**: February 7th, 2024

**NATHANSON & GOLDBERG, P.C.**,
By its attorneys,

**/s/ Scott A. Schlager**
Scott A. Schlager, BBO #695421
Nathanson & Goldberg, P.C.
183 State Street, 5th Floor
Boston, Massachusetts 02109
Tel. (617) 909-4511
Fax. (617) 210-4824
Email: sas@natgolaw.com

## CERTIFICATE OF SERVICE

I, Scott A. Schlager, hereby certify that on February 7th, 2024, the foregoing Opposition/Objection to **TOWN OF WESTBOROUGH'S MOTION TO DISMISS BANKRUPTCY CASE [DOCKET NO. 69]** was served by operation of the Court's ECF System on all individuals designated to receive service by ECF:

- Jeffrey T Blake    jblake@k-plaw.com
- Paul W. Carey    pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- Jonathan R. Goldsmith    bankrdocs1@gkalawfirm.com, bankrdocs@gkalawfirm.com;kstelmashova@gkalawfirm.com
- Jonathan R. Goldsmith    trusteedocs1@gkalawfirm.com, trusteedocs@gkalawfirm.com;kstelmashova@gkalawfirm.com;MA43@ecfcbis.com;mwolohan@gkalawfirm.com
- Stephen F. Gordon    sgordon@gordonfirm.com, vhaggerty@gordonfirm.com;notices@gordonfirm.com;stephenfgordon@gmail.com
- Richard King    USTPRegion01.WO.ECF@USDOJ.GOV
- Brian W. Riley    briley@k-plaw.com
- Scott Adam Schlager    sas@natgolaw.com
- Roger L. Smerage    rsmerage@k-plaw.com

and by email upon:

Lolonyon Akouete (info@smartinvestorsllc.com)

**/s/ Scott A. Schlager**

Scott A. Schlager  (BBO #695421)

22