UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**BANKRUPTCY APPEAL**

NO. 26-cv-10912-JEK

LOLONYON AKOUETE, Plaintiff-Appellant,

v.

JONATHAN R. GOLDSMITH, CHAPTER 7 TRUSTEE OF WESTBOROUGH SPE LLC, FERRIS DEVELOPMENT, TOWN OF WESTBOROUGH, LAX MEDIA, THE MOBILESTREET TRUST, BOCHASANWASI SHREE AKSHAR PURUSHOTTAM SWAMINARAYAN SANSTHA – NORTHEAST, A TEXAS CORPORATION

Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS

(Chapter 7 Case No. 23-40709-CJP)

**BRIEF OF APPELLEE JONATHAN R. GOLDSMITH, CHAPTER 7 TRUSTEE OF WESTBOROUGH SPE LLC**

Christine E. Devine, Esq. BBO #566990
Angelina Savoia, Esq. BBO #715690
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone:  508-533-7240
Email:  christine@nicholsondevine.com

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................ 1

II.   STATEMENT OF THE CASE ........................................... 1

      A.    BACKGROUND AND PROCEDURAL HISTORY ................. 1

            1. Claim Asserted by Akouete Against the Bankruptcy Estate
            and Disallowed by Bankruptcy Court ......................................... 1

            2. Relevant Background Regarding Bankruptcy Case,
            Akouete Claim, and Claim Denial Order ................................... 2

      B.    SUMMARY OF AKOUETE'S ARGUMENTS
            ON APPEAL ..................................................................... 15

      C.    SUMMARY OF THE TRUSTEE'S ARGUMENTS ............... 17

III.  STANDARD OF REVIEW ................................................. 19

IV.   ARGUMENT ...................................................................... 22

      A.    THE BANKRUPTCY COURT DID NOT "MISAPPLY"
            RULE 56 ............................................................................ 22

            1. Akouete Misstates the "Central Premise" of the Claim
            Denial Order ................................................................................ 23

                  a. Ms. Scholes Resigned from all B&B Entities in
                  2007 ............................................................................ 24

                  b. BBAS LLC Resigned as Manager of the Debtor
                  in 2011 ........................................................................ 25

            2. Akouete Cannot Refute the Evidence in the Record that
            Resulted in Summary Judgment ................................................. 26

            3. The Trustee Satisfied His Burden at Summary
            Judgment ...................................................................................... 27

i

4. The Bankruptcy Court Did Not Abuse its Discretion Regarding the Order Denying Rule 56(d) Motion ............... 29

B.    THE BANKRUPTCY COURT PROPERLY RECOGNIZED THE UNDISPUTED MATERIAL FACTS IN THE RECORD ....................................................... 33

C.    AKOUETE IS MISTAKEN REGARDING DELAWRE LAW REGARDING LIMITED LIABILITY COMPANIES ..................................................................... 39

1. Delaware Law Explicitly Allows the Manager of an LLC to Resign Notwithstanding a Prohibition in the LLC Agreement ................................................................. 39

2. Akouete's Arguments regarding Corporate Merger Issues are Misplaced ........................................................... 40

D.    AKOUETE IDENTIEFIES NO GENUINE DISPUTES OF MATERIAL FACT ............................................................ 42

V.    CONCLUSION ................................................................... 47

VI.    CERTIFICATE OF COMPLIANCE ................................................. 49

VII.    CERTIFICATE OF SERVICE ........................................................ 50

ii

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Express Bank, FSB v. Askenaizer (In re Plourde)*, 418 B.R. 495,
    504 (B.A.P. 1st Cir. 2009) ................................................................ 19, 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). .................. 35

*Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir.
    1996) ................................................................................................ 28, 29

*Berliner v. Pappalardo (In re Sullivan)*, 674 F.3d 65, 68 (1st Cir.
    2012) ..................................................................................................... .20

*Braunstein v. McCabe*, 571 F.3d 108, 115 (1st Cir. 2009) ........................... 21

*Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *8 (Del. Ch. May
    7, 2008) ...................................................................................................... 41

*Gay Officers Action League v. Puerto Rico*, 274 F.3d 288, 292-93
    (1st Cir. 2001). ........................................................................................... 20

*President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, 77
    F. 4th 33, 41 (1st Cir. 2023) ................................................................ 20, 29

*Hicks v. Johnson*, 755 F. 3d 738, 743 (1st Cir. 2014). .............. 20, 28, 29, 31

*Joseph v. Lincare, Inc.*, 989 F.3d 147, 155 (1st Cir. 2021). ................... 20, 21

*P.C. Connection, Inc. v. Synygy Ltd.*, C.A. No. 2020-0869-JTL, Del.
Ch. LEXIS 2, *45-45, 2021 WL 57016, *14-15 (Del. Ch. Jan. 7,
2021) ................................................................................... 12, 34, 37, 41

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d
985, 989 (1st Cir. 1988). ........................................................................... 26

*Resolution Trust Corp. v. North Bridge Assoc.*, 22 F.3d 1198, 1203
(1st Cir. 1991) ........................................................................................... 29

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario*, 730 F.3d
23, 29 (1st Cir. 2013) ................................................................................ 26

*Tracey v. U.S. (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st Cir.
    2008) ................................................................................................ 19, 25

*United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580,
    589 (B.A.P. 9th Cir. 2007) ........................................................................ 20

*Velazques-Perez v. Developers Diversified Realty Corp.*, 753 F.3d
    265, 270 (1st Cir. 2014). ............................................................... 20

## Statutes

Bankruptcy Code (11 U.S.C.) §§ 101 - 1532 .................................................... 2

Bankruptcy Code (11 U.S.C.) § 501 ............................................................ 19

Bankruptcy Code (11 U.S.C.) § 502 ............................................................ 19

Federal Rule of Civil Procedure 56 ........................................................ 21, 23

Federal Rule of Civil Procedure 56(a) .......................................................... 19

Federal Rule of Civil Procedure 56(c)(4) ...................................................... 35

Federal Rule of Civil Procedure 56(d) .................................................... passim

Federal Rule of Civil Procedure 803(6) ........................................................ 35

Federal Rule of Civil Procedure 807 ........................................................... 35

Federal Rule of Civil Procedure 901 ........................................................... 35

Federal Rule Bankruptcy Procedure 3001(f) .................................................... 19

Federal Rule Bankruptcy Procedure 7056 ....................................................... 34

Federal Rule Bankruptcy Procedure 8015(a), (g) and (h) ....................................... 48

Federal Rule Bankruptcy Procedure 8018 ......................................................... 1

6 Del. C. § 18-209(g) .................................................................. 12, 37, 41

6 Del. C. § 18-602. ...................................................................... 18, 25, 39

## I.    INTRODUCTION

Appellee/Defendant Jonathan R. Goldsmith, Chapter 7 Trustee (the "Trustee" or "Appellee") of the bankruptcy estate ("Estate") of Westborough SPE LLC (the "Debtor"), submits this brief in response to the Appellant's Brief ("Akouete Brief") [ECF No. 18] filed by Appellant/Plaintiff Lolonyon Akouete ("Akouete" or "Appellant").[1] Pursuant to Fed. R. Bankr. P. 8018 and D. Mass. L.R. 203.8018 the Trustee has filed an Appendix herewith (the "Appendix") and all references herein to the Appendix are noted as "B-___" with a reference to the page number of the Appendix.[2]

## II.    STATEMENT OF THE CASE

### A.    BACKGROUND AND PROCEDURAL HISTORY

#### 1.    Claim Asserted by Akouete Against the Bankruptcy Estate and Disallowed by Bankruptcy Court

During the bankruptcy case, Akouete asserted a claim against the Estate in the amount of $3,146,823.50 which is noted on the Bankruptcy Court's docket as

---

[1] References to this Court's docket entries are noted by "ECF No. ___" and references to the Bankruptcy Court's docket entries are noted by "Bankr. ECF No. ___."

[2] Appellant filed multiple documents with the Appellant's Brief which failed to comply with the appendix requirements set forth in Fed. R. Bankr. P. 8018 and D. Mass. L.R. 203.8018. Therefore, Appellee has prepared and filed an Appendix herewith.

1

Claim No. 4-3 (the "Akouete Claim" or "Claim"). B-192. The Akouete Claim amends two prior claims filed by Akouete which are noted on the Bankruptcy Court's docket as Claim Nos. 4-1 and 4-2, respectively. B-152 and B-189. The Trustee objected to allowance of the Akouete Claim and, after the conclusion of discovery regarding the disputed Claim, the Bankruptcy Court fully disallowed the Akouete Claim pursuant to the Bankruptcy Court's "Memorandum of Decision and Order Regarding the Trustee's Objections to the Claims Filed by Lolonyon Akouete and Denise Edwards" dated February 17, 2026 (the "Claim Denial Order") [Bankr. ECF No. 1179]. B-2310.

Akouete appealed the Claim Denial Order.[3] B-2353.

### 2.    Relevant Background Regarding Bankruptcy Case, Akouete Claim, and Claim Denial Order.

On August 31, 2023 (the "Petition Date"), two creditors of the Debtor filed an involuntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the Unted States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). *See* Bankruptcy Case Docket (the "Docket"). B-1. On October 11, 2023, the Bankruptcy Court entered an order for relief in the case (the "Order for Relief"). B-349. On October

---

[3] Unless otherwise noted all capitalized terms used herein shall have the meanings ascribed thereto in the Claim Denial Order.

12, 2023, the United States Trustee appointed Jonathan R. Goldsmith as Chapter 7 trustee and the Trustee continues to serve as such. *See* Docket at B-4.

As noted by the Bankruptcy Court in the Claim Denial Order, the bankruptcy case is "unusual" as it "involves a 'ghost ship' business debtor" where there was "no participation by the Debtor's equity holder during [the] case" and "for many years prepetition, the Debtor [had] no active management or equity participation." *See* Claim Denial Order, p. 2. B-2311. Regarding Akouete's relationship to the Debtor, the Bankruptcy Court found that Akouete and his partner, Denise Edwards ("Edwards"),[4] were "initially strangers to the Debtor who are asset recovery specialists that discovered and pursued [unclaimed funds of the Debtor] held by the State of California []." *Id.*, p. 2. B-2311. Akouete and Edwards "were also engaged in challenging [a] tax lien foreclosure in Massachusetts" regarding real property that the Town of Westborough had taken from the Debtor

---

[4] As detailed in the Claim Denial Order, Edwards worked with Akouete to try to seize ownership and control of the Debtor through the Disputed Appointment Documents (as that term is defined, *infra* p. 9). B-2310. Edwards also filed a proof of claim in the Bankruptcy Case on a substantially similar basis as Akouete's claim. B-344. The Bankruptcy Court disallowed the Edwards claim pursuant to the Claim Denial Order. B-2310. Edwards did not appeal the Claim Denial Order. *See* Docket. B-1.

through a prepetition municipal foreclosure. *Id.*, p. 3. B-2312.[5] After Akouete and Edwards were "unable to convince the State of California of their authority to recover the unclaimed funds on behalf of the Debtor" and the Massachusetts Land Court purportedly demonstrated "extreme hostility" to Akouete's challenge to the tax lien foreclosure, two purported creditors of the Debtor filed the involuntary Chapter 7 bankruptcy case against the Debtor (the "Bankruptcy Case"). *Id.,* p. 3. B-2312.

During the Bankruptcy Case, Akouete filed multiple proof of claim forms which were based "on the premise that Akouete and Edwards were properly installed as 'managers' of the Debtor…". *Id.,* p. 3. B-2312. Further, "Akouete [claimed] that the Debtor owes him more than $3 million as a management fee" (*i.e.*, the Claim). *Id.,* p. 3. B-2312. *See* Akouete Claims 4-1, 4-2, and 4-3, inclusive of attachments thereto. B-152, B-189, and B-192.

As summarized by the Bankruptcy Court in the Claim Denial Order, the Trustee objected to the Akouete Claim and asserted, among other things, "that Akouete and Edwards were never managers of the Debtor and [they] acted

---

[5] The real property at issue was located at 231 Turnpike Road, Westborough, Massachusetts (the "Property"). The Trustee reached a settlement agreement that in part facilitated the sale of the Property, and, despite Akouete's objections, the Bankruptcy Court authorized the sale of the Property. Bankr. ECF Nos. 1037 and 1038. B-2220 and B-2238. Akouete's appeal of the Trustee's court-approved sale of the Property is also pending at the District Court before Judge Young at Case No. 26-00027-WGY (the "Sale Appeal").

4

improperly in their efforts to take over the Debtor and claim its assets for their own benefit." *Id.,* pp. 3-4. B-2212-13.[6]

On February 14, 2025, the Bankruptcy Court issued a Contested Matter Case Management Order regarding the disputed Akouete Claim and the Bankruptcy Court subsequently amended that order as necessary during the litigation of the Claim (collectively, the "Case Management Order"). Bankr. ECF Nos. 540, 595, and 646. B-2570, B-2576, and B-2578. The Case Management Order, among other things, authorized the parties to conduct discovery regarding the disputed Akouete

---

[6] On November 6, 2024 (prior to Akouete filing Claim No. 4.3), the Trustee filed the Trustee's Objection to Claims of Lolonyon Akouete (Claim Nos. 4.1 and 4.2) [Bankr. ECF No. 410] (B-425), on December 13, 2024 the Trustee filed the Objection to Claim 4 of Claimant Lolonyon Akouete (Claim No. 4.1, 4.2, and 4.3) [Bankr. ECF No. 462] (B-436) and, on February 24, 2025, the Trustee filed the Trustee's Supplement to Pending Objections to Akouete Claims [Bankr. ECF No. 544] (B-543), all of which are collectively referred to herein as the "Claim Objection."

5

Claim, established procedures for resolving discovery disputes, and set deadlines for requesting entry of summary judgment and for responses thereto.[7]

The parties engaged in discovery and, on May 30, 2025, the Trustee filed a motion for summary judgment along with extensive supporting documents which included a memorandum of law, a statement of undisputed facts, and multiple affidavits to support the undisputed material facts submitted by the Trustee (collectively, the "Trustee's Summary Judgment Materials"). *See* Bankr. ECF Nos. 736, 737, 739, 740, 741, 742, 743, 744, and 791. B-785, B-787, B-817, B-833, B-923, B-1148, B-1198, B-1206, and B-1252. The Trustee's Summary Judgment Materials included, without limitation, a Memorandum of Law in Support of Trustee's Motion for Summary Judgment (the "Trustee's Memorandum of Law") (B-787) and the Trustee's Statement of Undisputed Material Facts in Support of

---

[7] Although Akouete now repeatedly complains of an "incomplete record," during the Bankruptcy Case, Akouete actually filed and/or supplemented multiple motions seeking summary judgment allowing his claim (often seeking emergency determination of those requests) prior to the expiration of the discovery period and, in some cases, prior to the Case Management Order. *See* Docket references at Bankr. ECF Nos. 239, 496, 499, 509, 531, 535 and 546. B-421, B-451, B-488, B-492, B-526, and B-532, respectively. Akouete also sought to shorten discovery deadlines filing the "Motion for Reconsideration of Discovery Deadline Extension and Request for Expedited Determination" [Bankr. ECF No. 541]. B-539. In that motion, Akouete stated that he had "already completed discovery through subpoenas and formal discovery requests, obtaining sufficient information to resolve the Contested matter regarding claim objections." *Id.*, p. 1. B-539.

Motion for Summary Judgment (the "Trustee's SOF" or "Trustee's Statement of Facts") (B-817). The Trustee's Summary Judgment Materials also included two (2) affidavits from Walter A. Horst ("Mr. Horst") (the "Horst Aff. I" and "Horst Aff. II"), the Chief Financial Officer of Babcock & Brown Holdings, Inc. and Babcock & Brown International Pty. Ltd. and their current and former subsidiaries (collectively, "B&B" or "B&B Entities") (B-1148 and B-1198) and an affidavit from Peter L. Blaustein ("Mr. Blaustein") (the "Blaustein Aff."), the attorney-in-fact, agent, guardian, and conservator of F. Jan Balustein a/k/a Jan Blaustein Scholes ("Ms. Scholes"). B-1206.

Akouete and Edwards opposed the Trustee's request for summary judgment and filed multiple statements and other documents in connection with their oppositions (collectively, the "Akouete Opposition Documents"). *See* Bankr. ECF Nos. 469, 673, 678, 798, 660, 799, 865, 823, 846, 851, 861, 864, 900, 901, 902, and 903. B-442, B-769, B-779, B-1266, B-617, B-1314, B-1968, 1693, B-1716, B-1718, B-1739, B-1950, B-2167, B-2192, B-2198, B-2203. The Claim Denial Order sets forth in detail the pleadings and other documents included in the record and

7

considered by the Trustee, including many of the Akouete Opposition Documents. Claim Denial Order, pp. 1-2. B-2310-11.[8]

On January 22, 2026, the Bankruptcy Court conducted oral argument on the Trustee's request for summary judgment as well as Akouete's and Edwards's requests for summary judgment. The transcript of the hearing on summary judgment is included in the Trustee's Appendix filed herewith (the "Transcript"). B-2498.

On February 17, 2026, the Bankruptcy Court issued the Claim Denial Order which granted the Trustee's summary judgment motion and fully disallowed the Akouete Claim. B-2310.

In the Claim Denial Order, the Bankruptcy Court described Akouete's Claim in detail,[9] including the multiple documents attached to each version of the Claim, and noted that the basis of Akouete's Claim is that "[h]e is an authorized successor

---

[8] Notably, although the Bankruptcy Court had initially stricken certain of Akouete's and Edwards's documents from the summary judgment record, the Bankruptcy Court changed its ruling regarding those stricken documents stating in the Claim Denial Order that "notwithstanding that Edwards's filings at ECF Nos. 900, 901, 902, and 903 were stricken, I have also considered evidence in the record cited in the stricken pleadings as part of the summary judgment records." Claim Denial Order, fn. 1. B-2310-11.

[9] The Trustee also described Akouete's Claim in detail in the Trustee's Memorandum of Law, referencing the record created by the Trustee's Summary Judgment Materials throughout. B-787.

manager of [the Debtor]". *See* Claim Denial Order, pp. 10-12. B-2319-21. As explained in the Claim Denial Order, in support of their argument that they had been appointed managers of the Debtor, Akouete and Edwards necessarily rely on three documents purportedly executed by Ms. Scholes.[10] *Id.*, pp. 12-13. B-2321-22. The documents relied on by Akouete consisted of the following three documents:

    (i)    a Bill of Sale, dated November 21, 2022 purportedly signed by Ms. Scholes in the stated capacity of "President of the Debtor"[11] that purported to transfer all of the Assets of the Debtor to Akouete and Edwards (the "Bill of Sale") B-1128;

    (ii)    a Durable Power of Attorney of Babcock & Brown Parallel Member LLC ("BB Parallel") dated on or about June 23, 2023 purportedly signed by Ms. Scholes (the "POA")[12] B-1134; and

    (iii)    a "Written Consent of the Manager of Babcock and Brown Parallel Member LLC in Lieu of a Meeting" dated on or about June 23, 2023 purportedly signed by Ms. Scholes (the

---

[10]Ms. Scholes is a former executive with certain of the B&B Entities. As discussed in the Claim Denial Order and as Mr. Horst testified in his affidavits, Ms. Scholes resigned from all positions with the B&B Entities as of October 2007. Claim Denial Order, p. 16 (B-2325); Horst Aff. I, ¶ 6 (B-1148).

[11]Ms. Scholes never served "as president" of the Debtor. As the Bankruptcy Court specifically stated in the Claim Denial Order with reference to Ms. Scholes, "[t]he record is clear that at no time was she President of the Debtor. Further, Scholes was never a manager of the Debtor." Claim Denial Order, p. 29. B-2338.

[12]As the Bankruptcy Court found regarding Scholes, "Ms. Scholes never served as an officer, manager, director or employee of the Debtor." Claim Denial Order, p. 16 (B-2325); Horst Aff. I, ¶ 6 (B-1148).

"Manager Consent")[13] B-1139.

As the basis of his Claim, Akouete asserted that the Disputed Appointment Documents, coupled with certain provisions of the Debtor's Limited Liability Company Agreement (the "LLC Agreement") (B-198), resulted in Akouete and Edwards having been delegated authority to act as "manager of Debtor" and, as manager of the Debtor, Akouete was entitled to award himself a $3.1 million claim. *See* Claim Denial Order, pp. 12-13. B-2321-22.

The Trustee has consistently referred to the Bill of Sale, POA and Manager Consent as the "Disputed Appointment Documents" because the Trustee has consistently disputed that those documents had the effect (or could have had the effect) of appointing Akouete and Edwards as manager of the Debtor.[14] In the Claim Denial Order, the Bankruptcy Court agreed with the Trustee's assessment of those documents. *See* B-2310.

As noted by the Bankruptcy Court in the Claim Denial Order, Akouete's theory shifted during the Bankruptcy Case regarding the Disputed Appointment Documents. Akouete initially contended that "in June 2023 BB Parallel was the

[13]As previously noted "Ms. Scholes never served as an officer, manager, director or employee of the Debtor." Claim Denial Order, p. 16. B-2325; citing to the Horst Aff. I, ¶ 6. B-1148.

[14]Among other places, the Trustee discusses and explains the deficiencies in the Disputed Appointment Documents in the Trustee's Memorandum of Law, pp. 6-7 and 11-21 [Bankr. ECF No. 737]. B-787.

10

manager of the Debtor and that Scholes, acting for BB Parallel, appointed

[Akouete and Edwards] as manager of the Debtor pursuant to the LLC Agreement

by the POA and the Manager consent." *Id.*, p. 13. B-2322. Akouete subsequently

changed his theory and argued that "his and Edward's authority as managers is

actually derived from Scholes acting in 2023 on behalf of the original manager of

the Debtor." *Id.*, p. 13. B-2322. As the Trustee argued, and as the Bankruptcy

Court found, both of Akouete's theories were flawed and neither theory resulted in

Akouete having been duly appointed as the manager of the Debtor.

As the Trustee explained and documented in the Summary Judgment

Materials, the material undisputed facts demonstrated that:

    i.    Ms. Scholes was <u>never</u> BB Parallel's authorized agent and had no authority to execute the POA and the Manager Consent. As a result, she never had authority to act for BB Parallel and the POA and the Member Consent have no legal effect (*See*, Horst Aff. I, ¶¶ 6, 10, 11, 12, and 13) (B-1148);

    ii.    BB Parallel's predecessor entity (Babcock & Brown Administrative Services, LLC, successor to Babcock & Brown Administrative Services, Inc.)[15] had resigned its role as manager of the Debtor in 2011, approximately twelve (12) years prior to the dates on the Disputed Appointment Documents (*See*, Horst Aff. I, ¶¶ 7 and 8) (B-1148). As a result, even if Ms. Scholes's had any authority (she did

---

[15] The Claim Denial Order at pages 13-15 explains the corporate history of the Brown & Babcock entities (the "<u>B&B Entities</u>") and, at pages 15-17, explains Ms. Scholes's connection with the B&B Entities, including her resignation from all B&B Entities in 2007, with the Bankruptcy Court citing to the material undisputed facts in the summary judgment record. B-2322-26. The Trustee's Memorandum of Law also documents Ms. Scholes's lack of authority regarding BB Parallel and BBAS's resignation as manager of the Debtor. B-787.

not), the POA and Member Consent *still* would be of no legal effect because BB Parallel's predecessor entity had resigned its role as manager of the Debtor long prior to the day on which they were purportedly executed.

Further, as the Bankruptcy Court explained in the Claim Denial Order, in response to Akouete's newer theory that that BBAS Inc. did not properly merge into BB Parallel, that therefore BBAS Inc. remains the manager of the Debtor, and that somehow Ms. Scholes remains authorized to act on behalf of BBAS Inc. (despite her resignation, her retirement, medical issues including a stroke, and guardianship/conservatorship proceedings):

> These arguments are speculative, not persuasive, and directly conflict with the evidence in the summary judgment record and Delaware law. When BBAS LLC (the successor by conversion to BBAS, Inc.) merged with BB Parallel, BBAS LLC ceased to exist and any position held by Scholes in BBAS LLC or BBAS Inc. would have terminated by operation of law. *See* 6 Del. C. § 18-209(g); *see also P.C. Connection, Inc. v. Synygy Ltd.*, C.A. No. 2020-0869-JTL, 2021 WL 57016, *14-15 (Del. Ch. Jan. 7, 2021). This would be the legal effect of the merger, even if Scholes had not resigned in 2007.

Claim Denial Order, p. 22. B-2331.

In sum, when each of the Disputed Appointment Documents was purportedly executed, Ms. Scholes had no power or authority to act for the Debtor (regarding the Bill of Sale), or to act for BB Parallel (regarding the POA and the Manager Consent). Further, when the Disputed Appointment Documents were purportedly executed, BB Parallel had no power or authority to act for the Debtor

12

in any capacity because its predecessor had resigned as the Debtor's manager in 2011. Horst Aff. I. B-1148.

Although not relied upon by the Bankruptcy Court and not the basis of the Claim Denial Order, the Trustee also placed undisputed evidence into the record that, long prior to executing any of the Disputed Appointment Documents, Ms. Scholes had been determined to be a "protected person," subject to a guardianship and conservatorship established by a Hawaii Circuit Court naming her son, Mr. Blaustein, as her guardian and conservator.[16] Further, the summary judgment record shows that Akouete knew of the guardianship and conservatorship and knew she resided in an assisted living facility. *See* Claim Denial Order, pp. 16-17 and 25-26. B-2325-26 and B-2334-35. Akouete acknowledged in an email exchange regarding the Bill of Sale that "I now understand that the Bill of Sale is invalid because Jan is incapacitated. It is a private document, and I guess it will become part of all the other documents that were lost . . . However, we got what we needed to get done: Revive the LLC and take charge of the management." *See* Claim Denial Order, pp. 25-26 (B-2334-35); *see also* Bankr. ECF No. 741-8, Ex. H, p. 7. B-1098. Akouete further stated "Jan is incapacitated, and Peter is not in a good position to make decisions for the LLC, which they have demonstrated by neglecting the assets of the LLC up to this point." *Id*. B-1098.

---

[16] *See* Trustee's Memorandum of Law, pp. 21-28. B-787.

13

On January 15, 2026, approximately nine (9) months after discovery had concluded regarding the disputed Akouete Claim, Akouete filed an emergency motion for relief under Fed. R. Civ. P. 56(d) [Bankr. ECF No. 1083] (the "Rule 56(d) Motion"). B-2243. The Rule 56(d) Motion requested authority to conduct discovery regarding Akouete's disputed Claim long after all discovery deadlines had passed, after the summary judgment record was complete, and while cross summary judgment motions were pending. The Trustee objected to the Rule 56(d) Motion [Bankr. ECF No. 1095] (the "Objection to Rule 56(d) Motion"). B-2284. On February 4, 2026, the Bankruptcy Court issued an order denying the Rule 56(d) Motion [Bankr. ECF No. 1139] (the "Order Denying Rule 56(d) Motion"). B-2309. Although the Order Denying Rule 56(d) Motion is interlocutory and Akouete failed to obtain relief to file an interlocutory appeal, Akouete separately appealed the Order Denying Rule 56(d) Motion which appeal is pending before Judge Young at U.S. District Court, Case No. 26-10888-WGY (the "Interlocutory Discovery Appeal"). The Interlocutory Discovery Appeal is fully briefed with a hearing scheduled for May 27, 2026 before Judge Young.[17]

---

[17] In the Interlocutory Discovery Appeal, Akouete also appealed the Bankruptcy Court's denial of Akouete's motion seeking authority to conduct examinations pursuant to Fed. R. Bankr. P. 2004 (the "Rule 2004 Request") [Bankr. ECF No. 1090]. B-2257. The Bankruptcy Court's Order Denying Rule 56(d) Motion also denies the Rule 2004 Request. B-2309.

14

### B.   SUMMARY OF AKOUETE'S ARGUMENTS ON APPEAL.

In this appeal, Akouete essentially declines to address the basis of the Bankruptcy Court's Claim Denial Order.[18] Instead, Akouete argues in various ways that, prior to considering the glaring legal deficiencies that underlie Akouete's Claim, the Bankruptcy Court should have engaged in some sort of forensic analysis regarding the entire history of the management of the Debtor dating back to a period long prior to the Disputed Appointment Documents.[19]

First, Akouete argues that the Bankruptcy Court "misapplied" Rule 56(d). Akouete Brief, pp. 19-27. Akouete, however, points to no possible information, documentation, or theory that could possibly overcome the fatal flaws of his Claim (*i.e.*, that no one with authority to do so appointed him to do anything for the

---

[18]The Claim Denial Order provides that Akouete's claim must be disallowed because, *inter alia*, (i) the documents upon which Akouete relies (i.e., the Disputed Appointment Documents) were unauthorized and (ii) even had they been properly authorized, the documents themselves are insufficient on their face to have resulted in Akouete's appointment as manager of the Debtor.

[19]Although not otherwise discussed in the Akouete Brief, in the "Statement of the Case" and "Summary of the Argument" sections of the brief, Akouete references his motion currently pending before the Bankruptcy Court seeking relief from the Claim Denial Order pursuant to Fed. R. Civ. P. 60(b)(3) and 60(b)(6) and which he claims is based on, among other things, "discovery misconduct." *See* Akouete Brief, p. 16-18. Akouete alleges no instances of "discovery misconduct" *by the Trustee* as Akouete's allegations concern third-party subpoenas. To be clear, however, the Trustee disputes the relevance of the information purportedly sought by Akouete for the reasons briefed by the Trustee herein and, once the Bankruptcy Court sets a deadline to do so, the Trustee will object to the motion.

15

Debtor).

Second, Akouete argues that the Bankruptcy Court "improperly weighed evidence". Akouete Brief, pp. 27-37. As discussed below, the Trustee proffered substantial evidence that no one with authority appointed Akouete as manager of the Debtor. Akouete proffered no evidence to rebut the evidence placed into the record by the Trustee.[20] Despite Akouete's attempt to deflect from his lack of authority, there is no issue of "improperly weighing evidence", the issue is that Akouete can point to no evidence to contradict that which the Trustee has placed into the summary judgment record.

Third, Akouete argues that the Bankruptcy Court "misapplied Delaware law" regarding "transfers of managerial authority." Akouete Brief, pp. 37-58. In sum, Akouete attempts to manufacture legal theories which simply do not exist.

Finally, Akouete argues that the existence of material disputed facts precluded summary judgment. Akouete Brief, pp. 58-65. Akouete, however, points to no genuine dispute regarding any material facts. Instead, Akouete attempts to distract the Court with (i) irrelevant facts that (whether true or not) would not save Akouete's faulty claim and (ii) facts which Akouete cannot demonstrate are in genuine dispute.

---

[20]*See generally*, the Trustee's Summary Judgment Materials. B-785 through B-1206.

16

## C.    SUMMARY OF THE TRUSTEE'S ARGUMENTS.

Akouete and his partner Edwards are asset recovery specialists who happened upon the Debtor after the Debtor's manager (a B&B Entity) had resigned. Having no connection to the Debtor or to any B&B Entity, but sensing opportunity, Akouete and Edwards attempted to first acquire the Debtor by having a long-retired former officer of the former manager of the Debtor "sell" the Debtor itself to Akouete for an upfront payment of $100.[21] Then, after determining that the Bill of Sale was invalid[22] and that the long-retired former officer of the former manager of the Debtor was "incapacitated",[23] Akouete and Edwards still attempted to insert themselves into the role of manager of the Debtor through the POA and the Member Consent.

As argued by the Trustee in the Trustee's Summary Judgment Materials and found by the Bankruptcy Court in the Claim Denial Order, Akouete's Claim is invalid because, among other reasons, the documents upon which Akouete relies (*i.e.*, the Disputed Appointment Documents) are unauthorized and invalid for multiple reasons fully documented in the Trustee's Summary Judgment Materials.

---

[21]*See* Bill of Sale. B-1128.

[22] *See* Claim Denial Order, pp. 25-26 (B-2334-35); *see also* Bankr. ECF No. 741-8, Ex. H, p. 7. B-1098.

[23] *Id.*

17

Further, even if the Disputed Appointment Documents were valid and authorized, they are insufficient on their face to have resulted in Akouete's appointment as manager of the Debtor. *See* Claim Denial Order, pp. 28-31. B-2337-40. As discussed in more detail below, the Trustee provided substantial undisputed evidence that, among other things, (i) Ms. Scholes had no authority to act for BB Parallel and (ii) BB Parallel's predecessor entity had resigned as the Debtor's manager long before the dates on the Disputed Appointment Documents.

Tellingly, Akouete spends virtually no time at all in his appeal brief before this Court addressing the glaring deficiencies in the Disputed Appointment Documents. In the few instances where Akouete even mentions the Disputed Appointment Documents in his brief, he points to no evidence in the record to refute the overwhelming evidence in the record that Ms. Scholes had no authority to act for any B&B Entity and that BB Parallel's predecessor had resigned as manager. As he did during the hearing on summary judgment, Akouete primarily makes irrelevant and convoluted arguments regarding Delaware corporate law that, even if true, would *still* not result in an allowable claim because, as the Bankruptcy Court explains in detail, "the Disputed Appointment Documents cannot be reasonably read to have authorized Akouete or Edwards to act as, or on behalf of, a

18

manager of the Debtor." Claim Denial Order, pp. 28-31. B-2337-40.[24]

## III.   **STANDARD OF REVIEW**

This appeal challenges the Bankruptcy Court's order granting summary judgment in favor of the Trustee regarding the Trustee's objection to the Akouete Claim. The Bankruptcy Court correctly set forth the burdens of proof regarding proofs of claim and objections thereto as follows:

> The filing of a proof of claim and the allowance of such claim are governed by 11 U.S.C. §§ 501 and 502. "A proof of claim signed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). "In order to rebut the prima facie evidence a proper proof of claim provides, the objecting party must produce 'substantial evidence' in opposition to it." *Am. Express Bank, FSB v. Askenaizer (In re Plourde)*, 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009) (citations omitted)). If the evidence proffered by the objecting party is substantial, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *See Tracey v. U.S. (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (citation omitted). As will be discussed in detail below, the Trustee has proffered substantial evidence in support of the Objection rebutting the presumption, shifting the burden of proof back to Akouete and Edwards.

Claim Denial Order, p. 6. B-2315.

---

[24] Of note, the Bankruptcy Court in the Claim Denial Order addressed some of Akouete's arguments regarding the effect of Delaware law and pointed out that Akouete's interpretation of 6 Del. Code § 18-602 is flawed as this code section actually "undercuts" Akouete's arguments. Claim Denial Order, pp. 21-23. B-2330-32.

19

This Court reviews the Bankruptcy Court's entry of summary judgment in the Trustee's favor *de novo*, with summary judgment appropriate where the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Ocasio-Hernandez v. Fortuno-Burset*, 777 F.3d 1, 4 (1st Cir. 2015) (citing Rule 56(a) of the Federal Rules of Civil Procedure). A dispute is genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Id.* (citing *Velazques-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 270 (1st Cir. 2014). Importantly, however, "conclusory allegations, improbable inferences, and unsupported speculation[] are insufficient to establish a genuine dispute of fact." *Id.* (citation and quotations omitted).

Evidentiary rulings made as part of the Bankruptcy Court's summary judgment decision are reviewed for abuse of discretion. *See Joseph v. Lincare, Inc.*, 989 F.3d 147, 155 (1st Cir. 2021) (internal citation omitted). The denial of a Rule 56(d) motion is also reviewed for abuse of discretion. *President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, 77 F. 4th 33, 41 (1st Cir. 2023) (*citing Hicks v. Johnson*, 75 F.3d 738, 743 (1st Cir. 2014). A court "is entitled to refuse a Rule 56(d) motion if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplementary discovery." *Hicks v. Johnson*, 75 F.3d at 743. As the First Circuit has noted in the context of a challenge

20

to an award of fees, "[t]he abuse of discretion standard is quite deferential." *Berliner v. Pappalardo (In re Sullivan)*, 674 F.3d 65, 68 (1st Cir. 2012), citing *Gay Officers Action League v. Puerto Rico*, 274 F.3d 288, 292-93 (1st Cir. 2001). Further, "abuse of discretion" results when judicial action is "arbitrary, fanciful" or so unreasonable that "no reasonable man or woman" would take the view adopted by the Bankruptcy Court. *United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 589 (B.A.P. 9th Cir. 2007). Of course, "it does not preclude an appellate court's correction of a district court's legal or factual error: A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Joseph v. Lincare, Inc.*, 989 F.3d at 155 (internal citations and quotations omitted).

Legal questions are reviewed "de novo". *Braunstein v. McCabe*, 571 F.3d 108, 115 (1st Cir. 2009). Although Akouete states at various points in the Akouete Brief that "legal error" has occurred or that there has been a misapplication of the "correct legal standard," Akouete points to no actual legal error by the Bankruptcy Court.

## IV.    ARGUMENT.

### A.    THE BANKRUPTCY COURT DID NOT "MISAPPLY" RULE 56.

In Section I of the Akouete Brief, Akouete argues that the Bankruptcy Court "misapplied Rule 56" by "converting an incomplete record into dispositive proof." Akouete Brief, p. 19. Actually, the Trustee placed into the record material facts that demonstrate, without genuine dispute, that Akouete does not hold an allowable claim against the Debtor. As the Bankruptcy Court describes in the Claim Denial Order (citing extensively to the summary judgment record), the basis of the Akouete Claim is that "[h]e is an authorized successor manager of [the Debtor]" and "Akouete references the POA, LLC Agreement, and Manager Consent as the basis for his appointment as manager of the Debtor." p. 11. B-2320. The Bankruptcy Court also notes in the Claim Denial Order (p.11, B-2320) that:

> In the Claim 4-3 Narrative, Akouete asserts the following:
>
> Under Section 1(g) of the Westborough SPE LLC Operating Agreement, a Manager is expressly permitted to delegate their powers ad duties to any person or entity through a written instrument. This authority was exercised via a Durable Power of Attorney by F. Jan Blaustein, granting me the managerial authority over the Company.
>
> *See* Claim Denial Order, p. 11. B-2320.

Akouete's claim that pursuant to the LLC Agreement the existing manager of the Debtor delegated to Akouete the powers and duties of the manager the

22

Debtor by executing the POA and the Manager Consent. In the Summary Judgment Materials, the Trustee provided clear, unrefuted evidence that (i) Ms. Sholes held no authority for any B&B Entity when she purportedly executed the POA and Manager Consent (*see* Bankr. ECF No. 742, Horst Aff. I ¶ 6, B-1148), (ii) Ms. Sholes never held any authority for BB Parallel, at any time (*see id.*, B-1148), (iii) as of the dates on the POA and Manager Consent, BB Parallel was not the manager of the Debtor and, therefore, could delegate nothing to (*see* Claim Denial Order, p. 26, citing to Horst's Deposition; B-2335), and (iv) when she purportedly executed the POA and Manager Consent, Ms. Scholes was subject to a guardianship/conservatorship and her guardian did not authorize her execution of the POA and Manager Consent (*see* Bankr. ECF No. 744, Blaustein Aff. ¶ 3 and 13). B-1206.

In opposition to the Trustee's Summary Judgment Materials, Akouete produced no evidence to rebut any of the evidence listed above.

### 1.    Akouete Misstates the "Central Premise" of the Claim Denial Order.

Making the argument that the Bankruptcy Court "misapplied Rule 56" Akouete states that "[t]he Bankruptcy Court's ruling rests on a central premise: that no evidence existed demonstrating continued administrative, financial, or

operational involvement by Babcock & Brown entities after 2011." Akouete Brief, p. 20. That statement is simply untrue.

a. <u>Ms. Scholes Resigned from all B&B Entities in 2007.</u>

In reality, the Bankruptcy Court found that "[n]o evidence in the record demonstrates or supports any reasonable inference that Scholes was a manger of BB Parallel or had any authority at any time to act on behalf of BB Parallel." Claim Denial Order, p. 18. B-2327. In the Claim Denial Order, the Bankruptcy Court cites to the "uncontroverted statements" in the record from Mr. Horst. Claim Denial Order, p. 18. B-2327. The Bankruptcy Court cites to the "written consent of the sole member of BBAS LLC reciting that Scholes resigned as an officer of that LLC as of October 1, 2007 and a resolution appointing a successor President." Claim Denial Order, p. 18. B-2327.

After detailing the many, many reasons why the summary judgment record clearly demonstrated that Ms. Scholes had no authority to execute the Disputed Appointment Documents (Claim Denial Order, pp. 18-26, B-2327-35), the Bankruptcy Court states that "Akouete and Edwards have not met their burden of proving a fundamental element of their claims by presenting any substantial evidence that could support a finding that Scholes had authority to appoint them as managers of the Debtor in 2022 or 2023." Claim Denial Order, pp. 26. B-2335. **That** is a "central premise" of the Claim Denial Order. Without more, the Akouete

24

Claim was properly disallowed. There is simply no genuine dispute as to the material fact that Ms. Scholes lacked authority to appoint Akouete as manager of the Debtor.

      b.   BBAS LLC Resigned as Manager of the Debtor in 2011.

Akouete similarly ignores that the Bankruptcy Court found that with respect to the Debtor having a manager as of May 2011, "[t]he only conclusion is the Debtor had no manager as of May 2011, whether as a result of BB Parallel having the right to resign when it lost contact with the member of the Debtor and it took steps to do that or, as Akouete has argued, BB Parallel ceased acting as manager of the Debtor in 2011." Claim Denial Order, p. 26. B-2335. The Bankruptcy Court also notes that the "uncontroverted testimony of Horst who sent the notice of resignation, was that his understanding as CFO of B&B was that the notice of resignation 'fully terminated all of Babcock & Brown's obligations to [the Debtor.]'" Claim Denial Order, p. 26, citing to Horst's Deposition. B-2335. Further, as discussed in more detail below and as explained by the Bankruptcy Court in the Claim Denial Order, resignation of a manager is permitted under Delaware law, even if the operating agreement prohibits resignation. *See* 6 Del. C. § 18-602.

25

### 2.  Akouete Cannot Refute the Evidence in the Record that Resulted in Summary Judgment.

Akouete complains that the record was "materially incomplete" (Akouete Brief, p. 22) and "constrained" (Akouete Brief, p. 23). As noted previously, once a party objects to a proof of claim and produces "substantial evidence" in opposition to it, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *See Am. Express Bank, FSB v. Askenaizer (In re Plourde)*, 418 B.R. at 504; *see also Tracey v. U.S. (In re Tracey)*, 394 B.R. at 639. The Bankruptcy Court found (and the summary judgment record overwhelmingly supports) that the Trustee proffered substantial evidence in support of the Claim Objection which shifted the burden to Akouete to demonstrate that facts exist that could result in an allowable Claim. As noted above, the Trustee provided direct evidence through sworn testimony (i) that Ms. Scholes had no authority to execute the Disputed Appointment Documents and (ii) that BBAS LLC resigned as manager of the Debtor in 2011. Akouete, however, has provided no evidence to demonstrate that he can carry his burden regarding his purported appointment as manager.

Further, the "factual development directed to governance, authority and control" that Akouete now argues he requires is not probative of the fact that Ms. Scholes resigned from all B&B Entities in 2007, or that BBAS LLC resigned as manager of the Debtor in 2011, or that Ms. Scholes was subject to a guardianship and conservatorship (which was well known to Akouete).

26

Finally, Akouete had the opportunity to conduct discovery and seek through discovery information to attempt to refute the Trustee's objections. The Trustee laid out the basis of his objections clearly and in significant detail in the Claim Objections. *See* Bankr. ECF Nos. 410, 462, and 544. B-425, B-436, and B-543. The Bankruptcy Court provided Akouete with the opportunity to conduct discovery regarding his Claim. *See* Case Management Order. B-2570, B-2576, B-2578.  Akouete's failure to conduct discovery during the discovery period which Akouete now argues is necessary to respond to the Trustee's Claim Objections, is not a legitimate basis for appeal. *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario*, 730 F.3d 23, 29 (1st Cir. 2013) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir. 1988)) ("Although a district court should generally apply Rule [56(d)] liberally, the court need not employ the rule to spare litigants from their own lack of diligence."). Notably, during the discovery period, Akouete repeatedly filed his own motions for summary judgment and also argued for the discovery period to be shortened. *See* Bankr. ECF Nos. 239, 496, 499, 509, 531, 535, 541, and 546. B-421, B-451, B-488, B-492, B-526, and B-532, respectively.

### 3.  **The Trustee Satisfied His Burden at Summary Judgment.**

Akouete incorrectly states that the Bankruptcy Court "improperly shifted the summary judgment burden." Akouete Brief, p. 25-26. Actually, the Bankruptcy

Court properly laid out the burdens on the parties and properly applied those burdens throughout its analysis.

The Claim Denial Order makes clear that there is simply no genuine dispute regarding Ms. Scholes's lack of authority to act for BB Parallel or for any B&B Entity. *See* Claim Denial Order, p. 18. B-2327. The evidence in the record is overwhelming on that point and Akouete points to no evidence that could rebut Ms. Scholes's resignation in 2007. *See Id.*, B-2327; *see also* ECF No. 799, Akouete Aff., App. A, Ex. 12, Horst. Depo. 32:6-33:6, B-1494-95; *see also* Bankr. ECF No. 742, Horst. Aff. I ¶¶ 1, 6, B-1148. Further, there is no genuine dispute regarding BBAS's resignation as manager of the Debtor and Akouete points to no evidence that could rebut BBAS's resignation. *See* Claim Denial Order, p. 15. B-2324. Each of those undisputed facts independently demonstrates that the Disputed Appointment Documents did not result in Akouete becoming manager of the Debtor. Akouete points to no evidence in the record that could possibly place those

28

material facts in genuine dispute. As such, the Trustee met his burden at summary judgment.[25]

In sum, the Bankruptcy Court properly applied the relevant burdens regarding objections to proof of claims and summary judgment and Akouete's complaints regarding "burden shifting" are wholly without merit.

### 4.  The Bankruptcy Court Did Not Abuse Its Discretion Regarding the Order Denying Rule 56(d) Motion.

The Bankruptcy Court's Order Denying Rule 56(d) Motion was a proper exercise of its discretion and nothing in the Appellant's Brief illustrates an abuse of discretion. It is well established in the First Circuit that relief under Rule 56(d) "is not to be granted as a matter of course." *Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014), *citing Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996). Further, this Circuit has ruled that use of Rule 56(d) (formerly Rule 56(f)) "requires due diligence *both* in pursuing discovery *before* the summary judgment initiative surfaces *and* in pursuing an extension of time thereafter. In other words, Rule 56[d] is designed to minister to the vigilant, not to those who

---

[25] In addition, although not the basis of the Claim Denial Order, there is also no genuine dispute regarding the existence of Ms. Scholes's conservatorship/guardianship as of 2019. There is no genuine dispute regarding the fact that Akouete's knew of the conservatorship/guardianship prior to presenting her with the POA and the Member Consent. There is no genuine dispute that Ms. Scholes's conservator/guardian (i.e., Mr. Blaustein) did not authorize Ms. Scholes to execute the Disputed Appointment Documents. *See* Trustee's Memorandum of Law, pp. 21-28. B-807-815.

29

slumber upon perceptible rights." *Ayala-Gerena*, 95 F.3d at 92, *citing Resolution Trust Corp. v. North Bridge Assoc.*, 22 F.3d 1198, 1203 (1st Cir. 1991). In addition, the First Circuit instructs that,

> [t]o benefit from the protections of Rule 56[d], a litigant ordinarily must furnish the *nisi prius* court with a timely statement -- if not by affidavit, then in some other authoritative manner -- that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

*Hicks v. Johnson*, 755 F. 3d at 743 (1st Cir. 2014) (emphasis added) (internal citations omitted).

Further, a Bankruptcy Court is "entitled to refuse a Rule 56(d) motion if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplemental discovery." *President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, 77 F. 4th 33, 41 (1st Cir. 2023), *citing Hicks v. Johnson*, 755 F.3d at 743.

The Order Denying Rule 56(d) Motion is quite clear that the Bankruptcy Court considered the standard under Rule 56(d) and determined that Akouete failed to meet the standard. B-2309. The Bankruptcy Court specifically noted as a basis for the order that (i) discovery closed in April of 2025 (i.e., approximately nine (9) months prior), (ii) Akouete "filed a motion for summary judgment and did not seek any extension of the deadline prior to the closing of the summary judgment

30

record", (iii) the information sought by Akouete as "possibly existing would have been available during the discovery period", (iv) the information sought Akouete "may have only tangential relevance, which would have been known during the discovery period", and (v) the supplemental discovery sought by Akouete was "unlikely to garner useful evidence in considering summary judgment motions under advisement." B-2309. These are the precise factors that the First Circuit instructs a finder of fact to weigh when making a decision under Rule 56(d) and it is clear from the Order Denying Rule 56(d) Motion that the Bankruptcy Court did so.

Further, in the Order Denying Rule 56(d) Motion, the Bankruptcy Court specifically acknowledged that in the Trustee's opposition, the Trustee had set out the precise reasons why Akouete's request was "unlikely to garner useful evidence" and the Bankruptcy Court referenced and found persuasive the following arguments made by the Trustee in ¶¶12 – 15 of his objection:

> First, Mignonette has no relevance to the Disputed Appointment Documents. Mignonette is not mentioned in the Disputed Appointment Documents, no one executed the Disputed Appointment Documents on behalf of Mignonette, and any documents signed by Mignonette (for taxing authorities or otherwise) are not relevant to the Disputed Appointment Documents. Mignonette's tax documents are not relevant to Ms. Scholes' resignation from all of the B&B Entities, or to the resignation of BBAS as manager of the Debtor, or to Ms. Scholes' lack of capacity due to the guardianship/conservatorship established in 2019. As such, information in the possession of the IRS regarding Mignonette is not likely to "garner useful evidence" and discovery should not be reopened in the Contested

31

Matter for that purpose.

Second, the Disputed Appointment Documents are dated November of 2022 *or later*. Akouete now seeks dated and historical information regarding initial submissions made by the Debtor to the IRS (i.e. Form SS-4) as well as Forms 8822-B (change of address or responsible party forms), and "any IRS material transcript reflecting responsible party designation and effective dates, to the extent customarily maintained)". Whether Ms. Scholes signed any SS-4 in 1997 is certainly not relevant to whether Ms. Scholes had authority to act for BB Parallel in 2023 (as the Disputed Appointment Documents purport to do). Whether the Debtor subsequently changed its address or otherwise updated the information provided on the original Form SS-4 is not relevant to the Disputed Authority Documents or to the other arguments made by the Trustee in the Summary Judgment Materials. The date of the Debtor's Form SS-4 necessarily pre-dates Ms. Scholes' resignation from all of the B&B Entities (in 2007), pre-dates the resignation of BBAS as manager of the Debtor (in 2011), and pre-dates the guardianship/conservatorship established over Ms. Scholes (in 2019). As such, information in the possession of the IRS regarding Mignonette is not likely to "garner useful evidence" and discovery should not be reopened in the Contested Matter for that purpose. Further, Forms 8822-B (change of address or responsible party forms), and "any IRS material transcript reflecting responsible party designation and effective dates, to the extent customarily maintained)" are similarly not relevant to the arguments made by the Trustee at summary judgment.

Third, Akouete's purported basis for seeking documents from the MDOR is based on records attached to the Second Rule 56(d) Motion all of which are dated between 1999 and 2004. Again, those records pre-date Ms. Scholes' resignation from all of the B&B Entities. Those records pre-date the resignation of BBAS as manager of the Debtor. Further, those records will not "garner useful evidence" as to Ms. Scholes' purported execution of the Disputed Appointment Documents *on behalf of BB Parallel.*

Fourth, the declarations submitted by Akouete are insufficient because (without limitation) they fail to indicate "how those facts would influence the outcome of the pending summary judgment motion." *See Hicks v. Johnson*, 755 F. 3d at 743. Although Akouete attached declarations to the Rule 56(d) Motions, the declarations fail to demonstrate the relevance of the information sought. The information sought would have no relevance to BB

32

Parallel, the entity which purportedly delegated authority to Akouete to manage the Debtor. Nothing in the declarations has any tie to BB Parallel. Further, upon Ms. Scholes' resignation from all B&B Entities, the Debtor may have been required to file a Form 8822-B, but in the event that the Debtor failed to do so, the Debtor's failure would not result in continuing authority for Ms. Scholes to act for the Debtor (or for any other entity from which she resigned).

*See* Order Denying Rule 56(d) Motion, incorporating the Trustee's Objection to Rule 56(d) Motion. B-2309 and B-2284.

In the Appellant's Brief, Akouete points to no reason why the information he purportedly seeks will "garner useful evidence" regarding the Disputed Appointment Documents, or regarding the issues that the Trustee raised in his summary judgment papers. Akouete similarly provides no rationale for failing to pursue the discovery during the discovery period or for failing to seek to extend the discovery period.

In sum, the Bankruptcy Court did not "misapply Rule 56(d)" at any juncture regarding the resolution of Akouete's Claim.

## B. THE BANKRUPTCY COURT PROPERLY RECOGNIZED THE UNDISPUTED MATERIAL FACTS IN THE RECORD.

In Section II of the Akouete Brief (pp. 27-37), Akouete claims that the Bankruptcy Court (i) improperly weighed evidence in the summary judgment record, (ii) credited "one narrative over another", and (iii) resolved disputed factual issues in favor of the Trustee. Akouete again ignores that the Trustee placed into

the summary judgment record documents supported by affidavits of individuals with knowledge which demonstrated that Ms. Scholes resigned from all B&B Entities in 2007 and that BBAS LLC resigned as manager of the Debtor in 2011. In contrast, Akouete placed no documents into the record supported by affidavits of individuals with knowledge that would refute the fact that Ms. Scholes resigned from all B&B Entities in 2007. Similarly, Akouete placed no documents into the record supported by affidavits of individuals with knowledge that would refute the fact that BBAS LLC resigned as manager of the Debtor in 2011. To be clear, _Akouete himself_ essentially argues that he _personally_ disputes that Ms. Scholes resigned from the B&B Entities and that he _personally_ disputes that BBAS LLC resigned as manager of the Debtor. Akouete has termed his personal rejection of those undisputed material facts as his "narrative" which is contrary to what he considers the Trustee's "narrative." _See_ Akouete Brief, pp. 27-37.

Actually, as part of the Trustee's Summary Judgment Materials, the Trustee submitted into the record the Trustee's Statement of Undisputed Facts which included affidavits, public records, deposition transcripts, and other documents supported by affidavits of individuals with knowledge of the relevant facts. _See_ Trustee's SOF. B-817. Akouete, however, failed to provide or cite to evidence in the record which could place into dispute the relevant facts set forth in the

34

Trustee's Statement of Undisputed Facts. In that regard, the Bankruptcy Court

specifically notes as follows:

> Akouete filed affidavits, documents, and deposition transcripts in
> support of his positions, but at times did not cite to specific evidence
> in responding to statements of material fact the Trustee asserted were
> not subject to dispute. In his responses to the Trustee's Statements of
> Undisputed Material Fact, Akouete frequently stated that the
> statements were both disputed and undisputed. The "dispute" was
> frequently not as to the factual statement, itself, that the Trustee
> asserted was undisputed and supported in the record, but rather
> consisted of argument as to the weight to be given to evidence or the
> legal significance of the fact. He often did not cite specific evidence in
> the record that raised a substantial dispute as to the stated fact.[5]
>
>> [5]Akouete's response to the Trustee's Statement of Undisputed Material
>> Fact that "certain creditors filed an involuntary bankruptcy petition"
>> on a specified date is illustrative of many responses that do not rise to
>> the level of an actual supported factual dispute. Akouete responded:
>> "Undisputed in part, disputed in part. It is undisputed that an
>> involuntary petition under Chapter 7 was filed on August 31, 2023.
>> However, the characterization that 'certain creditors' filed the petition
>> omits that only two creditors (Nathanson & Goldberg, P.C. and
>> MobileStreet Trust) initiated the case, which is material to the
>> contested issues. The legitimacy, motivation, and consent surrounding
>> the filing are disputed." ECF No. 798, ¶ 1. Akouete's broad reference
>> to motivations and omissions do not rise to an actual dispute of the
>> statement of material fact that is supported by the record.

Claim Denial Order, p. 7 (including fn. 5). B-2316.

Put simply, Akouete's desired "narrative" is not evidence that points to a

"genuine dispute" regarding a "material fact", which is required by Fed. R. Bankr.

P. 7056. Akouete's "narrative" is certainly not evidence that refutes the Trustee's

well-supported Statement of Facts. For example, Akouete points to nothing in the

record that would place the fact of Ms. Scholes's resignation into dispute (other

than Akouete's desire that it not be so). Akouete points to nothing in the record that would place the fact of BBAS LLC's resignation into dispute (other than Akouete's desire that it not be so). Akouete's desire for a different set of undisputed facts does not result in a "genuine dispute" that can survive summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial") (internal citations and footnotes omitted).

Further, although Akouete complains that the Bankruptcy Court credited Mr. Horst's Affidavits (Akouete Brief, p. 28-29), it is clear from the Claim Denial Order that the Bankruptcy Court considered and addressed Akouete's objections in the Claim Denial Order. *See* Claim Denial Order, p. 19-20. B-2328-29. After reviewing Mr. Horst's capacity with the B&B Entities, his deposition testimony, and the sworn statements in his Affidavits, the Bankruptcy Court found that "Horst is competent to testify as to the records of B&B entities, and the Trustee has provided sufficient foundation for the admissibility of documents produced by B&B through Horst as the designated custodian of the records under Fed. R. Civ. P. 803(6), 807, and 901 and Fed. R. Civ. P. 56(c)(4)." Claim Denial Order, p. 20. B-2329. In response to the material facts placed into the record by Mr. Horst, as

36

the Bankruptcy Court noted, "[n]either Akouete nor Edwards refute these material facts with evidence in the record." Claim Denial Order, p. 20. B-2329.

Further, Akouete points to no "Independent and Contrary Evidence" that actually refutes the undisputed material facts that the Trustee placed into the record (Akouete Brief, p. 30-31). Akouete consistently points to documents that (i) have no relevance to the flawed Disputed Appointment Documents and (ii) pre-date the Disputed Appointment Documents. For example, Akouete points to a document that appears to be a "2018 liquidation report" which is not authenticated by an affidavit of anyone with knowledge of the document and which specifically references the past management of the Debtor by BBAS (using the past tense). *See* Akouete Brief, p. 30. That document, on its face, does nothing to refute Ms. Scholes's documented resignation from all the B&B Entities or BBAS's resignation as manager of the Debtor. Similarly, Akouete points to a document titled "2005 Release and Assumption Agreement" which is not authenticated by affidavit of anyone with knowledge and which pre-dates the earliest Disputed Appointment Document by 17 years. Akouete Brief, p. 52. That document, on its face, does nothing to refute Ms. Scholes's documented resignation from all B&B Entities or BBAS's resignation as manager of the Debtor.

Similarly, regarding Akouete's complaint regarding "reasonable inferences" that Akouete asserts the Bankruptcy Court should have been drawn in his favor,

37

Akouete points to no possible inference that could refute either Ms. Scholes's documented resignation from the B&B Entities or BBAS's resignation as manager of the Debtor. Akouete Brief, pp. 32-33. The purported inference that Akouete believes would assist his cause is a "[t]hird party recognition of Babcock & Brown Administrative Services Inc. [which Akouete claims] supports an inference of continued or unextinguished authority." Akouete Brief, p. 33. First, as the Bankruptcy Court explained in detail, BBAS Inc. no longer existed after it merged into BBAS LLC which no longer existed after it merged into BB Parallel. Claim Denial Order, p. 22. B-2331. See *See* 6 Del. C. § 18-209(g); *see also P.C. Connection, Inc. v. Synygy Ltd.*, C.A. No. 2020-0869-JTL, 2021 Del. Ch. LEXIS 2, *45-45, 2021 WL 57016, *14-15 (Del. Ch. Jan. 7, 2021). Therefore, any "continued or unextinguished authority" of BBAS Inc. was owned and controlled by BB Parallel as of the dates of the Disputed Appointment Documents and, for all the reasons previously discussed, Ms. Scholes **<u>never</u>** had authority to execute any documents on behalf of BB Parallel, at any time. *See* Horst Aff. I, ¶ 10, 11, 12, and 13. B-1148. Further, pursuant to Akouete's more recent theory (*i.e.*, that Ms. Scholes held some sort of lingering authority on behalf of BBAS Inc. as the original manager of the Debtor – pre-merger with BB Parallel, and pre-resignation by its successor BBAS LLC), Akouete points to nothing in the record that

38

demonstrates that Ms. Scholes **ever** executed any document that arguably delegated that purported "lingering authority" from BBAS Inc. to Akouete.[26]

Akouete's "narrative" is better described as his "wish". There is simply no evidence to support Akouete's "narrative" that Ms. Scholes had authority to appoint him as manager from her nursing home, without the approval of her conservator and guardian, approximately fifteen (15) years after she resigned from all roles with the B&B Entities. There is no evidence to support Akouete's "narrative" that BBAS LLC's resignation as manager of the Debtor either did not occur or may be deemed void by Akouete.

### C.   AKOUETE IS MISTAKEN REGARDING DELAWARE LAW REGARDING LIMITED LIABILITY COMPANIES

In Section III of the Akouete Brief, Akouete makes an extensive argument that (despite Delaware law to the explicit contrary) BBAS Inc. was allegedly prohibited by the terms of the LLC Agreement from resigning as manager of the Debtor and, as a result of the "prohibition" that Akouete describes, "managerial authority" of the Debtor was never "validly transferred" from BBAS Inc. Akouete Brief, pp. 37-58.

---

[26] Further, as the Bankruptcy Court notes, Ms. Scholes herself (in her individual capacity) never served as manager of the Debtor, so Ms. Scholes could not have transferred *her* authority as manager to Akouete as the Disputed Appointment Documents purport to do. Claim Denial Order, pp. 28-31. B-2337-39.

### 1. Delaware Law Explicitly Allows the Manager of an LLC to Resign Notwithstanding a Prohibition in the LLC Agreement.

Section 18-602 of the Delaware Limited Liability Company Act provides as follows "[n]otwithstanding that a limited liability company agreement provides that a manager does not have the right to resign as a manager of a limited liability company, a manager may resign as a manager of a limited liability company at any time by giving written notice to the members and other managers." 6 Del. C. § 18-602. As the Trustee explained in detail in the Trustee's Memorandum of Law, BBAS resigned from its manager role by issuing a Notice of Resignation and stating in the Notice of Resignation that:

> Pursuant to Section 1(e) of the LLC Agreement and Section 18-602 of the Delaware Limited Liability Company Act, this letter serves as notice to the Member of the Manager's intent to resign as Manager of the Company effective as of May 30, 2011.

Trustee's Memorandum of Law, p. 17. B-804.

Further, regarding BBAS's resignation and notice of resignation, the Bankruptcy Court found as follows:

> The uncontroverted testimony of Horst, who sent the notice of resignation, was that his understanding as CFO of B&B was that the notice of resignation "fully terminated all of Babcock & Brown's obligations to [the Debtor.]" *Id.* at 22:3-8. Whether authorized or not, the record is clear that BB Parallel was not, in fact, acting as Manager after 2011. *See* 6 Del. Code § 18-602 (notwithstanding any limitations in an operating agreement, a manager may resign with notice, even though that may give rise to a damage claim).

40

Claim Denial Order, p. 26. B-2335.

In sum, BBAS resigned as manager and all parties to the LLC Agreement and/or with rights under the LLC Agreement have acted in accordance with that resignation for a period of approximately twelve (12) years (*i.e.*, from 2011 through 2022-2023, the years of the Disputed Appointment Documents). Akouete has no standing to challenge the validity of a resignation where he was not, nor has he ever been, a party to the LLC Agreement.

### 2. Akouete's Arguments Regarding Corporate Merger Issues Are Misplaced.

As the Trustee explained in detail in the Trustee's Memorandum of Law and the Trustee's Statement of Facts, the Trustee determined through review of publicly available corporate documents held by the Delaware Secretary of State that (i) BBAS Inc. was originally formed in 1997, (ii) BBAS Inc. converted to BBAS LLC in 2000, and (iii) BBAS LLC then merged into BB Parallel in 2011 with BB Parallel remaining as the surviving entity. *See* Trustee's Memorandum of Law, pp. 6-7. B-793-94. Notwithstanding the publicly available corporate records, Akouete argues that "neither conversion nor merger operates to reassign contractual governance authority absent compliance with the governing LLC agreement." Akouete Brief, p. 44. Akouete seems to argue that because "BBAS Inc." is named as the manager in the LLC Agreement and a change of manager allegedly requires member consent, the Bankruptcy Court should have disregarded

the fact that BBAS Inc. has not existed since it became BBAS LLC (in 2000), which then merged into BB Parallel (in 2011). Akouete Brief, pp. 44-45. Akouete cites to no relevant case law or statute to support that argument.[27]

As the Bankruptcy Court explained in the Claim Denial Order:

When BBAS LLC (the successor by conversion to BBAS, Inc.) merged with BB Parallel, BBAS LLC ceased to exist and any position held by Scholes in BBAS LLC or BBAS Inc. would have terminated by operation of law. *See* 6 Del. C. § 18-209(g); *see also P.C. Connection, Inc. v. Synygy Ltd.*, C.A. No. 2020-0869-JTL, 2021 WL 57016, *14-15 (Del. Ch. Jan. 7, 2021). This would be the legal effect of the merger, even if Scholes had not resigned in 2007.

Claim Denial Order, p. 22. B-2331. Despite the law cited above by the Bankruptcy Court, Akouete's appears to argue (without citation or reference to any relevant case law) that BBAS LLC (or perhaps BBAS Inc.) continues to exist for purposes of "managerial authority" of the Debtor regardless of the specific provisions of 6 Del. C. § 18-209(g). First, Akouete's argument position is without legal merit. Second, Ms. Scholes resigned from all B&B Entities in 2007 and, therefore, the Disputed Appointment Documents are worthless and Akouete still would have no

---

[27] Although Akouete includes case citations in his Brief, they do not appear to be supportive of his arguments. For example, Akouete cites to *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *8 (Del. Ch. May 7, 2008) in support of this particular argument. The *Fisk* case, however, does not appear to be relevant to Akouete's argument. Among other things, the *Fisk* case was *among parties* to an LLC Agreement and Akouete is not a party to the LLC Agreement here.

basis to assert that Ms. Scholes caused any B&B Entity to delegate any authority to him.

Finally, as the Bankruptcy Court noted in the Claim Denial Order (p. 23), Akouete has no standing to raise any issues or challenge the effectiveness of actions taken by parties to the LLC Agreement. B-2332. Akouete is not a party to that agreement. There is no evidence in the record that the only other party to the LLC Agreement (the Debtor's sole member – Mignonette Investment Limited) ever challenged any action taken by BBAS Inc., BBAS LLC, or BB Parallel regarding changes to their corporate form or mergers.

Akouete similarly complains that, even if BBAS LLC was entitled to resign as manager of the Debtor, it failed to properly do so. Akouete Brief, pp. 48-58. First, the Trustee placed into the Summary Judgment record direct evidence that BBAS LLC resigned as manager of the Debtor. *See* Bankr. ECF No. 742, Horst Aff. I, ¶¶ 5 and 7, B-1148; *see also* Bankr. ECF No. 741-6, Ex F, Horst. Depo. 14:17-17:2, Depo. Ex. 4, 20:19-22:16, Depo. Ex. 6, 22:3-8, and 22:9-16. B-1071. Second, Akouete placed no evidence in the record that rebuts the Trustee's direct evidence that BBAS LLC resigned as manager of the Debtor. Rather, in his Brief, Akouete references the LLC Agreement and the terms of the LLC Agreement and misconstrues Delaware law as to the terms of those agreements.

43

### D.    AKOUETE IDENTIFIES NO GENUINE DISPUTES OF MATERIAL FACT.

In Section IV of the Akouete Brief, Akouete claims that genuine disputes of material fact exist, yet he points to none. Akouete Brief pp. 58-65. Each purported "genuine dispute of material fact" that Akouete identifies ignores the ineffectiveness of the Disputed Authority Documents, which is the basis of the Claim Denial Order.

First, Akouete makes the misstatement that whether Akouete was authorized to be manager of the Debtor "turns on whether the original Manager's authority was ever lawfully terminated or transferred." Akouete Brief, p. 59. In this category, Akouete lumps together his "disputes" regarding the conversion of BBAS Inc. to BBAS LLC in 2000, BBAS LLC's resignation as manager in 2011, and BBAS LLC's merger into BB Parallel in 2011. As discussed in detail previously, (i) the record includes substantial evidence that BBAS LLC resigned as manager of the Debtor in 2011, (ii) the record includes evidence by Mr. Horst that only other party to the LLC Agreement (the Debtor's sole member) did not dispute that resignation, (iii) there is no other evidence in the record that results in a "genuine dispute" regarding BBAS LLC's resignation as manager of the Debtor. *See* Bankr. ECF No. 742, Horst Aff. I ¶¶ 5 and 7, B-1148; *see also* Bankr. ECF No. 741-6, Ex F, Horst. Depo. 14:17-17:2, Depo. Ex. 4, 20:19-22:16, Depo. Ex. 6, 22:3-8, and 22:9-16. B-1071. Further, the record is also clear that Ms. Scholes resigned from all positions

44

with the B&B Entities and, as such, the Disputed Appointment Documents themselves are meaningless. *See* ECF No. 742, Horst Aff. I ¶ 6; *See* ECF No. 743, Horst Aff. II, ¶¶ 2 and 3. B-1148 and B-1198; *see also* Bankr. ECF No. 660, Akouete Aff., Ex. C, p. 41, B-657; *see also* Claim Denial Order, pp. 28-31, B.-2337-39.

Second, when attempting to demonstrate a disputed material fact, Akouete erroneously states that "[t]he Bankruptcy Court's ruling depends on the premise that Babcock & Brown entities ceased all administrative, financial, and operational involvement with the debtor after 2011." Akouete Brief p. 60. That is a false statement. The Bankruptcy Court's ruling is based on, among other things, Akouete's reliance on the Disputed Appointment Documents which, as detailed in the Claim Denial Order and discussed previously, were unauthorized and ineffective. The Bankruptcy Court denied Akouete's claim because Akouete points to no legitimate basis by which he was (or could have been) authorized to act as manager of the Debtor. Nothing related to the "administrative, financial, and operational involvement" of the Babcock & Brown entities after 2011 bears any relevance at all to the fact that (i) Ms. Scholes had no authority to execute the Disputed Appointment Documents and (ii) the B&B Entities themselves have demonstrated that BBAS resigned as manager of the Debtor.

Third, Akouete erroneously asserts that there is a genuine dispute as to

45

"whether F. Jan Blaustein Scholes retained authority – whether actual, delegated, or continuing - at the relevant time." Akouete Brief, p. 61. The summary judgment record includes Mr. Horst's testimony that Ms. Scholes resigned. *See* Bankr. ECF No. 742, Horst Aff. I, ¶ 6. B-1148. The summary judgment record also includes BBAS's corporate acknowledgement that Ms. Scholes resigned and was replaced as president of BBAS LLC. *See* Bankr. ECF No. 660, Akouete Aff., Ex. C, p. 41, B-657; *See* Bankr. ECF No. 743, Horst Aff. II, ¶ 2. B-1198. Akouete points to nothing in the summary judgment record that refutes or rebuts the fact that Ms. Scholes resigned in 2007.[28]

Fourth, Akouete asserts that there is a genuine dispute of material fact as to "whether Ms. Scholes executed [the Disputed Appointment Documents] in a valid representative capacity and whether she possessed authority to do so at the time." Akouete Brief, p. 62. As noted previously, the Trustee placed overwhelming evidence into the record that Ms. Scholes resigned in 2007 and that BBAS resigned as manager in 2011. Akouete points to nothing in the summary judgment record that refutes or rebuts Ms. Scholes's resignation from all B&B Entities.

---

[28] The summary judgment record also includes an affidavit from Mr. Blaustein, Ms. Scholes's guardian and conservator including the relevant appointment documents from 2019. *See* Bankr. ECF No. 744, ¶ 4. B-1206. The summary judgment record also includes *Mr. Akouete's own statement* in a pleading he filed with the Massachusetts Land Court (subjecting himself to Rule 11) that Ms. Scholes had suffered a stroke and resigned from her roles at B&B. *See* Bankr. ECF No. 741-9, Ex. I, p. 3. B-1101.

Finally, Akouete references "apparent or continuing" authority as a basis for his claim that would present issues of genuine disputes regarding material facts. Akouete Brief, p. 63. The Bankruptcy Court addressed and appropriately disposed of issues regarding purported "apparent authority." Claim Denial Order, p. 23-26. B-2332-34. More specifically, after discussing the elements of "apparent authority," the Bankruptcy Court noted that "the record is clear and not subject to material dispute." Further, the Bankruptcy Court noted as follows:

> In February of 2023, Akouete made contact with Horst who informed Akouete that B&B had resigned as manager of the Debtor and that BB Parallel had liquidated. *See* ECF No. 742, Ex. F, pp. 47-48. Akouete and Edwards were pursuing Scholes in a care facility to sign documents when they knew that she had retired and was the subject of a guardianship in Hawaii. *See* ECF No. 861, Edwards Depo. 31:13-36:17.
> …
> On this record, even had they developed this argument, Akouete and Edwards could not have reasonably relied on any "apparent authority" of Scholes.
> …
> In sum, Akouete and Edwards have not met their burden of proving a fundamental element of their claims by presenting any substantial evidence that could support a finding that Scholes had authority to appoint them as managers of the Debtor in 2022 or 2023.

Claim Denial Order, pp. 24-25. B-2333-34.

Nothing in the Akouete Brief responds to, addresses, or otherwise casts any doubt on the above findings of the Bankruptcy Court regarding Akouete's arguments regarding apparent authority. Akouete cannot rely on the doctrine of

apparent authority to pretend that he was doing anything other than trying to hijack

management of the Debtor. As the Bankruptcy Court noted:

> Akouete stated in an email exchange shortly after obtaining Scholes's signature on the flawed Bill of Sale and well prior to Scholes signing the POA and Manger Consent: "**I now understand that the Bill of Sale is invalid because Jan is incapacitated. It is a private document, and I guess it will become part of all the other documents that were lost . . . However, we got what we needed to get done: Revive the LLC and take charge of the management**." ECF No. 741-8, Ex. H, p. 7. Akouete went on to state: "**Jan is incapacitated, and Peter is not in a good position to make decisions for the LLC, which they have demonstrated by neglecting the assets of the LLC up to this point**." *Id.*

Claim Denial Order, p. 25 (emphasis added). B-2334. In sum, no material dispute

of genuine fact exists regarding the inability of Akouete to avail himself of the

doctrine of apparent authority.

## CONCLUSION.

For the reasons set forth herein, this Court should affirm the Claim Denial

Order.

Respectfully Submitted,

    /s/ Christine E. Devine
Christine E. Devine, Esq., BBO #566990
Angelina Savoia, Esq., BBO #715690
Nicholson Devine LLC
P.O. Box 7
Medway, MA 02053
Phone: 508-533-7240
Email:  christine@nicholsondevine.com

Dated:  May 14, 2026

48

## **CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Fed. R. Bankr. P. 8015(h)(1), that the foregoing "Brief of Appellee Jonathan R. Goldsmith, Chapter 7 Trustee of Westborough SPE LLC" complies with the type-volume limitation in Fed. R. Bankr. P. 8015(a)(7)(B)(i) because it contains 11,837 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g).

/s/ Christine E. Devine
Christine E. Devine, Esq.

Dated:  May 14, 2026

49

## <u>CERTIFICATE OF SERVICE</u>

I, Christine E. Devine, Esq., hereby certify that, on May 14, 2026, the foregoing document, "Brief of Appellee Trustee Jonathan R. Goldsmith, Chapter 7 Trustee of Westborough SPE LLC" was filed with the United States District Court for the District of Massachusetts by using the Court's CM/ECF System and were thereby served by electronic transmission upon all parties entitled to receive notice of filings in the above-captioned proceeding via the Court's CM/ECF System, including Appellant Lolonyon Akouete.

> /s/ Christine E. Devine
> Christine E. Devine, Esq.

Dated:  May 14, 2026